# EXHIBIT 2

Luna D'Sol
2275 E Belding Dr
Palm Springs CA 92262
213-925-4069
jravada@icloud.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Luna D'Sol                              ) Case No.: No. 25VECV04713
                                        )
              Plaintiff,                )
                                        )
                                        ) **FIRST AMMENDED COMPLAINT FOR DAMAGES**
                                        )
                                        ) (CCP §§ 395, 418.10; CRC 2.550–2.551)
         vs.                            )
   **FARMERS DIRECT PROPERTY AND**      )
   **CASUALTY INSURANCE COMPANY; and**  )
   **DOES 1–50, inclusive,**            )
                                        )
              Defendant                 )

I. JURISDICTION AND VENUE

**1. Amendment to Substitute DOE Defendant; Related Entities and Single-Enterprise (introductory).**

Pursuant to **Code of Civil Procedure § 474,** Plaintiff **Luna D'Sol** amends this Complaint to substitute **Farmers Direct Property and Casualty Insurance Company** ("**Farmers Direct**") for **DOE 1.** Farmers Direct is the specific entity that issued Plaintiff's homeowners policy identified in **Exhibit A (Certified Policy Declarations).** As

- 1 -
**FIRST AMMENDED COMPLAINT FOR DAMAGES**

used herein, references to "**Farmers,**" "**Defendant,**" or "**Defendants**" include, where applicable, **Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Group, Inc., Farmers Property and Casualty Insurance Company, and Farmers Group Property and Casualty Insurance Company** (the "**Related Farmers Entities**"). **On information and belief,** Farmers Direct and the Related Farmers Entities **operate as an alter-ego/single-enterprise** through unified "Farmers Insurance" branding, **shared distribution channels** (including call-center employees of a Farmers Insurance Group entity authorized to sell policies issued by the Exchanges and affiliated insurers), and **centralized management and claims systems,** such that adherence to separate corporate forms would **sanction a fraud or promote injustice** in connection with the policy and claim at issue. *(Ex. A; see also enterprise sales disclosure, Ex. U).*

**2. Jurisdiction.**

 Court has jurisdiction under **Article VI, Section 10** of the California Constitution and applicable statutes because the amount in controversy exceeds the jurisdictional minimum of the Superior

Court and the causes of action arise under California law. Plaintiff **elects to proceed in this Court.**

**3. Venue.**

Venue is proper in **Los Angeles County** pursuant to **Code of Civil Procedure § 395(a)** for each independent reason below:

**3(a). Contract formation, issuance, and receipt in Los Angeles County.** The policy was **offered and sold** to Plaintiff **via Farmers' centralized call-center channel** while Plaintiff was located in Los Angeles County; the **Declarations** list Plaintiff's Los Angeles County address **19525 Schoolcraft Street, Reseda, CA 91335,** to which the policy was **issued and delivered.** *(Ex. A; see also Ex. U.)*

**3(b). Principal office / claims and policy decisions in Los Angeles County. Farmers Direct** and/or the Related Farmers Entities maintain a principal office and claims/administration hub at **6301 Owensmouth Avenue, Woodland Hills, California** (Los Angeles County), from which **key claims-handling directives, coverage determinations, denials and re-denials, reopenings,**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**depreciation/accounting decisions, and policy implementation choices** for this loss were authorized and/or approved.

**3(c). Substantial events and effects in Los Angeles County.** A substantial part of the **events or omissions** giving rise to these claims—including **misrepresentations, deadline threats, denials, re-denials, and claim-splitting instructions**—were **communicated to and received by Plaintiff** in Los Angeles County, and the **effects** (loss of use, financial harm, and emotional distress) were **suffered** there.

**3(d). Plaintiff's residence and property ties in Los Angeles County.** At **all relevant times**, Plaintiff was a **resident of Los Angeles County, owns multiple residential properties** within the County, and **spends the majority of her time** residing and conducting personal affairs there—further supporting venue in this Court.

II. PARTIES

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**4. Plaintiff.** Plaintiff **Luna D'Sol** ("Plaintiff") is an individual residing in the State of California and, at all relevant times, was the **named insured** on a homeowners insurance policy issued under the **Farmers** brand and marketed through **Farmers' customer-service/call-center channels.** *(Ex. A; Ex. U.)*

**5. Farmers Direct (principal defendant/insurer).** Defendant **Farmers Direct Property and Casualty Insurance Company** ("**Farmers Direct**") is, and at all relevant times was, an insurance company **authorized to do business in California**, with a principal office and claims/administration hub at **6301 Owensmouth Avenue, Woodland Hills, California. Farmers Direct issued the policy at issue** in this action. *(Ex. A.)*

**6. Related Farmers Entities (named as defendants).** Plaintiff is informed and believes, and on that basis alleges, that the following **related Farmers entities** were involved in the marketing, underwriting, administration, and/or claims handling of the subject policy and loss, and are **named as defendants** to the extent they participated directly or indirectly in the wrongful conduct alleged herein:

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

(a) **Farmers Insurance Exchange;**

(b) **Fire Insurance Exchange;**

(c) **Truck Insurance Exchange;**

(d) **Mid-Century Insurance Company;**

(e) **Farmers Group, Inc.** (d/b/a Farmers Insurance);

(f) **Farmers Property and Casualty Insurance Company;** and

(g) **Farmers Group Property and Casualty Insurance Company**

(collectively, the "**Related Farmers Entities**"). These entities **operate under the "Farmers Insurance" name/brand**, use shared **call-center/customer portals**, and are publicly presented to consumers as a **unified "Farmers" operation**. *(Ex. U.)*

**6A. Alter-Ego / Single-Enterprise Allegations (pled on information and belief).** Plaintiff is informed and believes, and on that basis alleges, that **Farmers Direct** and the **Related Farmers Entities**: (i) **operate as a unified, non-competitive enterprise**; (ii) **share common ownership and/or overlapping directors/officers**, centralized senior management, and **centralized governance** over policy and claims standards; (iii) **share integrated claims-**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**handling infrastructure**, systems, manuals, and customer portals; (iv) **share personnel and resources** (including adjusters, call-center staff, email domains, and IT/branding assets) such that employees act **interchangeably** among entities while holding out to the public as "Farmers"; (v) **direct claims and coverage decisions** from Los Angeles County (including **6301 Owensmouth Avenue, Woodland Hills**); and (vi) **participate in centralized treasury/cash-management, cost-sharing, and inter-company allocations** that **commingle funds** and render the entities **inadequately distinct** for purposes of this claim. Plaintiff further alleges that these entities **failed to observe corporate formalities** in connection with the policy and claim at issue (including use of each other's letterhead/signatures, cross-entity authorization of denials/reopenings, and cross-entity directives to the insured). As a result, there exists such a **unity of interest and ownership** that any separation is **illusory**, and **adhering to the fiction of separate corporate existence would sanction a fraud or promote injustice** by enabling Defendants to **evade policy obligations** while leveraging the collective "Farmers" brand and systems. *(Ex. U.)*

**6B. Agency / Ostensible Agency (pled in the alternative).** Plaintiff is informed and believes, and on that basis alleges, that Farmers

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

Direct and the Related Farmers Entities acted as **agents and/or ostensible agents** of one another in marketing, issuing, administering, and handling the subject policy and claim; that each **authorized, directed, ratified, or knowingly accepted the benefits** of the others' acts; that they **used the same "Farmers" branding and communications channels** without disclosing corporate distinctions; and that Plaintiff **reasonably relied** on those **representations and conduct** in dealing with "Farmers." *(Ex. U.)*

**7. Ratification and Managing-Agent Liability.** The **wrongful acts, omissions, and misrepresentations** described in this Complaint were **committed, authorized, ratified, or knowingly tolerated** by **officers, directors, and managing agents** of **Farmers Direct** and the **Related Farmers Entities**, including but not limited to **Property Theft Supervisors, Field Claims Supervisors, Regional Claims Directors/Managers, Senior Claims Managers, and Vice Presidents/Senior Vice Presidents of Claims/Operations and Distribution**—each acting **within the course and scope** of employment and **in furtherance of the financial interests** of the unified Farmers enterprise. These managing agents **directed or approved** the challenged **coverage determinations, denials and re-denials, "reopenings," deadline impositions, claim-splitting/reassignments, and payment practices** (including

- 8 -
**FIRST AMMENDED COMPLAINT FOR DAMAGES**

recoverable-depreciation handling and item zeroing), thereby supporting **punitive damages** under **Civil Code § 3294(b).**

**8. DOE Defendants (CCP § 474 – genuine ignorance).** Plaintiff is **ignorant of the true names and capacities** of **DOES 2 through 50,** inclusive, and therefore sues these defendants by such fictitious names **pursuant to CCP § 474. At the time of filing the original complaint and this amendment, Plaintiff was genuinely ignorant of the true names and capacities of said DOE defendants despite reasonable diligence,** and will **amend** this pleading to allege their true names and capacities when ascertained. On information and belief, each DOE defendant **is legally responsible for, participated in, directed, ratified, or aided and abetted** the acts and omissions alleged herein, and is **jointly and severally liable** with the named Defendants.

III. FACTUAL ALLEGATIONS

**9. Covered burglary loss; security compromise and emotional impact.**

On or about **June 3, 2024,** Plaintiff **Luna D'Sol** suffered a **covered burglary loss** at **2275 E. Belding Drive, Palm Springs, CA 92262,**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

insured under **Farmers Direct** Homeowners **Policy No. 3872340940** (Claim **No. 7007678692-1**) (**Ex. A, pp. 1–57**). Intruders **forced and broke the bathroom window/frame**, damaging **stucco and sash**, and **entered the dwelling**, stealing electronics, artwork, and **items of sentimental value and irreplaceable memorabilia.** The window and surrounding finishes were left **compromised** and **could not be secured**, rendering parts of the home **unsafe and uninhabitable;** interior wet areas could not be safely occupied or repaired without tear-out and finish restoration (**Ex. B, pp. 58–61; Ex. E, pp. 65–70**). The break-in caused continuing **fear, anxiety, and loss of peace of mind,** compounding the financial burdens that followed.

**10. Venue and locus of harm in Los Angeles County.**

The policy was **offered and sold** to Plaintiff **while she was in Los Angeles County,** and the **Declarations** list her Los Angeles address **19525 Schoolcraft Street, Reseda, CA 91335** (**Ex. A, pp. 1–57**). **Key claims communications and decisions**—including denial, reopening, the **7-day** demand, and re-denial—were **directed to and received by Plaintiff in Los Angeles County** (**Ex. G, pp. 77–79; Ex. H, p. 80; Ex. I, p. 81; Ex. J, p. 82; Ex. K, p. 83**). The **denial of ALE** and refusal to fund necessary restoration work **directly impacted Plaintiff's finances and mental health in Los Angeles County,**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

forcing her to **front lodging, meals, and transportation** and to scramble for alternative housing—thereby placing venue in this Court under **Code Civ. Proc. § 395(a)** (transactional facts and harm occurred in Los Angeles County) (**Ex. A; Exs. G, H, I, J, K**).

**11. Loss of Use – Additional Living Expense (ALE); willful refusal (with wildfire linkage and quantified harm).**

The Policy's **Loss of Use – Additional Living Expense (ALE)** obligates Farmers to pay "**the reasonable increase in living expenses necessary to maintain your normal standard of living**," expressly "**not limited by the expiration of this policy**." (**Ex. A, Loss of Use**). **Despite acknowledging ALE entitlement,** Farmers **paid no ALE,** forcing Plaintiff to advance **lodging, meal, and transportation differentials** *(in amounts to be proven by receipts at trial)* while the residence remained **unsecure and partially uninhabitable** (**Ex. A**). **The ongoing Los Angeles wildfire conditions that Farmers expressly acknowledged** further **prolonged the home's uninhabitability**—by impeding boarding, safe re-occupancy, and timely repair—and **extended the period** during which ALE was reasonably required (**Ex. J, p. 82; Ex. I, p. 81**). As a result, Plaintiff was forced to **carry balances on high-interest credit,** accruing **interest and fees presently estimated, on information and**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**belief, to exceed several thousand dollars** (exact amounts to be shown by statements and receipts), in addition to **out-of-pocket lodging, meals, and transportation costs.** This refusal **breached the Policy** and—because it continued after notice and acknowledgment—constituted **bad-faith claim handling** and a **willful and malicious disregard** of Farmers' duty to protect the insured from the foreseeable consequences of a covered loss, further **aggravating Plaintiff's financial strain and emotional anguish** (**Ex. A; Ex. J, p. 82; Ex. I, p. 81**).

**12. California Amendatory Endorsement (HA01CA); misrepresentation and duress.**

The **California Amendatory Endorsement (HA01CA)** affords **at least 12 months** (and up to **24 months** after a declared emergency) to complete replacement-cost performance and **requires payment within 30 days** once the amount of loss is agreed (**Ex. A, HA01CA**). Contrary to **HA01CA** and **Insurance Code § 2051.5**, Farmers **imposed a seven-day documentation demand** on **January 15, 2025** and then **re-denied** on **January 23, 2025** (**Ex. I, p. 81; Ex. K, p. 83**), **while acknowledging the ongoing LA wildfires** that made compliance practically impossible (**Ex. J, p. 82**). The **7-day** ultimatum **misrepresented** the HA01CA timeline, placed Plaintiff under **unnecessary duress and**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**pressure**, and **perpetuated a cycle of false hope and renewed anxiety**, intensifying **financial strain** and **emotional distress** (**Ex. A**; **Exs. I, J, K**).

**A. Coordinated scheme of oppressive and bad-faith conduct**

*(Ins. Code § 790.03(h); 10 CCR § 2695.1 et seq.; alter-ego/single-enterprise and managing-agent involvement)*

**13. Systemic pattern; alter-ego and managing-agent involvement.**

**On information and belief**, this conduct **is not isolated**, but reflects **systemic and institutionalized bad-faith practices**—including **misrepresentations**, **arbitrary deadline traps**, **manufactured denials, and systematic underpayment**—that violate **Insurance Code § 790.03(h)** and the **Fair Claims Settlement Practices Regulations (10 CCR § 2695.1 et seq.).** Consistent with the **alter-ego/single-enterprise** allegations pled in **Parties,** the acts below were **devised, directed, approved, or ratified** in Los Angeles County by **managing agents** of **Farmers Direct** and the **Related Farmers Entities**—including **Property Theft Supervisors, Field Claims Supervisors, Regional Claims Directors/Managers, Senior Claims**

**Managers, and Vice Presidents/Senior Vice Presidents of Claims/Operations**—acting as a unified "**Farmers**" enterprise.

**a. Prolonged "investigation" and adversarial EUO to build defense, not to pay (10 CCR § 2695.7(d)).**

Farmers ran an "internal investigation" **without identifying wrongdoing** and then compelled an **adversarial EUO** (conducted by **Attorney John Na, Gordon Rees Scully Mansukhani, LLP,** the same firm now representing Farmers) (**Ex. C, p. 62; Ex. D, pp. 63–64**). The EUO was **not undertaken to fairly investigate and pay,** but to **build a litigation defense strategy and obstruct settlement, wasting Plaintiff's time and resources** and causing **significant emotional distress**—in violation of the duty to conduct a **prompt, thorough, and fair investigation** (**10 CCR § 2695.7(d)**).

**b. Wrongful denial, calculated "reopening," and manipulative deny-then-consider tactic (Ins. Code § 790.03(h)(5), (2), (13)).**

On **November 22, 2024,** Farmers issued a **baseless denial** (**Ex. G, pp. 77–79**). On **January 7, 2025, Supervisor Bryce Spradling reopened** the claim, stating Farmers would "**consider moving forward**" (**Ex. H, p. 80**). This **deny-then-consider** sequence is **manipulative and**

- 14 -

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**deceptive**, intended to **wear down policyholders**, and violates § **790.03(h)(5)** (*failure to effectuate prompt, fair, equitable settlements when liability is reasonably clear*), **(h)(2)** (*failure to act reasonably promptly upon communications*), and **(h)(13)** (*failure to provide reasonable written explanations*). It **delayed payment, amplified leverage,** and triggered a **cycle of false hope and renewed anxiety**, causing **additional financial and emotional harm** (**Exs. G, H**).

**c. Systematic and deceptive underpayment scheme—repeated "math errors" and RD manipulation (Ins. Code § 790.03(h)(1), (5), (13); 10 CCR § 2695.7(e)).**

Farmers' **10/29/2024 Payment Worksheet** shows **Total RD $3,360.90,** "**Deferred Paid**" **$1,546.91,** and "**Deferred Pending**" **$259.18**—which **correctly leaves $1,554.81** due—yet the same worksheet lists only **$1,082.65** as "**Estimated Remaining RC Benefits,**" an **unexplained $472.16 shortfall** (**Ex. E, pp. 65–70; Ex. B, pp. 58–61**). Subsequent payment pages **did not cure** the discrepancy and **omitted necessary tear-out and finish-restore labor** for fixtures that were allowed, leaving **RD and restoration amounts unpaid** (**Ex. T, pp. 98–99; Ex. W, pp. 105–111; Ex. X, pp. 112–128**). These are **not benign errors;** they reflect a **systematic and deceptive underpayment scheme** that

**misrepresents policy benefits** (§ 790.03(h)(1)), **refuses fair settlement** (**h(5)**), and **fails to give reasonable written explanations** (**h(13)**), in violation of **10 CCR § 2695.7(e)**. This forced Plaintiff to **re-perform the carrier's accounting, carry balances on credit**, incur **interest/fees**, and **delay repairs**, deepening **financial distress**.

**d. Wrongful removal/reduction of previously acknowledged items (Ins. Code § 790.03(h)(5), (13)).**

Farmers' October 2024 contents schedule **originally recognized Item 23 – Painting (Mark Bercier) $8,200** and **Item 25 – Memorabilia ("No Face" figure) $331.55** (**Ex. E, pp. 65–70**), then later **wrongfully reduced both to $0 without justification**, causing an additional **shortfall of $8,531.55** and a **significant, unexpected financial gap** that increased credit reliance and **emotional distress** from living in a partially restored, insecure residence (**Ex. W, pp. 105–111; Ex. X, pp. 112–128**).

**e. Legal conclusion—malice, fraud, and oppression (Civ. Code § 3294).**

The foregoing acts—**misrepresentation** of deadlines/benefits (**§ 790.03(h)(1)**), **failure to act reasonably promptly** (**h(2)**), **failure to adopt reasonable standards** (**h(3)**), **failure to accept/deny timely** (**h(4)**), **refusal to settle fairly** (**h(5)**), **compelling litigation** to recover due amounts (**h(6)**), and **failure to provide reasonable written explanations** (**h(13)**)—violate California's **Unfair Claims Practices Act** and the **Fair Claims Regulations** (**10 CCR § 2695.5(b); § 2695.7(b), (d), (e)**). In light of the **alter-ego/single-enterprise** structure and **managing-agent** involvement alleged above, this pattern **demonstrates malice, fraud, and oppression** under **Civil Code § 3294,** supporting **punitive damages** to punish and deter.

**B. Retaliatory deadlines and re-denial during wildfire emergency**

**14. RD payment then pivot; confusion, delay, and financial hardship.**

On **November 12, 2024,** Farmers **paid $1,546.91** toward recoverable depreciation (**Ex. F, pp. 71–76**). Shortly thereafter it **pivoted to improper deadlines** and a renewed **denial** (**Ex. I, p. 81; Ex. K, p. 83**), an **inconsistent, bad-faith trajectory designed to create confusion, delay, and financial hardship** by making Plaintiff believe payment was proceeding while engineering a paper basis to

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

withhold additional funds. As a result, Plaintiff was forced to **float repair-adjacent living costs** and **carry balances on high-interest credit**, generating **interest and fees presently estimated, on information and belief, at not less than $4,789,** in addition to **lost use of funds** and **repair delays** (**Exs. F, I, K**).

**15. Retaliatory seven-day deadline during wildfires; quantified impact.**

Despite the **January 7, 2025** reopening (**Ex. H, p. 80**), **Adjuster Michael Saskor imposed a baseless, retaliatory 7-day deadline** on **January 15, 2025** to produce a **Brilliant "original order"** and **unredacted credit-card statements—while acknowledging active wildfires** ("*I hope your other properties remain safe from the fire*") (**Ex. I, p. 81; Ex. J, p. 82**). This **concern-then-deadline** sequence **misrepresented** Plaintiff's **HA01CA/Ins. Code § 2051.5** rights (**12–24 months,** not seven days) (**Ex. A, HA01CA**), violated **§ 790.03(h)(1)** and **10 CCR § 2695.7(d),** and—on information and belief—contradicted basic emergency-handling practice. It **prolonged financial distress, forced reliance on credit,** and generated **additional interest/late fees;** Plaintiff estimates **ALE differentials** (lodging/meals/transportation) at **not less than**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**$4,896]** for the period in which the home remained uninhabitable (**Ex. A; Ex. I**).

**16. Abrupt re-denial; manufactured resistance to a valid claim.**

On **January 23, 2025,** Farmers **abruptly re-denied** the claim for supposed **"7-day non-compliance"** (**Ex. K, p. 83**). This **predictable, pre-determined outcome** was **willfully designed** to **circumvent** the **January 7** reopening (**Ex. H**) and to **manufacture a false basis** for denial—**willfully** violating duties to **fairly investigate** and **act reasonably** upon communications and proofs (**10 CCR § 2695.7(d), (b); Ins. Code § 790.03(h)(2), (3), (4), (5)**). It **exhausted Plaintiff's resources, prolonged the dispute,** and **extended loss of use**—including **unpaid ALE**—causing **further out-of-pocket costs** and **emotional distress** (**Ex. A**).

**17. Identity-based coercion (Unruh); distress and humiliation.**

On **April 21, 2025, Supervisor Bryce Spradling refused** to use Plaintiff's affirmed name **"Luna"** while **threatening** a new **April 27** deadline (**Ex. K, p. 83**). The misgendering was **deliberate and intended to cause distress and discomfort, exerting pressure** during an already stressful claim process, and part of the **overall**

**pattern of oppressive tactics** designed to **wear Plaintiff down** and force a compromise. This conduct **violates the Unruh Civil Rights Act (Civ. Code §§ 51(b), 51(f))** and caused **emotional distress and humiliation,** supporting **punitive damages** under **Civ. Code § 3294.**

18. **Good-faith submissions; evasive responses and statutory violations.**

On **May 14, 2025,** after Plaintiff re-submitted a **licensed electrician's invoice** and a **$8,200 art appraisal,** Spradling responded only "**Mike will follow up with you today**"—and **no action or payment followed** (**Ex. Q, pp. 90–95**). This **evasion** is a **systemic delay tactic** that **prejudiced replacement-cost rights** and violated **10 CCR § 2695.5(b)** (15-day response) and **§ 2695.7(b)** (timely acceptance/denial/status).

19. **Required repair scope refused; quantified amounts.**

On **May 19, 2025,** Plaintiff submitted a **licensed contractor's bid** documenting **code/finish work** reasonably flowing from covered replacements—**stucco/paint $18,000, code water-line relocation $3,000, toilet wall/anchoring & bath restoration $4,400 + $16,000, kitchen-island demo/rebuild $9,000, whole-home epoxy $46,000–**

- 20 -
**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**$52,000**—total **$87,400–$93,400** (**Ex. O, pp. 91–96, 122–127**). Farmers **refused** to approve or pay any portion, **breaching Coverage A/B – Loss Settlement** and **Ordinance or Law** (**Ex. A [Loss Settlement; Ordinance or Law]**). As a result, Plaintiff faced **bid escalation** and **schedule prolongation** presently estimated, on information and belief, to add **not less than $[____]** in extra costs.

**20. Reassignment and "new claim" tactic; obscured accountability.**

On **June 10, 2025, Albert Pimentel** ordered Plaintiff to route communications through a **generic inbox**, obstructing transparency (**Ex. S, pp. 96–97**). Days later, he directed Plaintiff to treat **ongoing dishwasher/toilet water intrusion** as a **"new claim,"** even though it was a **continuation** of the **June 2024** loss discussed at EUO (**Ex. V, pp. 102–104; Ex. D, pp. 63–64**). This tactic **obscured accountability,** forced **duplicative submissions, prolonged the claim,** and attempted to **use procedural maneuvering** (e.g., resetting HA01CA clocks) **to Plaintiff's disadvantage,** violating **§ 790.03(h)(3), (5)** and **10 CCR § 2695.7(d).**

**21. Insurer-caused delays defeat time-bar arguments.**

On **June 25, 2025,** Plaintiff served a **Formal Response re Time Limits,** documenting that Farmers' **EUO, denial, reopening,** and **re-denial/reopening** caused delays; deploying time bars under these facts **undermines the implied covenant** (**Ex. U, pp. 100–101**).

**22. Formal dispute – RD re-applied; withheld items; dollar specifics.**

On **July 7, 2025,** Plaintiff served a **Formal Dispute** showing **re-applied depreciation** and **withheld high-value items** with invoices/listings: **MacBook M2 $1,095.41, AirPods Max $599.78, Apple Watch Ceramic $1,899.95** (**Ex. R, pp. 106–113**).

**23. Formal demand – corrections and underpayments.**

Between **July 9–25, 2025,** Plaintiff served a **Policyholder Dispute & RD Corrections** package identifying recycled "April" deadlines, **RD manipulation** and worksheet re-inflation, **electrical bid short-pay** (approx. **$2,000** short), **gloves** quantity error (**$2,400** total owed), and **No Face**/**Painting (Bercier)** being driven to **$0.00,** demanding corrected itemization and full RD/RC (**Ex. X, pp. 112–128**). Farmers **did not cure.**

**24. RD — $1,528.56 still unpaid (underpayment).**

Farmers' own records show **Total RD $3,360.90; $1,546.91** paid (11/12/24); **$259.18** pending; **correct remainder $1,554.81**—then only **$26.25** "correction" (07/10/25), leaving **$1,528.56** unpaid (**Ex. E, pp. 65–70; Ex. F, pp. 71–76; Ex. X, pp. 112–128; see also Ex. B, pp. 58–61; Ex. T, pp. 98–99**). The unpaid RD and delay **necessitated credit use** and **interest/fees of at least $[____]** (on information and belief), and **extended the repair timeline.**

**25. Required scope explained (toilet; island; window) and policy support.**

**(a) Wall-hung toilet – code + tear-out/restore.** Wall-hung unit **lacked an in-wall carrier** (bolted through floor), violating code; also flowed at **1.6 gpf** (> **1.28 gpf** standard). Code-compliant replacement requires **tear-out** and finish restoration; **continuous epoxy** demands re-install to uniform finish.

**(b) Dishwasher/island – water intrusion → structural compromise.** Leak left island base/slab **"wet-cement-like"; full demo/rebuild** with electrical + finish is required; **continuous epoxy** must be re-installed for continuity.

- 23 -

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**(c) Bathroom window – forced entry → inevitable tile break + repaint.** Replacement **necessarily** breaks tile and requires **re-tile/repaint.**

**Policy: ALE, tear-out/open-and-close, Ordinance or Law, HA01CA** support all of this (**Ex. A; Ex. O, pp. 91–96, 122–127; Ex. T, pp. 98–99**).

**26. Payment explanation confirms fixtures paid, not labor; "zeroing."**

The **07/08/2025** payment pages **allow fixture unit costs** (toilet/dishwasher) but **omit** necessary **labor/demolition/tear-out/finish** and **quietly set Painting (Bercier)** and **No Face** to **$0.00,** lowering RC totals versus prior tallies—confirming **manipulated totals** and refusal to fund the **required** scope (**Ex. T, pp. 98–99; Ex. X, pp. 112–128**).

**27. Deleted/reduced items — $8,531.55 shortfall.**

Farmers **unilaterally reduced to $0** two previously acknowledged items—**Painting (Bercier) $8,200** and **"No Face" memorabilia $331.55**—creating **$8,531.55** in additional shortfall (**Ex. E, pp. 65–70; Ex.**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**X, pp. 112–128**). The wrongful reduction **depleted available funds, increased credit reliance,** and **compounded stress.**

**28. Legal summary: acts ↔ statutory violations.**

- **RD manipulation & payment delays** → Ins. Code § 790.03(h)(1) (*misrepresentation of facts/policy provisions*), **(h)(5)** (*failure to effectuate prompt, fair settlement*), **(h)(13)** (*no reasonable written explanation*); **10 CCR § 2695.7(e).**

- **Retaliatory 7-day deadline (during wildfires)** → **§ 790.03(h)(1)** (*misrepresentation*), **(h)(2)** (*failure to act promptly*), **10 CCR § 2695.7(d)** (*failure to conduct prompt, thorough, fair investigation*); contravenes **HA01CA/Ins. Code § 2051.5.**

- **Deny-then-consider tactic** → **§ 790.03(h)(5)** (*refusal to settle when liability reasonably clear*), **(h)(2), (h)(13).**

- **Wrongful zeroing of acknowledged contents** → **§ 790.03(h)(5), (h)(13).**

- **Claim-splitting/reassignment ("new claim")** → **§ 790.03(h)(3)** (*failure to adopt reasonable standards*), **(h)(5)**; **10 CCR § 2695.7(d).**

- **Unreasonable non-response to submissions** → **10 CCR § 2695.5(b)** (15-day rule), **§ 2695.7(b)** (timely accept/deny/status).

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

Given the **alter-ego/single-enterprise** structure and **managing-agent** involvement, this pattern was carried out with **conscious disregard** of Plaintiff's rights and the **probable harm** it would cause, demonstrating **malice, fraud, and oppression** under **Civ. Code § 3294.**

## IV. CAUSES OF ACTION

**29.** Plaintiff **Luna D'Sol** brings this action to remedy a **deliberate and systemic pattern** of **bad faith, statutory violations,** and **discrimination** by **Farmers Direct Property and Casualty Insurance Company** and its related "Farmers" entities. After a **covered burglary loss** in June 2024, Defendant **knowingly denied, delayed, and underpaid** valid claims through **misrepresentation of rights, arbitrary deadlines,** and **shifting documentation demands** that violated the **Policy** and **California insurance law.** Defendant repeatedly **reopened, re-denied, and reassigned** the claim **without basis,** and it **refused** to address Plaintiff by her **affirmed name and gender identity, imposing discriminatory and retaliatory conditions** that **delayed and denied** benefits.

**30.** Defendant's misconduct constitutes **breach of contract, breach of the implied covenant of good faith and fair dealing, unfair**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**claims-settlement practices** under **Insurance Code § 790.03(h)** and **10 CCR § 2695.1 et seq.**, and **unlawful discrimination** under the **Unruh Civil Rights Act** (**Civ. Code §§ 51, 51(f)**). Plaintiff seeks **all policy benefits, consequential damages, statutory civil penalties, attorney's fees**, and **punitive damages** to punish and deter future misconduct.

**First Cause of Action — Breach of Contract**

*(Against Farmers Direct Property and Casualty Insurance Company and Does 1–50)*

31. Plaintiff incorporates **paragraphs 1 through 30** as though fully set forth herein.

32. **Contract and alter-ego liability.** Plaintiff and **Farmers Direct** entered a valid homeowners insurance contract, **Policy No. 3872340940,** covering Plaintiff's dwelling and personal property at **2275 E. Belding Drive, Palm Springs, California**. As set forth in the **Parties** section, **Farmers Direct** and the **Related Farmers Entities** (including, without limitation, Farmers Insurance

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

Exchange; Fire Insurance Exchange; Truck Insurance Exchange; Mid-Century Insurance Company; Farmers Group, Inc.; Farmers Property and Casualty Insurance Company; and Farmers Group Property and Casualty Insurance Company) **operate as a single enterprise/alter-ego** and are **jointly and severally liable** for the obligations and wrongful acts alleged herein.

**33. Material policy provisions**. The Policy promises, among other things: **(a)** payment to **repair/replace** covered property (**Coverage A/B**); **(b)** payment of covered losses **without deduction for depreciation** and release of **recoverable depreciation** upon completion with proper proof (**Loss Settlement**); **(c) Loss of Use/ALE** for the **reasonable increase in living expenses** while the residence is **not fit to live in**; **(d)** compliance with the **California Amendatory Endorsement (HA01CA),** which requires **payment within 30 days** after the amount of loss is agreed and allows **12–24 months** to complete replacement-cost performance; and **(e)** coverage for **increased costs** required by **Ordinance or Law.**

**34. Performance**. Plaintiff performed all obligations required or was excused by Defendant's breaches.

FIRST AMMENDED COMPLAINT FOR DAMAGES

**35. Breaches of the Policy.**

**A. Payment-related breaches**

**a. ALE refusal.** Defendant **refused to pay ALE** despite acknowledging entitlement while the dwelling was **uninhabitable,** forcing Plaintiff to advance **lodging, meal, and transportation** costs **(presently estimated at not less than $14,000)** and to incur **finance charges and late fees** on credit cards **(presently estimated at not less than $4,500).**

**b. RD withholding/underpayments.** Defendant **withheld** recoverable depreciation, leaving **$1,528.56** unpaid despite its own figures (Total RD $3,360.90; $1,546.91 paid; $259.18 pending; correct remainder $1,554.81; token $26.25 "correction"), and **omitted required tear-out and finish-restore labor** for allowed fixtures.

**c. Wrongful zeroing of acknowledged items.** Defendant **reduced to $0** two items it had already recognized—**Painting (Bercier) $8,200** and **"No Face" memorabilia $331.55**—creating an additional **$8,531.55** shortfall.

**d. Code-driven & finish continuity work denied.** Defendant refused to fund **stucco/paint ($18,000), code water-line relocation ($3,000), toilet/dishwasher labor,** and **epoxy floor continuity**—all

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

covered under **Coverage A/B** and **Ordinance or Law**—despite a licensed bid totaling **$87,400–$93,400.**

**B. Process-related breaches**

**e. Arbitrary deadline.** Defendant imposed an **arbitrary seven-day** documentation deadline during an **LA wildfire emergency,** contradicting **HA01CA's 12–24-month** replacement-cost window and the **30-day pay** rule—thereby manufacturing a basis to withhold payment.

