EXHIBIT A

Luna D'Sol
Plaintiff, In Pro Per
Email Address: jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| LUNA D'SOL,<br>Plaintiff,<br><br>vs.<br><br>FARMERS INSURANCE EXCHANGE, FARMERS DIECT PROPERTY AND CASUALTY INSURANCE COMPANY; and DOES 2-50, inclusive,<br>Defendant(s). | Case No: *25VECV04713*<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES** |

COMES NOW, Plaintiff Luna D’Sol, and alleges as follows:

**<u>JURISDICTION AND VENUE</u>**

**1.** This Court has jurisdiction pursuant to the California Constitution and applicable statutes because the Policy agreement was formed in Plaintiff’s second residence at 19525

Schoolcraft St Reseda CA 91335, Farmers headquarters is in Woodland Hills, California; and because Plaintiff and Farmers are both citizens of California.

**2.** Venue is proper in Los Angeles County under Code of Civil Procedure 395 because: (a) The insurance contract was entered into in Los Angeles County; (b) Defendant maintains its principal offices at 6301 Owensmouth Avenue, Woodland Hills, California; and (c) Substantial wrongful acts, including claims handling, communications and misrepresentations occurred in Los Angeles County.

**PARTIES**

**3.** Plaintiff Luna D'Sol is an individual residing in California and the named insured on a Farmers homeowner's insurance policy.

**4.** Defendant Farmers Insurance Exchange ("Farmers") is an insurance company authorized to conduct business in California, headquartered in Los Angeles County.

**5.** Plaintiff commenced this action on August 21, 2025 against Farmers, which was thereafter served. Following service, on October 14, 2025, counsel for Farmers, Michelle R. Bernard, represented that Farmers Direct Property and Casualty Insurance Company ("Farmers Direct"), rather than Farmers, had issued the Policy and was the proper defendant. In reliance upon those representations, Plaintiff amended her pleading to add Farmers Direct as co-defendant, including by substituting Farmers Direct as DOE 1. Farmers Direct was incorporate under the laws of Rhode Island and that, on or about January 9, 2025, it filed a Statement of Information with the California Secretary of State identifying its principal address as 6301 Owensmouth Avenue, Woodland Hills, California, the same address used by Farmers Insurance Exchange and its attorney-in-fact, Farmers Group, Inc. Plaintiff is informed and believed and therefore alleges that Farmers Direct exited California. Farmers Direct remains liable because it issued the Policy, accepted premiums, represented itself as the insurer before and after Certificate of Assumption. The Assumption Certificate, effective January 15, 2024, before date of loss June 4, 2024, names Farmers as the party liable for Plaintiff's claim subject to this complaint which states that where the name Farmers Direct appear in the policy is now deemed to be Exchange and that Exchange assumes all liabilities.

**6.** That at all times herein mentioned, each and every defendant herein was the agent, servant, employee, partner or joint venturer of the other defendants herein; that at all said times, each of said defendants was acting within the course and scope of said agency, service, employment, partnership and joint venture.

**7.** Plaintiff is ignorant of the true names and capacities of DOES 2-50 and will amend this Complaint when their identities are ascertained.

**FACTUAL ALLEGATIONS**

**8.** The Policy was originally issued by Farmers Direct for the policy period commencing September 28, 2023. Effective January 15, 2024, however, Farmers assumed all liabilities and obligations arising under the Policy pursuant to an Assumption Certificate executed on August 1, 2024. The Assumption Certificate expressly provides that all liability under the Policy was assumed by Farmers and that, wherever Farmers Direct appears in the Policy, it shall thereafter be deemed to refer to Farmers. Following the assumption, Farmers, through its employees, agents, and representatives, administered, adjusted, investigated, and made coverage determinations concerning Plaintiff's claim.

**9.** Following the effective date of the Assumption Certificate, Farmers, acting through its employees, supervisors, adjusters, and claims representatives, exercised exclusive authority over the investigation, adjustment, administration, coverage determinations, denials, payments, and communications concerning Plaintiff's claim.

**10.** On or about June 4, 2024, Plaintiff sustained burglary-related damages covered under her Farmers policy (Policy No. 3872340940 / Claim No. 7007678692-1).

