MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUNA D'SOL,

Plaintiff,

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

Case No. 2:25-cv-10938-SVW-ASx

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION**

Judge: Hon. Stephen V. Wilson
**Date: July 27, 2026**
**Time: 1:30 p.m.**
Courtroom: 10A
Trial Date: October 13, 2026; 9:00 a.m.
FSC: October 5, 2026; 3:00 p.m.

Complaint Filed: August 21, 2025



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## I. <u>INTRODUCTION</u>

To obtain ex parte relief, Pro Per Plaintiff Luna D'Sol ("Plaintiff" or "D'Sol") must establish irreparable prejudice from the regular procedures and that the moving party is without fault. As noted in this Court's New Case Order dated December 1, 2025, this "Court only allows ex parte applications when extraordinary relief is necessary." [ECF Doc. 13, p. 3:14-16]. However, there is nothing extraordinary about the relief sought by here at all except perhaps in the degree of frivolousness and outrageous falsehoods. "Sanctions may be imposed for misuse of ex parte applications." [ECF Doc. 13, p. 3:16-17], citing, *In Re: Intermagnetics America, Inc.*, 101 Bankr. 191 (C.D. Cal. 1989). For the reasons further explained in the supporting Declaration of Michelle R. Bernard ("Bernard Decl.") filed herewith, Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") respectfully requests this Court to issue sua sponte sanctions against Plaintiff and set an OSC for that purpose as this entire Ex Parte Application is an outrageous waste of resources and time.

Plaintiff seeks to belatedly supplement her already frivolous Motion For Sanctions against defense counsel and Farmers Direct. Although Plaintiff claims her Ex Parte Application is supported by "good cause" because "since the final briefing of Plaintiff's original motion for sanctions, Ms. Bernard has engaged in further sanctionable conduct outside this Court that is directly intertwined with these proceedings." Plaintiff's Ex Parte Application, p. 2 [ECF Doc. 98]. "Specifically, Ms. Bernard has demonstrably misrepresented events to the State Court, has falsified a Proof of Service, and has concealed vital details." *Id*. Plaintiff seeks to create sanctionable issues from routine filings made by defense counsel in other cases which cannot be the basis for any ex parte relief here nor should Plaintiff be permitted to further supplement her pending Motion For Sanctions at the eleventh hour. There is no prejudice to Plaintiff at all. *See e.g., Wells Fargo Bank, N.A. v. Stewart Homes, Inc.*, 732 F. Supp. 3d 1169 (C.D. Cal. 2024) (ex parte applicants must show their

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

cause will be irreparably prejudiced if the underlying motion is heard on regular procedures, which usually requires assessing the merits of the motion, because if the motion is meritless, failure to hear it cannot be prejudicial). The entire Ex Parte Application has no relevance to this case, to this Court, to Farmers Direct and is without any grounds to serve as a basis to supplement Plaintiff's already frivolous Motion For Sanctions against Farmers Direct and defense counsel. Accordingly, Plaintiff's Ex Parte Application must be denied.

## II. PLAINTIFF SHOULD EXAMINE THE MISSION POWER CASE

In *Mission Power*, the court noted that "ex parte applications have reached epidemic proportions in the Central District" and articulated a two-prong test for justifying ex parte relief: (1) the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and (2) it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. *Mission Power Engineering Company v. Continental Casualty Company*, 883 F.Supp.488, 490-495 (C.D. Cal. 1995) (motion to shorten time to hear motion for return of papers inadvertently delivered did not show an irreparable prejudice if motion was heard on regular motion calendar).

Interestingly, Plaintiff herself cites this same *Mission Power* case, albeit Plaintiff perhaps did not read that opinion given that the Court's reasoned analysis therein clearly establishes that the alleged necessity of ex parte relief here is woefully insufficient as compared to the required standard as follows:

> **What problems do ex parte motions create?**
>
> ***
>
> Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

> telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.
>
> ***
>
> All derogatory allegations about an opponent in motion papers raise ethical problems for the lawyers and the court to the extent that the allegations are subjective or conclusory. When unsupportable allegations are made in regular noticed motions, they can to a great extent be neutralized by a well-prepared rebuttal. In papers prepared on short notice, however, the lawyers too often simply make allegations that have no supporting evidence to back them up. Even more pernicious is another tendency: the advocates draw conclusions that appear to be supported by voluminous exhibits, but are not borne out when the evidence is reviewed with more deliberation and more careful rebuttal than is possible in hasty hearings on ex parte motions. This poisoning of the well may or may not be deliberate, but it can taint the court's view of a lawyer, a party, or both.
>
> ***
>
> When an ex parte motion is filed, it is hand-delivered immediately from the clerk's office to the judge. The judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will

> be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed.
>
> ***
>
> What showing is necessary to justify ex parte relief? First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.
>
> To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial. A sliding scale is used to measure the threat of prejudice. If the threatened prejudice would not be severe, then it must be apparent that the underlying motion has a high likelihood of success on the merits. If drastic harm is threatened, then it is sufficient to show that there are close issues that justify the court's review before the party suffers the harm. *Mission Power*, 883 F.Supp.488, 490-495.

## III. PLAINTIFF DOES NOT MEET THE REQUIRED STANDARD FOR EX PARTE RELIEF

Plaintiff claims that if she "is not permitted to bring the July 17-20, 2026 state

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

court declarations, the related hospitalization discrepancy, and the clarification regarding Exhibit B, to the Court's attention before that ruling, Plaintiff will have no further opportunity to do so, and the Court will decide the Motion for Sanctions without evidence and clarification that bears directly on the credibility issues the motion already raises." *See* Plaintiff's Ex Parte Application [ECF Doc., p. 8:16-20].

" Plaintiff claims the sought relief "Causes Defendant No Unfair Prejudice" because her "two proposed supplemental filings are short" yet we are now approaching TRIPLE DIGITS on the Court's Docket and there is no reason for granting any relief on an ex parte basis as Plaintiff has had this very motion apparently contemplated for at least a week if not longer and now she simply claims "Defendant will retain the opportunity to file a response no later than 3:00 p.m. on the first business day following service of this application," which is precisely the problem so accurately described by the Court in the *Mission Power* case.

Simply stated, Plaintiff's request for ex parte relief is based on blatant mischaracterizations of the record in the State Court Action (which is not relevant to the issues before this Court in connection with the motions previously set for hearing on July 27, 2026) and is premised on what can only be best described as irrational ad hominem attacks on defense counsel for Farmers direct which are both scurrilous and unwarranted. *See* Bernard Decl., Paragraphs 1-18. "'Ad hominem arguments, of course, constitute one of the most common errors in logic: Trying to win an argument by calling your opponent names . . . only shows the paucity of your own reasoning.' " *Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 763, quoting *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1430.

## IV. CONCLUSION

As Judge Rymer warned, "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have . . . . *In re Intermagnetics America, Inc.*, supra, 101 B.R. at 193. Notably, Plaintiff has not –

because she cannot – justify her request for ex parte relief as it relates to her improper attempt to belatedly supplement the record in support of her frivolous Motion for Sanctions against Farmers Direct. Accordingly, Plaintiff's Ex Parte Application must be denied and sanctions should be imposed against her for misuse of the ex parte application process per this Court's standing order and the rationale set forth in *Mission Power Engineering Company* and *In re Intermagnetics America, Inc.*

Dated: July 24, 2026

GORDON REES SCULLY MANSUKHANI, LLP

BY Michelle R. Bernard

Michelle R. Bernard
Kelly Fitzgerald Canby
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101