MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUNA D'SOL,

Plaintiff,

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

Case No. 2:25-cv-10938-SVW-ASx

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

Judge: Hon. Stephen V. Wilson
Date: September 28, 2026
Time: 1:30 p.m.
Courtroom: 10A
Trial Date: October 13, 2026; 9:00 a.m.
FSC: October 5, 2026; 3:00 p.m.

Filed Concurrently With: Notice of Motion and Motion for Summary Judgment Or In The Alternative Partial Summary Judgment; Separate Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Kelly Fitzgerald Canby; Declaration of David A. Corona; Declaration of Paul Hamilton; Declaration of Michael Saskor; Declaration of Donnie Means; Declaration of Bryce Spradling; Declaration of Elisa Martinez; and [Proposed] Order

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Complaint Filed: August 21, 2025

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 8

II. FACTUAL BACKGROUND ........ 9

A. The Property And The Incident ........ 9

B. The Policy ........ 10

C. The Claim ........ 11

1. Despite Reasonable Suspicions, Farmers Direct Accepts Coverage for the Loss ........ 11

2. Farmers Direct Paid Plaintiff Almost $27,000 On This Questionable Claim Yet Plaintiff Sought $90,000 More ........ 12

D. Plaintiff's Bad Faith Lawsuit And Removal To Federal Court ........ 15

E. Plaintiff's Failure To Respond To Requests For Admissions ........ 17

F. Unrefuted Evaluation Of The Reasonableness Of Farmers Direct's Handling Of The Claim And Sufficiency Of Payments To Plaintiff ........ 17

III. LEGAL ARGUMENT ........ 19

A. Summary Judgement Is Warranted By Plaintiff's Deemed Admissions Per Rule FRCP 36 ........ 19

B. Summary Judgment Standard ........ 19

C. Plaintiff's Breach Of Contract Claim Lacks Evidentiary Support ........ 20

1. Farmers Direct Paid The Reasonable Cost To Restore The Dwelling To Pre-Loss Condition, If Not Substantially More ........ 21




Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

2. Farmers Direct Paid Plaintiff The Reasonable Cost To Replace All Her Allegedly Stolen Items ................................. 22

D. Plaintiff's Bad Faith Claim Is Without Merrit.................................... 23

E. Plaintiff's Unruh Civil Right Act Claim Is Without Merit................. 28

F. The Punitive Damage Claim Must Be Dismissed Because Plaintiff Has No Evidence Of Any Oppression, Fraud Or Malice ..... 30

IV. CONCLUSION ........................................................................... 32


Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Allstate Ins. Co.*, 187 F.Supp.2d 1219 (C.D. Cal. 2002) .......... 25, 31

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .......... 19

*Arcadia, California Ltd. v. Herbert*, 54 Cal.2d 328 (1960) .......... 30

*Arutyun Darakchyan v. State Farm General Ins. Co.*, Case No. 2:25-cv-03880-CAS-AJRx, 2026 WL 2336385 (C.D. Cal. August 11, 2026) .......... 26, 31

*Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112 (2001) .......... 30

*Bax v. Doctors Medical Center of Modesto, Inc.*, 393 F.Supp.3d 1000 (E.D. Cal. 2019) .......... 28

*Bernstein v. Kemper Independence Insurance Company*, 670 F.Supp.3d 1018 (E.D. Cal. 2023) .......... 30

*Brousseau v. Jarrett*, 73 Cal.App.3d 864 (1977) .......... 30

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir. 1987), *cert denied* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) .......... 23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .......... 19

*Chateau Chamberay Homeowners' Assn. v. Assoc. Intern. Ins. Co.*, 90 Cal.App.4th 335 (2001) .......... 25

*Chodos v. Ins. Co. of N. America*, 126 Cal.App.3d 86 (1989) .......... 31

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Duronslet v. County of Los Angeles*,
266 F.Supp.3d 1213 (C.D. Cal. 2017) ........ 28, 29

*F.T.C. v. Medicor LLC*,
217 F.Supp.2d 1048 (C.D. Cal. 2002) ........ 18

*Feldman v. Allstate Ins. Co.*,
822 F.3d 660 (9th Cir. 2003) ........ 26

*First v. Allstate Ins. Co.*,
222 F.Supp.2d 1165 (C.D. Cal. 2002) ........ 23

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*,
185 Cal.App.3d 1149 (1986) ........ 30

*Globe Indem. Co. v. Superior Court*,
6 Cal.App.4th 725 (1992) ........ 25

*Grieves v. Superior Court*,
157 Cal.App.3d 159 (1984) ........ 30

*Guebara v. Allstate Ins. Co.*,
237 F.3d 987 (9th Cir. 2001) ........ 23

*In People v. Zarazua*,
85 Cal.App.5th 639 (2022) ........ 28, 29

*Kerrigan v. Allstate Ins. Co.*,
543 F.Supp.3d 843 (C.D. Cal. June 10, 2021) ........ 24

*Keshish v. Allstate Ins. Co.*,
959 F.Supp.2d 1226 (C.D. Cal. 2013) ........ 23, 27

*Love v. Fire Ins. Exchange*,
221 Cal.App.3d 1136 (1990) ........ 23

*Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of America*,
Case No. CV 12-09510 MMM (PLAx), 2013 WL 12139353 (C.D. Cal. November 29, 2013) ........ 27

*Mock v. Michigan Mut. Ins. Co.*,
4 Cal.App.4th 306 (1992) ........ 30


Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Mohn v. Catlin Ins. Co.*,
Case No. 5:21-cv-01014-FWS-KK, 2023 WL 4680794 (C.D. Cal. May 3, 2023) .......... 27

*Morris v. O'Reilly Automotive Stores, Inc.*,
Case No.: ED CV 21-1060-FWS-KK, 2022 WL 21737781 (C.D. June 10, 2022) .......... 18, 28

*O'Campo v. Hardisty*,
262 F.2d 621 (9th Cir. 1958) .......... 19

*Oasis West Realty, LLC v. Goldman*,
51 Cal.4th 811 (2011) .......... 20

*Opsal v. United Services Automobile Assn.*,
2 Cal.App.4th 1197 (1991) .......... 25

*Radical Investments Ltd. v. Good Vibrations Entertainment LLC*,
Case No. 2:22-cv-02752-SVW-AFM, 2023 WL 237287 (C.D. Cal. February 10, 2023) .......... 20

*Singh v. Amguard Ins. Co.*,
Case No. CV 16–0618 PSG (AJWx), 2017 WL 2423795 (C.D. Cal. February 17, 2017) .......... 23

*Soremekun v. Thrifty Payless, Inc.*,
509 F.3d 978 (9th Cir. 2007) .......... 19

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 22

*Stars and Bars, LLC v. Travelers Casualty Ins. Co. of America*,
Case No. SACV 16-01397-CJC (SSx), 2018 WL 6016993 (C.D. Cal. September 17, 2018) .......... 31

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1 (1995) .......... 23

**Statutes**

28 U.S.C. § 1332(a) .......... 16

28 U.S.C. § 1441(a) .......... 16

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

28 U.S.C. § 1446 .......... 16
Cal. Civ. Code § 51 .......... 16, 28
Cal. Civ. Code § 51(b) .......... 28
Cal. Civ. Code § 51(e)(5) .......... 28
Cal. Civ. Code § 52(a) .......... 28
Cal. Civ. Code § 3294 .......... 16, 30, 31
Cal. Civ. Code § 3294(b) .......... 31
Cal. Ins. Code § 790.03(h) .......... 15

