MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUNA D'SOL,

Plaintiff,

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

Case No. 2:25-cv-10938-SVW-ASx

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**

Judge: Hon. Stephen V. Wilson
Date: September 28, 2026
Time: 1:30 p.m.
Courtroom: 10A
Trial Date: October 13, 2026; 9:00 a.m.
FSC: October 5, 2026; 3:00 p.m.

Filed Concurrently With: Notice of Motion and Motion for Summary Judgment Or Alternatively; Partial Summary Judgment; Memorandum of Points and Authorities; Declaration of Kelly Fitzgerald Canby; Declaration of David A. Corona; Declaration of Paul Hamilton; Declaration of Michael Saskor; Declaration of Donnie Means; Declaration of Bryce Spradling; Declaration of Elisa Martinezr; Notice of Lodgment; and [Proposed] Order

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**Complaint Filed: August 21, 2025**

Pursuant to Local Rule 56-1 of the United States District Court for the Central District of California, Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") submits the following Separate Statement of Uncontroverted Facts and Conclusions of Law, together with reference to supporting evidence, in support of its Motion for Summary Judgment Or In The Alternative, Partial Summary Judgment.

## I. STATEMENT OF UNCONTROVERTED FACTS

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| 1. | Farmers Direct issued Policy Number 3872340940 for the policy period effective September 23, 2023 to September 28, 2024 insuring the residence premises located at 2275 E. Belding Dr., Palm Springs, CA 92262. | Declaration of Bryce Spradling ("Spradling Decl."), ¶ 2, **Exhibit 1**; *see also* Defendant's Request for Judicial Notice filed on January 5, 2026 ("Defendant's RJN") (Exhibit F and Exhibit H), at First Amended Complaint ("FAC"), ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 137, 146, 185, 189-245]. |
| 2. | "Julio R. Ravada" is listed as the "Named Insured" on the Policy. | RFA No. 1., deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Declaration of Elisa Martinez ("Martinez Decl."), ¶¶ 2-9; **Exhibits 1-4;** Spradling Decl."), ¶¶ 2, 5, **Exhibit 1**. |
| 3. | Plaintiff did not ask Farmers Direct in writing (or otherwise) to remove "Julio R. Ravada" as | RFA Nos. 2-4, deemed admitted pursuant to |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | the name of the "Named Insured" on the Policy and/or or to change the name of the listed "Named Insured" on the Policy from "Julio R. Ravada" to "Luna D'Sol." | Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; Spradling Decl."), ¶¶ 5-7. |
| 4. | Subject to its terms and conditions, the Policy's "COVERAGE A – DWELLING" provision provides coverage for "sudden and accidental direct physical loss or damage" to the Dwelling on the Property, unless "excluded in SECTION 1 LOSSES WE DO NOT COVER." | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at COVERAGE A - DWELLING; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208]. |
| 5. | With regard to the Coverage C personal Property coverage those "SECTION 1 – BROAD NAMED PERILS" include "the following causes of loss will apply for sudden and accidental direct loss . . . 8. **Vandalism or Malicious Mischief** . . . 9. **Theft,** or attempted theft, including loss of property from a known place when it is likely that a theft has occurred." | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at SECTION 1 – BROAD NAMED PERILS, Section 8-9; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208]. |
| 6. | 8. **Vandalism or Malicious Mischief**: " **We** do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant." | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at SECTION 1 – BROAD NAMED PERILS, Section 8; *see also* |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | | Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208]. |
| 7. | 9. **Theft - "We** do not pay for loss caused by theft: A. if committed by **you** or by any person regularly residing on the **residence premises;** B. in or from a dwelling under construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or C. from any part of the **residence premises** rented by **you** to others." | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at SECTION 1 – BROAD NAMED PERILS, Section 9; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208]; *see also* RFA No. 83 deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 8. | Per the Policy's "GENERAL DEFINITIONS" the term "**Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at GENERAL DEFINITIONS; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 197]. |
| 9. | Subject to it terms and conditions, the Policy provides SECTION 1 – ADDITIONAL COVERAGE for:<br><br>1. **Loss of Use.** The limit of liability for Loss of Use is the total limit for the coverages in A. and B. below.<br><br>A. **Additional Living Expense / Fair Rental Value.** This applies upon loss to | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CONTENTS AND ADDITIONAL COVERAGES HP2000 0205; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
| --- | --- | --- |
| | covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold.** When a covered property loss makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, either of the following. However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below.<br><br>1. **Additional Living Expense. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living. **Our** liability will not exceed the smallest of:<br>a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;<br>b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or<br>c. the limit of liability for Loss of Use as specified in the policy Declarations. | Exhibit A thereto [ECF Doc. 23-1, at p. 202]. |
| 10. | In addition to other exclusions the Policy's "SECTION I - LOSSES WE DO NOT COVER" for:<br>A "**Intentional Loss**" (as amended per below); D. "Water damage" (per below); F. "**Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy"; H. "Neglect" (per below). | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 209-213]. |
| 11. | Subject to the Policy's terms and conditions and per the revisions found in the Policy's CALIFORNIA AMENDATORY ENDORSEMENT [HA01CA0108] the "Intentional Loss" exclusion found in the Policy now means: "Intentional Loss" means "any loss arising out of any intentional or criminal act committed: (1) by you or at your direction; and (2) with the intent to cause a | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CALIFORNIA AMENDATORY ENDORSEMENT [ENDORSEMENT HA01CA0108]; *see also* Defendant's RJN (Exhibit F and Exhibit |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | loss." "This exclusion applies regardless of whether you are actually charged with or convicted of a crime." | H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 234]. |
| 12. | With regard to the Policy's "SECTION I - LOSSES WE DO NOT COVER" the term "water damage" includes, among other things:<br><br>D. "**Water damage,** meaning any loss caused by resulting from, contributed to or aggravated by:<br>***<br>2. water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or<br>*** | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 210-211]. |
| 13. | With regard to the Policy's "SECTION I - LOSSES WE DO NOT COVER" the Policy excludes, among other things:<br><br>F. "**Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy"; | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 211]. |
| 14. | The Policy "does not include Building Code Upgrade Coverage." | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at Declarations, *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, pp. 192]; Corona Decl., ¶ 6.b. |
| 15. | With regard to the Policy's "SECTION I - LOSSES WE DO NOT COVER" the Policy excludes, among other things: | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at CAUSES OF PROPERTY LOSS |

