MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUNA D'SOL,

Plaintiff,

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

Case No. 2:25-cv-10938-SVW-ASx

**DECLARATION OF BRYCE SPRADLING IN SUPPORT OF DEFENDANT FARMERS DIRECT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**

Judge: Hon. Stephen V. Wilson
Date: September 28, 2026
Time: 1:30 p.m.
Courtroom: 10A

Filed Concurrently With: Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities; Separate Statement of Uncontroverted Facts and Conclusions of Law; Supporting Declarations of Kelly Fitzgerald Canby, David A. Corona, Paul Hamilton, Michael Saskor and Donnie Means; Notice of Lodgment; and [Proposed] Order

Complaint Filed: August 21, 2025

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**DECLARATION OF BRYCE SPRADLING**

I, BRYCE SPRADLING, declare as follows:

1. I work as a Property Theft Supervisor on behalf of Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") and have done so for more 6 years and spent several years before that working as an Auto Claims Supervisor. This declaration is being submitted in support of Farmers Direct's Motion For Summary Judgment Or In The Alternative, Partial Summary Judgment in the above-entitled action filed by Pro Per Plaintiff Luna D'Sol ("Plaintiff"). I have personal knowledge of the matters contained in this declaration and if called to testify to them, I could and would do so competently.

2. Farmers Direct issued Policy Number 3872340940 to the named insured "Julio R. Ravada" (who is now known as Luna D'Sol and the Plaintiff in this action) for the policy period effective September 28, 2023 to September 28, 2024 ("Policy"). Subject to its terms, the Policy provides first-party property coverage for the residence premises located at 2275 E. Belding Dr., Palm Springs, California 92262 ("Property"), including coverage for the Dwelling, Private Structures, Personal Property and Loss of Use. The Policy has a $2500 deductible. As noted on the Declarations, the Policy does not include Building Code Upgrade Coverage. Attached hereto as **Exhibit 1** is a true and correct copy of a certified copy of Farmers Direct's Policy (i.e., Policy Number 3872340940) issued to "Julio R. Ravada."

3. On or about June 4, 2024, Plaintiff (then known as "Julio Ravada") notified Farmers Direct of an alleged burglary and vandalism incident that occurred at Plaintiff's home on June 3, 2024 ("Incident" or "Loss") and sought coverage under the Policy which was then assigned Claim No. 7007678692-1 ("Claim").

4. I became involved with the Claim in or around November of 2024 when the Claim was reassigned to General Adjuster Michael Saskor – I am Michael

Saskor's Supervisor -- as the previously assigned General Adjuster Richard Bryan transferred to another group within the company.

5. "Julio R. Ravada" is listed as the "Named Insured" on the Policy.

6. As far as I am aware based on my review of the Claim file, Plaintiff never asked Farmers Direct in writing (or otherwise) to remove "Julio R. Ravada" as the name of the "Named Insured" on the Policy as part of this Claim process.

7. As far as I am aware based on my review of the Claim file, Plaintiff never asked Farmers Direct to change the name of the listed "Named Insured" on the Policy from "Julio R. Ravada" to "Luna D'Sol" as part of this Claim process.

8. As far as I am aware, January 28, 2025 was the first time that Plaintiff disclosed her "gender confirmation treatment" to anyone working on behalf of Farmers Direct and this information was not immediately apparently given that her "FAX" was not directed to any particular person and this information was a stray reference buried within a larger 18 page "FAX" transmission (attaching various bank statements). Specifically, this communication is directed to "farmers insurance" from "julio ravada" but she did not disclose whether she identified with any particular gender, and did not disclose any preferred gender identifiers and did not mention the name "Luna" at all (this communication was signed as from "Julio Ravada"). Attached hereto as **Exhibit 2** is a true and correct copy (with bates numbers added) of an excerpt of this 18 page "FAX" (just the cover page and the page with the referenced information and the bank statements are intentionally omitted). I understand this same document is also attached as Exhibit A to Farmers Direct's Request for Admissions Set No. One.

9. Attached hereto as **Exhibit 3** is a true and correct copy (with bates numbers added) of another "FAX" sent by "Luna" to "farmers insurance" on about February 7, 2025, as part of a 9 page "FAX" transmission (which included copies of certain receipts submitted by Plaintiff related to sought recovery of depreciation of

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

allegedly replaced items). On the third page, Plaintiff included the following small "P.S." notation: "Please address me as Luna (she / her / hers)."

10. However, Plaintiff continued to regularly refer to herself as "Julio," "Julio R." and/or "Julio Ravada" in written communications she sent to me after February 7, 2025. Attached hereto as **Exhibit 4** are true and correct copies (with bates numbers added) of a collection of email communications between me and Plaintiff sent during March and April of 2025. I understand this same document is also attached as Exhibit B to Farmers Direct's Request for Admissions Set No. One.

11. Although some of Plaintiff's prior submissions of documentation seeking the recovery of depreciation for allegedly replaced items had been denied based on a finding of material misrepresentation, Farmers Direct later made a business decision to change that denial and allow Plaintiff another opportunity to provide appropriate and verifiable documentation within the time limits permitted by the Policy.

12. Although there were a number of communications sent by Plaintiff pertaining to this topic, I understand that Plaintiff attached a copy of some of our prior email communications as Exhibit P to her First Amended Complaint which includes a copy of a May 9, 2025 [12:12 PM] email she sent to me which states, in relevant part, the following: "**I would like to clarify that I am not attempting to recover any additional depreciation under the policy, as I have already successfully recovered that amount"** (emphasis added). Attached hereto as **Exhibit 5** is a true and correct copy of the May 9, 2025 [12:12 PM] email that Plaintiff sent to me which is found within her Exhibit P to the First Amended Complaint.

13. Attached hereto as **Exhibit 6** is an excerpt of an email (without exhibits) (with bates numbering added [FD003407-FD003408]) I sent to Plaintiff on or about August 18, 2025 to further explain the information that Michael Saskor had

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

previously sent to Plaintiff in July, 2025 related to Farmers Direct's prior payment in full for Plaintiff's Claim with regard to the painting as follows: "**The painting is line item 23 with a fully paid amount of $8,958.50. As this has been paid in full there is not additional fund owed for this item**."

14. Despite several suspicious aspect of Plaintiff's Claim which were reasonably investigated, including through the Examination Under Oath process and by Farmers Direct's Special Investigations Unit ("SIU"), Farmers Direct ultimately adjusted the Claim as a covered cause of loss.

15. Farmers Direct handled the Claim reasonably and fairly and the Plaintiff's identification as a female (or previously male), change from one gender to the other, transgender status, gender, participation in gender confirmation treatments and/or any other protected characteristic did not have any material impact on the outcome of her Claim and there was no discrimination.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 24 day of August, 2026 at Kansas City, Kansas.

Signed by:
BRYCE SPRADLING
A3EFE930691344C

Bryce Spradling

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT 1

FARMERS INSURANCE

Farmers Insurance PO Box 2602
Grand Rapids MI
49501-2602

September 29, 2025

Insured: JULIO R RAVADA
Policy Number: 3872340940
Claim Number: 7007678692-1
Loss Date: 06/03/2024
Policy Term: 12 Months

☐ Attached is a certified copy of the original information sent to the insured.

☒ Attached is a certified copy of the original declarations page, policyback and endorsements.

☐ Attached is a certified copy of the original declaration page.

☐ Attached is a certified reconstructed copy of the declaration page.

☐ Attached is a certified reconstructed copy of the declaration page, policyback and endorsements.

☐ Attached is a certified copy of the original cancellation.

Any additional Declaration Sheet(s) included with these documents labeled as "change or change-misc." may reflect a mid-term change in the policy and therefore a time period of less than the original policy term, however the dates reflect the most current policy information on file, up to and including the date of loss for the above-referenced claim.



Proprietary

Farmers and Casualty Insurance Company
**Homeowners Declarations**

08/14/2023V
ST 04

Page 1 of 4

**Policy Number:** 3872340940
**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy.

**Renewal Effective Date:** 09/28/2023

**Bill To:** Mortgagee

**Named Insured:**
JULIO R RAVADA
19525 SCHOOL CRAFT ST
RESEDA CA 91335

**First Mortgagee:** Loan 2108069981
SELECT PORTFOLIO SERVICING INC
ISAOA
PO BOX 7277
SPRINGFIELD OH 45501

**The residence premises covered by this policy is located at:**
2275 E BELDING DR PALM SPRINGS CA 92262

| **Basic Policy Coverages** | **Limits** | **Premiums** |
|---|---|---|
| A - Dwelling | $ 511,600 | $ 1,893.00 |
| B - Private Structures | $ 102,320 | |
| C - Personal Property | $ 358,120 | |
| F - Personal Liability: Each Occurrence | $ 500,000 | $ 38.00 |
| G - Medical Payments to Others: Each Person | $ 10,000 | $ 14.00 |
| Loss of Use | $ 127,900 | |

**Causes of Property Loss**
Special Perils

| | |
|---|---|
| **Building Property Loss Settlement** | |
| Extended Loss Settlement | Incl |
| **Personal Property Loss Settlement** | |
| Replacement Cost on Contents | Incl |
| **Additional Coverages** | |
| Workers Compensation Coverage | $ Incl |
| **Optional Coverages** | |
| Back Up of Sewer, Drain and Sump Pump Coverage $10,000 Limit, $1,000 Deductible | $ 23.00 |
| Schedule of Personal Property (See Attached) | $ 8.00 |
| **Current Annual Premium:** | **$ 1,976.00** |

**Deductible(s)**
$2500 deductible applies to each loss.

**Forms and Endorsements:** HP1000 0902 HP2000 0205 HP3300 0904 HP4520 0113
HP5100 0105 HP6000 0205 HP7000 0902 C117CA 0108 HA01CA 0108 HA30CA 0108
HF1300 0902 HF5800 0420 HF8000 0506

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 2 of 4<br>**Renewal Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

**Discounts** for the following have been included in the current annual premium:

* 30% Home Policy Plus, Including Automobile
* 15% Protective Device Discount
* A Special Group Rate Applies

## Rating Information

| | | |
|---|---|---|
| Territory 6 | Within 03 miles of | 1 Family |
| Protection Class 3 | Fire Department: | Frame Construction |
| Within 1000 ft of hydrant | PALM SPRINGS | Built in 1955 |
| Gravel Roof | Insured DOB 11/20/1984 | Updated in 1955 |
| Roof Age 09 Years | | |

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 3 of 4<br>**Renewal Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

**Messages**

Your policy has been renewed. Please read all items shown on this renewal Declarations Page to ensure that you have your desired protection.

Inflation Protection: Your limits for Coverages A, B, C, and Loss of Use reflect the construction price index increase of 8.5%.

This policy does not provide coverage against the Peril of Earthquake.

This policy does not include Building Code Upgrade Coverage.

California law requires us to inform you of your right to obtain from us an updated replacement cost estimate. The replacement cost is the estimated cost to reconstruct your house on its original site. It is based upon information you have shared with us and we have received from other independent sources including inspections.

You should carefully review your policy to assure yourself that you have purchased sufficient coverage from us. It is your responsibility to know and understand the amount of insurance you have purchased. If you believe anything on your policy declarations or rating information is incorrect, please contact us.

**IF CONTACT BETWEEN YOU AND FARMERS AUTO & HOME FAILS TO PRODUCE A SATISFACTORY SOLUTION TO YOUR PROBLEM, THE CONSUMER SERVICES DIVISION MAY BE CONTACTED AT: 1-800-927-4357 (CA RESIDENTS), 213-897-8921 (OUTSIDE CALIFORNIA) AND 1-800-482-4833 (TDD); ONLINE AT WWW.INSURANCE.CA.GOV; OR YOU MAY WRITE TO: CALIFORNIA DEPARTMENT OF INSURANCE 300 SPRING STREET, SOUTH TOWER, LOS ANGELES, CA 90013.**

**FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING DISCLOSURE: ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT INFORMATION TO OBTAIN OR AMEND INSURANCE COVERAGE OR TO MAKE A CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.**

We offer policies with Extended Replacement Cost Plus to qualified applicants. If you are interested in this additional coverage, or to see if you qualify, please contact us. You also may access the California Department of Insurance Homeowners Coverage Comparison Tool for more information at the following web address: HomeownersCoverageComparison.insurance.ca.gov.

The cost of any coverage indicated as "Incl" is included in the Basic Policy Coverages premium amount.

---

## Additional Insured/Mortgagee

First Mortgagee: Loan 2108069981
SELECT PORTFOLIO SERVICING INC
ISAOA
PO BOX 7277
SPRINGFIELD OH 45501

---

Docusign Envelope ID: 2DDDCA3C-BBA6-8841-826E-A1826A806027


| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 4 of 4<br>**Renewal Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

**Updated Policy Information**

This Policy Does Not Provide Coverage for Flood Damage.
BLANK

For service or claims, call 800-438-6381
or write to: Farmers Auto & Home
PO Box 6060
Scranton, PA 18505

319-02H-1

## Schedule of Personal Property

| Class | Item | Amount of Insurance | Description | | |
|---|---|---|---|---|---|
| 1B | | $1,500 | Blanket Jewelry Coverage ($2500 LIMIT PER ITEM) | | |
| | | | **Blanket Jewelry Premium** | **$** | **8.00** |
| | | | **Total Annual SPP Premium** | **$** | **8.00** |

# Farmers

# Homeowners Insurance Policy

THE COMPANY NAMED IN THE DECLARATIONS

Administrative Offices: Warwick, Rhode Island

# HOMEOWNERS INSURANCE POLICY

TABLE OF CONTENTS

**HOME** PAGE A-1

**INSURANCE AGREEMENT AND DECLARATIONS** A-1
**GENERAL DEFINITIONS** A-1
**SECTION I - COVERAGES** B-1
Coverage A - Dwelling
Coverage B - Private Structures

**CONTENTS AND ADDITIONAL COVERAGES** C-1

**COVERAGE C - PERSONAL PROPERTY** C-1
Personal Property Covered
Special Limitations on Certain Property
Personal Property Not Covered
**SECTION I - ADDITIONAL COVERAGES** D-1
Loss of Use
Debris Removal
Reasonable Repairs
Fire Department Charges
Emergency Removal of Property
Emergency Living Expense
Refrigerated Contents
Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money
Data and Records
Lock Replacement
Reward Coverage
Trees, Shrubs, Plants and Lawns
Loss Assessment
Land
Volcanic Action
Collapse
Inflation Protection
Landlord's Furnishings
Fungus and Mold Remediation

**CAUSES OF PROPERTY LOSS** E-1

**SECTION I - LOSSES WE COVER** E-1
Loss Deductible Clause
Coverage A - Dwelling
Coverage B - Private Structures
Coverage C - Personal Property
**SECTION I - BROAD NAMED PERILS** E-1
**SECTION I - LOSSES WE DO NOT COVER** F-1

**PROPERTY LOSS SETTLEMENT** G-1

**SECTION I - HOW WE SETTLE A PROPERTY LOSS** G-1
Coverage A - Dwelling and Coverage B - Private Structures
Coverage C - Personal Property

**PROPERTY CONDITIONS** PAGE H-1

**SECTION I - CONDITIONS** H-1
- Insurable Interest and Limit of Liability
- What You Must Do After a Loss
- Our Settlement Options
- Loss
- Loss to a Pair or Set
- Abandoned Property
- Appraisal
- Rights and Duties of Mortgagee
- No Benefit to Bailee

**LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES** I-1

**SECTION II - LOSSES WE COVER** I-1
- Coverage F - Personal Liability
- Coverage G - Medical Payments to Others

**SECTION II - LOSSES WE DO NOT COVER** I-1
- Coverage F - Personal Liability and Coverage G - Medical Payments to Others
- Coverage F - Personal Liability
- Coverage G - Medical Payments to Others

**SECTION II - ADDITIONAL COVERAGES** J-1
- Damage to Property of Others
- Claim Expenses
- First Aid Expenses
- Loss Assessment

**SECTION II - CONDITIONS** K-1
- Your Duties in the Event of an Accidental Loss
- What an Injured Person Must Do Under Coverage G - Medical Payments to Others

**OPTIONAL COVERAGES** L-1
- Earthquake
- Home Computer
- Private Structures Rented to Others
- Business Pursuits
- Watercraft Liability
- Incidental Business Occupancy by You

**GENERAL CONDITIONS** M-1
- Policy Period
- Concealment or Fraud
- Conformity to Statute
- Death
- Policy Changes
- Assignment
- Bankruptcy or Insolvency
- Our Recovery Right
- Lawsuit Against Us
- Other Insurance and Service Agreement
- Premium
- Cancellation
- Nonrenewal

# HOME

## INSURANCE AGREEMENT AND DECLARATIONS

This insurance policy is a legal contract between **you** (the policyowner) and **us** (the Company named in the Declarations). It insures **you** and **your** property for the various kinds of insurance shown in the Declarations. The Declarations are an important part of this policy. By acceptance of this policy, **you** agree that the statements contained in the Declarations and in any application are **your** true and accurate representations. This policy is issued and renewed in reliance upon the truth of such representation. The terms of this policy impose joint obligations on all persons defined as **you.** This means that the responsibilities, acts and failures to act of a person defined as **you** will be binding upon another person defined as **you.**

This policy is issued and renewed in reliance upon payment of the required premium. The exact terms and conditions are explained in the following pages.