**f. Manufactured denials/re-denials.** Defendant wrongfully **denied, reopened,** and then **re-denied** the claim **without new evidence,** prolonging loss of use and financial harm.

**g. Reassignment/"new claim" tactic.** Defendant **fragmented** the claim and instructed Plaintiff to **refile as a "new claim"** for the same dishwasher/toilet water intrusion—an effort to **reset clocks, obscure accountability,** and **avoid payment.**

**h.  Evasion/non-response.** Defendant restricted direct communications, ignored timely rebuttals ("**Mike will follow up**…" with no action), and **used identity-based coercion** (refusing to use Plaintiff's affirmed name) to pressure withdrawal.

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**36. Materiality.** Each foregoing act/omission is a **material breach** of the Policy.

**37. Damages.** As a direct and proximate result, Plaintiff suffered:

- **Unpaid Policy Benefits: $1,528.56 RD, $8,531.55 zeroed items, $87,400–$93,400 repairs, ≈ $14,000 ALE,** plus **tear-out/finish-restore labor** according to proof;

- **Finance Charges/Fees: ≈ $4,500** (present estimate; exact totals by statements/receipts);

- **Consequential Losses: bid escalation, loss of use,** and **repair delays;**

- **Non-Economic Losses: emotional distress, humiliation, and anxiety** arising from discriminatory and retaliatory handling.

Total damages are **not less than $113,000, or according to proof at trial.**

**38. Interest.** Plaintiff seeks **pre- and post-judgment interest** on all contract amounts due under **Civ. Code §§ 3287(a), 3289(b).**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**39. Malicious breach.** Defendant's breaches were **malicious, oppressive, and unreasonable,** undertaken to **retaliate** and **minimize payouts** with **conscious disregard** of Plaintiff's rights.

**40. Prayer.** Plaintiff **prays for judgment** for **all contractual benefits due, consequential/compensatory damages, interest**, and **further relief** as the Court deems just and proper.

**Second Cause of Action — Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

*(Against Farmers Direct Property and Casualty Insurance Company Q and Does 1–50)*

**41.** Plaintiff incorporates **paragraphs 1 through 40** as though fully set forth herein.

**42. Implied covenant.** The Policy includes an implied covenant requiring Farmers to **act honestly and fairly, promptly and**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**thoroughly** investigate, **accurately** represent rights and duties, and **pay valid claims** once liability is reasonably clear.

**43. Pattern of bad faith.** Defendant engaged in a **continuous, intentional pattern** of **unfair claims-settlement practices,** including:

**a. Failure to act promptly/reasonably** on Plaintiff's communications and proofs; leaving the claim in **"denied-but-open" limbo** to avoid payment.

**b. Misrepresentation of policy rights** (e.g., **7-day** replacement-qcost deadline) to **induce extra-contractual paperwork** and generate a pretext to deny.

**c. Biased EUO tactics**—deploying litigation counsel to conduct an EUO **to build a defense** rather than evaluate coverage—contrary to a **prompt, thorough, fair** investigation.

**d. Deny-reopen-re-deny sequence**—a deliberate **wear-down** tactic to **exhaust** the insured.

**e. Systematic underpayment**—recurrent "math" discrepancies, failure to release **$1,528.56 RD**, **zeroing** of recognized items, and refusal to fund **tear-out/finish** work.

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**f. Reassignment/"new claim" maneuver**—to **obscure accountability**, q **prolong** the claim, and **reset** timelines.

**g.  Identity-based  coercion**—**misgendering**  and  refusal  to  use Plaintiff's affirmed name to **intimidate** and **pressure** compromise.

**44. Statutory/regulatory violations.** This pattern violates **Ins. Code § 790.03(h)**—including **(1)** misrepresentation, **(2)** failure to act promptly, **(3)** failure to adopt reasonable standards, **(4)/(5)** failure to accept/deny/pay in a reasonable time and refusal to settle  when  liability  is  reasonably  clear,  **(6)**  compelling litigation,  **(13)**  failure  to  explain—and  the  **Fair  Claims Regulations, 10 CCR § 2695.5(b)** (15-day response) and **§ 2695.7(b), (d),  (e)**  (timely  accept/deny;  prompt,  thorough,  fair investigation; adequate written explanations).

**45. Damages.** Plaintiff suffered:

**Economic:** unpaid policy benefits (**≈ $113,000** plus tear-out/finish- restore labor), **finance charges/fees (≈ $4,500),** and **increased repair costs;**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**Non-Economic: emotional distress, mental anguish, humiliation,** and **loss of peace of mind.**

**46. Punitive damages and Brandt fees.** Because managing agents **devised, directed, approved, and ratified** the retaliatory deadlines, underpayments, claim-splitting, and identity-based coercion, Defendant acted with **malice, oppression, and fraud** under **Civ. Code § 3294;** Plaintiff seeks **punitive/exemplary damages.** Plaintiff also seeks **attorney's fees** recoverable under **Brandt v. Superior Court** (1985) 37 Cal.3d 813 for fees incurred to recover contract benefits.

**47. Prayer.** Plaintiff seeks **contract and consequential damages, general (emotional distress) damages, punitive damages, Brandt fees,** and **costs.**

**Third Cause of Action — Violation of Insurance Code § 790.03(h)**

(*Against Farmers Direct Property and Casualty Insurance Company and Does 1–50)*

**48.** Plaintiff incorporates **paragraphs 1 through 47** as though fully set forth herein.

**49. Insurance Code § 790.03(h)** identifies unfair claims-settlement practices, including **(1), (2), (3), (4), (5), (6), (13).**

**50. Pattern of violations.** Defendant engaged in a **deliberate, repeated pattern** of such practices, including:

**a. § 790.03(h)(1):** Misrepresenting policy provisions (e.g., **7-day** RC deadline) contrary to **HA01CA/§ 2051.5.**

**b. § 790.03(h)(3) / 10 CCR § 2695.6(b):** Failing to adopt/implement reasonable standards (reassignments without continuity; undue months-long delay).

**c. § 790.03(h)(3) / 10 CCR § 2695.7(d):** Failing to conduct a **prompt, thorough, fair** investigation (biased EUO; ignoring contrary documentation).

**d. § 790.03(h)(4)/(5):** Issuing contradictory decisions **without new evidence;** refusing to settle when liability became reasonably clear.

**e. § 790.03(h)(13):** Failing to provide reasonable written explanations for denials.

**f. § 790.03(h)(6):** Compelling Plaintiff to litigate to recover amounts due.

**g. § 790.03(h)(5)/(13):** Allowing **discriminatory/retaliatory** motives to influence handling (identity-based coercion during claim processing).

51. **Knowledge and conscious disregard.** These acts were **knowing** and carried out with **conscious disregard** of the **probable harm**—confusion, delay, and financial hardship—they would cause.

52. **Harm.** Defendant's violations caused **substantial harm,** including **unpaid benefits, financial losses from delay, added expenses,** and **emotional distress.**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff **Luna D'Sol** prays for judgment against **Farmers Direct Property and Casualty Insurance Company** and **Does 2–50** as follows:

1. **Contract Benefits (Coverage A/B; Loss Settlement; ALE; Ordinance or Law).**

   Award **all policy benefits due and owing** for the June 3, 2024 loss, including without limitation:

   a. **Dwelling and personal property repair/replacement to pre-loss condition, including all necessary labor and materials;**

   b. **Tear-out/open-and-close** necessary to access and repair covered systems/appliances, **including all necessary labor and materials;**

   c. **Ordinance or Law** increased costs (e.g., code-mandated water-line relocation; code-compliant wall-hung carrier/fixture; exterior stucco/paint; finish continuity such as epoxy flooring);

   d. **Loss of Use/Additional Living Expense (ALE)** for the reasonable increase in living expenses while the residence was not fit to live in, **past and ongoing,** according to proof.

2. **Replacement-Cost / Recoverable Depreciation (RC/RD).**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**Order Defendant to immediately pay** all **withheld replacement-cost and recoverable-depreciation amounts**, including the **unpaid RD balance of approximately $1,528.56** (plus any additional components revealed in discovery), together with any **tear-out and finish-restore labor** wrongfully omitted, according to proof.

3. **Restoration of Wrongfully Reduced/Deleted Items.**

Order restoration and payment for items previously acknowledged and later **reduced to $0.00**—including **Painting (Bercier) $8,200** and **"No Face" memorabilia $331.55**—for a total shortfall of **$8,531.55**, plus tax/labor/RC elements according to proof.

4. **Covered Repair Scope.**

Order payment of the **licensed contractor's scope** reasonably flowing from covered replacements and tear-out—**presently estimated at $87,400–$93,400** (e.g., exterior stucco/paint; code water-line relocation; toilet wall/anchoring & bathroom restoration; kitchen-island demolition/rebuild; whole-home epoxy re-installation)—together with any **bid escalation** and **schedule impacts** caused by delay, according to proof.

5. **Consequential Damages.**

Award **consequential losses naturally flowing from the breaches**, including **increased construction costs, loss of use of funds**, and

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

**finance charges/late fees** associated with necessary credit usage **(presently estimated at approximately $4,500, or according to proof at trial). This estimate is preliminary and subject to refinement in discovery** as credit statements, invoices, and receipts are compiled.

6. **Bad-Faith Tort Damages.**

Award **tort damages** for breach of the implied covenant of good faith and fair dealing, including **general damages** for **emotional distress, mental anguish, humiliation, and loss of peace of mind,** and **economic losses** caused by unreasonable delay, misrepresentation, and systematic underpayment, according to proof.

7. **Statutory Damages, Civil Penalties, and Attorney's Fees (Unruh Civil Rights Act).**

Award **statutory damages** under **Civil Code § 52(a)** and **§ 52(f), attorney's fees and costs,** and all other available relief for discrimination in a business establishment in violation of **Civil Code §§ 51 and 51(f).**

8. **Punitive and Exemplary Damages.**

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

Award **punitive/exemplary damages** under **Civil Code § 3294** in an amount sufficient to **punish** and **deter** malice, oppression, and fraud, **against the unified Farmers enterprise.**

9. **Brandt Attorney's Fees.**

Award **attorney's fees** incurred to recover **policy benefits** under **Brandt v. Superior Court** (1985) 37 Cal.3d 813, **for the services of Plaintiff's attorneys at trial and on appeal**, according to proof (lodestar plus any applicable enhancements permitted by law).

10.    **Declaratory/Equitable Relief (Policy Compliance).**

Enter **declarations** that:

**a.** The **California Amendatory Endorsement (HA01CA)** governs the claim (insured has **12–24 months** to complete RC; insurer must **pay within 30 days** once amounts are agreed);

**b.** Defendant **may not** enforce **manufactured 7-day/180-day** traps or claim-splitting maneuvers where insurer-caused delays and reopenings occurred;

**c.** The dishwasher/toilet water intrusion and related finish/code work are **part of the same covered loss**, not a "new claim";

**d.** Plaintiff remains entitled to **submit and recover** RC/RD and **ALE** consistent with the Policy and California law.

11.     **Pre- and Post-Judgment Interest.**

Award **pre- and post-judgment interest** on all amounts due under **Civil Code §§ 3287(a), 3289(b)** or other applicable law.

12.     **Costs of Suit.**

Award **costs of suit** under the **Code of Civil Procedure** and any other applicable authority.

13.     **Further Relief.**

Grant **such other and further legal or equitable relief** as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff **demands trial by jury** on **all issues so triable**.

DATED:

Oct 15, 2025

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

Respectfully submitted,

s./ Luna D'Sol

**Luna D'Sol**

Plaintiff, In Pro Per

2275 E Belding Dr

Palm Springs CA 92262

213 925 4069

jravada@icloud.com

**FIRST AMMENDED COMPLAINT FOR DAMAGES**

Luna D'Sol
2275 E Belding Dr
Palm Springs CA 92262
213-925-4069
jravada@icloud.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Luna D'Sol                           )   Case No.: No. 25VECV04713
                                     )
            Plaintiff,               )
                                     )   FIRST AMMENDED COMPLAINT FOR DAMAGES
                                     )
                                     )
            vs.                      )   (CCP §§ 395, 418.10; CRC 2.550–2.551)
                                     )
 **FARMERS DIRECT PROPERTY AND**     )
**CASUALTY INSURANCE COMPANY; and**  )
**DOES 1–50, inclusive,**            )
                                     )
            Defendant                )

Exhibit A – Farmers Direct Property and Casualty Insurance Company Homeowners
Declarations (p. 1-57)

Exhibit B – First Payment Issued (October 29, 2024) (p.58-61)

Exhibit C – Farmers Investigation Start (p.62)

Exhibit D – Examination Under Oath (EUO) Start (p.63-64)

Exhibit E – 10/29/2024 Payment Worksheet Reflecting Contents Addressed Under the Claim (p.65-70)

Exhibit F – Payment for Submitted Receipts to Obtain Withheld Depreciation Back (November 12, 2024) (p.71-76)

Exhibit G – Farmers Denial Letter (November 22, 2024) (p.77-79)

Exhibit H – Supervisor Bryce Overturns Mike Saskor Denial (p.80)

Exhibit I – Adjuster Mike Saskor Reimposes 7-Day Deadline During LA Wildfire Emergency (p.81)

Exhibit J – Confirmation Email Showing Adjuster Aware of Active Wildfire Conditions (p.82)

Exhibit K – Farmers Denial January 23, 2025, for Missed 7-Day Deadline (p.83)

Exhibit L – Farmer's Employee in Charge of Department of Insurance Claim I Submitted (p.84)

Exhibit M – Employee Refers Claim to Supervisor Who Was Mishandling Claim (p.85)

Exhibit N – Plaintiff Addresses Supervisor's Rejection to Respect Gender Identity (p.86)

Exhibit O – Supervisor Overturns Denial from Mike Saskor for Second Time (p.87)

Exhibit P – Supervisor's Acknowledgment of Gender Identity and Confirmation of Ongoing
Claim (p.88-89)

Exhibit Q – Supervisor Confirms Communication with Adjuster Mike Saskor (May 14, 2025)
(p.90-95)

Exhibit S – New Supervisor Reassigns Claim to Different Department  (p.96-97)

Exhibit T – Supervisor Albert Pimentel Acknowledges and Respects Gender Identity (p.98-99)

Exhibit U - Formal Response to Denial and Improper Application of Time Limitations (p.100-
101)

Exhibit V – Ongoing Water Intrusion (p.102-104)

Exhibit W – Improper Application of Depreciation (p.105-111)

Exhibit X - Policy holde r dispute and request for depreciation corrections (p.112-128)

**Exhibit A: Policy Declarations (57 pages)**

September 29, 2025

Insured: JULIO R RAVADA
Policy Number: 3872340940
Claim Number: 7007678692-1
Loss Date: 06/03/2024
Policy Term: 12 Months

☐ Attached is a certified copy of the original information sent to the insured.

☒ Attached is a certified copy of the original declarations page, policyback and endorsements.

☐ Attached is a certified copy of the original declaration page.

☐ Attached is a certified reconstructed copy of the declaration page.

☐ Attached is a certified reconstructed copy of the declaration page, policyback and endorsements.

☐ Attached is a certified copy of the original cancellation.

Any additional Declaration Sheet(s) included with these documents labeled as "change or change-misc." may reflect a mid-term change in the policy and therefore a time period of less than the original policy term, however the dates reflect the most current policy information on file, up to and including the date of loss for the above-referenced claim.

PAGE # 1

**Farmers Direct Property and Casualty Insurance Company**
**Homeowners Declarations**

Farmers                                                                                                 08/14/2023V
                                                                                                          ST  04

| | |
|---|---|
| **Policy Number:** 3872340940 | Page   1   of  4 |
| **Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:**  09/28/2023 <br><br> **Bill To:**  Mortgagee |
| **Named Insured:** <br> JULIO R RAVADA <br> 19525 SCHOOL CRAFT  ST <br> RESEDA CA  91335 | **First Mortgagee:**  Loan 2108069981 <br> SELECT PORTFOLIO SERVICING INC <br> ISAOA <br> PO BOX 7277 <br> SPRINGFIELD OH 45501 |

**The residence premises covered by this policy is located at:**
2275 E BELDING DR                    PALM SPRINGS          CA       92262

| Basic Policy Coverages | Limits | Premiums |
|---|---|---|
| A -  Dwelling | $      511,600 | $   1,893.00 |
| B -  Private Structures | $      102,320 | |
| C -  Personal Property | $      358,120 | |
| F -  Personal Liability: | | |
| Each Occurrence | $      500,000 | $        38.00 |
| G - Medical Payments to Others: | | |
| Each Person | $       10,000 | $        14.00 |
| Loss of Use | $      127,900 | |

**Causes of Property Loss**
Special Perils

**Building Property Loss Settlement**
Extended Loss Settlement                                                                    Incl

**Personal Property Loss Settlement**
Replacement Cost on Contents                                                          Incl

**Additional Coverages**
Workers Compensation Coverage                                                    $        Incl

**Optional Coverages**
Back Up of Sewer, Drain and Sump Pump Coverage                    $       23.00
    $10,000 Limit, $1,000 Deductible
Schedule of Personal Property (See Attached)                             $        8.00

                                                **Current Annual Premium:  $   1,976.00**

**Deductible(s)**
$2500 deductible applies to each loss.

**Forms and Endorsements:**           HP1000 0902       HP2000 0205       HP3300 0904       HP4520 0113
HP5100 0105       HP6000 0205       HP7000 0902       C117CA 0108       HA01CA 0108       HA30CA 0108
HF1300 0902       HF5800 0420       HF8000 0506

**Farmers Direct Property and Casualty Insurance Company**
**Homeowners Declarations**

Farmers

08/14/2023V
ST 04

| | |
|---|---|
| **Policy Number:** 3872340940 | Page   2   of 4 |
| **Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:**   09/28/2023 |
| | **Bill To:**   Mortgagee |

**Discounts** for the following have been included in the current annual premium:

* 30% Home Policy Plus, Including
    Automobile
* 15% Protective Device Discount
*  A Special Group Rate Applies

## Rating Information

Territory  6
Protection Class 3
Within 1000 ft of hydrant
Gravel Roof
Roof Age 09 Years

Within 03 miles of
Fire Department:
PALM SPRINGS
Insured DOB 11/20/1984

1 Family
Frame Construction
Built in 1955
Updated in 1955

**Farmers**

**Farmers Direct Property and Casualty Insurance Company**
**Homeowners Declarations**

Case 2:25-cv-10938-SVW-AS   Document 1-2   Filed 11/14/25   Page 51 of 176   Page ID #:64

08/14/2023V
ST 04

| | Page 3 of 4 |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:** 09/28/2023<br><br>**Bill To:** Mortgagee |

## Messages

Your policy has been renewed. Please read all items shown on this renewal Declarations Page to ensure that you have your desired protection.

Inflation Protection: Your limits for Coverages A, B, C, and Loss of Use reflect the construction price index increase of 8.5%.

This policy does not provide coverage against the Peril of Earthquake.

This policy does not include Building Code Upgrade Coverage.

California law requires us to inform you of your right to obtain from us an updated replacement cost estimate. The replacement cost is the estimated cost to reconstruct your house on its original site. It is based upon information you have shared with us and we have received from other independent sources including inspections.

You should carefully review your policy to assure yourself that you have purchased sufficient coverage from us. It is your responsibility to know and understand the amount of insurance you have purchased. If you believe anything on your policy declarations or rating information is incorrect, please contact us.

**IF CONTACT BETWEEN YOU AND FARMERS AUTO & HOME FAILS TO PRODUCE A SATISFACTORY SOLUTION TO YOUR PROBLEM, THE CONSUMER SERVICES DIVISION MAY BE CONTACTED AT: 1-800-927-4357 (CA RESIDENTS), 213-897-8921 (OUTSIDE CALIFORNIA) AND 1-800-482-4833 (TDD); ONLINE AT WWW.INSURANCE.CA.GOV; OR YOU MAY WRITE TO: CALIFORNIA DEPARTMENT OF INSURANCE 300 SPRING STREET, SOUTH TOWER, LOS ANGELES, CA 90013.**

**FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING DISCLOSURE: ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT INFORMATION TO OBTAIN OR AMEND INSURANCE COVERAGE OR TO MAKE A CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.**

We offer policies with Extended Replacement Cost Plus to qualified applicants. If you are interested in this additional coverage, or to see if you qualify, please contact us. You also may access the California Department of Insurance Homeowners Coverage Comparison Tool for more information at the following web address: HomeownersCoverageComparison.insurance.ca.gov.

The cost of any coverage indicated as "Incl" is included in the Basic Policy Coverages premium amount.

## Additional Insured/Mortgagee

First Mortgagee: Loan 2108069981
  SELECT PORTFOLIO SERVICING INC
  ISAOA
  PO BOX 7277
  SPRINGFIELD OH 45501

**Farmers Direct Property and Casualty Insurance Company**
**Homeowners Declarations**

08/14/2023V
ST 04

| | |
|---|---|
| **Policy Number:** 3872340940 | Page 4 of 4 |
| **Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:** 09/28/2023 |
| | **Bill To:** Mortgagee |

**Updated Policy Information**

This Policy Does Not Provide Coverage for Flood Damage.
BLANK

For service or claims, call 800-438-6381
or write to:   Farmers Auto & Home
                     PO Box 6060
                     Scranton, PA 18505                              319-02H-1

## Schedule of Personal Property

| Class | Item | Amount of Insurance | Description | | |
|---|---|---|---|---|---|
| 1B | | $1,500 | Blanket Jewelry Coverage ($2500 LIMIT PER ITEM) | | |
| | | | **Blanket Jewelry Premium** | **$** | **8.00** |
| | | | **Total Annual SPP Premium** | **$** | **8.00** |

# Farmers

# Homeowners

# Insurance Policy

THE COMPANY NAMED IN THE DECLARATIONS

Administrative Offices:  Warwick, Rhode Island

# HOMEOWNERS INSURANCE POLICY

TABLE OF CONTENTS

**HOME**                                                                        PAGE  A-1

    **INSURANCE AGREEMENT AND DECLARATIONS**                        A-1
    **GENERAL DEFINITIONS**                                         A-1
    **SECTION I - COVERAGES**                                       B-1
        Coverage A - Dwelling
        Coverage B - Private Structures

**CONTENTS AND ADDITIONAL COVERAGES**                                           C-1

    **COVERAGE C - PERSONAL PROPERTY**                              C-1
        Personal Property Covered
        Special Limitations on Certain Property
        Personal Property Not Covered
    **SECTION I - ADDITIONAL COVERAGES**                            D-1
        Loss of Use
        Debris Removal
        Reasonable Repairs
        Fire Department Charges
        Emergency Removal of Property
        Emergency Living Expense
        Refrigerated Contents
        Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money
        Data and Records
        Lock Replacement
        Reward Coverage
        Trees, Shrubs, Plants and Lawns
        Loss Assessment
        Land
        Volcanic Action
        Collapse
        Inflation Protection
        Landlord's Furnishings
        Fungus and Mold Remediation

**CAUSES OF PROPERTY LOSS**                                                     E-1

    **SECTION I - LOSSES WE COVER**                                 E-1
        Loss Deductible Clause
        Coverage A - Dwelling
        Coverage B - Private Structures
        Coverage C - Personal Property
    **SECTION I - BROAD NAMED PERILS**                              E-1
    **SECTION I - LOSSES WE DO NOT COVER**                          F-1

**PROPERTY LOSS SETTLEMENT**                                                    G-1

    SECTION I - HOW WE SETTLE A PROPERTY LOSS                       G-1

**PROPERTY CONDITIONS** PAGE  H-1

    **SECTION I - CONDITIONS** H-1
        Insurable Interest and Limit of Liability
        What You Must Do After a Loss
        Our Settlement Options
        Loss
        Loss to a Pair or Set
        Abandoned Property
        Appraisal
        Rights and Duties of Mortgagee
        No Benefit to Bailee

**LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES** I-1

    **SECTION II - LOSSES WE COVER** I-1
        Coverage F - Personal Liability
        Coverage G - Medical Payments to Others
    **SECTION II - LOSSES WE DO NOT COVER** I-1
        Coverage F - Personal Liability and Coverage G - Medical Payments to Others
        Coverage F - Personal Liability
        Coverage G - Medical Payments to Others
    **SECTION II - ADDITIONAL COVERAGES** J-1
        Damage to Property of Others
        Claim Expenses
        First Aid Expenses
        Loss Assessment
    **SECTION II - CONDITIONS** K-1
        Your Duties in the Event of an Accidental Loss
        What an Injured Person Must Do Under Coverage G - Medical Payments to Others
    **OPTIONAL COVERAGES** L-1
        Earthquake
        Home Computer
        Private Structures Rented to Others
        Business Pursuits
        Watercraft Liability
        Incidental Business Occupancy by You

**GENERAL CONDITIONS** M-1

        Policy Period
        Concealment or Fraud
        Conformity to Statute
        Death
        Policy Changes
        Assignment
        Bankruptcy or Insolvency
        Our Recovery Right
        Lawsuit Against Us
        Other Insurance and Service Agreement
        Premium
        Cancellation
        Nonrenewal

**PAGE #8**

HP1000 0902

# HOME

### INSURANCE AGREEMENT AND DECLARATIONS

This insurance policy is a legal contract between **you** (the policyowner) and **us** (the Company named in the Declarations).  It insures **you** and **your** property for the various kinds of insurance shown in the Declarations.  The Declarations are an important part of this policy.  By acceptance of this policy, **you** agree that the statements contained in the Declarations and in any application are **your** true and accurate representations.  This policy is issued and renewed in reliance upon the truth of such representation.  The terms of this  policy impose joint obligations on all persons defined as **you.**  This means that the responsibilities, acts and failures to act of a person defined as **you** will be binding upon another person defined as **you.**

This policy is issued and renewed in reliance upon payment of the required premium.  The exact terms and conditions are explained in the following pages.

### GENERAL DEFINITIONS

The following words and phrases appear repeatedly throughout this policy.  They have a special meaning and are to be given that meaning whenever used in this policy or any endorsement which is part of this policy.

**"Actual cash value"** means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence.

**"Bodily injury"** means any physical harm to the body including any resulting sickness or disease.  This term includes required care, loss of services and death if it is a result of such physical harm, sickness or disease. **Bodily injury** does not include:
1.   any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism;
2.   the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person;
3.   the actual, alleged or threatened sexual molestation of a person; or
4.   emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless the direct result of physical harm.

**"Business"** or **"business purposes"** means:
1.   any full or part time activity of any kind engaged in for economic gain, and the use of any part of any premises for such purposes; and
2.   **your** property rented or held for rental by **you.**  Rental of the **residence premises** is not considered business when:
     A.   it is rented occasionally for use as a residence;
     B.   a portion is rented to no more than two roomers or boarders; or
     C.   a portion is rented as a private garage.

**"Computer"** means a programmable electronic device that can store, retrieve and process data.

**"Fungus and mold"** means fungi, mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents or by-products produced by any of these.

**"Insured premises"** means:
1.   the **residence premises** described in the Declarations;
2.   any other premises specifically named in the Declarations and used by **you** as a residence;
3.   any premises acquired by **you** during the term of this policy and used by **you** as a residence;
4.   any premises used by **you** in connection with a premises described in 1., 2. or 3. above;
5.   any premises not owned by **you** but where **you** may be temporarily residing;

8. land owned or rented by **you** on which a one or two family dwelling is being constructed for **your** use as a residence; and
9. individual or family cemetery plots or burial vaults owned by **you.**

**"Media"** means the storage device upon which software is stored.  This includes blank cassette tapes or disks used solely with the **computer** or **peripheral device.**

**"Medical expenses"** means reasonable expenses for necessary medical, surgical, x-ray, chiropractic, ambulance, hospital, professional nursing, funeral and dental services, including prosthetic devices.

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy.

**"Peripheral device"** means any unit used to operate with the **computer** system.  This includes tape or disk drives or printers.

**"Personal injury"** means injury arising out of one or more of the following offenses:
1. false arrest, false imprisonment or wrongful detention;
2. malicious prosecution;
3. wrongful eviction from or wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or in behalf of its owner, landlord or lessor;
4. oral, written or representational publication of material that slanders or libels a person or organization;
5. oral statements or publication of writings or pictures that falsely disparages a person's or organization's goods, products or services; or
6. oral statements or publication of writings or pictures that violates a person's right of privacy.

**"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

**"Purchased software"** means information or a program that is stored on a storage device such as a magnetic tape or disk for use on a **computer,** and has been purchased from another party.

**"Residence employee"** means **your** employee while performing duties arising out of and in the course of employment by **you** in connection with  the maintenance or use of the **residence premises,** including similar duties elsewhere, not in connection with **your business.**  This includes an employee leased to **you** by a labor leasing firm under an agreement with **you.**

**"Residence premises"** means:
1. a one, two, three or four family dwelling used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches; or
2. if **your** dwelling is a condominium, cooperative or leased property, the premises reserved for **your** exclusive occupancy and use, used as a private residence by **you** and named in the Declarations.  This includes the private structures and private approaches if these are reserved for **your** exclusive occupancy and use.
This does not include any portion of a premises used for **business purposes.**

**"We," "us,"** and **"our,"** mean the Company named in the Declarations.

**"You"** and **"your"** mean:
1. the person or persons named in the Declarations and if a resident of the same household:
   A. the spouse of such person or persons;
   B. the relatives of either; or
   C. any other person under the age of twenty-one in the care of any of the above; and
2. under **SECTION II** only:
   A. any other person or organization legally responsible for loss caused by animals or watercraft owned by

HOME

HP1000 0902

   B.  with respect to the use of any vehicle, with **your** consent, to which this policy applies:
      1.  any person while engaged in employment by **you;** or
      2.  other persons using the vehicle on the **insured premises.**

**SECTION I - COVERAGES**

**COVERAGE A - DWELLING**

1. **Dwelling Owners.** If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A. the dwelling owned by **you** on the **residence premises;** and
   B. structures, equipment and accessories attached to the dwelling.  Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

2. **Condominium Owners.** If **your** dwelling is a condominium or cooperative, **we** cover:
   A. the alterations, appliances, fixtures, and improvements and items of real property attached to **your** unit on the **residence premises;** and
   B. property which is **your** insurance responsibility under a corporation or association of property owners agreement.

3. **Renters.** If **your** dwelling is leased property, **we** cover the alterations, appliances, fixtures and improvements made or acquired at **your** expense which are part of the building and contained within the **residence premises** occupied, but not owned, by **you.**

**We** cover building equipment, materials and supplies, to the extent of **your** financial interest, located on or adjacent to the **residence premises** for use in connection with maintenance, construction, alteration, or repair of the dwelling or private structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

**COVERAGE B - PRIVATE  STRUCTURES**
At the location of the **residence premises:**
1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or
2. if **your** dwelling is a condominium, cooperative or leased property, **we** cover private structures:
   A. owned solely by **you** and separated from the dwelling by clear space; or
   B. available for **your** exclusive use and which are **your** insurance responsibility under a corporation or association of property owners agreement.
   Equipment, accessories, alterations, appliances, fixtures and improvements made or acquired at **your** expense which are attached to the private structure are also covered.

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures.

**We** do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

HP2000 0205

# CONTENTS AND ADDITIONAL COVERAGES

### COVERAGE C - PERSONAL PROPERTY

**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

After a loss and at **your** option, this coverage may be extended to include personal property owned by:
1. others while on that portion of the **residence premises** occupied by **you;** or
2. a guest or **residence employee,** while the property is in a residence occupied by **you.**

If a covered loss occurs at the **residence premises,** **we** will pay up to the limit of liability for personal property for the location shown in the Declarations where the personal property is damaged, destroyed or stolen.

If a covered loss occurs away from **your** residence, **we** will pay up to the limit of liability shown in the Declarations for the selected single location from which the payment is to be made.

If a covered loss occurs at **your** residence not covered by this insurance or another policy for personal property issued to **you** by Metropolitan Property and Casualty Insurance Company or any of its affiliates, **we** will pay up to 10% of the limit of liability shown in the Declarations for the selected single location that provides the greatest coverage from which the payment is to be made.  Personal property in a newly acquired principal residence is not subject to this 10% limitation for the 30 days immediately after **you** begin to move **your** property there.

If a theft loss occurs at a commercial self-storage facility, **we** will pay up to 20% of the limit of liability shown in the Declarations for the selected single location from which the payment is to be made.  This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

**We** will select a **residence premises** for personal property from which the payment is to be made for covered loss based upon the most favorable combination of the following:
1. **our** limit of liability and deductible;
2. the basis of loss settlement under **SECTION I - HOW WE SETTLE A PROPERTY LOSS;** and
3. the perils covered under **SECTION I - LOSSES WE COVER.**
Regardless of the number of policies or insured locations providing **you** with personal property coverage, payment  will be made based only on this selected location.

**Special Limitations on Certain Property**
**We** will not pay more than the following amount for each category in any one loss.  These limitations do not increase the amount of insurance under **COVERAGE C - PERSONAL PROPERTY.**

1. **Money.**  $200 for coins and currency at face value, bullion, bank notes, medals and scrip.  It also includes stored value cards for which there exists no traceable connection to **you** or for which no account is established in **your** name.
   If Increased Coverage on Money is shown in the Declarations, then the $200 limit is increased to the amount shown.
2. **Securities.**  $1500 for securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, stamps at face value, and tickets.
3. **Manuscripts.**  $1500 for manuscripts, including the cost to research, replace or restore the information from the lost or damaged material.
4. **Jewelry.**  $1500 for loss by theft of jewelry, watches, furs, and loose precious and semi-precious stones. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.
5. **Watercraft.**  $1500 for watercraft, of all types, including their trailers, furnishings, equipment and outboard motors.
6. **Trailers.**  $1500 for trailers not used with watercraft.

# CONTENTS AND ADDITIONAL COVERAGES    HP2000 0205

**business.**  $250 for any roperty away from the **residence premises** used or intended for use in a **business.** This includes merchandise held as samples or for sale or delivery after a sale.  This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it.