**11.** Plaintiff promptly reported the loss and cooperated fully with Farmers.

**12.** Plaintiff is informed and believes that each material claim-handling decision was made by or through individuals acting on behalf of Farmers, including claims supervisors, field adjusters, customer relations personnel, and other representatives who acted within the course and scope of their authority.

**13.** Between July 2024 and May 2025, Defendants Farmers acting directly and through its employees, agents, adjusters, supervisors, representatives, and managing agents, engaged in a pattern of oppressive and bad faith conduct designed to delay, underpay, and deny full benefits, including:

a. From July 2 through August 9, 2024 (38 days), Farmers conducted a prolonged internal investigation without justification.

b. From August 9 through October 22, 2024 (74 days), Farmers compelled Plaintiff to undergo an extended Examination Under Oath, which produced no evidence of misconduct.

c. From November 22, 2024 through January 15, 2025 (54 days), Farmers wrongfully denied the claim and accused Plaintiff of misrepresentation, later reversing the denial only after daily dispute and escalation.

d. From February 4 through May 14, 2025 (99 days), Farmers issued a second wrongful denial on the same false grounds, delaying resolution for nearly three additional months.

**14.** Farmers' delays consumed more than 70% of Plaintiffs 180-day replacement-cost claim window, materially prejudicing her ability to recover supplemental benefits.

**15.** On October 29, 2024, Farmers issued an Actual Cash Value payment but failed to release the full amount of recoverable depreciation. Subsequent worksheets contained mathematical discrepancies of at least $472.16, further misrepresenting amounts owed.

**16.** Beginning in January 2025, after being informed of Plaintiffs gender transition, Farmers' adjusters and supervisors repeatedly misgendered Plaintiff in phone calls, emails, and letters. On April 21, 2025, Farmers supervisor Bryce Spradling explicitly refused to use Plaintiffs affirmed name and pronouns, despite acknowledging her request. In that email, Spradling stated: “Furthermore, your policy has not formally been changed to reflect your name change and as such all documentation is addressed to the name on the policy contract between yourself and Farmers Insurance.”

**17.** On that same date, April 21, 2025, while Plaintiffs claim remained in "denied" status, Spradling sent an additional email reinforcing Farmers' refusal to release withheld depreciation. In his message, Spradling wrote: "As I previously pointed out via email and in the adjuster via the settlement letter dated October 29th 2024, you have 180 days to provide us with the necessary information to recover the withheld depreciation from the date offers payment. To be clear, you time to provide us with all necessary information expires on April 27th 2025. If you fail to provide the necessary information by that time you will be unable to recover any further funds on your claim." This statement effectively warned Plaintiff that she would permanently lose her rights under the policy, even as Farmers continued to block recovery by keeping the claim in denied status. Farmers later re-opened the claim on May 15, 2025, after forcing Plaintiff through weeks of daily disputes over false accusations.

**18.** Farmers' refusal to address Plaintiff by her correct name and pronouns, coupled with its manipulation of contractual deadlines during periods of wrongful denial, caused Plaintiff significant emotional distress and materially prejudiced her ability to recover policy benefits.

**19.** Farmers further acted in bad faith by excluding code-required repairs to Plaintiff's wall-hung toilet and structural repairs to her dishwasher, despite receiving a notarized Proof of Loss and a licensed contractor's bid documenting necessary work.

**20.** On June 23, 2025, Farmers issued another denial letter contradicting its own Examination Under Oath transcript, then partially reversed its position on July 8, 2025 with limited payments that ignored labor and restoration costs.

**21.** Farmers manipulated records by removing or reducing covered items, including eliminating a $8,200 painting appraisal, reducing a $331.55 memorabilia item to $0, and mischaracterizing new appliances as "replacements" rather than additions.

**22.** Farmers ignored a licensed contractor's bid for $93,400 in necessary repairs. Representative Albert Pimentel dismissed the bid outright, stating, "We have exhausted our time, nothing more to pay here."

**23.** Throughout the adjustment of Plaintiff's claim, Farmers communicated with Plaintiff, issued claim decisions, denied coverage, reopened the claim, and made payment

determinations through its employees and representatives. Plaintiff is informed and believes that the same individuals who exercised authority over the claim did so on behalf of Farmers following the effective date of the Assumption Certificate.