**Rules**

Fed. R. Civ. P. 26(f) .......... 17
Fed. R. Civ. P. 36 .......... 18
Fed. R. Civ. P. 36(a)(3) .......... 18, 28
Fed. R. Civ. P. 36(b)(1) .......... 8, 17
Fed. R. Civ. P. 56(c) .......... 19
Fed. R. Civ. P. 56(e) .......... 19

**Other Authorities**

Cal. Code Regs. tit. 10, § 2698.30 .......... 24

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# I. INTRODUCTION

This first-party insurance coverage dispute arises from an alleged burglary/vandalism incident at the Palm Springs residence of Pro Per Plaintiff Luna D'Sol ("Plaintiff") on June 3, 2024 ("Incident" or "Loss") and Plaintiff's resulting insurance recovery claim tendered under a homeowner's policy ("Policy") issued by Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") to named insured "Julio Ravada" (*i.e.* Plaintiff's former identity/alias/alter ego). While Farmers Direct promptly accepted coverage for the Loss and issued multiple payments to Plaintiff consistent with the terms of the Policy, she contends that additional amounts are owed to return the residence to its pre-Loss condition which Farmers Direct has unreasonably declined to pay. Relevant to Plaintiff's pending "bad faith" lawsuit, Plaintiff has refused to participate in discovery and has failed to comply with various scheduling order deadlines. Instead, as reflected by the voluminous ECF docket in this matter, Plaintiff has singularly focused her efforts on deluging Farmers Direct and this Court with meritless motions seeking to challenge diversity jurisdiction. Simply stated, enough is enough.

Given the self-executing sanction of Rule 36(b)(1) of the Federal Rules of Civil Procedure ("Rule 36(b)(1)"), Plaintiff's claims against Farmers Direct cannot survive summary judgment given her failure to timely respond to Farmers Direct's requests for admission coupled with her related failure to designate any experts on the threshold issues in dispute – scope of covered Loss-related damages, reasonable costs of repairs and insurance industry standard of care regarding claims handling best practices. Setting aside the issue-preclusive effect of Plaintiff's deemed admissions and lack of experts, in the event this Court is inclined to consider the record evidence on the merits in ruling on Farmers Direct's request for summary judgment, the undisputed facts show that: (1) Plaintiff cannot establish that Farmers Direct's breached any contractual obligation to pay benefits owed to Plaintiff under

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

the Policy for covered damage relating to the Incident; (2) Plaintiff's cause of action against Farmers Direct for "bad faith" is without merit; (3) Plaintiff cannot establish any acts of intentional discrimination by Farmers Direct so the Unruh Civil Rights Act claim fails as a matter of law; and (4) punitive damages are not recoverable because Plaintiff cannot meet her burden of presenting clear and convincing evidence establishing that Farmers Direct intended to deliberately harm Plaintiff in conscious disregard of her rights.

For the reasons explained below, Farmers Direct respectfully requests the Court grant summary judgment in its favor and dismiss all causes of action against it in Plaintiff's First Amended Complaint.

## II. FACTUAL BACKGROUND

### A. The Property And The Incident

On or about June 4, 2024, Plaintiff notified Farmers Direct that a burglary and vandalism incident had occurred at her residence located at 2275 E. Belding Drive, Palm Springs, CA 92262 ("Property") on or about June 3, 2024 and sought coverage under the Policy. (Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Farmers Direct's Motion for Summary Judgment Or In The Alternative, Partial Summary Judgment, Uncontroverted Fact ("SUF"), SUF 21). The Property is a one story single family home built in 1955. (SUF 25) Plaintiff alleges that "[i]ntruders forced and broke the bathroom window/frame, damaging stucco . . . and entered the dwelling, stealing electronics, artwork, and items of sentimental value and irreplaceable memorabilia. The window and surrounding finishes were left compromised and could not be secured, rendering parts of the home unsafe and uninhabitable; interior wet areas could not be safely occupied or repaired without tear-out and finish restoration." FAC, ¶ 9 [ECF Doc. 23-1, at p. 148 (emphasis in original)].

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**B. The Policy**

Relevant to the Claim, Farmers Direct issued Homeowners Policy No. 3872340940 to named insured "Julio Ravada" FAC, ¶¶ 1, 9. (SUF 1-2). The "residence premises" covered by the Policy is located at 2275 Belding Drive in Palm Springs Ca 92262 (*i.e.* the Property). (SUF 1).

Subject to it terms and conditions, the Policy's "COVERAGE A – DWELLING" provision provides coverage for "sudden and accidental direct physical loss or damage" to the Dwelling on the Property unless excluded. (SUF 4). The Policy's "COVERAGE C – PERSONAL PROPERTY" provides similar coverage for personal property but also includes the additional requirement that the damage or loss must be caused by certain "broad named perils" and not otherwise excluded. (SUF 5). With regard to the Coverage C, those "SECTION 1 – BROAD NAMED PERILS" include certain specified causes of loss "for sudden and accidental direct loss" including, "Vandalism or Malicious Mischief" [1] and "Theft, or attempted theft, including loss of property from a known place when it is likely that a theft has occurred" subject to the definitions and other terms, conditions and exclusions in the Policy.[2] (SUF 4 – SUF 7). Per "SECTION 1 – ADDITIONAL COVERAGES" the Policy also provides "Loss of Use" coverage including "Additional Living Expenses," subject to the terms of the Policy. (SUF 8 – SUF 9).

Relevant to the Claim, the Policy's "SECTION I - LOSSES WE DO NOT COVER" includes exclusions for (SUF 10): A "Intentional Loss" (SUF 11); D. "Water damage" (SUF 12); F. "Ordinance or Law, meaning enforcement of any

[1] "Vandalism" is generally defined as intentional damage to someone's property without their consent. *See* Webster's Dictionary.

[2] "We do not pay for loss caused by theft: A. if committed by you or by any person regularly residing on the residence premises; B. in or from a dwelling under construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or C. from any part of the residence premises rented by you to others." Policy, at Section I, 9. (SUF 7).

ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy" (SUF 13 – SUF 14); H. "Neglect" (SUF 15). Condition B of the Policy requires the following: "Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures." (SUF 16). The Policy "does not include Building Code Upgrade Coverage." (SUF 14).

**C. The Claim**

**1. Despite Reasonable Suspicions, Farmers Direct Accepts Coverage for the Loss**

Senior Fields Claims Representative Donnie Means ("Means") was assigned to handle Plaintiff's insurance recovery claim (Claim No. 7007678692-1) ("Claim"). (SUF 23). After some initial communication delays not caused by Farmers Direct (SUF 24), Means conduct an inspection of the Property on June 6 and photographs were taken. (SUF 26-31) There were a number of unusual and potentially suspicious circumstances observed by Means, including discrepancies in Plaintiff's initial report as compared to the observed damage at the Property (SUF 32), questionable point of alleged entry by the "intruders" (SUF 34), potentially staged water leaks in the residence in the form of odd puddles without any apparent leakage source (SUF 28, SUF 37) and Plaintiff's apparent active use of narcotics during the inspection (SUF 35), among many others. (SUF 22, 28, 30, 36) However, even assuming that a "vandalism" incident occurred at the Property as Plaintiff alleged, the observed damage to the Property was relatively minor and primarily cosmetic or superficial in nature and did not affect the structural integrity of the Property nor the overall habitability of the Property. Corona Decl., ¶ 8; (SUF 29).