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | H. "**Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against." | HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 211]. |
| 16. | In addition to other Conditions, the Policy contains the following PROPERTY CONDITIONS:<br><br>SECTION 1 – CONDITIONS<br>***<br>B. Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.<br><br>C. Cooperate with **us** in the investigation of a claim.<br><br>D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item. Attach to the inventory all bills and other documents that substantiate the figures in the inventory | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at PROPERTY CONDITIONS; *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 211]. |
| 17. | Subject to the Policy's terms and conditions, the Policy includes a "PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113) including "SECTION 1 – HOW WE SETTLE A PROPERTY LOSS" which sets forth applicable terms regarding the handling of property loss under the Policy. | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113); *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 214-216]. |
| 18. | The Policy includes a "PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113) including "SECTION 1 – HOW WE SETTLE A PROPERTY LOSS" and on or about April 4, | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at PROPERTY LOSS SETTLEMENT" |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | 2025 the Plaintiff was specifically directed to the portion found "on the bottom of page 2 and top of page 3" pertaining to "Coverage C – Personal Property" which "outlines that replacement costs on contents had depreciation applied at the time of settlement unless the items have already been replaced." | Endorsement (HP4520 0113); *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 214-216]; *see also* Saskor Decl., ¶¶ 1, 10, **Exhibit 1**, Policy at Property Loss Settlement Endorsement (HP4520 0113), at pp. 33-34 thereto and **Exhibit 4**, at pp. 82-83 [FD003068] thereto; *see also* Requests for Admissions, Exhibit B. |
| 19. | There is a 180-day deadline to submit a claim for recoverable depreciation for the replacement of personal property items that were paid on an Actual Cash Value ("ACV") basis (i.e., with depreciation deducted) which is found in the Policy's "PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113) under "SECTION 1 – HOW WE SETTLE A PROPERTY LOSS" in Section 2 "Coverage C – Personal Property" at Section B, paragraph 3 thereunder which states the following:<br><br>" If **you** decide not to repair, restore or replace the damaged or stolen property, settlement will be on an **actual cash value** basis. **You** may make further claim within 180 days after the date of **actual cash value** payment for any additional payment on a replacement cost basis if **you** repair, restore or replace the damaged or stolen property." | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113); *see also* Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 214-216]; *see also* Saskor Decl., ¶¶ 1 10, **Exhibit 4**, at pp. 82-83 [FD003068] thereto; *see also* Requests for Admissions, Exhibit B. |
| 20. | Additionally, Bryce Spradling also further advised Plaintiff that as "outlined in your policy you have 180 days from the actual cash value payment to recover any withheld depreciation," and that "[o]nce this time has expired no consideration will be made for the information that remains outstanding. | Spradling Decl., ¶ 10, **Exhibit 4** [FD003068] |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| 21. | On or about June 4, 2024, Plaintiff reported to Farmers Direct that a burglary and vandalism incident (“Incident”) occurred at her residence located at 2275 E. Belding Drive, Palm Springs, CA 92262 (“Property”) on or about June 3, 2024 and sought coverage under the Policy (“Claim”). | Means Decl., ¶ 3. |
| 22. | Prior theft losses at Plaintiff’s Property were acknowledged in July of 2023, January of 2024, and a water damage claim in August 2023 | Means Decl., ¶4; *see also* Hamilton Decl., ¶ 18; Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, pp. 5:20-7:4 [FD004308-FD004310] and 54:16-55:19 [FD004357-FD004358] |
| 23. | Senior Fields Claims Representative Donnie Means (“Means”) was assigned to handle Plaintiff’s insurance recovery claim arising from the June 2024 vandalism/theft incident which was assigned Claim No. 7007678692-1 (*i.e.* the Claim). | Means Decl., ¶ 4. |
| 24. | Means contacted Plaintiff and was initially unable to reach Plaintiff but when Plaintiff later called back an inspection of the Property was arranged for June 6, 2024. | Means Decl., ¶¶ 5-6_, **Exhibits 1-2**. |
| 25. | At the time of the June 6, 2024 inspection, Plaintiff stated that he resided at the Property which is a one story single family home built in 1955. | Spradling Decl., ¶ 2, **Exhibit 1**, Policy, at Declarations; see also Means Decl., ¶ 2 |
| 26. | When Means arrived at the Property on the day of the inspection at the scheduled time, he was initially not permitted to enter the residence and had to wait outside for over 15 minutes before he was allowed to enter and inspect the interior of the Property. | Means Decl., ¶ 10. |
| 27. | Means inspected the Property on June 6, 2024 and photographs were taken. | Means Decl., ¶¶ 11-18, **Exhibits 3-4**. |
| 28. | There were a number of observations/issues that resulted in reasonable suspicion by Means related to the cause of the claimed damage, including a suspicious puddle of water on the | Means Decl., ¶¶ 1, 11-19, **Exhibits 3-4**; *see also* near dishwasher **Exhibit 3,** [FD004968 |