## GENERAL DEFINITIONS

The following words and phrases appear repeatedly throughout this policy. They have a special meaning and are to be given that meaning whenever used in this policy or any endorsement which is part of this policy.

**"Actual cash value"** means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence.

**"Bodily injury"** means any physical harm to the body including any resulting sickness or disease. This term includes required care, loss of services and death if it is a result of such physical harm, sickness or disease.
**Bodily injury** does not include:
1. any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism;
2. the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person;
3. the actual, alleged or threatened sexual molestation of a person; or
4. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless the direct result of physical harm.

**"Business"** or **"business purposes"** means:
1. any full or part time activity of any kind engaged in for economic gain, and the use of any part of any premises for such purposes; and
2. **your** property rented or held for rental by **you.** Rental of the **residence premises** is not considered business when:
   A. it is rented occasionally for use as a residence;
   B. a portion is rented to no more than two roomers or boarders; or
   C. a portion is rented as a private garage.

**"Computer"** means a programmable electronic device that can store, retrieve and process data.

**"Fungus and mold"** means fungi, mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents or by-products produced by any of these.

**"Insured premises"** means:
1. the **residence premises** described in the Declarations;
2. any other premises specifically named in the Declarations and used by **you** as a residence;
3. any premises acquired by **you** during the term of this policy and used by **you** as a residence;
4. any premises used by **you** in connection with a premises described in 1., 2. or 3. above;
5. any premises not owned by **you** but where **you** may be temporarily residing;
6. any part of a premises occasionally rented to **you** for other than **business purposes;**
7. vacant land owned by or rented to **you,** other than farm land;

8. land owned or rented by **you** on which a one or two family dwelling is being constructed for **your** use as a residence; and
9. individual or family cemetery plots or burial vaults owned by **you.**

**"Media"** means the storage device upon which software is stored. This includes blank cassette tapes or disks used solely with the **computer** or **peripheral device.**

**"Medical expenses"** means reasonable expenses for necessary medical, surgical, x-ray, chiropractic, a mbulance, hospital, professional nursing, funeral and dental services, including prosthetic devices.

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy.

**"Peripheral device"** means any unit used to operate with the **computer** system. This includes tape or disk drives or printers.

**"Personal injury"** means injury arising out of one or more of the following offenses:
1. false arrest, false imprisonment or wrongful detention;
2. malicious prosecution;
3. wrongful eviction from or wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or in behalf of its owner, landlord or lessor;
4. oral, written or representational publication of material that slanders or libels a person or organization;
5. oral statements or publication of writings or pictures that falsely disparages a person's or organization's goods, products or services; or
6. oral statements or publication of writings or pictures that violates a person's right of privacy.

**"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

**"Purchased software"** means information or a program that is stored on a storage device such as a magnetic tape or disk for use on a **computer,** and has been purchased from another party.

**"Residence employee"** means **your** employee while performing duties arising out of and in the course of employment by **you** in connection with the maintenance or use of the **residence premises,** including similar duties elsewhere, not in connection with **your business.** This includes an employee leased to **you** by a labor leasing firm under an agreement with **you.**

**"Residence premises"** means:
1. a one, two, three or four family dwelling used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches; or
2. if **your** dwelling is a condominium, cooperative or leased property, the premises reserved for **your** exclusive occupancy and use, used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches if these are reserved for **your** exclusive occupancy and use.

This does not include any portion of a premises used for **business purposes.**

**"We," "us,"** and **"our,"** mean the Company named in the Declarations.

**"You"** and **"your"** mean:
1. the person or persons named in the Declarations and if a resident of the same household:
   A. the spouse of such person or persons;
   B. the relatives of either; or
   C. any other person under the age of twenty-one in the care of any of the above; and
2. under **SECTION II** only:
   A. any other person or organization legally responsible for loss caused by animals or watercraft owned by **you. We** will not cover any such person or organization using or having custody of animals or watercraft in any **business** or without **your** permission; and

B. with respect to the use of any vehicle, with **your** consent, to which this policy applies:
   1. any person while engaged in employment by **you;** or
   2. other persons using the vehicle on the **insured premises.**

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling Owners.** If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A. the dwelling owned by **you** on the **residence premises;** and
   B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

2. **Condominium Owners.** If **your** dwelling is a condominium or cooperative, **we** cover:
   A. the alterations, appliances, fixtures, and improvements and items of real property attached to **your** unit on the **residence premises;** and
   B. property which is **your** insurance responsibility under a corporation or association of property owners agreement.

3. **Renters.** If **your** dwelling is leased property, **we** cover the alterations, appliances, fixtures and improvements made or acquired at **your** expense which are part of the building and contained within the **residence premises** occupied, but not owned, by **you.**

**We** cover building equipment, materials and supplies, to the extent of **your** financial interest, located on or adjacent to the **residence premises** for use in connection with maintenance, construction, alteration, or repair of the dwelling or private structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

### COVERAGE B - PRIVATE STRUCTURES

At the location of the **residence premises:**

1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or
2. if **your** dwelling is a condominium, cooperative or leased property, **we** cover private structures:
   A. owned solely by **you** and separated from the dwelling by clear space; or
   B. available for **your** exclusive use and which are **your** insurance responsibility under a corporation or association of property owners agreement.

   Equipment, accessories, alterations, appliances, fixtures and improvements made or acquired at **your** expense which are attached to the private structure are also covered.

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures.

**We** do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

# CONTENTS AND ADDITIONAL COVERAGES

## COVERAGE C - PERSONAL PROPERTY

### Personal Property Covered

**We** cover personal property owned or used by **you** while it is anywhere in the world.

After a loss and at **your** option, this coverage may be extended to include personal property owned by:
1. others while on that portion of the **residence premises** occupied by **you;** or
2. a guest or **residence employee,** while the property is in a residence occupied by **you.**

If a covered loss occurs at the **residence premises, we** will pay up to the limit of liability for personal property for the location shown in the Declarations where the personal property is damaged, destroyed or stolen.

If a covered loss occurs away from **your** residence, **we** will pay up to the limit of liability shown in the Declarations for the selected single location from which the payment is to be made.

If a covered loss occurs at **your** residence not covered by this insurance or another policy for personal property issued to **you** by Metropolitan Property and Casualty Insurance Company or any of its affiliates, **we** will pay up to 10% of the limit of liability shown in the Declarations for the selected single location that provides the greatest coverage from which the payment is to be made. Personal property in a newly acquired principal residence is not subject to this 10% limitation for the 30 days immediately after **you** begin to move **your** property there.

If a theft loss occurs at a commercial self-storage facility, **we** will pay up to 20% of the limit of liability shown in the Declarations for the selected single location from which the payment is to be made. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

**We** will select a **residence premises** for personal property from which the payment is to be made for covered loss based upon the most favorable combination of the following:
1. **our** limit of liability and deductible;
2. the basis of loss settlement under **SECTION I - HOW WE SETTLE A PROPERTY LOSS;** and
3. the perils covered under **SECTION I - LOSSES WE COVER.**

Regardless of the number of policies or insured locations providing **you** with personal property coverage, payment will be made based only on this selected location.

### Special Limitations on Certain Property

**We** will not pay more than the following amount for each category in any one loss. These limitations do not increase the amount of insurance under **COVERAGE C - PERSONAL PROPERTY.**

1. **Money.** $200 for coins and currency at face value, bullion, bank notes, medals and scrip. It also includes stored value cards for which there exists no traceable connection to **you** or for which no account is established in **your** name.
   If Increased Coverage on Money is shown in the Declarations, then the $200 limit is increased to the amount shown.
2. **Securities.** $1500 for securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, stamps at face value, and tickets.
3. **Manuscripts.** $1500 for manuscripts, including the cost to research, replace or restore the information from the lost or damaged material.
4. **Jewelry.** $1500 for loss by theft of jewelry, watches, furs, and loose precious and semi-precious stones. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.
5. **Watercraft.** $1500 for watercraft, of all types, including their trailers, furnishings, equipment and outboard motors.
6. **Trailers.** $1500 for trailers not used with watercraft.
7. **Business Property.** $1000 for any property on the **residence premises** used or intended for use in a

**business.** $250 for any roperty away from the **residence premises** used or intended for use in a **business.** This includes merchandise held as samples or for sale or delivery after a sale. This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it.
If Increased Coverage on Business Property is shown in the Declarations, then the $1000 limit for property on the **residence premises** is increased to the amount shown and the limit of liability for loss away from the **residence premises** will be 20% of the amount shown.

8. **Computers.** $5000 for **computers** and the **peripheral device(s), media** and **purchased software** used with them. The **media** will be covered only up to its retail value, if pre-programmed, or the retail value of the **media** in blank or unexposed form, if blank or self-programmed.
9. **Firearms.** $2500 for loss by theft of firearms and related equipment. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.
10. **Silverware and Goldware.** $2500 for loss by theft of silverware and goldware. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.
If Increased Coverage on Silverware and Goldware is shown in the Declarations, then the $2500 limit is increased to the amount shown.
11. **Coin, Currency and Stamp Collections.** $1500 for numismatic and philatelic property for which the age, history, scarcity and condition contribute substantially to their value. Numismatic property includes coins and paper currency. Philatelic property includes postage stamps, postmarks, post cards and stamped envelopes.
12. **Memorabilia.** $5000 for memorabilia, souvenirs, and collector's items such as trading cards, comic books, autographed merchandise and similar articles for which the age, history, scarcity and condition contribute substantially to their value.
If Increased Coverage on Memorabilia is shown in the Declarations, then the $5000 limit is increased to the amount shown.
13. **Tools.** $5000 for loss by theft of tools. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations. Tools used or intended for use in a **business** are limited by Business Property above.
If Increased Coverage on Tools is shown in the Declarations, then the $5000 limit is increased to the amount shown.
14. **Compact Discs.** $1000 for loss by theft of tapes, wires or discs while in or upon a motorized land vehicle. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.
15. **Electronic Apparatus.** $1000 for loss to electronic apparatus, while in or upon a motorized land vehicle, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle while retaining its capability of being operated by other sources of power. Electronic apparatus includes accessories or antennas for use with any electronic apparatus. Electronic apparatus does not include items covered under Computers above.

**Personal Property Not Covered**

1. **We** do not cover articles separately described and specifically insured, regardless of the limit for which they are insured, by this or any other policy.
2. **We** do not cover animals, birds or fish.
3. **We** do not cover any motorized land vehicles and parts. **We** do not cover such property whether owned or operated by, or rented or loaned to **you.** This includes:
   A. their equipment and accessories; or
   B. electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motorized land vehicles. Electronic apparatus includes accessories or antennas for use with any electronic apparatus.

   The exclusion of property described in items 3.A. and 3.B. above applies only while the property is in or upon the vehicle.
   However, **we** cover unlicensed motorized land vehicles, not subject to registration, which are used solely to service and maintain residential property or designed for assisting the handicapped.
4. **We** do not cover aircraft and parts. Aircraft including self-propelled missiles and spacecraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.
5. **We** do not cover property of roomers and boarders not related to **you.**
6. **We** do not cover property of tenants, whether related to **you** or not.
7. **We** do not cover property regularly rented or held for rental to others when on the **residence premises**

except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Landlord's Furnishings.**

8. **We** do not cover property rented or held for rental to others when not on the **residence premises.**
9. **We** do not cover **business** and personal data and records including such data stored in books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to property covered under **SECTION I - ADDITIONAL COVERAGES** for **Data and Records.**
10. **We** do not cover **media** for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.
11. **We** do not cover credit cards, electronic fund transfer cards or access devices except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card Protection.**

## SECTION I - ADDITIONAL COVERAGES

The deductible will not apply to Section I - Additional Coverages, except where specified in the Additional Coverage.

1. **Loss of Use.** The limit of liability for Loss of Use is the total limit for the coverages in A. and B. below.
   A. **Additional Living Expense / Fair Rental Value.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold.** When a covered property loss makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, either of the following. However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below.

      1. **Additional Living Expense. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living. **Our** liability will not exceed the smallest of:
         a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;
         b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or
         c. the limit of liability for Loss of Use as specified in the policy Declarations.

      2. **Fair Rental Value. We** will pay the fair rental value of that part of the **residence premises** where **you** reside less any expenses that do not continue while the premises is not fit to live in. **Our** liability will not exceed the smallest of:
         a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;
         b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or
         c. the limit of liability for Loss of Use as specified in the policy Declarations.

   B. **Loss of Rental Income.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold. We** will pay **your** loss of rental income resulting from a covered property loss less charges and expenses which do not continue, while the part of the **residence premises you** rent to others, or hold for rental, is uninhabitable. Payment will be for the shortest time required to repair or replace the rented part. **We** do not cover the loss or expense due to cancellation of a lease or agreement.

   C. **Prohibited Use. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living and the loss of fair rental income when access to the **residence premises** is denied by civil authorities because of a loss to a neighboring premises caused by a peril **we** insure against. Payment is for a period of time not to exceed fourteen days. The period of time is not limited by expiration of this policy.

2. **Debris Removal**
   A. **We** will pay reasonable expenses **you** incur to remove:
      1. debris of covered property resulting from a cause of loss **we** cover for the damaged property; or
      2. ash, dust or particulate matter from a volcanic action that has caused direct loss to a building or covered personal property in a building.

This expense is included within **our** limit of liability that applies for the covered property. If the amount payable for the actual damage to the property plus the debris removal expense is more than **our** limit of liability for the covered property, **we** will pay up to an additional 10% of that limit for debris removal.

B. **We** will also pay up to $500 for any one loss for the reasonable expenses **you** incur for the removal from **your residence premises** of:
   1. **your** tree(s) felled by windstorm, hail or the weight of ice, snow or sleet, provided the tree:
      a. rests on or against the dwelling or building structure or caused damage to property covered under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
      b. blocks a driveway on the **residence premises** which prevents a motor vehicle from entering or leaving the **residence premises;** or
      c. blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling; or
   2. **your** neighbor's tree(s) felled by a loss caused by **SECTION I - BROAD NAMED PERILS** provided the tree:
      a. caused damage to property covered under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
      b. blocks a driveway on the **residence premises** which prevents a motor vehicle from entering or leaving the **residence premises;** or
      c. blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling.

3. **Reasonable Repairs.** **We** will pay the reasonable expenses **you** incur for necessary immediate and temporary repairs to protect covered property from further loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Charges.** **We** will pay up to $750 for **your** liability assumed by contract or agreement when a fire department is called to save or protect the **residence premises** from an insured peril. **We** do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Emergency Removal of Property.** **We** will pay for loss to covered property from any cause while being removed from a premises because of danger from a loss **we** cover. This coverage also applies to the property for up to 30 days from the date of removal. **We** will also pay for reasonable expenses **you** incur for the removal and return of the covered property. This coverage does not increase the limit of liability applying to the property being removed.

6. **Emergency Living Expense.** **We** will pay up to $500 for the reasonable increase in living expenses **you** incur due to a power interruption to the **residence premises.** The power interruption must take place away from the **residence premises.** The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout. Coverage does not begin until 48 hours after the power interruption begins.

7. **Refrigerated Contents.** **We** will pay up to $1000 for the contents of a freezer or refrigerated food storage unit on the **residence premises** for loss due to a mechanical failure or power interruption. If mechanical failure or power interruption is known to **you,** all reasonable means must be used to protect the property from further damage or this coverage is void. The policy deductible does apply to this coverage. The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout.

8. **Identity Theft and Credit Protection**
   A. **Identity Theft Resolution.** **We** will provide, at **our** expense, a representative of **our** choice to assist **you** in resolving issues of unauthorized use of **your** identity or **your** credit information. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. The expense of this assistance will not reduce the amount paid under this coverage.

   B. **Credit Card Protection.** **We** will pay up to $1000 for loss:

1. that **you** are legally required to pay because of the unauthorized use of any credit card or electronic fund transfer card issued to or registered in **your** name;
2. to **you** caused by forgery or alteration of any check or negotiable instrument; and
3. to **you** through acceptance in good faith of counterfeit United States or Canadian paper currency.

If Increased Coverage on Credit Card is shown in the Declarations, then the $1000 limit is increased to the amount shown.

Exclusions. **We** will not pay:

1. more than the limit of liability stated above. All loss due to forgery or unauthorized use by any one p`erson or in which that person is concerned is considered one loss;
2. any loss arising out of **your** dishonesty; or
3. any loss resulting from **your business** activities.

Defense

A. **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.
B. If a suit is brought against **you** for liability under the Identity Theft and Credit Protection coverage, **we** will provide a defense at **our** expense and by counsel of **our** choice.
C. **We** have the option to defend **you** or **your** bank, at **our** expense, against any suit for the enforcement of payment under the Forgery coverage.

9. **Data and Records.** **We** will pay up to $1500 for personal data and records when loss or damage is caused by **SECTION I - BROAD NAMED PERILS** or by computer virus. This includes the cost of blank books, cards or other blank material plus the cost of labor **you** incur to research, transcribe, copy, replace or restore the information from the lost or damaged material. Computer virus means an illegal or malicious entry into **your computer** which results in functions that distort, corrupt or manipulate the **computer, peripheral device** or **media.**
**We** do not cover **business** data and records.