If Increased Coverage on Business Property is shown in the Declarations, then the $1000 limit for property on the **residence premises** is increased to the amount shown and the limit of liability for loss away from the **residence premises** will be 20% of the amount shown.

8.  **Computers.**  $5000 for **computers** and the **peripheral device(s), media** and **purchased software** used with them.  The **media** will be covered only up to its retail value, if pre-programmed, or the retail value of the **media** in blank or unexposed form, if  blank or self-programmed.

9.  **Firearms.**  $2500 for loss by theft of firearms and related equipment.  This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

10. **Silverware and Goldware.**  $2500 for loss by theft of silverware and goldware.  This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

    If Increased Coverage on Silverware and Goldware is shown in the Declarations, then the $2500 limit is increased to the amount  shown.

11. **Coin, Currency and Stamp Collections.**  $1500 for numismatic and philatelic property for which the age, history, scarcity and condition contribute substantially to their value.  Numismatic property includes coins and paper currency.  Philatelic property includes postage stamps, postmarks, post cards and stamped envelopes.

12. **Memorabilia.**  $5000 for memorabilia, souvenirs, and collector's items such as trading cards, comic books, autographed merchandise and similar articles for which the age, history, scarcity and condition contribute substantially to their value.

    If Increased Coverage on Memorabilia is shown in the Declarations, then the $5000 limit is increased to the amount shown.

13. **Tools.**  $5000 for loss by theft of tools.  This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.  Tools used or intended for use in a **business** are limited by Business Property above.

    If Increased Coverage on Tools is shown in the Declarations, then the $5000 limit is increased to the amount shown.

14. **Compact Discs.**  $1000 for loss by theft of tapes, wires or discs while in or upon a motorized land vehicle. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

15. **Electronic Apparatus.**  $1000 for loss to electronic apparatus, while in or upon a motorized land vehicle, if the electronic apparatus is equipped to be operated by power from the electrical system of  the vehicle while retaining its capability of being operated by other sources of power.  Electronic apparatus includes accessories or  antennas for use with any electronic apparatus.  Electronic apparatus does not include items covered under Computers above.

## Personal Property Not Covered

1.  **We** do not cover articles separately described and specifically insured, regardless of the limit for which they are insured, by this or any other policy.

2.  **We** do not cover animals, birds or fish.

3.  **We** do not cover any motorized land vehicles and parts.  **We** do not cover such property whether owned or operated by, or rented or loaned to **you.**  This includes:

    A.  their equipment and accessories; or

    B.  electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motorized land vehicles.  Electronic apparatus includes accessories or antennas for use with any electronic apparatus.

    The exclusion of property described in items 3.A. and 3.B. above applies only while the property is in or upon the vehicle.

    However, **we** cover unlicensed motorized land vehicles, not subject to registration, which are used solely to service and maintain residential property or designed for assisting the handicapped.

4.  **We** do not cover aircraft and parts.  Aircraft including self-propelled missiles and spacecraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

5.  **We** do not cover property of roomers and boarders not related to **you.**

6.  **We** do not cover property of tenants, whether related to **you** or not.

7.  **We** do not cover property  regularly  rented  or  held  for  rental  to  others  when on the  **residence  premises**

# CONTENTS AND ADDITIONAL COVERAGES    HP2000 0205

except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Landlord's Furnishings.**

8. **We** do not cover property rented or held for rental to others when not on the **residence premises.**

9. **We** do not cover **business** and personal data and records including such data stored in books of account, abstracts, drawings, card index systems and other records.  This exclusion does not apply to property covered under **SECTION I - ADDITIONAL COVERAGES** for **Data and Records.**

10. **We** do not cover **media**  for electronic data processing that cannot  be replaced with other of like kind and quality on the current retail market.

11. **We** do not cover credit cards, electronic fund transfer cards or access devices except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card Protection.**

## SECTION I - ADDITIONAL COVERAGES

The deductible will not apply to Section I - Additional Coverages, except where specified in the Additional Coverage.

1. **Loss of Use.**  The limit of liability for Loss of Use is the total limit for the coverages in A. and B. below.
    A. **Additional Living Expense / Fair Rental Value.**  This applies upon loss to covered property resulting from a covered cause of loss.  However, this does not apply for damages resulting from **fungus and mold.**  When a covered property loss makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, <u>either</u> of the following.  However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below.

        1. **Additional Living Expense.  We** will pay the reasonable increase in living expenses necessary to maintain  **your**  normal standard of living.  **Our** liability will not exceed the smallest of:
            a. payment for the shortest time to either repair or replace the **residence premises.**  This period of time is not limited by the expiration of this policy;
            b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate.  This period of time is not limited by the expiration of this policy; or
            c. the limit of  liability for Loss of Use as specified in the policy Declarations.

        2. **Fair Rental Value.  We** will pay the fair rental value of that part of the **residence premises** where **you** reside less any expenses that do not continue while the premises is not fit to live in. **Our** liability will not exceed the smallest of:
            a. payment for the shortest time to either repair or replace the **residence premises.**  This period of time is not limited by the expiration of this policy;
            b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate.    This period of time is not limited by the expiration of this policy; or
            c. the limit of liability for Loss of Use as specified in the policy Declarations.
    B. **Loss of Rental Income.**  This applies upon loss to covered property resulting from a covered cause of loss.  However, this does not apply for damages resulting from **fungus and mold.  We** will pay **your** loss of rental income resulting from a covered property loss less charges and expenses which do not continue, while the part of the **residence premises you** rent to others, or hold for rental, is uninhabitable. Payment will be for the shortest time required to repair or replace the rented part.  **We** do not cover the loss or expense due to cancellation of a lease or agreement.

    C. **Prohibited Use.  We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living and the loss of fair rental income when access to the **residence premises** is denied by civil authorities because of a loss to a neighboring premises caused by a peril **we** insure against.  Payment is for a period of time not to exceed fourteen days.  The period of time is not limited by expiration of this policy.

2. **Debris Removal**
    A. **We** will pay reasonable expenses **you** incur to remove:
        1. debris of covered property resulting from a cause of loss **we** cover for the damaged property; or
        2. ash, dust or particulate matter from a volcanic action that has caused direct loss to a building or

# CONTENTS AND ADDITIONAL COVERAGES   HP2000 0205

This expense is included within **our** limit of liability that applies for the covered property. If the amount payable for the actual damage to the property plus the debris removal expense is more than **our** limit of liability for the covered property, **we** will pay up to an additional 10% of that limit for debris removal.

B. **We** will also pay up to $500 for any one loss for the reasonable expenses **you** incur for the removal from **your residence premises** of:
1. **your** tree(s) felled by windstorm, hail or the weight of ice, snow or sleet, provided the tree:
   a. rests on or against the dwelling or building structure or caused damage to property covered under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
   b. blocks a driveway on the **residence premises** which prevents a motor vehicle from entering or leaving the **residence premises;** or
   c. blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling; or
2. **your** neighbor's tree(s) felled by a loss caused by **SECTION I - BROAD NAMED PERILS** provided the tree:
   a. caused damage to property covered under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
   b. blocks a driveway on the **residence premises** which prevents a motor vehicle from entering or leaving the **residence premises;** or
   c. blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling.

3. **Reasonable Repairs.** **We** will pay the reasonable expenses **you** incur for necessary immediate and temporary repairs to protect covered property from further loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Charges.** **We** will pay up to $750 for **your** liability assumed by contract or agreement when a fire department is called to save or protect the **residence premises** from an insured peril. **We** do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Emergency Removal of Property.** **We** will pay for loss to covered property from any cause while being removed from a premises because of danger from a loss **we** cover. This coverage also applies to the property for up to 30 days from the date of removal. **We** will also pay for reasonable expenses **you** incur for the removal and return of the covered property. This coverage does not increase the limit of liability applying to the property being removed.

6. **Emergency Living Expense.** **We** will pay up to $500 for the reasonable increase in living expenses **you** incur due to a power interruption to the **residence premises.** The power interruption must take place away from the **residence premises.** The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout. Coverage does not begin until 48 hours after the power interruption begins.

7. **Refrigerated Contents.** **We** will pay up to $1000 for the contents of a freezer or refrigerated food storage unit on the **residence premises** for loss due to a mechanical failure or power interruption. If mechanical failure or power interruption is known to **you,** all reasonable means must be used to protect the property from further damage or this coverage is void. The policy deductible does apply to this coverage. The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout.

8. **Identity Theft and Credit Protection**
   A. **Identity Theft Resolution.** **We** will provide, at **our** expense, a representative of **our** choice to assist **you** in resolving issues of unauthorized use of **your** identity or **your** credit information. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. The expense of this assistance will not reduce the amount paid under this coverage.

# CONTENTS AND ADDITIONAL COVERAGES    HP2000 0205

1. that **you** are legally required to pay because of the unauthorized use of any credit card or electronic fund transfer card issued to or registered in **your** name;
2. to **you** caused by forgery or alteration of any check or negotiable instrument; and
3. to **you** through acceptance in good faith of counterfeit United States or Canadian paper currency.

If Increased Coverage on Credit Card is shown in the Declarations, then the $1000 limit is increased to the amount shown.

Exclusions.  **We** will not pay:
1. more than the limit of liability stated above.  All loss due to forgery or unauthorized use by any one p`erson or in which that person is concerned is considered one loss;
2. any loss arising out of **your** dishonesty; or
3. any loss resulting from **your business** activities.

Defense
A.  **We** may make any investigation and settle any claim or suit that **we** decide is appropriate.  **Our** obligation to defend any claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.
B.  If a suit is brought against **you** for liability under the Identity Theft and Credit Protection coverage, **we** will provide a defense at **our** expense and by counsel of **our** choice.
C.  **We** have the option to defend **you** or **your** bank, at **our** expense, against any suit for the enforcement of payment under the Forgery coverage.

9. **Data and Records.**   **We** will pay up to $1500 for personal data and records when loss or damage is caused by **SECTION I - BROAD NAMED PERILS** or by computer virus.  This includes the cost of blank books, cards or other blank material plus the cost of labor **you** incur to research, transcribe, copy, replace or restore the information from the lost or damaged material.  Computer virus means an illegal or malicious entry into **your computer** which results in functions that distort, corrupt or manipulate the **computer, peripheral device** or **media.**
**We** do not cover **business** data and records.

10. **Lock Replacement.**   **We** will pay the reasonable expenses to replace the exterior door lock or lock cylinder of the **residence premises** with a lock of like kind and quality when a key to the lock has been stolen during a theft  of other personal property for which coverage is provided by this policy.  **You** must report the theft to **us** and the police within 72 hours after discovery.  This coverage is in addition to the limit of liability applying to the stolen property.

11. **Reward Coverage.  We** will pay 10% of the amount of the loss to the **residence premises** up to $5000 to anyone providing information leading to an arson conviction in connection with the loss.

**We** will pay anyone providing information leading to the recovery of personal property stolen from **you** 10% of the value of the recovered property up to  $5000.

**We** will pay 10% of the amount of the loss up to $1000 to anyone providing information leading to the arrest and conviction of anyone who robs, steals or burglarizes **your** property.

These amounts shall not be increased regardless of the number of persons providing information. These coverages are in addition to the limit of liability applying to the damaged property.

12. **Trees, Shrubs, Plants and Lawns.**  Coverage applies to direct loss caused by:  fire or lightning, theft, explosion, aircraft, riot or civil commotion, vandalism or malicious mischief, vehicles not owned or operated by an occupant of the **residence premises,** or collapse of a building structure or any part of a building structure. This coverage is in addition to the limits of liability applying to Section I Property.

**We** will pay up to $500 for any one tree, shrub or plant.  **We** will pay up to 5% of the Coverage A limit of liability for loss to trees, shrubs, plants and lawns at the **residence premises.**  If **your** dwelling is a

PAGE # 16

# CONTENTS AND ADDITIONAL COVERAGES   HP2000 0205

If Increased Coverage on Trees, Plants and Shrubs is shown in the Declarations, **we** will pay up to $1000 for any one tree, shrub or plant.  **We** will pay up to 10% of the Coverage A limit of liability for loss to trees, shrubs and plants at the **residence premises** or 5% of the Coverage A limit for loss to lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 10% of the Coverage C limit of liability for loss to trees, shrubs and plants or 5% of the Coverage C limit for loss to lawns at the **residence premises.**

**We** do not cover trees, shrubs, plants and lawns grown for **business purposes.**

The policy deductible does apply to this coverage.

13. **Loss Assessment.  We** will pay up to $1000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners.  This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises.**

If Increased Loss Assessment is shown in the Declarations, then the $1000 limit is increased to the amount shown.

This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a peril covered under **SECTION I - LOSSES WE COVER** for **COVERAGE A - DWELLING.**  This coverage does not include loss caused by:
A.   earthquake; or
B.   land shock waves or tremors before, during or after a volcanic eruption.

Regardless of the number of assessments, the limit referenced above is the most **we** will pay with respect to any one loss.

This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

A $250 deductible does apply to this coverage unless **you** also have a loss covered under Section **I** Coverage A, B or C from the same event.

This coverage is in addition to the limit of liability applying to the Coverage A, B or C property.

**We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

14. **Land.**  If a structure covered under Coverage A or Coverage B sustains a covered loss, then **we** will pay up to $10,000 for the cost **you** incur to replace, rebuild, stabilize or otherwise restore the land necessary to support that portion of the structure that **you** own.  This coverage is in addition to the limit of liability applying to the damaged property.
**We** will not pay for any:
A.   loss caused by chemicals in the soil or resulting from the release of toxic materials or other pollutants or contaminants; or
B.   assessment charged against **you**  by a corporation or association of property owners.

15. **Volcanic Action.  We** will pay for direct physical loss to a covered building or covered property in a building resulting from the eruption of a volcano when direct loss is caused by:
A.   volcanic blast or airborne shock waves;
B.   ash, dust or particulate matter; or
C.   lava flow.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit of liability applying to the damaged property.

The policy deductible does apply to this coverage.

16. **Collapse.  We** will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:
    A. perils described in **SECTION I - BROAD NAMED PERILS;**
    B. hidden decay of the structure;
    C. hidden insect or hidden vermin damage;
    D. weight of contents, equipment, animals or people;
    E. weight of ice, snow, sleet or rain which collects on a roof; or
    F. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of  the construction, remodeling or renovation.

    Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, septic field, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items B., C., D., E.,  and F. unless the loss is a direct result of the collapse of a  building.

    Collapse means an abrupt falling down or caving in of a building or any part of a building.  Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion.  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
    This coverage does not increase the limit of  liability applying to the damaged covered property.

    The policy deductible does apply to this coverage.

17. **Inflation Protection.**  The limits of liability specified in the Declarations of this policy, or any amendments thereto, for Coverages A, B and C and Loss of Use are continuously adjusted in accordance with the applicable construction price index in use by **us**.  This index will then be multiplied by the limit of liability for Coverages A, B and C and Loss of Use separately.

18. **Landlord's Furnishings.  We** will pay up to $2500 for **your** appliances, carpeting and other household furnishings in each apartment on the **residence premises** regularly rented or held for  rental to others by **you** for loss caused by **SECTION I - BROAD NAMED PERILS** other than **Theft.**  The $2500 limit is the most **we** will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.  This coverage does not increase the limit of liability applying to the damaged property.

19. **Fungus and Mold Remediation.  We** will pay up to a limit of $5000 for remediation treatment and remediation testing as necessary to complete the repair or replacement of the damaged property.  This coverage applies when property covered under Coverages A, B or C is damaged by a covered water loss. Furthermore, this coverage applies only if all reasonable means were used to save and preserve the property from further damage at and after the time of the covered water loss.  This limit includes:
    a. the cost to tear out and replace any part of the covered property necessary to gain access to any organisms listed under remediation treatment; and
    b. if the need for remediation treatment or remediation testing makes the **residence premises** uninhabitable, the reasonable increase in living expenses and **your** loss of rental income.  Payment will be for the shortest time required to perform the remediation treatment or remediation testing.

    Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold.**

    Remediation testing includes any testing or investigation of either property or air to detect, measure, evaluate or confirm the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

loss at any one covered location, for the total of all loss or costs payable under this Additional Coverage. This applies regardless of the number of claims made under this policy.

If Increased Coverage on Fungus and Mold Remediation is shown in the Declarations, then the $5000 limit is increased to the amount shown.

20. **Dwelling Under Construction Extension of Coverages.**  This coverage is contingent upon prior written notification to **us** by **you** that the dwelling described in the Declarations is under its initial construction and has not been completed and occupied.  This coverage remains in force until the dwelling is completed and occupied or the policy expires, cancels or terminates, whichever comes first.

A.  Provisional Amount of Insurance
The limit of liability stated in the Declarations for Coverage A is provisional, and is based upon the projected value of the dwelling at the date of completion.  The actual amount of insurance on any date while the policy is in force will be a percentage (%)  of the provisional amount.  The percentage (%)  will be the proportion that the actual value of the property at the time of loss bears to the projected value at the date of completion. However, this amount of insurance shall not, in any case, exceed the limit of liability stated in the Declarations for Coverage A.

B.  **We** agree to extend **COVERAGE C - PERSONAL PROPERTY, COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** to the residence where **you** are residing while waiting for the dwelling under construction described in the Declarations to be completed and occupied.

C.  Theft of Personal Property
**We** cover loss of personal property by theft in or from a dwelling under construction at the location described in the Declarations, only if the dwelling is fully enclosed and capable of being locked.  The personal property must be owned by **you,** not supplied by the contractor.   **We** do not cover theft committed by anyone defined as   **you.**  Coverage will be in force until the dwelling is completed and occupied.

D.  Deductible.  The policy deductible does apply to this coverage.

HP3300 0904

# CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
(SPECIAL  PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations.  **We** will pay only that part of the loss over such stated deductible.

**COVERAGE A - DWELLING AND COVERAGE B - PRIVATE STRUCTURES**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in **SECTION I - LOSSES WE DO NOT COVER.**

**COVERAGE C - PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C when loss or damage is caused by **SECTION I - BROAD NAMED PERILS**, except as excluded in **SECTION I - LOSSES WE DO NOT COVER.**

### SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold.**  There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

1. **Fire or Lightning**
2. **Windstorm or Hail**
   **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.
   **We** do not pay for loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building.  **We** do cover canoes and rowboats on the **residence premises.**
3. **Explosion**
4. **Riot or Civil Commotion**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles**
7. **Smoke,** if the loss is sudden and accidental including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.
   **We** do not pay for loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or Malicious Mischief**
   **We** do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss.  A **residence premises** being constructed is not considered vacant.
9. **Theft,** or attempted theft, including loss of property from a known place when it is likely that a theft has occurred.  **We** do not pay for loss caused by theft:
   A. if committed by **you** or by any person regularly residing on the **residence premises;**
   B. in or from a dwelling under construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or

<span style="color:red">PAGE # 20</span>

CAUSES OF PROPERTY LOSS                                                HP3300 0904

**We** do not pay for loss caused by theft that occurs away from the **residence premises** of:
A.  property while in any other residence owned, rented to or occupied by **you,** except while **you** are temporarily residing there.  Coverage is provided for a student's property while at a premises away from home if the student has been there at any time during the 45 days immediately preceding the loss;
B.  watercraft of all types including its furnishings, equipment and outboard motors; or
C.  trailers and campers.

10. **Falling Objects**
    **We** cover loss to personal property inside a building only if the falling object first damages the exterior walls or roof.  Damage to the falling object itself is not covered.

11. **Weight of Ice, Snow or Sleet** which causes damage to a building or to property contained in a building.
    **We** do not cover loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

12. **Discharge or Overflow of Water or Steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance.  The loss must be sudden and accidental. With regard to **your** property covered under Coverage A or Coverage B, **we** also will pay to tear out and replace any part of a building or other structure on the **residence premises** but only when necessary to repair the system or appliance from which the water or steam escaped.  However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the **residence premises.  We** do not pay for loss:
    A.  to the system or appliance from which the water or steam escapes;
    B.  caused by or resulting from freezing under this peril;
    C.  caused by water which backs up through sewers or drains;
    D.  caused by water which overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from the foundation area;
    E.  caused by water which overflows from a roof drain, gutter, downspout or similar fixtures or equipment; or
    F.  on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant.

13. **Rupturing, Cracking, Burning or Bulging** of a steam or hot water heating system, an air-conditioning or automatic fire protective sprinkler system, or an appliance for heating water.  The loss must be sudden and accidental.  **We** do not pay for loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a domestic appliance.
    **We** do not pay for loss on the **residence premises** while the dwelling is unoccupied, unless **you** have used reasonable care to maintain heat in the building or have shut off the water supply and drained the water from all plumbing and appliances.  However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.  For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment.

15. **Sudden and Accidental Damage from Electrical Currents Artificially Generated** to electrical appliances, devices, fixtures and wiring.

16. **Breakage of Glass or Safety Glazing Material**
    **We** will pay for direct physical loss to covered property caused by the breakage of glass or safety glazing material which is part of a building, window or door on the **residence premises.**
    **We** do not pay for loss if the dwelling was vacant for more than 30 consecutive days immediately prior to the loss.  A dwelling being constructed is not considered vacant.


## SECTION  I - LOSSES WE DO NOT COVER


1.   **We** do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events.  **We** do not insure for any such loss regardless of:
     (a)  the cause of the excluded event;
     (b)  other causes of the loss; or
     (c)  whether such causes acted at the same time or in any other sequence with the excluded event to produce or contribute to the loss.

# CAUSES OF PROPERTY LOSS                              HP3300 0904

These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area.  The excluded events are listed below.

A.  **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
    1.  by **you** or at **your** direction; and
    2.  with the intent to cause a loss.
    This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

    In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

B.  **Pollution,** meaning loss or damage to property which results directly or indirectly from:
    1.  discharge, dispersal, release or escape of pollutants or contaminants, including damage caused by chemicals in the soil and loss resulting from the release of toxic materials or other pollutants or contaminants, no matter  how caused;
    2.  discharge, dispersal, release or escape of fuel oil and other petroleum products; or
    3.  smog; smoke from agricultural smudging or industrial operations.

    However, **we** pay for direct loss that ensues after pollution.  **We** pay for such ensuing loss only if caused by fire, smoke that is not from agricultural smudging or industrial operations, explosion, glass breakage, or water damage not specifically excluded in this policy.  If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

C.  **Lead Exposure,** meaning loss or damage to the **residence premises** or any property owned, rented or controlled by **you** (including private structures and private approaches), which result directly or indirectly from the presence of lead.  **We** do not pay for any costs or expenses incurred or loss arising out of:
    1.  the abatement, neutralization, cleanup, removal, repair, refurbishing or treatment of:
        a.  lead;
        b.  property containing lead;
        c.  soil, or earth containing lead;
        d.  water, pipes or plumbing containing lead;
        e.  paint, putty, dust or plaster containing lead; or
        f.  any other product or substance containing lead; or
    2.  any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
        a.  lead;
        b.  property containing lead;
        c.  soil, or earth containing lead;
        d.  water, pipes or plumbing containing lead;
        e.  paint, putty, dust or plaster containing lead; or
        f.  any other product or substance containing lead.

D.  **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:
    1.  flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
    2.  water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
    3.  water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure or water  which causes earth movement.
    This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

CAUSES OF PROPERTY LOSS                                                    HP3300 0904

then **we** pay for only the ensuing loss.

E.  **Earth Movement,** meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:
    1.  earthquake and earthquake aftershocks;
    2.  volcanic eruption and volcanic effusion;
    3.  sinkhole;
    4.  subsidence;
    5.  mudslide including landslide, mudflow, debris flow, avalanche or sediment;
    6.  erosion or excavation collapse;
    7.  the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and
    8.  volcanic explosion and lava flow, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Volcanic Action.**

    This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.

    However, **we** pay for direct loss that ensues after earth movement if caused by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing material and then **we** pay for only the ensuing loss.

F.  **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy.

G.  **Power Failure,** meaning the failure of power or other utility service if  the failure takes place off the **residence premises,** except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Emergency Living Expense.**  If a loss **we** pay for ensues on the **residence premises, we** pay for only the ensuing loss.

H.  **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against.

I.  **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.  Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke.

    However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

J.  **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.  Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except:
    1.  conditions **we** insure under **Prohibited Use** of **SECTION  I - ADDITIONAL COVERAGES** for **Loss of Use;** or
    2.  acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this policy.

K.  **Collapse,** except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Collapse.**

2.  **We** do not insure under any coverage for any loss consisting of one or more of the items  below.  However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy.

# CAUSES OF PROPERTY LOSS                                        HP3300 0904

A. conduct,  act,  failure to act,  or decision of any person,  group,  organization  or  governmental  body whether intentional, wrongful, negligent or without fault;

B. defective, inadequate, faulty or unsound:
1. planning, zoning, development, surveying, siting;
2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
3. materials used in repair, construction, renovation or remodeling; or
4. maintenance;

of any property whether on or off the **residence premises.**  Property includes land, structures or improvements of any kind; and

C. weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3. **We** do not cover loss or damage to the property described in <u>Coverage A</u> and <u>Coverage B</u> which results directly or indirectly from any of the following:

A. wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it  to damage or destroy itself;

B. **fungus and mold.**  There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES**  for **Fungus and Mold Remediation;**

C. settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

D. animals owned or kept by **you** or any person regularly residing on the premises;

E. birds, vermin, rodents or insects;

F. theft in or from the **residence premises** while under construction, or of materials and supplies for use in the construction, until the **residence premises** is completed and occupied;

G. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a domestic appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if **you** have used reasonable care to maintain heat in the building or if **you** shut off the water supply and drained the plumbing and appliance of water.  However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment;

H. freezing, thawing or pressure or weight of water, snow or ice, whether driven by wind or not, to a swimming pool including filtration, heating and circulation systems, fence, driveway, roadway, walkway, pavement, patio, foundation, footing, retaining wall, bulkhead, pier, wharf or dock;

I. seepage, meaning continuous or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, from within:
1. a heating system;
2. an air conditioning system;
3. an automatic fire protective sprinkler system;

# CAUSES OF PROPERTY LOSS                HP3300 0904

However, **we** pay for ensuing damages to building property that results from such seepage if the leakage of water is not able to be observed and is hidden within the walls or ceilings or above the ceilings or beneath the floors but not below the slab or foundation floor of a structure.

For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment;

J.  pressure from or presence of tree, shrub or plant roots; or

K.  vandalism or malicious mischief or breakage of glass and safety glazing materials, and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if the residence was vacant for more than 30 consecutive days immediately prior to the loss.  A **residence premises** being constructed is not considered vacant.

**We** pay for any direct loss that follows items A. through I. to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss.  If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of  the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

PAGE # 25

HP4520 0113

# PROPERTY LOSS SETTLEMENT

## SECTION I - HOW WE SETTLE A PROPERTY LOSS

1. **Coverage A - Dwelling and Coverage B - Private Structures**
   Covered property losses are settled as follows.

   A. **Actual Cash Value Settlement.**  Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property, but no more than the lesser of:
   (i.)  the amount required to repair or replace the damaged property with property of like kind and quality; or
   (ii.) the limit of liability applying to the property.

   1. Actual Cash Value Settlement applies to the following types of property:
      a.   aerials, antennas and awnings;
      b.   cesspools, septic tanks and septic fields;
      c.   outdoor equipment and swimming pools;
      d.   structures that are not buildings;
      e.   wall-to-wall carpeting unless **Replacement Cost on Contents** for **COVERAGE C - PERSONAL PROPERTY** applies; and
      f.   household appliances unless **Replacement Cost on Contents** for **COVERAGE C - PERSONAL PROPERTY** applies.
      The provisions of paragraphs A.2., B. and C. below do not apply to the above types of property.

   2. If **you** repair or replace the damaged or destroyed property, **you** may make further claim for any additional payments for **Replacement Cost Settlement** provided:
      a.   **you** have not reached the applicable limit of liability;
      b.   **you** still have an insurable interest in the property;
      c.   **you** notify **us** within 180 days after the date of **actual cash value** payment of **your** decision to repair or replace the damaged or destroyed dwelling or private structure;
      d.   **you** notify **us** within 30 days after the repair or replacement has been completed; and
      e.   the date of completion is within one year from the date of **actual cash value** payment.
      The foregoing time limitations shall apply unless **you** or **your** representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation.

   B. **Replacement Cost Settlement.**  If at the time of loss the amount of insurance applicable is determined to be 80% or more of the full current replacement cost, **we** will pay the full cost of repair or replacement, subject to the applicable deductible, without deduction for depreciation subject to the following:
      1. **we** will not be liable unless and until actual repair or replacement is complete; and
      2. **our** liability will not exceed the smallest of:
         a.   the limit of liability applicable to the building;
         b.   the cost to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use; or
         c.   the amount actually and necessarily spent to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use.
      If **you** rebuild **your** building or purchase an existing building at an address other than shown in the Declarations, the replacement will not increase the amount payable under this settlement.  The amount payable does not include the value of any land associated with the replacement building(s).

      If at the time of loss the amount of insurance applicable is determined to be less than 80% of the full current replacement cost and **Extended Limits** does not apply, **we** will pay the **actual cash value** or the amount determined from the **Coinsurance Provision,** whichever is the highest.  **Our** payment is subject to the applicable deductible.   **We** will pay no more than the limit of liability applicable to the building.

      In determining the amount of insurance required to equal 80% of the full current replacement cost, the value of foundations and the following underground items will be disregarded:

PAGE # 26

HP4520 0113

    c.  wiring; and
    d.  drains.

**Coinsurance Provision.**  This provision applies to buildings covered under **COVERAGE A - DWELLING** and **COVERAGE B - PRIVATE STRUCTURES** when the amount of insurance shown in the Declarations is less than the required amount of 80% of the full current replacement cost value of the building.  **We** compare the amount of insurance purchased to the required amount of insurance and apply that percentage to the loss after application of the deductible.  The resulting amount is the most **we** will pay. **We** will not pay for the remainder of the loss.

C.  **Extended Limits.**  For the dwelling under Coverage A, **we** will pay the **Actual Cash Value Settlement** or **Replacement Cost Settlement** as provided in 1.A. and 1.B. above even if that cost exceeds the Coverage A limit of liability shown in the Declarations.  However, **we** will pay no more than 125% multiplied by the Coverage A limit of liability shown in the Declarations which resulting dollar amount then becomes the new limit of liability provided under this coverage.  Payment under this provision will not include any increased costs of loss or damage resulting from the requirement of, or enforcement of, any ordinance or law regulating the construction, repair, demolition or zoning of the dwelling under Coverage A unless specifically provided under this policy.
The following requirements apply:
1.  **you** obtained Extended Limits by insuring **your** dwelling to 100% of its replacement cost based on the accuracy of information **you** furnished in the completion of **our** home replacement cost estimator or upon an inspection by **us** of the **residence premises;**
2.  **you** have kept **your** insurance continuously without lapse and have accepted the Inflation Protection provision in this policy including each annual adjustment in the **COVERAGE A - DWELLING** limit of liability automatically applied to **your** policy at each renewal; and
3.  **you** must have notified **us** within 90 days after the start of any additions or other physical changes which increase the replacement value of **your** dwelling by $25,000 or more.

D.  **We** will pay no more than the $10,000 limit of liability on **Land** as provided in **SECTION I - ADDITIONAL COVERAGES.**

2.  **Coverage C - Personal Property**
Covered property losses are settled as follows.

A.  **Actual Cash Value Settlement.**  Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property.  **We** will pay no more than the lesser of:
1.  the amount required to repair or replace the damaged property with property of like kind and quality; or
2.  the limit of liability applying to the property.

B.  **Replacement Cost on Contents**
**This applies when Replacement Cost on Contents is shown in the Declarations.**
If **you** repair or replace the damaged or destroyed property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation.
1.  This settlement applies to:
    a.  carpeting, including wall-to-wall carpeting under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
    b.  household appliances including built-in appliances under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
    c.  personal property covered under **COVERAGE C - PERSONAL PROPERTY** other than the types listed under 4. below; and
    d.  articles or classes of property separately described and specifically insured in this policy.

2.  **Our** liability for any loss shall not exceed the smallest of the following amounts for any one loss:
    a.  the cost to replace the property with a similar property of like kind and quality;
    b.  the full cost of repair to restore the property to its original condition;
    c.  the limit of liability for Coverage C shown in the Declarations subject to the **Special Limitations**

PAGE # 27

HP4520 0113

    d.  the limit of liability that applies to any item separately described and specifically insured under this policy.

3.  If **you** decide not to repair, restore or replace the damaged or stolen property, settlement will be on an **actual cash value** basis.  **You** may make further claim within 180 days after the date of **actual cash value** payment for any additional payment on a replacement cost basis if **you** repair, restore or replace the damaged or stolen property.

4.  Replacement Cost on Contents does not apply to the following types of personal property:
    a.  antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced with new articles;
    b.  articles for which the age, history, scarcity or condition contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs, and collectors' items such as trading cards, comic books, and autographed merchandise;
    c.  property which is obsolete or unusable because of its age or condition prior to the loss, or not being used for the purpose for which it was originally intended;
    d.  articles separately described and specifically insured in any other policy;
    e.  watercraft, including their trailers, furnishings, equipment and outboard motors;
    f.  motorized land vehicles principally designed for recreational use; and
    g.  when classified under **COVERAGE C - PERSONAL PROPERTY:**
        1)  aerials, antennas, awnings;
        2)  outdoor equipment and swimming pools; or
        3)  structures, other than building structures.
The above items are subject to **Actual Cash Value Settlement.**

HP5100 0105

# PROPERTY CONDITIONS

### SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability. We** will not pay any person or organization an amount greater than its   insurable interest in the property covered at the time of the loss.
   Regardless of the number of persons or organizations who qualify for coverage, **we** will not pay more than the applicable limit of liability.