**24.** As a direct result of the above conduct, Plaintiff endured nearly one year of wrongful delays, denials, underpayments, and discriminatory treatment, causing financial losses, emotional distress, and humiliation.

**25.** On June 5, 2024, Farmers' field agent Donnie Means inspected the property and observed that the intruders had broken the stucco and window frame to gain entry into Plaintiff’s home. The agent noted that the window could no longer be locked, creating a safety hazard.

**26.** Agent Means informed Plaintiff that, because the property was not secure or habitable, she could immediately stay at a hotel under her policy's Additional Living Expenses (ALE) coverage.

**27.** Despite this acknowledgment, Farmers failed and refused to provide ALE payments for hotel accommodations. As of the date of this Complaint, Farmers has not reimbursed Plaintiff for temporary lodging, nor has it paid for the necessary repair and labor to restore the window.

**28.** By virtue of the Assumption Certificate, Farmers became responsible for the contractual obligations arising under the Policy and thereafter undertook the investigation, adjustment, administration, and disposition of Plaintiff’s claim. The wrongful acts alleged herein occurred during Farmers’ administration of the claim.

**29.** Plaintiff relied upon Farmers’ representations, communications, claim determinations, and adjustment activities as those of the insurer responsible under the Policy. At no time during the adjustment of the claim did Farmers advise Plaintiff that it lacked responsibility for the conduct of the individuals handling the claim or that another entity bore responsibility for their acts.

## IV. CAUSES OF ACTION

### First Cause of Action

### Breach of Contract

(Farmers, Farmers Direct and Does 2 through 50 inclusive)

**30.** Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**31.** Prior to September 2023, plaintiff entered into a contract of insurance in County, California with defendant Farmers Direct and effective January 15, 2024, with defendant Farmers. Said contract, hereinafter referred to as “Policy” is titled Homeowner’s Policy, No. 3872340940. Farmers, Farmers Direct and Does 2 through 50 inclusive, breached the Policy. The acts constituting the breach were carried out through Defendants’ employees, agents, adjusters, supervisors, claims representatives, and other authorized personnel, who operated through a single claims-handling process and communicated with Plaintiff through a unified channel for the investigation, adjustment, administration, and resolution of her claim.

**32.** Each year, up to and including 2025, defendant Farmers reissued the Policy under a different Policy number

**33.** The applicable Policy with endorsements and Assumption Certificate is attached hereto as Exhibit “A.” In pertinent part, said Policy provides that defendants would insure and indemnify plaintiff from damage to and loss of the property located at 2275 E Belding Drive Palms Springs CA 92262

**34.** Throughout the period of said Policy, plaintiff regularly paid premiums through her mortgage company’s escrow account and performed each act required on plaintiff's part to keep said Policy in full force and effect. Plaintiff intended and expected thereby to be assured peace of mind and financial and economic security in the event of destruction or damage to plaintiff's home.

**35.** On June 4th, 2024 plaintiff's property was damaged when *two individuals entered the property and committed acts of vandalism and removed Plaintiff’s personal property off the premises.* Plaintiff notified defendants of the loss and made a claim for benefits - Claim No

7007678692-1 (hereinafter the "Claim"). Under the terms of the Policy and the laws of the state of California, defendants then became obligated to pay, and plaintiff became entitled to receive indemnification for the Claim up to the full value of said loss.

**36.** Plaintiff has performed all conditions of the Policy required to be performed on plaintiff's part, except those that were waived by defendants.

**37.** Notwithstanding their obligation to do so, defendants have failed and refuse, and continue to fail and refuse, to pay plaintiff the benefits owed under the Policy, despite demand therefore.

**38.** Said failures and refusals include but are not limited to the following:

(a) The failure and refusal to reimburse plaintiff fully for the reasonable cost of repairing the dwelling including but not limited to a repair estimate for some of the damages for $93,400 that do not reflect the current's market repair value;

(b) The failure and refusal to reimburse plaintiff for the reasonable cost of repairing or replacing personal property including but not limited paying for toilet and dishwasher replacement but refusing to pay for its replacement;

(c) The failure and refusal to reimburse plaintiff for the reasonable cost of related losses; and,

(d) The failure and refusal to reimburse plaintiff in a timely manner for the reasonable cost of the additional living expenses and loss of use of the property.