Plaintiff's suspicious behavior continued after the initial Property Inspection and repeated submission of the Proof of Loss in unsigned and/or incomplete format (SUF 39 – 41), delays in providing a copy of the Police Report (SUF 39 – 41) and a

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

large escalation in scope of claimed damages (*i.e.*, from $18,000 to almost $40,000) from once the completed and verified signed Proof of Loss form was finally sent. (SUF 41 – 42). Plaintiff had also made prior claims under the Policy for alleged theft at her residence in July of 2023 and January 2024, and another recent water loss claim as well. (SUF 22). Accordingly, on or about August 9, 2024, the Claim was referred to coverage counsel to obtain an Examination Under Oath which was eventually completed on September 27, 2024, after earlier scheduled EUOs were cancelled as result of Plaintiff's evasive behaviors. (SUF 43) Despite a number of reasonable suspicions, Farmers Direct ultimately decided to accept coverage for the Claim as a covered cause of loss under the Policy. (SUF 56).

On or about October 29, 2024, Farmers Direct issued a payment to Plaintiff on the Claim in an amount totaling $16,393.21 (which included $12,488.20 as the estimated actual cash value to replace Plaintiff's personal property subject of the Claim, less the Policy's deductible and recoverable depreciation and $3,905.01 as the estimated cost to repair or replace property damages to her residence as result of the Incident). (SUF 57) Farmers Direct then closed the filed for the Claim, but Plaintiff later submitted a series of supplements to her Claim which as explained further below Farmers Direct addressed reasonably and fairly and made several additional payments to Plaintiff. (SUF 66, 71, 74, 77-79, 82-84).

### 2. Farmers Direct Paid Plaintiff Almost $27,000 On This Questionable Claim Yet Plaintiff Sought $90,000 More

Notwithstanding the suspicious nature of the Claim and amount of alleged Loss-related damage, based on the available information, Farmers Direct issued payments to Plaintiff totaling $26,986.00 (SUF 84) as follows:

- $16,393.21 on October 29, 2025 ($3,905.01 for Coverage A - Dwelling and $12,488.20 for Coverage C - Personal Property). (SUF 57-59, SUF 95-98).



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

- $1,546.91 on November 12, 2024 for recovered depreciation of personal property she allegedly replaced. (SUF 66).
- $7,406.20 on May 14, 2024, which included $3,910.20 (Coverage A – Dwelling) for the replacement of her entire electrical panel (which had a very questionable connection to the alleged Incident and/or was not required by the Policy which excludes code upgrade coverage) (SUF 84, 87-88) and $3,496.00 for Coverage C – Personal Property as a supplemental payment for her allegedly stolen "Luke and Ivey" painting which accepted Plaintiff's claimed replacement cost value of $8,200. (SUF 61-63.).
- $1,381.43 on May 28, 2025 (Coverage A – Dwelling) for additional drywall and stucco work to the area around her bathroom window where the intruders allegedly entered. (SUF 78).
- $232.93 on July 8, 2025 for recovered depreciation of personal property. (SUF 71).
- $26.25 on July 10, 2025 for recovered depreciation of personal property. (SUF 71). These additional recoverable depreciation payments were made after Plaintiff submitted a batch of unverified sale receipts on or about November 14, 2024 for items where she had already cancelled the orders and/or obtained refunds, yet Farmers Direct ultimately decided to let her re-submit her claim. (SUF 67-70). [3]

[3] With regard to the issue of recoverable depreciation, from November 5, 2024 through July 10, 2025, Farmers Direct and Plaintiff exchanged many communications dealing with her claim for recoverable depreciation in connection with the personal property claim but much the documentation Plaintiff submitted for the recovery of withheld depreciation could not be verified (and in many instances it was confirmed that Plaintiff actually cancelled her orders for replacement items after obtaining receipts for submission to Farmers Direct, including on her Dyson Vacuum order and a "Brillian" switch audio component, among others). (SUF 65 – 67) Although Farmers Direct initially denied Plaintiff's request for additional recoverable depreciation on the grounds of material misrepresentation, Farmer Direct later made a business decision to retract that denial and allow Plaintiff another opportunity to provide appropriate and verifiable documentation within the time



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

On or about January 28, 2025, Plaintiff allegedly disclosed her "gender confirmation treatment" and her purported "female" name change to Farmers Direct buried within a larger 18-page "FAX" transmission directed to "farmers insurance" from "julio ravada" which did not disclose any preferred gender identifiers and did not mention the name "Luna" at all (this communication was signed as from "Julio Ravada"). (SUF 109-111). On or about February 7, 2025, as part of a 9-page "FAX" transmission she also included the following small "P.S." notation: "Please address me as Luna (she / her / hers)." (SUF 113). However, Plaintiff continued to use the name "Julio Ravada," "Julio R" and/or "Julio" in emails and other communications with Farmers Direct regarding the Claim. (SUF 114). Importantly, Plaintiff never asked Farmers Direct in writing to reform the Policy and change the name of the listed "Named Insured" from "Julio R. Ravada" to "Luna D'Sol." (SUF 3). To this day, Plaintiff continues to use her former "male" identifying email address of "jravada@icloud.com" as reflected in the ECF docket (SUF 112).

On or about May 9, 2025, Plaintiff disclosed that she sought a "reassessment" of the Claim and was seeking payment for a long list of additional items and claimed damages which she attributed to the Incident but her request was largely barred by the plain language of the Policy and/or was obviously inflated. (SUF 74, 14). For example, Plaintiff sought code upgrade coverage (which her Policy does not have) for a "Wall-Hung Toilet," which according to Plaintiff "flushes" at a rate "exceeding California's 1.28 GPF let limit under CalGreen and CEC codes" and because Plaintiff's toilet flushed too hard somehow Farmers Direct was allegedly also required to recoat "approx. 2,600 sq. ft" of "continuous epoxy flooring throughout" her entire home. (SUF 74). On or about May 12, 2025 (nearly 11 ½ months after the reported date of loss and nine months after Plaintiff filed her Proof of Loss with

---

limits permitted by the Policy and two additional payments were made to Plaintiff for recoverable depreciation on personal property items in July of 2025. (SUF 66, SUF 70-73, SUF 18-20).



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Farmers Direct), Plaintiff submitted a supplemental claim in the approximate amount of $90,000 to essentially remodel a portion of her house.[4] (SUF 77.)

On May 23, 2025, Senior Field Claims Representative Means returned to the Property to conduct a reinspection and again took photographs and evaluated claimed water damages and leaks but no evidence connecting any alleged leaks to the Incident could be found. (SUF 76-78) Thereafter, on or about May 28, 2025, Farmers Direct issued an additional payment to Plaintiff on the Claim in the amount of $1,381.54 (as noted above) related to certain stucco, drywall and painting requested by Plaintiff but the remainder of Plaintiff's supplemental claims for property damages (not already paid) were denied. (SUF 75-78). On or about June 4, 2025 and a year after the Incident, Plaintiff reported another water intrusion to Farmers Direct which she claimed resulted to the Incident and Farmers Direct advised Plaintiff to file a separate claim to address any new water damage issues. (SUF 79-81, SUF 93) At or around the same time, Plaintiff provided a copy of her "Partial Home Remodel" estimate dated May 19, 2025 prepared by "Progressive Home Remodeling" and the "Scope of Work" is described as a "Partial Home Renovation." (SUF 82-83, SUF 89). Farmers Direct evaluated her "renovation" estimate and denied that aspect of her Claim as unrelate to the initial Loss. (SUF 90-92, SUF 76-78).