| <u>**SUF No.**</u> | <u>**FACT**</u> | <u>**Supporting Evidence**</u> |
|---|---|---|
| | floor in an area with no surrounding leaks as confirmed by his close inspection of the area, including multiple moisture readings. | FD004981]) and by the toilet (*see e.g.,* **Exhibit 3** at [FD004991-FD004993, FD004999-FD005001]) |
| 29. | The observed "vandalism" damage to the Property was relatively minor and primarily cosmetic or superficial in nature and did not affect the structural integrity of the Property nor the overall habitability of the Property. | Corona Decl., ¶ 8; Means Decl., ¶¶ 1, 11-19, 27, **Exhibits 3-4**. |
| 30. | Something was allegedly placed in the toilet causing it to overflow. | Means Decl., ¶¶ 1, 17-19, **Exhibit 4** [FD005053, FD004980] *see also generally* **Exhibit 3** at [FD005034-FD005035, FD005040, FD0050041]; Hamilton Decl., ¶ 18. |
| 31. | A dishwasher was allegedly pulled out and damaged. | Means Decl., ¶ 17, **Exhibit 3** [FD004968-FD004981]; **Exhibit 4** at [FD004971]; Hamilton Decl., ¶ 18. |
| 32. | Plaintiff initially reported that the bathroom window was shattered, but the glass was not broken at all and only a small spot on the exterior window frame was bent. | Means Decl., ¶¶ 8, 13, **Exhibit 3** [FD005005-FD005008]). |
| 33. | Plaintiff does not have any competent evidence to establish that the alleged loss arising from the Incident on June 3, 2024 arose from a covered cause of loss under the Policy in the first instance. | RFA Nos. 37-41, 85, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 34. | The claimed points of entry into the Property by the "vandals" were fairly questionable. | Means Decl., ¶¶ 11-18, **Exhibits 3** [FD004994-FD004995; FD005034-FD005035, FD005040, FD0050041; FD005036, |



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | | FD005038; FD005034-FD005035, FD005040, FD0050041]; Hamilton Decl., ¶ 18; Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, p. 166:1-18; [FD004469].. |
| 35. | Plaintiff was using narcotics during the inspection based on Means observations, among other unusual behaviors and unexpected items. | Means Decl., ¶ 18; **Exhibit 4** [FD004971]; [FD005053, FD004980] |
| 36. | Plaintiff refused to provide Farmers Direct with the full names and/or contact information of the persons who were at her Palm Springs residence on or around the day of the Incident. | RFA Nos. 77-82, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; Hamilton Decl., ¶ 18. |
| 37. | The puddles observed on the floor of Plaintiff's home during the Inspection on June 6, 2024 were suspicious because Means, an experienced water mitigation technician, did not find any active leak source and the puddles found on the floor near the dishwasher based on the amount of time that passed from the reported date of loss and the inspection, along with a lack of a trail of water, the observable conditions (and specifically related to the toilet where water was still present on the floor while the toilet itself was not backing up due to the elapsed time from the date of loss to the inspection date) and reached the reasonable opinion based on more than 5 years of experience working in the water mitigation industry, that the water was not emanating from the nearby dishwasher, toilet and/or surrounding plumbing and was not caused by the Incident at all | Means Decl., ¶ 17, **Exhibit 3** [FD004968-FD004981; FD004991-FD004993, FD004999-FD005001]. |
| 38. | Between June 4, 2024 and August 2, 2024, Plaintiff's claim was under active investigation by a claims professional with assistance from Farmers Direct's Special Investigating Unit, which was consistent with standard industry | Means Decl., ¶¶ 4, 26; Hamilton Decl., ¶ 16.a. |