10. **Lock Replacement.** **We** will pay the reasonable expenses to replace the exterior door lock or lock cylinder of the **residence premises** with a lock of like kind and quality when a key to the lock has been stolen during a theft of other personal property for which coverage is provided by this policy. **You** must report the theft to **us** and the police within 72 hours after discovery. This coverage is in addition to the limit of liability applying to the stolen property.

11. **Reward Coverage.** **We** will pay 10% of the amount of the loss to the **residence premises** up to $5000 to anyone providing information leading to an arson conviction in connection with the loss.

    **We** will pay anyone providing information leading to the recovery of personal property stolen from **you** 10% of the value of the recovered property up to $5000.

    **We** will pay 10% of the amount of the loss up to $1000 to anyone providing information leading to the arrest and conviction of anyone who robs, steals or burglarizes **your** property.

    These amounts shall not be increased regardless of the number of persons providing information. These coverages are in addition to the limit of liability applying to the damaged property.

12. **Trees, Shrubs, Plants and Lawns.** Coverage applies to direct loss caused by: fire or lightning, theft, explosion, aircraft, riot or civil commotion, vandalism or malicious mischief, vehicles not owned or operated by an occupant of the **residence premises,** or collapse of a building structure or any part of a building structure. This coverage is in addition to the limits of liability applying to Section I Property.

    **We** will pay up to $500 for any one tree, shrub or plant. **We** will pay up to 5% of the Coverage A limit of liability for loss to trees, shrubs, plants and lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 5% of the Coverage C limit of liability.

If Increased Coverage on Trees, Plants and Shrubs is shown in the Declarations, **we** will pay up to $1000 for any one tree, shrub or plant. **We** will pay up to 10% of the Coverage A limit of liability for loss to trees, shrubs and plants at the **residence premises** or 5% of the Coverage A limit for loss to lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 10% of the Coverage C limit of liability for loss to trees, shrubs and plants or 5% of the Coverage C limit for loss to lawns at the **residence premises.**

**We** do not cover trees, shrubs, plants and lawns grown for **business purposes.**

The policy deductible does apply to this coverage.

13. **Loss Assessment.** **We** will pay up to $1000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners. This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises.**

If Increased Loss Assessment is shown in the Declarations, then the $1000 limit is increased to the amount shown.

This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a peril covered under **SECTION I - LOSSES WE COVER** for **COVERAGE A - DWELLING.** This coverage does not include loss caused by:
A. earthquake; or
B. land shock waves or tremors before, during or after a volcanic eruption.

Regardless of the number of assessments, the limit referenced above is the most **we** will pay with respect to any one loss.

This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

A $250 deductible does apply to this coverage unless **you** also have a loss covered under Section I Coverage A, B or C from the same event.

This coverage is in addition to the limit of liability applying to the Coverage A, B or C property.

**We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

14. **Land.** If a structure covered under Coverage A or Coverage B sustains a covered loss, then **we** will pay up to $10,000 for the cost **you** incur to replace, rebuild, stabilize or otherwise restore the land necessary to support that portion of the structure that **you** own. This coverage is in addition to the limit of liability applying to the damaged property.
**We** will not pay for any:
A. loss caused by chemicals in the soil or resulting from the release of toxic materials or other pollutants or contaminants; or
B. assessment charged against **you** by a corporation or association of property owners.

15. **Volcanic Action.** **We** will pay for direct physical loss to a covered building or covered property in a building resulting from the eruption of a volcano when direct loss is caused by:
A. volcanic blast or airborne shock waves;
B. ash, dust or particulate matter; or
C. lava flow.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit of liability applying to the damaged property.

The policy deductible does apply to this coverage.

16. **Collapse. We** will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:
    A. perils described in **SECTION I - BROAD NAMED PERILS;**
    B. hidden decay of the structure;
    C. hidden insect or hidden vermin damage;
    D. weight of contents, equipment, animals or people;
    E. weight of ice, snow, sleet or rain which collects on a roof; or
    F. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, septic field, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items B., C., D., E., and F. unless the loss is a direct result of the collapse of a building.

    Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
    This coverage does not increase the limit of liability applying to the damaged covered property.

    The policy deductible does apply to this coverage.

17. **Inflation Protection.** The limits of liability specified in the Declarations of this policy, or any amendments thereto, for Coverages A, B and C and Loss of Use are continuously adjusted in accordance with the applicable construction price index in use by **us**. This index will then be multiplied by the limit of liability for Coverages A, B and C and Loss of Use separately.

18. **Landlord's Furnishings. We** will pay up to $2500 for **your** appliances, carpeting and other household furnishings in each apartment on the **residence premises** regularly rented or held for rental to others by **you** for loss caused by **SECTION I - BROAD NAMED PERILS** other than **Theft.** The $2500 limit is the most **we** will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss. This coverage does not increase the limit of liability applying to the damaged property.

19. **Fungus and Mold Remediation. We** will pay up to a limit of $5000 for remediation treatment and remediation testing as necessary to complete the repair or replacement of the damaged property. This coverage applies when property covered under Coverages A, B or C is damaged by a covered water loss. Furthermore, this coverage applies only if all reasonable means were used to save and preserve the property from further damage at and after the time of the covered water loss. This limit includes:
    a. the cost to tear out and replace any part of the covered property necessary to gain access to any organisms listed under remediation treatment; and
    b. if the need for remediation treatment or remediation testing makes the **residence premises** uninhabitable, the reasonable increase in living expenses and **your** loss of rental income. Payment will be for the shortest time required to perform the remediation treatment or remediation testing.

    Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold.**

    Remediation testing includes any testing or investigation of either property or air to detect, measure, evaluate or confirm the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

    If more than one **residence premises** is insured under this policy, this is the most **we** will pay, for any one

loss at any one covered location, for the total of all loss or costs payable under this Additional Coverage. This applies regardless of the number of claims made under this policy.

If Increased Coverage on Fungus and Mold Remediation is shown in the Declarations, then the $5000 limit is increased to the amount shown.

20. **Dwelling Under Construction Extension of Coverages.** This coverage is contingent upon prior written notification to **us** by **you** that the dwelling described in the Declarations is under its initial construction and has not been completed and occupied. This coverage remains in force until the dwelling is completed and occupied or the policy expires, cancels or terminates, whichever comes first.

A. Provisional Amount of Insurance
The limit of liability stated in the Declarations for Coverage A is provisional, and is based upon the projected value of the dwelling at the date of completion. The actual amount of insurance on any date while the policy is in force will be a percentage (%) of the provisional amount. The percentage (%) will be the proportion that the actual value of the property at the time of loss bears to the projected value at the date of completion. However, this amount of insurance shall not, in any case, exceed the limit of liability stated in the Declarations for Coverage A.

B. **We** agree to extend **COVERAGE C - PERSONAL PROPERTY, COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** to the residence where **you** are residing while waiting for the dwelling under construction described in the Declarations to be completed and occupied.

C. Theft of Personal Property
**We** cover loss of personal property by theft in or from a dwelling under construction at the location described in the Declarations, only if the dwelling is fully enclosed and capable of being locked. The personal property must be owned by **you,** not supplied by the contractor. **We** do not cover theft committed by anyone defined as **you.** Coverage will be in force until the dwelling is completed and occupied.

D. Deductible. The policy deductible does apply to this coverage.

# CAUSES OF PROPERTY LOSS

## SECTION I - LOSSES WE COVER
(SPECIAL PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**COVERAGE A - DWELLING AND COVERAGE B - PRIVATE STRUCTURES**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in **SECTION I - LOSSES WE DO NOT COVER.**

**COVERAGE C - PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C when loss or damage is caused by **SECTION I - BROAD NAMED PERILS**, except as excluded in **SECTION I - LOSSES WE DO NOT COVER.**

## SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

1. **Fire or Lightning**
2. **Windstorm or Hail**
   **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.
   **We** do not pay for loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building. **We** do cover canoes and rowboats on the **residence premises.**
3. **Explosion**
4. **Riot or Civil Commotion**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles**
7. **Smoke,** if the loss is sudden and accidental including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.
   **We** do not pay for loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or Malicious Mischief**
   **We** do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant.
9. **Theft,** or attempted theft, including loss of property from a known place when it is likely that a theft has occurred. **We** do not pay for loss caused by theft:
   A. if committed by **you** or by any person regularly residing on the **residence premises;**
   B. in or from a dwelling under construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or
   C. from any part of the **residence premises** rented by **you** to others.

**We** do not pay for loss caused by theft that occurs away from the **residence premises** of:

A. property while in any other residence owned, rented to or occupied by **you,** except while **you** are temporarily residing there. Coverage is provided for a student's property while at a premises away from home if the student has been there at any time during the 45 days immediately preceding the loss;
B. watercraft of all types including its furnishings, equipment and outboard motors; or
C. trailers and campers.

10. **Falling Objects**
**We** cover loss to personal property inside a building only if the falling object first damages the exterior walls or roof. Damage to the falling object itself is not covered.
11. **Weight of Ice, Snow or Sleet** which causes damage to a building or to property contained in a building.
**We** do not cover loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.
12. **Discharge or Overflow of Water or Steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance. The loss must be sudden and accidental. With regard to **your** property covered under Coverage A or Coverage B, **we** also will pay to tear out and replace any part of a building or other structure on the **residence premises** but only when necessary to repair the system or appliance from which the water or steam escaped. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the **residence premises. We** do not pay for loss:
A. to the system or appliance from which the water or steam escapes;
B. caused by or resulting from freezing under this peril;
C. caused by water which backs up through sewers or drains;
D. caused by water which overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from the foundation area;
E. caused by water which overflows from a roof drain, gutter, downspout or similar fixtures or equipment; or
F. on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.
13. **Rupturing, Cracking, Burning or Bulging** of a steam or hot water heating system, an air-conditioning or automatic fire protective sprinkler system, or an appliance for heating water. The loss must be sudden and accidental. **We** do not pay for loss caused by or resulting from freezing under this peril.
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a domestic appliance.
**We** do not pay for loss on the **residence premises** while the dwelling is unoccupied, unless **you** have used reasonable care to maintain heat in the building or have shut off the water supply and drained the water from all plumbing and appliances. However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply. For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment.
15. **Sudden and Accidental Damage from Electrical Currents Artificially Generated** to electrical appliances, devices, fixtures and wiring.
16. **Breakage of Glass or Safety Glazing Material**
**We** will pay for direct physical loss to covered property caused by the breakage of glass or safety glazing material which is part of a building, window or door on the **residence premises.**
**We** do not pay for loss if the dwelling was vacant for more than 30 consecutive days immediately prior to the loss. A dwelling being constructed is not considered vacant.

## SECTION I - LOSSES WE DO NOT COVER

1. **We** do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. **We** do not insure for any such loss regardless of:
(a) the cause of the excluded event;
(b) other causes of the loss; or
(c) whether such causes acted at the same time or in any other sequence with the excluded event to produce or contribute to the loss.

These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area. The excluded events are listed below.

A. **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
   1. by **you** or at **your** direction; and
   2. with the intent to cause a loss.

   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

   In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

B. **Pollution,** meaning loss or damage to property which results directly or indirectly from:
   1. discharge, dispersal, release or escape of pollutants or contaminants, including damage caused by chemicals in the soil and loss resulting from the release of toxic materials or other pollutants or contaminants, no matter how caused;
   2. discharge, dispersal, release or escape of fuel oil and other petroleum products; or
   3. smog; smoke from agricultural smudging or industrial operations.

   However, **we** pay for direct loss that ensues after pollution. **We** pay for such ensuing loss only if caused by fire, smoke that is not from agricultural smudging or industrial operations, explosion, glass breakage, or water damage not specifically excluded in this policy. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

C. **Lead Exposure,** meaning loss or damage to the **residence premises** or any property owned, rented or controlled by **you** (including private structures and private approaches), which result directly or indirectly from the presence of lead. **We** do not pay for any costs or expenses incurred or loss arising out of:
   1. the abatement, neutralization, cleanup, removal, repair, refurbishing or treatment of:
      a. lead;
      b. property containing lead;
      c. soil, or earth containing lead;
      d. water, pipes or plumbing containing lead;
      e. paint, putty, dust or plaster containing lead; or
      f. any other product or substance containing lead; or
   2. any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
      a. lead;
      b. property containing lead;
      c. soil, or earth containing lead;
      d. water, pipes or plumbing containing lead;
      e. paint, putty, dust or plaster containing lead; or
      f. any other product or substance containing lead.

D. **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:
   1. flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
   2. water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
   3. water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure or water which causes earth movement.

   This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

   However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and

then **we** pay for only the ensuing loss.

E. **Earth Movement,** meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:
1. earthquake and earthquake aftershocks;
2. volcanic eruption and volcanic effusion;
3. sinkhole;
4. subsidence;
5. mudslide including landslide, mudflow, debris flow, avalanche or sediment;
6. erosion or excavation collapse;
7. the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and
8. volcanic explosion and lava flow, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Volcanic Action.**

This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after earth movement if caused by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing material and then **we** pay for only the ensuing loss.

F. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy.

G. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises,** except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Emergency Living Expense.** If a loss **we** pay for ensues on the **residence premises, we** pay for only the ensuing loss.

H. **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against.

I. **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke.

However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

J. **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except:
1. conditions **we** insure under **Prohibited Use** of **SECTION I - ADDITIONAL COVERAGES** for **Loss of Use;** or
2. acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this policy.

K. **Collapse,** except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Collapse.**

2. **We** do not insure under any coverage for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusion 3. below regardless of whether one or more of the items below (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;
B. defective, inadequate, faulty or unsound:
   1. planning, zoning, development, surveying, siting;
   2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   3. materials used in repair, construction, renovation or remodeling; or
   4. maintenance;

   of any property whether on or off the **residence premises.** Property includes land, structures or improvements of any kind; and
C. weather conditions.

   However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3. **We** do not cover loss or damage to the property described in Coverage A and Coverage B which results directly or indirectly from any of the following:
   A. wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

   B. **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation;**

   C. settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

   D. animals owned or kept by **you** or any person regularly residing on the premises;

   E. birds, vermin, rodents or insects;

   F. theft in or from the **residence premises** while under construction, or of materials and supplies for use in the construction, until the **residence premises** is completed and occupied;

   G. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a domestic appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if **you** have used reasonable care to maintain heat in the building or if **you** shut off the water supply and drained the plumbing and appliance of water. However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

      For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment;

   H. freezing, thawing or pressure or weight of water, snow or ice, whether driven by wind or not, to a swimming pool including filtration, heating and circulation systems, fence, driveway, roadway, walkway, pavement, patio, foundation, footing, retaining wall, bulkhead, pier, wharf or dock;

   I. seepage, meaning continuous or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, from within:
      1. a heating system;
      2. an air conditioning system;
      3. an automatic fire protective sprinkler system;
      4. a domestic appliance; or
      5. a plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

However, **we** pay for ensuing damages to building property that results from such seepage if the leakage of water is not able to be observed and is hidden within the walls or ceilings or above the ceilings or beneath the floors but not below the slab or foundation floor of a structure.

For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment;

J. pressure from or presence of tree, shrub or plant roots; or

K. vandalism or malicious mischief or breakage of glass and safety glazing materials, and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant.

**We** pay for any direct loss that follows items A. through I. to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

# PROPERTY LOSS SETTLEMENT

## SECTION I - HOW WE SETTLE A PROPERTY LOSS

1. **Coverage A - Dwelling and Coverage B - Private Structures**
   Covered property losses are settled as follows.

   A. **Actual Cash Value Settlement.** Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property, but no more than the lesser of:
   (i.) the amount required to repair or replace the damaged property with property of like kind and quality; or
   (ii.) the limit of liability applying to the property.

   1. Actual Cash Value Settlement applies to the following types of property:
      a. aerials, antennas and awnings;
      b. cesspools, septic tanks and septic fields;
      c. outdoor equipment and swimming pools;
      d. structures that are not buildings;
      e. wall-to-wall carpeting unless **Replacement Cost on Contents** for **COVERAGE C - PERSONAL PROPERTY** applies; and
      f. household appliances unless **Replacement Cost on Contents** for **COVERAGE C - PERSONAL PROPERTY** applies.

      The provisions of paragraphs A.2., B. and C. below do not apply to the above types of property.

   2. If **you** repair or replace the damaged or destroyed property, **you** may make further claim for any additional payments for **Replacement Cost Settlement** provided:
      a. **you** have not reached the applicable limit of liability;
      b. **you** still have an insurable interest in the property;
      c. **you** notify **us** within 180 days after the date of **actual cash value** payment of **your** decision to repair or replace the damaged or destroyed dwelling or private structure;
      d. **you** notify **us** within 30 days after the repair or replacement has been completed; and
      e. the date of completion is within one year from the date of **actual cash value** payment.

      The foregoing time limitations shall apply unless **you** or **your** representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation.

   B. **Replacement Cost Settlement.** If at the time of loss the amount of insurance applicable is determined to be 80% or more of the full current replacement cost, **we** will pay the full cost of repair or replacement, subject to the applicable deductible, without deduction for depreciation subject to the following:
   1. **we** will not be liable unless and until actual repair or replacement is complete; and
   2. **our** liability will not exceed the smallest of:
      a. the limit of liability applicable to the building;
      b. the cost to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use; or
      c. the amount actually and necessarily spent to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use.

      If **you** rebuild **your** building or purchase an existing building at an address other than shown in the Declarations, the replacement will not increase the amount payable under this settlement. The amount payable does not include the value of any land associated with the replacement building(s).