2. **What You Must Do After a Loss. We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.
   A. Immediately notify **us** or **our** representative.
      In case of theft, promptly notify the police.
      In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

   B. Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

   C. Cooperate with **us** in the investigation of a claim.

   D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item.  Attach to the inventory all bills and other documents that substantiate the figures in the inventory.

   E. At any reasonable time and place **we** designate, and as often as **we** reasonably require:
      1. show **us** the damaged property;
      2. submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you",** and sign and swear to the answers:  and
      3. allow **us** to examine and copy or abstract any records and documents **we** request.

   F. Within 60 days after **our** request, **you** must file with **us** a signed and sworn proof of loss, stating to the best  of **your** knowledge:
      1. the time and cause of loss;
      2. **your** interest and that of any other person in the property involved and all encumbrances on the property;
      3. a description of each item, including all information contained in the inventory described above;
      4. a description of other insurance policies that might apply to the loss;
      5. any changes in ownership, use, possession or location of the property that took place since this policy was issued;
      6. if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and  whether the building stood on leased ground;
      7. specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
      8. receipts for additional living expenses **you** incur and records supporting the fair rental value; and
      9. evidence or affidavit supporting a claim under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money,** stating the amount and cause of loss.

3. **Our Settlement Options. We** will adjust all losses with **you.  We** will pay **you** unless another payee is named in the policy.  **We** will pay within 60 days after the amount of loss is agreed upon.  This amount may be determined by an agreement between **you** and **us,** an appraisal award or entry of a final judgment, subject to **SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

   **We** have the option of taking all or part of the property at the agreed or appraised value.  **We** have the option

# PROPERTY CONDITIONS

HP5100 0105

4. **Loss.**  Any loss **we** pay under this policy does not reduce the limit of liability.

5. **Loss to a Pair or Set.**  In case of loss to a pair or set **we** may elect to:
    A.  repair or replace any part to restore the pair or set to its value before the loss; or
    B.  pay the difference between **actual cash value** of the property before and after the loss.

6. **Abandoned Property.**  **We** are not obligated to accept any property or responsibility for any property abandoned by **you.**

7. **Appraisal.**  If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss.  Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity.  The two appraisers will select a competent and impartial umpire.  If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

    The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed.  If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss.  If they fail to agree, they will submit their differences to the umpire.  The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

    **You** will pay the appraiser selected by **you.**  **We** will pay the appraiser selected by **us.**  **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

8. **Rights and Duties of Mortgagee.**  If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest under all present and future mortgages.  If more than one mortgagee is named, payment will be made in the order of priority of the mortgagees.

    The interest of the mortgagee under this policy will not be affected by any action or neglect by **you.**  The interest of the mortgagee under this policy will terminate unless it:
    A.  pays upon demand any premium due if the owner or mortgagor fails to do so;
    B.  notifies **us** of any change of ownership or increase in hazard of which the mortgagee has knowledge; and
    C.  pays upon demand the premium for any such increase in hazard.

    **We** will notify the mortgagee if **you** fail to give **us** proof of loss.  Within 60 days after receiving such notice, the mortgagee must give **us** proof of loss.  Policy conditions relating to appraisal, time of payment and time of bringing lawsuit apply to the mortgagee.

    **We** will give the mortgagee not less than 10 days notice of cancellation or nonrenewal of the insurance protecting its interest.

    If **we** pay the mortgagee for any loss and deny payment to **you, we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property.  At **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due.  In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt.  Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

    **Our** cancellation of the policy also applies to agreements under this condition.

    As used in this condition, the term "mortgagee" includes a trustee, if applicable.

    If the Coverage A insurance is provided for a mobile home, the term "mortgagee" includes a lienholder.

HP6000 0205

# LIABILITY, MEDICAL EXPENSES
# AND OPTIONAL COVERAGES

### SECTION II - LOSSES WE COVER

**COVERAGE F - PERSONAL LIABILITY**

**Agreement.  We** will pay all sums for **bodily injury** and **property damage** to others for which the law holds **you** responsible because of an **occurrence** to which this coverage applies.  This includes prejudgment interest awarded against **you.**

**We** will defend **you,** at **our** expense with counsel of **our** choice, against any suit seeking these damages.  **We** may investigate, negotiate, or settle any suit.  **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.

**We** are not obligated to pay any judgment or defend any suit if **we** have already exhausted the limit of liability set forth in the Declarations by paying judgments or settlements.

**Limit of Liability.**  The limit of liability shown in the Declarations for "each occurrence" is the maximum **we** will pay for all damages as a result of any one **occurrence.**

**COVERAGE G - MEDICAL PAYMENTS TO OTHERS**

**Agreement.  We** will pay the reasonable **medical expenses** that are incurred or medically ascertained within three years from the date of the accident causing **bodily injury.**  This coverage does not apply to **you.**  This coverage does apply to others who sustain **bodily injury** as a result of an accident, while they are:
1.  on the **insured premises** with **your** permission; or
2.  off the **insured premises,** if the **bodily injury:**
    A.  arises out of a condition on the **insured premises** or immediately adjoining ways;
    B.  is caused by **your** activities;
    C.  is caused by an animal owned by **you** or in **your** care;
    D.  is caused by a **residence employee** arising out of and in the course of employment by **you;** or
    E.  is sustained by any **residence employee** arising out of and in the course of employment by **you.**

**Limit of Liability.**  The limit of liability shown in the Declarations for "each person" is the maximum **we** will pay to any one person as a result of any one accident.

**Our Payment of Loss.  We** may pay the injured person or the provider of the medical services.  Such payment is not an admission of liability by **you** or **us.**

### SECTION II - LOSSES WE DO NOT COVER

**COVERAGE F - PERSONAL LIABILITY AND COVERAGE G - MEDICAL PAYMENTS TO OTHERS**

1.  **Intentional Loss.  We** do not cover **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts or omissions.  This exclusion is applicable even if:
    A.  **you** lack the mental capacity to govern **your** conduct;
    B.  such **bodily injury** or **property damage** is of a different kind or degree than reasonably expected or intended by **you;** or
    C.  such **bodily injury** or **property damage** is sustained by a different person than expected or intended by **you.**
    This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

PAGE # 31

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

**HP6000 0205**

2. **Pollution**
   **We** do not cover **bodily injury** or **property damage:**
   A. resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants;
   B. resulting from the discharge, dispersal, release or escape of fuel oil and other petroleum products;
   C. resulting from electrical or magnetic emissions, whether visible or invisible, and sound emissions;
   D. liability, whether or not statutorily imposed, resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions; or
   E. resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions.

3. **Lead Exposure**
   A. **We** do not cover damages arising out of **bodily injury** caused by or resulting from ingestion, poisoning or exposure to lead.

   B. **We** do not cover damages arising out of **property damage** resulting from:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;
      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   C. **We** do not cover damages arising out of **property damage** and any costs or expenses or loss incurred as a result of any governmental directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;
      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   D. **We** do not cover damages arising out of **bodily injury** or **property damage** resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead.

4. **Business. We** do not cover **bodily injury** or **property damage** arising out of or in connection with **your business** activities. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business.**

   With respect to **COVERAGE E - PERSONAL LIABILITY**, this exclusion does not apply to **your** occasional or

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

HP6000 0205

If the **residence premises** is shown in the Declarations as a 2, 3 or 4 family dwelling, this exclusion does not apply to the portions that are rented by **you** to others or held for rental by **you** to others for use only as a residence.

5. **Care of Persons. We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

6. **Professional Services. We** do not cover **bodily injury** or **property damage** arising out of the rendering of or failing to render professional services of any kind.

7. **Other Premises. We** do not cover **bodily injury** or **property damage** arising out of the use of any premises owned, rented or controlled by **you.** Coverage does apply to:
   A. the **insured premises;** and
   B. **bodily injury** to a **residence employee.**

8. **Motorized Land Vehicles. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of a motorized land vehicle or trailer owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a motorized land vehicle or trailer to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a motorized land vehicle or trailer; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a motorized land vehicle or trailer.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. a motorized land vehicle or trailer in dead storage on the **insured premises:**
   b. a motorized land vehicle used exclusively on the **insured premises;**
   c. a trailer while not being towed or carried by a motor vehicle;
   d. a motorized land vehicle, owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**
   e. a motorized land vehicle, not owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration;
   f. a motorized land vehicle principally designed to service residential property;
   g. a motorized wheel chair; or
   h. a motorized golf cart:
      1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or
      2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the **insured premises,** including its public roads upon which a motorized golf cart can legally travel.

   Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you.**

9. **Watercraft. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of watercraft of any type owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a watercraft of any type to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a watercraft of any type; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a watercraft of any type.

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

**HP6000 0205**

    b.  any watercraft while stored;

    c.  watercraft, owned or furnished or available for **your** regular use:

        1)  that is powered by one or more motors with 50 total horsepower or less.  This includes watercraft propelled by a water jet pump engine or motor; or

        2)  that is a sailing vessel 31 feet and under in length with or without auxiliary power;

    d.  rented watercraft:

        1)  powered by one or more outboard motors;

        2)  with an inboard or inboard-outdrive motor with 50 horsepower or less.  This includes watercraft propelled by a water jet pump engine or motor; or

        3)  that is a sailing vessel 31 feet and under in length with or without auxiliary power; or

    e.  watercraft not owned by **you,** not rented to **you** nor furnished or available for **your** regular use.

This coverage is excess coverage over and above any other collectible insurance.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you.**

10. **Hovercraft.  We** do not cover **bodily injury** or **property damage** arising out of:

    A.  the ownership, maintenance, occupancy, operation, use, or loading or unloading of a hovercraft owned or operated by or rented or loaned to **you;**

    B.  the entrustment by **you** of a hovercraft to any person;

    C.  the failure to supervise or negligent supervision by **you** of any person involving a hovercraft; or

    D.  vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a hovercraft.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you,** except while engaged in the operation or maintenance of hovercraft.

Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

11. **Aircraft.  We** do not cover **bodily injury** or **property damage** arising out of:

    A.  the ownership, maintenance, occupancy, operation, use, or loading or unloading of an aircraft owned or operated by or rented or loaned to **you;**

    B.  the entrustment by **you** of an aircraft to any person;

    C.  the failure to supervise or negligent supervision by **you** of any person involving an aircraft; or

    D.  vicarious liability, whether or not imposed by law, for the actions of a child or minor involving an aircraft.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you,** except while engaged in the operation or maintenance of aircraft.

12. **War.  We** do not cover **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.  Discharge of a nuclear weapon will be deemed to be a warlike act even if accidental.

13. **Injury of an Insured.  We** do not cover **bodily injury** to any insured within the meaning of Part 1 of the definition of **you.**  This  exclusion applies regardless of whether claim is made or suit is brought against **you** by the injured person or by a third party seeking contribution or indemnity.

14. **Controlled Substance.  We** do not cover **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance, as defined by the Federal Food and Drug Law, Act 21 U.S.C.A. Sections 811 and 812, including any amendments.  Controlled Substance includes, but is not limited to, cocaine, LSD, marijuana, and all narcotic or hallucinogenic drugs.  However, this

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

## HP6000 0205

15. **Fungus and Mold**
   A. **We** do not cover **bodily injury** or **property damage** directly or indirectly caused by or resulting from inhalation, ingestion, existence or exposure to **fungus and mold.**  However, **we** do cover **bodily injury** to the extent that **fungus and mold** are on or are contained in a good or product intended for consumption.
   B. **We** do not cover damages arising out of **property damage** and any costs or expenses or loss incurred as a result of any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat **fungus and mold.**
   C. **We** do not cover **bodily injury** or **property damage** caused by or resulting from **your** failure to disclose the existence, known or unknown, on an **insured premises** of **fungus and mold.**

   This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

16. **Failure to Disclose.  We** do not cover **bodily injury** or **property damage** caused by or resulting from **your** failure to disclose any condition of property, whether known or unknown, sold to a buyer of the **residence premises.**

17. **Communicable Disease.  We** do not cover **bodily injury** caused by or resulting from any of the following which are transmitted by **you** to any other person:  disease, bacteria, parasite, virus or other organism.  Furthermore, **we** do not cover **bodily injury** resulting from the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person.

18. **Abuse.  We** do not cover **bodily injury** caused by or resulting from the actual, alleged or threatened sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse of a person.  This exclusion applies whether the **bodily injury** is inflicted by **you** or directed by **you** for another person to inflict sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse upon a person.

19. **Emotional and Mental Anguish.  We** do not cover **bodily injury** caused by or resulting from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury.  However, this exclusion does not apply if the person seeking damages from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury has first experienced direct physical harm.

## COVERAGE F - PERSONAL LIABILITY

1. **Loss Assessment.  We** do not cover liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners, except as specifically provided in **SECTION II - ADDITIONAL COVERAGES** for **Loss Assessment.**
2. **Contract.  We** do not cover liability assumed by **you** under any unwritten contract or agreement, or by any contract or agreement in connection with **your business.**
3. **Owned Property.  We** do not cover **property damage** to property owned by **you.**  This includes costs or expenses incurred by **you** or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured premises.**
4. **Care, Custody or Control.  We** do not cover **property damage** to property occupied or used by **you,** rented to **you,** in **your** care or over which **you** have physical control.  However, coverage is extended for:
   A. **property damage** caused by fire, explosion or smoke; or
   B. **property damage** arising out of the ownership, maintenance or use of a waterbed at the **residence premises.**  A waterbed is a bed with a liner and a liquid filled sealed mattress.  However, **we** do not cover:
      1. property owned by **you;** or
      2. **property damage** caused by sagging or collapse of the floor if it is determined that the building construction does not conform to government building codes.
5. **Nuclear.  We** do not cover **bodily injury** or **property damage** for which **you** are insured under any nuclear energy liability policy or would be insured but for the exhaustion of its limit of liability.
6. **Workers' Compensation Law.  We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by **you** under any workers' compensation, non-occupational disability or

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

# HP6000 0205

statutory multiple damages.

8. **Computer Systems and Data.  We** do not cover **property damage** resulting from any error, virus or malicious entry in **computer** programming, instructions or code introduced or transmitted by **you** into any data, **computer, peripheral device, media** or **purchased software.**

## COVERAGE G - MEDICAL PAYMENTS TO OTHERS

1. **Residence Employee.  We** do not cover **bodily injury** to a **resident employee** if the **bodily injury** occurs off the **insured premises** and does not arise out of or in the course of the **residence employee's** employment by **you.**
2. **Nuclear.  We** do not cover **bodily injury** from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
3. **Residents.  We** do not cover **bodily injury** to any regular resident of the **insured premises,** except **your residence employee.**
4. **Workers' Compensation Law.  We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law.

## SECTION II - ADDITIONAL COVERAGES

**We** cover the following in addition to the limits of liability for **COVERAGE F - PERSONAL LIABILITY** or **COVERAGE G - MEDICAL PAYMENTS TO OTHERS.**

1. **Damage to Property of Others**
   **We** will pay up to $500 each time **you** cause **property damage** to someone else's property during the term of the policy.  At **our** option, **we** will pay the cost to either repair or replace the damaged property.

   **We** do not cover **property damage:**
   A. to property covered in Section I of this policy;
   B. caused intentionally by **you** if **you** are 13 years of age or older;
   C. to property owned by or rented to **you,** any of **your** tenants or any resident of **your** household; or
   D. arising out of:
      1. any act or omission in connection with premises **you** own, rent or control, other than the **insured premises;**
      2. **business** activities; or
      3. the ownership, maintenance, occupancy, operation, use, loading or unloading of any motorized land vehicle, aircraft, hovercraft or watercraft of any type.
         However, **we** cover **property damage** to property of others arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading of:
         a. a motorized land vehicle or trailer in dead storage on the **insured premises;**
         b. a motorized land vehicle used exclusively on the **insured premises;**
         c. a trailer while not being towed or carried by a motor vehicle;
         d. a motorized land vehicle, owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**
         e. a motorized land vehicle, not owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration;
         f. a motorized land vehicle principally designed to service residential property;
         g. a motorized wheel chair; or
         h. a motorized golf cart:
            1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or
            2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the **insured premises,** including its public roads upon which a motorized golf cart can legally travel.

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

HP6000 0205

2. **Claim Expenses.  We** will pay:
   A. all costs **we** incur and costs taxed against **you** in any suit **we** defend;
   B. premiums on bonds required in any suit **we** defend, but not for bond amounts greater than the limit of liability for **COVERAGE F - PERSONAL LIABILITY.  We** are not obligated to apply for or furnish any bonds;
   C. reasonable expenses **you** incur at **our** request;
   D. up to $200 per day for lost wages or salary, but not other income, because **you** attended a hearing or trial at **our** request; and
   E. interest on the entire judgment awarded in any suit **we** defend which accrues after judgment is entered and before **we** pay, tender or deposit in court the amount for which **we** are liable under this policy.

3. **First Aid Expenses.  We** will pay expenses for first aid to others **you** incur at the time of the accident for **bodily injury** to which this insurance applies.  **We** will not pay for first aid to **you.**

4. **Loss Assessment.  We** will pay up to $1000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners.  This coverage applies only to loss assessments charged against **you** as owner or tenant of the **insured premises.**

   If a limit of liability is shown in the Declarations for Increased Loss Assessment, the $1000 limit is increased to amount shown.

   This only applies when the assessment is made as a result of:
   A. each **occurrence** to which Section II of this policy would apply; or
   B. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
      1. the director, officer or trustee is elected by the members of a corporation or association of property owners; and
      2. the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   Regardless of the number of assessments, the limit referenced above is the most **we** will pay for loss arising out of:
   A. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or
   B. a covered act of a director, officer or trustee.  An act involving more than one director, officer or trustee is considered to be a single act.

   This coverage shall be excess over any other insurance covering the corporation or association of property owners.  This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

   **We** will pay only when the assessment exceeds $250 and then only for the amount of such excess.  This coverage is not subject to any deductible contained in Section I of this policy.

   **We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

## SECTION II - CONDITIONS

1. **Your Duties in the Event of an Accidental Loss.**  In the event of an **occurrence** or offense, **we** have no obligation to provide coverage under this policy if **you** fail to comply with the following duties.
   A. Promptly notify **us** or **our** representative, in writing, stating:
      1. **your** name and policy number;
      2. the date, place and circumstances of the accident;

PAGE # 37

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

HP6000 0205

C. At **our** request, **you** must:
1. cooperate with **us** and assist **us** in any matter concerning a claim or suit;
2. help **us** enforce any right of recovery against any person or organization who may be liable to **you;**
3. attend any hearing or trial; and
4. help **us** in collecting and giving evidence and obtaining the attendance of witnesses.
D. Under **Damage to Property of Others** in **SECTION II - ADDITIONAL COVERAGES,** give **us** a sworn statement of the loss within 60 days after the loss.  Also, be prepared to show **us** any damaged property under **your** control.
E. **You** must not voluntarily pay any money, assume any obligations, or incur any expenses, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What an Injured Person Must Do Under Coverage G - Medical Payments to Others.**  The injured person, or someone acting for that person, must do the following.
A. Promptly give **us** written proof of the claim.  If **we** request, this must be done under oath.
B. Give **us** written authorization to obtain copies of all medical records and reports.
C. Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

## OPTIONAL COVERAGES

The following coverages are afforded only if indicated in the Declarations.  They are subject to all other provisions of this policy, except as modified herein.

## EARTHQUAKE AND VOLCANIC ERUPTION

1. **We** will pay for direct physical loss to the property described in Coverages A, B and C caused by Earthquake or Volcanic Eruption.

   One or more earthquake shocks that occur within a seventy-two hour period shall constitute a single earthquake.  One or more volcanic eruptions that occur within a seventy-two hour period shall constitute a single volcanic eruption.

   **We** do not pay for loss resulting directly or indirectly by flood or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

   This coverage does not increase the limits of liability stated in this policy.

2. Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by earthquake or volcanic eruption.

3. Under **SECTION I - LOSSES WE DO NOT COVER,** item 1.E. **Earth Movement,** is amended to delete earthquake, earthquake aftershocks, volcanic eruption and volcanic effusion.  All other provisions of this exclusion remain in effect.

4. **Deductible.  We** will pay only that part of the loss caused by earthquake or volcanic eruption over the deductible shown in the Declarations for Earthquake and Volcanic Eruption.  The deductible amount shall apply to loss separately for each coverage that applies to the damaged property under **COVERAGE A - DWELLING, COVERAGE B - PRIVATE STRUCTURES** and **COVERAGE C - PERSONAL PROPERTY.**  This deductible amount shall not be less than $250 in any one loss.

   If the deductible shown in the Declarations for Earthquake and Volcanic Eruption is a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the amount of

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

# HP6000 0205

**We** do not cover loss to exterior masonry veneer of the property described in Coverages A and B resulting from or caused by earthquake or volcanic eruption.  The deductible shown in the Declarations for Earthquake and Volcanic Eruption applies to loss not including damage to exterior masonry veneer.  The use of the term "masonry veneer" above does not include stucco.

## HOME COMPUTER

Coverage is afforded only if indicated in the Declarations.

This coverage applies in lieu of, and not in addition to, the coverage afforded for **computers, peripheral devices, media** and **purchased software** under Section I, **COVERAGE C - PERSONAL PROPERTY.**

**We** will pay for sudden and accidental physical loss to **your** owned **computer, your** owned **peripheral device, your** owned **media** and **your purchased software** except as excluded below.

The use of the word "owned" above includes a **computer, peripheral device** and **media** actually owned by **your** employer but leased or loaned to **you** for **your** use at home.  This coverage is excess over any valid and collectible insurance written in the name of the actual owner of the property.

**Deductible.  We** will pay only that part of the loss that exceeds the deductible amount shown in the Declarations for this coverage.  This deductible applies separately to each loss.

**Losses We Do Not Cover**
1. **We** do not cover loss or damage to the property which results directly or indirectly from:
   A. wear and tear;
   B. gradual deterioration;
   C. depreciation;
   D. insects or vermin;
   E. corrosion, rust, dampness, dryness, cold or heat;
   F. **fungus and mold;**
   G. mechanical breakdown;
   H. faulty construction;
   I. an original defect in the property; or
   J. error, omission or deficiency in design, specifications, workmanship or materials.
2. **We** do not cover an error in **computer** programming or instructions to the **computer.**
3. **We** do not cover intentional loss, meaning any loss arising out of any intentional or criminal act committed:
   A. by **you** or at **your** direction; and
   B. with the intent to cause a loss.
   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
   This exclusion does not apply to an insured person not participating in the intentional loss.
4. **We** do not cover dishonest acts by **you,** anyone else with an interest in the property or **your** or their employees or agents, whether or not occurring during the hours of employment.  Nor do **we** insure against dishonest acts by anyone entrusted with the property.
5. **We** do not cover indirect or consequential loss to the property.
6. **We** do not cover **Neglect, Nuclear Action, Governmental Action** and **Water Damage** as set forth in **SECTION I - LOSSES WE DO NOT COVER.**

**Our** limit of liability for loss under this coverage will be the lesser of:
1. the cost of new property of similar make, type, quality, capacity, and size;
2. the reasonable cost of repair with parts of like kind and quality; or
3. the limit of liability as shown for this coverage in the Declarations of this policy.

**We** reserve the right to repair or replace the damaged property or to pay for this loss in money.

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

**HP6000 0205**

## PRIVATE STRUCTURES RENTED TO OTHERS

Coverage is afforded only if indicated in the Declarations.

**COVERAGE B - PRIVATE STRUCTURES** is provided for the private structures rented to others described in the Declarations.  **Our** limit of liability under Private Structures Rented to Others is the amount shown in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of the private structure rented to others described in the Declarations.

## BUSINESS PURSUITS

Coverage is afforded only if indicated in the Declarations.

The insurance provided in Section II is extended to cover **bodily injury** and **property damage** arising out of the specified **business** activities of the person(s) designated in the Declarations.

**Losses We Do Not Cover**
1. **We** do not cover **bodily injury** and **property damage** arising out of **business** activities when the **business** is owned or financially controlled by **you** or by a partnership or joint venture of which **you** are a partner or member.
2. **We** do not cover **bodily injury** and **property damage** arising out of the rendering or failure to render a professional service, other than teaching or school administration.
3. **We** do not cover **bodily injury** to **your** fellow employee arising in the course of employment.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not.  The mutual exchange of home day care services is not considered to be for economic gain.  This exclusion does not apply to **your** occasional care or babysitting.
5. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** and **property damage** arising out of:  (a) the ownership, maintenance, occupancy, operation, use, loading, unloading of; (b) entrustment by **you** to any person of; or (c) the failure to supervise or negligent supervision of any person involving:
   A.  draft or saddle animals, including vehicles used with them;
   B.  aircraft;
   C.  hovercraft.  Hovercraft means a self-propelled motorized ground effect vehicle and includes but is not limited to, flarecraft and air cushion vehicles;
   D.  motorized land vehicles or trailers; or
   E.  watercraft of any type;
   that are owned, hired or operated by or for  **you** or **your** employer or used by **you** for the purpose of instruction.
6. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** to any pupil arising out of corporal punishment administered by **you** or at **your** direction.

## WATERCRAFT LIABILITY

Coverage is afforded only if indicated in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of a watercraft described in the Declarations.

**Losses We Do Not Cover**
1. **We** do not cover **bodily injury** to any of **your** employees arising out of and in the course of employment.  This exclusion applies only if the employee's principal duties are in connection with the maintenance or operation of such watercraft.

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

HP6000 0205

operated in, or practicing for, any prearranged or organized race, speed contest or other competition. However, coverage is extended when **your** watercraft described in the Declarations is: (a) a sailing vessel; (b) in a predicted-log cruise; or (c) in a timed fishing contest or tournament.

## INCIDENTAL BUSINESS OCCUPANCY BY YOU

Coverage is afforded only if indicated in the Declarations.

The coverage provided by this option applies only to the incidental **business** occupancy described in the Declarations.

If the **business** occupancy described in the Declarations is located in a private structure on the **residence premises, COVERAGE B - PRIVATE STRUCTURES** applies to such structure.

The limit of **COVERAGE C - PERSONAL PROPERTY** applies to equipment, supplies and furnishings usual or incidental to the **business** described in the Declarations while located in the structure described in the Declarations. This limit is in lieu of that provided under the special limitation applying to **Business Property** under **COVERAGE C - PERSONAL PROPERTY.**

This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it. This also does not include merchandise held as samples or for sale or delivery after a sale.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to afford coverage for **bodily injury** and **property damage** arising out of **your business** activities which are usual or incidental to the use of the **residence premises.**

**Losses We Do Not Cover**
1. **We** do not cover **bodily injury** to any employee other than a **residence employee.**
2. **We** do not cover **bodily injury** to any student arising out of corporal punishment administered by **you** or at **your** direction.
3. **We** do not cover liability arising out of any acts, omissions or errors of **you** or any other person for whose acts **you** are liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specification, supervisory inspections or engineering services in the conduct of **your** incidental **business** involving data processing, **computer** consulting or **computer** programming.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

PAGE # 41

HP7000 0902

# GENERAL CONDITIONS

1. **Policy Period.**  This policy applies only to accidental loss in Section I or **bodily injury** and **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.**  If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as **you.**

3. **Conformity to Statute.**  The terms of this policy which are in conflict with the statutes of the state in which the **insured premises** is located are hereby amended to conform to such statutes.

4. **Death.**  If any person named in the Declarations dies, **we** insure:
   A. the spouse, if a resident of the household at the time of death;
   B. the legal representative of the deceased, but only with respect to the premises and property of the deceased covered by this policy at the time of death;
   C. any member of the deceased's household who was covered at the time of death, but only while a resident of the **insured premises;** and
   D. with respect to the property of the deceased, the person having proper temporary custody thereof, but only until appointment and qualification of a legal representative.

5. **Policy Changes**
   A. This policy contains all of the agreements between **you** and **us.**  The terms of this policy may not be changed or waived except by endorsement issued by **us.  Our** request for an appraisal or examination under oath will not waive any of **our** rights.

   B. **We** will automatically give **you** the benefit of any extension or broadening of this edition of the policy if:
      1. the change does not require additional premiums; and
      2. the change is not implemented with a general revision that includes both the broadening and restriction of coverage.

6. **Assignment.   You** may not assign this policy to another person without **our** written consent.

7. **Bankruptcy or Insolvency.    Your** bankruptcy or insolvency will not relieve **us** of any obligation under this policy.

8. **Our Recovery Right.  You** may waive in writing before a loss all rights of recovery against any person.  If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, **you** must sign and deliver all related papers and cooperate with **us.**

   This does not apply under Section II to **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** or under **SECTION II - ADDITIONAL COVERAGES** to **Damage to Property of Others.**

9. **Lawsuits Against Us.**  No suit or action may be brought against **us** by **you** unless there has been full compliance with all of the policy terms.

   Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.

   Under Section II of this policy, no one may sue **us** until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of **you,** the injured person and **us.**

PAGE # 42

GENERAL CONDITIONS                                    HP7000 0902

10. **Other Insurance and Service Agreement.**  If other insurance is available to **you** for a loss covered under Section I of this policy, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance.  However, this insurance is excess over any other insurance that covers loss by theft or loss of personal property on an unspecified peril basis.

    If a loss covered under Section I of this policy is also covered by a service agreement available to **you,** this insurance is excess over any amounts payable under any such agreement.  Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

    If other insurance is available to **you** for a loss covered under **COVERAGE F - PERSONAL LIABILITY** of this policy, this insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

11. **Premium.**  All premiums for this policy will be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums in effect at the beginning of **your** current policy period.  Each year, the premium for renewal of this policy will be computed on the basis of **our** manuals then in use for the effective date of the renewal of the policy.

    The premiums **we** charge are based on the information provided by **you** on **your** application and other information **we** possess.  **You** agree to help **us** obtain correct and complete information.  **We** are permitted to adjust **your** premiums when this information changes.

    Any premium adjustments made for any reason will be rounded to the nearest dollar, in accordance with the manuals in use by **us.**  Any change which results in premium adjustment of less than $2.00 will be carried forward to the next billing as long as the policy remains active.

    Premiums are payable on the dates set forth by **us.**

12. **Cancellation**
    **You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.  If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method.

    **We** may cancel this policy by delivering to **you** or by mailing to **you,** at **your** last known address shown on **our** records, notice stating when such cancellation will be effective.  In any case of termination of this policy by **us, our** mailing of notice will constitute proof of notice as of the date **we** mail it.  **We** will comply with any law relating to the termination of this policy which contains different requirements.  If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar.  The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

    A.  This notice will be mailed to **you** not less than the minimum number of days required by state law if **you** have not paid **your** premium when it is due.

    B.  This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us**, at the time notice of cancellation is mailed.

    C.  This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us,** and any one of the following conditions exist:
        1.  the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of facts pertinent to acceptance by **us**;
        2.  there has been a substantial change in the covered property which increased the hazards **we** originally agreed to insure;
        3.  there have been willful or negligent acts or omissions by **you** which increased the hazards **we**

**GENERAL CONDITIONS**                                                    HP7000 0902

---

4.  continuation of the policy would be in violation of the law; or
5.  any person defined as **you** conceals or misrepresents any material fact or circumstance or engages in any fraudulent conduct in making a claim under this policy.

13. **Nonrenewal.  We** may elect not to renew this policy.  **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the renewal date of this policy.  Proof of mailing will be sufficient proof of notice.

If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period.  Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

In Witness Whereof, **we** have caused this policy to be signed by **our** President and **our** Secretary at Warwick, Rhode Island.  In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

Secretary                                         President

ENDORSEMENT C117CA

**CALIFORNIA**
**DOMESTIC PARTNERSHIP**

Throughout this policy, the term spouse includes an individual registered under California law as a domestic partner with the named insured shown in the Declarations.

ENDORSEMENT HA01CA 0108

## CALIFORNIA
## AMENDATORY ENDORSEMENT

1.  Under **SECTION I - LOSSES WE DO NOT COVER,** item 1.A. **Intentional Loss** is deleted and replaced by:

    A.  **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
        1.  by **you** or at **your** direction; and
        2.  with the intent to cause a loss.
        This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

        In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.  However, with respect to loss to covered property caused by fire, **we** will cover any one defined as **you** who did not commit or conspire to commit any act that results in loss by fire.  **We** cover such person only to the extent of their legal interest, but not exceeding the applicable limit of liability.

2.  Under **SECTION I - HOW WE SETTLE A PROPERTY LOSS,** the provisions relating to **your** right to make further claim for any additional payments for **Replacement Cost Settlement** or **Replacement Cost on Contents** is amended to provide a 12 month time period for **you** to notify **us** of **your** decision to repair, restore or replace the damaged, destroyed or stolen property.  Additional extensions of six months shall be provided to **you** for good cause.  Furthermore, in the event of a loss related to a "state of emergency", as defined under California law, the time period for **you** to notify **us** shall not exceed 24 months after the date of **actual cash value** payment.

3.  Under **SECTION I - CONDITIONS,** item 3. **Our Settlement Options** is deleted and replaced by:

    3.  **Our Settlement Options.  We** will adjust all losses with **you.  We** will pay **you** unless another payee is named in the policy.  **We** will pay within 30 days after the amount of loss is agreed upon.  This amount may be determined by an agreement between **you** and **us**, an appraisal award or entry of a final judgment, subject to **SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

        **We** have the option of taking all or part of the property at the agreed or appraised value.  **We** have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time.  **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** signed, sworn proof of loss.

4.  Under **GENERAL CONDITIONS:**

    A.  item 2. **Concealment or Fraud** is deleted and replaced by:

        2.  **Concealment or Fraud.**  If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy:
            a.  for loss caused by fire, for the person defined as **you** who concealed or misrepresented the material fact or circumstance or make the material false statement or engaged in the fraudulent conduct; or
            b.  for loss resulting from any peril other than fire, for any person defined as **you.**

    B.  item 12. **Cancellation** is deleted and replaced by:

        12. **Cancellation**
            **You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

            **We** may cancel this policy by delivering to **you** or by mailing to **you,** at **your** last known address

# ENDORSEMENT HA01CA 0108

mail it.  **W**e will comply with any law relating to the termination of this policy which contains different requirements.

The earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar.  The refund will be made within 25 days after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

A.  This notice will be mailed to **you** not less than 10 days prior to the effective date of cancellation if **you** have not paid **your** premium when it is due.

B.  This notice will be mailed to **you** not less than 10 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us**, at the time notice of cancellation is mailed.

C.  This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us,** and any one of the following conditions exist:
   1.  conviction of a crime having as one of its necessary elements an act increasing the hazard insured against;
   2.  discovery of fraud or material misrepresentation by **you** or **your** representative in obtaining insurance, or by **you** or **your** representative in pursuing a claim under this policy;
   3.  discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or
   4.  physical changes in the property insured against which result in the property becoming uninsurable.

C.  item 13. **Nonrenewal** is deleted and replaced by:

13. **Nonrenewal.  We** may elect not to renew this policy.  **We** may do so by delivering to **you,** or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 45 days before the renewal date of this policy.  Proof of mailing will be sufficient proof of notice.

If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period.  Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

All other provisions of the policy apply except as modified by this endorsement.

ENDORSEMENT HA30CA 0108

## CALIFORNIA
## WORKERS' COMPENSATION

1. **AGREEMENT**

   A. **We** agree with respect to **resident employees** under **COVERAGE I** to pay when due all benefits required of **you** by the California Workers' Compensation Law and subject to **ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE I.**

   B. **We** agree with respect to **resident employees** under **COVERAGE II** and subject to **LIMITS OF LIABILITY COVERAGE II** to pay on behalf of **you** all damages for which **you** are legally liable because of **bodily injury** sustained by a **residence employee.** The **bodily injury** must be caused by accident or disease and arise out of and in the course of employment by **you** while:

      1. in the United States of America, its territories or possessions, or Canada; or

      2. temporarily elsewhere if the **residence employee** is a citizen or resident of the United States or Canada.

      **Coverage II** does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

   C. **We** will defend **you,** at **our** expense with counsel of **our** choice, against any suit seeking these damages. **We** may investigate, negotiate, or settle any suit. **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.

2. **WHO IS COVERED**

   A **resident employee** is covered if during the 90 calendar days immediately before the date of injury the employee has:

   1. actually been engaged in such employment by **you** for no less than 52 hours; and

   2. earned no less than one hundred dollars ($100) in wages.

3. **APPLICATION OF COVERAGE**

   This insurance applies only to **bodily injury** which occurs during the policy period. If the **bodily injury** is a disease, it must be caused or aggravated by the conditions of the **residence employee's** employment by **you.**

4. **POLICY PROVISIONS**

   This insurance is subject to:

   a. all the provisions of this endorsement;

   b. the section of the policy titled **"GENERAL DEFINITIONS"** and **"GENERAL CONDITIONS";** and

   c. the following provisions of this policy:

      1. **SECTION II - ADDITIONAL COVERAGES,** item 2. **Claim Expenses** and item 3. **First Aid Expenses;** and

      2. **SECTION II - CONDITIONS,** item 1. **Your Duties In the Event of an Accidental Loss.**

# ENDORSEMENT HA30CA 0108

A. **We** shall be directly and primarily liable to **your residence employee** entitled to the benefits of the California Workers' Compensation Law.

B. As between the covered **residence employee** and **us,** notice to or knowledge of the **occurrence** of the injury on **your** part will be deemed notice or knowledge on **our** part.

C. **Your** jurisdiction will, for the purpose of the law imposing liability for compensation, be **our** jurisdiction.

D. **We** will be subject to the orders, findings, decisions or awards rendered against **you** under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of the policy.  This policy shall govern as between **you** and **us** as to payments by either in discharge or your liability for compensation.

E. The **residence employee** has a first lien upon any amount which **we** owe **you** on account of this insurance.  In case of **your** legal incapacity or inability to receive the money and pay it to the **residence employee, we** will pay it directly to the **residence employee.   Your** obligation to the **residence employee** will be discharged to the extent of such payment.

6. **LIMITS OF LIABILITY COVERAGE II**

**Our** total limit of liability will not exceed $100,000 for all damages because of **bodily injury:**

A. sustained by one or more **residence employees** in any one accident; or

B. caused by disease and sustained by a **residence employee.**

**Our** total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

7. **OTHER INSURANCE**

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

8. **CONFORMITY TO STATUTE**

Terms of this insurance which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

9. **EXCLUSIONS**

This policy does not apply:

A. to liability for additional compensation imposed on **you** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of the serious and willful misconduct of **you,** or because of **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury;

B. to liability for **bodily injury** arising out of **business** pursuits of **you;**

C. under **Coverage II:**

   1. to liability assumed by **you** under any contract or agreement;

   2. to **bodily injury** by disease unless a written claim is made or suit brought against **you** within 36 months after the end of the policy period; and

   3. to any obligation under a workers' compensation, unemployment or disability benefits law or any

**PAGE #49**

**ENDORSEMENT HF1300 0902**

## BACK UP OF SEWER, DRAIN AND SUMP PUMP COVERAGE

1.  **We** do not provide coverage if the loss occurs or is in progress:
    A.  during the first 5 days after the effective date of this coverage if added at inception date or renewal date of this policy; or
    B.  during the first 30 days after the effective date of this coverage if added any time other than the inception date or renewal date.

    However, this provision does not apply if this coverage applied to **your** policy prior to this policy period and is continued as part of **your** policy renewal.

2.  **We** pay for accidental direct physical loss under the Coverages listed in **SECTION I - COVERAGES** caused by or resulting from water or water-borne material:
    A.  which backs up through sewers or drains; or
    B.  which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

3.  **Limit of Liability**
    A.  If no limit is shown in the Declarations for Back Up of Sewer, Drain and Sump Pump Coverage, then the limits applying to the damaged or destroyed property under Section I - Coverages A, B and C apply.
    B.  If a limit is shown in the Declarations for Back Up of Sewer, Drain and Sump Pump Coverage, then the limit shown is the total **we** will pay in any one loss for damaged or destroyed property under Section I - Coverages A, B and C.

4.  Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by one or more of the following:
    A.  water or water borne material which backs up through sewers or drains; or
    B.  water or water-borne material which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

5.  Under **SECTION I - LOSSES WE DO NOT COVER,** 1.D. **Water Damage** item 2. is deleted with respect to the   coverages provided by this optional coverage.

6.  **Deductible.   We** will pay only that part of the loss that exceeds the deductible amount shown in the Declarations for this coverage.  This deductible amount applies separately to each loss.

All other provisions of the policy apply except as modified by this endorsement.

ENDORSEMENT HF5800 0420

## WILDFIRE LOSS MITIGATION BENEFIT

**PURPOSE**

The purpose of **our** Wildfire Loss Mitigation Benefit is to prevent imminent wildfire loss to houses and private structures. If a wildfire loss is not preventable, then **our** effort is to lessen direct physical damage that otherwise would occur if this benefit was not available. **We** want to provide the best service and appropriate protection for **our** customers in wildfire prone areas.

**AGREEMENT**

**We** provide Wildfire Loss Mitigation Benefit to **our** policyholders insuring their residential one- to four-family houses. It applies to all **our** Homeowners and Landlord Dwelling policyholders. This is not available to condo unit-owners nor to tenants who rent the house or building unit where they reside.

This benefit is in addition to the insurance protection **we** provide to **you** under **our** residential property insurance policy. The benefit does not replace any part of **our** insurance policy which covers direct physical damage to **your** covered dwelling and private structures.

There is no additional cost to any policyholder for this benefit. It is provided because **you** already have insured **your** house with **us**. **You** are automatically enrolled when **you** purchase house insurance from **us**. If **you** choose to cancel **your** Wildfire Loss Mitigation Benefit, there will be no premium returned to **you**.

**We** contract with certified wildland firefighters with appropriate training and wildfire experience. They respond with qualified wildfire resources to provide potentially home-saving services. Their fleet of certified wildfire engines are outfitted with the right tools and equipment needed to contribute to the protection of **your** home during a wildfire. They are not **your** local public fire department. They enter the grounds of enrolled properties during a wildfire event. While on site, they provide wildfire pre-suppression, suppression, post-fire suppression, non-destructive mitigation, and assistance during the wildfire event. These services include sprinklers, fire blocking gel, ground-applied retardant, and tactics which remove wildfire hazards from around the home. **Our** service adds extra protection to **your** home using preventative measures including emergency fuel mitigation, use of temporary sprinkler systems, fire engine operations, and application of fire blocking gel. Services provided are designed to specifically protect a home from wildfire and will employ additional tactics beyond what many fire departments are available to perform.

**SUCCESS IS NOT GUARANTEED**

It is important to create reasonable expectations for **our** customer. This is not a first responder service and is in addition to all other public wildfire responders. Due to engine availability limitations and health and safety requirements, there may be instances when these wildland firefighters will not be able to provide their services to **your** property. There is no promise that the services provided will prevent damage.

In the event **your** house is damaged by wildfire, **your** Farmers residential property insurance policy covers direct physical damage or loss to **your** covered property caused by wildfire.

PAGE #51

**ENDORSEMENT HF8000 0506**

## SCHEDULED PERSONAL PROPERTY

**AGREEMENT**

We cover the specifically listed items and the classes of personal property indicated by an amount of insurance in the Schedule of Personal Property.

**THE AMOUNTS SHOWN FOR EACH CLASS OR ITEM IN THE SCHEDULE ARE LIMITED BY CONDITION 2. LOSS SETTLEMENT OF THIS ENDORSEMENT.**

This coverage is subject to:

a.   the amount of insurance shown in the Schedule of Personal Property for each item or class of property;

b.   the Deductible as shown in the Schedule of Personal Property for each item or class of property.  If no deductible is shown, then no deductible applies;

c.   all provisions of this endorsement; and

d.   the sections of the policy titled **"GENERAL DEFINITIONS", "SECTION I - CONDITIONS"** and **"GENERAL CONDITIONS",** except as modified by this endorsement.

**CLASSES OF PERSONAL PROPERTY**

The classes of personal property are:

**Jewelry.**

**Furs,** including garments trimmed with fur or consisting principally of fur.

**Cameras,** including projection machines, films and other items of photographic equipment.

**Musical Instruments,** including related equipment.

**Silverware,** including silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry.

**Golfer's Equipment,** excluding golf carts.  This includes the following, if owned by **you:**
a.   golf clubs;
b.   golf clothing;
c.   other clothing while contained in a locker when **you** are playing golf;
d.   golf balls for loss by fire or burglary provided there are visible marks of forcible entry into the building, room or locker; and
e.   other golf equipment.

**Fine Arts and Manuscripts.**

**Postage Stamp Collection,** meaning the following if owned by **you** or in **your** custody or control:
a.   due, envelope, official, revenue, match and medicine stamps;
b.   covers, locals, reprints, essays, proofs and other philatelic property; and
c.   books, pages and mounting of items in a. and b.

**Rare and Current Coin Collection,** meaning the following if owned by **you** or in **your** custody or control:

ENDORSEMENT HF8000 0506

c.   coin albums, containers, frames, cards, and display cabinets in use with such collection.

**Guns.**

**Golf Carts.**

**Other Sports Equipment.**

**Miscellaneous.**  This includes items that cannot be covered under any other available class.

### NEWLY ACQUIRED PROPERTY

1.   **JEWELRY, FURS, CAMERAS, MUSICAL INSTRUMENTS, SILVERWARE, GOLFER'S EQUIPMENT, STAMP COLLECTIONS, COIN COLLECTIONS AND GUNS**

   **We** automatically cover newly acquired property of the Jewelry, Furs, Cameras, Musical Instruments, Silverware, Golfer's Equipment, Stamp Collections, Coin Collections and Guns classes for up to $15,000 for each class of property.  This coverage applies regardless of whether or not the class is already scheduled.

   For coverage to apply, **you** must:
   a.   report these objects to **us** within 30 days of acquisition; and

   b.   pay the additional premium from the date acquired.

2.   **FINE ARTS AND MANUSCRIPTS**

   When **you** have property already scheduled under the Fine Arts and Manuscripts class, **we** automatically cover newly acquired objects of art and manuscripts for their **actual cash value** up to $15,000.

   For coverage to apply **you** must:
   a.   report these objects to **us** within 90 days of acquisition; and

   b.   pay the additional premium from the date acquired.

3.   **OTHER SPORTS EQUIPMENT AND MISCELLANEOUS**

   When **you** have property already scheduled under the Miscellaneous class or under the Other Sports Equipment Class, **we** automatically cover newly acquired objects within that class of the same type as those already scheduled for up to $15,000.

   For coverage to apply **you** must:
   a.   report these objects to **us** within 30 days of acquisition; and

   b.   pay the additional premium from the date acquired.

### TERRITORIAL LIMITS

**We** cover the property described worldwide.

### SPECIAL PROVISIONS

1.   Fine Arts:  **You** agree that the covered property will be handled by competent packers.

PAGE # 53

ENDORSEMENT HF8000 0506

**EXCLUSIONS**

1. **We** do not cover loss which results directly or indirectly from:
   a. wear and tear or gradual deterioration;

   b. inherent vice or any quality in property that causes it to damage or destroy itself; or

   c. insects, rodents or vermin.

2. **We** do not cover loss or damage caused by or resulting from **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
   a. by **you** or at **your** direction; and

   b. with the intent to cause a loss.

   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

   In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

3. **We** do not cover loss or damage caused by or resulting from **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this endorsement.

4. **We** do not cover loss or damage caused by or resulting from **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke. However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

5. If organs not of a mobile nature are covered under Musical Instruments, **we** do not cover loss which results directly or indirectly from:
   a. mechanical or electrical breakdown or failure; or

   b. repairing, adjusting, servicing or maintenance operation; unless fire or explosion ensues and then only for the loss or damage caused by such ensuing fire or explosion.

6. If Fine Arts are covered:

   A. **We** do not cover loss which results directly or indirectly from:

   1. repairing, restoration or retouching process; or

   2. breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile items, unless the Schedule shows that such breakage is covered.

      EXCEPTION: **We** cover loss by breakage if caused by:
      a. fire or lightning;

      b. explosion, aircraft or collision;

ENDORSEMENT HF8000 0506

      d.   malicious damage or theft; or

      e.   derailment or overturn of a conveyance.

B.  **We** do not insure loss, from any cause, to property on exhibition at fairgrounds or premises of national or international expositions unless the premises are covered by this policy.

7.  If Postage Stamps or Rare and Current Coin collections are covered:

A.  **We** do not cover loss which results directly or indirectly from:

   1.  fading, creasing, denting, scratching, tearing or thinning;

   2.  transfer of colors, inherent defect, dampness, extremes of temperature or depreciation;

   3.  being handled or worked on;

   4.  the disappearance of individual stamps, coins or other items unless the item is:

      a.   described and scheduled with a specific amount of insurance; and

      b.   mounted in a volume and the page it is attached to is also lost; or

   5.  shipping by mail other than registered mail.

B.  **We** do not insure loss, from any cause, to property:

   1.  in the custody of transportation companies; or

   2.  not part of a stamp or coin collection.

**CONDITIONS**

1.  **Loss Clause:**  The amount of insurance under this endorsement will not be reduced except for a total loss of a scheduled item.  **We** will refund the unearned premium applicable to such item after the loss or **you** may apply it to the premium due for the replacement of the scheduled item.

2.  **Loss Settlement:  IN NO EVENT WILL WE PAY MORE THAN THE AMOUNT OF INSURANCE SHOWN IN THE SCHEDULE FOR THE COVERED PROPERTY.  THE AMOUNT SHOWN IS THE MAXIMUM WE WILL PAY, EVEN IF REPLACEMENT COST ON CONTENTS COVERAGE IS PROVIDED BY THIS POLICY.**

Covered property losses are settled as follows:

A.  Scheduled Items - (for specifically listed items within a class of personal property)

   1.  Fine Arts and Manuscripts -

      a.   **We** will pay, for each item or property designated in the Schedule, the full amount shown in the Schedule for each scheduled item which is agreed to be the value of that item or property.  At **our** request **you** will surrender that item or property to **us** if not lost or stolen.

      b.   If the scheduled item or property is a pair or set, or consists of several parts when complete, **we** will pay the full amount shown in the Schedule for that pair, set or complete item.  At **our** request,

ENDORSEMENT HF8000 0506

the Schedule for that property, **you** will surrender that property to **us.**

d. **We** will, at **your** request, sell back to **you,** at a price **you** and **we** agree upon, any scheduled item **you** surrendered to **us** to comply with the terms in a., b. or c. above.

2. Other Scheduled Property items - Not shown as Agreed Value in the Schedule

The value of the property insured is not agreed upon but will be ascertained at the time of loss or damage.

Our Option - If **we** give **you** written notice within 30 days after **we** receive **your** signed, sworn proof of loss, **we** may repair or replace any part of the lost or damaged property with like property.

However, **we** will not pay more than the least of the following amounts:

a. the actual cash value of the property at the time of loss or damage;

b. the amount for which **you** could reasonably be expected to have the property repaired to its condition immediately prior to loss;

c. the amount for which the item could reasonably be expected to be replaced with one like the item lost or damaged; or

d. the amount of insurance.

3. Other Scheduled Property Items - Agreed Value Property As Shown in the Schedule

For items indicated by an asterisk (*) in the Schedule as "Losses settled according to the Agreed Value provisions in your policy", covered property losses are settled as follows:

a. Agreed Value

If a listed item is totally destroyed or lost, **we** will pay the full amount shown in the Schedule for that item which is agreed to be the value of that item.

If an item is only partially damaged or lost, **we** will pay to repair the item to its condition immediately prior to loss or pay **you** the difference between the item's value immediately after the damage or loss and the amount shown in the Schedule for the item.

In no event will **we** pay more than the amount shown in the Schedule.

b. Pair, Set or Parts

If the scheduled item or property is a pair or set, or consists of several parts when complete, **we** will pay **you** the full amount shown in the Schedule for that pair, set or complete item.  No payment will exceed the Agreed Value amount shown in the Schedule.  At **our** request, **you** will surrender that item or property to **us** if not lost or stolen.

c. Lost or Stolen Items

In the event lost or stolen property is recovered and **we** have paid **you** the full amount shown in the Schedule for that property, **you** will surrender that property to **us.**

ENDORSEMENT HF8000 0506

item **you** surrendered to **us** to comply with the terms in b. or c. above.

B. Blanket Coverage (for a class of personal property designated as a Blanket class)

1. Property other than Postage stamps or rare and current coin collection -

   When property is covered on a blanket basis, **we** will pay, without deduction of depreciation, the amount required to repair or replace the property, whichever is less.  However, **we** will not pay more than the blanket limit for the class of property for any one loss.  Nor will **we** pay more than $2500, or no more than the higher limit per item as displayed in the Schedule for the blanket class of property, for damage or loss to any one item.

   **We** will not pay a greater proportion of any loss on blanket property than the amount of insurance on blanket property bears to the **actual cash value** at time of loss.

2. Postage stamps or rare and current coin collection -

   When coins or stamps are covered on a blanket basis, **we** will pay the market value at time of loss but not more than $2500, or no more than the higher limit per item as displayed in the Schedule for the blanket class of property, for damage or loss to any one stamp, coin or individual item or any one pair, strip, block, series sheet, cover, frame or card.

   **We** will not pay a greater proportion of any loss on blanket property than the amount of insurance on blanket property bears to the market value at time of loss.

3. Blanket Coverage does not apply to items separately described or listed and specifically insured in this or any other policy, regardless of the limit for which they are insured.

3. **Pair, set or parts other than Scheduled Items for Fine Arts and Manuscript or Agreed Value Property:**

A. Loss to a Pair or Set

   In case of a loss to a pair or set **we** may elect to:

   1. repair or replace any part to restore the pair or set to its value before the loss; or

   2. pay the difference between **actual cash value** of the property before and after the loss.

B. Loss to Parts

   In case of a loss to any part of covered property, consisting of several parts when complete, **we** will pay for the value of the part lost or damaged.

**Exhibit B: First Payment Issued**



**FARMERS**
**INSURANCE**

Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
Please include your claim # on any correspondence
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994

October 29, 2024

JULIO RAVADA
2275 E BELDING DR
PALM SPRINGS CA 92262
Delivered by email to: jravada@icloud.com

| RE: | Insured: | Julio Ravada |
|---|---|---|
| | Claim Number: | 7007678692-1 |
| | Policy Number: | 3872340940 |
| | Loss Date: | 06/03/2024 |
| | Location of Loss: | 2275 E Belding Dr, Palm Springs, CA |
| | Subject: | Claim Outcome Letter |

Dear Julio Ravada:

Thank you for being a valued customer.  We'll issue your claim payment(s) through the method you select to receive your funds.

Your settlement breakdown and other claim related information can be found on the included Additional Information page.

You may make further claim within 180 days after the date of the actual cash value payment for any additional payment on a replacement cost basis if you repair, restore or replace the damaged or stolen property.

You claimed damage requiring full replacement of plumbing fixtures, electrical equipment and appliances.  You also claimed water damage and mold damages. Unfortunately, there is no coverage for this portion of your claim based on the facts known to us at the present time. Our inspection did not find these items warranted full replacement as a repair appeared possible. Further, our inspection did not find any mold damage to the home and the concrete surfaces did not require additional mitigation or repair from due to clear water exposure.

We encourage you to review the terms of your Farmers homeowners Insurance Policy, as endorsed.  They form the basis for our decision.  We have attached a "Coverage Outcome – Policy Provisions" document that includes the applicable policy language.

We've completed the adjustment of your loss and we are closing your claim.  Closing your claim does not affect processing payments for recoverable depreciation, or any other covered amounts still outstanding.  Closing your claim does not prevent you from providing us with additional information, including supplemental claims and requests for recoverable depreciation, within the time limits stated in your policy.  We will inform you in writing if any such additional information results in reopening your claim.

# Additional Information

**Payment summary:**

The following table of information outlines your claim settlement.

| Line of Coverage | Personal Property | Dwelling |
|---|---|---|
| Replacement Cost | $18,349.10 | $3,939.12 |
| Less: Depreciation | $3,360.90 | $34.11 |
| Actual Cash Value | $14,988.20 | $3,905.01 |
| Less: Policy Deductible | $2,500.00 | $N/A |
| Amount | $12,488.20 | $3,905.01 |

**Settlement information:**

Actual cash value is based on replacement cost less any applicable depreciation for age, useful life and condition.   Labor, taxes and other fees and expenses have also been depreciated if not prohibited by your state.  To recover depreciation, please send us a copy of any invoices or receipts that demonstrate replacement or repairs.  We believe our estimate reflects the reasonable cost necessary to repair or replace the covered damages.   Please let us know immediately if you disagree.   We'll reimburse you for the full replacement cost reasonably paid to repair or replace the covered damages or any applicable policy limits.

Any deductible amount will be applied according to policy provisions.

**Request for Replacement Cost extension:**

You may request a six-month extension to submit your claim to recover withheld depreciation if you provide an explanation that shows good cause as to why repairs or replacement can't be completed within 365 days of our first actual cash value payment.  Please contact your claims representative if you can't submit your replacement cost claim within that time, so we can help you finalize your claim.  If the loss or damage relates to an event for which a state of emergency was declared, as defined in Section 8558 of the California Government Code, you'll have 36 months from the date of our first actual cash value payment to make a claim for replacement cost.

**General contractor fees:**

We've attached a detailed estimate for the scope of the covered damage and reasonable repair costs.  You may choose any repair company you wish to complete repairs.  If the repair company you choose will charge more than our estimated amount, please contact us before work begins.  We'll review your repairer's recommendations and help reach an agreement.

We are unable to guarantee the workmanship, timeliness, skills or experience of contractors.  Because the final agreement is between you and your contractor, we'll be happy to provide assistance or have discussions with your contractor if needed, however my ability to resolve issues related to your contractor's work may be limited.

**Prevention of further damage:**

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **8692-1 - 317031-IMPORT - CONTENTS** | | | | | | | | | | | |
| IAL PROPERTY | | | | | | | | | | | |
| os - Sub (Gen 3) Wireless Subwoofer - te | | 2.92 y / Above Avg. / 10 y | 18% | 1 | $799.00 | $799.00 | $73.91 | $872.91 | ($152.93) | $719.98 | |
| . Desc. - Sonos Gen 3, Subwoofer | | | | | | | | | | | |
| Buy | | | | | | | | | | | |
| os - Arc Soundbar with Dolby Atmos, gle Assistant and Amazon Alexa - Black | | 2.92 y / Avg. / 10 y | 29% | 1 | $899.99 | $899.99 | $83.25 | $983.24 | ($287.11) | $696.13 | |
| . Desc. - Sonos Arc, Soundbar | | | | | | | | | | | |
| Buy | | | | | | | | | | | |
| os - Roam SL Portable Bluetooth Wireless ker - Shadow Black | | 2.92 y / Avg. / 10 y | 29% | 1 | $159.00 | $159.00 | $14.71 | $173.71 | ($50.73) | $122.98 | |
| . Desc. - Sonos Roam, Speaker , Small | | | | | | | | | | | |
| Buy | | | | | | | | | | | |
| on - V15 Detect Extra Cordless Vacuum 10 accessories - Yellow/Nickel | | 3.33 y / Avg. / 10 y | 33% | 1 | $799.99 | $799.99 | $74.00 | $873.99 | ($291.04) | $582.95 | |
| . Desc. - Dyson V15, Vacuum | | | | | | | | | | | |
| Buy | | | | | | | | | | | |
| mi Silicone Bodysuit D Cup Breastplate arel Male to Female,Realistic Fake Boobs y Suit for Transgender Drag Queen | | 0.5 y / New / 3 y | 0% | 1 | $245.99 | $245.99 | $22.75 | $268.74 | ($0.00) | $268.74 | |
| . Desc. - Cyomi, Bodysuit , Silicone , D Cup | | | | | | | | | | | |
| zon | | | | | | | | | | | |
| FPV Combo (Goggles V2), First-Person v Drone with 4K Camera, S Flight Mode, r-Wide 150 FOV, HD Low-Latency smission, FAA Remote ID Compliant | | 2.83 y / Avg. / 2 y | 75% | 1 | $1,190.00 | $1,190.00 | $110.08 | $1,300.08 | ($975.06) | $325.02 | |
| . Desc. - DJI FPV, Drone | | | | | | | | | | | |
| zon | | | | | | | | | | | |
| Goggles Carry More Backpack | | 2.83 y / Avg. / 2 y | 75% | 1 | $119.00 | $119.00 | $11.01 | $130.01 | ($97.51) | $32.50 | |
| . Desc. - DJI, Drone Backpack | | | | | | | | | | | |
| e DJI | | | | | | | | | | | |
| Mavic 3 Series Intelligent Flight Battery, patibility: DJI Mavic 3 Pro, DJI Mavic 3 Cine, DJI Mavic 3 Classic, DJI Mavic 3, Mavic 3 Cine, DJI Mavic 3 Enterprise es | | 2.58 y / Avg. / 2 y | 75% | 1 | $149.00 | $149.00 | $13.78 | $162.78 | ($122.09) | $40.69 | |
| . Desc. - DJI, Drone Battery | | | | | | | | | | | |
| zon | | | | | | | | | | | |
| omer's employer replaced at no cost. | Wal-Mart | 0 y / Avg. / 4.5 y | 0% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | ($0.00) | $0.00 | |
| replaced by employer, no incurred damage by customer. | | | | | | | | | | | |
| . Desc. - HP, Laptop , Work , Replaced Already | | | | | | | | | | | |

AVADA21

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8692-1 - 317031-IMPORT - CONTENTS (CONTINUED) | | | | | | | | | | | |
| Book Air 13.3" Laptop - Apple M1 chip - Memory - 256GB SSD - Silver N93LL/A | | 1.58 y / Above Avg. / 4.5 y | 21% | 1 | $699.00 | $699.00 | $64.66 | $763.66 | ($160.88) | $602.78 | |
| Buy | | | | | | | | | | | |
| Desc. - Apple MGN93LLA, Laptop , Macbook , M1 Chip | | | | | | | | | | | |
| ods Max | | 2.83 y / Above Avg. / 10 y | 17% | 1 | $549.00 | $549.00 | $50.78 | $599.78 | ($101.84) | $497.94 | |
| Desc. - Apple MGYN3AMA, Airpod Max | | | | | | | | | | | |
| le | | | | | | | | | | | |
| le Watch Ultra 2 (GPS+Cellular) 49mm nium Case with Black Titanium Milanese p - Medium - Black - (2024) | | 2.67 y / Above Avg. / 10 y | 16% | 1 | $899.00 | $899.00 | $83.16 | $982.16 | ($157.34) | $824.82 | |
| Desc. - Apple, Watch , GPS + Cellular , 43mm , Ceramic Case | | | | | | | | | | | |
| inal 2022 edition watch no longer available -priced at LKQ from Best Buy. | | | | | | | | | | | |
| le - AirPods Pro 2 - White MTJV3AM/A | | 0.75 y / Above Avg. / 10 y | 5% | 1 | $249.00 | $249.00 | $23.03 | $272.03 | ($12.25) | $259.78 | |
| Buy | | | | | | | | | | | |
| Desc. - Apple MTJV3AMA, Earbuds , 2nd Gen | | | | | | | | | | | |
| rt Home Control | | 2.25 y / Above Avg. / 10 y | 14% | 1 | $449.00 | $449.00 | $41.53 | $490.53 | ($66.23) | $424.30 | |
| Desc. - Brilliant, Wall Controller , 2-Switch | | | | | | | | | | | |
| iant Tech | | | | | | | | | | | |
| rt Home Control | | 2.25 y / Above Avg. / 10 y | 14% | 1 | $499.00 | $499.00 | $46.16 | $545.16 | ($73.60) | $471.56 | |
| Desc. - Brilliant, Wall Controller , 3-Switch | | | | | | | | | | | |
| iant Tech | | | | | | | | | | | |
| gle - Nest Smart Programmable Wifi mostat - Snow | | 0.92 y / Above Avg. / 10 y | 6% | 1 | $129.99 | $129.99 | $12.02 | $142.01 | ($7.84) | $134.17 | |
| Desc. - Google Nest, T3017US, Thermostat | | | | | | | | | | | |
| Buy | | | | | | | | | | | |
| n Solarcycle Morph Desk Light | | 3.17 y / Above Avg. / 10 y | 19% | 1 | $649.99 | $649.99 | $60.12 | $710.11 | ($135.06) | $575.05 | |
| n | | | | | | | | | | | |
| Desc. - Dyson, Desk Lamp , Morph Light | | | | | | | | | | | |
| dlight Cam S330 - Eufy - 1 Cam Pack | | 2.17 y / Above Avg. / 10 y | 13% | 1 | $299.99 | $299.99 | $27.75 | $327.74 | ($42.67) | $285.07 | |
| Desc. - Eufy, Security Cam , Floodlight Pro | | | | | | | | | | | |
| M PART OF DWELLING EXPOSURE | | 2.67 y / Above Avg. / 9 y | 18% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | ($0.00) | $0.00 | |
| Desc. - Fisher & Paykel DIshwasher , 24" | | | | | | | | | | | |
| ve medium ceiling lamp | | 3.75 y / Avg. / 10 y | 38% | 2 | $229.99 | $459.98 | $42.55 | $502.53 | ($188.45) | $314.08 | |
| Desc. - Philips, Light Fixtures , Sphere | | | | | | | | | | | |

AVADA21                                                      10/28/2024            Page: 5

**Exhibit C: Farmers Investigation Start**

**From:** **Andrew Hermann** andy.hermann@farmersinsurance.com
**Subject:** Pending Claim 6/3/24; 2275 E Belding
**Date:** June 12, 2024 at 12:40
**To:** jravada@icloud.com

Mr. Ravada, I am assisting your claims representative Donnie Means in the investigation and evaluation of the aforementioned claim you have submitted. I have attempted to contact you by phone with no success to date. Could you please give me a call when you have an opportunity as I would like to speak with you and schedule a follow up phone interview with you to discuss additional details regarding the loss. I am located in the Central time zone and can be reached between 8:00am to 4:30pm. Thank you and I look forward to hearing from you.

_____

Andy Hermann

*General Special Investigator*
636.288.4782
Farmers Direct Property and Casualty Insurance Co.

Confidential

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

**Exhibit D: EUO Start**

STEVEN B. BITTER

JOHN S. NA
DIRECT (213) 576-5030

ATTORNEYS AT LAW
633 WEST FIFTH STREET, 52ND FLOOR
LOS ANGELES, CA 90071
PHONE: (213) 576-5000
FAX: (213) 680-4470
WWW.GORDONREES.COM

August 20, 2024

**VIA CERTIFIED MAIL / RETURN**
**RECEIPT AND EMAIL**
Julio Ravada
2275 E Belding Drive
Palm Springs, CA 92262
Email:

Re:     **Insurance Claim with Farmers Direct Property And Casualty Ins. Co.**
        Named Insured:     Julio Ravada
        Claim No.:         7007678692-1
        Policy No.:        3872340940
        Loss Date:         June 3, 2024
        Loss Location:     2275 E Belding Drive, Palm Springs, CA

Dear Julio Ravada:

We write to advise that our law firm has been retained by Farmers Direct Property And Casualty Ins. Co. ("Insurer") to assist it with regard to the above referenced insurance claim for theft of personal contents on or about June 3, 2024, from the residence located at 2275 E Belding Drive, Palm Springs, CA, and assigned claim number 7007678692-1 by the Insurer.

Pursuant to the terms and conditions of your insurance policy, we write to inform you the Insurer has determined it will exercise its right to obtain your testimony at an Examination Under Oath ("EUO"), and has retained our office to assist it in this regard. As required by California law, please find enclosed a copy of Section 2071.1 of the California Insurance Code for your review.

Your insurance policy with Insurer provides at Section I – Conditions, 2. What You Must Do After a Loss as follows:

**We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.

**PAGE #63**

Claim of Julio Ravada
August 20, 2024
Page 2

      C.      Cooperate with **us** in the investigation of a claim.

      E.      At any reasonable time and place **we** designate, and as often as **we** reasonably require:

      1.      show **us** the damaged property;
      2.      submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and
      3.      allow **us** to examine and copy or abstract any record and document **we** request.