**39.** Said failures and refusals constitute a material breach of the Policy, not limited to, Extended Replacement Cost Coverage, Section A, B, and C

**40.** Defendants have also breached the contract of insurance by failing to abide by the covenant of good faith and fair dealing. The acts constituting a breach of the implied covenant of good faith and fair dealing are set forth below.

**41.** As a direct, proximate and consequential result of the above-described breach of contract, plaintiff has suffered damages under the policies including loss of contract benefits, anticipated loss of future contract benefits, and loss of interest on money due and owing to plaintiff, in an amount to be determined according to proof at trial.

WHEREFORE, plaintiff prays for judgment against defendants and each of them, as hereinafter set forth.

:

**Second Cause of Action**

**Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

(Farmers, Farmers Direct and Does 2 through 25 inclusive)

**42.** Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**43.** At all times herein relevant, said defendants agreed to act in good faith and deal fairly with plaintiff when they entered into the Policy, accepted premiums from plaintiff and undertook to process their Claim. Said defendants thereby assumed a special relationship with, and fiduciary obligations to, plaintiff, and agreed to abide by their respective duties. Nevertheless, these defendants refused and failed to act in good faith and deal fairly with plaintiff, and breached said obligations, as is set forth more particularly below.

**44.** In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, these defendants have failed and refused to fully indemnify plaintiff under the Policy and the laws of the state of California.

**45.** These defendants, and each of them, engaged, and continue to engage, in a course of conduct to further their own economic interests and in violation of their contractual and fiduciary obligations to plaintiff including, but not limited to:

(a) Misrepresenting pertinent policy provisions, coverages, and the identity of the insurer responsible under the Policy, including representations made through Defendants' employees, adjusters, claims representatives, and counsel, Michelle R. Bernard, concerning the entity responsible for Plaintiff's claim and the obligations arising under Policy No. 3872340940; and misrepresentations made by all Farmers and Direct's employee during the handling of the claim not limited to Javier Pimentel, Amy Spawr-Bardley, Bryce Spradling;

(b) Unreasonable delays in acting upon plaintiff's Claim;

(c) Unreasonable and duplicative requests for documentation of the loss and repeated unsupported denials that resulted in reversal from Bryce Spradling;

(d) Unreasonable refusal to accept documentation from plaintiff as proof of the losses plaintiff suffered;

(e) Inconsistent representations concerning the identity of the insurer responsible under Policy No. 3872340940, and issuing threats to Plaintiff to amend the pleadings that Defendants had concealed information.

(f) Unreasonable failure to proceed in good faith to agree upon the reasonable repair methods or cost of repairing plaintiff's property;

(g) Other unlawful claims practices according to proof at the time of trial; and

(h) Other wrongful and illegal conduct according to proof at trial.

**46.** Defendants continue to engage in the aforementioned acts and said conduct and bad faith constitutes a continuing tort and continuing bad faith to plaintiff, causing plaintiff continuing damage as described herein beyond the date of the filing of this action.

**47.** As a direct and proximate result of the aforementioned conduct of defendants, and each of them, plaintiff has been damaged in a sum in excess of the jurisdiction of this Court to be determined according to proof at trial of this matter.

**48.** As a further direct and proximate result of the aforementioned conduct of and each of them, plaintiff has suffered and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at trial.

**49.** As a further direct proximate result of the aforementioned conduct of defendants and each of them, plaintiff has suffered mental and emotional distress as documented by her doctors, including, but not limited to, frustration, depression, nervousness and anxiety, and has thereby incurred general damages for a total amount to be shown at trial.

**50.** As a further direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff was obligated to retain legal counsel to obtain the benefits due under the Policy, and to expend or incur liability for costs of suit, attorney's fees,

and related expenses in an amount not yet fully ascertained, but which will be submitted at time of trial.

**51.** As a further direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff has suffered special damages resulting from having lost plaintiff's job, lost the use and quiet enjoyment of plaintiff's realty, and incurred other necessary incidental expenses in an amount according to proof at the time of trial.