**D. <u>Plaintiff's Bad Faith Lawsuit And Removal To Federal Court</u>**

On October 16, 2025, Plaintiff filed her First Amended Complaint in state court and alleged the following separate causes of action against Farmers Direct: (1) Breach of Contract; (2) Bad Faith; and (3) Violation of Insurance Code § 790.03(h) (but this Third Cause of Action was subsequently dismissed by this Court been [ECF

---

[4] Specifically, sought the following additional repairs: Stucco/Paint: $18,000; Code water line relocation: $3,000.00; Toilet wall/anchoring and bath restoration: $4,400 + $16,000; Kitchen Island demo/rebuild: $9,000; Whole Home Epoxy: $46,000 - $52,000 – making Plaintiff's Total Supplemental Claim: $87,400 - $93,400. (SUF 77; *see also* SUF 74-75, SUF 82).



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Doc. 33]).[5] Plaintiff also seeks to recover damages for alleged "identity-based coercion" for "misgendering" (as Plaintiff is now known as "Luna D'Sol"/she/her and not "Julio Ravada"/he/him which is the name that appears on the Policy) and/or for alleged unlawful discrimination in violation of the Unruh Civil Rights Act (California Civil Code § 51). [ECF Doc. 23-1, at pp. 157-158, 178]. Plaintiff claims that the total sought damages "are not less than $113,000." [ECF Doc. 23-1, at p. 169]. Plaintiff also alleges a wide array of other alleged damages. [6]

On November 14, 2025 and pursuant to 28 U.S.C. sections 1332(a), 1441(a), and 1446, Farmers Direct timely filed a Notice of Removal [ECF Doc. 1, 5] and removed this action to federal court on grounds of complete diversity of citizenship between Plaintiff, a citizen of California and resident of Los Angeles County (*see* FAC, ¶¶ 3-4) on the one hand, and Farmers Direct, an underwriting entity domiciled in Rhode Island, on the other hand. [ECF Docs. 1 and 5]. On December 5, 2025, Plaintiff filed her first Motion to Remand Case to State Court [ECF Doc. 14] ("Initial Motion To Remand") which the Court denied on January 26, 2026 [ECF Doc. 33].

---

[5] Plaintiff's initial Complaint filed in State Court named "Farmers Insurance Exchange" as a defendant, not the underwriting/insuring entity that issued the Policy which is defendant Farmers Direct Property and Casualty Insurance Company. [ECF Doc. 80-1, at p. 2-3]. This information was shared with Plaintiff by defense counsel via email on or about October 14, 2025 and Plaintiff responded via email on October 15, 2025 and shared her intention to file an amended complaint which she the next day on October 16, 2025 as Los Angeles County Superior Court Case No. 25VECV04713 which now properly names "Farmers Direct Property and Casualty Insurance Company" as the Defendant instead of "Farmers Insurance Exchange." [ECF Doc. 80-1, at p. 4-5].

[6] Plaintiff also seeks additional damages and/or alleged benefit purportedly due under the Policy, including for "Ordinance or Law increased costs," Additional Living Expense (ALE) (SUF 102) an "Order restoration and payment for items previously acknowledged and later reduced to $0.00—including Painting (Bercier) $8,200 and "No Face" memorabilia $331.55—for a total shortfall of $8,531.55" (SUF 63)an order requiring "payment of the licensed contractor's scope reasonably flowing from covered replacements and tear-out-presently estimated at $87,400-$93,400 (e.g., exterior stucco/paint; code water-line relocation; toilet wall/anchoring & bathroom restoration; kitchen island demolition/rebuild; whole-home epoxy re-installation)," consequential damages, "Bad-Faith Tort Damages," the Unruh Act penalties noted above, "Punitive and Exemplary Damages," under Civil Code § 3294, "Brandt Attorney' Fees," Declaratory Relief, "Pre- and Post-Judgment Interest," Cost of Suit," among other things. [ECF Doc. 23-1, at pp. 176-178].

However, Plaintiff has been essentially challenging that decision in various ways ever since. [ECF Docs. 14; 25, 30, 31, 39, 40, 44, 46, 48, 50-52, 54-61, 63, 64, 72, 73, 77, 79, 83, 87, 88, 93, 95, 96, 97, 98, 99, 103, 104, 105, 106, 107, 108, 109, 110, 112, 113, 114, 115].

### E. Plaintiff's Failure To Respond To Requests For Admissions

After the Court denied her Renewed Motion To Remand on or about June 8, 2026 and set this case for trial on October 13, 2026, Farmers Direct propounded a set of written discovery on July 2, 2026, which included a Requests For Admissions ("RFAs") which were due on August 3, 2026. Plaintiff failed to respond to the RFAs or to any discovery at all served by Farmers Direct.[7] (SUF 121). Accordingly, this Motion relies in relevant part on Farmers Direct's Requests For Admissions (Set One) which are now deemed admitted given the self-executing sanction under Rule 36(b)(1) for failing to respond.

### F. Unrefuted Evaluation Of The Reasonableness Of Farmers Direct's Handling Of The Claim And Sufficiency Of Payments To Plaintiff

Farmers Direct timely served its Expert Witness Disclosures on July 15, 2026. (SUF 122). Plaintiff failed to serve any expert witness disclosures and failed to designate any rebuttal experts. (SUF 122). Specifically, Farmers Direct retained Paul Hamilton (Property & Casualty Claim Consultant) to opine on insurance industry custom and practice as it relates to the adjustment of Plaintiff's Claim. *See* Declaration of Paul Hamilton ("Hamilton Decl.") submitted herewith at ¶¶ 1-30. (SUF 106, SUF 122). Relevant to this Motion, Mr. Hamilton concluded that Farmers

[7] Farmers Direct is filing a Motion for Terminating Sanctions concurrently herewith given Plaintiff's well-documented failure to participate in the discovery process, including refusal to appear at her noticed deposition, refusal to provide any alternative dates of availability, refusal to adhere to agreements among the parties made at the Rule 26(f) Conference regarding the exchange of Initial Disclosure Documents, unfounded and bazaar objections to Farmers Direct's pursuit of third party discovery, including through ex parte application to seek additional sanctions against defense counsel, refusal to meet and confer, bad faith conduct and ruses under the guise of meeting and conferring, among other things.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Direct's processing of Ms. D'Sol's Claim was in compliance with the claims handling standards promulgated by the State of California. (SUF 73, 94, 106). Likewise, Mr. Hamilton opined that Farmers Direct's resolution of the underlying Claim was reasonable under the circumstances and consistent with the terms and conditions of Farmers Direct's Policy. (SUF 73, SUF 94, SUF 106).

Relevant to Plaintiff's contention that her Claim was underpaid, Farmers Direct retained David A. Corona, Executive Manager of MKA International, Inc. ("MKA") (formerly Madsen, Kneppers & Associates, Inc.) to opine on the reasonable cost to restore the Property to pre-Incident condition and the sufficiency of the payments made by Farmers Direct to achieve that purpose. *See* Declaration of David Corona ("Corona Decl.") submitted herewith at ¶¶ 1-18. (SUF 96-98, SUF 122). Mr. Corona concluded that Farmers Direct has paid Plaintiff more than the reasonable value to restore the Property to the pre-Incident condition. (SUF 96) Relevant to Plaintiff's demand for ALE benefits, Mr. Corona concluded that the Property was not rendered uninhabitable as result of the Incident. (SUF 104). Likewise, the subsequent claim submissions made by Plaintiff in May and June of 2025 have no relationship to the Incident whatsoever according to Mr. Corona. Corona Decl., ¶¶ 16-17.