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | practices, Farmers Direct's claim professionals were conducting parallel investigations – one dealing with quantifying the nature and extent of the claimed damage; and the other more focused on coverage. | |
| 39. | Plaintiff delayed providing her completed and verified signed Proof of Loss form. | Means Decl., ¶¶ 20-24; **Exhibits 5-8.** |
| 40. | Plaintiff initially submitted her Proof of Loss without any signature. | Means Decl., ¶¶ 22-23, **Exhibit 7**. |
| 41. | On or about August 5, 2024, Plaintiff submitted a Proof of Loss with Farmers Direct, indicating a total claim (dwelling and contents) in the amount of $39,152.61 which was dated as signed on August 2, 2024. | Means Decl., ¶¶ 24-25, **Exhibit 9;** Hamilton Decl., ¶ 16.b. |
| 42. | Plaintiff's claim began with her initial evaluation provided to the Palm Springs PD of about $18,000.00 | Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, p. 112:15-19 [FD004415]; Hamilton Decl., ¶ 20. |
| 43. | Plaintiff's EUO was initially scheduled for September 16, 2024 but was rescheduled to a later date because "To date, we have not received any communication from you in response to our Initial Letter. We also have not received any of the requested information or documents to date. Accordingly, we will be unable to proceed with your EUO on September 16, and the EUO has been rescheduled . . ." | Canby Decl., ¶¶ 26-27, **Exhibits 18-19**. |
| 44. | On or around August 9, 2024, the claim file was referred to coverage counsel to obtain an Examination Under Oath. From August 9, 2024, through September 27, 2024, the claim file was pending Plaintiff's Examination Under Oath ("EUO"). | Means Decl., ¶ 25; Hamilton Decl., ¶ 16.c.; Canby Decl., ¶¶ 26-28, **Exhibits 18-20**. |
| 45. | Plaintiff's EUO was completed on September 27, 2024 | Means Decl., ¶ 25; Hamilton Decl., ¶ 16.b.; Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript. |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| 46. | An Examination Under Oath is a contractual right available to any insurance company. | Hamilton Decl., ¶ 18. |
| 47. | Based on the available information and inconsistencies in Plaintiff's characterization of the facts and circumstances of the loss, Farmers Direct's decision to move forward with an Examination Under Oath was both reasonable and consistent with standard industry practices. | Hamilton Decl., ¶ 18. |
| 48. | At the EUO on September 27, 2024, Plaintiff testified that [her] name is Julio Rodolfo Ravada and that [she] previously used the last name "Ravadachavarria," that at the time [she] had no other names, and when asked what to be called during the EUO, [she] responded "Julio." | Canby Decl., ¶ 22, **Exhibit 20**, at EUO Transcript, pp. 5:20-7:4 [FD004308-FD004310] |
| 49. | At the EUO on September 27, 2024, Plaintiff that [her] claim for $12,422 in damages to [her] window, electrical panel , dishwasher and toilet found in her Proof of Loss form was based upon an estimate she obtained from Kings Power and her claimed damages were still current and accurate as of the date of the EUO on September 27, 2024. | Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, pp. 74:22-76:17 [FD004377-FD004379] |
| 50. | The Kings Power Electrical estimate was marked as Exhibit 5 to the EUO of Plaintiff | Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, p. 126:5-14 [FD004429] |
| 51. | The Contractor's License number on the Kings Power Electrical estimate-- "State Contractor License # 1053183" – does not belong to Kings Power Electrical but instead is for another company who has not worked on Plaintiff's Palm Springs Home. | Canby Decl., ¶¶ 29-31, **Exhibit 21, 15**, |
| 52. | Plaintiff later admitted that his bathroom window was not shattered as initially reported and that the window could still open and close and locks and unlocks after the Incident. | Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, pp. 70:17-71:11 [FD004373, FD004374] |
| 53. | At the EUO on September 27, 2024, Plaintiff testified that the Property had been listed for | Canby Decl., ¶ 28, **Exhibit 20**, at EUO |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | sale after the Incident for $1.6 million without first conducting any repairs (i.e., "I have not fixed anything") and the Property was still for sale on the date of the EUO but that sales contract was set to expire that same day. | Transcript, pp. 71:12-72:21 [FD004374-FD004375] |
| 54. | Plaintiff could not verify the amount he actually paid for the Ivey and Luke painting subject of the Claim. | Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, pp. 61:6-25, 66:6-18 [FD004361, FD004366] |
| 55. | Plaintiff could not verify the amount he actually paid for the "No Face" figurine subject of the Claim. | Canby Decl., ¶ 28, **Exhibit 20**, at EUO Transcript, pp. 72:22-74:6 [FD004375-FD004377] |
| 56. | Farmers Direct ultimately decided to accept coverage for the Claim as a covered cause of loss under the Policy | Means Decl., ¶ 26. |
| 57. | On or about October 29, 2024, Farmers Direct issued a payment to Plaintiff on the Claim in an amount totaling $16,393.21 (which included $12,488.20 as the estimated actual cash value to replace Plaintiff's personal property subject of the Claim, less the Policy's deductible and recoverable depreciation and $3,905.01 as the estimated cost to repair or replace property damages to her residence as result of the Incident. | Means Decl., ¶ 27; **Exhibit 10**; RFA Nos. 43-46 and Exhibit C thereto, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; Hamilton Decl., ¶ 16.d; Saskor, ¶ 3. |
| 58. | Farmers Direct used Xactimate software tool to aid in the fair pricing and replacement cost calculations for the personal property component of her claim. | Saskor Decl., ¶¶ 22-24, **Exhibit 18**. |
| 59. | Accordingly, with regard to the Coverage C – Personal Property component of Plaintiff's Claim, Farmers Direct has paid Plaintiff $17,789.36 to replace her claimed lost items arising from the Incident which is at least the reasonable cost to replace any personal property allegedly stolen during the Incident and Farmers Direct more than satisfied its | Saskor Decl., ¶¶ 20-29; **Exhibits 17-18**. |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | obligations under the Coverage C insuring agreements found in the Policy. | |
| 60. | As Plaintiff could not provide any documentation to support the claimed $1500 value of a “No Face Man” Figurine she allegedly purchased in Japan which was an unusual item that was not encompassed within the software tools, Farmers Direct based its $330 estimated replacement cost for this item on examples for sale on eBay plus estimated taxes). | Saskor Decl., ¶ 25. |
| 61. | Plaintiff also claimed that an “Ivey and Luke” Painting was allegedly stolen and Farmers Direct initially paid Plaintiff $5,000 for this item based on the amount of her claimed purchase price and a supplemental payment was issued later after Plaintiff provided additional documentation from an alleged art appraiser bringing the total paid to Plaintiff for this item to more than $8200. | Saskor Decl., ¶¶ 10.b, **Exhibit 15, Exhibit 2,** at [FD001139]. Exhibit 15, [FD001650-FD001656] |
| 62. | Despite already receiving full payment, Plaintiff repeatedly claimed that she was actually paid $0 for this painting by Farmers Direct after an outdated worksheet was inadvertently included in a communication to Plaintiff. In response to Plaintiff’s questions and complaints, Farmers Direct repeatedly provided payment verification and explanations regarding the inadvertent inclusion of an outdated worksheet, but Plaintiff persisted in her contention that $0 was paid and that $8200 is allegedly still owed without a reasonable basis for doing so (which resulted in suspicion as to whether Plaintiff had any sincere confusion regarding the issue at all or was instead attempting to capitalize on a minor paperwork discrepancy after already receiving payment). | Spradling, ¶ 13, **Exhibit 6**; Saskor Decl., ¶¶ 10.b, **Exhibit 15, Exhibit 2,** at [FD001139]. Exhibit 15, [FD001650-FD001656] |
| 63. | Although Plaintiff alleges in her First Amended Complaint that Defendant “**unilaterally reduced to $0** two previously acknowledged items—**Painting (Bercier) $8,200** and **“No Face” memorabilia $331.55—** creating **$8,531.55** in additional shortfall,” her allegations is not true as she was | Spradling, ¶ 13, **Exhibit 6**; Saskor Decl., ¶¶ 10.b, **Exhibit 15, Exhibit 2,** at [FD001139]; see also Defendant’s RJN (Exhibit F and Exhibit |