   If at the time of loss the amount of insurance applicable is determined to be less than 80% of the full current replacement cost and **Extended Limits** does not apply, **we** will pay the **actual cash value** or the amount determined from the **Coinsurance Provision,** whichever is the highest. **Our** payment is subject to the applicable deductible. **We** will pay no more than the limit of liability applicable to the building.

   In determining the amount of insurance required to equal 80% of the full current replacement cost, the value of foundations and the following underground items will be disregarded:
   a. footings;
   b. pipes;

c. wiring; and
d. drains.

**Coinsurance Provision.** This provision applies to buildings covered under **COVERAGE A - DWELLING** and **COVERAGE B - PRIVATE STRUCTURES** when the amount of insurance shown in the Declarations is less than the required amount of 80% of the full current replacement cost value of the building. **We** compare the amount of insurance purchased to the required amount of insurance and apply that percentage to the loss after application of the deductible. The resulting amount is the most **we** will pay. **We** will not pay for the remainder of the loss.

C. **Extended Limits.** For the dwelling under Coverage A, **we** will pay the **Actual Cash Value Settlement** or **Replacement Cost Settlement** as provided in 1.A. and 1.B. above even if that cost exceeds the Coverage A limit of liability shown in the Declarations. However, **we** will pay no more than 125% multiplied by the Coverage A limit of liability shown in the Declarations which resulting dollar amount then becomes the new limit of liability provided under this coverage. Payment under this provision will not include any increased costs of loss or damage resulting from the requirement of, or enforcement of, any ordinance or law regulating the construction, repair, demolition or zoning of the dwelling under Coverage A unless specifically provided under this policy.
The following requirements apply:
1. **you** obtained Extended Limits by insuring **your** dwelling to 100% of its replacement cost based on the accuracy of information **you** furnished in the completion of **our** home replacement cost estimator or upon an inspection by **us** of the **residence premises;**
2. **you** have kept **your** insurance continuously without lapse and have accepted the Inflation Protection provision in this policy including each annual adjustment in the **COVERAGE A - DWELLING** limit of liability automatically applied to **your** policy at each renewal; and
3. **you** must have notified **us** within 90 days after the start of any additions or other physical changes which increase the replacement value of **your** dwelling by $25,000 or more.

D. **We** will pay no more than the $10,000 limit of liability on **Land** as provided in **SECTION I - ADDITIONAL COVERAGES.**

2. **Coverage C - Personal Property**
Covered property losses are settled as follows.

A. **Actual Cash Value Settlement.** Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property. **We** will pay no more than the lesser of:
1. the amount required to repair or replace the damaged property with property of like kind and quality; or
2. the limit of liability applying to the property.

B. **Replacement Cost on Contents**
**This applies when Replacement Cost on Contents is shown in the Declarations.**
If **you** repair or replace the damaged or destroyed property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation.
1. This settlement applies to:
   a. carpeting, including wall-to-wall carpeting under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
   b. household appliances including built-in appliances under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
   c. personal property covered under **COVERAGE C - PERSONAL PROPERTY** other than the types listed under 4. below; and
   d. articles or classes of property separately described and specifically insured in this policy.

2. **Our** liability for any loss shall not exceed the smallest of the following amounts for any one loss:
   a. the cost to replace the property with a similar property of like kind and quality;
   b. the full cost of repair to restore the property to its original condition;
   c. the limit of liability for Coverage C shown in the Declarations subject to the **Special Limitations on Certain Property** under **SECTION I - COVERAGES, COVERAGE C - PERSONAL PROPERTY;** or

d. the limit of liability that applies to any item separately described and specifically insured under this policy.

3. If **you** decide not to repair, restore or replace the damaged or stolen property, settlement will be on an **actual cash value** basis. **You** may make further claim within 180 days after the date of **actual cash value** payment for any additional payment on a replacement cost basis if **you** repair, restore or replace the damaged or stolen property.

4. Replacement Cost on Contents does not apply to the following types of personal property:
   a. antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced with new articles;
   b. articles for which the age, history, scarcity or condition contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs, and collectors' items such as trading cards, comic books, and autographed merchandise;
   c. property which is obsolete or unusable because of its age or condition prior to the loss, or not being used for the purpose for which it was originally intended;
   d. articles separately described and specifically insured in any other policy;
   e. watercraft, including their trailers, furnishings, equipment and outboard motors;
   f. motorized land vehicles principally designed for recreational use; and
   g. when classified under **COVERAGE C - PERSONAL PROPERTY:**
      1) aerials, antennas, awnings;
      2) outdoor equipment and swimming pools; or
      3) structures, other than building structures.

   The above items are subject to **Actual Cash Value Settlement.**

# PROPERTY CONDITIONS

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability. We** will not pay any person or organization an amount greater than its insurable interest in the property covered at the time of the loss.
   Regardless of the number of persons or organizations who qualify for coverage, **we** will not pay more than the applicable limit of liability.

2. **What You Must Do After a Loss. We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.
   A. Immediately notify **us** or **our** representative.
   In case of theft, promptly notify the police.
   In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

   B. Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

   C. Cooperate with **us** in the investigation of a claim.

   D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item. Attach to the inventory all bills and other documents that substantiate the figures in the inventory.

   E. At any reasonable time and place **we** designate, and as often as **we** reasonably require:
      1. show **us** the damaged property;
      2. submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you",** and sign and swear to the answers: and
      3. allow **us** to examine and copy or abstract any records and documents **we** request.

   F. Within 60 days after **our** request, **you** must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:
      1. the time and cause of loss;
      2. **your** interest and that of any other person in the property involved and all encumbrances on the property;
      3. a description of each item, including all information contained in the inventory described above;
      4. a description of other insurance policies that might apply to the loss;
      5. any changes in ownership, use, possession or location of the property that took place since this policy was issued;
      6. if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;
      7. specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
      8. receipts for additional living expenses **you** incur and records supporting the fair rental value; and
      9. evidence or affidavit supporting a claim under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money,** stating the amount and cause of loss.

3. **Our Settlement Options. We** will adjust all losses with **you. We** will pay **you** unless another payee is named in the policy. **We** will pay within 60 days after the amount of loss is agreed upon. This amount may be determined by an agreement between **you** and **us,** an appraisal award or entry of a final judgment, subject to **SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

   **We** have the option of taking all or part of the property at the agreed or appraised value. **We** have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** signed, sworn proof of loss.

4. **Loss.** Any loss **we** pay under this policy does not reduce the limit of liability.

5. **Loss to a Pair or Set.** In case of loss to a pair or set **we** may elect to:
   A. repair or replace any part to restore the pair or set to its value before the loss; or
   B. pay the difference between **actual cash value** of the property before and after the loss.

6. **Abandoned Property. We** are not obligated to accept any property or responsibility for any property abandoned by **you.**

7. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

   The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

   **You** will pay the appraiser selected by **you. We** will pay the appraiser selected by **us. You** and **we** will split the other expenses of appraisal and the fee of the umpire.

8. **Rights and Duties of Mortgagee.** If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest under all present and future mortgages. If more than one mortgagee is named, payment will be made in the order of priority of the mortgagees.

   The interest of the mortgagee under this policy will not be affected by any action or neglect by **you.** The interest of the mortgagee under this policy will terminate unless it:
   A. pays upon demand any premium due if the owner or mortgagor fails to do so;
   B. notifies **us** of any change of ownership or increase in hazard of which the mortgagee has knowledge; and
   C. pays upon demand the premium for any such increase in hazard.

   **We** will notify the mortgagee if **you** fail to give **us** proof of loss. Within 60 days after receiving such notice, the mortgagee must give **us** proof of loss. Policy conditions relating to appraisal, time of payment and time of bringing lawsuit apply to the mortgagee.

   **We** will give the mortgagee not less than 10 days notice of cancellation or nonrenewal of the insurance protecting its interest.

   If **we** pay the mortgagee for any loss and deny payment to **you, we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property. At **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

   **Our** cancellation of the policy also applies to agreements under this condition.

   As used in this condition, the term "mortgagee" includes a trustee, if applicable.

   If the Coverage A insurance is provided for a mobile home, the term "mortgagee" includes a lienholder.

9. **No Benefit to Bailee. We** will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

## SECTION II - LOSSES WE COVER

### COVERAGE F - PERSONAL LIABILITY

**Agreement. We** will pay all sums for **bodily injury** and **property damage** to others for which the law holds **you** responsible because of an **occurrence** to which this coverage applies. This includes prejudgment interest awarded against **you.**

**We** will defend **you,** at **our** expense with counsel of **our** choice, against any suit seeking these damages. **We** may investigate, negotiate, or settle any suit. **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.

**We** are not obligated to pay any judgment or defend any suit if **we** have already exhausted the limit of liability set forth in the Declarations by paying judgments or settlements.

**Limit of Liability.** The limit of liability shown in the Declarations for "each occurrence" is the maximum **we** will pay for all damages as a result of any one **occurrence.**

### COVERAGE G - MEDICAL PAYMENTS TO OTHERS

**Agreement. We** will pay the reasonable **medical expenses** that are incurred or medically ascertained within three years from the date of the accident causing **bodily injury.** This coverage does not apply to **you.** This coverage does apply to others who sustain **bodily injury** as a result of an accident, while they are:

1. on the **insured premises** with **your** permission; or
2. off the **insured premises,** if the **bodily injury:**
   A. arises out of a condition on the **insured premises** or immediately adjoining ways;
   B. is caused by **your** activities;
   C. is caused by an animal owned by **you** or in **your** care;
   D. is caused by a **residence employee** arising out of and in the course of employment by **you;** or
   E. is sustained by any **residence employee** arising out of and in the course of employment by **you.**

**Limit of Liability.** The limit of liability shown in the Declarations for "each person" is the maximum **we** will pay to any one person as a result of any one accident.

**Our Payment of Loss. We** may pay the injured person or the provider of the medical services. Such payment is not an admission of liability by **you** or **us.**

## SECTION II - LOSSES WE DO NOT COVER

### COVERAGE F - PERSONAL LIABILITY AND COVERAGE G - MEDICAL PAYMENTS TO OTHERS

1. **Intentional Loss. We** do not cover **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts or omissions. This exclusion is applicable even if:
   A. **you** lack the mental capacity to govern **your** conduct;
   B. such **bodily injury** or **property damage** is of a different kind or degree than reasonably expected or intended by **you;** or
   C. such **bodily injury** or **property damage** is sustained by a different person than expected or intended by **you.**

   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
   However, this exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force by **you** to protect persons or property.

2. **Pollution**
   **We** do not cover **bodily injury** or **property damage:**
   A. resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants;
   B. resulting from the discharge, dispersal, release or escape of fuel oil and other petroleum products;
   C. resulting from electrical or magnetic emissions, whether visible or invisible, and sound emissions;
   D. liability, whether or not statutorily imposed, resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions; or
   E. resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions.

3. **Lead Exposure**
   A. **We** do not cover damages arising out of **bodily injury** caused by or resulting from ingestion, poisoning or exposure to lead.

   B. **We** do not cover damages arising out of **property damage** resulting from:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;

      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   C. **We** do not cover damages arising out of **property damage** and any costs or expenses or loss incurred as a result of any governmental directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;

      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   D. **We** do not cover damages arising out of **bodily injury** or **property damage** resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead.

4. **Business.** **We** do not cover **bodily injury** or **property damage** arising out of or in connection with **your business** activities. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business.**

   With respect to **COVERAGE F - PERSONAL LIABILITY,** this exclusion does not apply to **your** occasional or part-time **business** activities if **you** are under 19 years of age or a full-time student under 21 years of age.

If the **residence premises** is shown in the Declarations as a 2, 3 or 4 family dwelling, this exclusion does not apply to the portions that are rented by **you** to others or held for rental by **you** to others for use only as a residence.

5. **Care of Persons. We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

6. **Professional Services. We** do not cover **bodily injury** or **property damage** arising out of the rendering of or failing to render professional services of any kind.

7. **Other Premises. We** do not cover **bodily injury** or **property damage** arising out of the use of any premises owned, rented or controlled by **you.** Coverage does apply to:
   A. the **insured premises;** and
   B. **bodily injury** to a **residence employee.**

8. **Motorized Land Vehicles. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of a motorized land vehicle or trailer owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a motorized land vehicle or trailer to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a motorized land vehicle or trailer; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a motorized land vehicle or trailer.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. a motorized land vehicle or trailer in dead storage on the **insured premises:**
   b. a motorized land vehicle used exclusively on the **insured premises;**
   c. a trailer while not being towed or carried by a motor vehicle;
   d. a motorized land vehicle, owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**
   e. a motorized land vehicle, not owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration;
   f. a motorized land vehicle principally designed to service residential property;
   g. a motorized wheel chair; or
   h. a motorized golf cart:
      1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or
      2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the **insured premises,** including its public roads upon which a motorized golf cart can legally travel.

   Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you.**

9. **Watercraft. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of watercraft of any type owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a watercraft of any type to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a watercraft of any type; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a watercraft of any type.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. any watercraft on the **insured premises;**

b. any watercraft while stored;
c. watercraft, owned or furnished or available for **your** regular use:
   1) that is powered by one or more motors with 50 total horsepower or less. This includes watercraft propelled by a water jet pump engine or motor; or
   2) that is a sailing vessel 31 feet and under in length with or without auxiliary power;
d. rented watercraft:
   1) powered by one or more outboard motors;
   2) with an inboard or inboard-outdrive motor with 50 horsepower or less. This includes watercraft propelled by a water jet pump engine or motor; or
   3) that is a sailing vessel 31 feet and under in length with or without auxiliary power; or
e. watercraft not owned by **you,** not rented to **you** nor furnished or available for **your** regular use.

This coverage is excess coverage over and above any other collectible insurance.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you.**

10. **Hovercraft.** **We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, or loading or unloading of a hovercraft owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a hovercraft to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a hovercraft; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a hovercraft.

   Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you,** except while engaged in the operation or maintenance of hovercraft.

   Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

11. **Aircraft.** **We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, or loading or unloading of an aircraft owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of an aircraft to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving an aircraft; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving an aircraft.

   Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you,** except while engaged in the operation or maintenance of aircraft.

12. **War.** **We** do not cover **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed to be a warlike act even if accidental.

13. **Injury of an Insured.** **We** do not cover **bodily injury** to any insured within the meaning of Part 1 of the definition of **you.** This exclusion applies regardless of whether claim is made or suit is brought against **you** by the injured person or by a third party seeking contribution or indemnity.

14. **Controlled Substance.** **We** do not cover **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance, as defined by the Federal Food and Drug Law, Act 21 U.S.C.A. Sections 811 and 812, including any amendments. Controlled Substance includes, but is not limited to, cocaine, LSD, marijuana, and all narcotic or hallucinogenic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

15. **Fungus and Mold**
   A. **We** do not cover **bodily injury** or **property damage** directly or indirectly caused by or resulting from inhalation, ingestion, existence or exposure to **fungus and mold.** However, **we** do cover **bodily injury** to the extent that **fungus and mold** are on or are contained in a good or product intended for consumption.
   B. **We** do not cover damages arising out of **property damage** and any costs or expenses or loss incurred as a result of any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat **fungus and mold.**
   C. **We** do not cover **bodily injury** or **property damage** caused by or resulting from **your** failure to disclose the existence, known or unknown, on an **insured premises** of **fungus and mold.**

   This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

16. **Failure to Disclose. We** do not cover **bodily injury** or **property damage** caused by or resulting from **your** failure to disclose any condition of property, whether known or unknown, sold to a buyer of the **residence premises.**

17. **Communicable Disease. We** do not cover **bodily injury** caused by or resulting from any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism. Furthermore, **we** do not cover **bodily injury** resulting from the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person.

18. **Abuse. We** do not cover **bodily injury** caused by or resulting from the actual, alleged or threatened sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse of a person. This exclusion applies whether the **bodily injury** is inflicted by **you** or directed by **you** for another person to inflict sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse upon a person.

19. **Emotional and Mental Anguish. We** do not cover **bodily injury** caused by or resulting from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury. However, this exclusion does not apply if the person seeking damages from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury has first experienced direct physical harm.

**COVERAGE F - PERSONAL LIABILITY**

1. **Loss Assessment. We** do not cover liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners, except as specifically provided in **SECTION II - ADDITIONAL COVERAGES** for **Loss Assessment.**
2. **Contract. We** do not cover liability assumed by **you** under any unwritten contract or agreement, or by any contract or agreement in connection with **your business.**
3. **Owned Property. We** do not cover **property damage** to property owned by **you.** This includes costs or expenses incurred by **you** or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured premises.**
4. **Care, Custody or Control. We** do not cover **property damage** to property occupied or used by **you,** rented to **you,** in **your** care or over which **you** have physical control. However, coverage is extended for:
   A. **property damage** caused by fire, explosion or smoke; or
   B. **property damage** arising out of the ownership, maintenance or use of a waterbed at the **residence premises.** A waterbed is a bed with a liner and a liquid filled sealed mattress. However, **we** do not cover:
      1. property owned by **you;** or
      2. **property damage** caused by sagging or collapse of the floor if it is determined that the building construction does not conform to government building codes.
5. **Nuclear. We** do not cover **bodily injury** or **property damage** for which **you** are insured under any nuclear energy liability policy or would be insured but for the exhaustion of its limit of liability.
6. **Workers' Compensation Law. We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by **you** under any workers' compensation, non-occupational disability or occupational disease law.
7. **Punitive. We** do not cover **bodily injury** or **property damage** awards designated as punitive, exemplary, or

statutory multiple damages.