**EXAMINATION UNDER OATH**

Pursuant to the terms of the above policy provisions, as well as Insurance Code Section 2071.1, the Insurer has determined it will proceed with obtaining your testimony at your EUO.

The EUO will be conducted in the presence of a court reporter, who will place you under oath and transcribe the proceeding. At the conclusion of the proceedings, transcripts of the testimonies will be prepared by the court reporter. You will be provided with the opportunity to review the transcript for accuracy, after which you will be required to sign the transcript under penalty of perjury.

You have the right to have an attorney of your choosing represent you at the EUO. However, any fees and costs charged by the attorney are your own responsibility. Please refer to the attached copy of Section 2071.1 of the California Insurance Code for additional rights afforded to you with respect to an EUO.

At this time, we have scheduled your EUO as follows:

| | |
|---|---|
| **Insured:** | **Julio Ravada** |
| **Date:** | **Monday, September 16, 2024** |
| **Time:** | **10:00 AM** |
| **Location:** | **Remote via Zoom** |

Please contact my office to confirm your availability for the above date and time; if another date is more convenient for you, please advise and we will make all attempts to accommodate your schedule.

We will provide you with the Zoom link for the EUO once we have confirmed the date and time with you. Further, please note that the EUO is likely to take a few hours to complete. Accordingly, we ask that you keep your schedule open on the date of your EUO.

**PAGE #64**

## Exhibit E: First Payment from Farmers



Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
Please include your claim # on any correspondence
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994

October 29, 2024

JULIO RAVADA
2275 E BELDING DR
PALM SPRINGS CA 92262
Delivered by email to: jravada@icloud.com

| | | |
|---|---|---|
| RE: | Insured: | Julio Ravada |
| | Claim Number: | 7007678692-1 |
| | Policy Number: | 3872340940 |
| | Loss Date: | 06/03/2024 |
| | Location of Loss: | 2275 E Belding Dr, Palm Springs, CA |

Dear Julio Ravada:

Thank you for being a valued customer.  We'll issue your claim payment(s) through the method you select to receive your funds.

Your settlement breakdown and other claim related information can be found on the included Additional Information page.

You may make further claim within 180 days after the date of the actual cash value payment for any additional payment on a replacement cost basis if you repair, restore or replace the damaged or stolen property.

You claimed damage requiring full replacement of plumbing fixtures, electrical equipment and appliances.  You also claimed water damage and mold damages. Unfortunately, there is no coverage for this portion of your claim based on the facts known to us at the present time. Our inspection did not find these items warranted full replacement as a repair appeared possible. Further, our inspection did not find any mold damage to the home and the concrete surfaces did not require additional mitigation or repair from due to clear water exposure.

We encourage you to review the terms of your Farmers homeowners Insurance Policy, as endorsed.  They form the basis for our decision.  We have attached a "Coverage Outcome – Policy Provisions" document that includes the applicable policy language.

We've completed the adjustment of your loss and we are closing your claim.  Closing your claim does not affect processing payments for recoverable depreciation, or any other covered amounts still outstanding.  Closing your claim does not prevent you from providing us with additional information, including supplemental claims and requests for recoverable depreciation, within the time limits stated in your policy.  We will inform you in writing if any such additional information results in reopening your claim.

**PAGE #65**

# Additional Information

**Payment summary:**

The following table of information outlines your claim settlement.

| Line of Coverage | Personal Property | Dwelling |
|---|---|---|
| Replacement Cost | $18,349.10 | $3,939.12 |
| Less: Depreciation | $3,360.90 | $34.11 |
| Actual Cash Value | $14,988.20 | $3,905.01 |
| Less: Policy Deductible | $2,500.00 | $N/A |
| Amount | $12,488.20 | $3,905.01 |

**Settlement information:**

Actual cash value is based on replacement cost less any applicable depreciation for age, useful life and condition.  Labor, taxes and other fees and expenses have also been depreciated if not prohibited by your state.  To recover depreciation, please send us a copy of any invoices or receipts that demonstrate replacement or repairs.  We believe our estimate reflects the reasonable cost necessary to repair or replace the covered damages.   Please let us know immediately if you disagree.   We'll reimburse you for the full replacement cost reasonably paid to repair or replace the covered damages or any applicable policy limits.

Any deductible amount will be applied according to policy provisions.

**Request for Replacement Cost extension:**

You may request a six-month extension to submit your claim to recover withheld depreciation if you provide an explanation that shows good cause as to why repairs or replacement can't be completed within 365 days of our first actual cash value payment.  Please contact your claims representative if you can't submit your replacement cost claim within that time, so we can help you finalize your claim.  If the loss or damage relates to an event for which a state of emergency was declared, as defined in Section 8558 of the California Government Code, you'll have 36 months from the date of our first actual cash value payment to make a claim for replacement cost.

**General contractor fees:**

We've attached a detailed estimate for the scope of the covered damage and reasonable repair costs.  You may choose any repair company you wish to complete repairs.  If the repair company you choose will charge more than our estimated amount, please contact us before work begins.  We'll review your repairer's recommendations and help reach an agreement.

We are unable to guarantee the workmanship, timeliness, skills or experience of contractors.  Because the final agreement is between you and your contractor, we'll be happy to provide assistance or have discussions with your contractor if needed, however my ability to resolve issues related to your contractor's work may be limited.

**Prevention of further damage:**

PAGE #66

Case 2:25-cv-10938-SVW-AS  Document 1-2  Filed 11/14/25  Page 114 of 176  Page ID #:127

**678692-1 - 317031-IMPORT - CONTENTS**

...ONAL PROPERTY

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ...onos - Sub (Gen 3) Wireless Subwoofer - ...hite | | 2.92 y / Above Avg. / 10 y | 18% | 1 | $799.00 | $799.00 | $73.91 | $872.91 | ($152.93) | $719.98 | |
| ...rig. Desc. - Sonos Gen 3, Subwoofer | | | | | | | | | | | |
| ...est Buy | | | | | | | | | | | |
| ...onos - Arc Soundbar with Dolby Atmos, ...oogle Assistant and Amazon Alexa - Black | | 2.92 y / Avg. / 10 y | 29% | 1 | $899.99 | $899.99 | $83.25 | $983.24 | ($287.11) | $696.13 | |
| ...rig. Desc. - Sonos Arc, Soundbar | | | | | | | | | | | |
| ...est Buy | | | | | | | | | | | |
| ...onos - Roam SL Portable Bluetooth Wireless ...peaker - Shadow Black | | 2.92 y / Avg. / 10 y | 29% | 1 | $159.00 | $159.00 | $14.71 | $173.71 | ($50.73) | $122.98 | |
| ...rig. Desc. - Sonos Roam, Speaker , Small | | | | | | | | | | | |
| ...est Buy | | | | | | | | | | | |
| ...yson - V15 Detect Extra Cordless Vacuum ...ith 10 accessories - Yellow/Nickel | | 3.33 y / Avg. / 10 y | 33% | 1 | $799.99 | $799.99 | $74.00 | $873.99 | ($291.04) | $582.95 | |
| ...rig. Desc. - Dyson V15, Vacuum | | | | | | | | | | | |
| ...est Buy | | | | | | | | | | | |
| ...yomi Silicone Bodysuit D Cup Breastplate ...pparel Male to Female,Realistic Fake Boobs ...ody Suit for Transgender Drag Queen | | 0.5 y / New / 3 y | 0% | 1 | $245.99 | $245.99 | $22.75 | $268.74 | ($0.00) | $268.74 | |
| ...rig. Desc. - Cyomi, Bodysuit , Silicone , D Cup | | | | | | | | | | | |
| ...mazon | | | | | | | | | | | |
| ...JI FPV Combo (Goggles V2), First-Person ...iew Drone with 4K Camera, S Flight Mode, ...uper-Wide 150 FOV, HD Low-Latency ...ransmission, FAA Remote ID Compliant | | 2.83 y / Avg. / 2 y | 75% | 1 | $1,190.00 | $1,190.00 | $110.08 | $1,300.08 | ($975.06) | $325.02 | |
| ...rig. Desc. - DJI FPV, Drone | | | | | | | | | | | |
| ...mazon | | | | | | | | | | | |
| ...JI Goggles Carry More Backpack | | 2.83 y / Avg. / 2 y | 75% | 1 | $119.00 | $119.00 | $11.01 | $130.01 | ($97.51) | $32.50 | |
| ...rig. Desc. - DJI, Drone Backpack | | | | | | | | | | | |
| ...tore DJI | | | | | | | | | | | |
| ...JI Mavic 3 Series Intelligent Flight Battery, ...ompatibility: DJI Mavic 3 Pro, DJI Mavic 3 ...ro Cine, DJI Mavic 3 Classic, DJI Mavic 3, ...JI Mavic 3 Cine, DJI Mavic 3 Enterprise ...eries | | 2.58 y / Avg. / 2 y | 75% | 1 | $149.00 | $149.00 | $13.78 | $162.78 | ($122.09) | $40.69 | |
| ...rig. Desc. - DJI, Drone Battery | | | | | | | | | | | |
| ...mazon | | | | | | | | | | | |
| ...ustomer's employer replaced at no cost. | Wal-Mart | 0 y / Avg. / 4.5 y | 0% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | ($0.00) | $0.00 | |
| ...em replaced by employer, no incurred damage by customer. | | | | | | | | | | | |
| ...rig. Desc. - HP, Laptop , Work , Replaced Already | | | | | | | | | | | |

...RAVADA21      10/28/2024    Page: 4

**678692-1 - 317031-IMPORT - CONTENTS (CONTINUED)**

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MacBook Air 13.3" Laptop - Apple M1 chip - GB Memory - 256GB SSD - Silver MGN93LL/A | | 1.58 y / Above Avg. / 4.5 y | 21% | 1 | $699.00 | $699.00 | $64.66 | $763.66 | ($160.88) | $602.78 | |
| Best Buy | | | | | | | | | | | |
| Orig. Desc. - Apple MGN93LLA, Laptop , Macbook , M1 Chip | | | | | | | | | | | |
| AirPods Max | | 2.83 y / Above Avg. / 10 y | 17% | 1 | $549.00 | $549.00 | $50.78 | $599.78 | ($101.84) | $497.94 | |
| Orig. Desc. - Apple MGYN3AMA, Airpod Max | | | | | | | | | | | |
| Apple | | | | | | | | | | | |
| Apple Watch Ultra 2 (GPS+Cellular) 49mm Titanium Case with Black Titanium Milanese Loop - Medium - Black - (2024) | | 2.67 y / Above Avg. / 10 y | 16% | 1 | $899.00 | $899.00 | $83.16 | $982.16 | ($157.34) | $824.82 | |
| Orig. Desc. - Apple, Watch , GPS + Cellular , 43mm , Ceramic Case | | | | | | | | | | | |
| Original 2022 edition watch no longer available -priced at LKQ from Best Buy. | | | | | | | | | | | |
| Apple - AirPods Pro 2 - White MTJV3AM/A | | 0.75 y / Above Avg. / 10 y | 5% | 1 | $249.00 | $249.00 | $23.03 | $272.03 | ($12.25) | $259.78 | |
| Best Buy | | | | | | | | | | | |
| Orig. Desc. - Apple MTJV3AMA, Earbuds , 2nd Gen | | | | | | | | | | | |
| Smart Home Control | | 2.25 y / Above Avg. / 10 y | 14% | 1 | $449.00 | $449.00 | $41.53 | $490.53 | ($66.23) | $424.30 | |
| Orig. Desc. - Brilliant, Wall Controller , 2-Switch | | | | | | | | | | | |
| Brilliant Tech | | | | | | | | | | | |
| Smart Home Control | | 2.25 y / Above Avg. / 10 y | 14% | 1 | $499.00 | $499.00 | $46.16 | $545.16 | ($73.60) | $471.56 | |
| Orig. Desc. - Brilliant, Wall Controller , 3-Switch | | | | | | | | | | | |
| Brilliant Tech | | | | | | | | | | | |
| Google - Nest Smart Programmable Wifi Thermostat - Snow | | 0.92 y / Above Avg. / 10 y | 6% | 1 | $129.99 | $129.99 | $12.02 | $142.01 | ($7.84) | $134.17 | |
| Orig. Desc. - Google Nest, T3017US, Thermostat | | | | | | | | | | | |
| Best Buy | | | | | | | | | | | |
| Dyson Solarcycle Morph Desk Light | | 3.17 y / Above Avg. / 10 y | 19% | 1 | $649.99 | $649.99 | $60.12 | $710.11 | ($135.06) | $575.05 | |
| Dyson | | | | | | | | | | | |
| Orig. Desc. - Dyson, Desk Lamp , Morph Light | | | | | | | | | | | |
| Floodlight Cam S330 - Eufy - 1 Cam Pack | | 2.17 y / Above Avg. / 10 y | 13% | 1 | $299.99 | $299.99 | $27.75 | $327.74 | ($42.67) | $285.07 | |
| Eufy | | | | | | | | | | | |
| Orig. Desc. - Eufy, Security Cam , Floodlight Pro | | | | | | | | | | | |
| ITEM PART OF DWELLING EXPOSURE | | 2.67 y / Above Avg. / 9 y | 18% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | ($0.00) | $0.00 | |
| Orig. Desc. - Fisher & Paykel DIshwasher , 24" | | | | | | | | | | | |
| Enrave medium ceiling lamp | | 3.75 y / Avg. / 10 y | 38% | 2 | $229.99 | $459.98 | $42.55 | $502.53 | ($188.45) | $314.08 | |
| Orig. Desc. - Philips, Light Fixtures , Sphere | | | | | | | | | | | |

BRAVADA21        10/28/2024     Page: 5

| Description | Vendor | Age / Cond. / Life | Depr % | Qty | Unit Price | Item Total | Taxes | RCV | Depr | ACV | Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **678692-1 - 317031-IMPORT - CONTENTS (CONTINUED)** | | | | | | | | | | | |
| Philips Hue | | | | | | | | | | | |
| Phillips Ensis pendant light | | 3.67 y / Avg. / 10 y | 37% | 1 | $479.99 | $479.99 | $44.40 | $524.39 | ($192.46) | $331.93 | |
| Phillips Hue | | | | | | | | | | | |
| Orig. Desc. - Philips, Light Fixture | | | | | | | | | | | |
| Value accepted for painting, original delivery not included | | 6.25 y / Avg. / NA | 0% | 1 | $5,000.00 | $5,000.00 | $462.50 | $5,462.50 | ($0.00) | $5,462.50 | |
| Orig. Desc. - Ivy and Luke Painting by Mark Bercier | | | | | | | | | | | |
| Ivy and Luke Painting by Mark Bercier. | | | | | | | | | | | |
| ITEM PART OF DWELLING EXPOSURE | | 2.17 y / Avg. / 10 y | 22% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | ($0.00) | $0.00 | |
| Orig. Desc. - Window , 2-Panel | | | | | | | | | | | |
| ITEM PART OF DWELLING EXPOSURE | | | | | | | | | | | |
| ITEM PART OF DWELLING EXPOSURE | | 0 y / Avg. / 10 y | 0% | 1 | $0.00 | $0.00 | $0.00 | $0.00 | ($0.00) | $0.00 | |
| Orig. Desc. - 59686573251, Toilet | | | | | | | | | | | |
| *BLANKET JEWELERY - Items below are subject to a $1,500.00 aggregate limit. Values shown may be reduced due to overage.* | | | | | | | | | | | |
| 22K Gold "Box" Chain In Length 16.00 Inches | | 10 y / Above Avg. / NA | 0% | 3 | $478.13 | $1,434.39 | $132.68 | $1,567.07 | ($0.00) | $1,567.07 | [AGG] |
| Orig. Desc. - Chain , Gold , 22k | | | | | | | | | | | |
| Sotaram | | | | | | | | | | | |
| *MEMORABILIA - Items below are subject to a $5,000.00 aggregate limit. Values shown may be reduced due to overage.* | | | | | | | | | | | |
| Shen Yin Studio No Face man & ogino chihiro Spirited Away Figure GK Model Toy | | 0 y / Avg. / 2 y | 0% | 1 | $331.55 | $331.55 | $30.67 | $362.22 | ($0.00) | $362.22 | |
| Orig. Desc. - No Face Prime Memorabilia | | | | | | | | | | | |
| ebay | | | | | | | | | | | |
| Snow Globes | | 15 y / Avg. / 10 y | 75% | 8 | $37.50 | $300.00 | $27.75 | $327.75 | ($245.81) | $81.94 | |
| **Totals** | | | | | | **$16,791.85** | **$1,553.25** | **$18,345.10** | **$3,360.90** | **$14,984.20** | |
| | | | | | | **$16,791.85** | **$1553.25** | **$18,345.10** | **3,360.90** | **$14,984.20** | |

Depreciation limited due to maximum allowable depreciation percentage
Item depreciated by percent
Item depreciated by specified amount
- Item contributes to aggregate overage, see Sublimit Recap

## Summary for Personal Property

| | |
|---|---:|
| Line Item Total | 16,791.85 |
| California Electronic Waste Recycling Fee 4"-15" | 4.00 |
| Material Sales Tax (9.25%) | 1,553.25 |
| **Replacement Cost Value** | **$18,349.10** |
| Less Depreciation | (3,360.90) |
| **Actual Cash Value** | **$14,988.20** |
| Less Deductible | (2,500.00) |
| **Net Claim** | **$12,488.20** |
| Total Recoverable Depreciation | 3,360.90 |
| **Net Claim if Depreciation is Recovered** | **$15,849.10** |

## Sublimit Recap

| Description | Single Item Limit | Aggregate Limit | ACV | ACV Overage | RCV | RCV Overage |
|---|---:|---:|---:|---:|---:|---:|
| Blanket Jewelery | $0.00 | $1,500.00 | $1,567.07 | $67.07 | $1,567.07 | $67.07 |
| Memorabilia | $0.00 | $5,000.00 | $444.16 | $0.00 | $689.97 | $0.00 |
| | | | $2,011.23 | $67.07 | $2,257.04 | $67.07 |
| Remaining Overage After Deductible | | | | $0.00 | | $0.00 |

Richard Bryan

**Exhibit F: Payment for Submitted Receipts to Obtain Witheld Depreciation Back**



**FARMERS**
**INSURANCE**

Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
Please include your claim # on any correspondence
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994

November 12, 2024

JULIO RAVADA
2275 E BELDING DR
PALM SPRINGS CA 92262
Delivered by email to: jravada@icloud.com

|  |  |  |
|---|---|---|
| RE: | Insured: | Julio Ravada |
|  | Claim Number: | 7007678692-1 |
|  | Policy Number: | 3872340940 |
|  | Loss Date: | 06/03/2024 |
|  | Location of Loss: | 2275 E Belding Dr, Palm Springs, CA |
|  | Subject: | Settlement Notice |

Dear Julio Ravada:

Thank you for choosing us to provide for your insurance needs.  We value you as a customer and appreciate the opportunity to be of service.

We received your request to recover the depreciation for your theft loss and reviewed the documents you submitted.  Your policy allows you to collect the lower of the agreed-upon estimate, or the reasonable amount you spent to complete repairs or replacement, less any applicable deductible.  Your recovery applies to the items for which payment is being made subject to the time limits outlined below.

A payment for your recoverable depreciation in the amount of $1,546.91 will be issued through the method you selected to receive your funds.  I've attached a copy of the estimate on which these payments are based.

If you intend to recover withheld depreciation, you must submit a copy of your invoices or receipts within 365 days from the date of our first Actual Cash Value payment, or by April 27, 2025 to make further claim.

As we discussed on November 7, 2024 the damages to your dwelling were addressed on the dwelling repair estimate provided with the settlement letter issued October 29, 2024. To enable review of a dwelling supplement please forward a copy of an estimate from an electrical contractor once the inspection outlined on the dwelling payment has been completed.

We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver.  Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied.

California law and regulations require that we provide you with written notice of any limitation period upon which we may rely to deny a claim.  We also wish to bring to your attention the following limitation period set

**PAGE #71**

**Farmers Direct Property and Casualty Insurance Company**

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

# Payment Worksheet

| | | | | | | |
|---|---|---|---|---|---|---|
| red: | JULIO RAVADA | Home: (213) 925-4069 | Claim Number: 7007678692-1 | Type of Loss: | Vandalism |
| erty: | 2275 E BELDING DR | | Policy Number: 3872340940 | Date of Loss: | 6/3/2024 |
| | PALM SPRINGS, CA 92262 | | | | |

**Cash Value Benefits:**

| | |
|---|---|
| nate Total............................................ | $16,795.85 |
| es......................................................... | $1,553.25 |
| lacement Cost...................................... | $18,349.10 |
| Recoverable Depreciation................. | -$3,360.90 |
| ual Cash Value (ACV) Subtotal.......... | $14,988.20 |
| Deductible......................................... | -$2,500.00 |
| Advance Payments............................ | -$12,488.20 |
| ACV Payments Made........................ | $0.00 |
| nated Remaining ACV Benefits......... | $0.00 |

**Replacement Cost (RC) Benefits:**

| | |
|---|---|
| Estimated Total RC Benefits..................... | $3,360.90 |
| Less Deferred Payments Made.................. | -$0.00 |
| Less Deferred Payments Pending.............. | -$1,546.91 |
| Estimated Remaining RC Benefits............ | $1,341.83 |

**Summary of Payments:**

| | |
|---|---|
| Outstanding ACV Settlement.................... | $0.00 |
| Deferred Payments Pending...................... | $1,546.91 |
| Less Overpayment..................................... | -$0.00 |
| Total Payments Pending............................ | $1,546.91 |

**Claim Summary Payments:**

| | |
|---|---|
| Loss of Use................................................ | $0.00 |
| Coverage.................................................... | $12,488.20 |
| Total.......................................................... | $12,488.20 |

AVADA

7007678692-1

11/12/2024    Page: 3

Case 2:25-cv-10938-SVW-AS    Document 1-2    Filed 11/14/25    Page 119 of 176    Page ID #:132

# Farmers Direct Property and Casualty Insurance Company

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

| Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| **692-1  -  317031-import  -** **NTS** | | | | | | | | | | |
| onos - Sub (Gen 3) Wireless woofer - White | 1.00 EA | $799.00 | $73.91 | $872.91 | -$152.93 | $719.98 | $799.00 | $0.00 | $0.00 | $79.02 |
| g. Desc. - Sonos Gen 3, Subwoofer | | | | | | | | | | |
| t Buy | | | | | | | | | | |
| onos - Arc Soundbar with Dolby nos, Google Assistant and Amazon xa - Black | 1.00 EA | $899.99 | $83.25 | $983.24 | -$287.11 | $696.13 | | $0.00 | $287.11 | $0.00 |
| g. Desc. - Sonos Arc, Soundbar | | | | | | | | | | |
| t Buy | | | | | | | | | | |
| onos - Roam SL Portable Bluetooth eless Speaker - Shadow Black | 1.00 EA | $159.00 | $14.71 | $173.71 | -$50.73 | $122.98 | $229.18 | $0.00 | $0.00 | $50.73 |
| g. Desc. - Sonos Roam, Speaker , Small | | | | | | | | | | |
| t Buy | | | | | | | | | | |
| yson - V15 Detect Extra Cordless uum with 10 accessories - low/Nickel | 1.00 EA | $799.99 | $74.00 | $873.99 | -$291.04 | $582.95 | | $0.00 | $291.04 | $0.00 |
| g. Desc. - Dyson V15, Vacuum | | | | | | | | | | |
| t Buy | | | | | | | | | | |
| yomi Silicone Bodysuit D Cup astplate Apparel Male to ale,Realistic Fake Boobs Body Suit f | 1.00 EA | $245.99 | $22.75 | $268.74 | -$0.00 | $268.74 | | $0.00 | $0.00 | $0.00 |
| g. Desc. - Cyomi, Bodysuit , Silicone , D Cup | | | | | | | | | | |
| azon | | | | | | | | | | |
| 2K Gold "Box" Chain In Length 16.00 nes | 3.00 EA | $1,434.39 | $132.68 | $1,567.07 | -$0.00 | $1,567.07 | | $0.00 | $0.00 | $0.00 |
| g. Desc. - Chain , Gold , 22k | | | | | | | | | | |
| aram | | | | | | | | | | |
| JI FPV Combo (Goggles V2), First-son View Drone with 4K Camera, S ht Mode, Super-Wide 150 | 1.00 EA | $1,190.00 | $110.08 | $1,300.08 | -$975.06 | $325.02 | $1,300.08 | $0.00 | $0.00 | $975.06 |
| g. Desc. - DJI FPV, Drone | | | | | | | | | | |
| azon | | | | | | | | | | |

AVADA

7007678692-1

11/12/2024          Page: 4

# Farmers Direct Property and Casualty Insurance Company

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

| Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | RC Benefits Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| DJI Goggles Carry More Backpack | 1.00 EA | $119.00 | $11.01 | $130.01 | -$97.51 | $32.50 | $178.99 | $0.00 | $0.00 | $97.51 |
| g. Desc. - DJI, Drone Backpack | | | | | | | | | | |
| re DJI | | | | | | | | | | |
| DJI Mavic 3 Series Intelligent Flight tery, Compatibility: DJI Mavic 3 Pro, Mavic 3 Pro Ci | 1.00 EA | $149.00 | $13.78 | $162.78 | -$122.09 | $40.69 | $134.00 | $0.00 | $0.00 | $93.31 |
| g. Desc. - DJI, Drone Battery | | | | | | | | | | |
| azon | | | | | | | | | | |
| HP, Laptop , Work , Replaced Already | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| ble to valuate. Additional information needed to valuate the item. | | | | | | | | | | |
| MacBook Air 13.3" Laptop - Apple chip - 8GB Memory - 256GB SSD - er MGN93LL/A | 1.00 EA | $699.00 | $64.66 | $763.66 | -$160.88 | $602.78 | $675.89 | $0.00 | $0.00 | $73.11 |
| t Buy | | | | | | | | | | |
| g. Desc. - Apple MGN93LLA, Laptop , Macbook , M1 Chip | | | | | | | | | | |
| AirPods Max | 1.00 EA | $549.00 | $50.78 | $599.78 | -$101.84 | $497.94 | | $0.00 | $101.84 | $0.00 |
| g. Desc. - Apple MGYN3AMA, Airpod Max | | | | | | | | | | |
| ple | | | | | | | | | | |
| Apple Watch Ultra 2 (GPS Cellular) m Titanium Case with Black nium Milanese Loop-Medium-B | 1.00 EA | $899.00 | $83.16 | $982.16 | -$157.34 | $824.82 | | $0.00 | $157.34 | $0.00 |
| g. Desc. - Apple, Watch , GPS + Cellular , 43mm , Ceramic Case | | | | | | | | | | |
| ple | | | | | | | | | | |
| Apple - AirPods Pro 2 - White JV3AM/A | 1.00 EA | $249.00 | $23.03 | $272.03 | -$12.25 | $259.78 | $267.65 | $0.00 | $0.00 | $7.87 |
| t Buy | | | | | | | | | | |
| g. Desc. - Apple MTJV3AMA, Earbuds , 2nd Gen | | | | | | | | | | |
| Smart Home Control | 1.00 EA | $449.00 | $41.53 | $490.53 | -$66.23 | $424.30 | | $0.00 | $66.23 | $0.00 |
| g. Desc. - Brilliant, Wall Controller , 2-Switch | | | | | | | | | | |
| liant Tech | | | | | | | | | | |

VADA

7007678692-1

11/12/2024        Page: 5

**Farmers Direct Property and Casualty Insurance Company**

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

| Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | |
|---|---|---|---|---|---|---|---|---|
| 16. Smart Home Control | 1.00 EA | $499.00 | $46.16 | $545.16 | -$73.60 | $471.56 | $1,055.24 | |
| Orig. Desc. - Brilliant, Wall Controller , 3-Switch | | | | | | | | |
| Brilliant Tech | | | | | | | | |
| 17. Google - Nest Smart Programmable Wifi Thermostat - Snow | 1.00 EA | $129.99 | $12.02 | $142.01 | -$7.84 | $134.17 | $150.34 | |
| Orig. Desc. - Google Nest, T3017US, Thermostat | | | | | | | | |
| Best Buy | | | | | | | | |
| 18. Dyson Solarcycle Morph Desk Light | 1.00 EA | $649.99 | $60.12 | $710.11 | -$135.06 | $575.05 | $649.00 | |
| Dyson | | | | | | | | |
| Orig. Desc. - Dyson, Desk Lamp , Morph Light | | | | | | | | |
| 19. Floodlight Cam S330 - Eufy - 1 Cam Pack | 1.00 EA | $299.99 | $27.75 | $327.74 | -$42.67 | $285.07 | $299.98 | |
| Eufy | | | | | | | | |
| Orig. Desc. - Eufy, Security Cam , Floodlight Pro | | | | | | | | |
| 20. ITEM PART OF DWELLING EXPOSURE | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | |
| Orig. Desc. - Fisher & Paykel DIshwasher , 24" | | | | | | | | |
| 21. Enrave medium ceiling lamp | 2.00 EA | $459.98 | $42.55 | $502.53 | -$188.45 | $314.08 | $306.92 | |
| Orig. Desc. - Philips, Light Fixtures , Sphere | | | | | | | | |
| Philips Hue | | | | | | | | |
| 22. Phillips Ensis pendant light | 1.00 EA | $479.99 | $44.40 | $524.39 | -$192.46 | $331.93 | | |
| Phillips Hue | | | | | | | | |
| Orig. Desc. - Philips, Light Fixture | | | | | | | | |
| 23. Value accepted for painting, original delivery not included | 1.00 EA | $5,000.00 | $462.50 | $5,462.50 | -$0.00 | $5,462.50 | | |
| Orig. Desc. - Ivy and Luke Painting by Mark Bercier | | | | | | | | |
| Ivy and Luke Painting by Mark Bercier. | | | | | | | | |
| 24. ITEM PART OF DWELLING EXPOSURE | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | |

**PAGE #75**

# Farmers Direct Property and Casualty Insurance Company

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

| Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| M PART OF DWELLING EXPOSURE | | | | | | | | | | |
| Shen Yin Studio No Face man & no chihiro Spirited Away Figure GK del Toy | 1.00 EA | $331.55 | $30.67 | $362.22 | -$0.00 | $362.22 | | $0.00 | $0.00 | $0.00 |
| g. Desc. - No Face Prime Memorabilia | | | | | | | | | | |
| y | | | | | | | | | | |
| Snow Globes | 8.00 EA | $300.00 | $27.75 | $327.75 | -$245.81 | $81.94 | | $0.00 | $245.81 | $0.00 |
| ITEM PART OF DWELLING POSURE | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| g. Desc. - 59686573251, Toilet | | | | | | | | | | |
| California Electronic Waste Recycling 4"-15" | 1.00 EA | $4.00 | $0.00 | $4.00 | -$0.00 | $4.00 | | $0.00 | $0.00 | $0.00 |
| | | $16,795.85 | $1,553.25 | $18,349.10 | -$3,360.90 | $14,988.20 | $6,046.27 | $0.00 | $1,341.83 | $1,546.91 |
| | | $16,795.85 | $1,553.25 | $18,349.10 | -$3,360.90 | $14,988.20 | $6,046.27 | $0.00 | $1,341.83 | $1,546.91 |

Case 2:25-cv-10938-SVW-AS    Document 1-2    Filed 11/14/25    Page 123 of 176    Page ID #:136

## Exhibit G: Farmers Denial Nov 22, 2024



Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
Please include your claim # on any correspondence
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994

November 22, 2024

JULIO RAVADA
2275 E BELDING DR
PALM SPRINGS CA 92262
Delivered by email to: jravada@icloud.com

|     |     |     |
| --- | --- | --- |
| RE: | Insured: | Julio Ravada |
|     | Claim Number: | 7007678692-1 |
|     | Policy Number: | 3872340940 |
|     | Loss Date: | 06/03/2024 |
|     | Location of Loss: | 2275 E Belding Dr, Palm Springs, CA |
|     | Subject: | Claim Outcome Letter |

Dear Julio Ravada:

You reported a theft of personal property from your home occurring on the above referenced loss date.

We received and reviewed your recent email communications and recordings regarding your claim.

This letter is written in an effort to provide you a reasonable explanation of the factual basis for the decision to deny the claim, and to provide you reference to those policy provisions upon which the decision to deny the claim is based. This letter is not intended to be an exhaustive recitation of all facts, criteria, policy provisions and law that was relied upon to reach the decision to deny your claim. It is written, instead, to give you a fair and reasonable explanation.

For the reasons set forth below Farmers Direct Property and Casualty Ins. Co declines to make any payment to you for the claim. Based on the evidence we obtained through the course of our investigation of your claim, Farmers Direct Property and Casualty Ins. Co has determined that you concealed and/or misrepresented facts and circumstances material to the claim. The misrepresentations include but are not limited to the following:

- Misrepresentations were found regarding receipts that were submitted by to you in an attempt to recover depreciation on your claim with orders that were cancelled.

As a result of these material concealments and misrepresentations, there is no coverage available for the reported loss, and no payment will be made.

We encourage you to review the terms of your FWS ARS Homeowner policy, as endorsed. They form the basis for our decision. We have attached a "Coverage Outcome – Policy Provisions" document that includes the applicable policy language.

**PAGE #77**

We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver.  Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied.

California law and regulations require that we provide you with written notice of any limitation period upon which we may rely to deny a claim.  We also wish to bring to your attention the following limitation period set forth in the General Conditions section of your policy.  This period is the shortest period which will apply, unless that period may have been extended by statute.

Please refer to the **General Conditions** part of your policy, which states:

**GENERAL CONDITIONS**

...

9.    **Lawsuits Against Us.** No suit or action may be brought against **us by you** unless there has been full compliance with all of the policy terms.

Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.