**52.** The acts alleged were part of defendants' and each of them, inclusive, ordinary business practice designed to keep from paying Policy benefits which were and are legitimately owed to the plaintiff in order to increase the defendants' profits. In doing so, and in doing the acts set forth above, the defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of the plaintiff's rights.

**53.** Plaintiff therefore seeks exemplary damages in a sum to be set by the jury in an amount sufficient to punish the defendants and to be certain that they never again perpetrate such evils upon Policyholders

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as hereinafter set forth.

## Third Cause of Action

## Conspiracy to Defraud

## (Against Defendants Farmers and Farmers Direct and Does 2 through 50 all inclusive)

**54.** Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**55.** Defendants Farmers, Farmers Direct and each of Does 2-50 all inclusive collectively, and each of them, conspired to defraud plaintiff as set forth herein. Pursuant to the conspiracy, defendants agreed among themselves to misrepresent to plaintiff the terms of the Policy, how the claim would be adjusted, how and in what amounts plaintiff would be indemnified, the documentation defendants would require in support of plaintiff's claim, and other matters to be proven at trial.

**56.** Pursuant to the agreement, defendants proceeded to commit tortious acts toward plaintiff, including, but not limited to, unreasonably refusing to permit plaintiff's property to be repaired; unreasonably refusing to accept plaintiff's documentation of loss; requiring redundant documentation of the Claim; adopting unreasonable and unwarranted interpretations of the Policy; breaching the implied covenant of good faith and fair dealing; and intentionally inflicting emotional distress on plaintiff

**57.** In engaging in a wrongful course of conduct and in committing the wrongful acts and practices alleged herein, defendants, and each of them, acted in concert and in civil conspiracy with each other and together, and each conspired with, aided and abetted the others to further their own economic interests at the expense of the economic interests, peace of mind and well-being of plaintiff

**58.** Defendants acted through the same claims personnel, supervisors, representatives, and retained counsel. Defendants collectively communicated with Plaintiff regarding the Policy, investigated and adjusted the claim, issued claim decisions, and thereafter took coordinated litigation positions concerning the identity of the insurer responsible under the Policy.

**59.** Defendants, acting through their counsel, represented that Farmers Direct Property and Casualty Insurance Company was the proper defendant, inducing Plaintiff to amend her pleadings, while subsequently filing pleadings and other court documents that identified or relied upon Farmers Insurance Exchange in connection with the same Policy and claim. Plaintiff is informed and believes that these acts were undertaken pursuant to a common agreement among Defendants to delay, complicate, and impair Plaintiff’s ability to obtain policy benefits and pursue her claims. As a direct and proximate result of Defendants’ concerted conduct, Plaintiff has incurred additional litigation expenses, suffered delay, and sustained the damages alleged herein.

**60.** In engaging in the above-described wrongful course of conduct, defendants, and each of them, were aware that they were committing tortious acts against plaintiff, and intended to achieve their objective of delaying and under-settling plaintiff's Claim.

**61.** As a direct and proximate result of the aforementioned conduct of defendants, and each of them, Plaintiff has suffered compensatory, consequential, and other damages in an amount exceeding the jurisdictional minimum for an unlimited civil action, according to proof at trial including during the pendency of this action in Federal court.

**62.** The acts alleged were part of defendants' and each of them, inclusive, ordinary business practice designed to keep from paying Policy benefits which were and are legitimately owed to the plaintiff in order to increase the defendants' profits. In doing so, and in doing the acts set forth above, the defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of the plaintiff's rights.

**63.** Plaintiff therefore seeks exemplary damages in a sum to be set by the jury in an amount sufficient to punish the defendants and to be certain that they never again perpetrate such evils upon Policyholders

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

**<u>Third Cause of Action</u>**

**(Fraud**

**Against Defendants Farmers and Farmers Direct)**

**64.** Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**65.** In the Policy No. 3872340940 and in oral and written representations made by defendants Farmers, Farmers Direct and 2 Does to 25 all inclusive, to plaintiff, defendants represented to plaintiff that said defendants would, in the event of certain contingencies, pay monies to plaintiff for indemnification of all losses after each time they reversed a denial in January and April of 2025, with certain exceptions not relevant

here. At the time such representations were made by said defendants, said defendants were acting with the intent to deceive and defraud plaintiff and in bad faith.