Plaintiff failed to designate any affirmative experts and did not designate any experts to rebut Mr. Hamilton's report and/or Mr. Corona's report. (SUF 122.) As such, the conclusions of both Mr. Hamilton and Mr. Corona (as well as the opinions and conclusions of Farmers Direct's non-retained experts such as Donnie Means and Mike Saskor) are unrefuted and unrebutted.[8]

[8] Additionally, Plaintiff also failed to designate any experts to rebut the opinions to be offered by Farmers disclosed "NON-RETAINED EXPERTS," including the opinions offered by Senior Field Claims Representative Donnie Means, General Adjuster Michael Saskor and Property Theft Supervisor Bryce Spradling who handled the Claim on behalf of Farmers Direct and also include opinions related to the valuation of the reasonable cost to replace the personal property subject of Plaintiff's claim and the appropriateness of their methodology and tools in doing so.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## III. LEGAL ARGUMENT

### A. Summary Judgement Is Warranted By Plaintiff's Deemed Admissions Per Rule FRCP 36

"Failure to timely respond to requests for admissions results in automatic admission of the matters requested." *F.T.C. v. Medicor LLC*, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002); Fed. R. Civ. Proc. 36(a)(3). Unanswered requests for admissions may be relied on as the basis for granting summary judgment." *Morris v. O'Reilly Automotive Stores, Inc.,* Case No.: ED CV 21-1060-FWS-KK, 2022 WL 21737781 *4 (C.D. June 10, 2022) (emphasis added); *O'Campo v. Hardisty*, 262 F.2d 621, 623 (9th Cir. 1958) (affirmed district court's decision granting defendant motion for summary judgment as result of deemed admissions). Here, Plaintiff failed to respond to Farmers Direct's Requests For Admissions and thus those matters are deemed admitted. (SUF 121.)

### B. Summary Judgment Standard

Summary judgment is proper where the pleadings and evidence before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2442, 91 L.Ed.2d 265 (1986). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

case." *Soremekun*, 509 F.3d at 984, citing *Celotex*, 477 U.S. at 323.

Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### C. Plaintiff's Breach Of Contract Claim Lacks Evidentiary Support

Under California law the "elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011); *see also Radical Investments Ltd. v. Good Vibrations Entertainment LLC*, Case No. 2:22-cv-02752-SVW-AFM, 2023 WL 237287 *10 (C.D. Cal. February 10, 2023).

There are two primary components of Plaintiff's breach of contract cause of action: (1) breach of contract as to the property damage claim (*i.e.*, where Plaintiff was paid more than $9,000 to repair the Dwelling (Coverage A) as result of the alleged "vandalism") (SUF ___ - SUF ___); and (2) breach of contract as to the personal property claim (*i.e.*, where Plaintiff has been paid more than $17,000 to replace her Personal Property (Coverage C) as result of the alleged "theft." (SUF ___ - SUF ___.) Despite the many suspicious aspects to Plaintiff's Claim, Farmers Direct nevertheless paid her more than $26,000 on the Claim. (SUF ___ - SUF ___.) However, as explained below and as evidenced by Plaintiff's "deemed" admission on this issue, all aspects of Plaintiff's breach of contract claim must fail as she lacks any competent evidence to support her allegations that additional funds are

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

purportedly owed to her as result of the Incident in the first instance.[9]

**1. Farmers Direct Paid The Reasonable Cost To Restore The Dwelling To Pre-Loss Condition, If Not Substantially More**

Plaintiff contends (without any factual support whatsoever) that she is allegedly entitled to an additional $90,000.00 in repairs purportedly arising from Incident based upon a "Partial Home Remodeling" Estimate prepared by her alleged contractor approximately 11 months later. (SUF 74, 77, 82.) The reinspection of the Property on May 23, 2024 and the opinions of Farmers Direct's experts confirm that these claimed damages (if any at all) have no reasonable or even possible relationship to the June 3, 2024 Incident whatsoever. Corona Decl., ¶¶ 16-17; (SUF 75, 83, 90-93, 95-98.) Moreover, the primary basis for Plaintiff's supplement claim submission was "Code Compliance" but the Policy does not include code upgrade coverage. (SUF 14.) Additionally, Plaintiff's reports of alleged new water leaks on June 5, 2025 more than a year after she filed her alleged burglary and vandalism Claim on June 4, 2024 cannot be reasonably attributed to the Incident as confirmed by Farmers Direct's retained and non-retained experts and Plaintiff was properly advised to file a new claim for those issues. Corona Decl., ¶ 17; Hamilton Decl., ¶ 21; Means Decl., ¶¶ 17, 30; (SUF 79 - 81.) Accordingly, Farmers Direct's payment of $9,196.64 to Plaintiff was more than sufficient to effectuate any and all reasonable and necessary repairs needed to address the alleged vandalism-related property damage allegedly caused by the June 2024 Incident and return the residence at the Property to its pre-loss condition. Corona Decl., ¶¶ 13-14.

[9] With regard to Plaintiff breach of contract claim related to "ALE Refusal," Plaintiff also cannot establish that Farmers Direct breached the Policy regarding the handling of ALE, because: (1) the Property was not rendered uninhabitable as result of the Incident; (2) Plaintiff never submitted any documentation to support and ALE Claim; and (3) Plaintiff stated that she did not want to go to a hotel after the incident. *See* Corona Decl., ¶ 15; Hamilton Decl., ¶ 17; (SUF __ -- SUF ___); FAC, ¶ 35.a [ECF Doc. 23-1, p. 167].

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

### 2. Farmers Direct Paid Plaintiff The Reasonable Cost To Replace All Her Allegedly Stolen Items

Farmers Direct has paid Plaintiff a total of $17,789.36 for personal property loss Claim arising from alleged Incident which is more than sufficient to cover the reasonable replacement cost of all allegedly stolen personal property items subject of the Claim as established by Farmers Direct's non-retained expert Michael Saskor. Saskor Decl., ¶¶ 21-27; (SUF 33, 59, 84.) As noted above, this opinion is undisputed and unrebutted due to Plaintiff's failure to respond to discovery or designate any experts. (SUF 122.)

Included within that amount noted above are Farmers Direct's payments to Plaintiff in the amount of $8,958.50 for the allegedly stolen "Ivey and Luke" painting by Mark Bercier and over $360 for her "No Face" figurine which are the reasonable replacement costs for those items, if not substantially more. Saskor Decl., ¶¶ 10.b, 25 and n.6; (SUF 54, 55, 60.) Plaintiff cannot raise any genuine issues of fact by her belated and unsupported allegations that Farmers Direct allegedly paid her $0 for the "Ivy and Luke" painting and/or $0 for the "No Face" Memorabilia figurine and there is no factual support for Plaintiff's allegation that Farmers Direct "unilaterally reduced to $0 two previously acknowledged items" thereby "causing additional shortfall of $8,531.55 and a significant, unexpected financial gap . . ." FAC, ¶¶ 13.d 27 [ECF Doc. 23-1, pp. 154, 162](SUF 60-63). In this respect, Plaintiff's denial of receipt of almost $9000 in funds from Farmers Direct and sought double recovery for these items, is pursued in bad faith as she is well aware that she has been paid and is exploiting the inadvertent use of an outdated worksheet showing these items at $0 that was sent to her after she received these fund. (SUF 62, 63.) For example, when Plaintiff submitted her supplemental claim seeking additional payments from Farmers Direct for the painting, she admitted that Farmers Direct already paid her the alleged purchase price for this painting **-- "I was compensated $5,000 for a**

**painting by Bercier, the amount I originally paid"** – but sought more because according to her "certified appraisal" that "piece's market value is $8,200," and she requested "review for additional reimbursement of 3,200," which Farmers Direct paid in full. As such, the undisputed facts establish that there has been no breach of contract here at all by Farmers Direct.[10]

Significantly, in the context of summary judgment, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987) ("[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment"), *cert denied* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (citations omitted). Accordingly, Plaintiff cannot raise any genuine issues of material fact to defeat summary judgment here.