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | paid $8,958.50 and over $360.00 for the "No Face" figurine. | H), at FAC, ¶¶ 27, 35(c), Prayer and Exhibit A thereto [ECF Doc. 23-1, at pp. 162, 163, 176]. |
| 64. | On or about November 5, 2024, Plaintiff submitted certain documentation to Farmers Direct seeking reimbursement for recoverable depreciation for the alleged replacement of allegedly stolen items. | Saskor Decl., ¶ 4, **Exhibit 1**; *see also* Hamilton, ¶ 16.e. |
| 65. | From November 5, 2024 through July 10, 2025, Farmers Direct and Plaintiff exchanged many communications dealing with her claim for recoverable depreciation in connection with the personal property claim. Farmers Direct's evaluation of this portion of the claim was somewhat hampered as documentation submitted by Ms. D'Sol in support of her recovery of withheld depreciation could not be verified. | Saskor Decl., ¶¶ 3-6, 18-19, Exhibits 11-12, Exhibits 9-10; Spradling Decl., ¶¶ 11-13; Exhibits 5-6; Hamilton, ¶ 16.e. |
| 66. | On or about November 12, 2024, Farmers Direct issued a payment to Plaintiff in the amount $1,546.91 for recoverable depreciation related to the replacement of certain personal property subject of the Claim. | RFA Nos. 48-50 and Exhibit D thereto, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4;** Hamilton, ¶ 16.e.; Saskor Decl., ¶ 4, **Exhibit 1**. |
| 67. | There were apparent discrepancies in the claimed location of this item based on photographs provided by Plaintiff during the claims process which resulted in reasonable suspicions as well as unusual inquiries about a desired reward for the return of this item. | Saskor Decl., ¶ 5.a-5.c; **Exhibit 11;** RFA No. 86-90, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 68. | Plaintiff cancelled her order for an alleged replacement "Dyson" vacuum cleaner after she submitted the receipt to Farmers Direct | Saskor Decl., ¶ 5.a-5.c; **Exhibit 11;** RFA No. 86, deemed admitted |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | seeking payment for recoverable depreciation on the Claim. | pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 69. | Plaintiff order for an alleged replacement "Brilliant" "Switch Panel" was cancelled after she submitted the receipt to Farmers Direct seeking payment for recoverable depreciation on the Claim. | Saskor Decl., ¶ 5.b-5.c; **Exhibit 12;** RFA No. 86, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 70. | Although Farmers Direct initially denied Plaintiff's request for additional recoverable depreciation on the grounds of material misrepresentation, Farmer Direct later made a business decision to change that denial and allow Plaintiff another opportunity to provide appropriate and verifiable documentation within the time limits permitted by the Policy. | Saskor Decl., ¶ 6; Spradling ¶ 11. |
| 71. | Farmers Direct issued additional payments to Plaintiff for recoverable depreciation on July 8, 2025 for $232.93 and on July 10, 2025 for $26.25. | Saskor Decl., ¶¶ 18-19, **Exhibits 9-10** |
| 72. | Farmers Direct paid Plaintiff all recoverable depreciation owed to her under the Policy as result of the Claim. | Spradling, ¶¶ 11-13; **Exhibit 6**; Saskor Decl., ¶¶ 18-19, **Exhibits 9-10** |
| 73. | Farmers Direct's handling of Plaintiff's claim for recoverable depreciation was reasonable and consistent with standard industry practices | Spradling, ¶¶ 11-13; **Exhibit 6**; Saskor Decl., ¶¶ 18-19, **Exhibits 9-10**; Hamilton Decl., ¶ 19. . |
| 74. | On or about May 9, 2025, Plaintiff sought substantial additional repairs to: (1) a "Wall-Hung Toilet," which according to Plaintiff "flushes" at a rate "exceeding California's 1.28 GPF let limit under CalGreen and CEC codes" and because Plaintiff's toilet flushed too hard somehow Farmers Direct was allegedly also | Saskor Decl., ¶ 9; **Exhibit 3,** at [FD003226-FD003233]. |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | required to recoat "approx. 2,600 sq. ft" of "continuous epoxy flooring throughout" her home; (2) Kitchen Island, "Structural Damage, and Appliance Loss," as result of "long-term water damage" since "the dishwasher was damaged, and plumbing must be replaced or rerouted to bring it back to code and functionality"; (3) full replacement of the "Main Electrical Panel"(4) "Code Upgrade Coverage" allegedly required repair of the items above as result of the Incident on June 3, 2024; (5) an "Art Appraisal Adjustment" for an "Undervalued Loss" as "I was compensated $5,000 for a painting by Bercier, the amount I originally paid," but per her "certified appraisal" that "piece's market value is $8,200" she requested "review for additional reimbursement of 3,200; (6) "Bathroom Window – Forced Entry and Structural Repair," including "Stucco repair on the exterior wall," "drywall replacement on the interior bathroom wall," among other things. | |
| 75. | Donnie Means (on behalf of Farmers Direct) reinspected the Property on May 23, 2025 after Plaintiff submitted a supplemental claim where Plaintiff claimed additional damages to her bathroom, countertop and stucco, as well as the code upgrade requests as result of the Incident. | Saskor Decl., ¶ 11; **Exhibit 2,** at [FD001121]; Means, ¶¶ 28-31, **Exhibit 11**. |
| 76. | Donnie Means took photographs at the Reinspection on May 23, 2025. | Means, ¶¶ 28-31, **Exhibit 11**. |
| 77. | In or around May of 2025, Plaintiff sought approximately $90,000 in additional repairs related to the Incident and based upon the Reinspection conducted by Means Plaintiff's sought repairs were not related to the Incident and inflated. | Means, ¶¶ 28-30, **Exhibit 11**; Hamilton Decl., ¶ 16.f. |
| 78. | On or about May 28, 2025 and following the reinspection of the Property, Farmers Direct issued Plaintiff another payment for additional repair work to the stucco and drywall surrounding the bathroom window where the intruder allegedly had entered the Property on June 3, 2024 -- which is one of the items that Plaintiff requested as part of her supplemental claim and based on the inspection and | Saskor Decl., ¶ 12; **Exhibit 3-4,** at [FD001142-FD001157]]; Means, ¶¶ 30; Corona, ¶ 16, Hamilton ¶¶ 20-22 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | assessment of Senior Fiend Claims Representative Donnie Means, Farmers Direct paid Plaintiff another $1,381.43 payment on the Claim (Coverage A – Dwelling) as the reasonable cost to make further drywall repairs and to repaint the stucco around her bathroom window at the Property. | |
| 79. | Plaintiff reported a new water intrusion incident at the Property on or about June 5, 2025. | Saskor Decl., ¶ 13; **Exhibit 5.** |
| 80. | Farmers Direct reasonably advised Plaintiff to file a new claim for a water incident occurring a year after the Incident. | Saskor Decl., ¶ 17; **Exhibit 7-8**; Means Decl., ¶¶ 28-32; Hamilton ¶¶ 20-22; Corona, ¶ 17. |
| 81. | Under the terms and conditions of the applicable Farmers Direct's' insurance policy, it is the duty of Plaintiff to *"Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures."* Plaintiff's supplemental claim for damages included amounts for water damage from both a dishwasher and a toilet that had been leaking intermittently since the original date of loss – meaning those leaks had been occurring over a period of about eleven and a half months Plaintiff having taken no remedial measures. It was reasonable for Farmers Direct to question whether Plaintiff had complied with her duty to protect the property from further damage. | Hamilton Decl., ¶ 21. |
| 82. | On or about June 5, 2025 Plaintiff submitted a copy of her "Partial Home Remodel" estimate dated May 19, 2025 from Progressive Home Remodeling which seeks repairs totaling "$87,400.00-$93,400.00." | Saskor Decl., ¶ 13; **Exhibit 6** |
| 83. | Farmers Direct reasonably denied Plaintiff's supplemental claim seeking repairs found in her "Partial Home Remodel" estimate dated May 19, 2025 from Progressive Home Remodeling. | Saskor Decl., ¶ 16; **Exhibit 7;** Means Decl., ¶¶ 28-32. |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| 84. | Farmers Direct paid Plaintiff a total of more than $26,986.00 on Plaintiff's Claim arising from the alleged burglary and vandalism incident on June 3, 2024 on the Claim under the Policy as follows<br>• $16,393.21 on October 29, 2025 ($3,905.01 for Coverage A – Dwelling and $12,488.20 for Coverage C - Personal Property).<br>• $1,546.91 on November 12, 2024 for recovered depreciation of personal property.<br>• $7,406.20 on May 14, 2024 ($3,496.00 for Coverage C – Personal Property and $3,910.20 for Coverage A – Dwelling).<br>• $1,381.43 on May 28, 2025 (Coverage A – Dwelling).<br>• $232.93 on July 8, 2025 for recovered depreciation of personal property.<br>• $26.25 on July 10, 2025 for recovered depreciation of personal property. | Saskor Decl., ¶ 20; **Exhibit 17** |
| 85. | Plaintiff's Claim met the definition of "suspected insurance fraud" as defined by the State of California which incorporates certain circumstances which will reasonably support an inference of suspected insurance fraud: *"As used in the article, the following definitions shall apply: (q) "Suspected insured fraud' includes any misrepresentation of fact or omission of fact pertaining to a transaction of insurance including claims, premium, and application fraud. These facts may include evidence of doctoring, altering or destroying forms; prior history of the claimant, policyholder, applicant or provider; receipts; estimates . . . relevant discrepancies in written or oral statements and examinations under oath (EUO); unusual policy activity; and falsified or untruthful application for insurance. An identifiable pattern in a claim history may also suggest the possibility of suspected fraudulent claims activity. A claim may contain evidence of suspected insurance fraud regardless of the payment status." See* Cal. Code Regs. Tit. 10, section 2698.30 – Definition (q).Cal. Code Regs, Tit. 10, section 2698.30 – Definitions (q) "Suspected Insurance Fraud." | Hamilton Decl., ¶¶ 14 |
| 86. | Farmers Direct has paid a collective total of $9,196.64 to Plaintiff in Coverage A Policy benefits following the Incident to repair | Saskor Decl., ¶ 16; **Exhibit 7;** Means |