8. **Computer Systems and Data. We** do not cover **property damage** resulting from any error, virus or malicious entry in **computer** programming, instructions or code introduced or transmitted by **you** into any data, **computer, peripheral device, media** or **purchased software.**

**COVERAGE G - MEDICAL PAYMENTS TO OTHERS**

1. **Residence Employee. We** do not cover **bodily injury** to a **resident employee** if the **bodily injury** occurs off the **insured premises** and does not arise out of or in the course of the **residence employee's** employment by **you.**
2. **Nuclear. We** do not cover **bodily injury** from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
3. **Residents. We** do not cover **bodily injury** to any regular resident of the **insured premises,** except **your residence employee.**
4. **Workers' Compensation Law. We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law.

**SECTION II - ADDITIONAL COVERAGES**

**We** cover the following in addition to the limits of liability for **COVERAGE F - PERSONAL LIABILITY** or **COVERAGE G - MEDICAL PAYMENTS TO OTHERS.**

1. **Damage to Property of Others**
   **We** will pay up to $500 each time **you** cause **property damage** to someone else's property during the term of the policy. At **our** option, **we** will pay the cost to either repair or replace the damaged property.

   **We** do not cover **property damage:**
   A. to property covered in Section I of this policy;
   B. caused intentionally by **you** if **you** are 13 years of age or older;
   C. to property owned by or rented to **you,** any of **your** tenants or any resident of **your** household; or
   D. arising out of:
      1. any act or omission in connection with premises **you** own, rent or control, other than the **insured premises;**
      2. **business** activities; or
      3. the ownership, maintenance, occupancy, operation, use, loading or unloading of any motorized land vehicle, aircraft, hovercraft or watercraft of any type.
         However, **we** cover **property damage** to property of others arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading of:
         a. a motorized land vehicle or trailer in dead storage on the **insured premises;**
         b. a motorized land vehicle used exclusively on the **insured premises;**
         c. a trailer while not being towed or carried by a motor vehicle;
         d. a motorized land vehicle, owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**
         e. a motorized land vehicle, not owned by **you,** principally designed for recreational use off public roads, and not subject to motor vehicle registration;
         f. a motorized land vehicle principally designed to service residential property;
         g. a motorized wheel chair; or
         h. a motorized golf cart:
            1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or
            2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the **insured premises,** including its public roads upon which a motorized golf cart can legally travel.

2. **Claim Expenses.** **We** will pay:
   A. all costs **we** incur and costs taxed against **you** in any suit **we** defend;
   B. premiums on bonds required in any suit **we** defend, but not for bond amounts greater than the limit of liability for **COVERAGE F - PERSONAL LIABILITY.** **We** are not obligated to apply for or furnish any bonds;
   C. reasonable expenses **you** incur at **our** request;
   D. up to $200 per day for lost wages or salary, but not other income, because **you** attended a hearing or trial at **our** request; and
   E. interest on the entire judgment awarded in any suit **we** defend which accrues after judgment is entered and before **we** pay, tender or deposit in court the amount for which **we** are liable under this policy.

3. **First Aid Expenses.** **We** will pay expenses for first aid to others **you** incur at the time of the accident for **bodily injury** to which this insurance applies. **We** will not pay for first aid to **you.**

4. **Loss Assessment.** **We** will pay up to $1000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners. This coverage applies only to loss assessments charged against **you** as owner or tenant of the **insured premises.**

   If a limit of liability is shown in the Declarations for Increased Loss Assessment, the $1000 limit is increased to amount shown.

   This only applies when the assessment is made as a result of:
   A. each **occurrence** to which Section II of this policy would apply; or
   B. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
      1. the director, officer or trustee is elected by the members of a corporation or association of property owners; and
      2. the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   Regardless of the number of assessments, the limit referenced above is the most **we** will pay for loss arising out of:
   A. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or
   B. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

   This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

   **We** will pay only when the assessment exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible contained in Section I of this policy.

   **We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

## SECTION II - CONDITIONS

1. **Your Duties in the Event of an Accidental Loss.** In the event of an **occurrence** or offense, **we** have no obligation to provide coverage under this policy if **you** fail to comply with the following duties.
   A. Promptly notify **us** or **our** representative, in writing, stating:
      1. **your** name and policy number;
      2. the date, place and circumstances of the accident;
      3. the name and address of anyone who might have a claim against **you;** and
      4. the names and addresses of any witnesses.
   B. Immediately send **us** any legal papers relating to the accident.

C. At **our** request, **you** must:
   1. cooperate with **us** and assist **us** in any matter concerning a claim or suit;
   2. help **us** enforce any right of recovery against any person or organization who may be liable to **you;**
   3. attend any hearing or trial; and
   4. help **us** in collecting and giving evidence and obtaining the attendance of witnesses.

D. Under **Damage to Property of Others** in **SECTION II - ADDITIONAL COVERAGES,** give **us** a sworn statement of the loss within 60 days after the loss. Also, be prepared to show **us** any damaged property under **your** control.

E. **You** must not voluntarily pay any money, assume any obligations, or incur any expenses, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What an Injured Person Must Do Under Coverage G - Medical Payments to Others.** The injured person, or someone acting for that person, must do the following.
   A. Promptly give **us** written proof of the claim. If **we** request, this must be done under oath.
   B. Give **us** written authorization to obtain copies of all medical records and reports.
   C. Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

## OPTIONAL COVERAGES

The following coverages are afforded only if indicated in the Declarations. They are subject to all other provisions of this policy, except as modified herein.

### EARTHQUAKE AND VOLCANIC ERUPTION

1. **We** will pay for direct physical loss to the property described in Coverages A, B and C caused by Earthquake or Volcanic Eruption.

   One or more earthquake shocks that occur within a seventy-two hour period shall constitute a single earthquake. One or more volcanic eruptions that occur within a seventy-two hour period shall constitute a single volcanic eruption.

   **We** do not pay for loss resulting directly or indirectly by flood or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

   This coverage does not increase the limits of liability stated in this policy.

2. Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by earthquake or volcanic eruption.

3. Under **SECTION I - LOSSES WE DO NOT COVER,** item 1.E. **Earth Movement,** is amended to delete earthquake, earthquake aftershocks, volcanic eruption and volcanic effusion. All other provisions of this exclusion remain in effect.

4. **Deductible. We** will pay only that part of the loss caused by earthquake or volcanic eruption over the deductible shown in the Declarations for Earthquake and Volcanic Eruption. The deductible amount shall apply to loss separately for each coverage that applies to the damaged property under **COVERAGE A - DWELLING, COVERAGE B - PRIVATE STRUCTURES** and **COVERAGE C - PERSONAL PROPERTY.** This deductible amount shall not be less than $250 in any one loss.

   If the deductible shown in the Declarations for Earthquake and Volcanic Eruption is a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the amount of insurance for Coverage A, B or C separately for each coverage that applies to the damaged property.

5. **Masonry Veneer Damage Exclusion.** The following exclusion applies only when indicated in the Declarations.

**We** do not cover loss to exterior masonry veneer of the property described in Coverages A and B resulting from or caused by earthquake or volcanic eruption. The deductible shown in the Declarations for Earthquake and Volcanic Eruption applies to loss not including damage to exterior masonry veneer. The use of the term "masonry veneer" above does not include stucco.

**HOME COMPUTER**

Coverage is afforded only if indicated in the Declarations.

This coverage applies in lieu of, and not in addition to, the coverage afforded for **computers, peripheral devices, media** and **purchased software** under Section I, **COVERAGE C - PERSONAL PROPERTY.**

**We** will pay for sudden and accidental physical loss to **your** owned **computer, your** owned **peripheral device, your** owned **media** and **your purchased software** except as excluded below.

The use of the word "owned" above includes a **computer, peripheral device** and **media** actually owned by **your** employer but leased or loaned to **you** for **your** use at home. This coverage is excess over any valid and collectible insurance written in the name of the actual owner of the property.

**Deductible. We** will pay only that part of the loss that exceeds the deductible amount shown in the Declarations for this coverage. This deductible applies separately to each loss.

**Losses We Do Not Cover**
1. **We** do not cover loss or damage to the property which results directly or indirectly from:
   A. wear and tear;
   B. gradual deterioration;
   C. depreciation;
   D. insects or vermin;
   E. corrosion, rust, dampness, dryness, cold or heat;
   F. **fungus and mold;**
   G. mechanical breakdown;
   H. faulty construction;
   I. an original defect in the property; or
   J. error, omission or deficiency in design, specifications, workmanship or materials.
2. **We** do not cover an error in **computer** programming or instructions to the **computer.**
3. **We** do not cover intentional loss, meaning any loss arising out of any intentional or criminal act committed:
   A. by **you** or at **your** direction; and
   B. with the intent to cause a loss.
   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
   This exclusion does not apply to an insured person not participating in the intentional loss.
4. **We** do not cover dishonest acts by **you,** anyone else with an interest in the property or **your** or their employees or agents, whether or not occurring during the hours of employment. Nor do **we** insure against dishonest acts by anyone entrusted with the property.
5. **We** do not cover indirect or consequential loss to the property.
6. **We** do not cover **Neglect, Nuclear Action, Governmental Action** and **Water Damage** as set forth in **SECTION I - LOSSES WE DO NOT COVER.**

**Our** limit of liability for loss under this coverage will be the lesser of:
1. the cost of new property of similar make, type, quality, capacity, and size;
2. the reasonable cost of repair with parts of like kind and quality; or
3. the limit of liability as shown for this coverage in the Declarations of this policy.

**We** reserve the right to repair or replace the damaged property or to pay for this loss in money.

## PRIVATE STRUCTURES RENTED TO OTHERS

Coverage is afforded only if indicated in the Declarations.

**COVERAGE B - PRIVATE STRUCTURES** is provided for the private structures rented to others described in the Declarations. **Our** limit of liability under Private Structures Rented to Others is the amount shown in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of the private structure rented to others described in the Declarations.

## BUSINESS PURSUITS

Coverage is afforded only if indicated in the Declarations.

The insurance provided in Section II is extended to cover **bodily injury** and **property damage** arising out of the specified **business** activities of the person(s) designated in the Declarations.

**Losses We Do Not Cover**

1. **We** do not cover **bodily injury** and **property damage** arising out of **business** activities when the **business** is owned or financially controlled by **you** or by a partnership or joint venture of which **you** are a partner or member.
2. **We** do not cover **bodily injury** and **property damage** arising out of the rendering or failure to render a professional service, other than teaching or school administration.
3. **We** do not cover **bodily injury** to **your** fellow employee arising in the course of employment.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.
5. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** and **property damage** arising out of: (a) the ownership, maintenance, occupancy, operation, use, loading, unloading of; (b) entrustment by **you** to any person of; or (c) the failure to supervise or negligent supervision of any person involving:
   A. draft or saddle animals, including vehicles used with them;
   B. aircraft;
   C. hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes but is not limited to, flarecraft and air cushion vehicles;
   D. motorized land vehicles or trailers; or
   E. watercraft of any type;

   that are owned, hired or operated by or for **you** or **your** employer or used by **you** for the purpose of instruction.
6. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** to any pupil arising out of corporal punishment administered by **you** or at **your** direction.

## WATERCRAFT LIABILITY

Coverage is afforded only if indicated in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of a watercraft described in the Declarations.

**Losses We Do Not Cover**

1. **We** do not cover **bodily injury** to any of **your** employees arising out of and in the course of employment. This exclusion applies only if the employee's principal duties are in connection with the maintenance or operation of such watercraft.
2. **We** do not cover such watercraft while it is used to carry persons or cargo for a charge or it is rented to others.
3. **We** do not cover **bodily injury** or **property damage** resulting from an **occurrence** in which a watercraft is being

operated in, or practicing for, any prearranged or organized race, speed contest or other competition. However, coverage is extended when **your** watercraft described in the Declarations is: (a) a sailing vessel; (b) in a predicted-log cruise; or (c) in a timed fishing contest or tournament.

## INCIDENTAL BUSINESS OCCUPANCY BY YOU

Coverage is afforded only if indicated in the Declarations.

The coverage provided by this option applies only to the incidental **business** occupancy described in the Declarations.

If the **business** occupancy described in the Declarations is located in a private structure on the **residence premises, COVERAGE B - PRIVATE STRUCTURES** applies to such structure.

The limit of **COVERAGE C - PERSONAL PROPERTY** applies to equipment, supplies and furnishings usual or incidental to the **business** described in the Declarations while located in the structure described in the Declarations. This limit is in lieu of that provided under the special limitation applying to **Business Property** under **COVERAGE C - PERSONAL PROPERTY.**

This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it. This also does not include merchandise held as samples or for sale or delivery after a sale.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to afford coverage for **bodily injury** and **property damage** arising out of **your business** activities which are usual or incidental to the use of the **residence premises.**

**Losses We Do Not Cover**

1. **We** do not cover **bodily injury** to any employee other than a **residence employee.**
2. **We** do not cover **bodily injury** to any student arising out of corporal punishment administered by **you** or at **your** direction.
3. **We** do not cover liability arising out of any acts, omissions or errors of **you** or any other person for whose acts **you** are liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specification, supervisory inspections or engineering services in the conduct of **your** incidental **business** involving data processing, **computer** consulting or **computer** programming.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

# GENERAL CONDITIONS

1. **Policy Period.** This policy applies only to accidental loss in Section I or **bodily injury** and **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as **you.**

3. **Conformity to Statute.** The terms of this policy which are in conflict with the statutes of the state in which the **insured premises** is located are hereby amended to conform to such statutes.

4. **Death.** If any person named in the Declarations dies, **we** insure:
   A. the spouse, if a resident of the household at the time of death;
   B. the legal representative of the deceased, but only with respect to the premises and property of the deceased covered by this policy at the time of death;
   C. any member of the deceased's household who was covered at the time of death, but only while a resident of the **insured premises;** and
   D. with respect to the property of the deceased, the person having proper temporary custody thereof, but only until appointment and qualification of a legal representative.

5. **Policy Changes**
   A. This policy contains all of the agreements between **you** and **us.** The terms of this policy may not be changed or waived except by endorsement issued by **us.** **Our** request for an appraisal or examination under oath will not waive any of **our** rights.

   B. **We** will automatically give **you** the benefit of any extension or broadening of this edition of the policy if:
      1. the change does not require additional premiums; and
      2. the change is not implemented with a general revision that includes both the broadening and restriction of coverage.

6. **Assignment.** **You** may not assign this policy to another person without **our** written consent.

7. **Bankruptcy or Insolvency.** **Your** bankruptcy or insolvency will not relieve **us** of any obligation under this policy.

8. **Our Recovery Right.** **You** may waive in writing before a loss all rights of recovery against any person. If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, **you** must sign and deliver all related papers and cooperate with **us.**

   This does not apply under Section II to **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** or under **SECTION II - ADDITIONAL COVERAGES** to **Damage to Property of Others.**

9. **Lawsuits Against Us.** No suit or action may be brought against **us** by **you** unless there has been full compliance with all of the policy terms.

   Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.

   Under Section II of this policy, no one may sue **us** until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of **you,** the injured person and **us.**

   No one shall have any right to make **us** a party to a suit to determine **your** liability.

10. **Other Insurance and Service Agreement.** If other insurance is available to **you** for a loss covered under Section I of this policy, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, this insurance is excess over any other insurance that covers loss by theft or loss of personal property on an unspecified peril basis.

    If a loss covered under Section I of this policy is also covered by a service agreement available to **you,** this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

    If other insurance is available to **you** for a loss covered under **COVERAGE F - PERSONAL LIABILITY** of this policy, this insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

11. **Premium.** All premiums for this policy will be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums in effect at the beginning of **your** current policy period. Each year, the premium for renewal of this policy will be computed on the basis of **our** manuals then in use for the effective date of the renewal of the policy.

    The premiums **we** charge are based on the information provided by **you** on **your** application and other information **we** possess. **You** agree to help **us** obtain correct and complete information. **We** are permitted to adjust **your** premiums when this information changes.

    Any premium adjustments made for any reason will be rounded to the nearest dollar, in accordance with the manuals in use by **us.** Any change which results in premium adjustment of less than $2.00 will be carried forward to the next billing as long as the policy remains active.

    Premiums are payable on the dates set forth by **us.**

12. **Cancellation**
    **You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage. If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method.

    **We** may cancel this policy by delivering to **you** or by mailing to **you,** at **your** last known address shown on **our** records, notice stating when such cancellation will be effective. In any case of termination of this policy by **us, our** mailing of notice will constitute proof of notice as of the date **we** mail it. **We** will comply with any law relating to the termination of this policy which contains different requirements. If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar. The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

    A. This notice will be mailed to **you** not less than the minimum number of days required by state law if **you** have not paid **your** premium when it is due.

    B. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us**, at the time notice of cancellation is mailed.