Under Section II of this policy, no one may sue **us** until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of **you,** the injured person and **us.**

No one shall have any right to make **us** a party to a suit to determine **your** liability.

In addition, we may deny a claim based on the applicable California statute of limitations.  If the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code, the time limit to bring suit is extended to 24 months after inception of the loss.

We've completed the adjustment of your loss and we are closing your claim.  Closing your claim does not affect processing payments for recoverable depreciation, or any other covered amounts still outstanding.  Closing your claim does not prevent you from providing us with additional information, including supplemental claims and requests for recoverable depreciation, within the time limits stated in your policy.  We will inform you in writing if any such additional information results in reopening your claim.

If you believe your claim has been wrongfully rejected or denied, in whole or in part, please contact us for further clarification.  The state of California requires that we provide you with the following notice: You may also have the matter reviewed by writing to the California Department of Insurance, Consumer Services and Market Conduct Branch, Claims Services Bureau, 300 South Spring Street, South Tower, Los Angeles, CA 90013 or by calling 1-800-927-4357 or 1-213-897-8921.

We encourage you to visit                        to learn more about our self-service options available to you, including the ability to view your claim status, upload documents and photos and find local service providers.

**PAGE #78**

If you have any questions, or additional information you think may affect your coverage, please contact Claim Representative Michael Saskor at (206) 276-9293.

Thank you.

Michael Saskor
General Claims Adjuster
(206) 276-9293
Farmers Direct Property And Casualty Ins. Company

Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126-8994.

**PAGE #79**

**Exhibit H: Supervisor Bryce overturning Mike Saskor denial**

From: **Bryce Spradling** bryce.spradling@farmersinsurance.com
Subject: RE: 3rd Request Re: Claim No 7007678692-1
Date: January 7, 2025 at 08:25
To: Julio Ravada jravada@icloud.com
Cc: ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com,  Mike Saskor michael.saskor@farmersinsurance.com

Julio,

Mike will be reaching out to you today to discuss how we will consider moving forward with your claim based on the new information you have provided us.

## Bryce Spradling, AINS, CASA

*Property Theft Supervisor*
Farmers Claims Department
*Company Employee Adjuster*
*Farmers Direct Property and Casualty Ins. Co.*
Cell: 913-286-3007
Fax: (877) 217-1389

Please visit our claim portal to view the status and manage your claim online. Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

**From:** Julio Ravada <jravada@icloud.com>
**Sent:** Tuesday, January 7, 2025 2:45 AM
**To:** Bryce Spradling <bryce.spradling@farmersinsurance.com>
**Cc:** ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com>
**Subject:** [EXTERNAL] 3rd Request Re: Claim No 7007678692-1

Hi Bryce,

Have you had a chance to read my detailed clear explanation that I sent on Friday to address your last email?

## Julio Ravada

213.925.4069

*The content of this email and any attachments are confidential and intended for the recipient*

**Exhibit I: Mike Saskor bac to subject related to his original denial reason which his manager had over turned and giving me 7 days despite i was in the middle of LA Wildfires hot zone**

**From:** Mike Saskor michael.saskor@farmersinsurance.com
**Subject:** Re: Re: Claim number 7007678692-1 Recap of conversation
**Date:** January 15, 2025 at 09:27
**To:** Julio Ravada jravada@icloud.com
**Cc:** ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com

Good morning Julio,

I hope your other properties remain safe from the fire.

In regard to your claim, we will need a copy of the Brilliant Order # that was emailed to you by the company after you placed the initial order on October 29, 2024. This information is available for you to provide. What you emailed us originally was a confirmation email. The order number that would have been subsequently sent to you by Brilliant is needed to support your claim that the order was canceled when you called to cancel the 2nd Brilliant order sent to us on November 13, 2024.

We are also requesting your full and unredacted credit card statements for the Visa card ending in #3166 for October 2024 and November 2024 which was used to purchase the Brilliant order on October 29, 2024. I will be sending a formal letter requesting this information be provided within 7 days.

In regard to your question about the electrical bid sent to us on November 13, 2024, your claim was being investigated as a result of the replacement receipts that were also sent at that time. As a result of the investigation your claim was denied on November 22, 2024. Your claim was reopened on January 7, 2024, and at that time I referred an electrician to your home to address this issue. I also requested you supply us with the order number from the original Brilliant order from October 29, 2024. This information has not been received, and we are requiring this to move your claim forward.

Thank you
Mike

Michael Saskor
Company Employee Adjuster
*General Claims Adjuster*
206-276-9293
Farmers Direct Property and Casualty Ins. Co.

Please visit our claim portal to view the status and manage your claim online.

*Email communications are preferred and should be sent to . If hard copies of communications are required, they should be sent to our National Document Center at **Po Box 268994, Oklahoma City, OK 73126-8994.***

Confidential

**PAGE #81**

**Exhibit J: con☐rmation from Mike he knew i was in the middle of keeping home safe from LA Wild☐res**



**Mike Saskor**                                          1/15/25

Re:  Re: Claim number 7007678692...

To:  Julio Ravada    Cc: & 1 more            **Details**

Good morning Julio,
I hope your other properties remain safe from the fire.
In regard to your claim, we will need a copy of the Brilliant Order # that was emailed to you by the company after you placed the initial order on October 29, 2024.  This information is available for you to provide.  What you emailed us originally was a confirmation email.  The order number that would have been subsequently sent to you by Brilliant is needed to support your claim that the order was canceled when you called to cancel the 2nd Brilliant order sent to us on November 13, 2024.

We are also requesting your full and unredacted credit card statements for the Visa card ending in #3166 for October 2024 and November 2024 which was used to purchase the Brilliant order on October

**PAGE #82**

pdfDocView.action

2/14/25, 4:26 AM

**Exhibit K: Farmer's Denial January 23, 2025 because I did not meet his 7 day deadline**



**FARMERS**
INSURANCE

Toll Free: (800) 435-7764
Email: myclaim@farmersinsurance.com
Please include your claim # on any correspondence
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994
www.farmers.com/claimstatus

January 23, 2025

JULIO RAVADA
2275 E BELDING DR
PALM SPRINGS CA 92262
Delivered by email to: jravada@icloud.com

RE:    Insured:              Julio Ravada
       Claim Number:         7007678692-1
       Policy Number:        3872340940
       Loss Date:            06/03/2024
       Location of Loss:     2275 E Belding Dr, Palm Springs, CA
       Subject:              Claim Outcome Letter

Dear Julio Ravada:

On January 15, 2025, we requested you send us the order number for your Brilliant panel order you requested to recover depreciation on, as well as your credit card records for October 2024 and November 2024 to support your claim. We requested this information within 7 days. This information has not been received, therefore your claim is now denied and the file closed as a result of your failure to comply with the duties within your insurance policy.

Additionally, should this information be submitted at a later date, Farmers Direct Property And Casualty Ins. Company also specifically reserves all rights to assert any coverage defenses based on the policy provisions regarding fraud or concealment.

We encourage you to review the terms of your FWS ARS Homeowner policy, as endorsed. They form the basis for our decision. We have attached a "Coverage Outcome – Policy Provisions" document that includes the applicable policy language.

We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver. Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied.

California law and regulations require that we provide you with written notice of any limitation period upon which we may rely to deny a claim. We also wish to bring to your attention the following limitation period set forth in the General Conditions section of your policy. This period is the shortest period which will apply, unless that period may have been extended by statute.

Please refer to the **General Conditions** part of your policy, which states:

**GENERAL CONDITIONS**

MZD5B5ZS3

**Page#83**

**Exhibit L: Farmer's Employee in charge of Depart of Insurance Claim # submitted**

---

**From:** **Operations** operations@farmersinsurance.com
**Subject:** Your Farmers Insurance® Inquiry - Service Request SR# 111760389
**Date:** March 5, 2025 at 11:28
**To:** jravada@icloud.com

---

Policy number: 3872340940

CLAIM #7007678692-1

Dear Julio,

To expedite your inquiry, I have forwarded your email to our Claims Department for review. A Claims Representative will be in touch with you.

If you need immediate assistance, please feel free to contact our Claims Department directly at 1-800-854-6011. Representatives are available 24 hours a day, 7 days a week and are happy to assist.

If you have additional questions, please reply directly to this email.

Julia B

Farmers Insurance®


Personal Information (Confidential)

----------------------------Original Message----------------------------
From: [support@faxmail.com]
Sent: 2/7/2025, 2:05:44 PM
To: auservicepoint_fax@farmersinsurance.com
Cc:
Subject: FAX:Fax From: 11704662503868828000

Thank you for using OpenText's Fax to E-mail service.

Attached is a 9 page fax that you received on Fri Feb 07 2025 18:58 GMT.

> **3872340940Ravada_Claims Documents.pdf**

**Exhibit M: Employee in charge to oversee DOI Claim refers me to Supervisor who was mishandling my claim**

**From:** Amy Spawr-Bardley  amy.spawrbardley@farmersinsurance.com
**Subject:** RE: Re: CA Department of Insurance Complaint Response
**Date:** April 9, 2025 at 05:23
**To:** Julio Ravada  jravada@icloud.com

Good morning,

I believe that Claims Supervisor Bryce Spradling replied to you on Friday, April 4, 2025. I would not have any further update than what he advised in his email.

Kindest Regards,


Amy Spawr-Bardley
*Claims Customer Relations Senior Consultant*
O: 405-782-2827
Farmers Insurance Exchange


Confidential

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

**Exhibit N: Supervisor acknowledges my gender identified name and rejects to respect my decision**
**In addition, despite having plaitinff constantly under investigation or dealing with unustifed denials, Supervior states that the 180 days**
**expiration date to obtain further reimbursement is running regardless**

**From:** Bryce Spradling bryce.spradling@farmersinsurance.com 📎
**Subject:** RE: Re: Claim number 7007678692-1 Recap of conversation
**Date:** April 21, 2025 at 08:10
**To:** Julio Ravada jravada@icloud.com
**Cc:** ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com,  Amy Spawr-Bardley amy.spawrbardley@farmersinsurance.com

Julio,

This email is in response the below email in addition to the email sent today April 18th.

First let me address how my emails have been addressed. I acknowledge your request to be addressed as Luna, however you have continued to utilize an email address which addresses you a Julio, in addition the signature of nearly all emails is signed off as Julio R. including the one below. Furthermore, your policy has not formally been changed to reflect your name change and as such all documentation is addressed to the name on the policy contract between yourself and Farmers insurance. This is important as your policy is a formal contract between Julio Ravada and Farmers Direct Property and Casualty Ins. Co.  I apologize for this, but between your inconsistencies in correspondents and the policy being a legal document we will continue written communication as we have to remain consistent and to abide by the policy conditions.

Again, in regards to the information requested to proceed with your claim, you will need to forward us the actual email for the order in question. While accurate, this request was not initially made.  It is a requirement based on the continued investigation and inconsistencies found with prior support you have submitted on behalf of your claim.

As an individual presenting a claim, it is your responsibility to retain all records and evidence in connection with your claim. Your failure to have properly retained this information is not the liability of Farmers Direct Property and Casualty Ins. Co. Continued failure to provide this information will result in no further consideration of your claim.

As I previously pointed out via email and in the adjuster via the settlement letter dated October 29th 2024, you have 180 days to provide us with the necessary information to recover the withheld depreciation from the date of first payment. To be clear, your time to provide us with all necessary information expires on April 27th 2025. If you fail to provide the necessary information by that time you will be unable to recover any further funds on your claim.

I hope this email clears up any confusion and can help you resolve your claim by providing us with the needed support by April 27th, before the RCV deadline as outlined in your policy expires.

Thanks,


Bryce Spradling, AINS, CASA
*Property Theft Supervisor*
Farmers Claims Department
Farmers Direct Property and Casualty Ins. Co.
Cell: 913-286-3007

**Exhibit O: Plaintiff address Supervisor's rejecton to people gender identity**

---

**From:** **Julio Ravada** jravada@icloud.com  
**Subject:** Re: Claim number 7007678692-1 Recap of conversation  
**Date:** April 22, 2025 at 16:09  
**To:** Bryce Spradling bryce.spradling@farmersinsurance.com  
**Cc:** ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com, Amy Spawr-Bardley amy.spawrbardley@farmersinsurance.com

---

Dear Mr. Bryce,

I hope this message finds you well. I am reaching out again to address several pressing concerns regarding my interactions with your company and to request a resolution.

On March 4, 2025, you confirmed receipt of my fax dated February 7, 2024, in which I formally requested to be addressed as Luna. However, the documentation you provided still addressed me as Julio, as evidenced by the photos I sent previously. Despite escalating this specific matter on March 27, April 2, April 4, and April 15, 2025, it is only now that I am hearing back, and your response remains inadequate.

Deleting my Apple account was a necessary step to avoid being addressed by my previous name. Unfortunately, due to your company's persistent oversight and unfair handling of my request, I've been forced to reopen communication via this email. This inconveniences me further, as my Apple ID (jravada) automatically displays "Julio Ravada" in emails, an unavoidable situation brought on by the failure to honor my request from the outset.

I have embraced my transition openly, and until now, have only experienced acceptance and support. Yet, your company's refusal to acknowledge my identity is profoundly disheartening. Furthermore, suggesting that my name change is not formal until legal documentation is complete is both incorrect and discriminatory, particularly under California law, which prohibits such requirements. I'd like to includes few quotes for this law: "Requesting proof of legal name or gender change after disclosing it is discriminatory." "Disclosing your gender identity is a personal decision, and requiring proof can be seen as an outreach that violates your privacy rights."

This email is a response from your correspondence where you implied that the contractual name dictates how I should be addressed, ignoring my expressed identity. This stance contradicts both legal standards and respectful business practices.

Regarding the ongoing issues with the claim process, you keep requesting an email that does not exist, claiming it is necessary for continued investigation. This investigation was concluded, with all procedures followed, resulting in a final payment being issued as found in your Nov 12 2024 letter. There is no legal or professional basis for me to maintain records beyond the concluded investigation.

Furthermore, on March 27, 2025, I informed you of a significant health diagnosis that I received, which has greatly impacted my life, one that at the time I only had become aware hours before. Attached, you will find documentation confirming my diagnosis of HIV dated March 26, 2025. It has been 10 months, yet my living conditions remain unresolved: my dishwasher remains dysfunctional, the toilet is broken, the electrical panel poses a fire hazard, and a poorly secured window jeopardizes my safety. These prolonged issues have severely diminished what's left in my quality of life.

Your quoted statement from October 29, 2024, and the subsequent confirmation from November 12, 2024, clearly indicate that my request for recoverable depreciation was accepted and processed. Thus, requiring further documentation is unfounded.

I urge you to review these matters thoroughly and provide a timely resolution. It's imperative that these issues be addressed immediately to prevent further inconvenience and distress especially now when you are clearly breaking ADA and Fair Treatment under civil rights

Thank you for your attention to these serious matters. I look forward to a prompt and satisfactory resolution.

Amy,

You were brought into this matter by a complaint that I submitted to the California Department of Insurance. Since then you have referred me to back to Mr Bryce and have also indicated that you are bringing this matter up to your management. At this point, does this mean that in conclusion you have decided to become a participant / contributor for the numerous violations that so far have taken place?

Sincerely,

Luna



lstmp_ICLS_convert_v57Lpl.pdf
349 KB

PAGE #87

**From:** Julio Ravada jravada@icloud.com
**Subject:** Re: Claim number 7007678692-1 Recap of conversation
**Date:** May 9, 2025 at 12:00
**To:** Mike Saskor  michael.saskor@farmersinsurance.com
**Cc:** Amy Spawr-Bardley  amy.spawrbardley@farmersinsurance.com

Dear Bryce,

I wanted to take a moment to acknowledge and thank you for directing me to Mr. Saskor regarding the outstanding matters related to my claim.

This redirection is meaningful — not just procedurally, but personally. It opens the door for resolution on issues that have deeply affected my living conditions and my well-being over the past year. I appreciate the step you've taken in helping move things forward.

Thank you again for the role you've played in facilitating this next step.

Warmly,

Luna Ravada

Sent from my iPhone

On May 9, 2025, at 11:27 AM, Julio Ravada <jravada@icloud.com> wrote:

Hi Mike

I'm here to address what's left from the claim as instructed by Bryce

Sent from my iPhone

Begin forwarded message:

**From:** Bryce Spradling <bryce.spradling@farmersinsurance.com>
**Date:** May 9, 2025 at 10:46:28 AM PDT
**To:** Julio Ravada <jravada@icloud.com>
**Cc:** ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com>, Amy Spawr-Bardley <amy.spawrbardley@farmersinsurance.com>, Mike Saskor <michael.saskor@farmersinsurance.com>
**Subject:** RE:  Re: Claim number 7007678692-1 Recap of conversation

Please contact your adjuster Mike Saskor to address any details you believe to be left outstanding

Bryce Spradling, AINS, CASA

Farmers Direct Property and Casuality Ins. Co.
Cell: 913-286-3007
Fax: (877) 217-1389

Please visit our claim portal to view the status and manage your claim online. Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

From: Julio Ravada <jravada@icloud.com>
Sent: Friday, May 9, 2025 12:12 PM
To: Bryce Spradling <bryce.spradling@farmersinsurance.com>
Cc: ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com>; Amy Spawr-Bardley <amy.spawrbardley@farmersinsurance.com>
Subject: [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Good Morning Bryce,

Thank you for your follow-up email.

I would like to clarify that I am not attempting to recover any additional depreciation under my policy, as I have already successfully recovered that amount. I understand that your assessment indicates that I was unable to provide the necessary support for further depreciation claims, but my focus is now on moving forward with the unfinished portion of my claim.

Could we please discuss the next steps to resolve this matter? I appreciate your assistance and look forward to your prompt response.

Best regards,

Luna

---

On May 9, 2025, at 6:41 AM, Bryce Spradling

PAGE #89

**From:** **Bryce Spradling** bryce.spradling@farmersinsurance.com
**Subject:** RE: Follow-Up on Outstanding Items – Burglary Claim
**Date:** May 14, 2025 at 10:32
**To:** Julio Ravada jravada@icloud.com
**Cc:** Mike Saskor michael.saskor@farmersinsurance.com, ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com

Mike will follow up with you today.

Bryce Spradling, AINS, CASA
*Property Theft Supervisor*
Farmers Direct Property and Casualty Ins. Co.
Cell: 913-286-3007
Fax: (877) 217-1389

Please visit our claim portal to view the status and manage your claim online. Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

**From:** Julio Ravada <jravada@icloud.com>
**Sent:** Wednesday, May 14, 2025 11:02 AM
**To:** Bryce Spradling <bryce.spradling@farmersinsurance.com>
**Subject:** [EXTERNAL] Follow-Up on Outstanding Items – Burglary Claim

Hi Bryce,

I hope you're well. I'm following up regarding the burglary claim you graciously reopened, as there are still two unresolved items that remain unaddressed despite multiple follow-ups.

Per your instructions, I reached out to Mike directly and re-sent both the electrician's repair invoice and the certified art appraisal on May 9th, 2025 same that I had originally emailed to him on January 8, 2025. Unfortunately, I received no response. I followed up again two days ago with a detailed email, but I have still not received any acknowledgment or update on these two items.

Ehibit R: quote received by licensed consturction company to sddredsd the issues pertaining this claim



777 E. Tahquitz Canyon Way, Ste 200, Palm Springs, CA 92262

Ph: 323-423-6322 | Lic. #1049763

info@progressivehomeremodeling.com | www.progressivehomeremodeling.com

_____
_____

## Partial Home Remodel

**Homeowner:** Julio "Luna"
**Homeowner Phone:** 213-925-4069
**Homeowner Address:** 2275 East Belding Drive, Palm Spring CA 92262
**Date:** 05/19/2025
**Prepared By:** Emuna Stanley
**Project Manager Phone:** 213-264-8682

## Project Overview

This project involves comprehensive interior and exterior improvements to appx of 3,000 sq ft residential property in Palm Springs, CA. The scope includes replacing a broken window and damaged stucco, reinstalling a properly supported wall-mounted toilet, installing epoxy flooring throughout the home, constructing a new kitchen island with electrical work, and repainting the full exterior of the home.

## Scope of Work

### Partial Home Renovation

---

**Initial Site Preparation**

- Contractor will secure the job site, protect existing finishes not included in the renovation, and establish clear work zones.
- Contractor will also coordinate delivery and storage of materials.

**Partial Interior & Select Exterior Demolition**

**PAGE #91**

- Contractor will perform demolition of the following:
- Existing exterior stucco damage areas to prep for patching
- Interior drywall sections as needed for water line and plumbing relocations
- Existing bathroom vanity, shower materials, and toilet setup
- Existing kitchen island including countertop and base
- All existing interior epoxy flooring throughout the house
- All demolition debris will be removed and disposed of in accordance with local regulations.

**Exterior Stucco Patch & Repaint**

- Contractor will patch all damaged stucco surfaces and repaint the entire exterior of the home using high-quality, weather-resistant paint matched to client-approved color.

**Water Line Relocation**

- Contractor will relocate exterior water lines into an interior closet. This includes rerouting plumbing, patching access holes, and painting the surrounding walls.

**Bathroom – Toilet Relocation & Wall Repair**

- Contractor will move the bathroom toilet to sit flush against the back wall. This includes rerouting the waste line and water supply, resetting the toilet, patching drywall, and repainting to match the surrounding surface.

**Bathroom – Full Remodel**

- Contractor will complete a full renovation of the bathroom, including:
- New shower tile installation
- Shower valve and fixture installation
- New vanity, countertop, sink, and faucet
- Paint and finishing work

**Kitchen – Island Replacement**

- Contractor will construct a new kitchen island after demolition of the existing one.  (Work includes: Framing and cabinetry for the new island base)
- Installation of quartz countertops or metallic epoxy finish (homeowner to select)
- Electrical adjustments as required

**Interior Flooring – Epoxy Removal & New Installation**

- Contractor will remove all existing epoxy flooring and prepare the concrete surface (grinding/cleaning).
- Contractor will install new metallic epoxy flooring throughout the entire home with client-approved color and design.

**Site Cleanup & Detailing**

- Contractor will perform a full cleanup of the interior and exterior renovation zones. This includes removing dust, wiping surfaces, and disposing of any remaining waste.

**Final Walk-Through & Punch List**

- Contractor will walk through the project with Lisette and Marty to ensure all items are complete and meet expectations. Any punch list items will be documented and resolved promptly.

---

## Summary of Estimated Costs

| Scope | Estimated Cost |
|---|---|
| Exterior Stucco & Paint | $18000.00 |
| Water Line Relocation | $3000.00 |
| Toilet Wall Flush & Patch | $4400.00 |
| Bathroom Remodel | $16000.00 |
| Kitchen Island Replacement | $9000.00 |

**PAGE #93**

| Epoxy Flooring (Entire Home) | $46000.00-52000.00 |
|---|---|
| **Total** | **$87400.00-93400.00** |

**Payment Schedule: (based on $87400.00)**

- Deposit: $1,000
- Upon Permit for window replacement, stucco repair, plumbing (for toilet): $8640
- Upon material order: $10000.00
- Upon Demolition & Site prep: $9500.00
- Upon structural & rough-In Completion: $9000.00
- Upon window installation & Stucco repair completion: $8500.00
- Upon countertop fabrication: $8000.00
- Upon Island Installation: $8190.00
- Upon Island Completion: $8190.00
- Upon  Epoxy flooring installation: $8190.00
- Upon Painting & Finishing: $8190
- Upon Project Completion: $8640.00

---

## Exclusions & Inclusions

- Contractor to cover all working areas as needed
- Contractor to perform final touch ups as needed
- Contractor to clean up and haul away debris throughout duration of project as needed
- Taxes, labor, rough building materials, slabs, fabrication and installation of kitchen island installation, included
- Finish materials (such as sink, faucet, hardware and etc.), and any unforeseen construction not determined during walk-through; not included
- Contractor will handle all permit applications and related processes. Once permits are obtained, the homeowner will be invoiced for reimbursement.

---

**<u>Terms and Condition:</u>**

**Price and Validity:**
- **Price includes labor and rough materials, and slabs**
- **The estimate is valid for 21 days and may change based on market conditions, material costs, plan changes, or city/county corrections. Progressive Home Remodeling reserves the right to adjust the price or terminate the contract accordingly.**

**Changes and Responsibilities:**
- **Progressive Home Remodeling shall provide the homeowners a one year warranty for all labor performed on the property.**
- **Homeowners are responsible for checking the condition and quality of all delivered goods/materials. Progressive Home Remodeling is not responsible for damaged materials on and off-site.**
- **Additional fees may apply if Progressive Home Remodeling is required to pick up and deliver finish materials unless stated otherwise in writing.**

**Unforeseen Items and Additional Requirements:**
- **Unforeseen items not determined during estimating/walking the property will result in additional charges. Progressive Home Remodeling will present these changes to homeowners for approval before starting any work.**

**Limitations:**
- **The locations of seams are ultimately determined by Progressive Home Remodeling. All suggestions and requests for seam locations are always considered. Large L shape pieces and other otherwise awkward shapes may require additional material and may result in a change in project price if the homeowner insists on not having a seam. These determinations are unable to be made until we template. Additionally, we reserve the right to seam pieces we deem too fragile or delicate to handle in one piece. These determinations are unable to be made until we template. If the homeowner  insists on continuing without our seam suggestions the homeowner is responsible for all costs associated with repairing or replacing the broken part.**
- **If your project requires additional equipment or manpower to install your stone due to unforeseen obstacles (including but not limited to: Excessive stairs, crane equipment, house layout) the cost of the additional resources will be added to the final invoice.**
- **Many engineered quartz brands have strict fabrication guidelines to comply with their warranty. Often, the details of your kitchen may void**

**PAGE #94**

their warranty. This includes but isn't limited to inside corners and edge details. Progressive Home Remodeling is not responsible for your project's compliance with any manufacturer's warranty.

- If you want a backsplash or want to use your slab in any other area (such as saddles), now is the time to mention this. Adding items like small backsplash, saddles, and windowsills to a project after it has been fabricated or installed may result in higher installation fees and increased time. Additionally, there may not be any remaining matching material. In order to complete your project as fast, economically and professionally as possible, please consider every place you may want to use a piece of stone.

- Contractor shall not be held responsible for any damages to the cabinets or surrounding areas that may occur as a result of demolition.

- We are not engineers, environmental consultants or home inspectors. We are licensed contractors and provide construction cost estimates for the specific items included in this document. The following report is based on a visual observation of the subject property and discussions with you or your representatives. The scope is limited to the specific items listed in this document and is not meant to identify all repairs or improvements that may be required or desired on this property.

Homeowner:_____Date:_____

Contractor: MS 155282 SP    Date: 05/20/2025

We look forward to working with you on this exciting bathroom remodel project! Please feel free to reach out with any questions or if you require any adjustments to this estimate.

**It is the law that all contractors with employees carry current Bond and good business practice to have General Liability Insurance.**
**We carry both for your protection and can provide certificates on request.**

**Exhibit S: Suddent move to a different supervisor claiming that my expeses should be habdled by different department**

---

**From: Albert Pimentel** albert.pimentel@farmersinsurance.com
**Subject:** RE: Subject: Re: Improper Restriction of Communication on Active Claim Fwd: Claim No. 7007678692-1
**Date:** June 10, 2025 at 06:21
**To:** Julio Ravada jravada@icloud.com, Mike Saskor michael.saskor@farmersinsurance.com
**Cc:** Bryce Spradling bryce.spradling@farmersinsurance.com, ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com

---

Mr. Ravada,

I have mentioned to you before that we prefer to not have communication through direct email or text  and is our preferred method of communication. Often times we are out of the office or have many emails where your communication may get lost as we get many throughout the day. Please see the same letter sent to you yesterday attached.

Please file a new claim at your earliest convenience, as your new claims of a water leak causing damage would require you to file a new claim for property damages, which is handled by our Field Property department.

Thank you,

Albert Pimentel
*Property Field Claims Supervisor*
909-260-3377
**Farmers Direct Property and Casualty Ins. Co.**

Please visit our claim portal to view the status and manage your claim online.

*Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at **P.O. Box 268994 Oklahoma City, OK 73126-8994**. Please include your claim number on all documents.*

---

Confidential

---

**From:** Julio Ravada <jravada@icloud.com>
**Sent:** Monday, June 9, 2025 9:45 PM
**To:** Albert Pimentel <albert.pimentel@farmersinsurance.com>; Mike Saskor <michael.saskor@farmersinsurance.com>
**Cc:** Bryce Spradling <bryce.spradling@farmersinsurance.com>
**Subject:** [EXTERNAL] Subject: Re: Improper Restriction of Communication on Active Claim Fwd: Claim No. 7007678692-1

Dear Mike and Mr. Pimentel,

I am deeply concerned that Mr. Pimentel is attempting to prevent direct communication on a claim that remains active, ongoing, and unresolved—especially after months of email dialogue and documented follow-ups on the same matter.

**PAGE #96**

Redirecting me to a generic service inbox and demanding only that type of communication at this stage is unjustified and appears to be a deliberate barrier to resolution, which is unacceptable given the extensive damage, prolonged delays, and the fact that this claim involves habitability-impacting issues.

I will continue documenting all correspondence, and if this obstruction persists, I will consider it bad faith handling under California Insurance Code § 790.03(h), which outlines unfair claims settlement practices, including:

- Failure to acknowledge or act promptly upon communications,
- Misrepresenting claim facts or coverage,
- Forcing unreasonable procedural burdens on the insured.

I expect direct communication to resume immediately and will escalate to the Department of Insurance if necessary.

Sincerely,

Luna

Sent from my iPhone

Begin forwarded message:

> **From:**
> **Date:** June 9, 2025 at 3:39:57 PM PDT
> **To:**
> **Subject: Claim No. 7007678692-1-1, Important Claim Information**

**From:** **Albert Pimentel** albert.pimentel@farmersinsurance.com
**Subject:** RE: Ongoing Water Intrusion – Claim No. 70076786921
**Date:** June 16, 2025 at 07:51
**To:** Julio Ravada jravada@icloud.com, Mike Saskor michael.saskor@farmersinsurance.com
**Cc:** Bryce Spradling bryce.spradling@farmersinsurance.com, ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com

Hello Luna,

My apologies for not addressing you correctly.

You clearly mention in your previous interactions with Mike, new water damages that have occurred at your home the night of June 5, 2025. This constitutes a new Property claim that must be ☐ed and investigated accordingly. The damages and estimate you have sent that is approximately $90,000 includes remodeling costs, upgrades and other items that are related and due to your home property damage claims which our Field Property department handles. Since you clearly reported a new event occurred and even sent us moisture readings on the date or around the date of the event, I would need to direct you to ☐e a new claim so that it may be investigated properly.

This is our position at the Field property level regarding the requested review of the estimate sent for home repairs as once again, a new event was clearly reported.

Thank you,

Albert Pimentel
*Property Field Claims Supervisor*
909-260-3377
Farmers Insurance Exchange

Please visit our claim portal to view the status and manage your claim online.

*Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994 Oklahoma City, OK 73126-8994. Please include your claim number on all documents.*

Confidential

**From:** Julio Ravada <jravada@icloud.com>
**Sent:** Monday, June 16, 2025 6:14 AM
**To:** Albert Pimentel <albert.pimentel@farmersinsurance.com>; Mike Saskor <michael.saskor@farmersinsurance.com>
**Cc:** Bryce Spradling <bryce.spradling@farmersinsurance.com>; ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com>
**Subject:** [EXTERNAL] Ongoing Water Intrusion – Claim No. 70076786921

# Dear Mr. Saskor and Mr. Pimentel,

I'm writing to clarify and formally respond to the latest correspondence regarding the above-referenced claim.

continued use of "Mr. Ravada" is not only inappropriate but directly disregards the information I've already provided. Please update your records accordingly.

Second, while I understand this matter may have been delegated to Mr. Pimentel, the dishwasher and toilet-related damages are not part of a new claim. These issues were explicitly addressed during the Examination Under Oath (EUO) in October 2024. In that proceeding, your counsel Mr. John Na provided a full transcript that clearly references both the dishwasher leak and toilet water intrusion as part of the original claim.

Additionally, on the day following the June 2024 incident, your field representative Donnie Means visited the property and took photographs that documented visible water around the dishwasher area. These materials should be easily accessible in your own records.

The most recent email from Mr. Pimentel suggests a repositioning of the dishwasher issue as a "new claim." This is inaccurate and misleading. The dishwasher problem is part of the long-standing water intrusion, previously denied, reopened, and re-examined on multiple occasions.

Lastly, Mr. Saskor, your prolonged lack of communication and failure to address the toilet-related damages, which were always part of the original claim, has only worsened the delay and confusion. I request that you please confirm how and when the full scope of this water intrusion will be properly evaluated and resolved.

I reserve the right to escalate this matter further should my concerns continue to be mishandled or dismissed. I ask that you review the full EUO transcript from October 2024, as well as the field documentation by Donnie Means in June 2024, and resolve this matter without further obstruction.

Respectfully,
Luna Ravada

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

**Exhibit U - Formal Response to Denial and Improper Application of Time Limitations**

**Luna Ravada**

(213) 925-4069        jravada@icloud.com        2275 E Belding Dr Palm Springs CA 92262 United States

June 25, 2025

Farmer's Insurance
P.O. Box 268994
Oklahoma City, OK 73126-8994

**Subject:** Formal Response to Denial and Improper Application of Time Limitations

Dear Mr. Pimentel,

I am writing in response to your recent correspondence attempting to apply policy time limitations to deny coverage. I must respectfully, but firmly, object to this position on both factual and legal grounds.

The delays cited in your letter were not the result of inaction or neglect on my part, but rather stem directly from the insurer's own actions — specifically:

1.      August to November 2024: I was required to undergo an Examination Under Oath based on false or unfounded accusations. This process consumed several months and prevented meaningful advancement of the claim.

2.      November 2024 to January 2025: My claim was improperly denied by Mr. Mike Saskor. Only after internal review by his supervisor Mr. Bryce was this denial overturned.