**66.** Misrepresentations of material fact received directly by plaintiff from defendants' counsel on October 14 2025, were false in that said defendants did not intend and do not intend to pay such monies, notwithstanding, plaintiff's entitlement thereto, pursuant to Policy, oral representations and the laws of California. Defendants kept the claim in declined status and waited for 180 days to reverse the denial and tell plaintiff that her time to make further claims had already expired.

**67.** Farmers, Farmers Direct and, 2 Does to 25 all inclusive, knew that said representations were false and fraudulent at the time they were made and made such false and fraudulent representations for the purpose of inducing plaintiff to rely thereon to their detriment. Defendants were aware that such representations had been made to plaintiff but refused to adjust plaintiff's claim in accord with those representations.

**68.** Plaintiff, at the time said representations were made, was ignorant of their falsity and believed them to be true.

**69.** Plaintiff reasonably and justifiably relied on said representations, in view of the superior knowledge of said defendants, and the fiduciary and duty of candor in communications concerning the identity relationship between the parties.

**70.** Based upon said representations, plaintiff was induced to enter into Policy and continued to pay premiums, therefore. Had plaintiff known the true facts, plaintiff would not have taken such actions.

**71.** Based upon their counsel's representations, plaintiff was induced to delegate this matter in a different court. Had plaintiff known the true facts, plaintiff would have not taken such actions.

**72.** As a direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff has been damaged in a sum in excess of the jurisdiction of this Court to be determined according to proof at trial of this matter.

**73.** As a further direct and proximate result of the aforementioned conduct of said defendants, and each of them, plaintiff has suffered mental and emotional distress including but not limited to frustration, depression, nervousness and anxiety, and has thereby incurred general damages in a sum in excess of the jurisdiction of this Court to be determined according to proof at time of trial.

**74.** As a further direct and proximate result of the aforementioned conduct of said defendants and each of them, plaintiff has been obliged to expend or incur liability for costs of suit and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

**75.** As a further direct and proximate result of the aforementioned conduct of said defendants and each of them, plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to plaintiff

**76.** The acts alleged were part of defendants' and each of them, inclusive, ordinary business practice designed to keep from paying Policy benefits which were and are legitimately owed to the plaintiff in order to increase the defendants' profits. In doing so, and in doing the acts set forth above, the defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of the plaintiff's rights.

**77.** Plaintiff therefore seeks exemplary damages in a sum to be set by the jury in an amount sufficient to punish the defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as hereinafter set forth

**Fourth Cause of Action**

**(Intentional Infliction of Emotional Distress Against Defendants Farmers and Farmers Direct and Does 2 through 50 all inclusive)**

**78.** Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**79.** In so doing, defendants and each of them, pursued an outrageous course of conduct, intentionally and/or recklessly, proximately causing plaintiff severe emotional distress, shock and other highly unpleasant emotions. As a result of defendants' actions, plaintiff has both lost plaintiff's jobs, been forced to live for over two years in a house that is unstable and hazardous, been prevented by defendants from making necessary repairs to their home, been forced to spend hundreds of unnecessary hours meeting with professionals in order to comply with shifting, unreasonable documentation requests by defendants. As a result of being unable to use plaintiff's garage due to defendants' conduct, plaintiff was victimized by crimes including a mugging in plaintiff's own driveway and vandalism to plaintiff's property. Plaintiff was forced to hire counsel and engage in a protracted dispute with defendants, who accepted plaintiff's premiums in return for assuring plaintiff of peace of mind in the event of such a loss.

**80.** As a direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff has been damaged in a sum in excess of the jurisdiction of this Court to be determined according to proof at trial of this matter, and said amount being the amount of the claim necessary to repair all covered damages.

**81.** As a direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff has suffered mental and emotional distress, including but not limited to frustration, depression, nervousness and anxiety, and has therefore incurred general damages in a sum in excess of the jurisdiction of this Court to be determined according to proof at the time of trial.