**D. Plaintiff's Bad Faith Claim Is Without Merrit**

Under California law, a claim for breach of the implied covenant of good faith and fair dealing (*i.e.* "bad faith") can only be maintained where there has been a

[10] Plaintiff also alleges breach of contract by Farmers Direct related to the "withholding/underpayments" of "recoverable depreciation." *See* FAC, ¶ 35.b. However, the Policy sets a "timeline of 180 days to submit for recoverable depreciation" and if Plaintiff does not meet that timeline there can be no breach of contract. (SUF ___.) To the extent that Plaintiff is pursuing claims for related to Farmers Direct's handling of recoverable depreciation, in an email dated May 9, 2025 [12:12 PM] that Plaintiff sent to Property Theft Supervisor Bryce Spradling -- which is attached as Exhibit P to the First Amended Complaint -- Plaintiff states the following: **"I would like to clarify that I am not attempting to recover any additional depreciation under the policy, as I have already successfully recovered that amount"** (emphasis added). FAC, Exhibit P [ECF Doc. 23-1, p. 277]. (SUF Nos. ___.) *See e.g.,* Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) ("court need not, however, accept as true allegations that contradict allegations that contradict matters . . . by exhibit). Plaintiff also submitted cancelled receipts seeking payment for recoverable depreciation on this Claim and Farmers Direct initially denied her claim for depreciation for material misrepresentation but ultimately made a business decision to allow Plaintiff another opportunity to timely submit appropriate replacement documentation. (SUF ___.) When she did, she was paid. (SUF ___.)



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

breach of a contractual obligation owed by the insurer. *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36 (1995). "[T]o establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001), *citing Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151 (1990). Here, Plaintiff cannot establish that Farmers Direct unreasonably withheld any benefits due under the Policy for the Loss such that summary judgment must be granted in Farmers Direct's favor on Plaintiff's bad faith claim for that reason.[11] (SUF 1-105, 121, 122.)

As an initial matter, Plaintiff also cannot establish that Farmers Direct acted unreasonably in connection with Farmers Direct's investigation and handling of the Loss. Here, there were numerous "red flags" on this Claim which make it fall squarely within the statutory definition of "suspected insurance fraud." Cal. Code Regs. Tit. 10, section 2698.30 – Definition (q); *see also* Hamilton Decl., ¶¶ 14-15, 27; (SUF 26 – 40, 42, 85.) Moreover, Farmers Direct's early investigation and handling of the Claim was entirely reasonable and any resulting delays where a direct result of Plaintiff's own conduct. Hamilton Decl., ¶¶ 16-26; (SUF 39, 40.)

"It is well established that "[t]here can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement

[11] *See e.g., First v. Allstate Ins. Co.*, 222 F.Supp.2d 1165, 1172 (C.D. Cal. 2002) (granted insurer's motion for summary judgment because "to establish breach of the covenant, Plaintiffs must demonstrate that Allstate withheld policy benefits due under the contract (*i.e.,* breach of contract) . . . [and] Plaintiffs have failed to establish a triable issue of fact as to whether they were denied any policy benefits due under the contract"); *Keshish v. Allstate Ins. Co.*, 959 F.Supp.2d 1226, 1244 (C.D. Cal. 2013) (insurer's motion for summary judgment granted where "plaintiffs have failed to adduce evidence that raises triable issues as to whether Allstate investigated their claim in bad faith"); *see also Singh v. Amguard Ins. Co.*, Case No. CV 16–0618 PSG (AJWx), 2017 WL 2423795 *5 (C.D. Cal. February 17, 2017) ("[b]ecause the breach of contract claim fails, so too do Plaintiff's claim for breach of the covenant of good faith and fair dealing, and for punitive damages").



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

with the insured." *Kerrigan v. Allstate Ins. Co.*, 543 F.Supp.3d 843, 855-856 (C.D. Cal. June 10, 2021) (citations omitted) (granted insurer's motion for summary judgment and rejected plaintiff's claim of bad faith delay). Specifically in the *Kerrigan* case, the Court granted the insurer's motion for summary judgment and noted that to "the extent there were any delays, the Court concludes that they were attributable to Plaintiff," who "failed to return her signed medical authorization for fifteen months after Allstate Fire initially requested it and *never* returned her wage authorization or employer information forms, and, thus, interfered with . . . [the insurer's] investigation." *Kerrigan*, 543 F.Supp.3d at 857, n. 8. Similarly, Plaintiff is the one who caused delay here by her belated submission of her Proof of Loss form (after multiple submissions of that form in unsigned and/or incomplete format) (SUF 39-40.), delayed scheduling the Examination Under Oath ("EUO") (SUF 43.), then cancelled and rescheduled the EUO (SUF 43-45.), among many other things.[12]

Moreover, even in the unlikely event that Plaintiff could establish that Farmers Direct's coverage position regarding the Claim was incorrect and additional amounts are owed for the Loss, Plaintiff cannot prevail on a bad faith claim against Farmers Direct based on the record evidence. Bad faith liability cannot be "prompted by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act" to deny policy benefits due to the insured. *Chateau Chamberay Homeowners' Assn. v. Assoc. Intern. Ins. Co.,* 90 Cal.App.4th 335, 346 (2001). Where the facts surrounding an insurer's conduct are undisputed, "it is for the court, not a jury, to

[12] The core component of Plaintiff's bad faith claim is her theory that Farmers Direct conducted an "adversarial EUO to build defense not to pay," that "biased EUO tactics" and "wasting Plaintiff's time and resources and causing significant emotional distress – in violation of the duty to conduct a prompt thorough, and fair investigation." FAC, ¶¶13.a, 43 [ECF Doc. 23-1, p. 51]. "The right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law." *Globe Indem. Co. v. Superior Court*, 6 Cal.App.4th 725, 731 (1992) (emphasis added). Farmers Direct's claims handling expert also specifically disagrees and reject's Plaintiff's objections to the EUO process noting that an Examination Under Oath is a contractual right available to any insurance company. Hamilton, ¶¶ 18-20.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

decide whether the insurer acted with 'proper cause'" in disputing coverage for a tendered claim. *Id*. at 350. Pursuant to this fundamental California insurance law principle, referred to as the "genuine dispute doctrine," no bad faith liability exists if an insurer's coverage position is reasonable, even if it is ultimately proven to be incorrect. *Opsal v. United Services Automobile Assn.,* 2 Cal.App.4th 1197, 1205 (1991). The "genuine dispute doctrine" applies to disputes that relate to both factual or legal issues. *See Chateau Chamberay*, *supra*, 90 Cal.App.4th at 347. "The Ninth Circuit has frequently affirmed summary judgment orders in bad faith claims where the trial court's ruling was based on a genuine dispute over insurance coverage." *Adams v. Allstate Ins. Co.*, 187 F.Supp.2d 1219, 1226 (C.D. Cal. 2002).