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | property damage to her residence (Dwelling) at the Property which is at least the reasonable value to restore the Property to its pre- Incident condition, and likely more. | Decl., ¶ 32; Corona, ¶¶ 16-17. |
| 87. | The damages to Plaintiff's electrical panel were unusual and/or not covered by the Policy. | Saskor Decl., ¶¶ 7-8, **Exhibits 2, 13-14**; Corona, ¶ 11.b |
| 88. | Farmers Direct paid Plaintiff the reasonable costs to replace her entire electrical panel. | Saskor Decl., ¶ 10.a; **Exhibit 7;** Means Decl., ¶ 32; Corona, ¶¶ 16-17 |
| 89. | Plaintiff's First Amended Complaint attaches a copy of a "Partial Home Remodel" estimate dated May 19, 2025 apparently prepared by "Progressive Home Remodeling" and Plaintiff has apparently interlineated the following message on the top of the first page of that estimate attached to her FAC as follows: **"Everything in this letter referenced as 'remodel' is meant to only imply replacement and repair work. Their company's name has the word Remodeling, however nothing here is targeting any kind of remodel job** | FAC, ¶ 19 (emphasis in original); *see also* Defendant's RJN [ECF Doc. 23-1, at p. 305]; see and compare Saskor ¶ 14, **Exhibits 16.** |
| 90. | Plaintiff does not have any evidence to support her contention that a "whole-home epoxy" of the flooring was necessary to restore the Property to its pre-Incident condition. | RFA No. 33, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 91. | Plaintiff does not have any evidence to support her contention that a "kitchen-island demo/rebuild" was necessary to restore the Property to its pre-Incident condition. | RFA No. 35, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ __, Exhibits __; *see also* Means Decl., ¶¶ __; *see also generally* Corona Decl., ¶ . |
| 92. | Plaintiff does not have any evidence to support her contention that a a "toilet wall/anchoring & | RFA No. 36, deemed admitted pursuant to Fed. R. Civ. Proc. |