    C. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us,** and any one of the following conditions exist:
       1. the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of facts pertinent to acceptance by **us**;
       2. there has been a substantial change in the covered property which increased the hazards **we** originally agreed to insure;
       3. there have been willful or negligent acts or omissions by **you** which increased the hazards **we** originally agreed to insure;

4. continuation of the policy would be in violation of the law; or
5. any person defined as **you** conceals or misrepresents any material fact or circumstance or engages in any fraudulent conduct in making a claim under this policy.

13. **Nonrenewal. We** may elect not to renew this policy. **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the renewal date of this policy. Proof of mailing will be sufficient proof of notice.

    If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

In Witness Whereof, **we** have caused this policy to be signed by **our** President and **our** Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

Secretary President

**CALIFORNIA**
**DOMESTIC PARTNERSHIP**

Throughout this policy, the term spouse includes an individual registered under California law as a domestic partner with the named insured shown in the Declarations.

# CALIFORNIA AMENDATORY ENDORSEMENT

1. Under **SECTION I - LOSSES WE DO NOT COVER,** item 1.A. **Intentional Loss** is deleted and replaced by:

   A. **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
      1. by **you** or at **your** direction; and
      2. with the intent to cause a loss.

      This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

      In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss. However, with respect to loss to covered property caused by fire, **we** will cover any one defined as **you** who did not commit or conspire to commit any act that results in loss by fire. **We** cover such person only to the extent of their legal interest, but not exceeding the applicable limit of liability.

2. Under **SECTION I - HOW WE SETTLE A PROPERTY LOSS,** the provisions relating to **your** right to make further claim for any additional payments for **Replacement Cost Settlement** or **Replacement Cost on Contents** is amended to provide a 12 month time period for **you** to notify **us** of **your** decision to repair, restore or replace the damaged, destroyed or stolen property. Additional extensions of six months shall be provided to **you** for good cause. Furthermore, in the event of a loss related to a "state of emergency", as defined under California law, the time period for **you** to notify **us** shall not exceed 24 months after the date of **actual cash value** payment.

3. Under **SECTION I - CONDITIONS,** item 3. **Our Settlement Options** is deleted and replaced by:

   3. **Our Settlement Options. We** will adjust all losses with **you. We** will pay **you** unless another payee is named in the policy. **We** will pay within 30 days after the amount of loss is agreed upon. This amount may be determined by an agreement between **you** and **us**, an appraisal award or entry of a final judgment, subject to **SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

      **We** have the option of taking all or part of the property at the agreed or appraised value. **We** have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** signed, sworn proof of loss.

4. Under **GENERAL CONDITIONS:**

   A. item 2. **Concealment or Fraud** is deleted and replaced by:

      2. **Concealment or Fraud.** If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy:
         a. for loss caused by fire, for the person defined as **you** who concealed or misrepresented the material fact or circumstance or make the material false statement or engaged in the fraudulent conduct; or
         b. for loss resulting from any peril other than fire, for any person defined as **you.**

   B. item 12. **Cancellation** is deleted and replaced by:

      12. **Cancellation**
          **You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

          **We** may cancel this policy by delivering to **you** or by mailing to **you,** at **your** last known address shown on **our** records, notice stating when such cancellation will be effective. In any case of termination of this policy by **us, our** mailing of notice will constitute proof of notice as of the date **we**

mail it. **W**e will comply with any law relating to the termination of this policy which contains different requirements.

The earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar. The refund will be made within 25 days after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

A. This notice will be mailed to **you** not less than 10 days prior to the effective date of cancellation if **you** have not paid **your** premium when it is due.

B. This notice will be mailed to **you** not less than 10 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us**, at the time notice of cancellation is mailed.

C. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us,** and any one of the following conditions exist:
   1. conviction of a crime having as one of its necessary elements an act increasing the hazard insured against;
   2. discovery of fraud or material misrepresentation by **you** or **your** representative in obtaining insurance, or by **you** or **your** representative in pursuing a claim under this policy;
   3. discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or
   4. physical changes in the property insured against which result in the property becoming uninsurable.

C. item 13. **Nonrenewal** is deleted and replaced by:

13. **Nonrenewal. We** may elect not to renew this policy. **We** may do so by delivering to **you,** or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 45 days before the renewal date of this policy. Proof of mailing will be sufficient proof of notice.

If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

All other provisions of the policy apply except as modified by this endorsement.

# CALIFORNIA
# WORKERS' COMPENSATION

1. **AGREEMENT**

   A. **We** agree with respect to **resident employees** under **COVERAGE I** to pay when due all benefits required of **you** by the California Workers' Compensation Law and subject to **ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE I.**

   B. **We** agree with respect to **resident employees** under **COVERAGE II** and subject to **LIMITS OF LIABILITY COVERAGE II** to pay on behalf of **you** all damages for which **you** are legally liable because of **bodily injury** sustained by a **residence employee.** The **bodily injury** must be caused by accident or disease and arise out of and in the course of employment by **you** while:

      1. in the United States of America, its territories or possessions, or Canada; or

      2. temporarily elsewhere if the **residence employee** is a citizen or resident of the United States or Canada.

      **Coverage II** does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

   C. **We** will defend **you,** at **our** expense with counsel of **our** choice, against any suit seeking these damages. **We** may investigate, negotiate, or settle any suit. **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.

2. **WHO IS COVERED**

   A **resident employee** is covered if during the 90 calendar days immediately before the date of injury the employee has:

   1. actually been engaged in such employment by **you** for no less than 52 hours; and

   2. earned no less than one hundred dollars ($100) in wages.

3. **APPLICATION OF COVERAGE**

   This insurance applies only to **bodily injury** which occurs during the policy period. If the **bodily injury** is a disease, it must be caused or aggravated by the conditions of the **residence employee's** employment by **you.**

4. **POLICY PROVISIONS**

   This insurance is subject to:

   a. all the provisions of this endorsement;

   b. the section of the policy titled **"GENERAL DEFINITIONS"** and **"GENERAL CONDITIONS";** and

   c. the following provisions of this policy:

      1. **SECTION II - ADDITIONAL COVERAGES,** item 2. **Claim Expenses** and item 3. **First Aid Expenses;** and

      2. **SECTION II - CONDITIONS,** item 1. **Your Duties In the Event of an Accidental Loss.**

5. **ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE I**

   The following provisions are applicable to **COVERAGE I:**

A. **We** shall be directly and primarily liable to **your residence employee** entitled to the benefits of the California Workers' Compensation Law.

B. As between the covered **residence employee** and **us,** notice to or knowledge of the **occurrence** of the injury on **your** part will be deemed notice or knowledge on **our** part.

C. **Your** jurisdiction will, for the purpose of the law imposing liability for compensation, be **our** jurisdiction.

D. **We** will be subject to the orders, findings, decisions or awards rendered against **you** under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of the policy. This policy shall govern as between **you** and **us** as to payments by either in discharge or your liability for compensation.

E. The **residence employee** has a first lien upon any amount which **we** owe **you** on account of this insurance. In case of **your** legal incapacity or inability to receive the money and pay it to the **residence employee, we** will pay it directly to the **residence employee. Your** obligation to the **residence employee** will be discharged to the extent of such payment.

6. **LIMITS OF LIABILITY COVERAGE II**

**Our** total limit of liability will not exceed $100,000 for all damages because of **bodily injury:**

A. sustained by one or more **residence employees** in any one accident; or

B. caused by disease and sustained by a **residence employee.**

**Our** total limit of liability will not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain **bodily injury** by disease.

7. **OTHER INSURANCE**

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

8. **CONFORMITY TO STATUTE**

Terms of this insurance which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

9. **EXCLUSIONS**

This policy does not apply:

A. to liability for additional compensation imposed on **you** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of the serious and willful misconduct of **you,** or because of **bodily injury** to an employee under 16 years of age and illegally employed at the time of injury;

B. to liability for **bodily injury** arising out of **business** pursuits of **you;**

C. under **Coverage II:**

1. to liability assumed by **you** under any contract or agreement;

2. to **bodily injury** by disease unless a written claim is made or suit brought against **you** within 36 months after the end of the policy period; and

3. to any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

# BACK UP OF SEWER, DRAIN AND SUMP PUMP COVERAGE

1. **We** do not provide coverage if the loss occurs or is in progress:
   A. during the first 5 days after the effective date of this coverage if added at inception date or renewal date of this policy; or
   B. during the first 30 days after the effective date of this coverage if added any time other than the inception date or renewal date.

   However, this provision does not apply if this coverage applied to **your** policy prior to this policy period and is continued as part of **your** policy renewal.

2. **We** pay for accidental direct physical loss under the Coverages listed in **SECTION I - COVERAGES** caused by or resulting from water or water-borne material:
   A. which backs up through sewers or drains; or
   B. which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

3. **Limit of Liability**
   A. If no limit is shown in the Declarations for Back Up of Sewer, Drain and Sump Pump Coverage, then the limits applying to the damaged or destroyed property under Section I - Coverages A, B and C apply.
   B. If a limit is shown in the Declarations for Back Up of Sewer, Drain and Sump Pump Coverage, then the limit shown is the total **we** will pay in any one loss for damaged or destroyed property under Section I - Coverages A, B and C.

4. Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by one or more of the following:
   A. water or water borne material which backs up through sewers or drains; or
   B. water or water-borne material which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

5. Under **SECTION I - LOSSES WE DO NOT COVER,** 1.D. **Water Damage** item 2. is deleted with respect to the coverages provided by this optional coverage.

6. **Deductible.** **We** will pay only that part of the loss that exceeds the deductible amount shown in the Declarations for this coverage. This deductible amount applies separately to each loss.

All other provisions of the policy apply except as modified by this endorsement.

# WILDFIRE LOSS MITIGATION BENEFIT

## PURPOSE

The purpose of **our** Wildfire Loss Mitigation Benefit is to prevent imminent wildfire loss to houses and private structures. If a wildfire loss is not preventable, then **our** effort is to lessen direct physical damage that otherwise would occur if this benefit was not available. **We** want to provide the best service and appropriate protection for **our** customers in wildfire prone areas.

## AGREEMENT

**We** provide Wildfire Loss Mitigation Benefit to **our** policyholders insuring their residential one- to four-family houses. It applies to all **our** Homeowners and Landlord Dwelling policyholders. This is not available to condo unit-owners nor to tenants who rent the house or building unit where they reside.

This benefit is in addition to the insurance protection **we** provide to **you** under **our** residential property insurance policy. The benefit does not replace any part of **our** insurance policy which covers direct physical damage to **your** covered dwelling and private structures.

There is no additional cost to any policyholder for this benefit. It is provided because **you** already have insured **your** house with **us**. **You** are automatically enrolled when **you** purchase house insurance from **us**. If **you** choose to cancel **your** Wildfire Loss Mitigation Benefit, there will be no premium returned to **you**.

**We** contract with certified wildland firefighters with appropriate training and wildfire experience. They respond with qualified wildfire resources to provide potentially home-saving services. Their fleet of certified wildfire engines are outfitted with the right tools and equipment needed to contribute to the protection of **your** home during a wildfire. They are not **your** local public fire department. They enter the grounds of enrolled properties during a wildfire event. While on site, they provide wildfire pre-suppression, suppression, post-fire suppression, non-destructive mitigation, and assistance during the wildfire event. These services include sprinklers, fire blocking gel, ground-applied retardant, and tactics which remove wildfire hazards from around the home. **Our** service adds extra protection to **your** home using preventative measures including emergency fuel mitigation, use of temporary sprinkler systems, fire engine operations, and application of fire blocking gel. Services provided are designed to specifically protect a home from wildfire and will employ additional tactics beyond what many fire departments are available to perform.

## SUCCESS IS NOT GUARANTEED

It is important to create reasonable expectations for **our** customer. This is not a first responder service and is in addition to all other public wildfire responders. Due to engine availability limitations and health and safety requirements, there may be instances when these wildland firefighters will not be able to provide their services to **your** property. There is no promise that the services provided will prevent damage.

In the event **your** house is damaged by wildfire, **your** Farmers residential property insurance policy covers direct physical damage or loss to **your** covered property caused by wildfire.

# SCHEDULED PERSONAL PROPERTY

**AGREEMENT**

We cover the specifically listed items and the classes of personal property indicated by an amount of insurance in the Schedule of Personal Property.

**THE AMOUNTS SHOWN FOR EACH CLASS OR ITEM IN THE SCHEDULE ARE LIMITED BY CONDITION 2. LOSS SETTLEMENT OF THIS ENDORSEMENT.**

This coverage is subject to:

a. the amount of insurance shown in the Schedule of Personal Property for each item or class of property;

b. the Deductible as shown in the Schedule of Personal Property for each item or class of property. If no deductible is shown, then no deductible applies;

c. all provisions of this endorsement; and

d. the sections of the policy titled **"GENERAL DEFINITIONS", "SECTION I - CONDITIONS"** and **"GENERAL CONDITIONS",** except as modified by this endorsement.

**CLASSES OF PERSONAL PROPERTY**

The classes of personal property are:

**Jewelry.**

**Furs,** including garments trimmed with fur or consisting principally of fur.

**Cameras,** including projection machines, films and other items of photographic equipment.

**Musical Instruments,** including related equipment.

**Silverware,** including silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry.

**Golfer's Equipment,** excluding golf carts. This includes the following, if owned by **you:**

a. golf clubs;
b. golf clothing;
c. other clothing while contained in a locker when **you** are playing golf;
d. golf balls for loss by fire or burglary provided there are visible marks of forcible entry into the building, room or locker; and
e. other golf equipment.

**Fine Arts and Manuscripts.**

**Postage Stamp Collection,** meaning the following if owned by **you** or in **your** custody or control:

a. due, envelope, official, revenue, match and medicine stamps;
b. covers, locals, reprints, essays, proofs and other philatelic property; and
c. books, pages and mounting of items in a. and b.

**Rare and Current Coin Collection,** meaning the following if owned by **you** or in **your** custody or control:

a. medals, paper money, bank notes;
b. tokens of money and other numismatic property; and

c. coin albums, containers, frames, cards, and display cabinets in use with such collection.

**Guns.**

**Golf Carts.**

**Other Sports Equipment.**

**Miscellaneous.** This includes items that cannot be covered under any other available class.

**NEWLY ACQUIRED PROPERTY**

1. **JEWELRY, FURS, CAMERAS, MUSICAL INSTRUMENTS, SILVERWARE, GOLFER'S EQUIPMENT, STAMP COLLECTIONS, COIN COLLECTIONS AND GUNS**

   **We** automatically cover newly acquired property of the Jewelry, Furs, Cameras, Musical Instruments, Silverware, Golfer's Equipment, Stamp Collections, Coin Collections and Guns classes for up to $15,000 for each class of property. This coverage applies regardless of whether or not the class is already scheduled.

   For coverage to apply, **you** must:
   a. report these objects to **us** within 30 days of acquisition; and

   b. pay the additional premium from the date acquired.

2. **FINE ARTS AND MANUSCRIPTS**

   When **you** have property already scheduled under the Fine Arts and Manuscripts class, **we** automatically cover newly acquired objects of art and manuscripts for their **actual cash value** up to $15,000.

   For coverage to apply **you** must:
   a. report these objects to **us** within 90 days of acquisition; and

   b. pay the additional premium from the date acquired.

3. **OTHER SPORTS EQUIPMENT AND MISCELLANEOUS**

   When **you** have property already scheduled under the Miscellaneous class or under the Other Sports Equipment Class, **we** automatically cover newly acquired objects within that class of the same type as those already scheduled for up to $15,000.

   For coverage to apply **you** must:
   a. report these objects to **us** within 30 days of acquisition; and

   b. pay the additional premium from the date acquired.

**TERRITORIAL LIMITS**

**We** cover the property described worldwide.

**SPECIAL PROVISIONS**

1. Fine Arts: **You** agree that the covered property will be handled by competent packers.

2. Musical Instruments: **You** must also tell **us** whether any instrument insured under this endorsement may be used for performance for pay.

## EXCLUSIONS

1. **We** do not cover loss which results directly or indirectly from:
   a. wear and tear or gradual deterioration;

   b. inherent vice or any quality in property that causes it to damage or destroy itself; or

   c. insects, rodents or vermin.

2. **We** do not cover loss or damage caused by or resulting from **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
   a. by **you** or at **your** direction; and

   b. with the intent to cause a loss.

   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

   In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

3. **We** do not cover loss or damage caused by or resulting from **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this endorsement.

4. **We** do not cover loss or damage caused by or resulting from **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke. However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

5. If organs not of a mobile nature are covered under Musical Instruments, **we** do not cover loss which results directly or indirectly from:
   a. mechanical or electrical breakdown or failure; or

   b. repairing, adjusting, servicing or maintenance operation; unless fire or explosion ensues and then only for the loss or damage caused by such ensuing fire or explosion.

6. If Fine Arts are covered:

   A. **We** do not cover loss which results directly or indirectly from:

      1. repairing, restoration or retouching process; or

      2. breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile items, unless the Schedule shows that such breakage is covered.

         EXCEPTION: **We** cover loss by breakage if caused by:
         a. fire or lightning;

         b. explosion, aircraft or collision;

         c. windstorm, earthquake or flood;

d. malicious damage or theft; or

e. derailment or overturn of a conveyance.

B. **We** do not insure loss, from any cause, to property on exhibition at fairgrounds or premises of national or international expositions unless the premises are covered by this policy.