3.      February to May 2025: Mr. Saskor again issued a denial, which was subsequently reversed by Mr. Bryce. This repeated interference and inconsistent handling further obstructed progress.

The insurer has now attempted to enforce time-based limitations after three separate internal reversals and nearly nine months of delays — all caused by conduct within

its own control. This is not only unreasonable, it undermines the implied covenant of good faith and fair dealing required under California law.

As such, any attempt to invoke policy time bars under these circumstances is improper. I reserve all rights to pursue regulatory complaint and/or legal action should this claim continue to be mishandled.

I ask that your team revisit this matter with a full understanding of the procedural history and the tolling effects caused by your own investigatory practices. A denial under these conditions would not only lack merit but raise further concerns about insurer misconduct.

Sincerely,

Luna Ravada

**PAGE #101**

## Exhibit V: Ongoing Water Intrusion

**Luna Ravada**

(213) 925-4069    jravada@icloud.com    2275 E Belding Dr Palm Springs CA 92262 United States

June 25, 2025

Farmer's Insurance
P.O. Box 268994
Oklahoma City, OK 73126-8994

**Subject:** Re: Ongoing Water Intrusion – Claim No. 70076786921
bv

Dear Mr. Pimentel,

I am writing in reference to your recent correspondence and attachments regarding Claim No. 70076786921.

Once again, the materials you provided are recycled responses, each referencing back to my **June 5, 2025 email to Mr. Saskor (attached here)**—in which I thoroughly documented the ongoing damages associated with the dishwasher and toilet, supported by photographs and a licensed contractor's bid.

Let me be clear: these damages are not new. They stem directly from previously reported and investigated plumbing failures that were already addressed during the **October 2024 Examination Under Oath (EUO)**. Your company's own legal counsel was present.

Specifically:

- The **dishwasher damage** was discussed during the EUO, where I testified that the water line had been severed and the appliance visibly damaged.

- The **toilet issue** was also addressed, with clear testimony explaining how it became inoperable immediately following the June 2024 break-in due to obstruction and possible internal damage  .

Repackaging my own submitted materials and deflecting responsibility by suggesting a "new claim" is not only disingenuous—it's **a textbook example of bad faith**.

## **Mischaracterizations and Factual Clarications**

I want to directly address several mischaracterizations made in your June 16, 2025 correspondence.

• First, you stated that *"the estimate includes remodeling costs and upgrade costs."* The contractor I used operates under the name **Progressive Home Remodeling**, but as a **licensed general contractor**, they provide comprehensive repair services beyond just remodeling. You have not specified which listed repairs in my estimate you believe to be unrelated to the covered damages. Until you can provide a line-item analysis showing which repairs you allege constitute upgrades or unrelated remodeling, your statement lacks merit and constitutes an unsupported assumption.

• Second, regarding your reference to my **June 5 email to Mike**, you claimed I reported *"another water incident"* and that I referred to it as a *"new and intermittent issue."* That is inaccurate. My email clearly begins with: **"I'm writing to report continued and progressive damage caused by the dishwasher and plumbing system initially cited in my original claim."** This is the same issue I reported to your legal counsel in **October 2024**, as shown in the attached documentation. At no point did I describe the issue as "new" or "intermittent." I specifically noted that the incident originated from the same area previously reported and documented. Your team chose to provide **cleaning only**, refusing proper **water mitigation**, despite my repeated requests.

• Regarding your comment that I, as the homeowner, am responsible for protecting the property and making reasonable repairs: I have done precisely that. I followed your direction, including when you instructed me that **cleaning was sufficient**, despite the ongoing nature of the water damage. It is disingenuous to now claim I failed in that duty.

• Finally, concerning the **toilet issue**, you questioned why this was not previously reported. I must point out that this matter was raised multiple times, including in communications to your attorney in **October 2024**, and is reflected in your own adjuster's notes. In fact, it was your own attorney who first referenced this concern based on those notes. Therefore, any assertion that I failed to report the toilet-related damage is both inaccurate and contradicted by your own internal records.

Your handling of this matter falls squarely under **California Insurance Code § 790.03(h)**, which prohibits:

• Misrepresenting pertinent facts or policy provisions relating to coverage;

• Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims;

• Refusing to pay claims without conducting a reasonable investigation;

• Delaying resolution by requiring unnecessary paperwork or procedures.

**PAGE #103**

**I am formally requesting:**

1.  A full position letter addressing all damages previously reported, including those outlined in my June 5, 2025 communication and covered during the October 2024 EUO;

2.  Written confirmation that this claim is being processed in full and not subject to improper redirection;

If these conditions are not met, I will proceed with a formal complaint to the California Department of Insurance and explore all available remedies.

Sincerely,
**Luna Ravada**
jravada@icloud.com

**Exhibit W: Improper Application of Depreciation**

## Luna Ravada

213.925.4069       jravada@icloud.com        2275 E Belding Dr Palm Springs CA 92262

July 7, 2025

Farmers Insurance

### Subject: Formal Dispute – Improper Reapplication of Depreciation and Withheld Payments

Dear Mr. Pimentel,

I'm writing to formally dispute several issues regarding the handling of my insurance claim, specifically related to personal property depreciation and repair reimbursements.

#### Clarification on Improper Narrative

Your most recent communication appears to distort the record of this claim. To be clear: I have cooperated fully and submitted all required receipts, invoices, and documentation in good faith. Attempts to reframe the delay or underpayment as a result of my actions are inaccurate and unacceptable.

#### Plumbing Repair and Pending Letter

As discussed, a plumber was hired to inspect and address plumbing issues discovered after the robbery. I am currently waiting on his written findings, which you previously requested. This will be provided immediately upon receipt.

**PAGE #105**

**Key Disputes and Supporting Documentation**

Please refer to the attached spreadsheet, which outlines:

- The personal property itemization (**Attachment A** for Items 1–28) showing depreciation previously reimbursed in 2024, and how some of the same items now show depreciation again in 2025.

- A summary of select high-value items where you either miscategorized the product, underpaid based on model, or withheld unjustified depreciation even after proper receipts were submitted.

**Highlights:**

Item 11: MacBook Air (M1 chip)

- Paid: $699 in 2024 + depreciation.

- Now: Re-depreciated in 2025.

- A replacement M2 model (16GB) was purchased for $1,095.41 — a discontinued model still less than Apple's current generation (M4). I'm requesting reimbursement of the full amount. (**Attachment B**)

Item 12: AirPods Max

- Paid partially; $101.84 still withheld.

- Receipt submitted for $599.78 **(Attachment C)**

- Please release the remaining depreciation immediately.

**PAGE #106**

Item 13: Apple Watch – White Ceramic Edition

- Paid based on the wrong model (Ultra 2 Titanium).

- I provided market proof via eBay for the actual model's current value of $1,899.95 + tax.**(Attachment D)**

- Requesting the difference owed: $1,000.95.


**Pattern of Concern**

The attached spreadsheet illustrates how depreciation that was already paid out in Nov 2024 was improperly reapplied in 2025. This raises serious questions regarding bad faith handling and may constitute a violation of California Insurance Code §790.03(h).


I am asking that you:

1. Review the depreciation reapplications and issue all withheld amounts.

2. Correct the misclassification of high-value items.

3. Confirm in writing whether further depreciation is being withheld and on what basis.

I expect a prompt and fair resolution.


Sincerely,

Luna Ravada

[Claim #7007678692-1]

**PAGE #108**

**Attachment A**

| Item # | Description | 2024 Status | 2025 Status |
|---|---|---|---|
| 1 | Item 1 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 2 | Item 2 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 3 | Item 3 Description | Depreciation Withheld | No Change |
| 4 | Item 4 Description | Paid / Depreciation Reimbursed | Depreciation Reapplied |
| 5 | Item 5 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 6 | Item 6 Description | Depreciation Withheld | No Change |
| 7 | Item 7 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 8 | Item 8 Description | Paid / Depreciation Reimbursed | Depreciation Reapplied |
| 9 | Item 9 Description | Depreciation Withheld | No Change |
| 10 | Item 10 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 11 | Item 11 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 12 | Item 12 Description | Depreciation Withheld | Depreciation Reapplied |
| 13 | Item 13 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 14 | Item 14 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 15 | Item 15 Description | Depreciation Withheld | No Change |
| 16 | Item 16 Description | Paid / Depreciation Reimbursed | Depreciation Reapplied |
| 17 | Item 17 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 18 | Item 18 Description | Depreciation Withheld | No Change |
| 19 | Item 19 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 20 | Item 20 Description | Paid / Depreciation Reimbursed | Depreciation Reapplied |
| 21 | Item 21 Description | Depreciation Withheld | No Change |
| 22 | Item 22 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 23 | Item 23 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 24 | Item 24 Description | Depreciation Withheld | Depreciation Reapplied |
| 25 | Item 25 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 26 | Item 26 Description | Paid / Depreciation Reimbursed | Partial Adjustment |
| 27 | Item 27 Description | Depreciation Withheld | NNo Change |
| 28 | Item 28 Description | Paid / Depreciation Reimbursed | Depreciation Reapplied |

**Attachment B**

 **Apple Store**

**Invoice Receipt**

Do Not Pay

**Order Number:**
W1784369596

**Order Date:**
June 25, 2025

**Sold To:**
Julio Ravada
MeaLuna LLC
2275 E Belding Dr
Palm Springs CA 92262-6515
United States

**Location:**
Julio Ravada
MeaLuna LLC
2275 E Belding Dr
Palm Springs CA 92262-6515
United States

Customer No:900004

**Order Details**

| Product Name | Product Number | Item Price | Quantity Ordered | Quantity Fulfilled | Extended Price |
|---|---|---|---|---|---|
| MBA 13 MDN/8C GPU/16GB/256GB-USA | MW123LL/A | $999.00 | 1 | 1 | $999.00 |
| Recycle Fee | | $4.00 | | 1 | $4.00 |
| Serial No.: (JHKQ2VQ0TT) | | | | | |

Items will be invoiced once they have shipped or are ready for pickup.

| | |
|---|---|
| Subtotal | $1,003.00 |
| Sales Tax | $92.41 |
| Total | $1,095.41 |
| Amount Due | $0.00 |

**Payment Methods**

$1,095.41 charged to Discover XXXXXXXXXXXX4641
 For a total of $1,095.41

**Additional Information**

| Invoice Number | Invoice Date | Terms |
|---|---|---|
| MB81288042 | June 26, 2025 | Credit Card |

This order is subject to Apple's Sales and Refunds Policies
https://www.apple.com/shop/open/salespolicies

https://secure10.store.apple.com/shop/order/print/invoice/10078/AEG2321184

7/7/25, 6:10 PM
Page 1 of 2

**PAGE #109**

**Attachment C**

**Apple Store**

**Invoice Receipt**

Do Not Pay

**Order Number:**
W1619968584

**Order Date:**
November 01, 2024

**Sold To:**
Julio Ravada
MeaLuna LLC
2275 E Belding Dr
Palm Springs CA 92262-6515
United States

**Location:**
Julio Ravada
MeaLuna LLC
2275 E Belding Dr
Palm Springs CA 92262-6515
United States

Customer No:900004

**Order Details**

| Product Name | Product Number | Item Price | Quantity Ordered | Quantity Fulfilled | Extended Price |
|---|---|---|---|---|---|
| AIRPODS MAX (USB-C) ORANGE-AME | PWW73AM/A | $549.00 | 1 | 1 | $549.00 |
| Serial No.:  (MWLKQ2Y4KW) | | | | | |

Items will be invoiced once they have shipped or are ready for pickup.

| | |
|---|---|
| Subtotal | $549.00 |
| Sales Tax | $50.78 |
| Total | $599.78 |
| Amount Due | $0.00 |

**Payment Methods**

$599.78 charged to Visa XXXXXXXXXXXX1372
 For a total of $599.78

**Additional Information**

| Invoice Number | Invoice Date | Terms |
|---|---|---|
| MB31333557 | November 04, 2024 | Credit Card |

This order is subject to Apple's Sales and Refunds Policies
https://www.apple.com/shop/open/salespolicies

https://secure10.store.apple.com/shop/order/print/invoice/10078/ADY1828761

7/7/25, 6:18 PM
Page 1 of 3

**Apple Store**

**Invoice Receipt**

Do Not Pay

**Order Number:**
W1619968584

**Order Date:**
November 01, 2024

**Sold To:**
Julio Ravada
MeaLuna LLC
2275 E Belding Dr
Palm Springs CA 92262-6515
United States

**Location:**
Julio Ravada
MeaLuna LLC
2275 E Belding Dr
Palm Springs CA 92262-6515
United States

Customer No:900004

**Order Details**

| Product Name | Product Number | Item Price | Quantity Ordered | Quantity Fulfilled | Extended Price |
|---|---|---|---|---|---|
| AIRPODS MAX EAR CUSHIONS ORANGE-ZML | MA6F4ZM/A | $69.00 | 2 | 2 | $138.00 |

Items will be invoiced once they have shipped or are ready for pickup.

| | | |
|---|---|---|
| Subtotal | | $138.00 |
| Sales Tax | | $12.77 |
| Total | | $150.77 |
| Amount Due | | $0.00 |

**Payment Methods**

$150.77 charged to Visa XXXXXXXXXXXX1372
 For a total of $150.77

**Additional Information**

| Invoice Number | Invoice Date | Terms |
|---|---|---|
| MB30760110 | November 01, 2024 | Credit Card |

This order is subject to Apple's Sales and Refunds Policies
https://www.apple.com/shop/open/salespolicies

**PAGE #111**

## Exhibit X: Policy holde r dispute and request for depreciation corrections

 Luna D'Sol

(213) 925-4069    jravada@icloud.com    2275 E Belding Dr Palm Springs CA 92262 United States

July 25 2025,

Albert Piment
Farmers Insurance

### Subject: Policyholder Dispute and Request for Depreciation Corrections & Coverage Expansion – Claim #7007678692-1

Dear Mr. Pimentel,

I am writing to formally address multiple inconsistencies in the July 2025 depreciation summary issued under Claim No. **7007678692-1**, and to request correction of underpaid items, restoration of removed values, and reimbursement for structural work now triggered by newly acknowledged covered losses.

———

### 1. Con rmed Replacement of Previously Denied Items (Items 20 & 27)

After more than a year of dispute, Farmers has now acknowledged **full replacement of both the dishwasher (Item 20)** and **toilet (Item 27)** — reversing your previous position that cleaning was suf cient.

- **Item 20:** now valued at **$1,749.00**

- **Item 27:** now valued at **$1,299.00**

This correction entitles me to full compensation for the **required demolition, reconstruction, and restoration** that  ows directly from these replacements:

**PAGE #112**

- **Kitchen island removal and rebuild** due to dishwasher installation and existing wet cement presence: **$9,000**

- **Toilet wall relocation and bathroom restoration** due to window replacement will cause damage to existing shower tile and toilet replacement will require existing toilet to be removed from floor attachment into inside the one for the replacement: **$4,400 + $16,000**

- **Epoxy flooring replacement across entire home** (due to floor damage during toilet removal): **$46,000–$52,000**

All of these costs are documented in the contractor estimate dated May 19, 2025, and are required to properly implement the covered replacements.

————

**2. Triggering of Exterior Stucco and Painting Work ($18,000)**

Farmers previously approved coverage for the replacement and repair of exterior **window and electrical panel replacement**. These repairs inherently **disturb the exterior stucco and finish**, requiring full patch and repaint of the home's exterior. This work is detailed in the attached contractor estimate and valued at:

- **$18,000 – Exterior patching and repainting**

This is not cosmetic—it is a **direct and unavoidable consequence** of the approved structural work. Payment is now due for this component.

————

**3. Code-Mandated Water Line Relocation ($3,000)**

To comply with **city permitting requirements for the electrical panel replacement**, the **water line located below the panel must be relocated**. This is a code requirement, not optional work, and your own approval of the panel replacement makes this cost unavoidable.

**PAGE #113**

- **$3,000 – Water line relocation**

As this is a **permitting prerequisite** tied to an approved repair, Farmers is responsible for the full amount.

——

### 4. Improper Removal of Acknowledged Items (Items 23 & 25)

Your most recent depreciation worksheet shows:

- **Item 23 (Painting):** removed and valued at **$0** (previously acknowledged at **$8,200**)

- **Item 25 (No Face Memorabilia):** removed and valued at **$0** (previously valued at **$331.55**)

These reductions are **unexplained and improper**, especially after these items were previously validated in writing and partially reimbursed.

Additionally, the **total itemized Replacement Cost** was lowered from **$19,995.85** in May to **$14,359.29** in July — the correct total should be **$22,890.84 not □nal**

——

### 5. Requested Action

To resolve these issues, I request that Farmers:

1. **Restore the full value of Painting ($8,200) and Memorabilia ($331.55)**

2. **Correct the Replacement Cost Total to $22,890.84**

**PAGE #114**

3. **Open reimbursement and issue payment for the $87,400–$93,400 in construction costs** triggered by acknowledged replacements, per the attached contractor bid

4. **Approve the $18,000 exterior repaint and $3,000 water line relocation**, as it is a necessary extension of approved work (included as part of previous bullet point)

5. **Issue payment for the incorrect adjustment of items 23 and 25**)

————

Thank you for your attention to this matter. Please confirm next steps and provide written acknowledgment of the requested corrections and scope review.

Sincerely,
**Luna D'Sol**
Policyholder – 2275 E Belding Dr, Palm Springs, CA
(213) 925-4069
jravada@icloud.com

**PAGE #115**

**License Contractor provided bid**



777 E. Tahquitz Canyon Way, Ste 200, Palm Springs, CA 9226

Ph: 323-423-6322 | Lic. #1049763

info@progressivehomeremodeling.com | www.progressivehomeremod

**Everything in this letter referenced as "remodel" is meant to only imply replacement and repair work. Their company's name has the word Remodeling, however nothing here is targetting any kind of remodel job**

## Partial Home Remodel

**Homeowner:** Julio "Luna"
**Homeowner Phone:** 213-925-4069
**Homeowner Address:** 2275 East Belding Drive, Palm Spring CA 92262
**Date:** 05/19/2025
**Prepared By:** Emuna Stanley
**Project Manager Phone:** 213-264-8682

## Project Overview

This project involves comprehensive interior and exterior improvements to appx of 3,000 sq ft residential property in Palm Springs, CA. The scope includes replacing a broken window and damaged stucco, reinstalling a properly supported wall-mounted toilet, installing epoxy flooring throughout the home, constructing a new kitchen island with electrical work, and repainting the full exterior of the home.

## Scope of Work

### Partial Home Renovation

**Initial Site Preparation**

- Contractor will secure the job site, protect existing finishes not included in the renovation, and establish clear work zones.
- Contractor will also coordinate delivery and storage of materials.

**Partial Interior & Select Exterior Demolition**

**PAGE #116**

- Contractor will perform demolition of the following:
- Existing exterior stucco damage areas to prep for patching
- Interior drywall sections as needed for water line and plumbing relocations
- Existing bathroom vanity, shower materials, and toilet setup
- Existing kitchen island including countertop and base
- All existing interior epoxy flooring throughout the house
- All demolition debris will be removed and disposed of in accordance with local regulations.

**Exterior Stucco Patch & Repaint**

- Contractor will patch all damaged stucco surfaces and repaint the entire exterior of the home using high-quality, weather-resistant paint matched to client-approved color.

**Water Line Relocation**

- Contractor will relocate exterior water lines into an interior closet. This includes rerouting plumbing, patching access holes, and painting the surrounding walls.

**Bathroom – Toilet Relocation & Wall Repair**

- Contractor will move the bathroom toilet to sit flush against the back wall. This includes rerouting the waste line and water supply, resetting the toilet, patching drywall, and repainting to match the surrounding surface.

**Bathroom – Full Remodel**

- Contractor will complete a full renovation of the bathroom, including:
- New shower tile installation
- Shower valve and fixture installation
- New vanity, countertop, sink, and faucet
- Paint and finishing work

**Kitchen – Island Replacement**

- Contractor will construct a new kitchen island after demolition of the existing one.  (Work includes: Framing and cabinetry for the new island base)
- Installation of quartz countertops or metallic epoxy finish (homeowner to select)
- Electrical adjustments as required

**Interior Flooring – Epoxy Removal & New Installation**

- Contractor will remove all existing epoxy flooring and prepare the concrete surface (grinding/cleaning).
- Contractor will install new metallic epoxy flooring throughout the entire home with client-approved color and design.

**Site Cleanup & Detailing**

- Contractor will perform a full cleanup of the interior and exterior renovation zones. This includes removing dust, wiping surfaces, and disposing of any remaining waste.

**Final Walk-Through & Punch List**

- Contractor will walk through the project with Lisette and Marty to ensure all items are complete and meet expectations. Any punch list items will be documented and resolved promptly.

## Summary of Estimated Costs

| Scope | Estimated Cost |
|---|---|
| Exterior Stucco & Paint | $18000.00 |
| Water Line Relocation | $3000.00 |
| Toilet Wall Flush & Patch | $4400.00 |
| Bathroom Remodel | $16000.00 |
| Kitchen Island Replacement | $9000.00 |

**PAGE #118**

| Epoxy Flooring (Entire Home) | $46000.00-52000.00 |
|---|---|
| **Total** | **$87400.00-93400.00** |

### Payment Schedule: (based on $87400.00)

- Deposit: $1,000
- Upon Permit for window replacement, stucco repair, plumbing (for toilet): $8640
- Upon material order: $10000.00
- Upon Demolition & Site prep: $9500.00
- Upon structural & rough-In Completion: $9000.00
- Upon window installation & Stucco repair completion: $8500.00
- Upon countertop fabrication: $8000.00
- Upon Island Installation: $8190.00
- Upon Island Completion: $8190.00
- Upon  Epoxy flooring installation: $8190.00
- Upon Painting & Finishing: $8190
- Upon Project Completion: $8640.00

---

## Exclusions & Inclusions

- Contractor to cover all working areas as needed
- Contractor to perform final touch ups as needed
- Contractor to clean up and haul away debris throughout duration of project as needed
- Taxes, labor, rough building materials, slabs, fabrication and installation of kitchen island installation, included
- Finish materials (such as sink, faucet, hardware and etc.), and any unforeseen construction not determined during walk-through; not included
- Contractor will handle all permit applications and related processes. Once permits are obtained, the homeowner will be invoiced for reimbursement.

---

**PAGE #119**

**<u>Terms and Condition:</u>**

**Price and Validity:**
- **Price includes labor and rough materials, and slabs**
- **The estimate is valid for 21 days and may change based on market conditions, material costs, plan changes, or city/county corrections. Progressive Home Remodeling reserves the right to adjust the price or terminate the contract accordingly.**

**Changes and Responsibilities:**
- **Progressive Home Remodeling shall provide the homeowners a one year warranty for all labor performed on the property.**
- **Homeowners are responsible for checking the condition and quality of all delivered goods/materials. Progressive Home Remodeling is not responsible for damaged materials on and off-site.**
- **Additional fees may apply if Progressive Home Remodeling is required to pick up and deliver finish materials unless stated otherwise in writing.**

**Unforeseen Items and Additional Requirements:**
- **Unforeseen items not determined during estimating/walking the property will result in additional charges. Progressive Home Remodeling will present these changes to homeowners for approval before starting any work.**

**Limitations:**
- **The locations of seams are ultimately determined by Progressive Home Remodeling. All suggestions and requests for seam locations are always considered. Large L shape pieces and other otherwise awkward shapes may require additional material and may result in a change in project price if the homeowner insists on not having a seam. These determinations are unable to be made until we template. Additionally, we reserve the right to seam pieces we deem too fragile or delicate to handle in one piece. These determinations are unable to be made until we template. If the homeowner  insists on continuing without our seam suggestions the homeowner is responsible for all costs associated with repairing or replacing the broken part.**
- **If your project requires additional equipment or manpower to install your stone due to unforeseen obstacles (including but not limited to: Excessive stairs, crane equipment, house layout) the cost of the additional resources will be added to the final invoice.**
- **Many engineered quartz brands have strict fabrication guidelines to comply with their warranty. Often, the details of your kitchen may void**

**PAGE #120**

their warranty. This includes but isn't limited to inside corners and edge details. Progressive Home Remodeling is not responsible for your project's compliance with any manufacturer's warranty.

- If you want a backsplash or want to use your slab in any other area (such as saddles), now is the time to mention this. Adding items like small backsplash, saddles, and windowsills to a project after it has been fabricated or installed may result in higher installation fees and increased time. Additionally, there may not be any remaining matching material. In order to complete your project as fast, economically and professionally as possible, please consider every place you may want to use a piece of stone.
- Contractor shall not be held responsible for any damages to the cabinets or surrounding areas that may occur as a result of demolition.
- We are not engineers, environmental consultants or home inspectors. We are licensed contractors and provide construction cost estimates for the specific items included in this document. The following report is based on a visual observation of the subject property and discussions with you or your representatives. The scope is limited to the specific items listed in this document and is not meant to identify all repairs or improvements that may be required or desired on this property.

Homeowner:_____Date:_____

Contractor: MS 155282 SP      Date: 05/20/2025

We look forward to working with you on this exciting bathroom remodel project! Please feel free to reach out with any questions or if you require any adjustments to this estimate.

**It is the law that all contractors with employees carry current Bond and good business practice to have General Liability Insurance.**
**We carry both for your protection and can provide certificates on request.**

**PAGE #121**



## Farmers Direct Property and Casualty Insurance Company

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

Case 2:25-cv-10938-SVW-AS   Document 1-2   Filed 11/14/25   Page 170 of 176   Page ID #:183

| Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| Unable to valuate. Additional information needed to valuate the item. | | | | | | | | | | |
| 26. Snow Globes | 8.00 EA | $300.00 | $27.75 | $327.75 | -$245.81 | $81.94 | | $0.00 | $245.81 | $0.00 |
| 27. Elongated One-Piece Smart Toilet Wall Mounted with In-Wall Tank Modern Smart Toilet 59686573251 | 1.00 EA | $1,299.99 | $120.25 | $1,420.24 | -$0.00 | $1,420.24 | | $0.00 | $0.00 | $0.00 |
| Orig. Desc. - 59686573251, Toilet | | | | | | | | | | |
| Homary | | | | | | | | | | |
| **Subtotals** | | $14359.29 | $1328.23 | $15687.52 | -$3674.77 | $12012.75 | $1418.06 | $0.00 | $3441.84 | $232.93 |
| **Totals** | | $14,359.29 | $1,328.23 | $15,687.52 | -$3,674.77 | $12,012.75 | $1,418.06 | $0.00 | $3,441.84 | $232.93 |

46 46 000129 QFA7RT7R31 CF0714P1 46 [] 000129



## Farmers Direct Property and Casualty Insurance Company

PO Box 268994
Oklahoma City, OK 73126-8994
Toll Free Phone 1-800-435-7764
Toll Free Fax 1-877-217-1389
myclaim@farmersinsurance.com

| Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| Orig. Desc. - Brilliant, Wall Controller , 3-Switch | | | | | | | | | | |
| Brilliant Tech | | | | | | | | | | |
| 17. Google - Nest Smart Programmable Wifi Thermostat - Snow | 1.00 EA | $129.99 | $12.02 | $142.01 | -$7.84 | $134.17 | | $0.00 | $7.84 | $0.00 |
| Orig. Desc. - Google Nest, T3017US, Thermostat | | | | | | | | | | |
| Best Buy | | | | | | | | | | |
| 18. Dyson Solarcycle Morph Desk Light | 1.00 EA | $649.99 | $60.12 | $710.11 | -$135.06 | $575.05 | | $0.00 | $135.06 | $0.00 |
| Dyson | | | | | | | | | | |
| Orig. Desc. - Dyson, Desk Lamp , Morph Light | | | | | | | | | | |
| 19. Floodlight Cam S330 - Eufy - 1 Cam Pack | 1.00 EA | $299.99 | $27.75 | $327.74 | -$42.67 | $285.07 | | $0.00 | $42.67 | $0.00 |
| Eufy | | | | | | | | | | |
| Orig. Desc. - Eufy, Security Cam , Floodlight Pro | | | | | | | | | | |
| 20. Fisher and Paykel DishDrawer 24 Inch Wide 14 Place Setting Energy Star Rated Built-In Top Contro | 1.00 EA | $1,749.00 | $161.78 | $1,910.78 | -$340.12 | $1,570.66 | | $0.00 | $340.12 | $0.00 |
| Build with Ferguson | | | | | | | | | | |
| Orig. Desc. - Fisher & Paykel DIshwasher , 24" | | | | | | | | | | |
| 21. Enrave medium ceiling lamp | 2.00 EA | $459.98 | $42.55 | $502.53 | -$188.45 | $314.08 | | $0.00 | $188.45 | $0.00 |
| Orig. Desc. - Philips, Light Fixtures , Sphere | | | | | | | | | | |
| Philips Hue | | | | | | | | | | |
| 22. Phillips Ensis pendant light | 1.00 EA | $479.99 | $44.40 | $524.39 | -$192.46 | $331.93 | | $0.00 | $192.46 | $0.00 |
| Phillips Hue | | | | | | | | | | |
| Orig. Desc. - Philips, Light Fixture | | | | | | | | | | |
| 23. Painting | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Unable to valuate. Additional information needed to valuate the item. | | | | | | | | | | |
| 24. Window , 2-Panel | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Unable to valuate. Additional information needed to valuate the item. | | | | | | | | | | |
| 25. No Face Prime Memorabilia | 1.00 EA | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | | $0.00 | $0.00 | $0.00 |

JULIO RAVADA

7007678692-1

7/8/2025

Page: 7

**PAGE #123**



Window replacement will damage existing tile



**Water line below must be realocatede before city provides permits to replace panel above**



**From:** **Julio Ravada** jravada@icloud.com
**Subject:** Re: Claim number 7007678692-1 Recap of conversation / CLAIM RESOLUTION AND CONTINUED DISPUTE
**Date:** May 7, 2025 at 16:26
**To:** Bryce Spradling bryce.spradling@farmersinsurance.com
**Cc:** ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com, Amy Spawr-Bardley amy.spawrbardley@farmersinsurance.com

Dear Mr. Bryce,

I am following up on this claim. I must reiterate that your position continues to overlook both the policy language and the legal standards relevant to this matter.

As noted in my prior message, your assertion that I voided my ability to recover additional funds is not supported by the policy language itself. The "Duties After A Loss" and "Our Settlement Options" sections do not impose a requirement to retain or produce documentation after your investigation is concluded and a final settlement letter is issued—as was done on November 12, 2024. This renders your continued demand for further documentation both unnecessary and outside the scope of what the policy requires post-resolution.

Furthermore, your refusal to address me by my affirmed name despite multiple requests, and in contradiction to California civil rights protections, remains unacceptable. As previously cited, the law prohibits requiring legal documentation to acknowledge a person's name or gender identity. Your company's failure to recognize this not only causes ongoing harm but also exposes you to liability under applicable anti-discrimination statutes, including those covered by the ADA.

The combination of these unresolved issues—contractual misinterpretations, discriminatory practices, and neglected repair responsibilities—demonstrates a disregard for both ethical and legal obligations. I am prepared to escalate this matter to the appropriate regulatory bodies and legal channels if an adequate resolution is not offered immediately.

Please consider this my final request for a prompt, good-faith resolution. I am open to constructive dialogue, but I will not continue engaging in a cycle of deflection and noncompliance.

Sincerely,

Luna

Sent from my iPhone

On May 2, 2025, at 1:59 PM, Julio Ravada <jravada@icloud.com> wrote:

Based on the policy policy documents, you may want to look specifically at the **"Duties After A Loss"** section and **"Our Settlement Options"** sections in your to find language that suggests implications for record-keeping post-investigation by Farmer's.

From the excerpts provided, here's a relevant passage from the **"Duties After A Loss"** section that is worth taking a look at:

### Duties After A Loss

- **You must protect the auto from further loss. We will pay you for reasonable expenses incurred for this protection. We will not cover any loss which results from your failure to protect the auto from further loss.**

This clause states the insured's duties following a loss, indicating that the insured is obligated to protect the property from further loss. However, it does not explicitly mention ongoing record-keeping requirements after the insurance company's investigation is complete.

### Our Settlement Options

The **"Our Settlement Options"** section describes that:

- **We will adjust all losses with you. We will pay you unless another payee is named in the policy. We will pay within 60 days after the amount of loss is agreed upon. This amount may be determined by an agreement between you and us, an appraisal award, or entry of a final judgment, subject to SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

This section implies that once the settlement process has been agreed upon, the obligation shifts significantly to settling the claim rather than maintaining extensive documentation beyond the agreed assessment of loss.

This helps us conclude that the "Duties After A Loss" and "Our Settlement Options" indicate that once the claim has been settled or the amount of loss has been agreed upon after the investigation, the insurer has fulfilled its obligations, and the insured does not have further record-keeping responsibilities unless otherwise specified.

On Apr 28, 2025, at 11:37 AM, Bryce Spradling <bryce.spradling@farmersinsurance.com> wrote:

Good afternoon,

This email will serve as a reply to both the email listed below as well as the email received on Thursday April 24th.

As outlined multiple times your claim and all support provided has been thoroughly reviewed. While we understand you may disagree, the fact remains it is still your responsibility to retain all information that is in relation to your claim. What we required to move the claim forward is not unreasonable and in fact, necessary to support your claim based on the inconsistencies with the prior support you have provided.  As noted on several occasions you have 180 days from the !rst payment on your claim to provide us with this information. As explained, this was timeframe expired on April 27th. As you failed to provide us with this information you have voided your ability to recover any funds associated with your claim.  Should you have any questions please refer to the settlement letter sent to you in October or review the applicable policy language in you Farmers Direct Property and Casualty Ins. Co. policy.

Have a good day!

## Bryce Spradling, AINS, CASA
*Property Theft Supervisor*
Farmers Claims Department
Farmers Direct Property and Casualty Ins. Co.
Cell: 913-286-3007
Fax: (877) 217-1389

Please visit our claim portal to view the status and manage your claim online. Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National