**82.** As a further direct and proximate result of the aforementioned conduct of said defendants and each of them, plaintiff has been obliged to expend or incur liability

for costs of suit and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

**83.** As a further direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to plaintiff.

**84.** The acts alleged were part of defendants' and each of them, inclusive, ordinary business practice designed to keep from paying Policy benefits which were and are legitimately owed to the plaintiff in order to increase the defendants' profits. In doing so, and in doing the acts set forth above, the defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of the plaintiff's rights.

**85.** Plaintiff therefore seeks exemplary damages in a sum to be set by the jury in an amount sufficient to punish the defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, plaintiff prays for judgment against defendants and each of them, as hereinafter set forth.

**FIFTH CAUSE OF ACTION**

**(General Negligence Against Defendants**

**Farmers, Farmers Direct and Does 2 through 50 inclusive).**

**86.** Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**87.** At all relevant times, defendants knew that plaintiff would be relying upon the accuracy, competence, good faith and expertise of defendants in adjusting plaintiff's Claim and in advising plaintiff of coverage under the Policy, and so knew of the importance to plaintiff of performing competently and truthfully with respect to advising, handling, processing, and submitting plaintiff's Claim. As such, defendants were under a duty to plaintiff to act competently, promptly and in the highest good faith in adjusting plaintiff's Claim and in advising plaintiff as to coverage under the Policy.

**88.** At all relevant times, defendants breached its duty as set forth above, and was negligent and careless by the following acts and omissions:

a) Negligently failing to adjust plaintiff's Claim, at all times relevant to this action;

(b) Negligently failing to properly advise and inform plaintiff for all necessary repairs and related obligations; and

c) Negligently failing to reasonably investigate and process plaintiff's Claim.

**89.** Plaintiff is informed and believes and thereon alleges that defendant have been negligent by other acts or omissions of which plaintiff is presently unaware and which will be shown according to proof at the time of trial.

**90.** As a direct and proximate result of the aforementioned conduct of defendants, and each of them, plaintiff has been damaged in a sum in excess of the jurisdiction of this Court to be determined according to proof at trial of this matter.

**91.** As a direct and proximate result of the negligence of defendants *[names of defendants]*, plaintiff has sustained damages for the denial of indemnification benefits under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

**92.** As a further direct and proximate result of the aforementioned conduct of defendants and each of them, plaintiff has suffered mental and emotional distress, including, but not limited to, frustration, depression, nervousness and anxiety, and has thereby incurred general damages for a total amount to be shown at trial.

WHEREFORE, plaintiff prays for judgment against defendants and each of them, as hereinafter set forth.

**Sixth Cause of Action**

**Discrimination in Business Establishments**

**(Unruh Civil Rights Act, Civ. Code §§ 51 et seq.)**

**(against Farmers and Farmers Direct)**

**93.**. Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

**94.** Beginning in January 2025, Farmers representatives repeatedly misgendered Plaintiff and refused to address her by her affirmed name "Luna," despite explicit notice and supporting documentation.

**95.** On April 21, 2025, Farmers supervisor Bryce Spradling expressly refused to comply with Plaintiff's request, writing: "Furthermore, your policy has not formally been changed to reflect your name change and as such all documentation is addressed to the name on the policy contract between yourself and Farmers Insurance."

**96.** Farmers' refusal to respect Plaintiff's gender identity was not an error but a conscious policy choice, compounding Plaintiff's humiliation and distress and violating the Unruh Civil Rights Act

**97.** Defendant's conduct was willful, oppressive, and malicious, warranting punitive damages in addition to statutory civil penalties.

WHEREFORE, plaintiff prays for judgment against defendants and each of them, as hereinafter set forth.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

95. For compensatory damages of at least $93,400, plus all additional amounts wrongfully withheld, including depreciation and personal property values;

96. For general damages for emotional distress, humiliation, and loss of use of benefits;

97. For punitive damages in an amount sufficient to punish and deter, not less than $1,000,000, or as determined by the jury;

98. For civil penalties under the Unruh Civil Rights Act;

99. For attorney's fees (if applicable) and costs of suit; and

100. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

**VERIFICATION**

I, Luna D'Sol, am the Plaintiff in the above-entitled action. I have read the foregoing Second Amended Complaint and know the contents thereof. The matters stated therein are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 15, 2026, at Palm Springs, California.

/s/ Luna D'Sol

` Luna D'Sol, Plaintiff in Pro Per