Significantly, insurers have prevailed on motions for summary judgment on bad faith claims involving the investigation, or even claim denials that proved to be erroneous, where suspicious robbery claims are involved.[13] For example, in *Arutyun Darakchyan v. State Farm General Ins. Co.*, Case No. 2:25-cv-03880-CAS-AJRx, 2026 WL 2336385 *7-*8 (C.D. Cal. August 11, 2026), the Court granted insurer's motion for summary judgment on bad faith claim based on genuine dispute doctrine in case where insurer denied coverage for suspicious burglary claim. "Plaintiff stated that there was forced entry through is kitchen window" and there were "inconsistencies between plaintiff's testimony at his EUO and State Farm's expert's opinion regarding the nature and causes of the claimed damages to plaintiff's countertops" in the kitchen, noted "discrepancies" pertaining to plaintiff's inventory list and submitted receipts where "Plaintiff himself acknowledges that he inadvertently submitted some receipts that did not math either the SSOL [sworn

[13] *See Feldman v. Allstate Ins. Co.*, 822 F.3d 660, 679 (9th Cir. 2003) (affirmed district court's decision granting insurer's motion for summary adjudication on bad faith claim based on "genuine dispute" doctrine where insurer denied coverage for a suspiciously burglary claim under a homeowner's policy where insured delayed providing any "written documentation of the value of any of the items claim," where statements of the insured's former wife were "tending to indicate fraud and the complete lack of documentary support for Appellant's claimed $24,000 valuation, it was not unreasonable for [insurer] Allstate to deny the claim").

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

statement of loss] or the updated inventory list," and there was evidence of a prior "insurance fraud charge associated" with plaintiff, so it "was not unreasonable" for the insurer to "rely on these circumstances" to deny the claim. *Arutyun,* Case No. 2026 WL 2336385 at *7-*8; *see also Feldman.*, 822 F.3d at 679. Here, there were numerous suspicious aspects to Plaintiff's Claim and Farmers Direct's resulting investigation was entirely reasonable or at a minimum evidenced a genuine dispute as to whether the Loss was covered in the first instance and, if so, the amount of benefits owed under the Policy. *See* Hamilton Decl., ¶¶ 14-15, 27; (SUF 26 – 40, 42, 85.)

Moreover, Plaintiff also belatedly presented Farmers Direct with an extremely inflated $90,000 repair estimate for a partial home remodel more than 10 months after the alleged burglary/vandalism Incident with only minor visible damages (if any). (SUF 29, 77, 82 .) There was at least a genuine dispute by Farmers Direct when faced with an estimate that seemed "too high" given the minimal scope of the damages initially. *See e.g., Keshish v. Allstate Ins. Co.*, 959 F.Supp.2d 1226, 1244 n. 58 (C.D. Cal. 2013) (insurer's motion for summary judgment also granted because "the court has determined that a genuine dispute existed regarding the amount of insurance proceeds Allstate was required to pay . . . [and] Allstate acted reasonably and in good faith when it initially concluded that plaintiffs' estimate was too high").[14] Despite the obviously suspicious nature of Plaintiff's claims, nevertheless Farmers

[14] *See also Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of America*, Case No. CV 12-09510 MMM (PLAx), 2013 WL 12139353 *17 (C.D. Cal. November 29, 2013) (granting insurer's motion for summary judgment and specifically noting the fact that the insurer "reopened the claim and authorized a supplemental inspection after initially denying it demonstrates that it acted reasonably in coming to its determination"); *Mohn v. Catlin Ins. Co.,* Case No. 5:21-cv-01014-FWS-KK, 2023 WL 4680794 *8-*11 (C.D. Cal. May 3, 2023) (granting defendant insurer's motion for summary judgment based on the genuine dispute doctrine where the insurer reopened the claim after the insureds sent a new and significantly higher "revised demand for $173,079.04," then conducted additional inspections of damaged home, but those "evaluations consistently reported that the full amount of Plaintiff's requested damages was not supported by the conditions of the house," so the insurer "limited coverage to approximately $30,733.36 in payments," but "the parties could not agree on the extent of the damage and the payments due").

Direct fairly investigated Plaintiff's belated and inflated submissions in good faith and even issued additional payments (e.g., for additional stucco work in May on May 28, 2025) and this additional drywall and stucco repairs surrounding the window area was unquestionably more than reasonable. Corona Decl., ¶ 16; Hamilton Decl.,¶¶ 20-22; (SUF 84, 97, 98.) Moreover, the handling of Plaintiff's belated report of a new water intrusion incident on or about June 4, 2025, cannot result in any bad faith liability as the decision to treat a new report of a water leak a year after the loss was reasonable as a matter of law. Corona Decl., ¶ 17; Hamilton Decl., ¶¶ 20-22. Alternatively, there was at a minimum a genuine dispute as to this issue. Either way, Plaintiff's bad faith claim fails as a matter of law.

**E. <u>Plaintiff's Unruh Civil Right Act Claim Is Without Merit</u>**

"To prove intentional discrimination, a plaintiff must put forth evidence of "willful, affirmative misconduct on the part of those who violate the [Unruh] Act." *Bax v. Doctors Medical Center of Modesto, Inc.,* 393 F.Supp.3d 1000, 1011 (E.D. Cal. 2019).[15] A plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination. *Duronslet v. County of Los Angeles*, 266 F.Supp.3d 1213, 1217 (C.D. Cal. 2017). Similar to the situation here, a litigant's "deemed" admission on the threshold issue of discriminatory intent is a proper basis for dismissal on summary judgment. *See Morris v. O'Reilly Automotive Stores, Inc.,* Case No.: ED CV 21-1060-FWS-KK, 2022 WL 21737781 *2-*3 (C.D. June 10, 2022)(court granted summary judgment in defendant's favor in "deemed admitted" facts Unruh Civil Rights Act case based on the plaintiff's failure to respond to the defendant's requests for admission, which per Rule 36(a)(3) resulted in a finding that

[15] The Unruh Civil Rights Act provides as follows: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b); *see also* Cal. Civ. Code § 52(a) ("[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 ... is liable for each and every offense ...."). The Act defines "sex" discrimination to include discrimination based on gender identity. Cal. Civ. Code § 51(e)(5)



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

"the Requests for Admissions to which Plaintiff did not respond are deemed admitted under Federal Rule of Civil Procedure 36).

In her First Amended Complaint, Plaintiff alleges "Identity-based coercion (Unruh)" based on "misgendering." FAC, ¶¶ 17 [ECF Doc. 23-1, p. 19]. "Misgendering is 'the assignment of a gender with which a party does not identify, through the misuse of gendered pronouns, titles, names, and honorifics.'" *In People v. Zarazua*, 85 Cal. App. 5th 639, 642, n.1 (2022). However, mere mistaken use of wrong or preferred pronouns even repeatedly, especially where an apology is given of the changed status/identify is a recent development, has been found to not be intentional misconduct but instead an inadvertent error which is not intentional discrimination. *In People v. Zarazua*, 85 Cal. App. 5th 639, 644 (2022).[16]

In support of her Unruh Act claim, Plaintiff alleges that on April 21, 2025, Supervisor Bryce Spradling refused to use Plaintiff's affirmed name "Luna" while threatening a new April 27 Deadline. Simply stated, Plaintiff cannot establish reasonable awareness of her apparent gender and/or name change and/or that any alleged use of non-preferred pronouns was anything more than a sincere mistake and fails to support a showing of intentional discrimination as a matter of law. *Zarazua*, 85 Cal. App. 5th at 646; *Duronslet*, 266 F.Supp.3d at 1217. (SUF 109 - SUF 120.)