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | bath restoration" was necessary to restore the Property to its pre-Incident condition. | 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 93. | Farmers Direct's decision that a water event occurring 12-months after the initial date of loss would require a new claim was reasonable and consistent with standard industry practices. | Hamilton Decl., ¶ 22. |
| 94. | Farmers Direct's handling of Plaintiff's claim for recoverable depreciation was reasonable and consistent with standard industry practices | Hamilton Decl., ¶ 20. |
| 95. | Farmers Direct collectively paid Plaintiff more than $9,000.00 (i.e., 9,1966.64) in Coverage A Policy benefits to repair property damage to the Plaintiff's residence (Dwelling) related to the Incident which exceeds the reasonable value to restore the Property to its pre-Incident condition. | Corona Decl., ¶¶ 11.a-11.c, 12-14; *see also* RFA Nos. 43-46, 52-55 56-59 and Exhibit C, Exhibit E and Exhibit F thereto, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 96. | The reasonable cost to repair the observed Incident-related damage was approximately $8,054.44 at replacement cost value which is less than the amount already paid by Farmers Direct (i.e., the $9,196.64 in Coverage A payments to Plaintiff). The difference in cost is due to the fact that Farmers Direct allowed for an upgraded breaker panel, 300 amp versus a 200 amp which was in place at the time of the loss and already code compliant. | Corona Decl., ¶ 14. |
| 97. | No additional repairs are needed beyond those already compensated by Farmers Direct to restore the Property to its pre-loss condition as a result of the Incident. | Corona Decl., ¶ 9. |
| 98. | The repairs estimates prepared by Farmers Direct are thorough and comprehensive and address all components of property damage at | Corona Decl., ¶¶ 10, 12. |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| | the Property that could have been caused as result of the Incident and the repair cost valuation methodology used by Farmers Direct is reasonable, more than fair and met or exceeded industry standards. | |
| 99. | Plaintiff has no evidence that Farmers Direct failed to properly investigate the Claim. | RFA Nos. 71-72, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 100. | The amount of time reasonably necessary to repair the observed Incident related damage and clean the Property following the Incident would not exceed 4 days and the Property would not be rendered uninhabitable as a result of the Incident. | Corona Decl., ¶ 15. |
| 101. | Plaintiff did not make a claim for any Additional Living Expense ("ALE") benefits under the Policy as result of the Incident and no receipts or other expense documentation were ever provided to Farmers Direct by Plaintiff. | RFA Nos. 29-30, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; *see also* Hamilton Decl., ¶ 17; Means Decl., ¶ 9. |
| 102. | Plaintiff did not submit any receipts, nor any other documentation, to Farmers Direct as part of the Claim to seek reimbursement of any Additional Living Expenses ("ALE") and/or for any "lodging, meal" and/or "transportation costs" as part of the CLAIM, as referenced in paragraph 35(a) of the FIRST AMENDED COMPLAINT | RFA Nos. 29-30, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* Canby Decl., ¶¶ __, Exhibits __; *see also* Hamilton Decl., ¶ 17. |
| 103. | It would be reasonable to question whether Plaintiff's home was ever rendered uninhabitable from the Incident in the first instance. | Hamilton Decl., ¶ 17. |
| 104. | Plaintiff's residence was not rendered uninhabitable as result of the Incident. | Corona Decl., ¶ 8. |

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| 105. | Plaintiff does not have any evidence to support her claim that Farmers Direct breached the implied covenant of good faith and fair dealing in connection with the Claim as alleged in the Second Cause of Action in the First Amended Complaint. | RFA Nos. 29-30, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 106. | Farmers Direct's investigation and evaluation of Plaintiff's claim, reasonably complied with the claims handling standards promulgated by the State of California. | Hamilton Decl., ¶¶ 25-27. |
| 107. | Plaintiff does not have any evidence that an officer, director, or managing agent of Farmers Direct is guilty of oppression, fraud, or malice in connection with the Claim. | RFA No. 74, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 108. | Plaintiff does not have any evidence to support her request for punitive and/or exemplary damages under Civil Code Section 3294 against Farmers Direct as sought in her First Amended Complaint, Prayer For Relief, at Item 8. | RFA No. 75, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 109. | January 28, 2025 was the first time that Plaintiff disclosed her "gender confirmation treatment" to anyone working on behalf of Farmers Direct but she did not disclose whether she or not she identified with any particular gender and did not disclose any preferred gender identifiers. | RFA Nos. 6, 9-10, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; Spradling Decl., ¶ 8. |
| 110. | January 28, 2025 was the first time that Plaintiff disclosed her "gender confirmation treatment" to anyone working on behalf of Farmers Direct and it was a stray reference buried within a larger 18 page "FAX" transmission directed to "farmers insurance" from "julio ravada" but she did not disclose whether she or not she identified with any particular gender and did not disclose any | Saskor Decl., ¶ 8, **Exhibit 2**. |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| | preferred gender identifiers and did not mention the name "Luna" at all (the communication was signed "Julio Ravada." | |
| 111. | Plaintiff continued to use the name "Julio Ravada," "Julio R" and/or "Julio" in emails and other communications with Farmers Direct after January 28, 2025. | RFA Nos. 7-8, 11-12, 14-17 and Exhibit B thereto, all deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; Declaration of Bryce Spradling, ¶¶ 5-10, **Exhibits 2-4.** |
| 112. | Plaintiff continued to use the email address "jravada@icloud.com" to communicate with Farmers Direct after January 28, 2025. | RFA No. 13, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 113. | Later on or about February 7, 2025, as part of a 9 page "FAX" transmission (which included copies of many of those controversial receipts) again buried on the third page Plaintiff accused Michael Saskor of alleged "unlawful gender-based harassment" because he allegedly said "Thank you, sir," to Plaintiff at the end of the call and she also included the following small "P.S." notation: "Please address me as Luna (she / her / hers)." | Spradling Decl., ¶ 9_, **Exhibit 3.** |
| 114. | Plaintiff continued to use the name "Julio Ravada," "Julio R" and/or "Julio" in emails and other communications with Farmers Direct after January 28, 2025, including in numerous email communications sent to Property Theft Supervisor Bryce Spradling in March and April of 2025. | RFA Nos. 14-17 and Exhibit B thereto, all deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4;** *see also* Spradling Decl., ¶ 10, **Exhibit 4.** |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