7. If Postage Stamps or Rare and Current Coin collections are covered:

A. **We** do not cover loss which results directly or indirectly from:

1. fading, creasing, denting, scratching, tearing or thinning;

2. transfer of colors, inherent defect, dampness, extremes of temperature or depreciation;

3. being handled or worked on;

4. the disappearance of individual stamps, coins or other items unless the item is:

a. described and scheduled with a specific amount of insurance; and

b. mounted in a volume and the page it is attached to is also lost; or

5. shipping by mail other than registered mail.

B. **We** do not insure loss, from any cause, to property:

1. in the custody of transportation companies; or

2. not part of a stamp or coin collection.

**CONDITIONS**

1. **Loss Clause:** The amount of insurance under this endorsement will not be reduced except for a total loss of a scheduled item. **We** will refund the unearned premium applicable to such item after the loss or **you** may apply it to the premium due for the replacement of the scheduled item.

2. **Loss Settlement: IN NO EVENT WILL WE PAY MORE THAN THE AMOUNT OF INSURANCE SHOWN IN THE SCHEDULE FOR THE COVERED PROPERTY. THE AMOUNT SHOWN IS THE MAXIMUM WE WILL PAY, EVEN IF REPLACEMENT COST ON CONTENTS COVERAGE IS PROVIDED BY THIS POLICY.**

Covered property losses are settled as follows:

A. Scheduled Items - (for specifically listed items within a class of personal property)

1. Fine Arts and Manuscripts -

a. **We** will pay, for each item or property designated in the Schedule, the full amount shown in the Schedule for each scheduled item which is agreed to be the value of that item or property. At **our** request **you** will surrender that item or property to **us** if not lost or stolen.

b. If the scheduled item or property is a pair or set, or consists of several parts when complete, **we** will pay the full amount shown in the Schedule for that pair, set or complete item. At **our** request, **you** will surrender that item or property to **us** if not lost or stolen.

c. In the event lost or stolen property is recovered and **we** have paid **you** the full amount shown in

the Schedule for that property, **you** will surrender that property to **us.**

d. **We** will, at **your** request, sell back to **you,** at a price **you** and **we** agree upon, any scheduled item **you** surrendered to **us** to comply with the terms in a., b. or c. above.

2. Other Scheduled Property items - Not shown as Agreed Value in the Schedule

The value of the property insured is not agreed upon but will be ascertained at the time of loss or damage.

Our Option - If **we** give **you** written notice within 30 days after **we** receive **your** signed, sworn proof of loss, **we** may repair or replace any part of the lost or damaged property with like property.

However, **we** will not pay more than the least of the following amounts:

a. the actual cash value of the property at the time of loss or damage;

b. the amount for which **you** could reasonably be expected to have the property repaired to its condition immediately prior to loss;

c. the amount for which the item could reasonably be expected to be replaced with one like the item lost or damaged; or

d. the amount of insurance.

3. Other Scheduled Property Items - Agreed Value Property As Shown in the Schedule

For items indicated by an asterisk (*) in the Schedule as "Losses settled according to the Agreed Value provisions in your policy", covered property losses are settled as follows:

a. Agreed Value

If a listed item is totally destroyed or lost, **we** will pay the full amount shown in the Schedule for that item which is agreed to be the value of that item.

If an item is only partially damaged or lost, **we** will pay to repair the item to its condition immediately prior to loss or pay **you** the difference between the item's value immediately after the damage or loss and the amount shown in the Schedule for the item.

In no event will **we** pay more than the amount shown in the Schedule.

b. Pair, Set or Parts

If the scheduled item or property is a pair or set, or consists of several parts when complete, **we** will pay **you** the full amount shown in the Schedule for that pair, set or complete item. No payment will exceed the Agreed Value amount shown in the Schedule. At **our** request, **you** will surrender that item or property to **us** if not lost or stolen.

c. Lost or Stolen Items

In the event lost or stolen property is recovered and **we** have paid **you** the full amount shown in the Schedule for that property, **you** will surrender that property to **us.**

d. Buyback of Surrendered Property

**We** will, at **your** request, sell back to **you,** at a price **you** and **we** agree upon, any scheduled

item **you** surrendered to **us** to comply with the terms in b. or c. above.

B. Blanket Coverage (for a class of personal property designated as a Blanket class)

1. Property other than Postage stamps or rare and current coin collection -

When property is covered on a blanket basis, **we** will pay, without deduction of depreciation, the amount required to repair or replace the property, whichever is less. However, **we** will not pay more than the blanket limit for the class of property for any one loss. Nor will **we** pay more than $2500, or no more than the higher limit per item as displayed in the Schedule for the blanket class of property, for damage or loss to any one item.

**We** will not pay a greater proportion of any loss on blanket property than the amount of insurance on blanket property bears to the **actual cash value** at time of loss.

2. Postage stamps or rare and current coin collection -

When coins or stamps are covered on a blanket basis, **we** will pay the market value at time of loss but not more than $2500, or no more than the higher limit per item as displayed in the Schedule for the blanket class of property, for damage or loss to any one stamp, coin or individual item or any one pair, strip, block, series sheet, cover, frame or card.

**We** will not pay a greater proportion of any loss on blanket property than the amount of insurance on blanket property bears to the market value at time of loss.

3. Blanket Coverage does not apply to items separately described or listed and specifically insured in this or any other policy, regardless of the limit for which they are insured.

3. **Pair, set or parts other than Scheduled Items for Fine Arts and Manuscript or Agreed Value Property:**

A. Loss to a Pair or Set

In case of a loss to a pair or set **we** may elect to:

1. repair or replace any part to restore the pair or set to its value before the loss; or

2. pay the difference between **actual cash value** of the property before and after the loss.

B. Loss to Parts

In case of a loss to any part of covered property, consisting of several parts when complete, **we** will pay for the value of the part lost or damaged.

# EXHIBIT 2

# FAX

01/28/2025
18 pages

**Recipient fax number:**

+1 (866) 581-1410

**To:**

farmers insurance

**From:**

julio ravada

providing bank documents as requested forClaim number 7007678692-1

This transmission is intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.

**Claim # 7007678692-1**

Hi Mike,

I am sorry it took me a while to respond, I did mention that I was dealing with addressing all my tenant's needs as I have several properties all located in the Los Angeles current wildfire zone.

I am using this letter to request a withdrawals of my consent for electronic communications with Farmers Insurance on all policy and claims related documents. This request comes as a result of my gender confirmation treatment new journey which includes the well being of my mental health / readiness

As far as this claim, you had requested the 2 Brilliant receipts which I emailed to you on Jan 15 2024. I am attaching here with my two bank statements for October and November 2024 as you requested. Looking forward to hearing from you



Julio Ravada

# EXHIBIT 3

# FAX

02/07/2025
9 pages

**Recipient fax number:**

+1 (866) 581-1410

**To:**

farmers insurance

**From:**

Luna

Claim No Claim number 7007678692-1

This transmission is intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.

Claim number 7007678692-1

Hi Mike

Thank you for taking my call yesterday and for corfirming that my bank statements were received. You mentioned again that I had not sent to you the 2 receipts from Brilliant, and even though I checked to confirm that it was sent out to you on January 15 2025 where you and ClaimsDocument2 were the 2 recipients you still claimed not to have received it. With this I am submitting / attaching a copy of that email, a copy of the PDF attached in it which are the 2 receipts from Brilliant.

Also I need to address some information that you have continued to intentionally misrepresent in different occasions:

- On Jan 15th 2025 you sent a letter requesting the 2 Brilliant receipts because you alleged that I had sent a copy of the checkout of that order. Then on the same day you sent an email to me requesting the 2 Brilliant receipts but this time you indicated that the reason is because I had sent a confirmation email. Both requests are inconsistent and sadly they're also inaccurate. I am attaching the document that I had actually presented, it is not a checkout order printout and neither is it a confirmation email; it really was a receipt / confirmation printout directly from the website
- On Jan 15th 2025 you acknowledged to be aware of my then current circumstances related to my whereabouts acting in the middle of LA's Wildfires and 11 tenants, then this day you sent me a letter demanding that in 7 days I needed to provide my bank statements which you had never imposed deadlines before with the several document requests that you've made. And sure enough 7 days later on January 23 2025 you sent a denial letter because you indicated that I had not provided the statements in the 7 days. As an important note: LA's fire were 100% contained on Feb 1 2025 which is public knowledge and you thought that was irrelevant therefore your demand should have been my priority.
- On Feb 4th 2025, after receiving the bank statements, you sent a letter stating that I had asked Brilliant not to share information with you (Farmers Ins.) and reminded me that I am supposed to cooperate with your investigation. I have never asked Brilliant to not share information with you or your company as they don't have that option, It has always being my preference to opt out of marketing / 3rd party information sharing with all companies I do business with following California's Privacy Election Rights which is what I exercised. I don't recall Brilliant having an option where I ended up selecting Farmer's Insurance as the recipient of my choices. According to CCPA "Businesses cannot make you waive these rights, and any contract provision that says you waive these rights is unenforceable."
- Furthermore I'd like to bring up two different instances in the past 1) when your manager told me that my claim was denied because you had obtained confirmation from companies other than Dyson that I had canceled my orders before presenting them to you for depreciation refund, and I submitted to him all the documents from each company that proved his allegations as false which was acknowledged with him reopening the claim. 2) On November 2024 you presented several statements providing that Dyson had made such information available to you, I presented phone conversation recordings that contradicted your allegations but you kept insisting that Dyson had told you otherwise and during a phone conversation I asked you to show me proof and I am quoting your answer "I don't have to show any proof to you, and I am not going to." I then spent time with your manager to proof to him that you had falsified information using a 3rd party company to allege that they had given you information to help you deny my claim while refusing to present a substantiated reason. It is evident that your strategy is to deny claims with purposeful falsified statements alleging a 3rd party as the source of this information followed by your refusal to provide elements to prove your statements simply because you've made them up and I am pretty sure that is what you are looking to do with Brilliant

- On January 28 2025 I sent a fax where I informed you about the beginning of my gender confirmation treatment and since then on Feb 4th 2025 you sent me a letter referring to me as 'Mister.' Then right after while we were on the phone you refer to me as 'Mr Ravada' and before we hung up you said "Thank you, sir." This is unlawful gender-based harassment. Furthermore, CCPA also contains several regulations against discriminatory treatment such as businesses not allowed to provide a different level of service just because I exercised my rights under CCPA.
- As of now, I have provided you all the information that you need in order to for you to investigate everything related to this claim. I will encourage you to look at how you've elaborated your investigations in the past with all the receipt I have been asked to provide in this and all my past claims and never once have I been asked to waive my CCPA rights with vendors that had my privacy choices recorded.

Thank you

Luna

PS: Please address me as Luna (she / her / hers)

**From:** Brilliant store+17269935@t.shopifyemail.com
**Subject:** Order 165826 confirmed!
**Date:** November 13, 2024 at 1:20 PM
**To:** jravada@icloud.com

brilliant

ORDER 165826

## Thank you for your purchase!

Hi Julio, we have received your order, and we will notify you when it has been shipped. Normal order processing time is 1 business day when your item is in stock. Orders received by 5pm (Pacific Time), will ship the following business day.

View your order or Visit our store

## Order summary



3-Switch Panel × 1
White
**$499.00**



2-Switch Panel × 1
White
**$449.00**

| | |
|---|---|
| Subtotal | **$948.00** |
| Shipping | **$19.33** |

| | |
|---|---|
| Riverside County Tax | **$2.42** |
| Palm Springs City Tax | **$14.52** |
| Riverside County District Tax Sp | **$4.85** |
| Riverside Co Local Tax Sl | **$9.67** |
| California State Tax | **$58.04** |
| Total | **$1,056.83 USD** |

## Customer information

**Shipping address**
Julio Ravada
2275 East Belding Drive
Palm Springs CA 92262
United States

**Billing address**
Julio Ravada
2275 East Belding Drive
Palm Springs CA 92262
United States

**Shipping method**
FedEx Home Delivery®

**Payment method**
VISA Payment method — **$1,056.83**

A 15% restocking fee applies on all returns.
If you have any questions, contact us at contactus@brilliant.tech

**From:** Brilliant store+17269935@t.shopifyemail.com
**Subject:** Order 165626 confirmed!
**Date:** October 29, 2024 at 11:10 PM
**To:** jravada@icloud.com

brilliant

ORDER 165626

## Thank you for your purchase!

Hi Julio, we have received your order, and we will notify you when it has been shipped. Normal order processing time is 1 business day when your item is in stock. Orders received by 5pm (Pacific Time), will ship the following business day.

View your order or Visit our store

## Order summary



**3-Switch Panel × 1**
White
**$499.00**



**2-Switch Panel × 1**
White
**$449.00**

| | |
|---|---|
| Subtotal | **$948.00** |
| Shipping | **$17.88** |

| | |
|---|---|
| Riverside County Tax | **$2.41** |
| Palm Springs City Tax | **$14.50** |
| Riverside County District Tax Sp | **$4.84** |
| Riverside Co Local Tax Sl | **$9.66** |
| California State Tax | **$57.95** |
| Total | **$1,055.24 USD** |

## Customer information

**Shipping address**
Julio Ravada
2275 East Belding Drive
Palm Springs CA 92262
United States

**Billing address**
Julio Ravada
2275 East Belding Drive
Palm Springs CA 92262
United States

**Shipping method**
FedEx Home Delivery®

**Payment method**
VISA Payment method — **$1,055.24**

A 15% restocking fee applies on all returns.
If you have any questions, contact us at contactus@brilliant.tech

brilliant
SMART HOME SYSTEM

Show order summary $1,055.24

brilliant
SMART HOME SYSTEM

Confirmation #URF1PK60J

## Thank you, Julio!




### Your order is confirmed

You'll receive a confirmation email with your order number shortly.

### Order details

View account

**Contact information**

jravada@icloud.com

**Shipping address**

Julio Ravada

2275 East Belding Drive
Palm Springs CA 92262
United States
+12139254069

**Shipping method**

FedEx Home Delivery®

**Payment method**

VISA •••• 3166 · $1,055.24

**Billing address**

Julio Ravada
2275 East Belding Drive
Palm Springs CA 92262
United States
+12139254069

Order was completed with shop Learn more

Need help? Contact us Continue shopping

Refund policy Shipping policy Privacy policy Terms of service

# EXHIBIT 4

==========================================================================

Date Received : 4/15/2025 4:58:59 PM +00:00

Subject : [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Sender : jravada@icloud.com

To : bryce.spradling@farmersinsurance.com

CC : ClaimsDocuments2@farmersinsurance.com;amy.spawrbardley@farmersinsurance.com

Date Sent : 4/15/2025 4:58:34 PM +00:00

==========================================================================

Bryce,

I am attaching the following images which I am explaining next

[04B62F5B-5DD3-462C-B453-9850380E3785.jpeg]

**Pic 1**: From March 6th 2025, this was the first time Farmers requested the actual email from Brilliant. Brilliant's depreciation reimbursement was requested in November 2024, investigated by your adjuster, and paid during the same month. In December 2024, after initially denying my claim, you had the opportunity to investigate further, and I provided all necessary information, leading to the claim's status being overturned. Furthermore, in this email, you mentioned needing the actual email from Brilliant adding that this had already been thoroughly explained by your adjuster.

**Pic 2**: This is the actual request from your adjuster, which you referenced in your March 6, 2025, email. This shows that your previous statement was inaccurate, as the detailed explanation from your adjuster was merely a request for a copy of the Brilliant order number that had been emailed to me, not the actual email.

**Pic 3**: Here is the email you sent on March 13th, confirming that your company received my second fax on March 4th, 2025. You stated that this fax did not include the requested information, indicating that you read the fax.

**Pic 4**: This is from the second fax, where I explained that I had sent another fax on January 28th to inform you about my gender confirmation process.

**Pic 5**: This is the first fax, which you also confirmed receiving. In it, I communicated about my gender confirmation and provided my withdrawal of consent for all electronic communications.

This clearly demonstrates that on March 6th, you were the first to request the actual email from Brilliant. Before sending this request, you would have received my second fax, attached to this claim,

two days prior, giving you ample time to review both faxes. However, it appears you: 1) Ignored my request to address me as Luna, as indicated in Pic 4; and 2) Requested I forward an actual email despite knowing I had withdrawn my consent for electronic communications and had switched to fax because I no longer had access to emails.

I do not possess the email and you have detailed explanation as to what happened to the email, you had months to ask for it but instead you requested a copy which was provided and you used it in order to pay the requested depreciation

Julio R

On Apr 11, 2025, at 2:21 PM, Bryce Spradling <bryce.spradling@farmersinsurance.com> wrote:

Julio,

This email is in response to the below email, in addition to the emails sent on 4.7.2025 and 4.9.2025.

As has been explained to you, the information you have provided thus far will not suffice based on discrepancies uncovered on prior attempts to recover depreciation. You will need to forward the original email for the invoice previously outlined to request our consideration. Failure to provide sufficient support as requested will result in our inability to release any further depreciation.

Thanks,

Bryce Spradling, AINS, CASA

Property Theft Supervisor

Farmers Claims Department

Farmers Direct Property and Casualty Ins. Co.