[16] Specifically, in the *Zarzua* case, the disclosed gender change of the defendant from female to male was very recent and then misgendering occurred by the prosecutor in a criminal case, but was not viewed as intentional misconduct. *Zarazua*, 85 Cal. App. 5th at 643-644. During "initial closing argument, the prosecutor misgendered Zarazua four times," defense counsel objected based on "prosecutorial misconduct; the trial court told the prosecutor, "[w]atch ... your pronouns," and the prosecutor apologized." *Zarazua*, 85 Cal. App. 5th at 643-644. The prosecutor used incorrect pronouns twice during rebuttal closing; both times, defense counsel objected and the court reminded the prosecutor to use the correct pronouns. *Id.* The prosecutor apologized and, on one occasion, offered to slow down so "that doesn't happen again." *Zarazua*, 85 Cal. App. 5th at 646. In response to defense counsel's motion alleging misconduct, "the prosecutor argued the misgendering was accidental, said he was 'trying to be mindful' of Zarazua's gender, and noted defendant 'went as Ms. Zarazua' at the time of the incident." *Zarazua*, 85 Cal. App. 5th at 646. The trial court denied the mistrial motion. It found the misgendering unintentional and concluded it did not constitute prosecutorial misconduct. *Zarazua*, 85 Cal. App. 5th at 646.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Notably, Plaintiff never changed her name on the Policy and routinely used "Julio" in her correspondence, including to Bryce Spradling. (SUF 2, 3, 108- 12, 114.) In this respect, both before and after January 28, 2025, whether Plaintiff identified as male, female, transgender or however Plaintiff presented herself, Farmers Direct continued to reasonably investigate and adjust Plaintiff's Claim and issued several more payments to Plaintiff after any claimed disclosures related to her gender identify. (SUF 115-118.) Accordingly, based on the record evidence, there is no reasonable basis to infer any discriminatory intent in Farners Direct's handling of Plaintiff's Claim simply because someone potentially referred to "her" as "him" or to "Luna" as "Julio," especially if the circumstances suggest fair confusion, innocent mistake and/or if polite apologies are offered. *Zarazua*, 85 Cal. App. 5th at 643-644. Given Plaintiff's deemed admissions and stated inability to establish any discriminatory intent on the part of Farmers Direct, Plaintiff's Unruh Act claim fails as a matter of law. (SUF 116-118, 121.)

### F. The Punitive Damage Claim Must Be Dismissed Because Plaintiff Has No Evidence Of Any Oppression, Fraud Or Malice

Even where a party may be entitled to compensatory damages, it does not necessarily follow that he or she is entitled to punitive damages as well. *Arcadia, California Ltd. v. Herbert* 54 Cal.2d 328, 337 (1960). "Something more than the mere commission of a tort is always required for punitive damages." *Mock v. Michigan Mut. Ins. Co.* 4 Cal.App.4th 306, 327 (1992). Particularly in the context of an insurance coverage case, "the conduct required to award punitive damages for the tortious breach of contract is of a different dimension than that required to find bad faith" as the "evidence in support of the award of punitive damages must satisfy a distinct and far more stringent standard." *Bernstein v. Kemper Independence Insurance Company*, 670 F.Supp.3d 1018 (E.D. Cal. 2023); *Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1118-21 (2001). "As such, a "conclusory characterization

of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice'…within the meaning of Civil Code section 3294." *Brousseau v. Jarrett,* 73 Cal.App.3d 864, 872 (1977). Rather, specific, objective, factual allegations are required to support a punitive damages claim. *Grieves v. Superior Court* 157 Cal.App.3d 159, 166 (1984).

To recover punitive damages, Plaintiff must demonstrate that Farmers Direct intended to deliberately injure Plaintiff in conscious disregard of her rights by denying coverage for the Claim under the Policy. *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.,* 185 Cal.App.3d 1149, 1154 (1986). Moreover, Plaintiff can only seek punitive damages against Farmers Direct based on its imputed liability for the conduct of its employees and agents. Thus, in addition to showing malice, oppression or fraud, Plaintiff must establish that Farmers Direct directed, authorized or later ratified any alleged conduct of its employees. *Chodos v. Ins. Co. of N. America* (1989) 126 Cal.App.3d 86, 102.

A "plaintiff who is not able to survive summary judgment on an insurance bad faith claim, is also unable to survive summary judgment on a related claim for punitive damages." *Adams v. Allstate Ins. Co.*, 187 F.Supp.2d 1219, 1231 (C.D. Cal. 2002); *Stars and Bars, LLC v. Travelers Casualty Ins. Co. of America*, Case No. SACV 16-01397-CJC (SSx), 2018 WL 6016993 *10 (C.D. Cal. September 17, 2018); *Arutyun*, 2026 WL 2336385 *9-*10 (because the court granted the insurer's motion for summary judgment on bad faith claim pertaining to denial of coverage for suspicious burglary claim the insurer "is also entitled summary judgment on plaintiff's claim for punitive damages").

Based on the record evidence, Plaintiff cannot satisfy its heighted evidentiary burden to recover punitive damages from Farmers Direct. (SUF 106-108.) The only "facts" alleged in the complaint in support of Plaintiff's punitive damages claim consist of conclusory statements that Farmers Direct's conduct was "willful" and that

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

in denying coverage, Farmers Direct "committed fraud and acted with conscious disregard of Plaintiff's rights and did so in an oppressive and despicable manner…"[17] (SUF 106-108.) Nor does Plaintiff have any evidence that a managing agent of Farmers Direct authorized or ratified any alleged improper and outrageous conduct which would support an award of punitive damages. Given that Plaintiff alleges no specific facts and has no credible evidence to warrant the imposition of punitive damages against Farmers Direct Plaintiff's claim for punitive damages should be summarily dismissed.

## IV. CONCLUSION

For the foregoing reasons, Farmers Direct respectfully requests this Court grant summary judgment in its favor with respect to all claims alleged in Plaintiff's First Amended Complaint.

Dated: August 31, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By [signature]
Michelle R. Bernard
Kelly Fitzgerald Canby
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

[17] The basis for Plaintiff's sought award of "punitive/exemplary damages under Civil Code § 3294" against Farmers Direct specifically includes Farmers Direct's handling of "recoverable-depreciation handling and item zeroing . . . thereby supporting punitive damages under Civil Code § 3294(b)." FAC, ¶ 7 [ECF Doc. 23-1, p. 146 (emphasis in original)]. Accordingly, Plaintiff is seeking punitive damages against Farmers Direct on the very same "item zeroing" claim involving her painting where she is knowingly pursuing a double recover for almost $9000 in funds she has already collected from Farmers Direct and/or because Michael Saskor discovered she submitted bogus stale receipts from Dyson and Brilliant to Farmers Direct to try to collect money under the Policy that she was not owed. (SUF 62, 63, 65-69.).



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101