| **SUF No.** | **FACT** | **Supporting Evidence** |
|---|---|---|
| 115. | Farmers Direct issued additional payments to Plaintiff on the Claim after Plaintiff disclosed her participation in "gender confirmation treatment" to Farmers Direct. | RFA Nos. 69 deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4.** |
| 116. | Plaintiff does not have any evidence to support a claim of "unlawful discrimination under the Unruh Civil Rights Act" against Farmers Direct. | RFA No. 18., deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28. |
| 117. | Plaintiff does not have any evidence that her gender, her gender identity, her participation in "gender confirmation treatment," her identification as a female, her identification as male and/or that any protected characteristic was a motivating factor for Farmers Direct's denial of any aspect of the Claim. | RFA Nos. 19-24, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28. |
| 118. | Plaintiff does not have any evidence that anyone working on behalf of Farmers Direct intentionally discriminated against her in the handling of the Claim. | RFA Nos. 25, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28. |
| 119. | Plaintiff does not have any evidence that any alleged "misgendering" of her by anyone working on behalf of Farmers Direct was anything other than an honest mistake. | RFA Nos. 26, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); *see* , **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |

| SUF No. | FACT | Supporting Evidence |
|---|---|---|
| 120. | Plaintiff does not have any evidence to support her request for an "[a]ward [of] statutory damages under Civil Code § 52(a) and § 52(f)" for alleged "discrimination in a business establishment" by Farmers Direct (as sought by Plaintiff in her First Amended Complaint, Prayer for Relief, Item 7). | RFA Nos. 26, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28. |
| 121. | Plaintiff failed to timely respond to Farmers Direct's Request for Admissions Set One that where served June 2, 2026, and no responses have been provided at all and her responses are now deemed admitted pursuant to Federal Rule of Civil Procedure 36(b)(1). | Canby Decl., ¶¶ 10-13, 20-25, **Exhibits 10-12**; Martinez Decl., ¶¶ 2-9; **Exhibits 1-4**. |
| 122. | Farmers Direct timely served its Expert Witness Disclosures on July 15, 2026; however, Plaintiff failed to serve any Expert Witness Disclosures, failed to designate any experts by the July 15, 2026 disclosure deadline and has not designated any rebuttal experts such that the opinions of Farmers Direct's experts are undisputed and unrebutted. | Canby Decl., ¶¶ 14-19, **Exhibits 14, 24.** |

## II. CONCLUSIONS OF LAW

A. Farmers Direct is entitled to summary judgment, or alternatively partial summary judgment, on the First Cause of Action in the First Amended Complaint (breach of contract) because Plaintiff has failed to establish that Farmers Direct has withheld or denied any policy benefits due or owing to Plaintiff for the June 4, 2024 vandalism/theft incident ("Incident").

B. Farmers Direct is entitled to summary judgment, or alternatively partial summary judgment, on the Second Cause of Action in the First Amended Complaint (breach of the implied covenant of good faith and fair dealing) because Plaintiff has failed to produce any competent evidence that Farmers Direct acted unreasonably in



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

handling Plaintiff's property damage claim and because there was a genuine dispute regarding the valuation of the damaged property and/or a genuine dispute as to whether the claimed property damages were caused as result of the Incident.

C. Although not plead as a separate standalone cause of action by Plaintiff in the First Amended Complaint, Farmers Direct is entitled to summary judgment, or alternatively partial summary judgment, on Plaintiff's claim of "unlawful discrimination" for alleged violations of the Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.) ("Unruh Act") (*see e.g.,* First Amended Complaint, ¶¶ 17, 30 and Prayer for Relief ¶¶ 7, 13) because Plaintiff has failed to produce any competent evidence that Farmers Direct engaged in any willful, affirmative misconduct with the specific intent to discriminate against Plaintiff based on her gender, gender identity and/or transgender status and/or because Farmers Direct lacked knowledge of Plaintiff's protected status and/or because Farmers Direct's conduct was justified by a legitimate, nondiscriminatory reason (e.g., Farmers Direct's Policy was issued to the named insured Julio Ravada which Plaintiff never sought to change).

D. Farmers Direct is entitled to summary judgment, or alternatively partial summary judgment, on Plaintiff's request for punitive damages because Plaintiff alleges no specific facts and has produced no credible evidence to warrant the imposition of punitive damages against Farmers Direct as a matter of law.

Dated: August 31, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By [signature]
Michelle R. Bernard
Kelly Fitzgerald Canby
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101