Company Employee Adjuster

Cell: 913-286-3007

Fax: (877) 217-1389

Please visit our claim portal<https://www.farmers.com/cmp/s/login/?SO=01> to view the status and manage your claim online. Email communications are preferred and should be sent tomyclaim@farmersinsurance.com<mailto:myclaim@farmersinsurance.com>. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

From: Julio Ravada <jravada@icloud.com<mailto:jravada@icloud.com>>

Sent: Sunday, April 6, 2025 4:35 AM

To: Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>>

Cc: ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com<mailto:ClaimsDocuments2@farmersinsurance.com>>; Amy Spawr-Bardley <amy.spawrbardley@farmersinsurance.com<mailto:amy.spawrbardley@farmersinsurance.com>>

Subject: [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Bryce,

I'm a bit confused by your recent instructions. You mentioned that "to recover the withheld depreciation, you must provide accurate and verifiable support that the items have been replaced. At this time, you have not provided this information."

To clarify, I'm including a screenshot and a PDF file containing the same information, in case you have trouble opening either format. These documents demonstrate that the withheld depreciation has already been recovered. Could you let me know why I'm being asked to follow instructions for something that has already been completed?

<image001.jpg>

On Apr 4, 2025, at 2:04 PM, Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>> wrote:

Julio,

This is in response to the below email and in addition to the email sent on 4.1.2025 and 4.2.2205.

As previously explained, the fact is that to date, the requested information has failed to have been provided no further consideration will be made on your claim until such time that the requested information is provided. Your claim will remain closed until such time that you provide the requested information for further consideration of your claim. To recover the withheld depreciation, you must provide accurate and verifiably support that the items have been replaced. At this time, you have not provided this information.

With regards to replacement cost coverage please refer to your policy documents HP4520 0113 on the bottom of page 2 and the top of page 3 it outlines that replacement cost on contents had depreciation applied at the time of settlement unless the items have already been replaced. As outlined in your policy you have 180 days from the actual cash value payment to recover any withheld depreciation. Once this time has expired no consideration will be made for the information that remains outstanding. The document you cited refers to your dwelling, not contents please review your policy in it's totality.

<image003.png>

<image004.png>

Thanks,

Bryce Spradling, AINS, CASA

Property Theft Supervisor

Farmers Claims Department

Farmers Direct Property and Casualty Ins. Co.

Company Employee Adjuster

Cell: 913-286-3007

Fax: (877) 217-1389

Please visit our claim portal<https://www.farmers.com/cmp/s/login/?SO=01> to view the status and manage your claim online. Email communications are preferred and should be sent tomyclaim@farmersinsurance.com<mailto:myclaim@farmersinsurance.com>. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

From: Julio Ravada <jravada@icloud.com<mailto:jravada@icloud.com>>

Sent: Monday, March 31, 2025 10:49 AM

To: Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>>

Cc: ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com<mailto:ClaimsDocuments2@farmersinsurance.com>>

Subject: [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Hi Bryce,

Thank you for your response. I'd like to address several points to ensure clarity and accuracy in our communication.

Firstly, regarding your statement that I have failed to provide sufficient information for the release of depreciation, I must refer to the correspondence I received from you on November 12, 2024. It clearly indicated that the documentation I submitted from Brilliant was sufficient, and I received the depreciation funds shortly thereafter. I have attached a screenshot for reference.

<image001.jpg>

It is incorrect to state that I failed to provide the necessary documentation. I have consistently submitted all requested documents, as explained in my previous emails. Currently, I am still unclear about the exact reason for my claim's denial. Your communication mentions that the claim is closed, while the online portal shows it as "under review." I would greatly appreciate clear and consistent information in this regard.

Regarding the claim about the iCloud account, while it is true that I had access at one time, the requests I satisfied earlier were acknowledged as complete. I decided to downgrade my iCloud

subscription due to personal reasons, including my gender transition experience. My actions related to my iCloud account were for personal circumstances, and I find any suggestion otherwise concerning unnecessary and unfounded.

I wish to clarify that I have met all the requested documentation requirements. The information I have provided and that you previously accepted should be sufficient; forcing me to waive California Consumer Privacy Act (CCPA) rights raises significant concerns.

Additionally, according to my policy regarding last year's term, I am entitled to "Extended Replacement Cost Coverage," which stipulates payments without depreciation deductions. I believe my policy should be honored as stated unless clarified otherwise. Please see below:

<image002.jpg>

Finally, concerning the handling of my communications, it's critical to ensure that all aspects of this case—including prior acceptance, denial, and subsequent resolutions—are thoroughly reviewed before categorizing them as resolved or unresolved without appropriate basis.

I request your comprehensive clarification and resolution of these discrepancies as it appears my claim processing has occurred under misunderstandings and inconsistencies not attributed to my actions or omissions.

Thank you for your attention and future aid towards resolving this matter.

Best regards,

Julio

On Mar 28, 2025, at 1:33 PM, Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>> wrote:

Julio,

Throughout the claims process you were requested to provide us with any and all support for your claim. Upon requesting release of your depreciation and our subsequent investigation it was determined the information you provided was not sufficient to release depreciation. To date you have failed to provide us with the necessary documentation to support your claim. Until such time that you provide us with this information your claim will remain closed. We have communicated to you on multiple occasions what is needed to continue with your claim. Your failure to provide us with the needed information bars us for continuing with your claim. The fact remains that at the time of the replacement you had access to the requested information and did not provide it. You cancellation/down grade of your icould account during the course of the claim is your responsibility and does not render us responsible for paying your claim due to your lack of support. If you are unable to provided us with the requested information your claim will not have further consideration.

Future emails on this subject will be responded to generically with the facts that the requested information has failed to have been provided to date and no further consideration will be made on your claim until such time that the requested information is provided.

Thanks,

Bryce Spradling, AINS, CASA

Property Theft Supervisor

Farmers Claims Department

Farmers Direct Property and Casualty Ins. Co.

Company Employee Adjuster

Cell: 913-286-3007

Fax: (877) 217-1389

Please visit our claim portal<https://www.farmers.com/cmp/s/login/?SO=01> to view the status and manage your claim online. Email communications are preferred and should be sent tomyclaim@farmersinsurance.com<mailto:myclaim@farmersinsurance.com>. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

From: Julio Ravada <jravada@icloud.com<mailto:jravada@icloud.com>>

Sent: Thursday, March 27, 2025 2:40 PM

To: Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>>

Cc: ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com<mailto:ClaimsDocuments2@farmersinsurance.com>>

Subject: [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Hi Bryce,

I'd like to clarify the timeline regarding our recent communications to ensure there are no misunderstandings:

1. **January 15, 2025**: Michael Saskor requested the Brilliant Order number through two formats: an email asking for the order number received from the company on October 29, 2024, and a letter requesting a copy of the Brilliant Order with the order number. At no point was I asked to forward the original email; rather, you requested a copy.

2. **Same Day**: I emailed a PDF attachment of the email as per our previous arrangements, which aligned with how I've been providing other requested documents.

3. **February 7, 2025**: During a phone discussion, Mike mentioned not receiving the documents. I then faxed a copy of the email, which was in line with your original request, and Mike had no objections.

4. **March 6, 2025**: For the first time, you indicated that verification of the Brilliant Order 165626 required forwarding the actual email, not a PDF.

5. **March 18, 2025**: I detailed via email that I had set up a new phone and email and downgraged my iCloud subscription on January 27, 2025, which meant effective my next billing cycle date of February 20 2025 my iCloud plan was going to change to their free plan going from 2000GB of storage to 5GB. This kept my very most recent emails and for sure anything from 2024 back to 2008 was deleted, hence, the Brilliant email was no longer accessible.

In response to your recent email: I indeed had access to the email on January 15, 2025, and provided the information requested. However, following February 20, 2025, the original email was deleted due to the downgrade of my iCloud subscription, as explained.

REDATED FOR COURT FILING

Thank you for the opportunity to share this with you. I trust we can resolve this matter with respect to everyone's situation.

Best regards,

Julio

We acknowledge receipt of this email. Throughout out the claims process you have provided only partial info requested. You had access to the information when initially requested as you did forward us the email for the other order from Brilliant. Until the information previously requested is provided, no further consideration of your claim will be made.

Thanks,

Bryce Spradling, AINS, CASA

Property Theft Supervisor

Farmers Claims Department

Farmers Direct Property and Casualty Ins. Co.

Company Employee Adjuster

Cell: 913-286-3007

Fax: (877) 217-1389

Please visit our claim portal<https://www.farmers.com/cmp/s/login/?SO=01> to view the status and manage your claim online. Email communications are preferred and should be sent tomyclaim@farmersinsurance.com<mailto:myclaim@farmersinsurance.com>. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

From: Julio Ravada <jravada@icloud.com<mailto:jravada@icloud.com>>

Sent: Monday, March 24, 2025 3:50 PM

To: Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>>

Cc: ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com<mailto:ClaimsDocuments2@farmersinsurance.com>>

Subject: [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Thank you for your response. I understand the importance of providing all necessary documentation to support my claim. However, as I mentioned in my previous email, the original email you are requesting was deleted when I canceled my Apple account, and it is unfortunately no longer available for forwarding.

To address this, I had previously provided a PDF copy of the email on January 15, 2025, along with my bank statements, adhering to your instructions from a letter that stated, "we will need a copy of the Brilliant Order # that was emailed to you by the company after you placed the initial order on October 29, 2024" to verify the transaction. Since then, you have claimed that Brilliant provided information about my account, and I have demonstrated that this was not the case. This has happened before, and I believe you may be following the same pattern: you assert that a vendor gave you a statement, then use that to deny my claim with vague language. When I request evidence, you state that you are not required to provide it. It seems as though you are pressuring me to relinquish my privacy rights in order to support a vague argument based on an unfounded claim about Brilliant. As previously mentioned, I updated my privacy rights before this claim was filed. You are not permitted to make me change them. Furthermore, you presented a false statement from Brilliant, and I provided their statement confirming that they did not supply any information to you. I have also submitted all the documents you need to verify this transaction.

Regarding the request to waive my CCPA rights, I am exercising my right to maintain my privacy choices, which cannot be waived under coercion from any business.

You cited a section of my policy about my obligation to allow an investigation. Please understand that while the policy outlines these obligations, it remains a contract and does not...

Additionally, I would like to get clarification on the reason for the denial of my claim. The letter you provided is vague, mentioning policy violations but not specifying which clauses were allegedly breached.

I am eager to resolve this matter and am committed to providing any additional information or documents that might assist in this process.

Thank you for your understanding and assistance.

On Mar 19, 2025, at 7:15 AM, Bryce Spradling <bryce.spradling@farmersinsurance.com<mailto:bryce.spradling@farmersinsurance.com>> wrote:

We acknowledge receipt of this email. Until the information previously requested is provided, no further consideration of your claim will be made.

________________________________

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified

that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

________________________________

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

________________________________

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

________________________________

***** PLEASE NOTE ***** This E-Mail/telefax message and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. Thank you.*****

# EXHIBIT 5

Exhibit P: Supervisor overturns denial from Mike Saskor for second time

**From:** **Julio Ravada** jravada@icloud.com
**Subject:** Re: Claim number 7007678692-1 Recap of conversation
**Date:** May 9, 2025 at 12:00
**To:** Mike Saskor michael.saskor@farmersinsurance.com
**Cc:** Amy Spawr-Bardley amy.spawrbardley@farmersinsurance.com

Dear Bryce,

I wanted to take a moment to acknowledge and thank you for directing me to Mr. Saskor regarding the outstanding matters related to my claim.

This redirection is meaningful — not just procedurally, but personally. It opens the door for resolution on issues that have deeply affected my living conditions and my well-being over the past year. I appreciate the step you've taken in helping move things forward.

Thank you again for the role you've played in facilitating this next step.

Warmly,

Luna Ravada

Sent from my iPhone

> On May 9, 2025, at 11:27 AM, Julio Ravada <jravada@icloud.com> wrote:
>
> Hi Mike
>
> I'm here to address what's left from the claim as instructed by Bryce
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > [redacted]
> > **To:** Julio Ravada <jravada@icloud.com>
> > **Cc:** ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com>, Amy Spawr-Bardley <amy.spawrbardley@farmersinsurance.com>, Mike Saskor <michael.saskor@farmersinsurance.com>
> > **Subject: RE: Re: Claim number 7007678692-1 Recap of conversation**
> >
> > [redacted]
> >
> > Bryce Spradling, AINS, CASA

Farmers Direct Property and Casuality Ins. Co.
Cell: 913-286-3007
Fax: (877) 217-1389

Please visit our claim portal to view the status and manage your claim online. Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

---

**From:** Julio Ravada <jravada@icloud.com>
**Sent:** Friday, May 9, 2025 12:12 PM
**To:** Bryce Spradling <bryce.spradling@farmersinsurance.com>
**Cc:** ClaimsDocument2 <ClaimsDocuments2@farmersinsurance.com>; Amy Spawr-Bardley <amy.spawrbardley@farmersinsurance.com>
**Subject:** [EXTERNAL] Re: Claim number 7007678692-1 Recap of conversation

Good Morning Bryce,

Thank you for your follow-up email.

I would like to clarify that I am not attempting to recover any additional depreciation under my policy, as I have already successfully recovered that amount. I understand that your assessment indicates that I was unable to provide the necessary support for further depreciation claims, but my focus is now on moving forward with the unfinished portion of my claim.

Could we please discuss the next steps to resolve this matter? I appreciate your assistance and look forward to your prompt response.

Best regards,

Luna

---

On May 9, 2025, at 6:41 AM, Bryce Spradling

Exhibvit Q: after being ignored by Mike Saskor who is trying to ignore the directive to move the cliam forward, a complaint is submitted to Supervisor who responds to confirm he has spoken to Mike

**From:** **Bryce Spradling** bryce.spradling@farmersinsurance.com
**Subject:** RE: Follow-Up on Outstanding Items – Burglary Claim
**Date:** May 14, 2025 at 10:32
**To:** Julio Ravada jravada@icloud.com
**Cc:** Mike Saskor michael.saskor@farmersinsurance.com, ClaimsDocument2 ClaimsDocuments2@farmersinsurance.com

Mike will follow up with you today.

Bryce Spradling, AINS, CASA
*Property Theft Supervisor*
Farmers Direct Property and Casualty Ins. Co.
Cell: 913-286-3007
Fax: (877) 217-1389

Please visit our claim portal to view the status and manage your claim online. Email communications are preferred and should be sent to myclaim@farmersinsurance.com. If hard copies of communications are required, they should be sent to our National Document Center at P.O. Box 268994, Oklahoma City, OK 73126.

Confidential

**From:** Julio Ravada <jravada@icloud.com>
**Sent:** Wednesday, May 14, 2025 11:02 AM
**To:** Bryce Spradling <bryce.spradling@farmersinsurance.com>
**Subject:** [EXTERNAL] Follow-Up on Outstanding Items – Burglary Claim

Hi Bryce,

I hope you're well. I'm following up regarding the burglary claim you graciously reopened, as there are still two unresolved items that remain unaddressed despite multiple follow-ups.

Per your instructions, I reached out to Mike directly and re-sent both the electrician's repair invoice and the certified art appraisal on May 9th, 2025 same that I had originally emailed to him on January 8, 2025. Unfortunately, I received no response. I followed up again two days ago with a detailed email, but I have still not received any acknowledgment or update on these two items.

# EXHIBIT 6

=================================================================

Date Received : 8/18/2025 4:02:53 PM +00:00

Subject : RE: [EXTERNAL] Final Demand – Claim No. 7007678692-1 Without Prejudice

Sender : bryce.spradling@farmersinsurance.com

To : jravada@icloud.com

CC : ClaimsDocuments2@farmersinsurance.com;michael.saskor@farmersinsurance.com

Date Sent : 8/18/2025 4:02:28 PM +00:00

=================================================================

Good Morning,

This email will serve as follow up to the below email as was your email dated August 8th.

I have reviewed your concerns. It appears the estimate that you attached was a prior estimate not the most recent. I will refer you to the letter dated July 21st 2025 (which I have attached to this email). This letter clearly outlines your prior payments and includes the estimate with the painting. Again, this was previously sent to you on August 21st.

1. The painting is line item 23 with a fully paid amount of $8,958.50. As this has been paid in full there is not additional fund owed for this item.

2. Toilet/Dishwasher – These items were paid as part of the dwelling estimate (Also attached to this email and previously sent to you in October 2024). Initially the toilet and dishwasher were added to the contents estimate in error. As they were added to this report in error they were adjusted to $0 and the amount was applied to the dwelling estimate. You will see on the contents report line items 24 and 27 clearly state "ITEM PART OF DWELLING EXPOSURE". You will see them on the dwelling estimate as line items 9 and 16 for a detach and reset and a clean as they were not damaged and in need of replacement.

3. There has been no attempt a manipulation by Mike or any other member of Farmers Insurance. We have made every attempt to accurately evaluate your claim and I have the upmost confidence that we have. As addressed above, multiple additions have been made to your claim and it is imperative that you are reviewing the most recent evaluations to fully understand what was paid on your claim.

With regards to the above referenced issues, this will be our final response. As field supervisor Albert Pimentel has explained to you the "ongoing issues" due to faulty toilet that was never properly repaired by yourself is not covered under this claim. consider this claim to be complete and finalized and will consider no further action.

As referenced above please review the attached documents showing your complete contents estimate including all items listed of concern. Additionally, claim outcome letters are attached for your review.

Thanks,

Bryce Spradling, AINS, CASA

Property Theft Supervisor

Farmers Direct Property and Casualty Ins. C.