MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUNA D'SOL,

Plaintiff,

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

Case No. 2:25-cv-10938-SVW-ASx

**DECLARATION OF KELLY FITZGERALD CANBY IN SUPPORT OF DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Judge: Hon. Stephen V. Wilson
Date: September 28, 2026
Time: 1:30 p.m.
Courtroom: 10A

Filed Concurrently With: Notice of Motion and Motion for Summary Judgment Or In The Alternative, Partial Summary Judgment; Memorandum of Points and Authorities; Separate Statement of Uncontroverted Facts and Conclusions of Law; Supporting Declarations of David A. Corona, Paul Hamilton, Michael Saskor, Donnie Means, Bryce Spradling, Elisa Martiez; Notice of Lodgment; and [Proposed] Order

Complaint Filed: August 21, 2025

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**DECLARATION OF KELLY FITZGERALD CANBY**

I, KELLY FITZGERALD CANBY, declare as follows:

1. I am an attorney at law licensed to practice before all courts of the State of California as well as the United States District Court for the Central District of California. I am a partner in the law firm of Gordon Rees Scully Mansukhani, LLP, attorneys for the Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct"). This declaration is being submitted in support of Defendant's Motion For Summary Judgment Or In The Alternative, Partial Summary Judgment in the above-entitled action. I have personal knowledge of the matters contained in this declaration and if called to testify to them, I could and would do so competently.

**Summary Of Good Faith Attempts To Meet And Confer With Plaintiff Per Local Rule 7-3**

2. I initiated the Local Rule 7-3 meet and confer process with Pro Per Plaintiff Luna D'Sol ("Plaintiff") via email on August 11, 2026 regarding Farmers Direct's anticipated Motion for Summary Judgment and/or Motion for Summary Adjudication (collectively "MJS"). Attached hereto as **Exhibit 1** is a true and correct copy of my August 11, 2026 [11:10 PM] email sent to Plaintiff with the entitled "**Subject: D'SOL: Request to Schedule Local Rule 7-3 Conference to Meet and Confer Re MSJ?** / Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company (Case No. 2:25-cv-10938-SVW-AS)" (emphasis added).

3. After further email communications with Plaintiff on the afternoon of August 12, 2026 regarding Defendant's anticipated MSJ and other pending discovery issues, a Local Rule 7-3 Conference and a Local Rule 37-1 Conference were thereafter scheduled to be held via TEAMs videoconference on August 13, 2026 at 5:30 p.m. (which was the time initially suggested by Plaintiff). Attached hereto as **Exhibit 2** are true and correct copies of a collection of meet and confer email

communications exchanged with Plaintiff on the afternoon of on August 12, 2026 along with copy of my TEAMs invitation for a videoconference to begin on August 12, 2026 at 5:30 p.m. regarding the "**Subject: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)**" (emphasis added).

4. Shortly before 5:00 p.m. on August 12, 2026, Plaintiff sent me an email and asked me to reschedule our conference for the following day on August 13, 2026 at 11:00 a.m. which I did by sending out a new TEAMs invitation and also confirming the new date and time with Plaintiff by email on August 12, 2025 [5:15 PM] along with further inquiries related to some approaching third party depositions, including her contractor Progressive Remodeling Inc. and Kyle Mangione. Attached hereto as **Exhibit 3** are true and correct copies of additional email communications exchanged with Plaintiff on August 12, 2026 along with copy of my new updated TEAMs invitation for a videoconference to begin on August 13, 2026 at 11:00 a.m. regarding the "**Subject: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)**" (emphasis added).

5. On August 13, 2026, I joined the TEAMs videoconference at the scheduled time of 11:00 a.m. and was prepared and ready to conduct the Local Rule 7-3 Conference for Farmers Direct's anticipated MSJ and to also hold a Local Rule 37-1 Conference regarding several pending discovery matters but Plaintiff never joined the videoconference and I remained in the TEAMs "room" until noon while at the same time making several good faith attempts to reach Plaintiff by phone and email to inquire about her absence and I also left her voicemail message asking her to join the TEAMs call or to alternatively just call me at my office but she never did – instead Plaintiff sent me one email communication which stated, "**You just canceled our meet and confer today without telling me in advance**" (emphasis

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

added) – Plaintiff's statement is untrue. After wasting an hour of my time, I sent Plaintiff an email message on August 13, 2026 [12:04 PM] (along with another copy of the Magistrate's REQUEST FOR INFORMAL DISCOVERY CONFERENCE Form) and a true and correct copy of that email is attached hereto as part of **Exhibit 4,** along with copies other emails exchanged with Plaintiff that day.

6. On August 18, 2028, my partner Michelle R. Bernard sent Plaintiff an email on August 18, 2026 [4:40 PM] which followed up on my prior email August 12, 2026 email to Plaintiff regarding various discovery concerns and again informed Plaintiff that "as Ms. Canby advised, Farmers Direct will be filing a motion for summary judgment/partial summary judgment as to all claims/causes of action in your complaint on the grounds that they suffer from a complete lack of proof thus entitling Farmers Direct to judgment in its favor as a matter of law." Attached hereto as **Exhibit 5** is a true and correct copy of Michelle R. Bernard's email to Plaintiff sent August 18, 2026 [4:40 PM] with the listed "**Subject: RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's Motion for Terminating Sanctions (Local Rule 7-3)**" (emphasis added).

7. I did not hear from Plaintiff from the time she sent her self-serving email on August 13, 2026 [11:10 AM] (*see* **Exhibit 4**) (which contains materially false statements which are disputed) until more than 10 days later when she sent me a cryptic email in the late afternoon on August 24, 2026 to which my partner Michelle Bernard responded to later that evening. Attached hereto as **Exhibit 16** is a true and correct copy of Plaintiff's email dated August 24, 2026 [4:41 PM] along with a copy of Michelle Bernard's reply email dated August 24, 2026 [6:33 PM].

8. I spoke with Plaintiff on the evening of August 25, 2026 after she left voicemail messages for me and my partner Michelle Bernard and also sent an email asking to meet and confer regarding "multiple material irregularities" and asked that one of us to return her call "or send a Team's invite and refraim [sic] from canceling

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

it right after" (which is just a repeat of her prior false narrative regarding her failure to participate in the meet and confer requested for this motion) and so I called her as requested. It soon became apparent that Plaintiff was not acting in good faith at all, had no sincere intention to meet and confer about anything and the scope of Plaintiff's purposeful campaign of dishonesty was frankly a bit frightening.[1] Attached hereto collectively as **Exhibit 17** are (among other documents) copies of Plaintiff's August 25, 2026 [5:05 PM] email along with my reply email sent on August 25, 2026 [6:27 PM] after our telephone call which states:

> "I did not cancel our prior meet and confer TEAMs call on August 13, 2026 (that had been rescheduled to that date at 11:00 a.m. at your request). In fact, I waited in the TEAMs room for an entire hour after calling you (leaving a message) and emailing you to inquire about your absence and asking you to join the videoconference or to call my office, but you did not." *See* **Exhibit 17**.

9. I have made good faith attempts to conduct a meet and confer conference with Plaintiff pursuant to Local Rule 7-3 and have attempted to meet and confer with Plaintiff at least 7 days prior to filing Farmers Direct's Motion For Summary Judgment Or In The Alternative, Partial Summary Judgment but Plaintiff

[1] The call started as odd but soon grew to be alarming as Plaintiff was essentially accusing me of creating a fake email message from Kyle Mangione – in reference to an email message I received from "Kyle Mangione" (mangionekyle549@gmail.com) on August 15, 2025 [1:56 AM] after Kyle Mangione failed to appear at his noticed deposition on the afternoon of August 14, 2026 -- I had copied Plaintiff on my reply to "Kyle Mangione" sent on August 18, 2026 [7:12 PM] after I again verified through our attorney service that the witness fee and estimated round trip mileage costs (collectively totally $135.61) had been delivered to Kyle Mangionoe at the time the deposition subpoena was served. Plaintiff accused me of creating fake service records and/or forging or doctoring proofs of service, among many other strange things (which I obviously deny) but I believe that Plaintiff is well aware that I did none of these things and instead is just attempting to create some fictional reality presumably for the purpose of seeking to deceive the Court. Additional materials related to this phone call and/or which refute her unfounded accusations against me are included within **Exhibit 17**.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

refused to timely participate in the Local Rule 7-3 Conference and her later communications were not made in good faith.

10. Given the approaching trial date and related filing deadlines Farmers Direct is proceeding with the filing of this Motion for Summary Judgment Of In The Alternative, Summary Adjudication on August 31, 2026 with a noticed hearing date of September 28, 2026.

**Plaintiff Failed To Respond To Requests For Admissions**
**And Plaintiff Also Failed To Designate Any Experts**

11. As further explained and established below, Plaintiff failed to respond to Farmers Direct's Request For Admissions (Set One) by the August 3, 2026 response deadline (or at all) and pursuant to Federal Rule of Civil Procedure 36(a)(3) Plaintiff is now deemed to have admitted the truth of all matters contained in the Request for Admissions as a self-executing sanction. Fed. R. Civ. Proc. 36(a)(3). This Court should not consider any evidence which is inconsistent with these deemed admission and which as result therefore leaves Plaintiff unable to raise any genuine issues of material fact and summary judgement should be granted in Farmers Direct's favor.

12. Farmers Direct propounded its first set of written discovery on July 2 2026. Specifically, pursuant to the parties' agreement to conduct service by email in this case, Farmers Direct electronically served Plaintiff with copies of Farmers Direct's Requests for Production (Set One), Interrogatories (Set One) and Requests for Admissions (Set One) ("RFAs") via email on July 2, 2026 (sent to jravada@icloud.com).[2] Attached hereto as **Exhibit 10** is a true and correct copy of

[2] Additional transmission records are also attached hereto as part of **Exhibit 12**, including true and correct copy of the TitanFile Conversation Record with Delivery Log Report which confirms that Plaintiff was served with the RFAs to her email address (jravada@icloud.com) as follows: "**Email delivered successfully to Luna D'Sol at July 2, 2026 7:02 pm EDT**" (i.e., at [4:02 PM]), along with copies of additional email communications sent to Plaintiff by my law firm's Work Flow Coordinator Elisa Martinez on July 2, 2026 along with a copy of a printout of the

the Proof of Service prepared and signed by our firm's Work Flow Coordinator Elisa Martinez which establishes that Plaintiff was electronically served with a copy of Farmers Direct's Requests for Admissions (Set One), among other discovery requests, on July 2, 2026. Additionally, the Declaration of Elisa Martinez is also filed concurrently herewith. As explained further below, a copy of this same Proof of Service document (i.e., **Exhibit 10**) will also be lodged with the Court pursuant to Farmers Direct's Notice of Lodgment as Lodged Document B.

13. Attached hereto as **Exhibit 11** is a true and correct copy of Farmers Direct's Request For Admissions (Set One) ("RFAs") (without the exhibits which are intentionally omitted from this Exhibit but will be lodged with the Court herewith per Defendant's Notice of Lodgment as Lodged Document A, with additional redactions to page 32 [FD003073]) that were propounded to Plaintiff and served by email on July 2, 2026.[3] The Declaration of Elisa Martinez (who assisted me with the service) is also filed concurrently herewith. Specifically, Farmers Direct's RFAs ask Plaintiff to "admit within thirty (30) days after services of these requests that each of the facts set forth below is true." Preceding the individual inquiries (RFA Nos. 1-90) there is a Preliminary Statement on page 2 which states, in relevant part, the following:

---

channel "History." **Additionally, the Declaration of Elisa Martinez is also filed concurrently herewith.**

[3] As Farmers Direct's RFAs contain multiple exhibits attached thereto (i.e., Exhibits A-H) whereby Plaintiff was asked to admit the authenticity of certain documents (and are lengthy as result) pursuant to Local Rule 26-2 these discovery documents will be lodged with the Court (rather than filed) per the Notice of Lodgment filed herewith and Farmers Direct will have a complete copy of the RFAs (with the Exhibits A-H attached) Lodged with the Court for review in the form as those RFAs appeared when served on Plaintiff (except additional redactions have been added to page 32 [FD003073] of "Lodged Document A").



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## PRELIMINARY STATEMENT

***

> If Plaintiff fails to timely comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to these Requests, each of the matters of which an admission is requested may be deemed admitted.

14. On or about June 8, 2026, the Court issued its Order [ECF Doc. 85] denying the Plaintiff's Renewed Motion To Remand [ECF Doc. 77] and also vacated the status conference then set for June 15, 2026 and set this case for trial on October 13, 2026 and scheduled the pretrial conference for October 5, 2026. The Court then issued its "CIVIL TRIAL PREPARATION ORDER" on June 11, 2026. [ECF Doc. 86].

15. Accordingly, per Rule 26(a)(2)(d)(1), the parties were required serve their Expert Witness Disclosures at least 90 days before trial (i.e., on or before July15, 2026).

16. Farmers Direct timely served its Expert Witness Disclosures by email to Plaintiff on July 15, 2026. Attached hereto as **Exhibit 14** is a true and correct copy of "DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY COMPANY'S EXPERT WITNESS DISCLOSURES," ("Defendant's Expert Witness Disclosures") along with copies of the attached reports of Farmers Direct's "RETAINED EXPERTS," Paul Hamiltion, Property & Casualty Claim Consultant (as Exhibit 1 thereto) and David A. Corona, Executive Manager of MKA International, Inc. ("MKA") (formerly Madsen, Kneppers & Associates, Inc.) (as Exhibit 2 thereto) with the "PROOF OF SERVICE" (attached at the end) establishing electronic service to Plaintiff on July 15, 2026 by email (jravada@icloud.com) which is executed under oath by my Assistant Kiry Yeoun who conducted the electronic

service at my direction and copied me on those communications which are included within **Exhibit 24** as further explained below.[4]

17. In addition to electronic service by direct email transmission, a TitanFile sharelink email was then also sent to Plaintiff on July 15, 2025 by Kiry Yeoun at my direction (and I was copied on those communications) which delivered a duplicate copy of Defendant's Expert Witness Disclosures to Plaintiff's email (jravada@icloud.com) and the TitanFile Conversation Record with Delivery Log confirms successful transmission to Plaintiff's email account on July 15, 2026 at 4:48 p.m. PST ("**Email delivered successfully to Luna D'Sol at July 15, 2026 7:48 pm EDT**") (emphasis added). Attached hereto as **Exhibit 24** are true and correct copies of Kiry Yeoun's electronic service transmission email to Plaintiff dated July 15, 2026 [4:46 PM] (expert reports omitted but attached separately as **Exhibit 14** hereto), Proof of Service for Defendant's Expert Witness Disclosures (with attached TitanFile External User Guide instructions) along with a copy of a printout of the channel "History Log" from TitanFile which I downloaded and printed and confirms successful transmission to Plaintiff.

18. Plaintiff failed to serve her Expert Witness Disclosures by the July 15, 2026 deadline (or at all). Plaintiff also failed to designate or disclosure any rebuttal experts within 30 days after service of Farmers Direct's Expert Witness Disclosures (i.e., on or before August 14, 2026) or at all.

19. Accordingly, as result of Plaintiff's failure to serve her Expert Witness Disclosures and/or to designate any experts on or before July 15, 2026 (and/or to designate any rebuttal experts by August 14, 2026), the opinions offered by Farmers

[4] Additionally, as noted in the attached Expert Witness Disclosures, Farmers Direct also designated additional "NON-RETAINED EXPERTS," including Donald "Donnie" Means, Senior Field Claims Representative who handled Claim No. 7007678692-1 ("Claim") and inspected the Property on behalf of Farmers Direct, Michael Saskor, a General Adjuster and member of the Property Theft team for Farmers Direct, Bryce Spradling, Property Theft Supervisor who handled the Claim on behalf of Farmers Direct, among others.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Direct's retained and non-retained experts are unrebutted and unrefuted and which is another reason there can be no genuine issue as to any of material fact and Farmers Direct is now entitled to summary judgment as a matter of law

20. To the extent that Plaintiff disputes timely receipt of email communications from our office and/or claims that she did not consent to electronic service in this case, her own prior written statements and conduct establish otherwise as explained further below.

21. For example, on or about November 18, 2025 and shortly after Farmers Direct removed this case to this Court, Plaintiff sought "permission to participate in electronic filing ('e-filing') in this case" by signing and filing her "APPLICATION FOR PERMISSION FOR ELECTRONIC FILING" whereby she affirmed, among other things, that she had reviewed Local Rule 5-4.1.1 and the instructions available on the Court's website (www.cacd.uscourts.gov/e-filing/electronic-filing-and-case-access-people-without-lawyers which states: "**By registering to e-file you have agreed to receive electronic service of documents by e-mail**") (emphasis added). The Court granted Plaintiff's application on November 25, 2025, and stated "[p]ursuant to Local Rule 5-4.1.1, the applicant must register to use the Court's CM/ECM System within five (5) days of being served," which she apparently did based on the CM/ECM records generated soon thereafter.[5] Attached hereto

[5] For example, on December 1, 2025 when this Court issued its "NEW CASE ORDER" [ECF Doc. 13] the "automatic e-mail message generated by the CM/ECF system" states that "Notice has been electronically mailed to: . . . Luna D'Sol jravada@icloud.com" and the Court was no longer sending notices to Plaintiff through the mail as before as indicated thereon. Additionally, Plaintiff also began making her own electronic filings by using the CM/ECF system including on December 5, 2025 to file her Motion to Remand [ECF Doc. 14] and to file a Supplemental Declaration of Luna D'Sol which states the following: **I recently obtained CM/ECF filing access as a pro se litigant** and am re-submitting the same Motion to Remand documents directly through CM/ECF to ensure prompt docketing and **service on all**." [ECF Doc. 15 (emphasis added)]. Additionally, the "PROOF OF SERVICE" that Plaintiff electronically filed in support of her Motion To Remand includes a declaration from "JESUS SANCHEZ" (an alleged "Non-Party Declarant" who also apparently resides at "2275 E. Belding Dr Palm Springs CA 92262") indicating that service to "all registered counsel of record in this case" was accomplished through the CM/ECF system and that "**I did not perform any**





Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

collectively as **Exhibit 6** are true and correct copies of Plaintiff's APPLICATION FOR PERMISSION FOR ELECTRONIC FILING that was filed with the Court on November 18, 2025 [ECF Doc. 10] and a copy of the Court's ORDER RE APPLICATION FOR PERMISSION FOR ELECTRONIC FILING dated November 25, 2025 [ECF Doc. 12].

22. Shortly after Farmers Direct removed this case to Federal Court, Plaintiff herself proposed for the "purposes of efficiency" that the parties conduct "service by email" going forward and my partner Michelle R. Bernard agreed. Attached hereto collectively as **Exhibit 8** are true and correct copies of Plaintiff's email dated November 17, 2025 [3:49 PM] to Michelle R. Bernard and her response email sent to Plaintiff on November 17, 2025 [6:07 PM].

23. Pursuant to the parties agreement for service by email and per the terms of the electronic filing registration process regarding consent to electronic service, on February 26, 2026, both parties exchanged their Initial Disclosures via email service only (without any objection from Plaintiff).[6] Attached hereto as **Exhibit 9** is a true and correct copy of Plaintiff's transmittal email dated February 26, 2026 [11:38 PM] sent to defense counsel along with a copy of the "attached Plaintiff's Initial Disclosures."

---

**additional manual service because none is required**." [ECF Doc. 14-3, p. 2:12-23 (emphasis added)]. Attached hereto collectively as **Exhibit 7** are true and correct copies above the above-referenced "automatic e-mail messages generated by the CM/ECF system" on December 1, 2025 (i.e. for [ECF Doc. 13]) and December 5, 2025 (i.e., for [ECF Docs. 14 and 15]), along with copies of Plaintiff's Proof of Service for her Motion to Remand [ECF Doc. 14-3] and Plaintiff's Supplemental Declaration [ECF Doc. 15] and the attachment thereto [ECF Doc. 15-1].

[6] Attached hereto as **Exhibit 13** is a true and correct copy of my Assistant Kiry Yeoun's electronic service email to Plaintiff (jravada@icloud.com) dated February 26, 2026 [4:07 PM] which attached a copy of Defendant's Initial Disclosures (which are intentionally omitted and not included within the attached exhibit) along with a copy of the attached Proof of Service documenting the e-service of transmission to Plaintiff at the email address jravada@icloud.com (which is the same address she used to register with the CM/ECF System and has been using throughout this case and the Claim).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

24. On April 23, 2026, when Plaintiff initiated the Local Rule 37-2..2 "Joint Stipulation" procedures in pursuant of her second motion to compel against Farmers Direct -- i.e., through her April 23, 2026 [7:17 AM] email whereby "Plaintiff provides her portion of the Joint Stipulation regarding the discovery issues addressed in Judge Sagar's ruling" and directed defense counsel to "insert Defendant's positions in the designated sections and return the completed Joint Stipulation within seven days of this email" – her Joint Stipulation was sent by email only. Attached hereto as **Exhibit 22** is a true and correct copy of Plaintiff's transmittal email dated April 23, 2026 [7:17 AM] sent to defense counsel with the entitled "Subject: LR 37-2-2 Joint Stipulation – Plaintiff's Portion Provided / Response Required Within 7 Days" (attachment omitted).

25. The first time that Plaintiff ever raised any issues about allegedly not receiving emails from my office on July 29, 2026 when she refused to appear for her noticed deposition on July 31, 2026 (and then she repeatedly refused to provide any alternative dates for her deposition to be rescheduled). Although Plaintiff claims she never received the Notice of Deposition that was electronically served by email on July 17, 2026 [9:26 AM] by my Assistant Kiry Yeoun, Plaintiff's assertion is obviously untrue because PLAINTIFF REPLIED TO THIS VERY SAME SERVICE EMAIL SHE CLAIMS SHE NEVER RECEIVED.[7]

---

[7] Specifically, on August 5, 2026 [3:26 PM] as part of an email message entitled "Automatic Reply: Out of the Office" and which is described therein as an "automatic response" from "Luna D'Sol" from the following email address: jravada@icloud.com. However, I suspect this email was not actually an automated message (e.g., an autoreply feature that can be activated within an email account) because not only was it unusual and suspicious that an alleged "automated response" email would be generated and almost 3 weeks after delivery of the initial email, but I had also sent Plaintiff emails to her same email address about 20 minutes earlier on August 5, 2026 [3:07 PM] and again about 40 minutes later on August 5, 2026 [4:07 PM] and neither of these messages generated any such automated response. Attached hereto collectively as **Exhibit 23** are true and correct copies of a collection of email communications among Plaintiff and defense counsel including Plaintiff's email August 5, 2026 [3:26 PM] email confirming her prior receipt of the July 17, 2026 [9:26 AM] electronic service transmission email from my Assistant Kiry Yeoun which attached a copy of "DEFENDANT FARMERS DIRECT PROPERY AND CASUALTY INSURANCE COMPANY'S NOTICE OF VIDEOTAPED

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**Summary Of Additional Documents And Information**

**Supporting Farmers Direct's Motion For Summary Judgment**

26. Attached hereto as **Exhibit 18** is a true and correct copy of a letter dated August 20, 2024 from attorney John S. Na of Gordon Rees Scully Mansukhani LLP to Plaintiff scheduling an Examination Under Oath ("EUO') for September 16, 2024 (with bates numbers added [FD004516-FD004522]).

27. Attached hereto as **Exhibit 19** is a true and correct copy of a letter dated September 12, 2024 (with bates numbers added [FD004523-FD004526] (also marked as Exhibit 1 to Plaintiff's EUO) from attorney John S. Na of Gordon Rees Scully Mansukhani LLP to Plaintiff rescheduling Plaintiff's EUO on September 16, 2024 to a later date and this letter states, in relevant part, the following: "To date, we have not received any communication from you in response to our Initial Letter. We also have not received any of the requested information or documents to date. Accordingly, we will be unable to proceed with your EUO on September 16, and the EUO has been rescheduled . . ."

28. Attached hereto as **Exhibit 20** are true and correct copies of excerpts of the certified transcript of the "EXAMINATION UNDER OATH OF JULIO RAVADA" (hereinafter "Plaintiff's EUO") taken on behalf of Farmers Direct on September 27, 2024 (with bates numbers added [FD004304-FD004310, FD004352-FD004366 (selected pages), FD004373-FD004379, FD004400-FD004401, FD004429-FD004432, FD004460-FD004474 (selected pages)].

29. Attached hereto as **Exhibit 21** is a true and correct copy of the document marked as Exhibit 5 to Plaintiff's EUO (i.e., King Power Electric Inc.'s Estimate dated July 16, 2024 for "Project: Testing and Repairs") (with bates numbers added

---

DEPOSITION OF PLAINTIFF LUNA D'SOL" along with copies of additional emails exchanged between me and Plaintiff on July 29, 2026 and July 30, 2026 (without attachments) whereby Defendant Requested a Local Rule 37-1 Conference and continued to meet and confer regarding sought deposition dates and again requested copies of Plaintiff's Initial Disclosure documents.

[FD001855-FD00001863]) which also states the following: "Prepared by: Michael Reyes, President . . . State Contractor License #1053183."

30. Beginning around July 17, 2026, I issued several Deposition Subpoenas on behalf of Farmers Direct to various third party witnesses in the case. After having been unsuccessful at serving Mr. Reyes and/or the company Kings Power Electric Inc. with the Deposition Subpoenas despite numerous attempts by a process server (and I could not reach anybody by phone or email either), I searched for alternative contact information by doing a search of the "State Contractor License # 1053183" listed on Plaintiff's estimate from King Power Electrical Inc. (i.e., the **Exhibit 21** noted above). Attached hereto as **Exhibit 15** is a true and correct copy of information that is available through the website for the Department of Consumer Affairs Contractors State License Board which I printed after using its "Check a Contractor License" search feature for "**State Contractor License # 1053183**" which is the Contractor License listed the Kings Power Electric Inc.'s "Estimate" ([FD001787-FD001795]).

31. As result of such search noted above and as shown in **Exhibit 15**, I discovered that "State Contractor License # 1053183" is registered to a different company that is called "NEW BEGINNINGS CONTRUCTION," located in Whitier, California. I called New Beginnings Construction and spoke with a person named Mariely Romero who identified herself as the owner of the company. Ms. Romero informed me that she never heard of Michael Reyes or Kings Power Electrical and she searched the Plaintiff's Property's address in her records to double check and

/ / /

/ / /

/ / /

/ / /

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Ms. Romero confirmed that her Company had not done any work at Plaintiff's home and in fact her company does not do any work in Palm Springs at all.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 31st day of August, 2026 at Carlsbad, California.

Kelly F Canby

Kelly Fitzgerald Canby

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT 1

**Kelly Canby**

**From:** Kelly Canby
**Sent:** Tuesday, August 11, 2026 11:10 PM
**To:** Luna D'Sol
**Cc:** Michelle Bernard
**Subject:** D'SOL: Request to Schedule Local Rule 7-3 Conference to Meet and Confer Re MSJ? / Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company (Case No. 2:25-cv-10938-SVW-AS)

Hello Ms. D'Sol –

I wanted to schedule a time to speak with you regarding Defendant Farmers Direct Property and Casualty Insurance Company's ("Defendant" or "Farmers Direct") anticipated Motion for Summary Judgment as and/or Motion for Summary Adjudication ("MSA"). Farmers Direct's anticipates filing a Motion for Summary Judgment ("MSJ") as to all surviving causes of action in your First Amended Complaint, specifically including the First Cause of Action for Breach of Contract, the Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith), (the Third Cause of Action is already dismissed), any alleged claims, damages and/or other relief sought under the Unruh Civil Rights Act (even if not alleged as a separate stand alone cause of action) and your claim for punitive damages as well.

The basis of Farmers Direct's anticipated MSJ/MSA is that Farmers Direct has paid all coverage benefits owed under the Policy for the alleged vandalism/burglary loss so no breach of contract as you have been fully compensated (to the extent that the June 3, 2024 incident even is a covered loss) and/or you cannot establish with any competent evidence that any additional amounts are owed under the Policy, the genuine dispute doctrine bars your bad faith claim and the record is also devoid of evidence that Farmers Direct acted unreasonably in its handling of the claim and/or with regard to the valuation and assessment of the damages to the Property as result of the June 3, 2024 incident, there is no evidence to support your claims for punitive damages, and no competent evidence of any intentional discrimination as required for a finding of liability under the Unruh Act and/or for any damages or relief sought thereunder.

In addition to other potential evidence, Farmers Direct anticipates its MSJ/MSA will be supported by the opinions of its industry standard of care expert Paul Hamilton, Property & Casualty Claim Consultant and its property loss and damage assessment and valuation expert David A. Corona, Executive Manager of MKA International, Inc. ("MKA") and/or additional opinions from some or all of the non-retained experts as listed in Farmers Direct's Expert Witness Disclosure served on July 15, 2026 (and copies of the Reports prepared by Mr. Hamilton and Mr. Corona/MKA are attached as Exhibits 1-2 thereto which further discuss the scope, basis and further details related to their opinions).

Additionally, as result of your failure to timely serve any Expert Witness Disclosures, your repeated refusals to adhere to the agreement reached during the Rule 26(f) Conference regarding the voluntary exchange of initial disclosure documents, your refusal to make yourself available for deposition and/or your failure to provide any responses to Farmers Direct's written discovery may preclude, bar entirely and/or substantially limit your ability to present any evidence in opposition to Farmers Direct MSJ/MSA, including as result of your failure to comply with Rule 26 and/or per the "self-executing" sanctions of

Rule 37 and/or as a result of any other orders that may be issued and/or obtained by Farmers Direct related to your failure to timely respond to discovery and/or otherwise. *See e.g.*, Fed. R. Civ. Proc. 26(a), 26(c), 37, 37(c)(1) (including advisory committee notes of 1993).

If you are willing to stipulate to the dismissal of any of the above-refenced claims, please let me know as it will significantly narrow the scope (or necessity) for the anticipated motion. Please also let me know if there is a good time to reach you to further discuss Farmers Direct's anticipated MSJ/MSA?

Kelly Canby

---

**KELLY F. CANBY**
Partner

GRSM 50

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

# EXHIBIT 2

**Kelly Canby**

| | |
|---|---|
| **Subject:** | Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1) |
| **Location:** | Microsoft Teams Meeting |
| **Start:** | Wed 8/12/2026 5:30 PM |
| **End:** | Wed 8/12/2026 6:30 PM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |
| **Organizer:** | Kelly Canby |
| **Required Attendees:** | Luna D'Sol |
| **Optional Attendees:** | Michelle Bernard |

________________________________________________________________________________

## Microsoft Teams meeting

**Join:** https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW

Meeting ID: 243 317 248 760 179

Passcode: vg9gf7Sr

---

Need help? | System reference

### Dial in by phone

+1 415-856-9224,,628141081# United States, San Francisco

(888) 994-5245,,628141081# United States (Toll-free)

Find a local number

Phone conference ID: 628 141 081#

### Join on a video conferencing device

Tenant key: grsmsip@m.webex.com

Video ID: 118 318 282 5

More info

For organizers: Meeting options | Reset dial-in PIN

GRSM50
GORDON REES SCULLY MANSUKHANI
YOUR 50 STATE LAW FIRM

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

________________________________________________________________________________

**Kelly Canby**

| | |
|---|---|
| **From:** | Kelly Canby |
| **Sent:** | Wednesday, August 12, 2026 2:27 PM |
| **To:** | 'Luna D'Sol' |
| **Cc:** | Michelle Bernard |
| **Subject:** | RE: D'SOL: Request to Schedule Local Rule 7-3 Conference to Meet and Confer Re MSJ? / Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company (Case No. 2:25-cv-10938-SVW-AS) |

Great. Let plan to talk tonight at 5:30 to discuss Farmers Direct's anticipated MSJ -- I will send you a TEAMs invite now.

Let's also plan to discuss the following other pressing issues related to discovery and approaching case deadlines, including:

- The 8/21/26 ADR Completion Deadline and your potential availability for a mediation and/or other potential ADR procedure next week (albeit scheduling may be a challenge with such short notice)?

- Pending discovery to you, including a Conference per Local Rule 37-1 regarding the status of your responses to Farmers Direct's written discovery set one (RFPs, ROGs, RFAs Sets One) which were due on 8/3/26 and your objections are now waived and/or a potential continuation and further Local Rule 37-1 (second discussion) related to the scheduling of your deposition and scheduling of the previously agreed upon exchange of initial disclosure documents (including whether you have any interest in potentially seeking assistance from the Magistrate via the Informal Discovery Conference Procedures)?

- The third party depositions scheduled for Friday, including whether you have any objection to potentially conducting the PMK Deposition of Progressive Remodel/David Aragon via remote videoconference on Friday morning instead of in person in Los Angeles (and/or same for Kyle Mangione's deposition Friday afternoon at 3:15 in Ontario if I am able to speak with him and confirm various things)?

Kelly Canby

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 12, 2026 2:11 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: D'SOL: Request to Schedule Local Rule 7-3 Conference to Meet and Confer Re MSJ? / Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company (Case No. 2:25-cv-10938-SVW-AS)

I am available at 5:30pm today or tomorrow at 8am 9am and 10 am

On Aug 12, 2026, at 14:08, Kelly Canby <kcanby@grsm.com> wrote:

Sure. Are you available now or soon – how about I send you a TEAMs invite for 3:00 today?

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 12, 2026 2:01 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: D'SOL: Request to Schedule Local Rule 7-3 Conference to Meet and Confer Re MSJ? / Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company (Case No. 2:25-cv-10938-SVW-AS)

Ms. Kelly

Most of what you have placed in this email is not accurate and the record does not support it

Would you like to discuss on a conference call?

On Aug 11, 2026, at 23:09, Kelly Canby <kcanby@grsm.com> wrote:

Hello Ms. D'Sol –

I wanted to schedule a time to speak with you regarding Defendant Farmers Direct Property and Casualty Insurance Company's ("Defendant" or "Farmers Direct") anticipated Motion for Summary Judgment as and/or

Motion for Summary Adjudication ("MSA"). Farmers Direct's anticipates filing a Motion for Summary Judgment ("MSJ") as to all surviving causes of action in your First Amended Complaint, specifically including the First Cause of Action for Breach of Contract, the Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith), (the Third Cause of Action is already dismissed), any alleged claims, damages and/or other relief sought under the Unruh Civil Rights Act (even if not alleged as a separate stand alone cause of action) and your claim for punitive damages as well.

The basis of Farmers Direct's anticipated MSJ/MSA is that Farmers Direct has paid all coverage benefits owed under the Policy for the alleged vandalism/burglary loss so no breach of contract as you have been fully compensated (to the extent that the June 3, 2024 incident even is a covered loss) and/or you cannot establish with any competent evidence that any additional amounts are owed under the Policy, the genuine dispute doctrine bars your bad faith claim and the record is also devoid of evidence that Farmers Direct acted unreasonably in its handling of the claim and/or with regard to the valuation and assessment of the damages to the Property as result of the June 3, 2024 incident, there is no evidence to support your claims for punitive damages, and no competent evidence of any intentional discrimination as required for a finding of liability under the Unruh Act and/or for any damages or relief sought thereunder.

In addition to other potential evidence, Farmers Direct anticipates its MSJ/MSA will be supported by the opinions of its industry standard of care expert Paul Hamilton, Property & Casualty Claim Consultant and its property loss and damage assessment and valuation expert David A. Corona, Executive Manager of MKA International, Inc. ("MKA") and/or additional opinions from some or all of the non-retained experts as listed in Farmers Direct's Expert Witness Disclosure served on July 15, 2026 (and copies of the Reports prepared by Mr. Hamilton and Mr. Corona/MKA are attached as Exhibits 1-2 thereto which further discuss the scope, basis and further details related to their opinions).

Additionally, as result of your failure to timely serve any Expert Witness Disclosures, your repeated refusals to adhere to the agreement reached during the Rule 26(f) Conference regarding the voluntary exchange of initial disclosure documents, your refusal to make yourself available for deposition and/or your failure to provide any responses to Farmers Direct's written discovery may preclude, bar entirely and/or substantially limit your ability to present any evidence in opposition to Farmers Direct MSJ/MSA, including as result of your failure to comply with Rule 26 and/or per the "self-executing" sanctions of Rule 37 and/or as a result of any other orders that may be issued and/or obtained by Farmers Direct related to your failure to timely respond to discovery and/or otherwise. *See e.g.,* Fed. R. Civ. Proc. 26(a), 26(c), 37, 37(c)(1) (including advisory committee notes of 1993).

If you are willing to stipulate to the dismissal of any of the above-refenced claims, please let me know as it will significantly narrow the scope (or necessity) for the anticipated motion. Please also let me know if there is a good time to reach you to further discuss Farmers Direct's anticipated MSJ/MSA?

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If

you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

---

# EXHIBIT 3

**Kelly Canby**

| | |
|---|---|
| **Subject:** | Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1) |
| **Location:** | Microsoft Teams Meeting |
| **Start:** | Thu 8/13/2026 11:00 AM |
| **End:** | Thu 8/13/2026 12:00 PM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |
| **Organizer:** | Kelly Canby |
| **Required Attendees:** | Luna D'Sol |
| **Optional Attendees:** | Michelle Bernard |

________________________________________________________________________________

## Microsoft Teams meeting

### Join:

https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW

Meeting ID: 243 317 248 760 179

Passcode: vg9gf7Sr

---

Need help? | System reference

### Dial in by phone

+1 415-856-9224,,628141081# United States, San Francisco

(888) 994-5245,,628141081# United States (Toll-free)

Find a local number

Phone conference ID: 628 141 081#

### Join on a video conferencing device

Tenant key: grsmsip@m.webex.com

Video ID: 118 318 282 5

More info

For organizers: Meeting options | Reset dial-in PIN

GRSM50
GORDON REES SCULLY MANSUKHANI
"YOUR 50 STATE LAW FIRM"

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

________________________________________________________________________________

**Kelly Canby**

| | |
|---|---|
| **From:** | Kelly Canby |
| **Sent:** | Wednesday, August 12, 2026 5:15 PM |
| **To:** | 'Luna D'Sol' |
| **Cc:** | Michelle Bernard |
| **Subject:** | RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1) |

Hello Ms. D'Sol – I just sent an updated TEAMs invite for tomorrow at 11:00 a.m. per your request.

Given that I need allow time to coordinate any potential changes to appearance details with court reporters, videographers and third party witnesses, can you please respond tonight related to the following two issues (alternatively we will just plan to proceed per the current notices):

1. Can you please let me know tonight whether or not you will agree that the August 14, 9:00 a.m. PMK Deposition of Progressive Remodeling Inc. may proceed on a remote basis via video conference (which the witness David Aragon has requested)? Alternatively, we will plan to proceed with an in-person deposition at our LA Office on Friday Morning per the Amended Notice.

2. Additionally, please let me know if you have a working phone number for Kyle Mangione? I'm willing to discuss the possibility of a remote deposition with him as well, but I need to speak with him to confirm he is amendable and to make sure has the proper technical capabilities/computer setup (assuming you have no objection to switching to remote). Alternatively, we will plan to proceed with the Deposition at our office in Ontario at 3:15 p.m. on August 14, 2026 as noticed.

Thanks,
Kelly Canby

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 12, 2026 4:49 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

Ms. Canby,

Please change the conference for tomorrow. I am unable to reconcile all the information you have provided lately, it is extremely inconsistent and I need time to prepare or understand your references to events I have no records Tomorrow at 11 am works me

On Aug 12, 2026, at 14:36, Kelly Canby <kcanby@grsm.com> wrote:

________________________________________________

## Microsoft Teams meeting

**Join:**https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW

Meeting ID: 243 317 248 760 179

Passcode: vg9gf7Sr

---

Need help? | System reference

### Dial in by phone

+1 415-856-9224,,628141081# United States, San Francisco

(888) 994-5245,,628141081# United States (Toll-free)

Find a local number

Phone conference ID: 628 141 081#

### Join on a video conferencing device

Tenant key: grsmsip@m.webex.com

Video ID: 118 318 282 5

More info

For organizers: Meeting options | Reset dial-in PIN

GRSM50
GORDON REES SCULLY MANSUKHANI
"YOUR 50 STATE LAW FIRM"

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

________________________________________________

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<Mail Attachment.ics>

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 4

**Kelly Canby**

| | |
|---|---|
| **From:** | Kelly Canby |
| **Sent:** | Thursday, August 13, 2026 12:04 PM |
| **To:** | 'Luna D'Sol' |
| **Cc:** | Michelle Bernard |
| **Subject:** | RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1) |
| **Attachments:** | fa91ff37-b23f-4aa4-ac81-189d772d11e5.pdf |
| **Importance:** | High |

Hello Again Luna – I left you a voicemail asking to call me but no response. I also waited in the TEAMs Chat until past noon (as I had blocked out an hour for our call) and I've been next to my phone but I have not heard from you.

**IDC FORM:** I've attached the Magistrate's IDC Request Form one more time just in case you change your mind and wish to participate in the process. Further information can be found here: Honorable Alka Sagar | Central District of California | United States District Court

**SEND US COPIES OF YOUR DOCS BY MONDAY OR WE ARE MOVING TO STRIKE YOUR INITIAL DISCLOSURES:** If copies of your Rule 26 Initial Disclosure document production materials are not sent to us by close of business on Monday 8/17 (per our prior agreement to exchange document at the 2/12/26 Rule 26(f) Conference) we will be moving to Strike your Rule 26 Disclosures.

**YOUR REFUSAL TO PARTICIPATE IN LOCAL RULE 37-1 CONFERENCES:** Additionally, given your refusal to communicate with me today (when I postponed our initial planned call from 5:30 p.m. yesterday until 11:00 today at your specific request) I presume you are unwilling to participate in the requested Local Rule 37-1 Conferences regarding to your delinquent written discovery responses, sought deposition, previously agreed upon exchange of Initial Disclosure Documents, etc. and we will move forward accordingly.

**YOUR VIOLATION OF COURT'S ADR DEADLINE:** Additionally, we have repeatedly asked you to provide potentially available dates to participate in ADR, but you have refused to provide any response. We will seek to add any violation of the Court's ADR deadline and/or other orders to our prior requested OSC hearing for the issuance of sua sponte sanctions and/or civil contempt finding against you by the Court.

**YOUR REFUSAL TO MEET AND CONFER PER LOCAL RULE 7-3 RE FARMERS DIRECT'S MSJ/MSA:** Additionally, I have been ready and willing to participate in the required pre-filing meet and confer process in good faith as required by Local Rule 7-3 regarding Farmers Direct's anticipated MSJ/MSA and you postponed our meeting yesterday, which I rescheduled at your requested time of 11:00 but you are nowhere to be found and have not returned my call either. Given the approaching filing deadlines we will plan to move forward with the MSJ/MSA given your refusal to participate in these scheduled discussions and clear refusal to participate in the meet and confer process in good faith.

**THIRD PARTY DISCOVERY:** I will plan to proceed with both depositions tomorrow per the existing notices .

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Kelly Canby
**Sent:** Thursday, August 13, 2026 11:14 AM
**To:** 'Luna D'Sol' <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

The link is below, but you can go ahead and just call me on my office line now if you prefer to speak by phone – 760-444-5923 – I'm ready to talk at 11:00 today as you requested. Please call now.

---

Microsoft Teams meeting
Join: https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW
Meeting ID: 243 317 248 760 179
Passcode: vg9gf7Sr

---

Need help? | System reference
Dial in by phone
+1 415-856-9224,,628141081# United States, San Francisco
(888) 994-5245,,628141081# United States (Toll-free)
Find a local number
Phone conference ID: 628 141 081#
Join on a video conferencing device
Tenant key: grsmsip@m.webex.com
Video ID: 118 318 282 5
More info

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Kelly Canby
**Sent:** Thursday, August 13, 2026 11:11 AM
**To:** 'Luna D'Sol' <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

I'm on the TEAMs call now?

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Thursday, August 13, 2026 11:10 AM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

You just canceled our meet and confer today without telling me in advance

You mentioned yesterday that Farmers Direct will be responsible for Exchange's wrong doing then we need Exchange here

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

> On Aug 12, 2026, at 17:15, Kelly Canby <kcanby@grsm.com> wrote:
>
> Hello Ms. D'Sol – I just sent an updated TEAMs invite for tomorrow at 11:00 a.m. per your request.
>
> Given that I need allow time to coordinate any potential changes to appearance details with court reporters, videographers and third party witnesses, can you please respond tonight related to the following two issues (alternatively we will just plan to proceed per the current notices):

1. Can you please let me know tonight whether or not you will agree that the August 14, 9:00 a.m. PMK Deposition of Progressive Remodeling Inc. may proceed on a remote basis via video conference (which the witness David Aragon has requested)? Alternatively, we will plan to proceed with an in-person deposition at our LA Office on Friday Morning per the Amended Notice.

2. Additionally, please let me know if you have a working phone number for Kyle Mangione? I'm willing to discuss the possibility of a remote deposition with him as well, but I need to speak with him to confirm he is amendable and to make sure has the proper technical capabilities/computer setup (assuming you have no objection to switching to remote). Alternatively, we will plan to proceed with the Deposition at our office in Ontario at 3:15 p.m. on August 14, 2026 as noticed.

Thanks,
Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 12, 2026 4:49 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

Ms. Canby,

Please change the conference for tomorrow. I am unable to reconcile all the information you have provided lately, it is extremely inconsistent and I need time to prepare or understand your references to events I have no records Tomorrow at 11 am works me

On Aug 12, 2026, at 14:36, Kelly Canby <kcanby@grsm.com> wrote:

---

## Microsoft Teams meeting

**Join:**https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW

Meeting ID: 243 317 248 760 179

Passcode: vg9gf7Sr

---

Need help? | System reference

**Dial in by phone**

+1 415-856-9224,,628141081# United States, San Francisco

(888) 994-5245,,628141081# United States (Toll-free)

Find a local number

Phone conference ID: 628 141 081#

**Join on a video conferencing device**

Tenant key: grsmsip@m.webex.com

Video ID: 118 318 282 5

More info

For organizers: Meeting options | Reset dial-in PIN

GRSM50 GORDON REES SCULLY MANSUKHANI YOUR 50 STATE LAW FIRM

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

________________________________________________________________________________

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**

YOUR 50 STATE LAW FIRM™
www.grsm.com

<Mail Attachment.ics>

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

**REQUEST FOR INFORMAL DISCOVERY CONFERENCE**

Email to: as_chambers@cacd.uscourts.gov

Case Caption and Number:

Dates of the two L.R. 37-1 conferences of counsel: ☐ Telephonic ☐ In Person ☐ Telephonic ☐ In Person

Counsel of Record who will be appearing at the informal telephonic conference

For Plaintiff(s):

For Defendant(s):

Proposed, stipulated dates and times for telephonic conference:

BRIEF, NEUTRAL STATEMENT OF DISPUTE:

SPECIFIC RELIEF REQUESTED BY MOVING PARTY:

BRIEF SUMMARY OF PARTIES' RESPECTIVE POSITIONS:

Plaintiff:

Defendant:

# EXHIBIT 5

**Kelly Canby**

**From:** Michelle Bernard
**Sent:** Tuesday, August 18, 2026 4:40 PM
**To:** Luna D'Sol
**Cc:** Kelly Canby
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's Motion for Terminating Sanctions (Local Rule 7-3)

Ms. D'Sol: In furtherance to Ms. Canby's August 13, 2026 email below, given your refusal to produce your Rule 26 document by close of business yesterday, your failure to designate experts, your failure to appear at your properly noticed deposition last week and your related failure to comply with all pertinent scheduling order deadlines in this matter, Farmers Direct will be filing a motion seeking terminating sanctions pursuant to FRCP Rule 37 based on your record of willful litigation misconduct in this case. We will also be requesting that the court issue monetary sanctions commensurate with the attorney's fees and costs incurred by Farmers Direct to file its Terminating Sanctions Motion.

Additionally, as Ms. Canby advised, Farmers Direct will be filing a motion for summary judgment/partial summary judgment as to all claims/causes of action in your complaint on the grounds that they suffer from a complete lack of proof thus entitling Farmers Direct to judgment in its favor as a matter of law.

I am available to meet and confer with you this week regarding the relief contemplated in Farmers Direct's motions with the understanding that there is no realistic expectation that: (1) you will stipulate to having the court enter terminating sanctions against you; and/or (2) you will stipulate to having judgment entered against you and in favor of Farmers Direct.

If you wish to discuss this matter in further detail, please provide a date/time to contact you.

MRB

**MICHELLE R. BERNARD**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 619.230.7769
**E:** mbernard@grsm.com | grsm.com
633 W. 5th Street, 52nd Floor, Los Angeles, CA 90071
101 W. Broadway, Suite 2000, San Diego, CA 92101

**From:** Kelly Canby <kcanby@grsm.com>
**Sent:** Thursday, August 13, 2026 12:04 PM
**To:** Luna D'Sol <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending

Discovery Issues (Local Rule 37-1)
**Importance:** High

Hello Again Luna – I left you a voicemail asking to call me but no response. I also waited in the TEAMs Chat until past noon (as I had blocked out an hour for our call) and I've been next to my phone but I have not heard from you.

**IDC FORM:** I've attached the Magistrate's IDC Request Form one more time just in case you change your mind and wish to participate in the process. Further information can be found here: Honorable Alka Sagar | Central District of California | United States District Court

**SEND US COPIES OF YOUR DOCS BY MONDAY OR WE ARE MOVING TO STRIKE YOUR INITIAL DISCLOSURES:** If copies of your Rule 26 Initial Disclosure document production materials are not sent to us by close of business on Monday 8/17 (per our prior agreement to exchange document at the 2/12/26 Rule 26(f) Conference) we will be moving to Strike your Rule 26 Disclosures.

**YOUR REFUSAL TO PARTICIPATE IN LOCAL RULE 37-1 CONFERENCES:** Additionally, given your refusal to communicate with me today (when I postponed our initial planned call from 5:30 p.m. yesterday until 11:00 today at your specific request) I presume you are unwilling to participate in the requested Local Rule 37-1 Conferences regarding to your delinquent written discovery responses, sought deposition, previously agreed upon exchange of Initial Disclosure Documents, etc. and we will move forward accordingly.

**YOUR VIOLATION OF COURT'S ADR DEADLINE:** Additionally, we have repeatedly asked you to provide potentially available dates to participate in ADR, but you have refused to provide any response. We will seek to add any violation of the Court's ADR deadline and/or other orders to our prior requested OSC hearing for the issuance of sua sponte sanctions and/or civil contempt finding against you by the Court.

**YOUR REFUSAL TO MEET AND CONFER PER LOCAL RULE 7-3 RE FARMERS DIRECT'S MSJ/MSA:** Additionally, I have been ready and willing to participate in the required pre-filing meet and confer process in good faith as required by Local Rule 7-3 regarding Farmers Direct's anticipated MSJ/MSA and you postponed our meeting yesterday, which I rescheduled at your requested time of 11:00 but you are nowhere to be found and have not returned my call either. Given the approaching filing deadlines we will plan to move forward with the MSJ/MSA given your refusal to participate in these scheduled discussions and clear refusal to participate in the meet and confer process in good faith.

**THIRD PARTY DISCOVERY:** I will plan to proceed with both depositions tomorrow per the existing notices .

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com

101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Kelly Canby
**Sent:** Thursday, August 13, 2026 11:14 AM
**To:** 'Luna D'Sol' <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

The link is below, but you can go ahead and just call me on my office line now if you prefer to speak by phone – 760-444-5923 – I'm ready to talk at 11:00 today as you requested. Please call now.

________________________________________________________________________________

Microsoft Teams meeting
Join: https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW
Meeting ID: 243 317 248 760 179
Passcode: vg9gf7Sr

________________________________________

Need help? | System reference
Dial in by phone
+1 415-856-9224,,628141081# United States, San Francisco
(888) 994-5245,,628141081# United States (Toll-free)
Find a local number
Phone conference ID: 628 141 081#
Join on a video conferencing device
Tenant key: grsmsip@m.webex.com
Video ID: 118 318 282 5
More info

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Kelly Canby
**Sent:** Thursday, August 13, 2026 11:11 AM
**To:** 'Luna D'Sol' <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

I'm on the TEAMs call now?

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Thursday, August 13, 2026 11:10 AM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

You just canceled our meet and confer today without telling me in advance

You mentioned yesterday that Farmers Direct will be responsible for Exchange's wrong doing then we need Exchange here

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

On Aug 12, 2026, at 17:15, Kelly Canby <kcanby@grsm.com> wrote:

Hello Ms. D'Sol – I just sent an updated TEAMs invite for tomorrow at 11:00 a.m. per your request.

Given that I need allow time to coordinate any potential changes to appearance details with court reporters, videographers and third party witnesses, can you please respond tonight related to the following two issues (alternatively we will just plan to proceed per the current notices):

1. Can you please let me know tonight whether or not you will agree that the August 14, 9:00 a.m. PMK Deposition of Progressive Remodeling Inc. may proceed on a remote basis via video conference (which the witness David Aragon has requested)? Alternatively, we will plan to proceed with an in-person deposition at our LA Office on Friday Morning per the Amended Notice.

2. Additionally, please let me know if you have a working phone number for Kyle Mangione? I'm willing to discuss the possibility of a remote deposition with him as well, but I need to speak with him to confirm he is amendable and to make sure has

the proper technical capabilities/computer setup (assuming you have no objection to switching to remote). Alternatively, we will plan to proceed with the Deposition at our office in Ontario at 3:15 p.m. on August 14, 2026 as noticed.

Thanks,
Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 12, 2026 4:49 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

Ms. Canby,

Please change the conference for tomorrow. I am unable to reconcile all the information you have provided lately, it is extremely inconsistent and I need time to prepare or understand your references to events I have no records Tomorrow at 11 am works me

On Aug 12, 2026, at 14:36, Kelly Canby <kcanby@grsm.com> wrote:

________________________________________________

## Microsoft Teams meeting

**Join:** https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW

Meeting ID: 243 317 248 760 179

Passcode: vg9gf7Sr

---

Need help? | System reference

**Dial in by phone**

+1 415-856-9224,,628141081# United States, San Francisco

(888) 994-5245,,628141081# United States (Toll-free)

Find a local number

Phone conference ID: 628 141 081#

**Join on a video conferencing device**

Tenant key: grsmsip@m.webex.com

Video ID: 118 318 282 5

More info

For organizers: Meeting options | Reset dial-in PIN

GRSM50 GORDON REES SCULLY MANSUKHANI YOUR 50 STATE LAW FIRM

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

________________________________________________________________________________

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<Mail Attachment.ics>

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

# EXHIBIT 6

Address: 2275 E Belding Dr
Palm Springs CA 92262
Phone Number: 213 925 4069
Email Address: jravada@icloud.com
*Pro Se*

FILED
CLERK, U.S. DISTRICT COURT
11/18/25
CENTRAL DISTRICT OF CALIFORNIA
BY MRV DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Luna D'Sol

PLAINTIFF(S)

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1–50,

DEFENDANT(S)

CASE NUMBER

2:25-cv-10938-BFM

**APPLICATION FOR PERMISSION FOR ELECTRONIC FILING**

As the ☒ Plaintiff ☐ Defendant in the above-captioned matter, I respectfully ask the Court for permission to participate in electronic filing ("e-filing") in this case. I hereby affirm that:

1. I have reviewed Local Rule 5-4.1.1 and the instructions available on the Court's website at www.cacd.uscourts.gov/e-filing/electronic-filing-and-case-access-people-without-lawyers.
2. I understand that once I register for e-filing, I will receive notices and documents in Central District cases only by e-mail and not by U.S. mail.
3. I understand that if my use of the Court's e-filing system is unsatisfactory, my e-filing privileges may be revoked and I will be required to file documents in paper, but will continue to receive documents via e-mail.
4. I understand that I may not e-file on behalf of any other person in this or any other case.
5. I have regular access to the technical requirements necessary to e-file successfully:

*Check all that apply.*

- ☑ A Computer with internet access.
- ☑ An email account on a daily basis to receive notifications from the Court and notices from the e-filing system.
- ☑ A scanner to convert documents that are only in paper format into electronic files.
- ☑ A printer or copier to create required paper copies such as chambers copies.
- ☑ A word-processing program to create documents; and
- ☑ A PDF reader and a PDF writer to convert word processing documents into PDF format, the only electronic format in which documents can be e-filed.

Date: 11/18/2025 Signature: [signature]

Case 2:25-cv-10938-SVW-AS Document 1-26 Filed 12/05/25 Page 53 of 351 Page ID #:4986

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Luna D'Sol<br><br>PLAINTIFF(S)<br>v.<br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1–50,<br><br>DEFENDANT(S) | CASE NUMBER<br><br>2:25-cv-10938-BFM<br><br>**ORDER RE APPLICATION FOR PERMISSION FOR ELECTRONIC FILING** |

IT IS ORDERED that the Application for Permission for Electronic Filing by Luna D'Sol ______________________ is hereby:

☑ GRANTED

Pursuant to Local Rule 5-4.1.1, the applicant must register to use the Court's CM/ECF System within five (5) days of being served with this order. Registration information is available at the Pro Se Litigant E-Filing web page located on the Court's website. Upon registering, the applicant will receive a CM/ECF login and password that will allow him/her to file non-sealed documents electronically in this case only. Any documents being submitted under seal must be manually filed with the Clerk.

Dated: November 25, 2025

[signature]
United States District/Magistrate Judge

☐ DENIED

*Comments:*

Dated: ______________________

______________________
United States District/Magistrate Judge

# EXHIBIT 7

**Kelly Canby**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Monday, December 1, 2025 8:42 AM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:25-cv-10938-SVW-AS Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company et al Initial Order upon Filing of Complaint - form only |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

## Notice of Electronic Filing

The following transaction was entered on 12/1/2025 at 8:41 AM PST and filed on 12/1/2025

| | |
|---|---|
| **Case Name:** | Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company et al |
| **Case Number:** | 2:25-cv-10938-SVW-AS |
| **Filer:** | |
| **Document Number:** | 13 |

**Docket Text:**
**NEW CASE ORDER upon filing of the complaint by Judge Stephen V. Wilson. (dta)**

**2:25-cv-10938-SVW-AS Notice has been electronically mailed to:**

Michelle R Bernard mbernard@grsm.com, jvang-zamora@gordonrees.com

Luna D'Sol jravada@icloud.com

**2:25-cv-10938-SVW-AS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

**Kelly Canby**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Friday, December 5, 2025 12:04 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:25-cv-10938-SVW-AS Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company et al Motion to Remand Case to State Court |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

## Notice of Electronic Filing

The following transaction was entered on 12/5/2025 at 12:03 PM PST and filed on 12/5/2025

| | |
|---|---|
| **Case Name:** | Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company et al |
| **Case Number:** | 2:25-cv-10938-SVW-AS |
| **Filer:** | Luna D'Sol |
| **Document Number:** | 14 |

**Docket Text:**
**First NOTICE OF MOTION AND MOTION to Remand Case to Riverside Superior Court filed by PLAINTIIF Luna D'Sol. Motion set for hearing on 1/20/2026 at 10:00 AM before Judge Stephen V. Wilson. (Attachments: # (1) Memorandum, # (2) Declaration, # (3) Supplement Proof of Service, # (4) Proposed Order, # (5) Exhibit Exhibits 1 to 16) (D'Sol, Luna)**

**2:25-cv-10938-SVW-AS Notice has been electronically mailed to:**

Luna D'Sol jravada@icloud.com

Michelle R Bernard mbernard@grsm.com, jvang-zamora@gordonrees.com

**2:25-cv-10938-SVW-AS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Motion to Remand.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41479850-0
] [145cd3b051c03438c0f6f790e22cde4ff55518d0f79b58b8a8a20c5bfd4e255df81
5d232c07b78a7ecb3573c2f1e520015a876fc4cf62e885e77e43a68ca00d5]]
**Document description:**Memorandum
**Original filename:**C:\fakepath\2025-11-18 Memorandum in support motion to remand .pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41479850-1
] [14a84b8a7f87582f6a901f96b918d0c9f8d9b05c3ff10a4203b9f6e27dfff05def3
0b9054aa04de35cdd5aad7e6f1f75c1f4771668208a7d6932734801ea3ba2]]
**Document description:**Declaration
**Original filename:**C:\fakepath\2025-11-18 Notice of Declaration.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41479850-2
] [3848905479b77b712e2798f3b50417705cba7c4ac971fac0f8969e185a4be99115b
c164ddeb18de8e86e34b71f41828522ff56f671ee27d4db750d0ca1b0d040]]
**Document description:**Supplement Proof of Service
**Original filename:**C:\fakepath\Proof of Service.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41479850-3
] [5ebeb6c75e5410ce7b4ac3c4a7a3548e02eaf3eb34661752075bb8c26352bc7cdc6
3785f424a5b52547832e8a798fb4bf65583c07f05e0e9d469ac64ef898a10]]
**Document description:**Proposed Order
**Original filename:**C:\fakepath\[Prposed] ORDER GRANTING PLAINTIFFS MOTION TO REMAND.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41479850-4
] [a2652c06907cd9083e2b755a523c247466132fcfe806390423c3a70cdd281d34e8f
a2e93a5551d65e7e47870a703c4d3151c5731cda2a093ec5fec0432f039df]]
**Document description:**Exhibit Exhibits 1 to 16
**Original filename:**C:\fakepath\Exhibits.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41479850-5
] [930d3a1eb6fb23976e3544cc625bea2efac63c56a9548fa82264cceb763e2597ae2
517e48fe999d8df03227cf5753063cd233b1f5f1201d13348b1b604b5f2a5]]

**Kelly Canby**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Friday, December 5, 2025 12:14 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:25-cv-10938-SVW-AS Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company et al Notice (Other) |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

## Notice of Electronic Filing

The following transaction was entered on 12/5/2025 at 12:13 PM PST and filed on 12/5/2025

| | |
|---|---|
| **Case Name:** | Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company et al |
| **Case Number:** | 2:25-cv-10938-SVW-AS |
| **Filer:** | Luna D'Sol |
| **Document Number:** | 15 |

**Docket Text:**
**Notice Supplemental Declaration Regarding EDSS Filing of Motion to Remand filed by Plaintiff Luna D'Sol. (Attachments: # (1) Exhibit Exhibit A EDSS Confirmation)(D'Sol, Luna)**

**2:25-cv-10938-SVW-AS Notice has been electronically mailed to:**

Luna D'Sol jravada@icloud.com

Michelle R Bernard mbernard@grsm.com, jvang-zamora@gordonrees.com

**2:25-cv-10938-SVW-AS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Suplemental Declaration Notice of Luna D'Sol.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41480002-0
] [85d4487629e80c1e8311e942252db3486640bdbc582899d2da2726b849666f530e8
0b14232462e3d1064483f81db561b400816722ab047b22f24bade2cd696cf]]
**Document description:**Exhibit Exhibit A EDSS Confirmation
**Original filename:**C:\fakepath\Submission Confirmation.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/5/2025] [FileNumber=41480002-1
] [bf582c37b6fcf1b10acb292c3db01878550e659fd0603f0c8131d0a1f1d1a7ea59a
9479906f680a4954a8c27ea988032b742d1a7e74cf69a852b5e1fb3dd43ed]]

*Luna D'Sol*
*2275 E Belding Dr*
*Palm Springs CA 92262*
*213-925-4069*
*jravada@icloud.com*
*Plaintiff, Self-Represented*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUNA D'SOL

Plaintiff,

vs.

*FARMERS DIRECT PROPERTY AND CASUALTYINSURANCE COMPANY, and DOES 1–50*

Defendant.

Case No.: 2:25-cv-10938-BFM

PROOF OF SERVICE

I, **JESUS SANCHEZ**, declare:

1. I am over the age of 18 and not a party to this action. My address is [Declarant's Address].
2. On December 5TH, 2025, I ensured that the following documents were submitted to the United States District Court for the Central District of California for electronic filing:

- Notice of Motion and Motion to Remand
- Memorandum of Points and Authorities
- Declaration of Luna D'Sol and Exhibits 1–16
- [Proposed] Order

3. After submission, the Court's CM/ECF system generated a Notice of Electronic Filing ("NEF"). Under Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 5-3.1, this NEF constitutes service of the above documents.

4. The CM/ECF system automatically served all registered counsel of record in this case, including:

- Michelle R. Bernard – mbernard@grsm.com
- Jer Vang-Zamora – jvang-zamora@grsm.com

5. I did not perform any additional manual service because none was required.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: December 5th, 2025

Palm Springs, California

**JESUS SANCHEZ**

Non-Party Declarant

2275 E Belding Dr

Palm Springs CA 92262

*Luna D'Sol*
*2275 E Belding Dr*
*Palm Springs CA 92262*
*213-925-4069*
*jravada@icloud.com*
*Plaintiff, Self-Represented*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUNA D'SOL<br><br>Plaintiff,<br><br>vs.<br><br>*FARMERS DIRECT PROPERTY AND CASUALTYINSURANCE COMPANY, and DOES 1–50*<br><br>Defendant. | Case No.: 2:25-cv-10938-BFM<br><br>SUPPLEMENTAL DECLARATION OF LUNA D'SOL<br><br>REGARDING TIMELY EDSS SUBMISSION OF MOTION TO REMAND |

I, Luna D'Sol, declare:

1. On November 18, 2025, I submitted my Motion to Remand, Memorandum of Points and Authorities, Declaration, Exhibits, Proposed Order, and Proof of Service to the Court using the Electronic Document Submission System ("EDSS").

   The Court confirmed receipt and assigned Tracking Number **EDS-251118-002-7190**.

   A copy of the Court's confirmation email is attached hereto.

2. The EDSS notice states that the submission date "will be considered the filing date" once the documents are processed and uploaded to the CM/ECF docket.

3. I recently obtained CM/ECF filing access as a pro se litigant and am re-submitting the same Motion to Remand documents directly through CM/ECF to ensure prompt docketing and service on all parties.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: DECEMBER 5TH, 2025

Palm Springs, California

s/ Luna D'Sol

**Luna D'Sol**

Plaintiff, Pro Se

213-925-4069

jravada@icloud.com

**From:** **Civil Intake** do-not-reply@cacd.uscourts.gov
**Subject:** Submission Confirmation
**Date:** November 18, 2025 at 22:55
**To:** jravada@icloud.com

**Dear Luna D'Sol:**

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Luna D'Sol
**Tracking Number:** EDS-251118-002-7190
**Date:** 11/18/2025 10:55:34 PM

Uploaded files:

- **2025-11-18 EXHIBITS.pdf**
  *Exhibits in support of motion to remand*
- **2025-11-18 Notice of Declaration.pdf**
  *Notice of Declaration*
- **2025-11-18 Motion to Remand.pdf**
  *Motion to Remand*
- **2025-11-18 Proof of Service.pdf**
  *Proof of Service*
- **2025-11-18 Memorandum in support motion to remand .pdf**
  *Memorandum in support of motion to remand*
- **2025-11-18 Proposed Order .pdf**
  *Proposed Order*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS will be processed in the order they are received and should be uploaded to CM/ECF within 3-5 business (or court) days after receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

# EXHIBIT 8

**Kelly Canby**

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Monday, November 17, 2025 3:49 PM
**To:** Michelle Bernard
**Cc:** Jer Vang-Zamora
**Subject:** Acknowledgment of Defendant's Recent Filings – D'Sol v. Farmers Direct (2:25-cv-10156)

Dear Ms. Bernard,

I acknowledge receipt of the filings served on November 14, 2025, including the Notice of Removal, Notice of Related Cases, and Request for Judicial Notice.

For purposes of efficiency, please confirm whether you consent to **service by email** for all future filings and correspondence in this matter. If so, please confirm the preferred service email address.

Thank you.

Sincerely,

**Luna D'Sol**

On Nov 16, 2025, at 00:18, Jer Vang-Zamora <jvang-zamora@grsm.com> wrote:

Dear Ms. D'Sol:

Attached please find the following documents:

1. Defendant's Notice Of Removal Of Civil Action [28 U.S.C. §§ 1332, 1441, and 1446] (and Proof of Service);
2. Civil Cover Sheet (and Proof of Service);
3. Certificate And Notice Of Interested Parties (and Proof of Service);
4. Defendant's Notice Of Related Cases (and Proof of Service); and
5. Defendant's Request For Judicial Notice In Support Of Defendant's Notice Of Removal [F.R.E. 201(B)] (and Proof of Service);

Regards,

---

**JER VANG-ZAMORA**
Legal Secretary

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 619.230.7751
**E:** jvang-zamora@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<2025-11-14 D'SOL NTC OF REMOVAL.pdf><2025-11-14 D'SOL POS RE NTC OF REMOVAL.pdf><2025-11-14 D'SOL CIVIL COVER SHEET.pdf><2025-11-14 D'SOL POS RE CIVIL COVER SHEET.pdf><2025-11-14 D'SOL NOTICE OF INTERESTED PARTIES.pdf><2025-11-14 D'SOL POS RE NOTICE OF INTERESTED PARTIES.pdf><2025-11-14 D'SOL NTC OF RELATED CASES.pdf><2025-11-14 D'SOL POS RE NTC OF RELATED CASES.pdf><2025-11-14 D'SOL REQUEST FOR JUDICIAL NOTICE.pdf><2025-11-14 D'SOL POS RE REQUEST FOR JUDICIAL NOTICE.pdf>

**Luna D’Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

**Kelly Canby**

| | |
|---|---|
| **From:** | Michelle Bernard <mbernard@grsm.com> |
| **Sent:** | Monday, November 17, 2025 6:07 PM |
| **To:** | Luna D'Sol |
| **Cc:** | Jer Vang-Zamora |
| **Subject:** | RE: Acknowledgment of Defendant's Recent Filings – D'Sol v. Farmers Direct (2:25-cv-10156) |
| **Attachments:** | 2025-11-16 D'SOL - DOC 6 NTC OF ASSIGNMENT TO US MAGISTRATE JUDGE AND DECLINATION OF CONSENT(108937564.1).pdf |

Dear Ms. D'Sol: Thank you for your email. While all substantive pleadings (*i.e.* motions, etc.) will need to be filed/served via the District Court's ECF system per Central District Local Rules, we are amenable to service via email of courtesy copies of substantive pleadings, discovery pleadings and correspondence. Email addresses for our firm should include both me (mbernard@grsm.com) and my secretary Jer Vang-Zamora (jvang-zamora@grsm.com).

In the event that you are not yet registered for ECF filings, attached is the Notice of Assignment to U.S. Magistrate Judge we received yesterday from the District Court. As noted, either party can opt out of having a Magistrate Judge preside over this matter for all purposes by following the instructions in the form.

Relevant to the First Amended Complaint, I would like to schedule a time to meet and confer to discuss whether you would be amenable to voluntarily dismissing the Third Cause of Action – Violation of Insurance Code Section 790.03(h)("Section 790.03"/"UIPA"). While alleged violations of Section 790.03 may be admissible as evidence of bad faith claims handling conduct for purposes of breach of the implied covenant of good faith and faith dealing (*i.e.* your Second Cause of Action), there is no private right of action to pursue a separate cause of action against an insurer under this statute based on the California Supreme Court's holding in *Moradi-Shalal v. Fireman's Fund Ins. Co.* (1988) 46 Cal.3d 287, 304 ("Moradi-Shalal"). *See also Zephyr Park, Ltd. v. Superior Court* (1989) 213 Cal.App.3d 833, 834 ("We hold *Moradi-Shalal* determined that [the UIPA] cannot be used as the basis for a private action ..."); *Waller v. Truck Ins. Exchange* (1995) 11 Cal.4th 1, 35 (the UIPA "confers no private right of action for damages"); *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 488 ("violations of the fair claims practices regulations do not give rise to a private right of action"); *Rattan v. United Services Auto. Assn.* (2000) 84 Cal.App.4th 715, 724 ("neither the Insurance Code nor regulations adopted under its authority provide a private right of action"). Accordingly, we would propose that you stipulate to dismissing the Third Cause of Action (Violation of Insurance Code Section 790.03) and proceed against Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") on the First Cause of Action (Breach of Contract) and Second Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealing).

Relevant to the timing of Farmers Direct's responsive pleading, it is due five (5) court days after filing of the removal to District Court (*i.e.* November 21, 2025). Given that I will be out of town from November 20 – 25 visiting my 87-year-old father for the pre-Thanksgiving holiday, as a professional courtesy, I would kindly request a 21-day extension of time to respond to Plaintiff's First Amended Complaint pursuant to Local Rule 8-3 which provides for an automatic extension of time via stipulation without court approval provided that the cumulative time to respond is not more than 30 days. The requested extension will

also allow both parties additional time to complete our meet and confer discussions pursuant to Local Rule 7-3 regarding Farmers Direct's contemplated motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Please let me know if you are amenable to this extension request and I will prepare the proposed "Stipulation to Extend Time To Respond to Initial Complaint By Not More Than 30 Days" [Local Rule 8-3] for your review and approval.

Thank you in advance for your professional courtesy in this matter.

Best regards,

MRB

---

**MICHELLE R. BERNARD**
Partner

633 W. 5th Street, 52nd Floor, Los Angeles, CA 90071
101 W. Broadway, Suite 2000, San Diego, CA 92101
**D:** 619.230.7769
mbernard@grsm.com

grsm.com

---

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Monday, November 17, 2025 3:49 PM
**To:** Michelle Bernard <mbernard@grsm.com>
**Cc:** Jer Vang-Zamora <jvang-zamora@grsm.com>
**Subject:** Acknowledgment of Defendant's Recent Filings – D'Sol v. Farmers Direct (2:25-cv-10156)

Dear Ms. Bernard,

I acknowledge receipt of the filings served on November 14, 2025, including the Notice of Removal, Notice of Related Cases, and Request for Judicial Notice.

For purposes of efficiency, please confirm whether you consent to **service by email** for all future filings and correspondence in this matter. If so, please confirm the preferred service email address.

Thank you.

Sincerely,

**Luna D'Sol**

On Nov 16, 2025, at 00:18, Jer Vang-Zamora <jvang-zamora@grsm.com> wrote:

Dear Ms. D'Sol:

Attached please find the following documents:

1. Defendant's Notice Of Removal Of Civil Action [28 U.S.C. §§ 1332, 1441, and 1446] (and Proof of Service);
2. Civil Cover Sheet (and Proof of Service);
3. Certificate And Notice Of Interested Parties (and Proof of Service);
4. Defendant's Notice Of Related Cases (and Proof of Service); and
5. Defendant's Request For Judicial Notice In Support Of Defendant's Notice Of Removal [F.R.E. 201(B)] (and Proof of Service);

Regards,

---

**JER VANG-ZAMORA**
Legal Secretary

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 619.230.7751
**E:** jvang-zamora@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<2025-11-14 D'SOL NTC OF REMOVAL.pdf><2025-11-14 D'SOL POS RE NTC OF REMOVAL.pdf><2025-11-14 D'SOL CIVIL COVER SHEET.pdf><2025-11-14 D'SOL POS RE CIVIL COVER SHEET.pdf><2025-11-14 D'SOL NOTICE OF INTERESTED PARTIES.pdf><2025-11-14 D'SOL POS RE NOTICE OF INTERESTED PARTIES.pdf><2025-11-14 D'SOL NTC OF RELATED CASES.pdf><2025-11-14 D'SOL POS RE NTC OF RELATED CASES.pdf><2025-11-14 D'SOL REQUEST FOR JUDICIAL NOTICE.pdf><2025-11-14 D'SOL POS RE REQUEST FOR JUDICIAL NOTICE.pdf>

**Luna D’Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 9

**Kelly Canby**

| | |
|---|---|
| **From:** | Luna D'Sol <jravada@icloud.com> |
| **Sent:** | Thursday, February 26, 2026 11:38 PM |
| **To:** | Kelly Canby |
| **Cc:** | Michelle Bernard; Kiry Yeoun; Jer Vang-Zamora |
| **Subject:** | Plaintiff's Rule 26(a)(1) Initial Disclosures – D'Sol v. Farmers Direct (2:25-cv-10938-SVW-ASx) |
| **Attachments:** | Plaintiffs_Initial_Disclosures.pdf |

Counsel,

Please find attached Plaintiff's Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1).

Please confirm receipt.

Thank you.

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

**Luna D'Sol**
Plaintiff, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Telephone: (213) 925-4069
Email: jravada@icloud.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LUNA D'SOL,**<br>Plaintiff,<br>v.<br>**FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,**<br>Defendants. | **Case No. 2:25-cv-10938-SVW-ASx**<br>**PLAINTIFF'S INITIAL DISCLOSURES [F.R.C.P. RULE 26(a)(1)]**<br>Judge: Hon. Stephen V. Wilson<br>Date: March 23, 2026<br>Time: 1:30 p.m.<br>Courtroom: 10A<br>Complaint Filed: August 21, 2025 |

Pursuant to the Court's Order Setting Initial Status Conference [ECF Doc. 17] and the Court's subsequent continuation thereof to March 23, 2026 [ECF Docs. 29, 36, and 42] (and per the timing discussed by the parties during the meet and confer discussion on February 12, 2026), Plaintiff Luna D'Sol hereby submits her Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. Plaintiff's investigation regarding the claims asserted in the operative First Amended Complaint is ongoing and discovery is not yet complete. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff reserves the right to supplement, amend and/or correct her Initial Disclosures as information is acquired or becomes available.

## I. Rule 26(a)(1)(A)(i): Witnesses

Plaintiff believes the following individuals or entities may have knowledge of relevant facts that Plaintiff may use in support of her claims. Plaintiff believes the following individuals or entities may have knowledge of relevant facts that Plaintiff may use in support of her claims. Plaintiff reserves the right to supplement these disclosures pursuant to Rule 26(e). Accordingly, Plaintiff reserves the right to identify additional witnesses at a later date.

| Person/Entity | Affiliation & Anticipated Testimony |
|---|---|
| **Luna D'Sol**<br>2275 E. Belding Dr.<br>Palm Springs, CA 92262<br>(213) 925-4069<br>jravada@icloud.com | Plaintiff:<br>• Property damage and losses caused by the June 3, 2024 burglary and vandalism incident at the Property.<br>• Request for coverage benefits under Farmers Direct Homeowners Policy No. 3872340940 ("Policy"), Claim No. 7007678692-1 ("Claim").<br>• Communications with Defendant regarding the Claim.<br>• Facts and circumstances relating to the Loss. |

| | |
|---|---|
| | • Repairs and current condition of the Property.<br>• Replacement and valuation of personal property.<br>• Additional living expenses incurred.<br>• Plaintiff's claimed damages in this lawsuit. |
| **Donald "Donnie" Means**<br>(contact through Defendant's counsel) | Senior Field Claims Representative<br>• Initial inspection of the Property in June 2024.<br>• Investigation and evaluation of the Claim.<br>• Communications with Plaintiff regarding the Claim. |
| **Richard Bryan**<br>(contact through Defendant's counsel) | General Adjuster<br>• Investigation regarding the Claim.<br>• Coverage position regarding the Claim.<br>• Communications with Plaintiff regarding the Claim. |
| **Michael Saskor**<br>(contact through Defendant's counsel) | General Claims Adjuster<br>• Investigation and adjustment of the Claim.<br>• Coverage position regarding the Claim.<br>• Communications with Plaintiff regarding documentation requirements, personal property valuation, and depreciation calculations.<br>• The initial denial and subsequent reopening of the Claim. |
| **Andrew Hermann**<br>(contact through Defendant's counsel) | General Special Investigator<br>• Investigation regarding the Claim beginning June 2024.<br>• Communications with Plaintiff regarding the investigation. |
| **Bryce Spradling**<br>(contact through Defendant's counsel) | Property Theft Supervisor<br>• Supervisory oversight and coverage determinations regarding the Claim.<br>• The November 22, 2024 claim denial and subsequent communications.<br>• Depreciation recovery disputes.<br>• Communications with Plaintiff regarding the Claim.<br>• The August 18, 2025 final claim closure. |
| **Amy Spawr-Bardley**<br>(contact through Defendant's counsel) | Customer Relations Senior Consultant, Claims Customer Relations<br>• Communications with the California Department of Insurance regarding Plaintiff's complaint related to the handling of the Claim.<br>• Review of the Claim file.<br>• Communications with Plaintiff regarding the Claim. |
| **Albert Pimentel**<br>(contact through Defendant's counsel) | Property Field Claim Supervisor<br>• The June 9, 2025 written communication to Plaintiff regarding the Claim.<br>• Supervisory oversight of the Claim. |

| | |
|---|---|
| | • Communications with Plaintiff regarding the Claim. |
| **PMK for Defendant Farmers Direct**<br>(contact through Defendant's counsel) | Corporate Designee Witness for Defendant<br>• Investigation regarding the Claim.<br>• Coverage position regarding the Claim.<br>• Claims handling practices and guidelines.<br>• Communications with Plaintiff regarding the Claim. |
| **Officer Logan Corder**<br>Palm Springs Police Department<br>200 S. Civic Drive<br>Palm Springs, CA 92262<br>(760) 323-8116 | Law enforcement officer who responded to the reported burglary/vandalism incident.<br>• Facts and circumstances relating to the Loss. |
| **Detective Alexander Doherty**<br>Palm Springs Police Department<br>200 S. Civic Drive<br>Palm Springs, CA 92262<br>(760) 323-8116 | Law enforcement officer who investigated the reported burglary/vandalism incident.<br>• Facts and circumstances relating to the Loss. |
| **PMK for Progressive Home Remodeling**<br>77 E. Tahquitz Canyon Way<br>Suite 200<br>Palm Springs, CA 92262<br>(323) 423-6322 | Repairs to the Property<br>• Scope of work for Loss-related repairs to the Property.<br>• The cost and timing of repairs.<br>• The May 19, 2025 repair estimate.<br>• Inspection of the Property. |
| **Emuna Stanley**<br>Project Manager<br>Progressive Home Remodeling<br>77 E. Tahquitz Canyon Way, Ste 200<br>Palm Springs, CA 92262<br>(213) 264-8682 | Repairs to the Property<br>• Preparation of the repair estimate.<br>• Inspection of the Property.<br>• Communications with Plaintiff regarding repairs. |
| **Mark Bercier**<br>Artist and/or Art Gallery Owner<br>markbercier1950@yahoo.com | Valuation of personal property<br>• The painting entitled "Ivey & Luke" and its value.<br>• Communications regarding the Loss. |
| **Insurance Claims Handling Expert (To Be Determined)**<br>To be designated per scheduling order | On behalf of Plaintiff<br>• Insurance industry custom and practice regarding claims investigation and adjustment.<br>• Whether Defendant's claims handling fell below the standard of care. |
| **Construction/Damages Expert (To Be Determined)**<br>To be designated per scheduling order | On behalf of Plaintiff<br>• Scope of Loss-related damage to the Property.<br>• Reasonable costs to repair the Property.<br>• Whether the Property was rendered uninhabitable. |

## II. Rule 26(a)(1)(A)(ii): Documents

The following are the categories of documents, electronically stored information, and tangible things in Plaintiff's possession, custody, or control, and that Plaintiff may use to support her claims. Plaintiff reserves her rights to amend these disclosures as necessary.

1. Farmers Direct Homeowners Policy No. 3872340940 (September 28, 2023 – September 28, 2024), including all endorsements and declarations pages;
2. Plaintiff's communications with Defendant's employees regarding the Claim, including written correspondence and emails;
3. Claim payment records and payment summaries issued by Defendant;
4. Defendant's personal property inventory and valuation documentation for the Claim;
5. The November 22, 2024 Claim Outcome letter;
6. Correspondence between Defendant and the California Department of Insurance regarding Plaintiff's complaint, including the March 27, 2025 response;
7. The June 9, 2025 letter from Albert Pimentel regarding the Claim;
8. Plaintiff's complaint to the California Department of Insurance;
9. The August 17, 2025 Final Demand letter from Plaintiff to Defendant;
10. The August 18, 2025 response from Defendant;
11. Fax communications from Plaintiff to Defendant, including January 28, 2025 and March 4, 2025 faxes;
12. Licensed contractor repair estimate from Progressive Home Remodeling dated May 19, 2025;
13. Palm Springs Police Department report(s) regarding the June 3, 2024 incident;
14. Photographs of the Property documenting damage from the Loss;
15. Receipts, invoices, and order confirmations for replacement personal property items;
16. EUO transcript and related correspondence;
17. Publicly available corporate filings and regulatory documents regarding Defendant;
18. Credit card statements and financial records documenting Plaintiff's additional living expenses and finance charges;
19. Any other documents produced during discovery which relate to Plaintiff's claims and claimed damages.

## III. Rule 26(a)(1)(A)(iii): Computation of Damages

Rule 26(a)(1)(A)(iii) requires the disclosure of the computation of any category of damages claimed by the disclosing party. Plaintiff's damages computation is as follows, subject to supplementation as discovery progresses:

| Damage Category | Amount |
|---|---|
| **A. Contract Damages (Breach of Contract)** | |
| Licensed contractor repair estimate | $96,400 – $102,400 |
| Sunken living area restoration | $23,100 |
| Personal property underpayments | $10,693 |
| Additional living expenses (ALE) | $17,429 |
| Finance charges and late fees | $4,500 (est.) |
| Less: Defendant's payments to date | ($30,696) |
| **Subtotal Contract Damages** | **$121,426 – $127,426** |
| **B. Bad Faith Tort Damages** | **According to proof** |
| Emotional distress, mental anguish | To be proven at trial |
| **C. Unruh Civil Rights Act (§ 52(a))** | |
| Statutory damages (min. $4,000/violation) | $28,000+ |
| **D. Punitive Damages (Civ. Code § 3294)** | **According to proof** |
| **E. Prejudgment Interest** | **According to proof** |
| **F. Costs of Suit** | **According to proof** |

The documents on which the above computations are based include the Policy, Defendant's payment records, the Progressive Home Remodeling estimate, Plaintiff's credit card statements, receipts for replacement personal property, and Defendant's correspondence. These documents will be made available for inspection and copying pursuant to Rule 34.

**IV. Rule 26(a)(1)(A)(iv): Insurance**

This case involves a first-party insurance coverage dispute regarding Defendant's alleged duty to pay additional coverage benefits under the Policy for Loss-related damages arising from the June 3, 2024 burglary/vandalism incident at issue in Plaintiff's First Amended Complaint. Plaintiff is not aware of any other insurance agreement that may be liable to satisfy a judgment in this action.

Dated: February 26, 2026

Respectfully submitted,

/s/ Luna D'Sol

**Luna D'Sol**
Plaintiff, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Telephone: (213) 925-4069
Email: jravada@icloud.com

# EXHIBIT 10

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY F. CANBY (SBN: 185227
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br>Plaintiff,<br>v.<br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br>Defendant. | Case No. 2:25-cv-10938-SVW-ASx<br>Hon. Stephen V. Wilson<br>Magistrate Judge: Alka Sagar<br>**PROOF OF SERVICE**<br>Complaint Filed: August 21, 2025 |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP, 101 West Broadway, Ste. 2000, San Diego, California 92101. On July 2, 2026 below, I served the within documents:

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S INTERROGATORIES TO PLAINTIFF LUNA D'SOL (SET ONE)**

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUEST FOR ADMISSIONS TO PLAINTIFF LUNA D'SOL (SET ONE)**

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUESTS FOR PRODUCTION TO PLAINTIFF LUNA D'SOL (SET ONE)**

☐ **BY PERSONAL SERVICE:** by having the document(s) listed above personally delivered to the person(s) at the address(es) set forth below.

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below.

☒ **BY E-SERVICE:** I caused the document(s) listed above to be sent to the person at the e-mail address on the service list below. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

**Plaintiff in Pro Per**

Luna D'Sol
2275 E. Belding Dr
Palm Springs, CA 92262
Tel: (213) 925-40690
Email: jravada@icloud.com

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on July 2, 2026.

Elisa Mar

Elisa Martinez

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT 11

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>v.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-10938-SVW-ASx<br><br>**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUEST FOR ADMISSIONS TO PLAINTIFF LUNA D'SOL (SET ONE)**<br><br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A<br><br>Trial Date: October 13, 2026<br><br>Complaint Filed: August 21, 2025 |

PROPOUNDING PARTY: DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

RESPONDING PARTY: PLAINTIFF LUNA D'SOL

SET NO.: ONE

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Farmers Direct Property and Casualty Insurance Company's ("Defendant" or "Farmers Direct") hereby requests that Plaintiff Luna D'Sol ("Plaintiff" or "Responding Party") admit within thirty (30) days after the service of these requests,

that each of the facts set forth below is true.

## PRELIMINARY STATEMENT

These Requests below are not limited to matters within the Plaintiff's personal knowledge. Instead, Plaintiff has a duty to make a reasonable investigation of sources reasonably available to her before responding to these Requests. *Morgan v. Rohr, Inc.*, 3:20-cv-00574-GPC, 2023 WL 2620146, at *2 (E.D. Cal, Mar. 23, 2023). If Plaintiff cannot unequivocally admit or deny an entire request, Plaintiff is required to explain in detail why she is unable to either admit or deny the request. Fed. R. Civ. P. 36(a)(3). If Plaintiff fails to timely comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to these Requests, each of the matters of which an admission is requested may be deemed admitted.

## DEFINITIONS

Words in CAPITALS in these Requests are defined as follows:

1. The terms "YOU" or "YOUR" means Pro Per Plaintiff Luna D'Sol (also previously known as Julio R. Ravada) and includes any attorneys, agents, or other persons acting on her (or previously his) behalf.

2. The term "FARMERS DIRECT" means Farmers Direct Property and Casualty Insurance Company and its employees, officers, directors, agents, attorneys, consultants, retained experts or other claims handlers, adjusters, investigators or any other persons working on its behalf.

3. The term "POLICY" means Policy Number 3872340940 issued by FARMERS DIRECT to "Named Insured" "Julio R. Ravada" for the policy period effective September 23, 2023 to September 28, 2024 insuring the residence premises located at 2275 E. Belding Dr., Palm Springs, CA 92262.

4. The term "PROPERTY" means the residential property located at 2275 E. Belding Dr., Palm Springs, CA 92262.

5. The term "ACTION" means the above-entitled action *Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company*, United States District

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Court Central District of California Case No. 2:25-cv-10938-SVW-ASx, which prior to FARMERS DIRECT's removal to this Court on or about November 14, 2025 was pending before the Los Angeles County Superior Court as Case No. 25VECV04713.

7. The term "FIRST AMENDED COMPLAINT" means the First Amended Complaint filed YOU on or about October 16, 2025 (and also includes the supporting "EXHIBITS TO FIRST AMMENDMENT [sic]" that YOU filed on or about October 17, 2025) in Los Angeles County Superior Court as part of Case No. 25VECV04713 against FARMERS DIRECT which was thereafter removed to this Court on or about November 14, 2025 and is now pending as United States District Court Central District of California Case No. 2:25-cv-10938-SVW-ASx ("ACTION").

8. The term "INCIDENT" refers to and means the alleged burglary and/or vandalism incident occurring at the PROPERTY on or about June 3, 2024, also referenced in paragraph 9 of the FIRST AMENDED COMPLAINT.

9. The term "LOSS" refers to and means the alleged property damage and/or other losses allegedly caused by a burglary and/or vandalism INCIDENT which occurred on or about June 3, 2024 at the PROPERTY.

10. The term "CLAIM" refers to and means YOUR request for coverage benefits for the LOSS under the POLICY which was assigned Claim No. 7007678692-1.

## REQUEST FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that "Julio R. Ravada" is listed as the "Named Insured" on the POLICY.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU did not submit a written request to FARMERS DIRECT asking to change the name of the listed "Named Insured" on the POLICY from "Julio R. Ravada" to "Luna D'Sol."

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU never asked FARMERS DIRECT to remove "Julio R. Ravada" as the name of the "Named Insured" on the POLICY.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU never asked FARMERS DIRECT to change the name of the listed "Named Insured" on the POLICY from "Julio R. Ravada" to "Luna D'Sol."

**REQUEST FOR ADMISSION NO. 5:**

Admit that the document attached hereto as Exhibit "A" bearing Bates numbers FD003889 through FD00390 in a genuine, authentic and true copy of YOUR "FAX" coversheet dated January 28, 2025 and attached one page letter referencing "Claim # 7007678692-1" (without inclusion of the attached bank statements referenced therein) that YOU sent to FARMERS DIRECT on January 28, 2025.

**REQUEST FOR ADMISSION NO. 6:**

Admit January 28, 2025 was the first time that YOU disclosed YOUR "gender confirmation treatment" to anyone working on behalf of FARMERS DIRECT.

**REQUEST FOR ADMISSION NO. 7:**

Admit that YOUR fax dated January 28, 2025 and attached letter disclosing YOUR "gender confirmation treatment" is sent from "Julio Ravada."

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOUR fax dated January 28, 2025 and attached letter disclosing YOUR "gender confirmation treatment" is signed by "Julio Ravada."

**REQUEST FOR ADMISSION NO. 9:**

Admit that YOU did not inform FARMERS DIRECT that YOU identify as female on January 28, 2025.

**REQUEST FOR ADMISSION NO. 10:**

Admit that YOU never informed anyone working on behalf of FARMERS

DIRECT that YOU identify as female on or before January 28, 2025.

**REQUEST FOR ADMISSION NO. 11:**

Admit YOU did not stop using the name "Julio Ravada" after January 28, 2025 to refer to YOURSELF in communications with FARMERS DIRECT regarding the CLAIM.

**REQUEST FOR ADMISSION NO. 12:**

Admit YOU referred to YOURSELF as "Julio R" and/or "Julio" in emails YOU sent to FARMERS DIRECT after January 28, 2025.

**REQUEST FOR ADMISSION NO. 13:**

Admit that YOU continued to use the email address "jravada@icloud.com" to communicate with FARMERS DIRECT after January 28, 2025.

**REQUEST FOR ADMISSION NO. 14:**

Admit that the document attached hereto as Exhibit "B" bearing Bates numbers FD003063 through FD003077 in a genuine, authentic and true copy of a chain of email communications (without attachments) sent between or among YOU and Property Theft Supervisor Bryce Spradling and/or FARMERS DIRECT during the period of March 19, 2025 through April 15, 2025 related to the CLAIM.

**REQUEST FOR ADMISSION NO. 15:**

Admit that YOUR email sent on April 15, 2025 to Property Theft Supervisor Bryce Spradling and/or FARMERS DIRECT related to the CLAIM is sent by YOU using the name "Julio R."

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOUR email sent on March 31, 2025 to Property Theft Supervisor Bryce Spradling and/or FARMERS DIRECT related to the CLAIM is sent by YOU using the name "Julio."

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOUR email sent on March 27, 2025 to Property Theft Supervisor Bryce Spradling and/or FARMERS DIRECT related to the CLAIM is

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

sent by YOU using the name "Julio."

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU do not have any evidence to support YOUR claim of "unlawful discrimination under the Unruh Civil Rights Act" by FARMERS DIRECT as alleged in paragraph 30 of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU do not have any evidence that YOUR participation in "gender confirmation treatment" was a motivating factor for FARMERS DIRECT's denial of any aspect of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU do not have any evidence that YOUR gender was a motivating factor for FARMERS DIRECT's denial of any aspect of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU do not have any evidence that any change in YOUR gender identity was a motivating factor for FARMERS DIRECT's denial of any aspect of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 22:**

Admit that YOU do not have any evidence that YOUR identification as a female was a motivating factor for FARMERS DIRECT's denial of any aspect of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 23:**

Admit that YOU do not have any evidence that YOUR identification as a male was a motivating factor for FARMERS DIRECT's denial of any aspect of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 24:**

Admit that YOU do not have any evidence that any protected characteristic related to YOU was a motivating factor for FARMERS DIRECT's denial of any

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

aspect of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 25:**

Admit that YOU do not have any evidence that anyone working on behalf of FARMERS DIRECT intentionally discriminated against YOU in the handling of the CLAIM.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU do not have any evidence that any "misgendering" of YOU by anyone working on behalf of FARMERS DIRECT was anything other than an honest mistake.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU do not have any evidence to support YOUR request for an "[a]ward [of] statutory damages under Civil Code § 52(a) and § 52(f)" for alleged "discrimination in a business establishment" by FARMERS DIRECT as sought in YOUR FIRST AMENDED COMPLAINT, Prayer for Relief (Item 7).

**REQUEST FOR ADMISSION NO. 28:**

Admit that the PROPERTY did not sustain physical loss or damage due to the "Los Angeles wildfire" (meaning the wildfires occurring in the Los Angeles area in or around early to mid-January of 2025), referenced in paragraph 11 of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU did not submit any "receipts" to FARMERS DIRECT for any "lodging, meal[s]" and/or "transportation differentials" pertaining to the LOSS, as referenced in paragraph 11 of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU that you did not submit any documentation to FARMERS DIRECT for reimbursement of any "lodging, meal" and/or "transportation costs" as part of the CLAIM, as referenced in paragraph 35(a) of the FIRST AMENDED COMPLAINT.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOUR bathroom floor at the PROPERTY was made of concrete at the time of the INCIDENT.

**REQUEST FOR ADMISSION NO. 32:**

Admit that YOUR kitchen floor at the PROPERTY was made of concrete at the time of the INCIDENT.

**REQUEST FOR ADMISSION NO. 33:**

Admit that YOU do not have any evidence to support YOUR contention that a "whole-home epoxy" of the flooring was necessary to restore the PROPERTY to its pre-LOSS condition, as referenced in paragraph 19 of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 34:**

Admit that YOUR kitchen island at the PROPERTY was made of concrete at the time of the INCIDENT.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU do not have any evidence to support YOUR contention that a "kitchen-island demo/rebuild" was necessary to restore the PROPERTY to its pre-LOSS condition, as referenced in paragraph 19 and/or paragraph 15(b) of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU do not have any evidence to support YOUR contention that a "toilet wall/anchoring & bath restoration" was necessary to restore the PROPERTY to its pre-LOSS condition, as referenced in paragraph 19 and/or paragraph 25(a) of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 37:**

Admit that YOU do not have any evidence to support YOUR contention that there was a "covered burglary loss" at the PROPERTY," as alleged in paragraph 9 of the FIRST AMENDED COMPLAINT.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 38:**

Admit that YOU do not have any evidence to support YOUR contention that "Intruders forced and broke the bathroom window/frame . . . and entered the dwelling," as alleged in paragraph 9 of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 39:**

Admit that YOU do not have any evidence that the INCIDENT was caused by person(s) entering the PROPERTY through a hole in the bathroom window and/or its frame.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the hole in the bathroom window and/or its frame subject of YOUR CLAIM are of insufficient size to allow a person to use such hole to enter the interior of PROPERTY.

**REQUEST FOR ADMISSION NO. 41:**

Admit that a person could not access the kitchen area of the PROPERTY through the hole in the bathroom window its frame subject of YOUR CLAIM.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the document attached hereto as Exhibit "C" bearing Bates numbers FD001059 through FD001081 is a genuine, authentic and true copy of a "Claim Outcome Letter" dated October 29, 2024 sent to YOU by General Adjuster Richard Bryan on behalf of FARMERS DIRECT pertaining to the CLAIM.

**REQUEST FOR ADMISSION NO. 43:**

Admit that YOU received the "Claim Outcome Letter" attached hereto as Exhibit "C" on or around October 29, 2024.

**REQUEST FOR ADMISSION NO. 44:**

Admit that FARMERS DIRECT made a payment to YOU in an amount totaling $16,393.21 on or about October 29, 2024 related to the CLAIM.

**REQUEST FOR ADMISSION NO. 45:**

Admit that per the initial "Claim Outcome Letter" dated October 29, 2024

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

FARMERS DIRECT paid $12,488.20 to YOU as the estimated actual cash value to replace YOUR personal property subject of the CLAIM (less the POLICY's deductible and recoverable depreciation).

**REQUEST FOR ADMISSION NO. 46:**

Admit that per the initial "Claim Outcome Letter" dated October 29, 2024 FARMERS DIRECT paid $3,905.01 to YOU as the estimated cost to repair or replace covered damages to YOUR Property as result of the LOSS (less depreciation).

**REQUEST FOR ADMISSION NO. 47:**

Admit that the document attached hereto as Exhibit "D" bearing Bates numbers FD001082 through FD001090 is a genuine, authentic and true copy of a "Settlement Notice" letter sent to YOU by General Adjuster Richard Bryan on behalf of FARMERS DIRECT on November 12, 2024 pertaining to the CLAIM.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU received the "Settlement Notice" attached hereto as Exhibit "D" on or around November 12, 2024.

**REQUEST FOR ADMISSION NO. 49:**

Admit that FARMERS DIRECT made a payment to YOU in the amount $1,546.91 on or around November 12, 2024 related to the CLAIM.

**REQUEST FOR ADMISSION NO. 50:**

Admit that per the "Settlement Notice" letter dated November 12, 2024 FARMERS DIRECT paid $1,549.91 to YOU for recoverable depreciation related to YOUR replacement of personal property subject of the CLAIM.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the document attached hereto as Exhibit "E" bearing Bates numbers FD001121 through FD001141 is a genuine, authentic and true copy of a "Settlement Notice" letter sent to YOU by General Claims Adjuster Michael Saskor on behalf of FARMERS DIRECT on May 14, 2025 pertaining to the CLAIM.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 52:**

Admit that YOU received the "Settlement Notice" letter attached hereto as Exhibit "E" on or around May 14, 2025.

**REQUEST FOR ADMISSION NO. 53:**

Admit that FARMERS DIRECT made an additional payment to YOU in the amount totaling $7,406.20 on or around May 14, 2025 related to the CLAIM.

**REQUEST FOR ADMISSION NO. 54:**

Admit that per the "Settlement Notice" letter dated May 14, 2025 FARMERS DIRECT paid an additional $3,496.00 to YOU as the estimated actual cash value to replace YOUR personal property subject of the CLAIM (less the POLICY's deductible and recoverable depreciation).

**REQUEST FOR ADMISSION NO. 55:**

Admit that per the "Settlement Notice" letter dated May 14, 2025 FARMERS DIRECT paid an additional amount of $3,910.20 to YOU for the estimated cost to repair or replace covered damages to YOUR dwelling as result of the LOSS (less recoverable depreciation).

**REQUEST FOR ADMISSION NO. 56:**

Admit that the document attached hereto as Exhibit "F" bearing Bates numbers FD001142 through FD001157 is a genuine, authentic and true copy of a "Claim Outcome Letter" sent to YOU by General Claims Adjuster Michael Saskor on behalf of FARMERS DIRECT on or about May 28, 2025 pertaining to the CLAIM.

**REQUEST FOR ADMISSION NO. 57:**

Admit that YOU received the "Claim Outcome Letter" attached hereto as Exhibit "F" on or around May 28, 2025.

**REQUEST FOR ADMISSION NO. 58:**

Admit that FARMERS DIRECT paid an additional $1,381.54 to YOU on or about May 28, 2025 related to the CLAIM.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 59:**

Admit that per the "Claim Outcome Letter" letter dated May 28, 2025 FARMERS DIRECT paid an additional $1,381.54 to YOU for estimated costs to repair or replace covered damages to YOUR dwelling as result of the LOSS (less recoverable depreciation).

**REQUEST FOR ADMISSION NO. 60:**

Admit that the document attached hereto as Exhibit "G" bearing Bates numbers FD001248through FD001258 is a genuine, authentic and true copy of a "Settlement Notice" letter sent to YOU by General Claims Adjuster Michael Saskor on behalf of FARMERS DIRECT on or about July 8, 2025 pertaining to the CLAIM.

**REQUEST FOR ADMISSION NO. 61:**

Admit that YOU received "Settlement Notice" letter attached hereto as Exhibit "G" on or around July 8, 2025.

**REQUEST FOR ADMISSION NO. 62:**

Admit that FARMERS DIRECT paid an additional $232.93 to YOU on or about July 8, 2025 related to the CLAIM.

**REQUEST FOR ADMISSION NO. 63:**

Admit that per the "Settlement Notice" letter dated July 8, 2025 FARMERS DIRECT paid an additional $232.93 to YOU for recoverable depreciation related to YOUR replacement of personal property subject of the CLAIM.

**REQUEST FOR ADMISSION NO. 64:**

Admit that the document attached hereto as Exhibit "H" bearing Bates numbers FD001259 through FD001348 is a genuine, authentic and true copy of a "Settlement Notice" letter sent to YOU by General Claims Adjuster Michael Saskor on behalf of FARMERS DIRECT on or about July 10, 2025 pertaining to the CLAIM.

/ / /

**REQUEST FOR ADMISSION NO. 65:**

Admit that YOU received "Settlement Notice" letter attached hereto as Exhibit "G" on or around July 10, 2025.

**REQUEST FOR ADMISSION NO. 66:**

Admit that FARMERS DIRECT paid an additional $26.25 to YOU on or about July 10, 2025 related to the CLAIM.

**REQUEST FOR ADMISSION NO. 67:**

Admit that per the "Settlement Notice" letter dated July 10, 2025 FARMERS DIRECT issued a correction and paid an additional $26.25 to YOU for recoverable depreciation to related to YOUR replacement of personal property subject of the CLAIM.

**REQUEST FOR ADMISSION NO. 68:**

Admit that FARMERS DIRECT paid YOU a total of $26,987.04 on the CLAIM.

**REQUEST FOR ADMISSION NO. 69:**

Admit that FARMERS DIRECT issued additional payments to YOU on the CLAIM after YOU disclosed YOUR participation in "gender confirmation treatment" to FARMERS DIRECT on January 28, 2025.

**REQUEST FOR ADMISSION NO. 70:**

Admit that FARMERS DIRECT inspected the PROPERTY again after YOU disclosed YOUR participation in "gender confirmation treatment" to FARMERS DIRECT on January 28, 2025.

**REQUEST FOR ADMISSION NO. 71:**

Admit that YOU do not have any evidence that FARMERS DIRECT failed to properly investigate YOUR CLAIM.

/ / /

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 72:**

Admit that YOU do not have any evidence that FARMERS DIRECT failed to properly inspect the PROPERTY as part of the CLAIM.

**REQUEST FOR ADMISSION NO. 73:**

Admit that YOU do not have any evidence in support of YOUR claim that FARMERS DIRECT breached the implied covenant of good faith and fair dealing in connection with the CLAIM as alleged in the second cause of action in the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 74:**

Admit that YOU do not have any evidence that an officer, director, or managing agent of FARMERS DIRECT is guilty of oppression, fraud, or malice in connection with the CLAIM as alleged in paragraph 46 of the FIRST AMENDED COMPLAINT.

**REQUEST FOR ADMISSION NO. 75:**

Admit that YOU do not have any evidence to support YOUR request for an "[a]ward [of] punitive/exemplary damages under Civil Code § 3294" against FARMERS DIRECT as sought in YOUR FIRST AMENDED COMPLAINT, Prayer for Relief (Item 8).

**REQUEST FOR ADMISSION NO. 76:**

Admit that YOU did not make any temporary repairs to the PROPERTY following the INCIDENT to protect covered property from further loss.

**REQUEST FOR ADMISSION NO. 77:**

Admit that YOU refused to provide FARMERS DIRECT with the full names and/or contact information of the persons who were at YOUR home on or around the day of the INCIDENT.

**REQUEST FOR ADMISSION NO. 78:**

Admit that YOU refused to provide FARMERS DIRECT with the full name and/or contact information for "Garrick" who was at YOUR home on or around the

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

day of the INCIDENT.

**REQUEST FOR ADMISSION NO. 79:**

Admit that YOU refused to provide FARMERS DIRECT with the full name and/or contact information for "Robin" who was at YOUR home on or around the day of the INCIDENT.

**REQUEST FOR ADMISSION NO. 80:**

Admit that YOU refused to provide FARMERS DIRECT with contact information for "Edward Green" who was at YOUR home on or around the day of the INCIDENT.

**REQUEST FOR ADMISSION NO. 81:**

Admit that YOU refused to provide FARMERS DIRECT with contact information for "Kyle Mangione" who was at YOUR home on or around the day of the INCIDENT.

**REQUEST FOR ADMISSION NO. 82:**

Admit that YOU refused to provide FARMERS DIRECT with contact information for "Kyle Mangione" who knew the identities of some of all of the alleged perpetrators of the INCIDENT.

**REQUEST FOR ADMISSION NO. 83:**

Admit that the POLICY does not cover loss caused by theft if committed by any person regularly residing on the PROPERTY and/or at his or her direction.

**REQUEST FOR ADMISSION NO. 84:**

Admit that POLICY excludes coverage for any "property damage arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance . . ."

**REQUEST FOR ADMISSION NO. 85:**

Admit that YOU do not have sufficient evidence to establish that the LOSS arose from a covered cause of loss under the POLICY.

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**REQUEST FOR ADMISSION NO. 86:**

Admit that YOUR "Dyson" vacuum cleaner order was cancelled after YOU submitted the receipt to FARMERS DIRECT seeking payment for recoverable depreciation on the CLAIM.

**REQUEST FOR ADMISSION NO. 87:**

Admit that YOUR "Arc Ultra Soundbar" order was cancelled after YOU submitted the receipt to FARMERS DIRECT seeking payment for recoverable depreciation on the CLAIM.

**REQUEST FOR ADMISSION NO. 88:**

Admit that YOUR "Brilliant" order for a "Switch Panel" was cancelled after YOU submitted the receipt to FARMERS DIRECT seeking payment for recoverable depreciation on the CLAIM.

**REQUEST FOR ADMISSION NO. 89:**

Admit that YOUR "Sonos Arc" order was cancelled after YOU submitted the receipt to FARMERS DIRECT seeking payment for recoverable depreciation on the CLAIM.

**REQUEST FOR ADMISSION NO. 90:**

Admit that YOUR Apple Watch order was cancelled after YOU submitted the receipt to FARMERS DIRECT seeking payment for recoverable depreciation on the CLAIM.

Dated: July 2, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By [signature: Kelly F. Canby]
Michelle R. Bernard
Kelly Fitzgerald Canby
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

# EXHIBIT 12

TitanFile

# Conversation Record with Delivery Log

Requested by: Kelly Canby <kcanby@grsm.com>

From: 12.229.121.254

https://us.titanfile.com/channels/as_pdf/wT624I/1782975600/1783062000/

Produced by: TitanFile Inc.
1050 King St W, Toronto, ON M6K 0C7
+1 855-315-6012
support@titanfile.com

Generated: 01 August, 2026 06:07 EDT

# Luna D'Sol v Farmers Direct Property - Discovery to Plaintiff

## Contacts:

| Name | Email | Organization |
|---|---|---|
| Elisa Martinez | emartinez@grsm.com | |
| Kelly Canby | kcanby@grsm.com | |
| Kiry Yeoun | kyeoun@grsm.com | Gordon Rees Scully Mansukhani, LLP |
| Michelle Bernard | mbernard@grsm.com | GORDON REES SCULLY MANSUKHANI, LLP |
| Luna D'Sol | jravada@icloud.com | |
| Jer Vang-Zamora | jvang-zamora@grsm.com | |

## Conversation (1 messages):

Elisa Martinez (emartinez@grsm.com) 02 July, 2026 19:02 EDT

Good afternoon,

Attached you will find the following documents which are being electronically served in the above-referenced matter.

1. DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S INTERROGATORIES TO PLAINTIFF LUNA D'SOL (SET ONE)
2. DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUEST FOR ADMISSIONS TO PLAINTIFF LUNA D'SOL (SET ONE)
3. DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUESTS FOR PRODUCTION TO PLAINTIFF LUNA D'SOL (SET ONE)
4. PROOF OF SERVICE

**Elisa Martinez**

Legal Secretary and Workflow Coordinator

**GORDON REES SCULLY MANSUKHANI**

2026-07-02 D'SOL - DEF POS RE DISCOVERY TO PLF.pdf (29.5 KB SHA2:
9942e5a64310c1dce339428be013abaa8e6209a2dda7748120173b71d923a22a)

2026-07-02 D'SOL - DEF RFP TO PLTF SET ONE.pdf (71.9 KB SHA2:
f208148b70a732f21cce33cfd375a0f246658f37ca9e8d984eee543d6e6a85d7)

2026-07-02 D'SOL - DEF ROG TO PLTF SET ONE.pdf (52.8 KB SHA2:
1abf8d4bceb3f2e3fdcf0d3a6385d410c5379552e116a4dd6561da0c83c3f18c)

2026-07-02 D'SOL - DEF RFA TO PLTF SET ONE.pdf (24.9 MB SHA2:
504bf4a70f6ee374005a7e024bc64eabc1ee650f7f2dcb1b9e20ae14e7b23872)

## Delivery Log

| Timestamp | Source IP | Destination IP | SMTP response |
|---|---|---|---|
| Kiry Yeoun <kyeoun@grsm.com> | | | |
| 2026-07-02 19:02:18 EDT | 198.2.187.37 | 52.101.194.17 | 250 2.6.0 <178303333552.2559258.5570724117521642925@ip-10-101-11-73.ec2.internal> [InternalId=16488379450649, Hostname=LVXPR20MB994719.namprd20.prod.outlook.com] 61441 bytes in 0.216, 277.451 KB/sec Queued mail for delivery |
| Kelly Canby <kcanby@grsm.com> | | | |
| 2026-07-02 19:02:17 EDT | 198.2.187.37 | 52.101.194.17 | 250 2.6.0 <178303333535.2559522.15751978897445073309@ip-10-101-11-73.ec2.internal> [InternalId=54301271524944, Hostname=DM4PR20MB4822.namprd20.prod.outlook.com] 61503 bytes in 0.253, 236.759 KB/sec Queued mail for delivery |
| Michelle Bernard <mbernard@grsm.com> | | | |
| 2026-07-02 19:02:17 EDT | 198.2.187.24 | 52.101.42.14 | 250 2.6.0 <178303333552.2559526.14453320698868190720@ip-10-101-11-73.ec2.internal> [InternalId=2929167697273, Hostname=IA0PPFAB293CA7C.namprd20.prod.outlook.com] 61602 bytes in 0.122, 492.601 KB/sec Queued mail for delivery |
| Elisa Martinez <emartinez@grsm.com> | | | |
| 2026-07-02 19:02:17 EDT | 198.2.179.45 | 52.101.41.22 | 250 2.6.0 <178303333563.2559589.9571435933750525756@ip-10-101-11-73.ec2.internal> [InternalId=180388627992, Hostname=BN7PPF7B863406F.namprd20.prod.outlook.com] 61803 bytes in 0.239, 252.326 KB/sec Queued mail for delivery |
| Jer Vang-Zamora <jvang-zamora@grsm.com> | | | |
| 2026-07-02 19:02:17 EDT | 198.2.179.45 | 52.101.41.183 | 250 2.6.0 <178303333524.2559526.2086029441321669500@ip-10-101-11-73.ec2.internal> [InternalId=76407468197243, Hostname=SA0PR20MB4559.namprd20.prod.outlook.com] 61461 bytes in 0.212, 282.753 KB/sec Queued mail for delivery |
| Luna D'Sol <jravada@icloud.com> | | | |
| 2026-07-02 19:02:20 EDT | 198.2.177.21 | 17.57.156.30 | 250 2.0.0 Ok: queued as 567821800291 |

**Kelly Canby**

| | |
|---|---|
| **From:** | Elisa Martinez |
| **Sent:** | Thursday, July 2, 2026 4:00 PM |
| **To:** | jravada@icloud.com |
| **Cc:** | Kelly Canby; Michelle Bernard; Kiry Yeoun; Jer Vang-Zamora |
| **Subject:** | RE: Luna D'Sol v Farmers Direct Property - Discovery to Plaintiff |
| **Attachments:** | 2026-07-02 D'SOL - DEF POS RE DISCOVERY TO PLF.pdf; 2026-07-02 D'SOL - DEF RFP TO PLTF SET ONE.pdf; 2026-07-02 D'SOL - DEF ROG TO PLTF SET ONE.pdf |

Ms. D'Sol,
Due to the size of the Request for Admissions, I received a bounce back that my original email below did not go through. All the documents will be sent via a Titanfile sharelink shortly.

---

**ELISA MARTINEZ**
Legal Secretary and Workflow Coordinator

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 619.544.7236
**E:** emartinez@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101

---

**From:** Elisa Martinez <emartinez@grsm.com>
**Sent:** Thursday, July 2, 2026 3:56 PM
**To:** jravada@icloud.com
**Cc:** Kelly Canby <kcanby@grsm.com>; Michelle Bernard <mbernard@grsm.com>; Kiry Yeoun <kyeoun@grsm.com>; Jer Vang-Zamora <jvang-zamora@grsm.com>
**Subject:** Luna D'Sol v Farmers Direct Property - Discovery to Plaintiff

Good afternoon,
Attached you will find the following documents which are being electronically served in the above-referenced matter.

1. DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S INTERROGATORIES TO PLAINTIFF LUNA D'SOL (SET ONE)
2. DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUEST FOR ADMISSIONS TO PLAINTIFF LUNA D'SOL (SET ONE)
3. DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUESTS FOR PRODUCTION TO PLAINTIFF LUNA D'SOL (SET ONE)
4. PROOF OF SERVICE

---

**ELISA MARTINEZ**
Legal Secretary and Workflow Coordinator

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 619.544.7236
**E:** emartinez@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY F. CANBY (SBN: 185227
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>v.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 2:25-cv-10938-SVW-ASx<br><br>Hon. Stephen V. Wilson<br>Magistrate Judge: Alka Sagar<br><br>**PROOF OF SERVICE**<br><br>Complaint Filed: August 21, 2025 |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP, 101 West Broadway, Ste. 2000, San Diego, California 92101. On July 2, 2026 below, I served the within documents:

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S INTERROGATORIES TO PLAINTIFF LUNA D'SOL (SET ONE)**

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUEST FOR ADMISSIONS TO PLAINTIFF LUNA D'SOL (SET ONE)**

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S REQUESTS FOR PRODUCTION TO PLAINTIFF LUNA D'SOL (SET ONE)**

☐ **BY PERSONAL SERVICE:** by having the document(s) listed above personally delivered to the person(s) at the address(es) set forth below.

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below.

☒ **BY E-SERVICE:** I caused the document(s) listed above to be sent to the person at the e-mail address on the service list below. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

**Plaintiff in Pro Per**

Luna D'Sol
2275 E. Belding Dr
Palm Springs, CA 92262
Tel: (213) 925-40690
Email: jravada@icloud.com

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on July 2, 2026.

Elisa Mar

Elisa Martinez



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

GRSM50

73

+ New Channel

in:active

KC Kelly

**Luna D'Sol v Farmers Direct Property - Discovery to Plaintiff**

( 6 members, last activity: July 2, 2026 4:02

**1** Message
**4** Files

Add | EM Elisa | KC Kelly | KY Kiry | MB Michelle | LD Luna

Channels
Contacts
Files
Reports
Options

Conversation | Files | Contacts | History | Options

| | |
|---|---|
| **August 1, 2026 3:07 am** | Kelly Canby exported conversation as PDF. |
| **August 1, 2026 2:46 am** | Email delivered successfully to Kelly Canby at August 1, 2026 5:46 am EDT |
| **August 1, 2026 2:46 am** | Kelly Canby exported conversation as PDF. |
| **July 2, 2026 4:02 pm** | Email delivered successfully to Luna D'Sol at July 2, 2026 7:02 pm EDT |
| **July 2, 2026 4:02 pm** | Email delivered successfully to Kiry Yeoun at July 2, 2026 7:02 pm EDT |
| **July 2, 2026 4:02 pm** | Email delivered successfully to Kelly Canby at July 2, 2026 7:02 pm EDT |

GRSM50

73

Channels

Contacts

Files

Reports

Options

KC Kelly

| | |
|---|---|
| **July 2, 2026 4:02 pm** | Email delivered successfully to Michelle Bernard at July 2, 2026 7:02 pm EDT |
| **July 2, 2026 4:02 pm** | Email delivered successfully to Elisa Martinez at July 2, 2026 7:02 pm EDT |
| **July 2, 2026 4:02 pm** | Email delivered successfully to Jer Vang-Zamora at July 2, 2026 7:02 pm EDT |
| **July 2, 2026 4:02 pm** | Elisa Martinez uploaded "2026-07-02 D'SOL - DEF RFA TO PLTF SET ONE.pdf" file. |
| **July 2, 2026 4:02 pm** | Elisa Martinez uploaded "2026-07-02 D'SOL - DEF ROG TO PLTF SET ONE.pdf" file. |
| **July 2, 2026 4:02 pm** | Elisa Martinez uploaded "2026-07-02 D'SOL - DEF POS RE DISCOVERY TO PLF.pdf" file. |
| **July 2, 2026 4:02 pm** | Elisa Martinez uploaded "2026-07-02 D'SOL - DEF RFP TO PLTF SET ONE.pdf" file. |
| **July 2, 2026 4:02 pm** | Elisa Martinez sent a new message with 4 files. |
| **July 2, 2026 4:01 pm** | Elisa Martinez added Jer Vang-Zamora. |
| **July 2, 2026 4:00 pm** | Elisa Martinez added Luna D'Sol. |
| **July 2, 2026 3:56 pm** | Elisa Martinez added Michelle |

GRSM50

73

Bernard.

KC Kelly

Channels

Contacts

Files

Reports

Options

| | |
|---|---|
| **July 2, 2026 3:56 pm** | Elisa Martinez added Kiry Yeoun. |
| **July 2, 2026 3:56 pm** | Elisa Martinez added Kelly Canby. |
| **July 2, 2026 3:55 pm** | Elisa Martinez created "Luna D'Sol v Farmers Direct Property - Discovery to Plaintiff" channel. |

# EXHIBIT 13

**Kelly Canby**

| | |
|---|---|
| **From:** | Kiry Yeoun |
| **Sent:** | Thursday, February 26, 2026 4:07 PM |
| **To:** | jravada@icloud.com |
| **Cc:** | Kelly Canby; Michelle Bernard |
| **Subject:** | Matter No. FSAE 1416221 D'Sol v. Farmers Direct Property & Casualty Insurance Company "DEF'S INITIAL DISCLOSURES" |
| **Attachments:** | 2026-02-26 D'SOL DEF'S INITIAL DISCLOSURES.pdf |

Dear Counsel,

Attached please find electronic service copy of the following:

2026-02-26 D'SOL DEF'S INITIAL DISCLOSURES

Best,

**KIRY YEOUN**
**LEGAL SECRETARY**

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 840.977.8974
**E:** kyeoun@grsm.com | grsm.com

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br>Plaintiff,<br>v.<br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br>Defendant. | Case No. 2:25-cv-10938-SVW-ASx<br>Hon. Stephen V. Wilson<br>Magistrate Judge: Alka Sagar<br>**PROOF OF SERVICE**<br>Complaint Filed: August 21, 2025 |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP, 101 West Broadway, Ste. 2000, San Diego, California 92101. On February 26, 2026 below, I served the within documents:

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S INITIAL DISCLOSURES [F.R.C.P. RULE 26(A)(1)**

☐ **BY PERSONAL SERVICE:** by having the document(s) listed above personally delivered to the person(s) at the address(es) set forth below.

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

☒ **BY E-SERVICE:** I caused the document(s) listed above to be sent to the person at the e-mail address on the service list below. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

**Plaintiff in Pro Per**

Luna D'Sol
2275 E. Belding Dr
Palm Springs, CA 92262
Tel: (213) 925-40690
Email: jravada@icloud.com

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on February 26, 2026.

Kiry Yeoun
Kiry Yeoun

# EXHIBIT 14

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUNA D'SOL,

Plaintiff,

v.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

Case No. 2:25-cv-10938-SVW-ASx

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S EXPERT WITNESS DISCLOSURES**

Judge: Hon. Stephen V. Wilson

Trial Date: October 13, 2026; 9:00 a.m.

FSC: October 5, 2026; 3:00 p.m.

Complaint Filed: August 21, 2025

# I. INTRODUCTION

Pursuant to the Court's June 11, 2026 Civil Trial Preparation Order [ECF Doc. 86] and Federal Rule of Civil Procedure Rule ("Fed. R. Civ. Proc.") 26(a)(2) and Federal Rule of Evidence ("Fed. R. Evid.") Rules 702, 703, or 705, Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") hereby makes the following expert witness disclosures, including a list of retained and non-retained expert witnesses who Defendant expects to call at trial to present evidence by live or deposition.

Defendant reserves the right to supplement the following list of expert witnesses with other witnesses who may offer their expert opinion to the extent they are qualified to do so. Defendant reserves the right to call each expert witness designated by any other party in this lawsuit. Defendant also reserves the right to call any and all independent expert witnesses who may have percipient expert testimony, but may also offer expert opinions to the extent qualified to do so. Defendant reserves the right to name, call, and/or designate any additional experts retained, and submit a supplemental expert witness list and/or report as the need may arise during the course of discovery and investigation pursuant to Fed. R. Civ. Proc. 26(e)(1). Defendant also reserves the right to identify additional witnesses to provide rebuttal testimony, including pursuant to Fed. R. Civ. Proc. 26(a)(2)(D)(ii).

**RETAINED EXPERTS:**

**1.** Paul Hamilton, Property & Casualty Claim Consultant, 122 Calistoga Road, #134, Santa Rosa, CA 95409; Telephone: (707) 545-4109; email: phamil64@icloud.com. Mr. Hamilton is expected to testify regarding the insurance industry standard of care as it relates to claims handling activities in connection with investigation and adjustment of first -property damage claims, such as made by Pro Per Plaintiff Luna D'Sol ("Plaintiff" or "D'Sol") and related issues which are at issue in this lawsuit. Mr. Hamilton is also expected to rebut the opinions, if any, provided on behalf of Plaintiff regarding insurance industry standard of care as it relates to



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendant's investigation and adjustment of the first-party property damage claims at issue in Plaintiff's First Amended Complaint. Mr. Hamilton's rate for time spent for deposition and trial testimony is $280 per hour. Mr. Hamilton's Curriculum Vitae, expert witness report and expert testimony disclosures are attached hereto as **Exhibit 1.**

**2.** David A. Corona, Executive Manager of MKA International, Inc. ("MKA") (formerly Madsen, Kneppers & Associates, Inc.), 18301 Von Karman Avenue, Suite 750, Irvine, California 92612; Telephone: (949) 752-5946; email: dcorona@mkainc.com. Mr. Corona is expected to testify regarding property loss and damage assessment issues relevant to the property located at 2275 E. Belding Dr. Palm Springs, California, 92262 ("Property") and MKA's valuation of damages the Property sustained in an alleged incident of vandalism/burglary on June 3, 2024 allegedly causing property and/or water damage at the Property ("Incident"), the scope and reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition and/or pertaining to amounts paid by Farmers Direct for doing so and/or related issues which are at issue in this lawsuit filed by Plaintiff. Mr. Corona is also expected to rebut the opinions, if any, provided by or on behalf of Plaintiff regarding the alleged scope of loss-related damage from the Incident, the impact (if any) that the Incident-related damages had on the overall habitability of the Property, the reasonable and necessary scope of repairs and the reasonable and necessary amount of time to complete said repairs to return the Property to its pre-loss condition. Farmers Direct reserves the right to call an alternative a current or former employee of MKA. Mr. Corona's hourly rate is $375 for consulting time and $525 per hour for any testimony time. Mr. Corona's Curriculum Vitae, expert witness report and expert testimony disclosures are attached hereto as **Exhibit 2.**

**NON-RETAINED EXPERTS**

**3.** Donald "Donnie" Means, Senior Field Claims Representative who handled Claim No. 7007678692-1 ("Claim") and inspected the Property on behalf of

Farmers Direct (contact through Defendant's counsel). Mr. Means is expected to testify regarding Defendant's investigation regarding the Claim on behalf of Farmers Direct, Defendant's inspection of the Property in June of 2024 and May of 2025, the valuation of damages the Property sustained as result of the Incident, the scope and reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition, the valuation of reasonable cost to repair or replace personal property allegedly taken during the Incident, the habitability of the Property following the Incident, Defendant's coverage position regarding the Claim on behalf of Farmers Direct, communications between Defendant and Plaintiff regarding the Claim, the amounts paid by Farmers Direct to Plaintiff for the Claim and/or related issues which are at issue in this lawsuit filed by Plaintiff.

**4.** Richard Bryan, General Adjuster who handled the Claim on behalf of Farmers Direct (contact through Defendant's counsel). Mr. Bryan is expected to testify regarding Defendant's investigation regarding the Claim on behalf of Farmers Direct, Defendant's valuation of damages the Property sustained as result of the Incident, the scope and reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition, the valuation of reasonable cost to repair or replace personal property allegedly taken during the Incident, the habitability of the Property following the Incident, Defendant's coverage position regarding the Claim on behalf of Farmers Direct, communications between Defendant and Plaintiff regarding the Claim, the amounts paid by Farmers Direct to Plaintiff for the Claim, Plaintiff's submission of documentation related to sought recoverable depreciation and Defendant's response thereto and/or related issues which are at issue in this lawsuit filed by Plaintiff.

**5.** Michael Saskor, General Adjuster, Farmers Direct (contact through Defendant's counsel). Mr. Saskor is expected to testify regarding Defendant's investigation regarding the Claim on behalf of Farmers Direct, Defendant's valuation of damages the Property sustained as result of the Incident, the scope and

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition, the valuation of reasonable cost to repair or replace personal property allegedly taken during the Incident, the habitability of the Property following the Incident, Defendant's coverage position regarding the Claim on behalf of Farmers Direct, communications between Defendant and Plaintiff regarding the Claim, the amounts paid by Farmers Direct to Plaintiff for the Claim, Plaintiff's submission of documentation related to sought recoverable depreciation and Defendant's response thereto and/or related issues which are at issue in this lawsuit filed by Plaintiff

**6.** Bryce Spradling, Property Theft Supervisor who handled the Claim on behalf of Farmers Direct (contact through Defendant's counsel). Mr. Spradling is expected to testify regarding Defendant's investigation regarding the Claim on behalf of Farmers Direct, the scope and reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition, the valuation of reasonable cost to repair or replace personal property allegedly taken during the Incident, Defendant's coverage position regarding the Claim on behalf of Farmers Direct, communications between Defendant and Plaintiff regarding the Claim, the amounts paid by Farmers Direct to Plaintiff for the Claim, Plaintiff's submission of documentation related to sought recoverable depreciation and Defendant's response thereto and/or related issues which are at issue in this lawsuit filed by Plaintiff.

**7.** Albert Pimentel, Property Field Claim Supervisor who handled the Claim on behalf of Farmers Direct (contact through Defendant's counsel). Mr. Pimentel is expected to testify regarding Defendant's investigation regarding the Claim on behalf of Farmers Direct, the valuation of damages the Property sustained as result of the Incident, the scope and reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition, the valuation of reasonable cost to repair or replace personal property allegedly taken during the Incident, the habitability of the Property following the Incident, Defendant's coverage position regarding the Claim on behalf of Farmers Direct, communications between

Defendant and Plaintiff regarding the Claim and/or pertaining to Plaintiff's report of alleged water damages in 2025 (which Plaintiff later filed as a different claim under a different policy not issued by Farmers Direct), Plaintiff's sought toilet replacement or other sought plumbing work and Defendant's response thereto, the amounts paid by Farmers Direct to Plaintiff for the Claim, Plaintiff's submission of documentation related to sought recoverable depreciation and/or related issues which are at issue in this lawsuit filed by Plaintiff.

Defendant reserves the right to identify additional witnesses to provide rebuttal testimony, including pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii).

Dated: July 15, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By: *Kelly F Canby*
Michelle R. Bernard
Kelly Fitzgerald Canby
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT 1

**Paul Hamilton**
**Property & Casualty Claim Consultant**
**122 Calistoga Road, #314**
**Santa Rosa, CA 95409**
**(707) 545-4109**
phamil64@icloud.com

| | |
|---|---|
| **Date:** | July 15, 2026 |
| **CASE TITLE:** | **Plaintiff:** Luna D'Sol<br>**Defendant:** Farmers Direct Property & Casualty Company |
| **VENUE:** | United States District Court<br>Central Division California<br>Case No. 2:25-cv-10938-SVW-AS |
| **SUBJECT MATTER:** | **Insurance Claims Handling Expert's Report** |

**QUALIFICATIONS:** I was employed for 25 years by State Farm Mutual Insurance Company and State Farm Fire and Casualty Company. I began my employment with State Farm in 1964. In 1966, I took the position of an underwriter for automobile insurance policies (State Farm Mutual Insurance Company). In 1969, I became a claims representative for the State Farm Fire and Casualty Company. I initially worked as an in-office claims representative. I then became a field claims representative, with job responsibilities that included the investigation and evaluation of insurance claims under both personal lines and commercial lines policies. I was trained in the investigation and evaluation of both first party property damage claims and bodily injury liability claims. As a Field Claim Representative I was trained in the processing of first party theft/vandalism claims.

My training with State Farm included a three-week auto claim school, a three-week property claim school, a two-week casualty claim school, a two-week commercial claim school, a three-week building damage estimating course, and a one-week school on the processing of suspected fraudulent claims. During my time with State Farm Fire and Casualty, I handled literally hundreds of claims involving residential theft/vandalism. My job responsibilities also included the investigation and evaluation of many questionable claims presented by an Insured.

In 1981, I became a Claims Superintendent. As a Claims Superintendent, my job responsibilities included, among other things the supervision of claims handlers involved in the investigation and evaluation of both first- and third-party insurance claims under both personal lines and commercial lines policies. Residential vandalism/theft claims continued to be an area of focus.

In 1987, I took the position of Divisional Claims Superintendent. My job responsibilities as a Divisional Claims Superintendent continued to include, among other things, oversight of the

investigation and evaluation of both first-party and third-party claims under both personal lines and commercial lines policies.

During my employment with State Farm, I was also responsible for the supervision of a specialty claims unit that dealt exclusively with first-party property damage claims, all of which were in litigation. I monitored and supervised the law firms dealing with these litigated matters and frequently testified on behalf of State Farm pertaining to the claims handling policies and procedures that had been adopted and implemented by the company.

As a Claims Superintendent as well as a Divisional Claims Superintendent, I was responsible for making coverage decisions on many first-party property damage claims arising from residential theft/vandalism.

In 1990 I elected to take my experience with litigated claims and formed my own independent property and casualty consulting firm.

**CLAIMS CONSULTANCY WORK**: For the past 35 + years I have been self-employed as a property and casualty insurance claim consultant. As an independent insurance claim consultant my areas of expertise have included, among other things, the covenant of good faith and fair dealing, industry standards pertaining to an insurance company's investigation and settlement of insurance claims, an insurance company's duty to adopt and implement reasonable standards for the processing of claims and to adhere to any applicable claims statutes and/or regulations, and the duties a policyholder owes under the terms of the insurance contract in the event of loss.

I have testified as an expert in connection with insurance claims handling practices in both state and federal courts. I have testified as a claims handling expert in approximately eighty (85) trials over the past thirty-five years. I have testified on behalf of both insurance companies as well as policyholders.

As an independent claim consultant, one of my areas of expertise has continued to be residential theft and vandalism claims.

For additional information on my background and experience, please refer to the attached Curriculum Vitae and Trial & Deposition Listing.

**COMPENSATION:** $280.00 per hour. This includes document review, deposition testimony and trial work. My compensation does not depend upon the outcome of this case – I have no financial interest in the ultimate resolution of this litigation.

**PUBLICATIONS:** None.

**TRIAL LISTING:** Please see attached.

**DEPOSITION LISTING:** Please see attached.

**DOCUMENTS:**

**1.** CONFORMED COPY FIRST AMENDED COMPLANT
**2.** CONFORMED COPY OF EXHIBITS TO FIRST AMENDED COMPALINT, which includes a copy of the applicable insurance policy
**3.** Redacted Claim Notes (FD000001 – 000081)
**4.** The Examination Under Oath of Ms. D'Sol (FD004304 – 004515)
**5.** EXHIBITS A-H to RFA's propounded to Plaintiff (includes the key correspondence/position letters
**6.** June 17, 2025, and attached June 16, 2025, letters to "Luna Ravada" (FD001160 – 001168)
**7.** June 23, 2025 letter to "Luna Ravada" with attachments (FD001189 – 001205)
**8.** California Regulations – Article 1. Fair Claims Settlement Practices Regulations
**9.** Cal. Code Regs, Tit. 10, section 2698.30 – Definitions (q) "Suspected Insurance Fraud"

Based upon my review of the documents provided to date I am prepared to render the following opinions. To the extent I receive new or additional information I would respectfully reserve the right to either amend or supplement my opinions.

**Assignment:** I have been asked to review the conduct of Farmers Direct Property and Casualty Company ("Farmers") during its processing of its Insured's, Juilo Ravada ("Ms. D'Sol") theft claim.

**OPINIONS:**

**1.** Based upon my review of the documents provided to date it is my opinion that Farmers conducted a thorough, fair and objective investigation that was both reasonable and consistent with standard industry practices. There were no unreasonable or unexplained delays on the part of Famers during its processing of Ms. D'Sol's claim. This opinion is based upon the following:

**a.** Farmers receive first notice of loss on June 3, 2024. Between June 4, 2024 and August 2, 2024, Ms. D'Sol's claim was under active investigation by a claims professional with assistance from Farmer's Special Investigating Unit. Consistent with standard industry practices, the Farmers claim professionals were conducting parallel investigations – one dealing with quantifying the nature and extent of the claimed damage; and the other more focused on coverage.
**b.** On August 2, 2024, Ms. D'Sol filed a Proof of Loss with Farmers, indicating a total claim (dwelling and contents) in the amount of $39, 152.61.
**c.** On or around August 9, 2024, the claim file was referred to coverage counsel to obtain an examination under oath. From August 9, 2024, through September 27, 2024, the

claim file was pending Ms. D'Sol's Examination Under Oath. Ms. D'Sol's EUO was completed on September 27, 2024.

**d.** On October 29, 2024, Farmers issued an undisputed payment in the amount of $16,393.21 (Coverage A – Dwelling: $3,905.01; Coverage C – Personal Property: $12,488.20)

**e.** From November 5, 2024 through July 10, 2025, Farmers and Ms. D'Sol exchanged many communications dealing with her claim for recoverable depreciation in connection with the personal property claim. Farmers' evaluation of this portion of the claim was somewhat hampered as documentation submitted by Ms. D'Sol in support of her recovery of withheld depreciation could not be verified. None the less Farmers continued to issue payments for recoverable depreciation as follows:

- On November 12, 2024, Farmers issued a payment in the amount of $1,546.20.
- On July 8, 2025, Farmers issued a payment in the amount of $232.93.
- On July 10, 2025, Farmers issued a payment in the amount of $26.25.

**f.** On May 12, 2025 (nearly 11 ½ months after the reported date of loss, and nine months after Ms. D'Sol filed her Proof of Loss with Farmers), she submitted the following supplemental claims:

- Stucco/Paint: $18,000.00
- Code water line relocation: $3,000.00
- Toilet wall/anchoring and bath restoration: $4,400 + $16,000
- Kitchen Island demo/rebuild: $9,000
- Whole Home Epoxy: $46,000 - $52,000
- Total Supplemental Claim: $87,400 - $93,400

**g.** On May 14, 2025, Farmers issued a supplemental payment in the amount of $7,406.20 (Coverage A – Dwelling: $3,910.20; and Coverage C – Personal Property: $3,496.00).

**h.** The property was reinspected by Farmers on May 23, 2025.

**j.** And on May 28, 2025, Farmers issued a supplemental dwelling payment in the amount of $1,381.43.

**k.** On June 16, 2025, Farmers issued a detailed coverage position letter dealing with each of Ms. D'Sol's new claims.

**2.** In her Complaint, Ms. D'Sol alleges that Farmers denied her claim for Additional Living Expenses. I respectfully disagree – this is not consistent with the documentation contained within the claim file. On August 2, 2024, Ms. D'Sol filed a Proof of Loss, stating that her claim consisted of a total of $39,152.61 (Building Damage: $12,422.00; Personal Property Damage: $26,730.61.) On September 27, 2024, during her Examination Under Oath, Ms. D'Sol testified that the amounts claimed in her Proof of Loss were still current and accurate. Prior to litigation there is no indication that any claim for ALE was ever presented to Farmers. Nor is there any indication that any ALE claim was ever denied. To the contrary, in a claim note dated June 5, 2024 (just two days after FNOL) the Farmers Claim Professional documented the following: *". . . I let him know that if he does decide to stay in a hotel to just save his receipts for potential reimbursement if the loss is covered. He's unsure that he will . . . ."* No documentation of any

incurred additional living expenses was ever presented to Farmers prior to the inception of litigation. Based upon the nature and extent of the alleged damage, it would also be reasonable to question whether Ms. D'Sol's home was ever rendered unfit to live in.

**3.** Ms. D'Sol is critical of Farmers' decision to demand her examination under oath, which she describes as *"an adversarial EUO to build defenses and not to pay."* I respectfully disagree. An Examination Under Oath is a contractual right available to any insurance company. At the time Farmers demanded Ms. D'Sol's EUO, its investigation had developed the following: (1) Questionable point(s) of entry; (2) Something was placed in the toilet causing it to overflow; (3) The dishwasher was pulled out and damaged; (4) When Ms. D'Sol was asked to describe her financial situation at the time of the loss, her responses was *"mentally overwhelming"*; (5) Prior theft losses were acknowledged in July of 2023, January of 2024, and a water damage claim in August 2023; (6) According to Ms. D'Sol, a witness, Edward, would not allow his contact information to be given to Farmers. Based upon the information available to Farmers at the time, its decision to move forward with an examination under oath was both reasonable and consistent with standard industry practices. Nor is there any indication that Ms. D'Sol's EUO was intended to form a basis for denial. To the contrary, following Ms. D'Sol's examination under oath Farmers issued undisputed payments on her claim.

**4.** During the portion of Ms. D'Sol's claim for recoverable depreciation on her contents claims, she is critical of a sequence of denials followed by decisions to reconsider and pay. In my experience, Farmers was simply doing what I would expect an insurance company to do – to keep an open mind, be willing to consider new and additional information, and be prepared to reverse a coverage decision, if warranted. Farmers' willingness to keep an open mind and to reconsider Ms. D'Sol's claim was reasonable and consistent with standard industry practices.

**5.** It is generally recognized that an insurance company has a duty to effectuate prompt, fair and equitable settlements once its liability under the policy has become reasonable clear. In this case, Farmers ability to effectuate a prompt and equitable settlement was hampered by the ever-escalating, moving target of Ms. D'Sol's claim. Ms. D'Sol's claim began with her initial evaluation provided to the Palm Springs PD of about $18,000.00; followed by her Proof of Loss in which she claimed a total loss of $39,152.61; followed by her supplemental claim in May of 2025 of over $93,000 in supplemental damages.

**6.** Under the terms and conditions of the applicable Farmers' insurance policy, it is the duty of Ms. D'Sol to *"Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures."* Ms. D'Sol's supplemental claim for damages included amounts for water damage from both a dishwasher and a toilet that had been leaking intermittently since the original date of loss – a period of over eleven months. It was reasonable for Farmers to question whether Ms. D'Sol had complied with her duty to protect the property from further damage.

**7.** On or about June 4, 2025, Ms. D'Sol reported to Farmers another water incident. Ms. D'Sol is critical of Farmers for requiring her to submit a new claim for these damages. I respectfully

disagree. When the property was initially inspected by Mr. Means, his investigation confirmed there was no resulting water damage that would have required mitigation. Mr. Means' investigation included a moisture meter and an inspection for potential water and mold damage. Farmers' decision that a water event occurring 12-months after the initial date of loss would require a new claim was reasonable and consistent with standard industry practices.

**8.** California has adopted regulations with the purpose of accomplishing certain objectives: *". . . To delineate certain minimum standards for the settlement of claims which, when violated knowingly on a single occasion or performed with such frequency as to indicate a general business practice shall constitute an unfair claims settlement practice within the meaning of Insurance Code Section 790.03(h)."* (See 2695.1.Preamble (a)(1))

The Regulations were further promulgated to accomplish the following: *". . . To promote the good faith, prompt, efficient and equitable settlement of claims on a cost effective basis; to discourage and monitor the presentation to insurers of false or fraudulent claims; and, to encourage the prompt and thorough investigation of suspected fraudulent claims and ensure the prompt and comprehensive reporting of suspected fraudulent claims as required by Insurance Code Section 1872.4"*

In my opinion:

- There is no indication that Farmers mispresented any policy provision pertaining to coverage under its policy.
- Farmers has adopted and implemented reasonable standards for the processing of claims.
- Farmers conducted a prompt, through and fair investigation of Ms. D'Sol's claim.
- Farmers issued undisputed payments once its liability under the policy became reasonably clean.
- Farmers was reasonably responsive to claim related communications and provided reasonable explanations as to what portions of the claim were being accepts, and those that were not.
- Farmers did not compel Ms. D'Sol to institute litigation. Ms. D'Sol disagreed with Farmers evaluation of her claim and elected to institute litigation to resolve those disputes, which was certainly her right to do.

The regulations go on to explain certain circumstances that do not necessarily arise to the level of an unfair claims settlement practice:

(1) "*The existence of extraordinary circumstances";*
(3) *"The complexity of the claims involved";*
(10) *"The degree of harm occasioned by the noncompliance;*
(11) *"Whether, under the totality of circumstances, the carrier made good faith attempts to comply with the regulations"'*
(14) *"The licensee's reasonable mistakes or opinions as to valuation of property, losses or damages".*

(See Section 2695.12. Penalties (a)(1)(3)(10)(11)(14)

It is my opinion that Farmers, under the totality of the circumstances, during its investigation and evaluation of the Ms. D'Sol's claim, reasonably complied with the claims handling standards promulgated by the state of California.

**9.** Based upon my reading of Ms. D'Sol's complaint, she is alleging that Farmers processing of her claim was influenced by discriminatory or retaliatory motives. I would respectfully disagree. During the course of the claim the Farmers' claim professionals were reasonably responsive to Ms. D'Sol's claim related communications; and those communications were polite and professional. Based upon Ms. D'Sol's prior claim history; her seemingly dire financial condition at the time of loss; and the questionable nature and extent of her escalating claim for damages, it would have been reasonable for Farmers to question this claim in its entirety. Nonetheless, Farmers accepted coverage and ultimately paid Ms. D'Sol a total of $26,986.93 representing the undisputed portions of her claim. There is no indication contained within the documents I have reviewed to date that would suggest Farmers' processing of this claim was either discriminatory or retaliatory.

The above opinions are based in part upon the following claim timeline.

---

**Luna D'Sol**
**Claim Timeline**

**June 3, 2024:** Reported date of loss.

**June 4, 2024:** Claim Note by Matthew Craven: First Notice of Loss: The insured has been told to save any receipts they receive to submit for potential reimbursement. The insured does not feel safe in his home and would like assistance in finding a place to stay until he can get his locks changed and the window fixed. (FD000001)

**June 5, 2024:** Claim Note by Donald Means: INITIAL CLAIM REVIEW: . . . redacted . . . (FD000001)

Claim Note by Delbert Spaur: SUI Investigation: SIU File Review: . . . redacted . . . (FD000002)

Claim Note by Donald Means: Initial Contact Attempt: Phoned NI Julia Ravada for first contact. There was no answer and insured's mailbox is full, unable to leave a message. (FD000002)

Claim Note by Donald Means: Sent a text message to the insured, Julio Ravada, to please return my call to discuss his claim/set up my inspection. Screenshot of text uploaded to documents. (FD000002)

Claim Note by Michael Boswell: SIU Investigation: . . . redacted . . .
(FD000002)

Claim Note by Donald Means: Initial Contact: IBC from NI, Julio Ravada, returning my earlier call/text. Julio confirmed the loss address, DOL, that he lives at the one-story property full time, and that the mortgage company on file is accurate. The home is not in an HOA and not in a gated community. Julio left town at 12:30pm on Monday to go to another property that he owns in Los Angeles that he is currently selling. He was out of town the majority of the day and arrived back to the Palm Springs property around midnight. He noticed that the power was turned off to the house so he went to the electrical box to attempt restoring power and noticed it was damaged. He went back inside and was unable to locate his laptop then realized a painting was missing. At this time, he realized that somebody had entered the home and stole some items. He phoned his security company and the police. Palm Springs Police Department showed up approximately 8 hours later to take their report. Julio was told that the report would be available to him in 7 days - report #240P-0608. I asked that he please forward that to me as soon as it becomes available to assist in my coverage determination, he advised that he would. In addition to the stolen items and damage to the electrical panel, Julio also discovered that the bathroom window was shattered and the assailant(s) attempted pulling out the dishwasher which allowed some water to escape. He said there was water on the floor but it did not make it to the wall. As far as he is aware, there is not water damage to the builder materials. Julio advised that he was told when reporting the claim that he could stay in a hotel for the night until I contacted him. I let him know that I'm unable to approve until I've determined coverage. He advised that he temporarily secured the window with a block of wood to keep it from being opened from the outside and that made him feel better about staying at the residence. I let him know that if he does decide to stay in a hotel to just save his receipts for potential reimbursement if the loss is covered. He's unsure that he will as he'd like to avoid out of pocket costs in case the claim is not covered. I discussed the deductible and set claim expectations, letting him know that coverage is still pending my inspection and the police report. We set up my inspection for tomorrow 6/6/24. . . . (FD 000003, 000004)

**June 6, 2024:** Claim Note by Andrew Hermaan: SIU Investigation: File Review & Investigation Plan. . . . redacted . . . . (FD000004)

Claim Note by Andrew Hermann: SIU Investigation: Background and Prior Loss History: . . . redacted . . . . (FD000006, 000007)

Claim Note by Donald Means: Inspection: . . . redacted . . .
(FD 000006, FD000007, FD000008)

The property was inspected on June 6, 2024, by Senior Field Claim Representative Donald Means, and photographs were taken.

**June 7, 2024:** Claim Note by Andrew Herman: Review of 1/26/24 Theft Loss: . . . redacted . . .

(FD000008, FD000009)

Claim Note by Andrew Hermann: SIU Investigation: . . . redacted d. . .
(FD000009, 000010)

Claim Note by Andrew Hermaan: SIU Investigation: . . . redacted . . .
(FD 000010)

Claim Note by Andrew Hermann: SIU Investigation: . . . redacted . . . (FD 000010)

Claim Note by Andrew Hermaan: SIU Investigation: . . . redacted . . .
(F000010 – 000011)

**June 10, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Prior Loss 07/04/23: . . . redacted . . . (FD000011, FD000012, FD000013)

Claim Note by Andrew Hermann: SIU Investigation: Prior Loss Review; Water Loss: . . . redacted . . . (FD000013, FD000014, 000015)

Claim Note by Andrew Hermann: SIU Investigation: Contact with Lemonade Insurance: . . . redacted . . . (FD000016)

**June 11, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Called and left message on voicemail for Julio Ravada requesting return call. (FD000016)

**June 12, 2024:** Andrew Hermann wrote: Mr. Ravada, I am assisting your claims representative Donnie Means in the investigation and evaluation of the … claim you have submitted. I have attempted to contact you by phone with no success to date. Could you please give me a call when you have an opportunity as I would like to speak with you and schedule a follow up phone interview with you to discuss additional details regarding the loss . . . . I look forward to hearing from you.

Claim Note by Andrew Hermann: SIU Investigation: No response from the insured in regard to the message I left for him yesterday. As a result, I have now sent him an e-mail requesting he contact me to discuss the loss and schedule a follow up phone interview. Will await his response. (FD000016)

**June 13, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Received the following e-mail response last night and well after business hours from the insured:
-- I've been overwhelmed with phone calls by unknown numbers soliciting that now I always assume it is one. My apologies for not having responded, I did call you at the number found in your email but it took me straight to voicemail, I'm assuming that likely this is outside your business hours As far as setting up a time and date I am luckily fully open to discuss and provide anything that you may need. Feel free to just let me know the date and time that works best for

you, I'd just ask that you set it up for the earliest you have. Thank you and looking forward to your response. -- I sent an e-mail response to the insured earlier this morning and I advised him that I was available tomorrow morning, 6/14, at 10:30AM CST/8:30AM PST for a follow up phone interview and I requested he respond and advise if this works with his schedule. I am currently awaiting his response. (FD000016, 000017)

**June 14, 2024:** Claim Note by Andrew Hermann: SIU Investigation: No response from the insured in regard to my e-mail from yesterday wherein I advised him that I was available today for a follow up phone interview at 10:30am CST. As a result I have now sent a follow up e-mail to Julio requesting he advise me as to when he is available for a follow up phone interview. (FD000017)

**June 17, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Received response e-mail from the insured this afternoon advising he is available all this week for the follow up phone interview. I have now sent him an e-mail response advising we could schedule the interview for Wednesday 6/19 at 11:00CST/9:00PST and I have now also called and left him a voicemail message requesting he respond and confirm the interview for Wednesday. (FD000017)

Claim Note by Andrew Hermann: Virtual Scene Canvass: . . . redacted . . .
(FD000017)

**June 18, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Confirmed scheduled follow up hone interview for tomorrow …. (FD000017)

Claim Note by Andrew Hermann: SIU Investigation: . . . redacted . . . (FD000018)

**June 19, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Called insured at 11:00AM CST as we had agreed, however, call went straight to voicemail and mailbox was full and I was unable to leave a message. I called back a few minutes later and call again went straight to voicemail. I have now sent a text message to the insured requesting he contact me at his earliest opportunity. Will await his response. (FD000018)

Claim Note by Andrew Hermann: SIU Investigation: Interview Rescheduled: Received call from the insured and he advised that he had an emergency earlier and was not available for the scheduled interview. As a result, we have now rescheduled the interview for tomorrow morning at 10AM CST. (FD000018)

**June 20, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Interview of Julio Ravada: Completed follow up phone interview of insured Julio Ravada on this date as a recorded statement was obtained. The following will provide an overview of the information learned. Julio, who is single with no children, reports he has been living at the loss location since September of 2022 and since that time former partner Robert Cannon lived with him from March of 2023 through May of 2023, however, their relationship ended after significant domestic disputes and subsequently Mr. Cannon died in August of 2023. From August of 2023

from October of 2023 Julio advised his mother lived with him at the loss location but since October he has lived there alone. From an employment standpoint Julio reports he has been employed for the last 18 years with Bank of America as he audits internal fraud investigations. In addition, he reports he owns and operates Mealuna LLC which is an entity he created to manage and operate three rental properties he currently owns. With respect to the facts of loss Julio said he recently decided to sell his rental property located at 19525 Schoolcraft in Reseda, CA which is 2.5 hours from his current residence. He said the property is occupied by four different tenants and they are still living there while he attempts to sell it. He said he needed to travel to the property in Reseda to do some work in preparation of selling it. As a result, he said he subsequently made arrangements with friend/business associate Edward Green, who has done some work for him in the past and who he has known for about 4 months, to go with him to Reseda for the day on Monday 6/10 to do the necessary work and they would then return to Palm Springs late on the evening of 6/10. Julio said he does not like to drive so it was agreed that Edward would drive the insured's vehicle to Reseda with the insured as a passenger. Julio said he arranged to have an Uber pick Edward up at his home which is about 20 minutes from the insured. Edward was going to arrive sometime around noon and when he got there they immediately planned to leave from the insured's house to go to the property in Reseda. Julio said he left his overhead garage door open so when Edward arrived he could come straight into the house. At approximately noon he said someone knocked on his garage service door and Julio said he assumed it was Edward so he yelled for him to come in. At that point a man named Robin, who the insured had known for just a couple of weeks walked into his house. He said Robin had done some cleaning work for him and had run some errands for him in the short time he knew him. However, on one occasion he said he gave Robin $100 to go pick some things up for him, however, Robin subsequently went to the casino and spent the $100 at the casino and did not purchase what the insured had requested. As a result, the insured said he told Robin he didn't want to have any further involvement with him. Robin then came into his home unannounced on Monday 6/10 and he was accompanied by a man named Garrick who the insured said he had never met. The insured does not know the last name of either Robin or Garrick and he is unable to provide a contact number for Robin. He said he explained to the two men that he was leaving the house in just a few minutes as he was waiting for a friend. I inquired to the insured as to the purpose of Robin and Garrick coming to his house unannounced and he said he was not sure. He said the two men were inside his house less than 2 minutes and as they were leaving he said his friend Edward arrived via Uber and the two men exchanged greetings with Edward when he arrived. The insured reports Robin and Garrick came to his home in a black sedan. A few minutes after Edward arrived the insured said they left in his vehicle sometime around 12:30 pm to drive to Reseda and he said he is certain the home was completely locked and secured when they left. He said he does not have an active alarm system but he has a total of three cameras on the property as he has a doorbell camera as well as a camera on the exterior left side elevation and an interior camera in the master bedroom which he is able to monitor through an app on his phone. The insured reports he and Edward arrived in Reseda and completed some of the work the insured wanted to complete but there was still work to do.

However, he had previously agreed with Edward that they would leave Reseda by 7:00pm so they could return to Palm Springs yet that evening. I asked for a contact number for Edward and the insured said he does have his number but he did not want to release it to us without the permission and consent of Edward. The insured reports that when they left his rental property in Reseda around 7:30pm that Edward drove his vehicle back to Edward's house and they arrived sometime around 10:30pm. Edward then stayed at his own home and the insured then proceeded to drive his own vehicle back to the loss location and he said he believes he got home around 11:30pm on Monday evening 6/3 as he was alone. He said when he pulled into the driveway he immediately realized that there were no lights on inside the house as he always leaves some lights on. He said he was able to open his overhead garage door as it has battery backup and he said his first concern was to make certain his dog was in the house and ok. He said he found his dog inside the house and his dog was obviously scared and he had to tend to the dog to calm it down as it is a small 151b dog. Upon doing this he said he then went outside and walked around and then realized on the left side of the home that his electrical panel box had been tampered with as the main shut off had been turned off. He said at that point he turned power back on to the home and some lights then came back on. He said he went back inside the home and upon looking through the home he realized his work laptop was missing as well as a painting that was hanging on the wall. He said at that point his first call was to Bank of America security to report that his laptop had been stolen and after that he said he called the police and he believed this was around 1:00am. He said the police did not respond to the home until 11:00am that morning. After he was able to restore power to some of the home he said he was then able to determine that there was activity and notifications from his cameras from the previous day when the break in occurred. He said that during the trip to Reseda during the time the loss occurred he never received any notifications on his phone relating to the cameras observing activity at the residence. He said he ultimately was able to see from the cameras that at approximately 2:30pm on 6/3 two males with their faces covered with black masks walking up to the residence as they were observed on his doorbell camera. He said he then observed the two men jump the fence on the right side of his house which gained them access to the back yard. He said subsequently the camera on the left side of the home then observed both individuals on that side of the home. One of the two then placed a towel over the camera on that side of the home and the insured suspects they then turned the power off to the property and tampered with the electrical panel box which is located on the exterior of the home. From that point forward he said there was no additional camera footage. When the police arrived the insured provided an itemized list to the officer who responded. We went over the specific items that he has reported stolen and the items he mentioned to me are consistent with the items that he previously relayed to the CR which are outlined in a prior claim activity. I asked the insured since he provided his initial verbal list to Farmers and the list to the police has he found any additional items missing and he said the only additional itemwas a small suitcase that he realized was missing.

He also confirmed that when he arrived back to his home and discovered the loss that all doors were still locked. I inquired as to how entry was gained to the home and he reports he subsequently determined entry was gained through the guest bathroom window on the left side of the home near the electrical panel box as well as the camera. He said there was a

crate/basket under the window on the outside and he said there was a small hole in the left bottom corner of the window. He said there was no other visible damage to the window but he said when the loss was discovered he found the window was closed and not locked and he is certain when he left earlier that day that the window in question was locked. I asked him how entry was gained through the window and he said he had no idea. He said the day after the police were at the house he e-mailed the surveillance video to the police as well as another copy of the itemized list of the property stolen. He said approximately a week ago he did have contact with Det. Alexander Doherty with the Palm Springs PD who advised him that he will be conducting the follow up investigation but that to this point he has not had an opportunity to do so. In discussing the loss with the insured I asked him if he suspected the two unidentified males on camera were Robin and Garrick and he said he does. He does not identify anyone else specifically as to who it may be. I inquired to Julio as to what damage he was reporting to the home itself and he said the camera on the left side of the home was damaged and there is also some damage to the electrical panel box on the exterior. He said there is damage to the guest bathroom window and he said it appears the responsible party(ies) also put something in his toilet which caused it to overflow. He said that the suspects also damaged his dishwasher by pulling on it and when asked why he believed someone would damage his dishwasher he said he did not know as he said there was water discharged from the dishwasher when the suspects tried to remove it or damage it. I also asked the insured as to whether his home was under construction at the time of the loss and he said it was not with the lone exception being that he was in the process of painting his living room as he said there were repairs previously completed from his water loss claim back in August of 2023 and he was not happy with the paint color in the living room so he wanted to change it and he was in the process of doing that when the current loss occurred. I also asked him about the fact CR Means noted there were limited furnishings throughout the home and the insured said that because he lives there alone he does not have a tremendous amount of property throughout the home but that he lives there exclusively and does not stay anywhere else. From a financial standpoint the insured reports he earns $110,000 annually with his employment at Bank of America and in addition to his salary he also receives annual stock options of around $6,000 that he cashes out. He said he also has rental income from his three rental properties that total approximately $14,000 monthly. From an expense standpoint he reports he has total monthly mortgage payments of approximately $12,000 for his primary residence as well as the three rental properties. He also had a car payment of $1,000 monthly as well as normal living expenses. He said he also has total credit card debt of somewhere in the area of $180,000 that he is struggling to pay.

He reports he has total assets of $4.5 million with liabilities of approximately $2.2 million but he said most of his net worth is tied up in equity in the real estate. He acknowledged he has not managed his money well as he is an impulse spender and that this has caused financial difficulty for him. I asked him as to how he would characterize his financial situation at this time and his response was "mentally overwhelming". He said it has completely stressed him out to the point he is having health issues and he said taking care of the rental properties has become a real burden for him. He said he is unable to meet all of his current financial obligations and he is in the process of working out payment plans on his credit cards with American Express and Best Buy and Home Depot. He said he has recently made the decision to try and sell all three of his

rental properties and then pay off all of his debt and simplify his life and this would help him financially immensely. With respect to his prior loss history he did acknowledge the prior theft losses of January 2024 and July of 2023 as well as the August 2023 water/storm damage claim. He denies any other prior theft losses. I asked him if he has presented any other recent insurance claims and he did acknowledge a water loss but he was extremely vague in discussing details as he said he has a total of four properties and that he has had water issues in years past at different locations but he could not recall when or the specifics of each incident. At the conclusion of the interview the insured indicated that he is in the process of completing the POL form and submitting his itemized inventory. I did ask him as to the approximate value of all of the stolen property and he estimated it was somewhere around $18,000 to $20,000 not including the damage to the home which he said is not known at this time. He said he will also be providing any and all receipts he is able to locate as well as any additional proof of purchase. I specifically requested he forward the surveillance video to me and he said he would forward same to me. (FD000018 – 000026)

Claim Note by Andrew Hermann: SIU Investigative Status: The investigation is continuing at this time. . . redacted . . . (FD00026, 000027, 000028, 000029)

**June 21, 2024:** Claim Note by Brett Green: SIU Investigation: SIU Supervisor Review: . . . redacted . . . (FD000029)

Claim Note by Andrew Hermann: SIU Investigation: Surveillance Photos: Insured has now submitted a total of 7 still photos which he reports are from his surveillance cameras and said photos have now been printed to the file. . . redacted . . . (FD000029, 000030)

Claim Note by Andrew Hermann: SIU Investigation: Sent e-mail to the insured acknowledging the photos submitted and I have also requested he provide a contact number for his friend Edward Green. (FD000030)

**June 26, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Received e-mail from insured wherein he shared Apple iCloud links of four surveillance videos relating to the reported loss. However, SI is unable to access the links as received the following message "The URL that you have attempted to access is currently being restricted. This site appears to be in a category that has been deemed inappropriate for business use." . . . redacted . . . (FD000030)

Claim Note by Andrew Hermann: SIU Investigation: Insured has advised in his e-mail correspondence that Edward Green has refused his request to share and provide his contact information. (FD000030)

Claim Note by Andrew Hermann: SIU Investigation: Insured has advised the detective from the Palm Springs PD who is completing the follow up investigation into the loss is Det. Alexander Doty, Alexander.Doherty@paInnspringsca.gov. As a result, I have now sent an e-mail to Det. Doty requesting he contact me to discuss the status of his investigation. (FD000030)

**June 27, 2024:** Claim Note by Andrew Hermann: SIU Investigation: The investigation is continuing at this time . . . redacted . . . (FD000031, 000032, 000033, 000034)

**July 1, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Received an e-mail from the insured on Sunday 6/30 as the e-mail was sent to Det. Alexander Doherty at the PD and the insured copied me on the e-mail. In short, insured is reporting that he recently had a friend come to his home who he identified as Kyle Mangione and during their conversation the insured informed Kyle about his recent reported break in and the insured showed Kyle the videos of same. Kyle immediately recognized "Robin" and said he knows were Robin lives and Kyle believed that he would be able to assist in attempting to recover the insured's property. Insured then went on to explain that he then allowed Kyle to use his vehicle the next day to go buy some food but Kyle never returned the vehicle. Insured has a tracking device on the vehicle which showed the vehicle had been driven 123MPH and several other issues were noted with the manner in how the vehicle was driven. Julio advised that he had his medicine in the vehicle for his mental illness as well as his medicine for HIV prevention. Insured ultimately located the vehicle days later at a gas station and ultimately had the vehicle towed back to his residence. Insured has provided no contact information for his friend Kyle. I have now sent a follow up e-mail to Det. Doherty requesting he contact me to discuss the status of his follow up investigation. (FD000035)

Claim Note by Brett Green: SIU Investigation: SIU Supervisor Review: . . . redacted . . . (FD 000035)

**July 3, 2024:** Claim Note by Donald Means: Outbound Call to Insured: Phoned NI, Julio Ravada, to discuss the SL sent yesterday and reminded him of the documentation still needed to move the claim process forward. The requested documentation includes the police report and completed proof of loss. Julio asked if repairs to the home need to be included on the POL and I advised that there is a section on the form to input information regarding estimates for repairs if he's acquired any. Sent an email to document our call and further explain how to submit any estimates from contractors for repairs. Prior to finishing our call, Julio also asked about a reward for information leading to an arrest or leading to recovery of the stolen items. He was asking for more information on how that works. I advised Julio that I'd need to read through his policy and will get back to him with more information. After our conversation, I reviewed his policy and found a section talking about Reward Coverage on Endorsement HP2000 0205. The verbiage on the policy doesn't state the procedure on how to do so. I'll be researching the coverage further and will phone Julio to discuss once I have a better understanding of how that process works. (FD000034, 000035)

**July 5, 2024:** Latest Note by Andrew Hermann: SIU Investigation: Still awaiting itemized inventory and completed POL at this time. I have also been unable to gain access on my lap top to the links of the iCloud videos the insured recently submitted as webpage has been blocked . . . redacted . . . (FD000036)

**July 8, 2024:** Latest Note by Andrew Hermann: SIU Investigation: SIU Investigative Status; 3rd Status: . . . redacted . . . (FD000036, 000037, 000038, 000039, 000040)

**July 9, 2024:** Claim Note by Brett Green: SIU Investigation: SIU Supervisor Review: . . . redacted . . . (FD000040)

**July 10, 2024:** Claim Note by Seth Shepard: . . . redacted . . . (FD000040)

**July 12, 2024:** Claim Note by Andrew Hermann: SIU Investigation: . . . redacted . . . (FD000040)

**July 18, 2024:** Claim Note by Andrew Hermann: SIU Investigation: Discussion with CR Means: . . . redacted . . . (FD000040)

Claim Note by Andrew Hermann: SIU Investigative Conclusions: The investigation is being concluded at this time: . . . redacted . . . (FD00041, 000042, 000043, 000044)

**July 23, 2024:** Claim Note by Donald Means: Inbound call from insured: Received a return call from NI, Julio, and I let him know that I resent the invite for ClaimX and that if he has any issues uploading to feel free to email over to the myclaims email with his claim number in the subject line. Julio understood and said he will attempt ClaimX upload and if that doesn't work he'll email over. (FD000044)

**August 2, 2024:** Claim Note by Richard Bryan: Called customer. Mailbox is full and can't accept messages. (FD000045)

Claim Note by Richard Bryan: GA attempted to call customer regarding re-assignment and POL that was not fully completed and will need to be rejected. As noted, no answer and no ability to leave a VM. POL rec'd 7/24 and needs to be addressed asap, thus while not preferred GA is sending POL rejection letter (FD 000045)

PROOF OF LOSS
7. Cause/Type of Loss: Theft/Vandalism
8. On June 3rd I was preparing to run errands in LA. A guy named Robin stopped by wanting to introduce me to a friend of his, I told them I was about to head out to LA and that my buddy Edward's Uber was about to arrive so they left. I ended up going to LA with Edward and came back to my house at around mid-night and to my surprise I noted my entire home has no power, first instinct is get my dog and he seemed stressed but was fine. We go outside to the said patio to electrical panel and noted the main switch off. I turned it on but this time it felt super hard to move but yet very lose, but all this time I am watching that no insects are desert animals attack my dog so we run back inside now lights were on. Then I noticed my work laptop gone and paiting. (sic) I call my employers corporate security, then 911 and next date insurance.
9. Date and time loss was discovered: June 4th around 12:30 a.m.
10: Named of person who discovered the loss: Julio Ravada
23: Building damages: 12,422.00

Personal Property: 26,730.61
Total Amount Claimed: 39,152.61
(FD004527 – 4534)

Palm Springs PD – Report
(FD004289)

**August 5, 2024:** Latest Note by Richard Bryan: Discussed claim with prior CR who performed inspection. Confirmed that the kitchen island and floor are concrete. As concrete is a substance designed to get wet there is no resulting water damage that would have required mitigation. CR will upload sketch of loss to Xact to enable a repair estimate to be completed once coverage is determined. (FD000045)

Claim Note by Donald Means: After discussing loss with newly assigned CR Rich Bryan, I sketched affected areas in xactimate. Sketch is available on the xactimate cloud. (FD000045)

Claim Note by Richard Bryan: Customer submitted revised POL over the weekend. Called customer to ack receipt of document and review claim-No answer, mailbox is full.
(FD 000045)

**August 6, 2024:** Claim Note by Richard Bryan: Customer sent multiple emails with copy of prior correspondence he sent to prior CR. Customer appears to be adding multiple items to his inventory. As such, POL submitted 8/5 will have to be rejected. (FD 000045)

Claim Note by Richard Bryan: Called customer as it appears he has questions on the POL. Left VM. (FD 000045)

**August 7, 2024:** Claim Note by Richard Bryan: Spoke with customer, he was confused as he had gotten a task in CE to fill out the inventory on that part of the system and thought he had to do that in addition to the POL. Explained that no, the CE property inventory system is not required and does not have to be completed. Reviewed customer's revised POL submitted 8/5 and customer confirmed the single page handwritten inventory totaling 26730.61 and the 12422 in dwelling damages accounts for his entire claim. Customer has bids for ELE and PLM repairs he will also forward for review. Painting document and email he had with artist were discussed as this is best info customer has for the piece. Explained that GA will be out 8/10-25 and a backstop GA will be assigned to him to ensure claim moves forward. (FD 000046)

Claim Note by Richard Bryan: . . . redacted . . . (FD 000047)

Claim Note by Richard Bryan: . . . redacted . . . (FD 000047, 000048)

Claim Note by Richard Bryan: Customer forwarded contractor bid which includes open ended items for mitigation. (FD 000048)

Claim Note by Richard Bryan: Called customer and spoke with Julio, acknowledged receipt of contractor invoice and asked customer if he would be willing to do a live so GA can review a few areas of the home in further detail. Customer agreed and invitation was sent. (FD000048, 000049)

Claim Note by Richard Bryan: . . . redacted . . . (FD000049)

Claim Note by Richard Bryan: . . . redacted . . . (FD000049)

Claim Note by Richard Bryan: . . . redacted . . . (FD 000049)

**August 8, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000049)

Claim Note by Richard Bryan: Called customer and asked if he could do a quick facetime call on iphone to exhibit his living room where the painting was taken from. Customer advised he was not dressed and can't do it right now. Customer did agree to take a quick video of his LR later today and upload to CE. (FD 000049)

**August 9, 2024:** Claim Note by Richard Bryan: Called customer: ack receipt of photos he uploaded to CE, images are of his living room currently. Customer advised he is redoing the table and working on removing the leg as well. Item is built into the home's structure and is being re-surfaced which is why it is now white. Explained attorney involvement and EUO. Set expectation that customer will be contacted in a couple of weeks to set an appointment with counsel for the EUO. Customer expressed familiarity with process having undergone an EUO just one year ago. (FD 000050)

**August 15, 2024:** Claim Note by Travis Roan: I received a call from Mr. Ravada as I am assisting while GA Bryan is out of the office. I attempted to call him back and it went to VM. I left a message documenting my contact attempt. (FD 000050)

Claim Note by Travis Roan: I reviewed the documents and noted the customer requested contact from GA Bryan's supervisor in a message to claimX. I advised the FCS of this. (FD000050)

Claim Note by Scott Faser: I was advised the insured wanted contact from a supervisor. I called and left a VM with my information. (FD 000050)

**August 20, 2024:** John S. Na, Esq. wrote to Julia Ravada to inform that Farmers has determined to exercise its right to an Examination Under Oath.

**August 27, 2024:** Claim Note by Richard Bryan: EUO scheduled for 9/16/24, scheduling letter issued 8/20/24. (FD000050)

**September 12, 2024:** Claim Note by Richard Bryan: Attorney Client Communication: . . . redacted . . . (FD 000050)

Claim Note by Richard Bryan: Left VM for customer advising that counsel is rescheduling the EUO . . . . (FD 000050)

Claim Note by Richard Bryan: Letter to customer: 2nd EUO attempt set for 10/8/24 . . . redacted . . . (FD 000051)

Gordon & Rees wrote to Julio Ravada: As you are aware, our law firm has been retained by Farmers Direct Property And Casualty Ins. Co. ("Insurer") to assist it with regard to the above referenced insurance claim for theft of personal contents on or about June 3, 2024, from the residence located at 2275 E Belding Drive, Palm Springs, CA, and assigned claim number 7007678692-1 by the Insurer ("Claim"). Previously, by letter dated August 20, 2024 ("Initial Letter"), we advised that pursuant to the terms and conditions of your insurance policy, the Insurer determined that it will exercise its right to conduct an Examination Under Oath ("EUO") of the insured, and scheduled your EUO for September 16, 2024. Further, in preparation for the EUO, we requested that you provide certain documents and information by September 9, 2024. (FD004523 – 004526)

**September 20, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000051)

**September 27, 2024:** EXAMINATION UNDER OATH OF JULIO RAVADA:

- The Insured has had an EUO before – one through another claim from Farmes.
- The prior claim from Farmers, was October last year.
- It was a property claim.
- It was declined because there was a year to bring it up.
- Farmers was saying that there was a lie about an event.
- According to Farmers it was based on a misrepresentation.
- The Insured's cell phone fell into the septic tank.
- The Insured doesn't have a landline.
- The Insured's current address is 2275 East Belding Drive, Palm Springs, CA. That is the address where the loss occurred. It is a house that is owned by the Insured.
- The Insured has resided at that location since September 2021.
- Mr. Cannon got released on March 7, 2023. And moved out again on April 17, 2023.
- His ex was stealing things from him.
- On July 3rd, that's when I had a guy come here, sent by my ex -- that's my allegation – drug me, stole most of the things from my house, raped me, and destroyed the floors. And there were three people. And so that case is still pending and that is the case that Farmers denied. That is the case that is still -- one person is arrested.
- The Palm Springs property was listed for sale around April or May of this year.
- The current mortgage on Palm Springs is approximately 5600.
- He is not current – maybe 11 months behind.

Exhibit 2 is the Proof of Loss that was submitted.

- Item No. 7, Cause of Loss: Theft and vandalism.
- Item No. 8, his description of the loss – it is accurate. On June 3rd he was running an errand in LA. A guy named Robin stopped by. He told Robin he was going to LA. And so he left the property and got home around midnight and that's when he discovered the loss.
- Item No. 9, date and time of loss: June 4th around 12:30 a.m.
- At the time of the loss he was only painting the ceiling.
- Item No. 17 is asking for prior losses: He identified two:
  - The first one January 2024, also with Farmers.
  - And then July 2023, the one he discussed earlier.
- Item No. 20, damage to the premises: He described four items, a window, electric panel, dishwasher and toilet.
- The estimate for that is $12,422 = based on an estimate he obtained from Kings Power.
- Item No. 23: Building Damage: $12,422; Personal Property: $26,730.61 – for a total claim about of $39,152.61.
- That is still current and accurate.
- The Proof of Loss is dated August 2, 2024.
- People here had stolen from him in the past.
- The window – When he left the house, I locked everything. What it seems is that they probably jump up one of the two side patio gate. And when I came back to the house the next day when the police was here, I was outside again, but it was daytime. And what I noticed is that they had brought something from the shelf to right outside that window, and then it was just there -- like sort of like it worked as a step. And then also the framing outside of the exterior wall around the window, the bottom part of the frame, it had been chipped out. Like the metal part, it had been – it had a rectangular hole, like 2 inches by 1 inch. And that's what I figured. And then the hammer and another thing was down there too still, so that's what I figured, oh, this is how they entered the house. But yeah, the framing of the window is still like that right now. It was chipped out.
- Was the window broken? That portion, like he doesn't know …. It looks like some mechanics happened inside of the window.
- The window was not broken – it was opened. It is opening and closing now.
- The property was listed for sale before the loss.
- If somebody's interested in the house he will get those things fixed.
- He has not fixed anything.
- The window that he entered through it's the guest bathroom.
- On the other date when he flushed the toilet it started like pouring out water. That was the day after.
- He doesn't know what happened but it was to the extent the toilet does not work.
- It is not cracked; it is not broken. There's something stuck inside.
- Somebody has to come and unflush it or do something.
- That's just his assessment.

- When the guy from Kings Power was here he also didn't – he means, that's what contractors do. They rather work on replacing something new instead of fixing something existent.
- He will admit, King Power didn't, "Definitely you have to buy a new one …."
- The date of the loss – This is when he was selling Reseda and it was listed for sale already but he was having issues with the tenants not keeping the place up to par.
- So my realtor told me that it would be better to empty out the house. So that's when -- and then he kept coming back with complaints like, you know, oh, the kitchen is dirty or this smells or whatever, so I decided then that it was time for me to go address it. Clean it or whatnot.
- So I don't like driving especially long distances, so I asked this friend of mine if he could drive me, and then he said yes. His name is Edward. So at the time he asked me to send him an Uber. So I did go and I submitted the Uber to get him where he was to get him here.
- I was in my living room. I don't remember if I was resurfacing the dining table. I was adding a new -- like fixing the cement part to make it smooth. And then like I had left the garage door open thinking that -- I assumed he was going to be here in 10 minutes; right? And then I hear somebody like knocking on the garage. And I was like, "Hey," I thought it was him. And I said "Come in." And that ended up being Robin.
- And Robin is somebody that I had met a month before who was looking for anything -- any work. And he came and worked here, like going and running errands for me, until one day, he stole a hundred bucks and he went to the casino and wasted it, so I let him go and I was upset. But then when I saw him this time, and he walked in, I was like, "What are you doing here?" He said, "I want to introduce you to a friend." And then I was like, "Well, I have to go to L.A." And then this other guy was like coming right behind him, and then this guy was like, "Oh, you have a beautiful home."And then I was like okay. So I was trying to get them out of here. I told them, "I really have to go." He asked me, "What are you going to do?" And I was like, "I'm just" -- I told him what I was going to do like in L.A. I had to like basically go clean the house and this friend is coming. This happened really quick. He said, "Could I give you my phone number so we can chat later?" So I was like, "Sure." We exchanged phone numbers. He introduced himself as Garrett. And so at this time, I see the Uber pulling in front of my house, and then they both left. So then Edward comes in and he helped me finish packing my SUV. So I left my dog here. I said "Bye."
- And then we started driving to L.A. I want to say this all happened like at 11:50 a.m. when Robin came in and the Uber and all of that. We probably left at 12:00 p.m. I removed a bunch of lights. He helped me clean the patio in the house and like repair like a lot of minor details, like painting a wall here and there. And then we ended up like leaving, I want to say, like around 8:30 p.m
- When we came, we stopped over to have dinner. And then we went to where he's staying. And then – the car was loaded with things. There was a kick box -- something like a punching bag that a tenant had, so he asked me if he could keep it, and I said yes.

So he started unloading what he asked me to keep. And then I started driving alone home. So he was in Desert Hot Springs. The drive from here to there is like 20 minutes.

- When I got home, I noticed that like the entire house seemed off, like turned off, like, you know, like no power. But it was kind of weird, but, again, all the houses in Palm Springs are really dim, low. So I opened the garage and then I came in. And when I walk into the living room, I noticed my dog, he seemed scared. But he's a chihuahua. They usually are scared. And I couldn't like turn on any lights.
- And so I go outside then, and then I noticed that the switch like of the main panel had been turned off and it looked like it had been -- like the panel wall was on the floor, so I thought it maybe just fell off. It was windy or whatnot. So I turned it back on and was thinking that it was strange. I thought like maybe I am the one who turned it off and I forgot to like turn it back on. My mind is not a lot present since all of this happened, so it's -- I was trying to remember. And then I walk inside the living room, and then I was just like standing in the kitchen island, and I was just thinking like did somebody break in? I don't think so because I mean, in my head, I was just like, yeah, things are still here. And then I thought like, well, if somebody came and broke in, they would have stolen my work laptop. And then right there from where I'm standing, I like looked over on my desk, and I don't see the laptop, so I freaked out a little bit. And then I'm like let me see if it's in the master bedroom. I went and didn't find it. And I came back and where did I put it? And then I looked over at the wall, and that's when I realized the painting wasn't here. And that was the moment I was like holy cow. I mean, I know that I left it there and, you know, it's not there.
- So then I first called Corporate Security from Bank of America, and that took awhile because it was already past midnight, and they had to transfer me to -- I spoke to up to three departments.
- And then I called the cops, and the cops basically sent somebody nine hours after. And then what I did is I started like going through things and then making an inventory of what was missing, and that was that.
- And then having access to the cameras was hard because I had an email from Spectrum saying that there was an outage in my area that day. And then like, you know -- and then I thought that me not having access to the camera was because I -- that there was no internet. But then like when the cops came in, the service was restored, and that's when I saw the camera footage of these two guys, and then I saw the bucket on the kitchen, on the bathroom window, and that was that.
- He thinks Edward's last name is Greener. He's not like a close friend of his.
- Edward doesn't have his own car – he's poor.
- They met through a dating app.
- Robin is somebody that I did not want to see, that I have had a fight, he had stolen from me. And so, yeah, like, you know, it's not something like that I was expecting him to show up.
- My experience in Palm Springs has been always every person I meet steal something from me. They think I'm weak or an easy target.
- A week before this incident he told Robin "Don't come by anymore."

- Edward said he doesn't what to get involved – but he will provide his number.
- He listed the panel as one of the items that needs to be replaced.
- Because like the main -- the main switch, I think it had been tampered, because like when I like turn it off like, you know, it wouldn't want to like turn off. Like it was always like normal; right? But this time, it took me -- like it gave me a hard time right here doing it (indicating). And then like it looked like tampered, you know. I -- that's what I think. I don't know how they turned it off. Like, you know, with something or they intended for it to like never turn on. But right now, for example, it's broken. Like it's completely gone.
- The Kings Power, that estimate, he's mainly an electrician.
- He never got a diagnostic explaining what was specifically wrong with the panel.
- When he turned the power back on, the first thing he noticed was the Bank of America laptop was missing
- And then he saw the missing painting.
- Knowing that a burglary had happened, I felt scared, so like I couldn't sleep. And I know that when the police will arrive, they will come and ask me what was stolen. You guys will ask me the same thing. So I figured I needed to sit down and just see what was missing.
- When the police came it was really quick: Like he looked like -- like when I -- when I took him outside and when I showed him the window and everything, he didn't took fingerprints or anything. He's like okay, he gave me his card, and he said he was going to prepare the report and it will be here -- he will need me to send him an email with a list of the things that were stolen. But he asked if he could take a picture of the one that I had written. And I said, "Yeah. Of course." And then he did, and then I sent him the list, and then he provided the police report that same day.
- The police were not here even three minutes.
- He suspects it was Robin and Garrett who were involved in the theft. He told the police that. It got assigned to a detective. The detective stopped responding.
- When he received the police report it said, "suspects unknown."

Exhibit 3 is a copy of the police report.

- It's got the date time of the occurrence: June 3rd between 12:30 and June 4th, 1:00 a.m.
- It's got the date and time reported: 3:25 a.m. on June 4th.
- The police, they had probably given him 7 police reports in the last 12 months. And every one of them – one thing they are known for – is to be completely inaccurate – not to include information or lied in reports. He has escalated this to the DOJ.
- Not 7 police reports related to this claim.
- Like what happened with his ex or other robbery.
- Under Case Summary: "Unknown suspected forced entry and removed items."
- In his mind, "suspects unknown" is not correct because he knows who the suspects are.
- The police report has a list of the items.
- The amount says, "Total Property Value $18,800."

- So this guy Kyle, it's another acquaintance here in this town, and like he is known and I told him what happened. And then I told him who it was and I showed him the picture of Robin. And then he told me that he knows him and that he knows he lives in Yucca Valley. And then Kyle is a pretty big guy, scary guy, like, you know, like he's always constantly -- like he's like punch fighting. Anything like, you know, irritates him a little bit. But then he was like telling me like he knew -- he can get to him, to Robin. He can find out where he lives. And what he's going to do is he's going to have him meet up at some hotel in Yucca Valley, and then he was going to like beat him up. And then he wanted me to like show up later and then basically, so I can tell him off. And I was like wait. I was like -- because I don't like to -- I cannot even imagine what I would do in a violent situation like that. It's just not for me. So I told him like well, if you can get to him, I think that the right way of doing this is to have the police go and take him. Like, you know, not you.
- He's like, "No. We're not going to get in trouble." And I was like, "Yeah. I don't think" -- so I was like -- I also have read in the policy documents that if a person is able to help to get to the suspect, like you guys pay 10 percent reward of the value of the item; right? And I told him like by the way, like if you help him, like I think insurance has a reward for it, 10 percent of the value. But I was like, "But let me find out first what their process is. Don't do anything as far as like you going and get to him. Like if you want to find out where he lives, get his information displayed. But I'm going to ask the insurance what's their process if I know somebody that can get to this guy, what I need to do." And then I reached out to you guys, and they -- that guy, Brian, he did say that it was under investigation under oath and he couldn't respond to my message. And then Kyle called me later that day when I sent this email saying like, "Hey, I have him on the phone." So that's why at that moment, I figured that the best thing for me to do is to tell the police. I had already told the police that Kyle knew where he was and he was going to find out information. So I didn't want -- I thought if Kyle goes and does something crazy, goes and gets him, beats him up or something, at least I wanted to wash my hands by saying I reported it. I have nothing to do with it. And I have not been present when he asked me to be present for such event. And so when Kyle told me he had him on the phone, that's when I sent -- a second after, I sent this email to him, so that way it is on record that I reported what Kyle's telling me. Then Kyle ended up showing up that afternoon and then showing me the messages between him and this guy, but it ended up that he had texted the wrong person, so it was not even Robin.

Exhibit 4 are the invoices and receipts he had submitted to Farmers during the course of the claim.

Exhibit 5 is the estimate from Kings Power Electric.

- On page 2, Project Outline, Asbestos and Mold testing: He remembers telling them that water came out through the toilet. And because it's wall hung, the toilet is not pipe through the floor, but through the wall. King figured like testing for mold should be done.

- He had had asbestos tested before.
- He had already had asbestos testing done in January, 2024.
- The window has to be replaced because there's a hole in the frame.
- The dishwasher has to be replaced because – he thinks it had been tried to be pulled out – like on the side of the dishwasher it looked like it had been chipped.
- He did not replace the dishwasher before listing the house.
- So according to this from Kings Power Electric, it says the panel -- electric panel replacement is required due to the existing panel that's out of market for fire risk. So is that the reason why it needs to be replaced? That's what he said that he couldn't repair the main switch because like, per code, that's not allowed. They're not allowed to do it.
- It is damaged. It has to be repaired. He would guess it has to be replaced instead because it is loke out of code.
- It has not been replaced yet.

Exhibit 6 is a photograph of the painting.

- He was in default on his credit cards and the mortgages at the time of the loss.
- At the time of the loss, including mortgages and credit cards, he owed 2 million.
- He owed American Express like 60,000. His monthly payment was 2200.
- His income from the bank is 9700 a month.
- He has no car payments.

Exhibit 7 is an e-mail exchange between him and the artis for the painting.

Exhibit 8 is a Zillow listing of his Palm Springs property.

- It was listed at the end of July.
- The listing in July of 2024 was not the first time he listed this property.
- The first time must have been April or May of this year when he listed the property.
- He first listed it on February 8th.

**September 30, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000051)

**October 2, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000051)

**October 17, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000052)

**October 21, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000052)

**October 22, 2024:** Claim Note by Richard Bryan: Called and left vm in response to customer's vm and message through CX. Advised customer we received his signed transcript and exhibits last week and are reviewing the new evidence and will provide update within 2 weeks. (FD 000052)

Claim Note by Richard Bryan: sent artist a contact request in attempt to obtain accurate value of LKQ prices for his artwork. https://www.markbercierartwork.com/contact Our customer had a home burglary in June 2024 and lost a piece titled "Ivy and Luke". The customer emailed you in June 2024 with a photograph of the artwork trying to obtain a current value on the piece he purchased from a New Orleans gallery in 2017. It does not appear he has a copy of the receipt any longer. Would you be so kind to share what similar original works of yours have recently sold for on the market so we may determine an accurate value? Thank you, Richard Bryan General Adjuster. (FD 000052)

**October 23, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000052)

Claim Note by Richard Bryan; . . . redacted . . . (FD 000053)

**October 24, 2024:** Farmers Direct Property and Casualty Insurance Company
Estimate: JULIO1_RAVADA2
Estimator: Donnie Means
Summary for Dwelling
Replacement Cost Value: $3,939.12
Less Depreciation: <34.11>
Actual Cash Value: $3,905.01
(FD001073 – FD001081)

**October 28, 2024:** Claim Note by Richard Bryan: . . . redacted . . . (FD 000053)

Claim Note by Richard Bryan: PERSONAL PROPERTY:
CVR Replacement Cost Value $18,349.10
Less Depreciation: <3,360.90>
Actual Cash Value: $14,988.20
Less Deductible: <2,500.00>
Net Claim: $12,488.20
PAINTING EVALUATION: Artist was non-responsive to customer and GA. . . . redacted . . . GA is going to accept the customer's claimed value of $5,000 for the painting and frame. Shipping he paid for delivery is not included in the item value. . . . redacted . . . (FD 000053)

Claim Note by Richard Bryan: DWELLING: Customer's contractor bid was reviewed during the EUO and it was noted that many items that were listed for replacement do not appear to require replacement. Toilet, dishwasher and ELE panel appear to be functional and have not been confirmed as un-repairable. Customer testified he had ELE to home after theft and the toilet was cleaned and is functional. DW has not been repaired or looked at. The quotes below are from the EUO transcript. It is noted customer had home for sale after DOL and prior to EUO and had not replaced these items. Many of the items on contractor's bid do not appear to require replacement. Customer also testified that contractor he obtained his bid from did not specifically advise items had to be replaced. Dwelling repairs will be paid off of damages

determined during field inspection as written by CR in the field. It is noted CR had moisture meter and inspected for potential water and mold damages.
TOILET: 15• • • .A.• •No.• It's like it doesn't -- there's something 16• •stuck inside. 17• • • •Q.• •It's still stuck?• You can't unclog it? 18• • • A. •Well, like somebody has to like come and unflush 19• •it or do something.• I don't know.• I haven't done 20• •anything to it either. 21. • • .Q.• •Well, so again, I'm just wondering why does it 22—have to be replaced if it's just clogged? 23• • • .A.• •Oh, well, that's just my assessment.• Like, you 24• •know, when the guy from Kings Power was here, he also 25—didn't -- I mean, that's what contractors do. You know, they rather work on like replacing something new instead .2. 'like fixing something existent.• And that was sort of .3. 'like -- but I know, I will admit, like he didn't, .4. •"Definitely, you have to buy a new one and this is how .5. 'much we'll charge you."• And that's why I wrote this .6. •down.• But if somebody can replace it, by all means, I .7. 'will take that. .8. • • .0.• •But I mean, the question that I have is is it .9. 'damaged to the point where, you know, it's got a crack on 10• •it?• It's broken or -- 11. • • .A.• •I don't know.• It's not cracked.• It's not 12• •broken.• But I don't know if whatever substance it had, 13• •it damaged anything inside.• I'm not that expert or 114• 'don't know.
ELECTRICAL PANEL: .0.• •Okay.• Did you ever have an electrician do a 24• 'diagnostic on the panel and say exactly what's wrong with 25• •it? •1. • • .A.• •The Kings Power, that estimate that I sent, he's .2. •mainly an electrician. .3. • • •O.• •Right.• But other than an estimate where he just .4. 'says it has to be replaced, did you ever get a diagnostic .5. 'explaining -- .6. • • .A.• •No. .7. • • •O.• •-- what was specifically wrong with the panel? .8. • • .A.••No.
DISHWASHER: • •O.• •Well, let me ask you this.• Again, the house was .7. 'listed after this loss occurred, so did you replace the .8. 'dishwasher before listing it? .9. • • .A.• •No.• Still the same. (FD 000054, 000055)

Farmers Direct Property and Casualty Insurance Company
Estimate: JULIO_RAVADA21
Estimator: Richard Bryan
Summary for Contents
Replacement Cost Value: 18,349.10
Less Depreciation: <3,360.90>
Actual Cash Value: 14,988.20
(FD001065 – 1072)

**October 29, 2024:** Farmers issued a Claim Outcome Letter:

- You claimed damage requiring full replacement of plumbing fixtures, electrical equipment and appliances. You also claimed water damage and mold damage. Unfortunately, there is no coverage for this portion of your claim based on the facts known to us at the present time. Our inspection did not find these items warranted full replacement as a repair appeared possible. Further, our inspection did not find any mold damage to the home and the concrete surfaces did not require additional mitigation or repair due to clear water exposure.
- We’ve completed the adjustment of your loss and we are closing your claim.
- Payment Summary:

- Personal Property:
  - Replacement Cost: $18,349.10
  - Less Depreciation: <$3,360.90>
  - Actual Cash Value: $14,988.20
  - Less: Policy Deductible: <$2,500.00>
- Dwelling:
  - Replacement Cost: $3,939.12
  - Less Depreciation: <$34.11>
  - Actual Cash Value: $3,905.01

- Settlement Information . . . .
- Request for Replacement Cost Extension . . . .
- General Contractor Fees . . . .
- Prevention of further damage . . . .

(FD001059 – 001060)

ATTACHMENT: Additional Information: Payment Summary: The following table of information outlines. Your claim settlement …. (FD001061)

ATTACHMENT: COVEREAGE OUTCOME – POLICY PROVISIONS
(FD001063, 001064)

Claim Note by Richard Bryan: ACT INVESTIGATION SUMMARY:

- Called listed number and spoke to: Julio I verified the reported cause of loss to be: theft on premises to coverage A and C. Partial denial issued for claimed damage to DW, ELE and toilet as replacement was not deemed necessary during inspection. The insured reported damage to: Damage to dwelling and personal property from theft.
- Recorded statement taken by field. SIU, summary in file. . . . redacted . . .
- As outlined in prior note damage to dwelling is based upon field inspection and as customer noted not all items required replacement that were in his contractors bid. No other insurance or other type of policy applicable. CVR and POL were compared, all items, quantities, ages and condition are accurate. Settlement is based only upon the POL which is the full, final and complete list of claimed property. Settlement, Xactimate, CVR, partial denial, were explained to insured along with RCV/ACV, Ded, SAU and how to recover any recoverable dep within 180 day timeline. There is not any potential subrogation because no arrests have been made. There is not any potential salvage because no suspect has been arrested/property recovered. Overhead and profit not on building estimate because general contractor is not needed. Repairs were considered for replaced items on xact but was not practical if an item notes replacement. Asked insured if my service was meeting their expectations to this point: All documents have been attached to the file and labeled. PD salvage letter not issued with contents list as no firearms stolen.

(FD 000055)

A Claim Payment was issued in the amount of **$16,393.21** (Coverage A – Dwelling: $3,905.01; Coverage C – Personal Property: $12,488.20)

**November 5, 2024:** Latest Note by Richard Bryan: Called customer: Spoke with Julio and ack receipt of his RCV docs and question about ELE system. Advised GA will review and provide status to him shortly. (FD 000056)

**November 7, 2024:** Claim Note by Richard Bryan: Customer has forwarded E00 docs to recover DEP and also rebut payment on certain items. Customer asserts his Apple watch was not LKQ. GA is reviewing the specific differences between the 2.67 year old watch and current models that are available since this no longer appears to be made by Apple. Customer also questions the window replacement on the xactimate estimate and ELE panel. Customer forwarded a document regarding a recall on the panel that is being reviewed. It is noted only the front of the panel may have been removed which is something that can be removed and reset during typical operation to install a breaker etc. GA is reviewing this issue as well. Spoke with Julio and advised the window was on the xact and the ELE panel did not appear to require full replacement. An ELE check was included on the xact for dwelling and if a certified electrician provides documentation the damage from the theft requires full replacement this needs to be forwarded for review. Discussed Apple watch and that since item is no longer made by Apple the current production with LKQ computing power to what he lost was evaluated. RCV receipts will be processed in the next few days. (FD 000057)

**November 12, 2024:** Claim Note by Richard Bryan: RCV issued to customer.
(FD 000057)

Farmers issued a Settlement Notice letter –

- Recoverable depreciation in the amount of $1,546.91
- As we discussed on November 7, 2024 the damages to your dwelling were addressed on the dwelling repair estimate provided with the settlement letter issued October 29, 2024. To enable review of a dwelling supplement please forward a copy of an estimate from an electrical contractor once the inspection outlined on the dwelling payment has been completed.

Farmers Direct Property and Casualty
Contents Inventory

Farmers Direct Property and Casualty Ins. Company
Estimate: JULIO_RAVADA21
Estimator: Richard Bryan
Pending Payment: $1,546.91
(FD001084 – 001090)

Farmers wrote to Julio Ravada:

- We received your request to recover the deprecation for your theft loss and reviewed the documents you submitted.
- A payment for your recoverable depreciation in the amount of $1,546.91 will be issued . . . . I've attached a copy of the estimate on which these payments are based.
- If you intend to recover withheld depreciation you must submit a copy of your invoices or receipts within 365 days . . . or by April 27, 2025 to make further claim.
- As we discussed on November 7, 2024 the damages to your dwelling were addressed on the dwelling repair estimate provided with the settlement letter issued October 29, 2024. To enable review of a dwelling supplement please forward a copy of an estimate from an electrical contractor once the inspection outlined on the dwelling payment has been completed.

(FD001082, 001083)

A Claim Payment was issued in the amount of **$1,546.91** representing recoverable depreciation.

**November 18, 2024:** Claim Note by Timothy Byrne: Reassigned claim as prior GA is no longer available. (FD 000058)

**November 19, 2024:** Claim Note by Richard Bryan: Customer left VM regarding docs submitted for RCV request. (FD 000058)

Claim Note by Michael Saskor: I reviewed the RCV receipts submitted by the customer. I was able to confirm the order submitted for the Dyson Vacuum purchased 11/12/24 for $819.36 was canceled. This was verified with Dyson chat which has been printed to file. I reviewed the apple air bud and ear cushion receipt. purchased November 1st 2024. The Airbud was delivered but the ear cushions for $150.77 were returned. This was verified online and printed to file. I reviewed the Brilliant panel order for $1056.83 purchased November 13. 2024. This order was canceled. Confirmation printed to file. (FD 000058)

Claim Note by Michael Saskor: I called the customer and left a VM explaining the reassignment and requested a call back. (FD 000058)

Claim Note by Michael Saskor: I called the customer on a recorded line and obtained permission to record the call. I reviewed the receipts submitted and confirmed the Apple receipt was RCV for the Airpod (He said the orange cushions were not part of the claim), the Dyson vacuum receipt was to replace the D15 vacuum, the Brilliant switch was to replace the home control system and the Sonus sound bar was to replace the soundbar. I asked if he received all the items on the receipt and he said he only received the airpod. I asked if anything was canceled or returned and he said he would need to check to see if his credit card was declined. He then said the Dyson vacuum, sound bar and switches were declined on his card and not sent. I thanked him for letting me know. I reviewed the 11K contractor estimate and he said to disregard as this was for a different claim. I asked him about the electrical panel and he explained the cover is bent, but the main issue is the main switch breaker. This was made by Cisco and is a fire hazard

so it needs to be replaced. He confirmed there was still power at the house but this was damaged. I told him we would need to get another electrician out to verify this. He said we did not pay him enough for the window repair and asked me to review this as he got a higher quote. He said his toilet and dishwasher did not work, and would send a plumber report for review. Advised I would send a cx link for him to upload as my direct email was not the best way to send information to us and he thanked me and we ended the call. (FD 000058, 000059)

**November 20, 2024:** Claim Note by Michael Saskor: I called Dyson customer service at 866-693-9766 and spoke to Ada regarding the canceled order #1651528779. I asked her if the order was canceled because the credit card did not go through or because the customer canceled. She reviewed and said the customer called in to cancel the order after it was placed. (FD 000059)

Claim Note by Michael Saskor: Peer Review: . . . redacted . . . (FD 000060)

Claim Note by Michael Saskor: Misrepresentation Denial Request: . . . redacted . . . (FD 000060, 000061)

**November 21, 2024:** Claim Note by Michael Saskor: The customer called and left me a voicemail after hours at 6:38pm PST. I called him back this morning and left a return message. (FD 000061)

Claim Note by Michael Saskor: I spoke to the customer and advised I had spoken with Dyson after our last conversation, and they informed me that he called to cancel the order after it was placed. I explained we were reviewing for misrepresentation and I would contact him after our review was completed. The customer had no questions and ended the call. (FD 000061)

Claim Note by Kimberly Reed: . . . redacted . . . (FD 000061)

Claim Note by Michael Saskor: customer called and said he sent me an email which supports the opposite of what we talked about earlier. I told him I would review and at this time we have approval to deny the claim for misrepresentation. I agreed to review his e-mail and would call him after review. (FD000061)

Claim Note by Michael Saskor: The customer emailed with a video recording of a call with Dyson, and an email from Dyson about the canceled order. He said he called Dyson and they would not give him a reason why the order was canceled and questioned if I called them due to privacy laws. He also sent a copy showing his Amazon order was canceled. I called Dyson back on a recorded line and spoke to agent Chahat. I announced who I was and again asked about order 1651528779. I spoke with her about this order and the agent confirmed the customer called to cancel the order after it was placed, and she was actually the one who he spoke with to cancel the order. She then said he has called several times since then asking why the order was canceled which she did not understand because he was the one who canceled it. (FD 000062)

Claim Note by Michael Saskor: called the customer and explained I called Dyson back and spoke to the representative who canceled his order. The customer questioned how I could do this as his call with Dyson shows they did not tell him a reason. He asked how I could get this information with privacy laws and be released to a 3rd party. I explained they released the information to me and I was clear who I was and why I was calling. I advised the claim was denied and we would send this information in writing. (FD 000062)

**November 22, 2024:** Farmers issued a Claim Outcome Letter

*"On November 22, 2024, Farmers issued a baseless denial."* (See FAC.)

Claim Note by Michael Saskor: E-mail/Recording Review: The customer sent me another recording of him calling Dyson after our last conversation and said that this explains his issue. In the call he asked the Dyson representative, and asked the Dyson representative about the order he purchased on November 12. The Dyson representative reviewed and confirmed that he called Dyson and requested to cancel the order on November 12. The customer denied to the Dyson representative that he called to cancel this order. They talk for a few minutes and the customer said there was another Dyson order he placed for a hair dryer, and this was the order he wanted to cancel, so there must have been a mistake. This does not resolve the concerns. The customer clearly contacted Dyson to cancel his vacuum order as noted by calls from GA to Dyson and to the call he himself forwarded. A vacuum and hair dryer are 2 completely different items, and the customer submitted the receipt to us the day after the cancellation on November 13. In addition, 2 other receipts were forwarded to us on cancelled orders and the customer appeared aware the orders did not go through on our initial call. (FD 000063)

**November 25, 2024:** Claim Note by Michael Saskor: Summary: . . . redacted . . .
(FD 000063)

**January 7, 2025:** Julio Ravada wrote to Bryce Spradling: Hi Bryce, Have you had a chance to read my detailed clear explanation that I sent on Friday to address your last e-mail?

Bryce Spradling replied: Julio, Mike will be reaching out to you today to discuss how we will consider moving forward with your claim based on the new information you have provided us.

Claim Note by Bryce Spalding: . . . redacted . . . (FD 000063, 000064)

Claim Note by Michael Saskor: I called and texted Collins Electric who was recommended by the BCO at 909-915-4440 requesting callback to see if they could provide a comparison estimate for the electrical damages the customer is claiming. (FD 000064)

Claim Note by Michael Saskor: I called and spoke to the customer to let him know we reopened his claim. I explained moving forward we would need to verify any RCV order was shipped, charged and delivered before processing the RCV request. I asked him to please forward the order # confirmation for the first panel order he sent, as what he sent on this did

not contain confirmation the order was shipped, and I would need the order # to do so and process the release of the 2nd panel RCV request. He said he would forward that to me. I also explained I was working on locating an electrician to do a comparable bid based on his electric bid he sent before the claim was denied. He said he understood and thanked me and we ended the call. (FD 000065)

Claim Note by Michael Saskor: I spoke to Deon at Collins Electric who will contact the customer to arrange inspection for the panel damages claimed. (FD000065)

Claim Note by Michael SasKor: Deon from Collins Electric called and said he inspected the electrical panel box and the only thing he saw was the handle for the main breaker was broken. He usually sees copper missing on vandalism claims and thought this was very odd. He said the panel box will need to be replaced due to this and will send a quote. (FD 000065)

Claim Note by Michael Saskor: Requesting authorization for $425 vendor payment for electrical inspection from vendor … to inspect panel damages. (FD 000065)

*"On January 7, 2025, Supervisor Bryce Spradling reopened the claim, stating Farmers would 'consider moving forward.'"* (See FAC)

**January 9, 2025:** Claim Note by Michael Saskor: I received an email from Brilliant Tech regarding the first RCV order the customer submitted in October for $1,055.24-Confirmation #URF1PK60J in which we paid RCV for 1 smart home panel. I received an email back from Anoop at Brilliant Tech saying that Julio did not want them to share information with us, and asked for my phone number. I replied to the email with my phone number and received a call from Anoop at Brilliant Tech from 1-855-650-0940. Anoop advised he did not want to put this in writing as the customer was "shady", but said the order I emailed him was canceled by Julio after he placed it. The order never shipped and he was refunded the charge. (FD 000066)

**January 10, 2025:** Claim Note by Michael Saskor: I called the customer to discuss his claim. The phone rang and went to vm. His mailbox was full so I could not leave a message. (FD 000066)

**January 13, 2025:** Claim Note by Michael Saskor: I called the customer to discuss his claim. The phone rang and went to vm. His mailbox was full so I could not leave a message. (FD 000066)

**January 14, 2025:** Claim Note by Michael Saskor: The customer replied to my email with the following: "Hello Michael I am sorry I haven't gotten back to you since I've been dealing with few properties I have in LA's current fire zone. I reached out to Brilliant to get the other order number and they shared that when I asked them to cancel my order of the two brilliant controllers they thought i was referring to both orders so they canceled both orders in error. I'd like to remind that the reason of my cancelation request was because you guys had made a mistake on paying depreciation incorrectly and when you provided the summary document it led me to believe that the controllers needed to be purchased so I proceeded to place the order

again. I did not write down the order number since they mentioned it had been canceled but this reminds that I have already provided that information to your company for this claim. Let me know how you'd like me to proceed. Also, this dilemma with the electrician: your company requested that I obtain an electrician's bid where he should mention the job is needed from this claim's event and that the panel needs to be changed due to my current one is considered a fire hazard. I provided this document on Nov 13 2024, today 62 days have passed, aren't we outside the timeframe?" I emailed Brilliant Tech back asking for a callback so I can verify the day the first order was canceled by the customer. (FD 000066, 000067)

**January 15, 2025:** Claim Note by Michael Saskor: I called the customer to discuss the claim. The call went to voicemail and I left a VM requesting callback. I also advised I would be responding to his email. GA is sending 7 day request for the Brilliant order # which would be available documentation from the customer as well as unredacted credit card records for the Visa card # ending in 3166 for October and November. This is being requested as the customer is now saying the first order from Brilliant was canceled by the company when he canceled the 2nd order which was on November 13. It is noted the customer materially misrepresented the 2nd Brilliant RCV request as he on a recorded statement said the 2nd order did not ship as his credit card declined, and he is now stating he knowingly canceled the order. (FD 000068)

**January 23, 2025:** Claim Note by Michael Saskor: . . . redacted . . . (FD 000068)

Claim Note by Michael Saskor: I called the customer and left a VM explaining the denial. (FD 000068)

*"On January 23, 2025, Farmers abruptly re-denied the claim for supposed '7-day non-compliance.'"* (See FAC)

**January 28, 2025:** Julio Ravada wrote to Farmers; Providing bank documents as requested . . . 18 pages. "Hi Mike, I am sorry it took me a while to respond. I did mention that I was dealing with addressing all my tenants needs . . . . I am using this letter to request a withdrawals of my consent for electronic communications with Farmers Insurance on all policy and claims related documents. This request comes as a result of my gender confirmation treatment new journey . . . . As far as this claim you had requested the 2 Brilliant receipts which I e-mailed to you on January 15, 2024. I am attaching here with my two bank statements for October and November 2024 as you requested. Looking forward to hearing from you. (FD003889, FD003890)

**February 03, 2025:** Claim Note by Michael Saskor: The customer faxed over his credit card records and stated he will only communicate through written physical documents and said he no longer wants email communication due to his stress and gender confirmation treatment. He stated he sent the 2 brilliant receipts on January 15 and is attaching his credit card statements. The statements were reviewed and do not support his claim as some of the dollar totals do not add up properly. The customer did not send the requested copy of the first Brillant order number that was requested. A written response will be sent and mailed to the customer …. (FD 000068)

**February 4, 2025:** Claim Note by Michael Saskor: Julio Ravada called to see if I received his fax. I told him that I did and responded in writing that we still did not receive the first Brilliant Order # requested. He said he sent it on January 15. I advised I did not receive that, and the last thing he sent was just an email on 1/14 saying why Brilliant canceled the order. He said he would resend. I explained we needed the email Brilliant sent after he received the order confirmation that he emailed us on 10/29. He said he would resend and we ended the call. (FD 000069)

**March 4, 2025:** Claim Note by Michael Saskor: . . . redacted . . . (FD 000069)

Claim Note by Michael Saskor: Additional file note from conversation: During the last call with the customer, I asked him if he still had access to his email account. The customer said he did not. After the call it is noted he emailed FCS Spradling and the document center an email from the same email address. In this email he also included a photocopied order number from Brilliant that was emailed to the customer on October 29, 2024. The customer also forwarded a document showing he emailed this my email on January 15, 2025. This email was not received by myself or the document center. This also supports the customer could forward the email from Brilliant to us which would allow us to view the order status online and confirm the date when the order was actually canceled. (FD 000070)

**March 10, 2025:** Claim Note by Amy Spawr-Bardley: . . . redacted . . . (FD 000070)

**March 19, 2025:** Bryce Spradling wrote: We acknowledge receipt of this e-mail. Until the information previously requested is provided no further consideration of your claim will be made. (FD003076)

**March 24, 2025:** Julio Ravada wrote to Bryce Spradling: Thank you for your response. I understand the importance of providing all necessary documentation to support my claim. However, as I mentioned in my previous email, the original email you are requesting was deleted when I canceled my Apple account, and it is unfortunately no longer available for forwarding.

- To address this, I had previously provided a PDF copy of the email on January 15, 2025, along with my bank statements, adhering to your instructions from a letter that stated, "we will need a copy of the Brilliant Order # that was emailed to you by the company after you placed the initial order on October 29, 2024" to verify the transaction. Since then, you have claimed that Brilliant provided information about my account, and I have demonstrated that this was not the case. This has happened before, and I believe you may be following the same pattern: you assert that a vendor gave you a statement, then use that to deny my claim with vague language. When I request evidence, you state that you are not required to provide it. It seems as though you are pressuring me to relinquish my privacy rights in order to support a vague argument based on an unfounded claim about Brilliant. As previously mentioned, I updated my privacy rights before this claim was filed. You are not permitted to make me change them. Furthermore, you presented a false statement from Brilliant, and I provided their

statement confirming that they did not supply any information to you. I have also submitted all the documents you need to verify this transaction.

- Regarding the request to waive my CCPA rights, I am exercising my right to maintain my privacy choices, which cannot be waived under coercion from any business.
- You cited a section of my policy about my obligation to allow an investigation. Please understand that while the policy outlines these obligations, it remains a contract and does not...
- Additionally, I would like to get clarification on the reason for the denial of my claim. The letter you provided is vague, mentioning policy violations but not specifying which clauses were allegedly breached.

I am eager to resolve this matter and am committed to providing any additional information or documents that might assist in this process. Thank you for your understanding and assistance. (FD003075, 3076)

**March 27, 2025:** Julio Ravada wrote to Bryce Spradling: Hi Bryce, I'd like to clarify the timeline regarding our recent communications to ensure there are no misunderstandings:

- 1. **January 15, 2025**: Michael Saskor requested the Brilliant Order number through two formats: an email asking for the order number received from the company on October 29, 2024, and a letter requesting a copy of the Brilliant Order with the order number. At no point was I asked to forward the original email; rather, you requested a copy.
- 2. **Same Day**: I emailed a PDF attachment of the email as per our previous arrangements, which aligned with how I've been providing other requested documents.
- 3. **February 7, 2025**: During a phone discussion, Mike mentioned not receiving the documents. I then faxed a copy of the email, which was in line with your original request, and Mike had no objections.
- 4. **March 6, 2025**: For the first time, you indicated that verification of the Brilliant Order 165626 required forwarding the actual email, not a PDF.
- 5. **March 18, 2025**: I detailed via email that I had set up a new phone and email and downgraded my iCloud subscription on January 27, 2025, which meant effective my next billing cycle date of February 20 2025 my iCloud plan was going to change to their free plan going from 2000GB of storage to 5GB. This kept my very most recent emails and for sure anything from 2024 back to 2008 was deleted, hence, the Brilliant email was no longer accessible.
- In response to your recent email: I indeed had access to the email on January 15, 2025, and provided the information requested. However, following February 20, 2025, the original email was deleted due to the downgrade of my iCloud subscription, as explained.

On a personal note, I want to express the importance of considering the impact our actions have on others' lives. I recently faced a significant health diagnosis that has profoundly affected me. The stereotype I was taught growing up only adds another layer to my current reality. As I navigate this new chapter, I hope for dignity and understanding in all matters. Thank you for

the opportunity to share this with you. I trust we can resolve this matter with respect to everyone's situation. (FD003072, 003073)

**March 28, 2025:** Bryce Spradling wrote: Julio, Throughout the claims process you were requested to provide us with any and all support for your claim. Upon requesting release of your depreciation and our subsequent investigation it was determined the information you provided was not sufficient to release depreciation. To date you have failed to provide us with the necessary documentation to support your claim. Until such time that you provide us with this information your claim will remain closed. We have communicated to you on multiple occasions what is needed to continue with your claim. Your failure to provide us with the needed information bars us for continuing with your claim. The fact remains that at the time of the replacement you had access to the requested information and did not provide it. You cancellation/down grade of your Icould account during the course of the claim is your responsibility and does not render us responsible for paying your claim due to your lack of support. If you are unable to provided us with the requested information your claim will not have further consideration. Future emails on this subject will be responded to generically with the facts that the requested information has failed to have been provided to date and no further consideration will be made on your claim until such time that the requested information is provided. (FD 003071)

**March 31, 2025:** Julio Ravada wrote to Bryce Spradling: Hi Bryce,
Thank you for your response. I'd like to address several points to ensure clarity and accuracy in our communication.

- Firstly, regarding your statement that I have failed to provide sufficient information for the release of depreciation, I must refer to the correspondence I received from you on November 12, 2024. It clearly indicated that the documentation I submitted from Brilliant was sufficient, and I received the depreciation funds shortly thereafter. I have attached a screenshot for reference.
- It is incorrect to state that I failed to provide the necessary documentation. I have consistently submitted all requested documents, as explained in my previous emails. Currently, I am still unclear about the exact reason for my claim's denial. Your communication mentions that the claim is closed, while the online portal shows it as "under review." I would greatly appreciate clear and consistent information in this regard.
- Regarding the claim about the iCloud account, while it is true that I had access at one time, the requests I satisfied earlier were acknowledged as complete. I decided to downgrade my iCloud subscription due to personal reasons, including my gender transition experience. My actions related to my iCloud account were for personal circumstances, and I find any suggestion otherwise concerning unnecessary and unfounded.
- I wish to clarify that I have met all the requested documentation requirements. The information I have provided and that you previously accepted should be sufficient; forcing me to waive California Consumer Privacy Act (CCPA) rights raises significant concerns.

- Additionally, according to my policy regarding last year's term, I am entitled to "Extended Replacement Cost Coverage," which stipulates payments without depreciation deductions. I believe my policy should be honored as stated unless clarified otherwise. Please see below:
- Finally, concerning the handling of my communications, it's critical to ensure that all aspects of this case—including prior acceptance, denial, and subsequent resolutions—are thoroughly reviewed before categorizing them as resolved or unresolved without appropriate basis. I request your comprehensive clarification and resolution of these discrepancies as it appears my claim processing has occurred under misunderstandings and inconsistencies not attributed to my actions or omissions.

Thank you for your attention and future aid towards resolving this matter. (FD003069, 003070)

**April 4, 2025:** Bryce Spradling wrote: Julio, This is in response to the below email and in addition to the email sent on 4.1.2025 and 4.2.2205. As previously explained, the fact is that to date, the requested information has failed to have been provided no further consideration will be made on your claim until such time that the requested information is provided. Your claim will remain closed until such time that you provide the requested information for further consideration of your claim. To recover the withheld depreciation, you must provide accurate and verifiably support that the items have been replaced. At this time, you have not provided this information. With regards to replacement cost coverage please refer to your policy documents HP4520 0113 on the bottom of page 2 and the top of page 3 it outlines that replacement cost on contents had depreciation applied at the time of settlement unless the items have already been replaced. As outlined in your policy you have 180 days from the actual cash value payment to recover any withheld depreciation. Once this time has expired no consideration will be made for the information that remains outstanding. The document you cited refers to your dwelling, not contents please review your policy in its totality. (FD003067)

**April 6, 2025:** Julio Ravada wrote to Bryce Spradling: Bryce, I'm a bit confused by your recent instructions. You mentioned that "to recover the withheld depreciation, you must provide accurate and verifiable support that the items have been replaced. At this time you have not provided this information." To clarify, I'm including a screenshot and a PDF file containing the same information, in case you have trouble opening either format. These documents demonstrate that the withheld depreciation has already been recovered. Could you let me know why I'm being asked to follow instructions for something that has already been completed? (FD003066)

**April 8, 2025:** Claim Note by Michael Roush: . . . redacted . . . (FD 000070)

**April 11, 2025:** Bryce Spradling wrote: Julio, This email is in response to the below email, in addition to the emails sent on 4.7.2025 and 4.9.2025. As has been explained to you, the information you have provided thus far will not suffice based on discrepancies uncovered on prior attempts to recover depreciation. You will need to forward the original email for the invoice previously outlined to request our consideration. Failure to provide sufficient support as requested will result in our inability to release any further depreciation. (FD003065)

**April 15, 2025:** Julia Ravada wrote to Bryce Spradling: Bryce, I am attaching the following images which I am explaining next.

- **Pic 1**: From March 6th 2025, this was the first time Farmers requested the actual email from Brilliant. Brilliant's depreciation reimbursement was requested in November 2024, investigated by your adjuster, and paid during the same month. In December 2024, after initially denying my claim, you had the opportunity to investigate further, and I provided all necessary information, leading to the claim's status being overturned. Furthermore, in this email, you mentioned needing the actual email from Brilliant adding that this had already been thoroughly explained by your adjuster.
- **Pic 2**: This is the actual request from your adjuster, which you referenced in your March 6, 2025, email. This shows that your previous statement was inaccurate, as the detailed explanation from your adjuster was merely a request for a copy of the Brilliant order number that had been emailed to me, not the actual email.
- **Pic 3**: Here is the email you sent on March 13th, confirming that your company received my second fax on March 4th, 2025. You stated that this fax did not include the requested information, indicating that you read the fax.
- **Pic 4**: This is from the second fax, where I explained that I had sent another fax on January 28th to inform you about my gender confirmation process.
- **Pic 5**: This is the first fax, which you also confirmed receiving. In it, I communicated about my gender confirmation and provided my withdrawal of consent for all electronic communications.

This clearly demonstrates that on March 6th, you were the first to request the actual email from Brilliant. Before sending this request, you would have received my second fax, attached to this claim, two days prior, giving you ample time to review both faxes. However, it appears you: 1) Ignored my request to address me as Luna, as indicated in Pic 4; and 2) Requested I forward an actual email despite knowing I had withdrawn my consent for electronic communications and had switched to fax because I no longer had access to emails. I do not possess the email and you have detailed explanation as to what happened to the email, you had months to ask for it but instead you requested a copy which was provided and you used it in order to pay the requested depreciation (FD 003064, 003065)

**May 9, 2025:** Claim Note by Michael Saskor: Attorney Client Privileged: . . . redacted . . . (FD 000070)

**May 12, 2025:** Claim Note by Michael Saskor: New Customer Demand: - The customer has requesting additional dwelling and contents :
1. Wall-Hung Toilet —Non-Compliant and Structurally Integrated – The damaged toilet is a wall-hung Tece unit that flushes at 1.6 GPF, exceeding California's 1.28 GPF legal limit under CalGreen and CEC codes. - The carrier frame is bolted into the concretes lab, not recessed into the wall, meaning any removal or replacement requires breaking the floor itself. - My home has

continuous epoxy flooring throughout. Breaking any portion causes irreversible cosmetic damage, requiring re-epoxying of approx. 2,600 sq. ft.
2. Kitchen Island Cut Pipe, Structural Damage, and Appliance Loss - During the break-in, the pipe inside my concrete-block kitchen island was deliberately cut, leading to long-term water damage. – The island's internal structure and epoxy countertop have been compromised and must be rebuilt. - Additionally, the dishwasher was damaged, and plumbing must be replaced or rerouted to bring it back to code and functionality.
3. Main Electrical Panel —Zinsco Panel Requires Full Replacement - I provided a quote from a licensed electrician confirming that my main panel — a vandalized Zinsco unit — is unsafe and must be completely replaced. - Zinsco panels are a known fire hazard, discontinued due to systemic design failure. They are not repairable or code-compliant. - Per the estimate already submitted, full replacement isthe only safe and legal option.
4. Policy Terms—Code Upgrade Coverage - My Farmers policy includes Ordinance or Law coverage, which requires all repaired components to be brought up to current code. - I am therefore requesting full coverage for:
• A code-compliant toilet and in-wall frame system
• Epoxy floor resurfacing due to demolition
• Full kitchen island rebuild and appliance replacement
• Main panel replacement to bring electrical service to safety standards 5.
Art Appraisal Adjustment —Undervalued Loss: - I was compensated $5,000 for a painting by Bercier, the amount I originally paid. - On January 8, 2025, I submitted a certified appraisal indicating the piece's market value is $8,200. - As this is a fine art piece with appreciating value, I request review for additional reimbursement of $3,200.
6. Bathroom Window —Forced Entry and Structural Repair - During the robbery, the intruders forced entry through a bathroom window, breaking the exterior frame and forcing the window open from outside. - Since then, the window has been unable to lock, leaving the home vulnerable to repeated intrusion. - Replacement will require: • Stucco repair on the exterior wall, • Drywall replacement on the interior bathroom wall, • Full repainting of all interior bathroom walls. - As the same wall is affected by the electrical panel replacement, full exterior painting should be covered for both repairs to maintain visual consistency. I will be requesting a reinspection of the premises to address the issues. (FD 000070, 000071, 000072)

**May 14, 2025:** Supplemental Settlement: . . . redacted . . . (FD 000072, 000073)

Claim Note by Michael Saskor: Field Re-Inspection Need: . . . redacted . . . (FD 000073, 000074)

Farmers wrote to Julio Ravada: Subject: Settlement Notice: . . . We'll issue your claim payment through the method you select to receive your funds. Please review the personal property replacement estimate which shows the total amount to replace your Personal Property less depreciation and deductible. Your payment is in the amount of $3,496.00. Please review the estimate of repairs which shows the total amount to repair the damage to your Dwelling . . . Your payment is in the amount of $3,910.20. There is an additional $224.26 in depreciation you may be able to recover if you replace the electrical panel . . . Please be advised we will be requesting a reinspection . . . to review the additional damages claimed to your bathroom,

countertop and stucco, as well as the code upgrades requested. This is still under review at this time. The investigation remains ongoing . . . (FD001121)

ATTACHMENT: Additional Information . . . . (FD001123)

Farmers Direct Property & Casualty Ins. Company
Estimate: JULIO1_RAVADA2
Summary for Dwelling
Replacement Cost Value: $8,069.32
Less Depreciation: <254.11>
Actual Cash Value: $7,815.212
Less Prior Payment: <3,905.01>
Net Claim Remaining: $3,910.20
(FD001125 – 001133)

Farmers Direct Property and Casualty Insurance Company
Estimate: RAVADACONTENTS
Summary for Personal Property
Replacement Cost Value: $21,845.10
Less Depreciation: <3,360.90>
Actual Cash Value: $18,484.20
Less Deductible: <2,500.00>
Less Prior Payments: <12,488.20
Net Claim Remaining: $3,496.00
(FD001134 – 001141)

A claim payment was issued in the amount of **$7,406.20** (Coverage A – Dwelling: $3,910.20; Coverage C – Personal Property: $3,496.00)

*"On May 14, 2025, after Plaintiff re-submitted a licensed electrician's invoice and a $8,200 art appraisal, Spradling responded only, 'Mike will follow up with you today' and no action or payment followed."* (See FAC)

**May 15, 2025:** Claim Note by Michael Saskor: I spoke with CR Donnie Means who will be reinspecting the premises. He was the adjuster who inspected the home before, and will bring a contractor with him to assist in reviewing the damaged claimed. (FD 000074)

Claim Note by Donald Means: Phoned NI, Julio Ravada, to attempt scheduling the reinspection. I asked if Monday 5/19 1-130 would work and Julio advised that Monday was no good and asked for an appt on Tuesday 5/20. I offered the same time frame 1-130 on Tuesday 5/20 and Julio advised that he will need to get back to me to confirm that will work for him. He asked if he could send an email or text to confirm. I let him know to please send an email to the claim file (FD 000075)

**May 19, 2025:** Claim Note by Donald Means: Phoned NI to attempt confirming an appointment for reinspection. No answer, left message. (FD 000075)

Claim Note by Michael Saskor: I emailed the customer and requested he contact CR Means to confirm a time for the reinspection so we may move the claim forward. (FD 000075)

*"On May 19, 2025, Plaintiff submitted a licensed contractor's bid documentation code/finish work reasonably flowing from covered replacements:*

- *Stucco/Paint: $18,000*
- *Code water line relocation $3,000*
- *Toilet wall/anchoring & bath restoration $4,400 + $16,000*
- *Kitchen-island demo/rebuild $9,000*
- *Whole home epoxy $46,000 - $52,000*
- *Total: $87,400 - $93,400*

*Farmers refused to approve or pay any portion …."* (See FAC)

**May 23, 2025:** Claim Note by Michael Saskor: Discussed re-inspection with CR Means. Estimate will be updated for stucco and painting. A plumber report will be needed to confirm any damages to the toilet and dishwasher/countertop (FD 000075)

The property was re-inspected by Senior Field Claim Representative Donald Means. Photographs were taken.

**May 28, 2025:** Claim Note by Michael Saskor: Additional payment made for dwelling due to stucco repair and drywall and painting which would be needed if the customer replaces the bathroom window. No damages were seen to the toilet or dishwasher and plumber or contractor report would be needed to review. Partial denial issued and explained.
Replacement Cost Value $9,471.77
Less Depreciation (275.02)
Actual Cash Value
$9,196.75
Less Prior Payment(s) (7,815.21)
Net Claim Remaining $1,381.54
Total Recoverable Depreciation 275.02
Net Claim Remaining if Depreciation is Recovered $1,656.56
(FD 000075)

Farmers issued a Claim Outcome Letter to Julia Ravada: . . . Your payment is in the amount of $1,381.54 . . . . You reported damage to your bathroom toilet and dishwasher. We were unable to see any damages to these items during our initial inspection or reinspection of the home. Unfortunately there is no coverage for this portion of your claim based on the facts known to us at the present time . . . . (FD001142 – 001146)

Farmers Direct Property & Casualty Ins. Co.
Estimate: JULIO1_RAVADA2
Replacement Cost Value; $9,471.77
Less Depreciation: <275.02>
Actual Cash Value: $9,196.75
Less Prior Payment: <7,815.21>
Net Claim Remaining: $1,381.53
(FD001148 – 001157)

A supplemental claim payment was issued in the amount of **$1,381.43** under Coverage A – Dwelling.

**May 30, 2025:** Claim Note by Michael Roush: . . . redacted . . . (FD 000076)

**June 9, 2025:** Claim Note by Albert Pimentel: Property damage review/Letter sent to NI: . . . redacted . . . (FD 000077)

**June 10, 2025:** *"On June 10, 2025, Albert Pimentel ordered Plaintiff to route communications through a generic inbox, obstructing transparency. Days later, he directed Plaintiff to treat ongoing dishwasher/toilet water intrusion as a 'new claim' . . . ."*

**June 16, 2025:** Claim Note by Albert Pimentel: Claim update/Overall property coverage determination on claim: . . . redacted . . . (FD000077)

Farmers wrote to the Insured: This letter is in response to the email sent to us today regarding your claim. Once again, we apologize for not addressing you by the correct pronoun and do fully respect your desired pronoun. Moving forward, we will address you correctly.

We sent you a response to your email on June 16, 2025 per my personal email address. As previously mentioned to you, we do not prefer to send emails through our personal as these emails may be lost with the influx of emails we all receive as Claims Representatives and Supervisors. This is the reason we prefer and request to send via the email address in the header of this letter. Nevertheless, I ensured to respond quickly and accordingly to your email.

Our investigation and review of your claim found that you have submitted a repair estimate at approximately $90,000 for necessary repairs to your home. We have reviewed the said estimate, and do not agree that the estimate is either fair or reasonable. The estimate includes remodeling costs, upgrades to your home, plumbing related repairs, and is not broken down line by line so we know what pricing your contractor is using. Your policy does not cover upgrades, remodeling of the home or unnecessary costs outlined by a contractor. The original estimate sent to you was sent in accordance with your policy and covered the reasonable repairs necessary to bring your home to a pre-loss condition at that time. In your previous email discussion with Michael, you mention that damages continued due to ongoing issues and

concerns, including a dishwasher that leaks intermittently. You have also mentioned a toilette that has continued to be a concern and are requesting Farmers pay to replace the toilette.

You sent Michael an email on June 5, 2025 regarding "another water incident" the night before (June 4, 2025), originating from the same area. You also mention your dishwasher has had ongoing issues in regards to plumbing that have exacerbated your original covered property damages. While the cause in your case was vandalism, you mention a new and intermittent issue with the leaking dishwasher. The original concern with vandals causing plumbing issues was covered and a fair and reasonable estimate was written at that time. You mention this has never been repaired and continues to leak intermittently. You as a homeowner, have a duty to protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures. If this was not done, and exacerbated damages in your home, our determination is that you have failed to protect your property from further damage.

You also mention the toilette was never resolved despite the cleaning estimate costs that were provided to you and mention that it still overflows and does not work properly. We once again question why this was not brought to the Adjuster's attention before and just now being mentioned. Your policy does mention the necessity to notify us immediately of issues. We will not agree to any further payments regarding property damages on this claim regarding any ongoing leaks, as you mention, they are intermittent, and have never been mitigated or repaired in accordance with the duties stated in your policy conditions.

However, I have mentioned in two separate emails, that if you had a water incident occur on or around June 4, 2025, this would require you to file a new claim. Our Field Property Department can then review, investigate and come to a coverage decision regarding this incident. I urge you to file a new claim as soon as possible so no further damage continues to occur at your home.

This is our position on the matter and this claim. Any further requests for recourse should be sought outside of Farmers as this would be our final coverage determination regarding the ongoing property damages you are claiming on this claim and at this time.

We encourage you to review the terms of your Farmers Homeowners Insurance Policy, as endorsed. They form the basis for our decision. We have attached a “Coverage Outcome – Policy Provisions” document that refers you to the applicable sections of the policy.

We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver. Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied.

We’ve completed the adjustment of your loss and we are closing your claim. Closing your claim does not affect processing payments for recoverable depreciation, or any other covered amounts still outstanding. Closing your claim does not prevent you from providing us with additional information, including supplemental claims and requests for recoverable

depreciation, within the time limits stated in your policy. We will inform you in writing if any such additional information results in reopening your claim.

If you believe your claim has been wrongfully rejected or denied, in whole or in part, please contact us for further clarification. The state of California requires that we provide you with the following notice: You may also have the matter reviewed by writing to the California Department of Insurance, Consumer Services and Market Conduct Branch, Claims Services Bureau, 300 South Spring Street, South Tower, Los Angeles, CA 90013 or by calling 1-800-927-4357 or 1-213-897-8921.

We encourage you to visit **www.farmers.com** to learn more about our self-service options available to you, including the ability to view your claim status, upload documents and photos and find local service providers.

If you have any questions, or additional information you think may affect your coverage, please contact me. Thank you. (FD001161 – 001163)

ATTACHMENT: Coverage Outcome – Policy Provisions
CAUSES OF PROPERTY LOSS
SECTION – LOSSES WE COVER (SPECIAL PERILS ….
LOSS DEDUCTIBLE CLAUSE ….
COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES
COVERAGE C – PERSONAL PROPERTY ….
SECTION I – BROAD NAMED PERILS ….
SECTION I – LOSSES WE DO NOT COVER . . . .
PROPERTY CONDITIONS – SECTION I – CONDITIONS ….
(FD001164 – 001168)

**June 17, 2025:** Claim Note by Albert Pimentel: E-mail/Letter to NI reiterating denial position: . . . redacted . . . (FD 000078)

Farmers wrote to The Insured: This letter is in reference to the e-mail sent on June 17, 2025. Please refer to the letter sent to you on June 16, 2025 with our position regarding the matter. The reasons for denial of the damages being claimed for your home are addressed in the said letter. We continue to refer you to this letter. Once again, the position has been determined. Any further recourse will need to be sought outside of Farmers Insurance. We encourage you to visit **www.farmers.com** to learn more about our self-service options available to you, including the ability to view your claim status, upload documents and photos and find local service providers. Thank you. (FD001160)

**June 18, 2025:** Claim Note by Albert Pimentel: E-mail from NI/Letter sent: . . . redacted . . . (FD 000078)

Farmers wrote to the Insured: This letter is in reference and response to your letter dated June 18, 2025. Once again, we refer you to the coverage determination letter sent on June 17, 2025. We will respectfully decline your requests to reopen your claim and review your contractor's estimate sent. We have already reviewed the estimate and consider the estimate unreasonable and unwarranted to repair your home. We did provide a reasonable and justified amount to repair your home in the original settlement for your covered home repairs. If concerns continued, we remind you that you have a duty as a customer to protect your property. Therefore, we will uphold the position of no further coverage on your claim. We have attached the denial letter once again for your reference that goes into detail regarding the coverage decision. Any further requests for escalation will need to be sought outside of Farmer's.
We encourage you to visit **www.farmers.com** to learn more about our self-service options available to you, including the ability to view your claim status, upload documents and photos and find local service providers. (FD 001196)

**June 23, 2025:** Claim Note by Albert Pimentel: Denial Letter Sent: . . . redacted . . . (FD 000078)

Farmers wrote to the Insured: This letter is in reference to your email sent on June 20, 2025 responding to the previous coverage determination letters sent to you.

Regarding the dishwasher concern. You continue to state the issue has been ongoing. Once again, we remind you that you have a duty to protect your home. An ongoing leak that is due to you not protecting your home and not repairing this issue correctly is not covered under your policy. You clearly mentioned a new incident that occurred in previous emails to your Claims Representative. Furthermore, you sent us moisture readings to show that a "new incident" as you termed it, had occurred the night before that said email. We would consider this to be a new incident that must be investigated by a Field Property adjuster. We will respectfully decline any requests to review this ongoing concern under this claim, as your policy does not cover for failure to protect your home as well as neglect on your part. However, we continue to advise that you did mention in your previous emails, what sounds like a new incident and therefore, a new claim should be filed.

Regarding the toilet concern. We have previously responded to this and have denied the request for replacement of the toilet. We have attached the previous letter sent to you on June 18, 2025 that included a previous coverage determination and clearly provides our position on this matter. The Claims Representative has advised that he had requested you send a plumbing invoice previously that clearly states why the toilet needs to be replaced. I again remind that you have a duty to protect your home. If this issue has been ongoing back to 2024, your policy states you have a duty to protect your home and you have not done so. If you had replaced it at that time, based on a plumber determination and expert report stating it needs replacement, by all means we can review the receipt for coverage, but at this time, there is no coverage for this item.

Lastly, the irrigation pipes being reallocated is considered to be a building or code upgrade. Your policy has a section of losses we ***do not*** cover. It is clearly stated in your policy that Ordinance or

Law, meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy is not covered. Furthermore, there is no section that specifically provides this coverage for vandalism. There is no coverage for the reallocation of irrigation and this would be your responsibility as a homeowner. In regards to painting being underpaid, we would need a full breakdown of costs and why the estimate provided to you is not sufficient. From our review, we have paid a reasonable and fair amount on your estimate and do not agree to provide any further funds at this time. Unfortunately, there is no coverage for your claim based on the information known at this time.

We encourage you to review the terms of your Farmers Homeowners Insurance Policy, as endorsed. They form the basis for our decision. We have attached a "Coverage Outcome – Policy Provisions" document that refers you to the applicable sections of the policy.

We reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver. Even though only parts of the policy may be mentioned or quoted in this letter, additional portions if found to be relevant will be applied.

We've completed the adjustment of your loss and we are closing your claim. Closing your claim does not affect processing payments for recoverable depreciation, or any other covered amounts still outstanding. Closing your claim does not prevent you from providing us with additional information, including supplemental claims and requests for recoverable depreciation, within the time limits stated in your policy. We will inform you in writing if any such additional information results in reopening your claim.

If you believe your claim has been wrongfully rejected or denied, in whole or in part, please contact us for further clarification. The state of California requires that we provide you with the following notice: You may also have the matter reviewed by writing to the California Department of Insurance, Consumer Services and Market Conduct Branch, Claims Services Bureau, 300 South Spring Street, South Tower, Los Angeles, CA 90013 or by calling 1-800-927-4357 or 1-213-897-8921.

We encourage you to visit **www.farmers.com** to learn more about our self-service options available to you, including the ability to view your claim status, upload documents and photos and find local service providers. If you have any questions, or additional information you think may affect your coverage, please contact me. Thank you. (FD001189, 001190)

ATTACHMENT: COVERAGE OUTCOME – POLICY PROVISIONS
INSURANCE AGREEMENT AND DECLARATIONS ….
(FD001191 – 001195)

**June 25, 2025:** Claim Note by Albert Pimentel: Letter sent by NI and responses: . . . redacted . . . (FD 000078)

**June 27, 2025:** Claim Note by Albert Pimentel: Outside counsel: . . . redacted . . . (FD 000078, 000079)

**July 8, 2025:** Claim Note by Michael Saskor: Apple Contact: . . . redacted . . . (FD 000079)

Farmers wrote to Luna Ravada: This letter is in response to your July 7, 2025, correspondence:

- Your request to recover deprecation on your replaced Apple laptop is unable to be processed as your timeline to recover depreciation ended on April 27, 2025, which was 180 days from our first payment. The laptop was purchased after this date on June 25, 2025.
- We processed the depreciation recovery for the Apple Air Pods and payment was issued today.
- We reviewed the documentation for your Apple watch. We contacted Apple who advised the Ceramic body is no longer manufactured. They reviewed your 2019 Apple watch and advised the Series 10 is the most like, kind quality available …. We processed the depreciation recovery for the Apple Watch and payment was issued today.
- Your letter mentioned depreciation that was paid out in 2024 was reapplied in 2025. This information is incorrect . . . .

A payment for your recoverable depreciation in the amount of $232.93 will be issued . . . . I've attached a copy of the estimate on which these payments are based . . . . (FD001248, 001249)

Farmers Direct Property and Casualty Ins. Company
Estimate: JULIO_RAVADA5
Pending Payment: $232.93
(FD001251 – 001258)

A claim payment was issued in the amount of **$232.93** representing recoverable depreciation.

**July 10, 2025:** Claim Note by Michael Saskor: Response to Customer: The customers July 8 demand has been responded to. An additional $26.25 was paid in RCV for the submitted receipts as an incorrect RCV worksheet was used in the last RCV settlement due to the several Xactcontents estimates that are in the system. I apologized and explained the error in my response. I also noted that the depreciation timeline to recover has expired and we will not consider any further receipts that have not been previously submitted. (FD 000080)

Farmers wrote to Julia Ravada: This letter is in response to your July 8, 2025 correspondence:

- The timeline of 180 days to submit for recoverable depreciation is correct as outlined in your policy . . . . No further receipts that have not been previously submitted will be considered.
- Your Apple watch was replaced with a like kind quality item ….
- . . . we erroneously used an incurred recoverable depreciation report …. An additional payment of $26.25 was made to correct the error . . . .

- Please be advised we have different worksheets for our initial contents evaluation and for recovering depreciation . . . .
- You were paid a total of $4,825.74 for your electrical panel . . . .
- Copies of all of your settlements and our payments attached ….
- Your snow globe quantity was correct on our report. If you have receipts/invoices that support the value of $300 each please forward to us ….
- Your No Face figurine was priced based on the description and pricing that was available . . . .

(FD001259 – 001261)

Farmers Direct Property and Casualty Ins. Co.
Estimate: RAVADACONTENTS
Pending Payment: $259.18
(FD001262 – 001268)

A claim payment was issued in the amount of **$26.25** representing recoverable depreciation per a correction issued per Settlement Notice Letter.

**July 29, 2025:** Claim Note by Albert Pimentell: Claim Update: . . . redacted . . . (FD 000080)

**July 30, 2025:** Claim Note by Albert Pimentel: Update: . . . redacted . . . (FD 000080)

**July 31, 2025:** Claim Note by Albert Pimentel: Denial Letter: . . . redacted . . . (FD 000080)

**September 26, 2025:** Claim Note by Katarzyna Harwatek: . . . redacted . . . (FD 000081)

Claim Note by Toni Wagner: . . . redacted . . . (FD 000081)

Claim Note by Toni Wagner: Closure Property Crime Letter: . . . redacted . . . (FD 000081)

**October 17, 2025:** Exhibits to First Amendment

First Amended Complaint for Damages

- Intruders forced and broke the bathroom window frame, damaging stucco and sash . . . .
- The window and surrounding finishes were left compromised and could not be secured rendering parts of the home unsafe and uninhabitable; interior wet areas could not be safely occupied;
- Forced to front lodging, meals and transportation and to scramble for alternative housing ….
- Farmers paid not ALE, forcing the Insured to advance lodging, meal and transportation differentials ….

The above opinions are being rendered to a reasonable degree of professional certainty based upon my 50+ years of experience in connection with the processing of insurance claims, both as an employee of State Farm Fire & Casualty Company and as an independent claim consultant.

Prepared and Submitted By:

Paul Hamilton

Paul Hamilton
Property & Casualty Claim Consultant

Attachments:

(1) Resume
(2) Deposition Listing
(3) Trial Listing

# ATTACHMENT 1

**Paul Hamilton**
**Property & Casualty Claim Consultant**
**122 Calistoga Road, #314**
**Santa Rosa, CA 95409**
**(707) 545-4109**
**phamil64@icloud.com**

**PROFESSIONAL OBJECTIVE:**

Competent, experienced, objective analysis and evaluation of: First Party property damage claims; Third Party liability claims; fair and reasonable claims handling standards; industry custom and practice; insurance claims handling statutes and regulations; duties of an insured and/or the insured's representative during the presentation of a claim – on behalf of both policyholders and insurance companies.

**EDUCATION:**

Santa Rosa Junior College
Santa Rosa, CA
Associate in Arts Degree
Major: Business

Saint Mary's College
Moraga, CA
Bachelor of Arts Degree
Major: Business Management

**EMPLOYMENT:**

From 1966-1969, I was employed by State Farm Mutual Insurance Company as an Underwriter. It was my responsibility to evaluate the acceptability of new applications for insurance, and to review and evaluate the driving records and loss frequency of existing policyholders in connection with policy renewals. As part of my training as an Underwriter, I attended a three-week auto claims school.

From 1969-1970, I was employed by State Farm Fire & Casualty Company as an In-Office Claims Representative. As an In-Office Claims Representative, I was trained in the processing of both first and third party claims and became familiar with State Farm's internal policies and procedures for the processing of claims.

From 1970-1981, I was employed by State Farm Fire & Casualty Company as a Field Claims Representative. My responsibilities included the investigation, evaluation and settlement of both first party property damage claims and third party liability claims under both personal and commercial lines insurance policies. During this period of time, I also acted as a Special Disaster Supervisor, traveling throughout the United States to adjust and supervise claims arising from various natural disasters, including earthquake, hurricane, tornado, windstorm and hail. My training included, among other things, a three-week property claim school; a three-week liability claim school; a three-week school dealing with building damage estimating; and a one-week school dealing with the adjustment of suspected arson and fraud claims.

From 1981-1987, I was employed by State Farm Fire & Casualty Company as a Claim Superintendent. As a Claim Superintendent, it was my responsibility to implement the policies and procedures that had been adopted by State Farm Fire & Casualty Company for the processing of claims. It was also my responsibility to monitor the conduct of claims representatives to assure their compliance with any prevailing insurance claim statutes or regulations. My areas of expertise included first party property damage claims and third party liability claims, under both personal and commercial lines insurance policies. As a Claims Superintendent, I was also responsible for monitoring and handling liability claims in connection with umbrella policies. Additional training as a Claims Superintendent included, among other things, an advanced school dealing with precision claims handling in connection with suspected arson and fraud claims.

From 1987-1990, I was employed by State Farm Fire & Casualty Company as a Divisional Claim Superintendent. As a Divisional Claim Superintendent, I was responsible for managing a division of Claim Superintendents and Claim Representatives. My managerial span of control was approximately 150 employees. As both a Claims Superintendent as well as a Divisional Claims Superintendent, I was responsible for overseeing a specialty unit dealing with "concurrent cause of loss" claims in Northern California. This unit was developed to deal with the uncertainty in the law dealing with the causation standard to be applied in connection with first party property damage claims. As a Divisional Claim Superintendent I testified frequently as State Farm's person most knowledgeable in connection with the standards that had been adopted and implemented for the processing of claims, and worked closely with defense counsel to monitor and direct claims that were in litigation.

From approximately 1992 – 1996, I was employed by Douglas & Malmgren, an independent adjusting firm. While employed with Douglas & Malmgren I adjusted both first party property damage claims and third party liability claims under commercial lines insurance policies.

From approximately 1996 - 1999, I was a founding partner in Insurance Dispute Resolution. This was a company formed with the intent of offering the industry an efficient, reasonably priced mechanism for resolving all insurance-related disputes.

From 1990 through the present I have been continuously self-employed as an independent property and casualty insurance claim consultant.

**QUALIFICATIONS/EXPERIENCE**

* First Party Property Damage Claims
* Third Party Liability Claims
* Personal Lines Insurance Policies
* Commercial Lines Ins. Policies
* Personal Injury Coverage
* Advertising Injury Coverage
* Business Owners Policy
* Inland Marine Policies
* Boat Owners
* Umbrella/Excess Policies
* Disaster Related Claims
* Arson/Fraud
* Material Misrepresentations
* Concealment
* Efficient Proximate Cause
* Independent Concurrent Proximate Cause
* Duty to Defend
* Duty to Indemnify
* Excess Indemnity
* Independent Counsel
* Use of Coverage Counsel
* Construction Defect
* Mold/Mildew/Black Water
* Environmental Contamination
* Auto Physical Damage
* Auto Liability
* Uninsured/Underinsured Motorists Coverage
* Medical Pay/PIP Coverage
* Insurance Claims Handling Practices & Procedures
* Insurance Claims Handling Standards of Care
* Insurance Claims Handling Statutes and Regulations
* Duties of the Insured
* The Covenant of Good Faith and Fair Dealing

**PROFESSIONAL COURSES**

Charted Property Casualty Underwriter:
- CPCU 7 – Management
- CPCU 5 – Insurance Company Operations
- CPCU 3 – Commercial Property Risk Management
- CPCU 6 – Legal Environment of Insurance
- CPCU 2 – Personal Risk Management
- CPCU 1 – Principles of Risk Management & Insurance

Certificate in General Insurance:
- Ins. 23 – Commercial Lines Insurance
- Ins. 22 – Personal Lines Insurance
- Ins. 21 – General Principles of Insurance

Vale National Residential Building Estimating School

Claims Law – Legal Principles/Casualty Claims

Property Claims Law Associate

**COURT QUALIFIED EXPERT WITNESS TESTIMONY**

California Superior Courts: San Francisco County; Sonoma County; Marin County; Santa Clara County; San Mateo County; Contra Costa County; Alameda County; Los Angeles County; Merced County; Fresno County; San Diego County; Sacramento County; Humboldt County; Nevada County; Orange County; Riverside County; Solano County; San Joaquin County; Madera County; Napa County; Santa Barbara County; Ventura County

United States District Courts: Northern District of California; District of New Mexico; Great Falls Division, Great Falls, Montana; U.S. District Court, Clark County, Nevada; Eastern District of California (Fresno); Eastern District of California (Sacramento)

# ATTACHMENT 2

**Paul Hamilton**
**Property & Casualty Claim Consultant**
**122 Calistoga Road, #314**
**Santa Rosa, CA 95409**
**(707) 545-4109**
**phamil64@icloud.com**

**PRIOR EXPERT WITNESS DEPOSITION TESTIMONY**

Kevin Conway v. First American Specialty Insurance
San Mateo County Superior Court
Testified on behalf of Defendant, First American Specialty Insurance
First Party; Personal Lines; Homeowners Policy; Mold

Solomon/Red Fox Restaurant v. Fire Insurance Exchange
Marin County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Commercial Property Policy; Fire Claim; Suspected Arson

Figueroa v. Fire Insurance Exchange
Los Angeles County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Personal Lines; Homeowners Policy; Mold

Boles, Palmer v. Philadelphia Indemnity
U.S. District Court, Eastern District of California (Fresno)
Testified on behalf of Plaintiff, Boles, Palmer
Third Party; Professional Liability Policy; Duty to Defend

Byers v. Mercury Casualty Insurance Company
Orange County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Co.
First Party; Personal Lines; Homeowners Policy; Water Damage; Mold

Huarte v. Hartford Fire Insurance Company
Sacramento County Superior Court
Testified on behalf of Defendant, Hartford Fire Insurance Co.
First Party; Commercial Property Policy; Burglary Claim

Vaughn v. Albert D. Seeno (Fire Insurance Exchange)
Contra Costa County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Homeowners Policy; Water Damage Claim; Mold

Abolfathian v. Mercury Casualty Insurance Company
Los Angeles County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Company
Third Party Liability; Personal Lines; Homeowners Policy; Duty to Defend

Kelly v. American States Insurance Company
Santa Clara County Superior Court
Testified on behalf of Defendant, American States Insurance Co.
Third Party Liability; Automobile Policy; Duty to Defend

Rivera v. Allstate Insurance Company
United States District Court, Northern District of CA
Testified on behalf of Allstate Insurance Company
First Party; Homeowners Policy; Water Damage Claim; Mold

Beck v. Unigard Indemnity Company
Solano County Superior Court
Testified on behalf of Defendant, Unigard Indemnity Company
First Party; Homeowners Policy; Water Damage Claim; Assignment of Rights to Contractor/Public Adjuster

Salhi v. Farmers Insurance Exchange
Alameda County Superior Court
Testified on behalf of Defendant, Farmers Insurance Exchange
First Party; Automobile Policy; Collision Loss

Kahalili v. Liberty Mutual Insurance Company
Marin County Superior Court
Testified on behalf of Policyholder, Kahalili
First Party; Homeowners Policy; Fire Claim

Ann Marselis v. Allstate Insurance Company
Alameda County Superior Court
Testified on behalf of Defendant, Allstate Insurance Company
First Party; Homeowners Policy; Earthquake Claim; Statute of Limitations

Roman v. Travelers Property Casualty
Sacramento County Superior Court
Testified on behalf of Defendant, Travelers Property Casualty
First Party; Homeowners Policy; Water Damage Claim; Mold

McNamara v. Fireman's Fund Insurance Company
Marin County Superior Court
Testified on behalf of Defendant, Fireman's Fund Insurance Company
First Party; Homeowners Policy; Water Damage Claim; Mold

Fernandez v. Fidelity & Deposit Insurance Company
Sacramento County Superior Court
Testified on behalf of Defendant, Fidelity & Deposit Insurance Company
First Party; Homeowners Policy; Soot Claim; Water Damage

Berry v. Fire Insurance Exchange
Santa Cruz County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Homeowners Policy; Fire Claim

Mayberry v. USAA Insurance Company
Santa Clara County Superior Court
Testified on behalf of Defendant, USAA Insurance Company
First Party; Homeowners Policy; Fire Claim; Suspected Arson

Ehninger, Fetzer & Tholen v. Travelers Insurance Company
Alameda County Superior Court
Testified on behalf of Defendant, Travelers Insurance Company
Third Party; Commercial General Liability Policy; Construction Defect; Duty to Defend

Daniel B. Botkin v. Safeco Insurance Company of America
San Francisco County Superior Court
Testified on behalf of Defendant, Safeco Insurance Company
First Party; Automobile Policy; Uninsured Motorist Coverage

KLA-TENCOR CORP. v. Travelers Indemnity Company of Illinois
United States District Court, San Jose Division
Testified on behalf of Defendant, Travelers Indemnity Company
Third Party; Commercial Policy; Duty to Defend; Intellectual Property

Louis Ferrigno v. Mercury Casualty Insurance Company
Los Angeles County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Company
First Party; Homeowners Policy; Water Damage Claim; Mold

Mr. "C" Investments v. Cal Farm Insurance Company
Fresno County Superior Court
Testified on behalf of Policyholder, Mr. "C" Investments
First Party; Farm Owners Policy; Theft Claim; Suspected Material Misrepresentation; Suspected Fraud

Paul & Sarah Hamm v. Fire Insurance Exchange
Santa Cruz County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Homeowners Policy, Water Damage Claim; Mold; Black Water

Saberi v. Fire Insurance Exchange
San Mateo County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Homeowners Policy; Water Damage Claim; Mold

Gallagher v. CSAA-IIB
Contra Costa County Superior Court
Testified on behalf of Defendant, CSAA-IIB
First Party; Homeowners Policy; Water Damage Claim; Ensuing Loss Provision; Mold

Summa v. USAA
Santa Cruz County Superior Court
Testified on behalf of Defendant, USAA
First Party; Homeowners Policy; Pre-existing damage issues; Fortuitous loss Issues; Earth Movement; Wear and Tear; Deterioration; Ensuing Loss Issues; Material Misrepresentations

Saks v. Fireman's Fund Insurance Company
Los Angeles County Superior Court
Testified on behalf of Defendant, Fireman's Fund Insurance Company
First Party; Business Owner's Policy; Burglary Claim; Material Misrepresentations

Buhrman v. Old United Insurance Company
Riverside County Superior Court
Testified on behalf of the Policyholder, Buhrman
First Party, Marine Policy; Boat Loss; Rescission

Pallack v. Fireman's Fund Insurance Company
Los Angeles County Superior Court
Testified on behalf of the Defendant, Fireman's Fund Insurance Company
First Party; Homeowners Policy; Northridge Earthquake Claim

Davis (Simons) v. Safeco Insurance Company
Alameda County Superior Court
Testified on behalf of the Defendant, Safeco Insurance Company
First Party; Homeowners Policy; Windstorm Claim

Marina Landscape, Inc., et al. v. Fireman's Fund Insurance Company
Orange County Superior Court
Testified on behalf of the Defendant, Fireman's Fund Insurance Company
Third Party; Management Practices Liability Policy; Duty to Defend

Fowler v. Mercury Casualty Insurance Company
Riverside County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Company
First Party; Homeowners Policy; Water Damage Claim; Mold

Rohan v. Fire Insurance Exchange
San Francisco County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Homeowners Policy; Windstorm Claim; Wear & Tear Exclusion

Richard A. Lyons & Karen M. Bligh-Lyons v. Wawanesa General Insurance Company
San Bernardino County Superior Court
Testified on behalf of the Defendant, Wawanesa General Insurance Company
First Party; Homeowners Policy; Fire Claim; Reasonably Uniform Appearance

Kathleen Chaides v. Commercial Union Insurance Company
Alameda County Superior Court
Testified on behalf of the Defendant, Commercial Union Insurance Company
Third Party; Commercial General Liability Policy; Duty to Defend; Standard Pollution Exclusion

Eric Wyatt v. Zurich Insurance Company/ Assurance Company of America
United States District Court
Northern District of Oklahoma (Tulsa)
First Party; Commercial Office Policy (Dental Clinic) Water Damage Claim; Dispute over scope of loss; Dispute over Business Income claim

Lorraine Erwin & Jonie Peterson v. Mercury Casualty Company; Inter Insurance Exchange of the Automobile Club; Garland Restoration, Inc.
Orange County Superior Court
Testified on behalf of the Defendant, Mercury Casualty Company
First Party; Homeowners Policy; Fire Claim; Mold

Santana Row Hotel Partners v. Zurich American Insurance Company; Gallagher-Pipino, Inc.; Arthur J. Gallagher & Company
United States District Court, San Jose Division
Testified on behalf of the Policyholder, Santana Row Hotel Partners
First Party; Commercial Policy; Fire Claim; Business Interruption Claim

Gibson v. USAA
Marin County Superior Court
Testified on behalf of Defendant, USAA Insurance Company
First Party; Homeowners Policy; Water Damage Claim; Mold

Cheney/Willow Glen HOA v. Truck Insurance Exchange
Santa Cruz Superior Court
Testified on behalf of Defendant, Truck Insurance Exchange
First Party; Condo Unit Owners Policy; Water Damage Claim; Mold

Gary Allen Ulaner v. AXA Re American Insurance Company
United States District Court, Central District of California
Testified on behalf of the Policyholder, Gary Allen Ulaner
Third Party Liability; Automobile Liability; Failure to Accept a Reasonable Settlement Demand Within Policy Limits; Excess Judgment

R&R Sails, Inc., dba Hobie Cat Company v. Insurance Company of the State of Pennsylvania
United States Federal District Court
Southern District of California, San Diego Division
Testified on behalf of the Policyholder, the Hobie Cat Company
First Party; Commercial Property; Foreign Package Policy; Fire Claim; Building; Business Property; Business Interruption; Unreasonable Delay in the Payment of Amounts Due; Fair Claims Settlement Practices Regulations

UMG RECORDINGS, INC. & UNIVERSAL MUSIC GROUP, INC. v. American Home Assurance Company
United States District Court, Central District of California
Testified on behalf of the Defendant, American Home Assurance Company
Third Party; Commercial Liability Policy; Duty to Defend; Duty to Indemnify; Personal Injury; LRRP; Deductible

Reitmeier v. Wawanesa Insurance Company
San Diego County Superior Court
Testified on behalf of Defendant, Wawanesa Insurance Company
First Party; Automobile Policy; Theft of Vehicle

Green v. Fire Insurance Exchange
Alameda County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
First Party; Tenant Policy; Theft; Failure to Cooperate; Material Misrepresentation

Maria Elena Duran v. Pacific Specialty Insurance Company
San Joaquin County Superior Court
Testified on behalf of Defendant, Pacific Specialty Insurance Company
First Party; Homeowners Policy; Material Misrepresentation in the Application for Insurance

Clarendon National Insurance Company vs. Bankers Insurance Company
San Bernardino County Superior Court
Testified on behalf of Plaintiff, Clarendon National Insurance Company
Third Party; Commercial General Liability; Construction Defect Claims; Duty to Defend; Misrepresentation on the Application; Equitable Indemnity

Wood v. Scottsdale Indemnity Company
United States District Court, Northern District
Testified on behalf of Defendant, Scottsdale Indemnity Company
Third Party; Duty to Defend; Personal Umbrella Liability Policy; Definition of Insured; Definition of Watercraft

Shinazy Enterprises, Inc. v. Truck Insurance Exchange
San Francisco County Superior Court
Testified on behalf of the Defendant, Truck Insurance Exchange
First Party; Commercial Policy; Fire Claim; Auto Body Shop; Dispute over Loss of Business Income

Kay A. Reed & Charlie Wear, Trust Administrators for the Vornado Liquidating Trust vs. Tyco Electronics Corporation; Global Wire Technologies of Indiana, Inc.; GWT Investments, Inc.; Unicable, Inc.
Testified on behalf of the Defendants
First Party Property Damage Claims; Equitable Indemnity
(NOTE: This particular deposition involved the investigation, evaluation and subrogation demands of ten separate claims. In all, this case involved approximately 140 separate claims arising from an alleged defective product.)

Masha Levinson & Leon Taylor vs. Fire Insurance Exchange
San Francisco County Superior Court
Testified on behalf of the Defendant, Fire Insurance Exchange
First Party; Personal Lines; Fire Claim; Claims Handling; Fair Claims Settlement Practices Regulations

Zurich American Insurance Company v. AIU Insurance Company/Lexington Insurance Company
Alameda County Superior Court
Testified on behalf of the Plaintiff, Zurich American Insurance Company
Third Party; Commercial Liability; Duty to Defend; Duty to Indemnify; Construction Defect; Equitable Contribution

Sean E. Ulbert & Estephanie K. Ulbert v. Mercury Casualty Insurance Company
San Diego County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Company
First Party; Homeowners Policy; San Diego Wildfire; Insured's Duties in the Event of Loss; Reformation; Loss Settlement Provision

Philip Rudolph Johnson v. American Casualty Company
United States District Court
Northern District of California
Testified on behalf of Defendant, American Casualty Company
Third Party; Commercial Automobile Liability; Permissive User; Duty to Defend

Michael Schwartz v. Mercury Casualty Company
Los Angeles County Superior Court
Testified on behalf of Defendant, Mercury Casualty Company
First Party; Homeowners Policy; Water Damage Claim; Black Water; Mold

Giannulli v. DWC General Contractors, Inc.; AIG Private Client Group
Riverside Superior Court; Indio Branch
Testified on behalf of Policyholder, Giannulli
First Party; Homeowners Policy; Fire Damage Claim; Unreasonable delays in the investigation and payment of the claim; Fair Claims Settlement Practices Regulations; Use of Preferred Vendor

Stephens & Stephens, XII, LLC. v. The American Insurance Company
San Francisco County Superior Court
Testified on behalf of Defendant, The American Insurance Company
First Party; Commercial Property Policy; Vandalism & Theft Claim; Copper Theft; Policy Period Issues

Anthony Borreson & Michele Borreson v. USAA Casualty Insurance Company; Puma Construction Company, Inc.; Kevin Bushaw
Madera County Superior Court
Testified on behalf of the Defendant, USAA Casualty Insurance Company
First Party; Homeowners Policy; Windstorm Claim; Mold; Duty to Investigate; Fair Claims Settlement Practices Regulations; Duties of Public Adjuster

Joseph William Bischell & Charlene Ann Bischell v. Mercury Casualty Insurance Co.
San Luis Obispo County Superior Court
Testified on behalf of the Defendant, Mercury Casualty Insurance Company
First Party; Homeowners Policy; Fire Claim; Failure to Investigate; Fair Claims Settlement Practices Regulations

Steven Scarpa, Individually, and Mountain Air Enterprises v. Travelers Property Casualty Company of America
United States District Court, District of Nevada
Testified on behalf of the Policyholder, Steven Scarpa
First Party; Commercial Property Loss; Unreasonable Failure to Pay Policy Benefits; Failure to Comply with Nevada Claim Regulations; Failure to Conduct a Reasonable Investigation

Lucena v. Truck Insurance Exchange
Santa Clara County Superior Court
Testified on behalf of the Defendant, Truck Insurance Exchange
Third Party; Homeowners Policy; Personal Umbrella Policy; Duty to Defend; Business Pursuits Exclusion

Liberty Mutual Insurance Company v. The California Automobile Assigned Risk Plan
United States District Court
Northern District of California, San Francisco Division
Testified on behalf of the Plaintiff, Liberty Mutual Insurance Company
Commercial Liability; Truckers Policy; Request for Indemnification in accordance with CAARP's servicing carriers agreement; Claims Handling to the standard of "want of even scant care."

Scottsdale Insurance Company v. American Investor Company, et al.
JAMS Arbitration
Brokers Professional Liability Policy
Duty to Defend; Duty to Indemnify; Troubled Securities Endorsement
Testified on Behalf of Scottsdale Insurance Company

California Casualty Indemnity Exchange v. Kulwant Sidhu, et al.
Fresno County Superior Court
Homeowners Policy; First Party; Property Damage; Fire Loss;
Material Misrepresentations; Fraud.
Testified on behalf of California Casualty Indemnity Exchange

Alissa Zeegers, Sarah Zito & James Zito v. The Interinsurance Exchange of The Automobile Club
San Diego County Superior Court (Central)
Homeowners Policy; Third Party; Duty to Defend; Duty to Indemnify;
Household Exclusion
Testified on behalf of The Interinsurance Exchange of the Automobile Club

HM Hotel Properties vs. Peerless Indemnity Company
United Stated District Court – District of Arizona
First Party; Commercial Policy; Hotel; Hail Damage
Testified on behalf of Peerless Indemnity

Ron Siegel & Mindy Siegel v. Mercury Casualty Ins. Company
Orange County Superior Court
First Party; Homeowners Policy; Water Damage (2 claims)
Testified on behalf of Mercury Casualty Insurance Company

Robert Cormany & Tina Cormany v. Fireman's Fund Insurance Company
San Bernardino County Superior Court
First Party; Homeowners Policy; Vandalism/Theft Claim;
Material Misrepresentation by Insured;
Testified on behalf of Fireman's Fund Insurance Company

George Mardikian v. Wawanesa General Insurance Company
San Mateo County Superior Court
First Party; Family Auto Policy; Fire Damage
Material Misrepresentations by the Insured at the time of application
and during the presentation of the claim.
Testified on behalf of Wawanesa General Insurance Company

Namrata C. Patel, DDS v. American Economy Insurance Company;
Golden Eagle Insurance Corporation; Safeco Insurance Company of America
United States District Court, Northern District of California
First Party; Commercial – Businessowner's Policy; Dental Office;
Green Dentistry; Business Interruption
Testified on behalf of American Economy Insurance Company

ARE-East River Science Park, LLC v. Lexington Insurance Company
United States District Court, Central District of California
First Party; Commercial Property; Manuscript Policy Form; Application of
Deductible; Hurricane Sandy; Application of California Fair Claims
Settlement Practices Regulations, etc.
Testified on behalf of Lexington Insurance Company

Michele Orr v. Mercury Casualty Insurance Company
Los Angeles County Superior Court
Testified on behalf of Mercury Casualty Insurance Company
First Party; Homeowners; Claims Handling; Fair Claims Settlement Practices
Regulations; Duties of the Insured; Mold; Cancellation; Duty to Investigate Hidden
Damage; Building Codes
(This litigation involved seven (7) separate claims: Basement Leak; Den Ceiling
Leak; Second Basement Leak (settlement of foundation); Rainstorm claim;
Drain Claim; Windstorm Claim; Second Rainstorm Claim

Mi Pueblito Market v. Leading Insurance Services, Inc.
San Francisco Superior Court
Testified on behalf of Leading Insurance Services, Inc.
First Party; Business Owner's Policy; Fire; Claims Handling Practices;
Fair Claims Settlement Practices; Duties of Insured; Potential Material
Misrepresentations.

Janet Consorti vs. Foremost Insurance Company; Absolute Carpet Care
Santa Barbara County Superior Court
Testified on behalf of defendant, Foremost Insurance Company
First Party; Personal Lines; Manufactured Home; Water Damage;
Claims Handling Practices; Fair Claims Settlement Practices;
Duties of Insured; Duty to Warn (Lead, Asbestos, Mold);
Industry Custom and Practice – In Office Claims Handling.

Laura Beth Barickman & Shannon Jo McInteer vs. Mercury Casualty Company
Los Angeles County Superior Court
Testified on behalf of Mercury Casualty Insurance Company
Auto Policy; Unreasonable Refusal to Settle Within Policy Limits;
Altered Release

Ryder Truck Rental, Inc. vs. Travelers Property Casualty Ins. Co.
Orange County Superior Court
Testified on behalf of Travelers Property Casualty Ins. Co.
Commercial Automobile Policy; Leased Truck; Duty to Defend;
Duty to Indemnity; Additional Insured Endorsement; Lease Agreement

Colorado Casualty Insurance Company vs. Infinity Land Corporation, et al.
United States District Court – District of Colorado
Testified on behalf of Colorado Casualty Insurance Company
Business Owners Policy; Commercial; Duty to Defend; Duty to Indemnify;
Insuring Agreement; Insured Entities; Personal Injury Coverage

Mike Habib vs. Farmers Group, Inc.; Mid-Century Insurance Company
Los Angeles County Superior Court
Testified on behalf of Fire Insurance Exchange
Commercial Property Policy; Freeze Claim; Failure to Exercise Reasonable
Means to Maintain Heat

Brenda D. Woods; Carlos Rodriguez vs. Mid-Century Insurance Company
Napa County Superior Court
Testified on behalf of Mid-Century Insurance Company
Automobile Policy; Underinsured Motorist; Alleged Delay in Payment of Benefits

Michael Walker vs. Financial Indemnity Company
United States District Court
Northern District of California
Testified on behalf of Financial Indemnity Company
Automobile Policy; First Party; Theft/Burning of Vehicle; Non-cooperation denial.

Michael Mulverhill; Autumn Mulverhill vs. Mercury Casualty Ins. Co.
Superior Court of the State of California
County of Los Angeles
Testified on Behalf of: Mercury Casualty Insurance Company
First Party; Homeowners; water/sewage damage; questions re: ALE/FRV;
Disputed over the amount to repair replace with LKQ.

Mid-Century Insurance Company vs. Carol Fries/Dyanne Fries
Superior Court of the State of California
County of Ventura
Testified on Behalf Of: Mid-Century Insurance Company
Third Party; Homeowners Policy; Dog Bite; Resident Relative

JACOB LIBMAN; BETTY LIBMAN v. MERCURY CASUALTY INSURANCE COMPANY
Los Angeles County Superior Court
Testified on behalf of Defendant: Mercury Casualty Insurance Company
Attorney for Defendant: Shaver, Korff & Castronovo, LLP, Encino, CA
First party; Condominium Policy; Direct Physical Force of Wind Causing Damage to the Exterior

SHAHAB EBRAHIMIAN & ELIZABETH EBRAHIMIAN V. MERCURY INSURANCE GROUP
Los Angeles County Superior Court
Testified on behalf of Defendant: Mercury Insurance Group/Mercury Casualty
Attorney For Defendant: Hager & Dowling – Santa Barbara, CA
First Party; Homeowners Policy; Two Claims – Roof and Bathroom water damage; Duties of the insured to display damaged property. Possible material overstatement of claim – public adjuster.

THE HOMEOWNERS ASSOCIATION OF COBBLESTONE AT CHEYENNE MOUNTAIN RANCH v. TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA
United States District Court – District of Colorado
Testified on behalf of Defendant: Travelers Property Casualty Company
Attorney for Defendant: Foran Glennon – Denver, Colorado.
First Party; Condominium Policy; Dispute over extent of hail damage to roof.

MELINDA BOOTH DOGRA; JAY DOGRA vs. LIBERTY MUTUAL FIRE INSURANCE COMPANY
United Stated District Court – District of Nevada
Testified on behalf of Defendant: Liberty Mutual Fire Ins. Company
Attorney for Defendant: Foran Glennon – Las Vegas
Automobile Policy; Multiple Claimants; Serious Injuries; Unreasonable Refusal to Settle; Interpleader.

APRIL HANKINS, EXECUTRIX OF THE ESTATE OF VERNON HANKINS, DECEASED AND APRIL HANKINS, IN HER OWN RIGHT vs. PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY; J. CLAY KINCAID; CRAWFORD AND COMPANY, ET AL.
United States District Court – District of New Jersey, Newark Division
Testified on behalf of Defendant: J. Clay Kincaid & Crawford & Company
Attorney for Defendant: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC – Atlanta, GA
Homeowners Policy; Dwelling Policy; Hurricane Sandy; Alleged failure on the part of Mr. Kincaid and Crawford to warn the policyholder of a potentially dangerous condition on the insured's property (fallen tree).

ROBERT J. TOBIAS; LYNN TOBIAS vs. MERCURY CASUALTY INSURANCE COMPANY, ET AL.
Superior Court of the State of California – County of Los Angeles
Testified on behalf of Defendant – Mercury Casualty Insurance Company
Attorney for Defendant: Lora Hemphill: Hager & Dowling, Santa Monica, CA.
Homeowners policy; water damage claim; mold; industry custom and practice as it related to the use of Xactimate as an estimating platform.

SCOTTSDALE INSURANCE COMPANY vs. COLONY INSURANCE COMPANY
United States District Court – Central District of California
Testified on behalf of defendant/counter-claimant SCOTTSDALE INS. CO.
Attorney for Scottsdale: James F. Henshall, Esq.: Selman Breitman, Santa Ana, CA
Third Party; Commercial; Construction Defect; Duty to Defend; Application of Continuing Damage Exclusion

RIMA A. SALLOUM v. WAWANESA GENERAL INSURANCE COMPANY
Superior Court of the State of California – County of San Diego
Testified on behalf of Defendant – Wawanesa General Insurance Co.
Attorney for Wawanesa: John Edson, Esq.: Sheppard Mullin, San Diego, CA
Automobile; First Party Bodily Injury; Underinsured Motorist Coverage; Misrepresentations by Insured during the presentation of the claim.

GABRIELITA ANACLETO; JUAN GUTIERREZ v. ALLSTATE INSURANCE COMPANY
United States District Court – Northern District of California
Testified on behalf of Defendant – Allstate Insurance Company
Attorney for Allstate: Jeffrey Butler, Esq. – Dentons US LLP – San Francisco
Homeowners; First Party; Water Damage; Public Adjuster; Claims Handling Procedures; Compliance with Fair Claims Practices Regulations; Duties of an Insured; Duties of a Public Adjuster.

CHURCH MUTUAL INSURANCE COMPANY v. GUIDEONE INSURANCE COMPANY
Superior Court of California – County of Shasta
Testified on behalf of Defendant: GUIDEONE INSURANCE COMPANY
Attorneys for GuideOne: Matthew Foy, Esq./Michael A. Pursell, Esq. – Gordon & Rees – San Francisco, CA
Church Policy; First Party; Fire Loss; Contributing Insurance; Insurable Interest; Good Faith Claims Handling

RACHAEL EVENSEN vs. MID-CENTURY INSURANCE COMPANY
Superior Court of California – County of Sonoma
Testified on behalf of Defendant: MID-CENTURY INSURANCE COMPANY
Attorney for Mid-Century: Valerie A. Moore, Esq. – Haight, Brown & Bonesteel, LLP – Los Angeles, CA
Underinsured Motorist Claim; Residency Issue; Reasonableness of Claims Handling

JANINE R. ZAVOSKY & MICHAEL ZAVOSKY v. FARMERS INSURANCE COMPANY, INC.
Superior Court of California – County of San Francisco
Testified on behalf of Defendant: FARMERS INSURANCE COMPANY
Attorney For Farmers Insurance Company: Paul Allen Peters, Esq. – Demler, Armstrong & Rowland, San Francisco, CA
Automobile Policy; Theft of Vehicle; Claim denied due to material misrepresentations by its insured during the processing of the claim.

PRAETORIAN INSURANCE COMPANY v. WESTERN MILLING, LLC
WESTERN MILLING, LLC v. PRAETORIAN INSURANCE COMPANY
United States District Court – Eastern District of California
Testified on behalf of Plaintiff/Counter-Defendant: PRAETORIAN INSURANCE
Attorney For Praetorian: John Chatowski, Esq. – Selvin Wraith Halman, LLP - Oakland, CA
Commercial General Liability; Duty to Defend/Indemnity; Care Custody or Control; Waiver/Estoppel.

ALEXANDER PINTO v. FARMERS INSURANCE EXCHANGE; FARMERS INSURANCE GROUP; FARMERS UNDERWRITERS ASSOCIATION
Superior Court of the State of California – County of Los Angeles
Testified on behalf of Defendant: Farmers Insurance Exchange
Attorney for Farmers Insurance Exchange: Richard E. Morton, Esq./Haight, Brown & Bonesteel, LLP – Los Angeles, California
Automobile Policy; Alleged Unreasonable Refusal to Settlement; Policy Limit Time Limited Demand.

JAMES FRAILING; KIMBERLY FRAILING vs. NATIONWIDE MUTUAL INSURANCE COMPANY; AMCO INSURANCE COMPANY; ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY
Testified on Behalf of Defendant: Nationwide Insurance Company
Attorney for Nationwide/AMCO: David L. Jones, Esq./Gordon & Rees, Los Angeles, California
First Party; Rental Dwelling Policy; Fire Loss; Dispute over the payment of contractual benefits; Building Code Upgrade Coverage – structures not permitted prior to the fire; structures located over the property line.

HOMAYOUN LARIAN v. INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB, ET AL.
Superior Court of the State of California – County of Los Angeles – West District
Testified on Behalf of Defendant: INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB
Attorney for Interinsurance Exchange: Stephen Smith, Esq./Smith Smith & Feeley, Newport Beach, CA.
First Party; Homeowners Policy; Water Damage Claim; Reasonably Uniform Appearance of Stone Flooring; Cabinets.

BONBECK PARKER, LLC vs. THE TRAVELERS INDEMNITY COMPANY OF AMERICA
UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF COLORADO
Testified on Behalf of Defendant: TRAVELERS INDEMNITY COMPANY OF AMERICA
Attorney for Travelers: Amy Samberg, Esq./Foran Glennon, Denver, Colorado
First Party; Commercial Property; Hail Damage; The Appraisal provision – scope vs. value.

ROSEMARY PEREZ vs. MERCURY CASUALTY COMPANY
SUPERIOR COURT, COUNTY OF MADERA
Testified on Behalf of Defendant: Mercury Casualty Company
Attorney for Mercury: Ian Fraser-Thomas, Esq.; Cesari, Werner & Moriarty, Daly City, CA.
First Party; Homeowners Policy; Interior Water Damage; Alleged Exterior Vandalism to Roof; An insurance companies statutory obligation to provide a reasonably uniform appearance in the damaged area.

LORNA MOORE & DONALD A. MCGILVRAY vs. AMGUARD INSURANCE COMPANY
SUPERIOR COURT, COUNTY OF SANTA BARBARA
Testified on Behalf of Defendant: AmGUARD Insurance Company
Attorney for AmGUARD: Randall A. Miller, Esq.; Miller Law Associates, Los Angeles, CA.
First Party; Rental Dwelling; Business Owner's Policy; Dispute regarding the application of the water back-up and sump overflow endorsement; dispute regarding the application of the California Fair Claims Settlement Practices Regulations (argued duty to make advanced/undisputed claim payments before the claim had been accepted).

HARTFORD FIRE INSURANCE COMPANY v. GALAXY THEATRES, LLC
GALAXY THEATRES, LLC (Counter-Plaintiff) v. HARTFORD FIRE INSURANCE COMPANY; GALLAGHER BASSETT SERVICES, INC.; FAIRCHILD RECORD SEARCH, LTD.
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT
Testified on Behalf of Counter-Defendant Gallagher Bassett Services, Inc.
Attorney For Gallagher Bassett: Scott Sterling, Esq.; Jennifer P. Taton, Esq.; Christensen Hsu Sipes, LLP, Torrance, CA 90501
Third Party; Commercial; Duty to Defend; Duty to Indemnify; Default Judgment; Prejudice in failure to report service of process; Duties of a Third Party Administrator.

WILLIAM & CAMIELLE CHOU VS. USAA CASUALTY INSURANCE COMPANY
ORANGE COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: USAA Casualty Insurance Company
Attorney for USAA-CIC: DKM Law Group; Robert McLay, Esq; Joshua Kastan, Esq. (San Francisco, CA)
Third Party; Duty to Defend; Retender of Defense; Tenant/Landlord Dispute; Lack of Occurrence; Lack of Bodily Injury as Defined; Property Damage to Property Rented To the Insured.

SEANY RENFROW VS. LARRY BUTLER, ET AL.
LOS ANGELES COUNTY SUPERIOR COURT (SOUTH JUDICIAL DISTRICT)
Testified on Behalf of Defendant: Interinsurance Exchange of the Automobile Club
Attorney for The Exchange: Stephen E. Smith, Esq., Smith, Smith & Feeley, LLP, 1401 Dove Street, Newport Beach, CA.
First Party; Condominium Unit Owners' Policy; Water Damage; Continuous Leakage or Seepage of Water Exclusion.

JOSE VALLEJO VS. FARMERS INSURANCE GROUP, ET AL
SAN JOAQUIN COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: Farmers Insurance Exchange
Attorney for Farmers: Valerie Moore, Esq., Haight Brown & Bonesteel LLP, 555 South Flower Street, Los Angeles, CA 90071
Third Party; Landlord's Protector Policy (liability only); Substantial Prejudice Due to Delayed Reporting; Argued Unreasonable Refusal to Pay Judgment Creditor.

SEAN HARRIS & MICHELLE HARRIS VS. MID-CENTURY INSURANCE COMPANY, LOUIS T. JENKINS
SONOMA COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: Mid-Century Insurance Company
Attorney for Mid-Century: David L. Jones, Esq., Gordon & Rees, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
First Party; Homeowners; Sonoma County Wildfire Total Loss
Underinsurance; The amount actually and necessarily incurred to rebuild.

LAN CHOW v. BUSINESS ALLIANCE INSURANCE COMPANY
ALAMEDA COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: Business Alliance Insurance Company
Attorney for BAIC: Mark R. Mittleman, Esq.; Law Offices of Mark R. Mittleman
575 Lennon Lane, Suite 150, Walnut Creek, CA 94598
First-party; Commercial Fire Loss; Disputed Scope of Loss Regarding Alleged Smoke Damage.

BROOKE COLDREN & ROBERT COLDREN vs. MERCURY CASUALTY COMPANY (CALIFORNIA AUTOMOBILE INSURANCE COMPANY)
Testified on Behalf of Defendant: California Automobile Insurance Company
Attorney for CAIC: Christopher P. Wesierski, Esq.; Wesierski & Zurek, LLP,
29 Orchard Road, Lake Forest, CA 02630
First-Party; Residential Homeowner Loss; Water Damage – Rain intrusion through decks and windows; Dispute regarding the payment of consultant fees (water mitigation and public adjuster); Cooperation of the Insured; Reasonableness of the investigation conducted by CAIC; extensive pre-existing damage (mold and dry rot).

JOHN GARY COLLINS vs. NATIONWIDE AGRIBUSINESS INSURANCE COMPANY
Testified on Behalf of Defendant: Nationwide Agribusiness Insurance Company
Attorney for Nationwide: Michelle R. Bernard, Esq.; Gordon Rees Scully Mansukhani, 101 West Broadway, Suite 2000, San Diego, CA 92101
First-Party; Business Auto Policy; Uninsured Motorist Coverage
Alleged unreasonable refusal to settle; Alleged unreasonably low offers of settlement; Alleged unreasonable evaluation of an injury as Insured was unrepresented; Insured allegedly forced to retain counsel.

CARSON COGENERATION COMPANY vs. SCOTTSDALE INSURANCE COMPANY
Testified on Behalf of Defendant: Scottsdale Insurance Company
Attorney for Scottsdale: Michelle R. Bernard, Esq.; Gordon Rees Scully Mansukhani, 101 West Broadway, Suite 2000, San Diego, CA 92101
First-Party; Commercial Property Policy; Fire/Explosion to an electricity generating plant; dispute over the valuation of the damaged property (both on an ACV and RCV basis); disputed over the application of the Co-Insurance provision; allegations regarding the reasonableness of the claims handling, the investigation and evaluation of the claim.

ALBINA GRIEGO vs. AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS
VENUED: UNITED STATES DISTRICT COURT, DISTRICT OF NEW MEXICO
Testified on Behalf of Defendant: American Hallmark Insurance Company
Attorney for American Hallmark: Rebecca R. Weinreich, Esq., Lewis, Brisbois, Bisgaard & Smith, 633 West Fifth Street, Suite 4000, Los Angeles, CA.
First Party Bodily Injury; Uninsured Motorist; First Call Settlements; Use of a Release on a First Party UIM Claim. (2020)

THE CITY OF LONG BEACH; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA vs. SENTRY INSURANCE, A MUTUAL COMPANY, ET AL.
VENUED: Superior Court for the County of Los Angeles
Testified on Behalf of Defendant: Sentry Insurance Company
Attorney for Sentry Insurance: Laura R. Ramos, Esq., Selman Breitman, 11766 Wilshire Blvd., Los Angeles, CA 90025
Third Party; Commercial; Duty to Defend; Duty to Indemnify; Subrogation Action; Additional Insured Endorsement; Motorcycle Accident/Fatality. (2021)

DAVID T. BRODERSEN, WENDY L. KATZ-BRODERSEN; GREENLEAF NURSERY, LLC VS. NATIONWIDE AGRIBUSINESS INSURANCE COMPANY; ARLAN KNUTSON INSURANCE AGENCY
VENUE: Superior Court of California County of San Diego
Testified on Behalf of Defendant: Nationwide Agribusiness Insurance Company
Attorney for Nationwide: Michelle Bernard, Esq., Gordon Rees Scully Mansukahani, LLP, 101 W. Broadway, Suite 2000, San Diego, CA.
First Party; Wildfire; Partial Loss – Smoke Damage; Alleged Contamination by Vendor; Alleged Failure to Warn; Compliance with Industry Custom and Practice; Compliance with Fair Claims Settlement Practices Regulations. (2021)

CLAIRE LEWIS VS. GOVERNMENT EMPLOYEES INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA
Testified on Behalf of Defendant: Government Employees Insurance Company
Attorney for GEICO: Suzanne Y. Badawi, Esq., Sheppard Mullin, 333 South Hope Street, Los Angeles, CA
Underinsured Motorist Coverage; Ms. Lewis was a pedestrian hit by an underinsured motor vehicle; she claim status as an insured under her father's policy; Definition of An Insured Person; Declaration Page: Named Insured vs. Additional Drivers. (2021)

JACKIE KREITZMAN & BRIAN SENIT vs. MERCURY CASUALTY COMPANY
VENUE: LOS ANGELES COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: Mercury Casualty Company
Attorney for Mercury Casualty: Mary Kim, Esq., Weiserski & Zurek, LLP, Lake Forest CA.
First Party; Homeowners Policy; Water Damage Claim; Leakage from Roof; Failure to Provide Mercury with Prompt Notice of Loss; Delays on the part of the Insured; Possible Breach of the Contractual Limitations period. (2021)

SIMONE RACHEL STIVI v. GEICO INDEMNITY INSURANCE
VENUE: UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION
Testified on Behalf of Defendant GEICO Indemnity Insurance
Attorney for GEICO: Suzanne Y. Badawi, Esq./Jeffrey Commisso, Esq., Sheppard Mullen, 333 South Hope Street, Los Angeles, CA
Underinsured Motorist Coverage; Dispute regarding the extent of general damages pertaining to alleged accident-induced tinnitus. Reasonable reliance upon advice of an independent third party medical expert. (2021)

STOCKTON MARIPOSA LLC v. WEST AMERICAN INSURANCE COMPANY (TWO DEPOSITIONS)
VENUE: UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
Testified on Behalf of Plaintiff/Policyholder Stockton Mariposa
Attorney for Stockton Mariposa: Law Offices of Sassoon Sales, 16060 Ventura Blvd., Suite 110, Encino, CA 91436 (818) 728 6658
First Party; Commercial Policy; Vandalism/Metal Theft; Application of the 60-day grace period for vandalism to a vacant building. (2021)

RAZMIK HOVSEPYAN; SUREN HOVSEPYAN; SHUSHANIK PASKEVIHYAN v. GEICO GENERAL INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA
Testified on Behalf of Defendant GEICO GENERAL INSURANCE COMPANY
Attorney for GEICO: Suzanne Y. Badawi, Esq., Sheppard Mullin, 333 South Hope Street, Los Angeles, CA 90071-1422
First Party; Uninsured/Underinsured Motorist Coverage; Evaluation Consistent with Terms and Conditions of Policy; Reasonableness of Claims Investigation; Investigation consistent with industry custom and practice. Dispute regarding the claimant's entitlement to general damages under their UIM coverages. Settled via Arbitration. (2021)

MISTY ATTAWAY v. CALIFORNIA AUTOMOBILE INSURANCE COMPANY
VENUE: SUPERIOR COURT FOR THE COUNTY OF BUTTE
Testified on Behalf of Defendant: CALIFORNIA AUTOMOBILE INSURANCE COMPANUY
Attorney for CAIC: Lora D. Hemphill, Hager & Dowling, 319 East Carrillo Street, Santa Barbara, CA 93101 (805) 966 4700
First Party; Homeowners Policy; Wild Fire; Partial Loss; Reasonableness of Claims Investigation; Application of Insurance Code Section 2051. (2021)

RICHARD & MICHELLE MORENCY v. LM INSURANCE CORPORATION; SEN WATER & FIRE RESTORATION, INC., d/b/a SERVPRO OF HENDERSON/BOULDER CITY; SERVPRO INDUSTRIES
VENUE: DISTRICT COURT, CLARK COUNTY NEVADA
Testified on Behalf of Defendant: LM INSURANCE CORPORATION
Attorney for LM Insurance Corporation: Dylan Todd, Esq., Clyde & Co., 7251 W. Lake Mead Boulevard, Suite 430, Las Vegas, NV 89128 (213) 358 7600
First Party; Homeowners Policy; Water Damage; Mold; Habitability; Conduct of the Insured. (2021)

THOMPSON, AMANDA M. & DOUGLAS v. PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE
VENUE: ARIZONA SUPERIOR COURT, MARICOPA COUNTY
Testified on Behalf of Defendant: PRIVILIGE UNDERWRITERS RECIPROCAL EXCHANGE
Attorney for PURE: Andrew Bell, Esq., Lewis Brisbois, 2929 North Central Avenue, Suite 1700, Phoenix, AZ 85012 (602) 385 7876
First Party; Homeowners Policy; High End Value Policy; Fire Damage; Reasonableness of Investigation: Dwelling & Contents; Loss Payable Clause – Amount Actually Expended for Repair. (2021)

STEPHANIE CHAPA v. MERCURY CASUALTY COMPANY; AMERICAN TECHNOLOGIES, INC.
VENUE: SUPERIOR COURT, COUNTY OF SANTA CLARA
Testified on Behalf of Defendant: MERCURY CASUALTY INSURANCE COMPANY
Attorney for Mercury Casualty: Jacqueline D. DeWarr, Hager & Dowling, 319 East Carrillo Street, Santa Barbara, CA 93101 (805) 966 4700
First Party; Homeowners Policy; Fire Damage; Consequential Damage to Radiant Heating System; Reasonableness of Investigation; Reasonable Reliance on Third Party Experts; Amount Actually and Necessarily Expended for Repair. (2021)

DOUGLAS A. TUCKER vs. ALLSTATE NORTHBROOK INDENNITY COMPANY
VENUE: UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
Testified on Behalf of Defendant: ALLSTATE NORTHBROOK INDEMNITY COMPANY
Attorney for Allstate: Suzanne Y. Badawi, Esq., Sheppard Mullin, 333 South Hope Street, 43 Floor, Los Angeles, CA 90071 (213) 620 1780
First Party; Underinsured Motorist Coverage; Evaluation consistent with the terms and conditions of the policy; Investigation consistent with industry custom and practice; no unreasonable withholding of a policy benefit. Case resolved in arbitration. (2021)

ARIS SARIGIANIDES; DIMITRIOS YORTZIDIS; & ARIS YORTZIDIS vs. MERCURY INSURANCE COMPANY
VENUE: SUPERIOR COURT – FOR THE COUNTY OF LOS ANGELES
Testified on Behalf of Defendant: MERCURY INSURANCE COMPANY
Attorney for Mercury: Tina M. Bhatia, Esq., Shaver Korff Castronovo, LLP, 16255 Ventura Blvd., Suite 850, Encino, CA 91426. (818) 905-6001.
First Party; Commercial Policy; Vehicle Damage; Application of Building Code Upgrades versus Insured's decision to upgrade; questions of loss of rental income. (2022)

CLARE/MATRIX vs. NATIONWIDE HARLEYSVILLE INSURANCE COMPANY
VENUE: SUPERIOR COURT – COUNTY OF LOS ANGELES
Testified on Behalf of Defendant: Nationwide/Harleysville
Attorney for Harleysville: Michelle Bernard, Esq., Gordon Rees Scully Mansukhani, LLP, 101 W. Broadway, Suite 2000, San Diego, CA 92101 (619) 230 7769
First Party; Commercial Policy; Fire Damage; Dispute over the calculation of alleged loss of business income for a non-profit corporation. (2022)

EDYLWISE ROMERO V. GEICO CASUALTY COMPANY
VENUE: SUPERIOR COURT – COUNTY OF SAN FRANCISCO
Testified on Behalf of Defendant: GEICO Casualty Company
Attorney for GEICO: Suzanne Y. Badawi, Esq., Sheppard, Mullin, Richter & Hampton, LLP; 333 South Hope Street, 43rd Floor, Los Angeles, CA 90071 (213) 620-1780
Automobile Policy; First Party Bodily Injury – Uninsured Motorist Coverage; Dispute over whether an insurance company has a duty to make piecemeal payments under UM/UIM coverage, absent an agreement as to the ultimate amount of loss or an arbitration award. (2022)

PASTORA GUTIERREZ, ET AL. V. MERCURY CASUALTY COMPANY
VENUE: SUPERIOR COURT – COUNTY OF LOS ANGELES
Testified on Behalf of Defendant: MERCURY CASUALTY COMPANY
Attorney for Mercury Casualty: Lora D. Hemphill, Esq., Hager & Dowling, 319 E. Carrillo Street, Santa Barbara, CA 93101 (805) 966 4700.
Businessowner's Policy; Third Party; Duty to Defend; Allegations of Breach of Habitability; Duty to Defend was retendered due to Designated Premises Exclusion and Professional Services Exclusion. (2022)

DEBBIE SIEGFRIED VS. LOYA INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT – DISTRICT OF NEVADA
Testified on Behalf of Defendant: LOYA INSURANCE COMPANY
Attorney for Loya: Kristopher Zeppenfeld, Esq.; Kravits, Schnitzer, Johnson, Watson and Zeppenfeld, Chtd.; 8985 S. Eastern Avenue, Suite 200, Las Vegas, Nevada 89123 (702) 362-6666
Auto Policy; Third Party; Allegations of Unreasonable Refusal to Settle Within Policy Limits; Permissive Use Issue. (2022)

BRAD MITCHELL VS. USAA GENERAL INDEMNITY COMPANY
VENUE: UNITED STATES DISTRICT COURT – DISTRICT OF OREGON
Testified on Behalf of Defendant: USAA General Indemnity Company
Attorney for USAA GIC: Joshua N. Kastan, Esq.; Maxwell H. Goins, Esq.; DMK Law Group LLP, 1050 SW Sixth Avenue, Suite 1100, Portland, Oregon 97204 (415) 421-1100
First Party; Homeowners Claim; Alleged Windstorm Damage – Tree Branch punctured roof; alleged ensuing water damage; failure to provide prompt notice; failure to mitigate damages; failure to cooperate during the investigation. (2022)

SCOTT LINDSEY BUCHANAN v. ADMIRAL INSURANCE COMPANY
VENUE: SUPRIOR COURT – COUNTY OF SACRAMENTO
Testified on Behalf of the Insured: Sacramento Spine & Physical Therapy, Inc.
Attorney for Sacramento Spine & Physical Therapy, Inc.: Steven Schultz, Esq., 555 University Avenue, Suite 250, Sacramento, CA 95825); Attorney for Scott Lindsey Buchanan (by assignment): Daniel V. Kohls, Esq. 1520 Eureka Road, Suite 100, Roseville, CA (95661).
Third Party; Duty to Defend; Admiral Miscellaneous Medical Professional Liability Insurance Policy (Claims-Made; Claims Reported); Unreasonable Rejection of Sacramento Spine's Tender of Defense. (2022)

THOMAS WELSH and ANNE WELSH vs. SAFECO INSURANCE COMPANY OF AMERICA
VENUE: UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF UTAH
Testified on Behalf of the Insurance Company: Safeco Insurance Company of America;
Attorney Representing Safeco: Jeremy Stewart, Esq.; Scott Wiseman, Esq.; Snell & Wilmer, 15 West South Temple, Suite 1200, Salt Lake City, Utah 84101
Telephone: (801) 257-1989)
First Party; Landlord Protector's Policy; Fire damage to the dwelling that had been unoccupied for 60 days prior to the fire. There is a dispute as to whether the property was undergoing construction on the date of loss. (2022)

DAVID A. LIEBREICH, BALD EAGLE TRUST fka DAVID A. LIEBREICH REVOCABLE TRUST vs. PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE; ATLAS INSURANCE AGENCY
VENUE: IN THE CIRCUIT COURT OF THE FIRST CIRCUIT STATE OF HAWAII
Testified on behalf of defendant, PURE.
Attorney Representing PURE: Samantha Storm, Esq.; Myhre & Storm, 1003 Bishop Street, Suite 1290, Honolulu, Hawaii 96913 Telephone: (808) 524 2466
First Party; High Value Homeowners Policy; Water Damage to Structure; There is a dispute as to the nature and extent of the damage related to the covered water event; there are indications of long term exposure to water, indications of structural deficiencies; and noticeable dry rot, all of which seemingly are not loss related. (2022)

LYNNE EGINOIRE vs. ALLSTATE INSURANCE COMPANY
VENUE: SUPERIOR COURT – COUNTY OF LOS ANGELES
Testified on behalf of defendant, ALLSTATE Insurance Company and the claim representative Patrick Macklin
Attorney Representing Allstate: Gene Stone, Esq., Homan, Stone & Rossi, 1461 Ford Street, Suite 201, Redlands, CA 92373 (909) 307 9380
First Party; Homeowners; Kitchen Fire; Point of Origin was in a lower kitchen cabinet; the insured did extensive remodel work. Dispute regarding scope of loss. (2022)

MICHAEL MCGRANAHAN vs. GEICO GENERAL INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
Testified on behalf of defendant, GEICO General Insurance Company
Attorney Representing GEICO: Jared K. LeBeau, Esq., Michael L. Bean, Esq. – Sheppard Mullin Richter & Hampton, LLP, 501 West Broadway, 19th Floor, San Diego, CA 92101 (619) 338 6500
First Party; Underinsured Motorist; Bodily Injury. The issue was the reasonableness of GEICO's request for supporting documentation in response to a time-limited, policy limits demand. (2023)

KARA FLICK V. UNITED SERVICES AUTOMOBILE ASSOCIATION
VENUE: Superior Court of the State of California; County of Santa Barbara
Testified on behalf of defendant, United Services Automobile Association (USAA)
Attorney Representing USAA: DMK Law Group, LLP (Robert S. McLay, Esq.), 50 California Street, Suite 1500, San Francisco, CA 94111 (415) 421-1100
Third Party; Automobile Liability Policy. Alleged unreasonable refusal to settle resulting in an excess judgment against USAA's member. The issues were the reasonableness of the demand; and the reasonableness of USAA's response to the demand. (2023)

SCRIPPS HEALTH v. NAUTILUS INSURANCE COMPANY
VENUE: United States District Court, Southern District of California
I testified on behalf of defendant, Nautilus Insurance Company
Attorney Representing Nautilus: Selman, Leichenger, Edson, Hsu (Bridget A. Moorhead, Esq.), 101 West Broadway, San Diego, CA 92101 (619) 564-3619
Manuscript Policy; Site Specific Pollution Policy; Dispute regarding normal preventative maintenance vs. a pollution condition. (2023)

JOHN RAPP V. MERCURY CASUALTY COMPANY
VENUE: Superior Court for the State of California, For the County of Orange
I testified on behalf of defendant, Mercury Casualty Company.
Attorney Representing Mercury Casualty: Kathryn J. Harvey, Esq., Wesierski & Zurek, LLP, 29 Orchard Road, Lake Forest, CA 92630 (949) 975 1000
Homeowners Policy; First Party; Water Damage Claim. The main issues surrounded the separation of the damaged from the undamaged property. Mercury paid all undisputed amounts. The insured undertook a major remodel. (2023)

GLOBAL LIQUIDATION COMPANY, INC. v. NATIONWIDE INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
I testified on behalf of defendant, Nationwide Insurance Company
Attorney Representing Nationwide: Jeffrey Butler, Esq., Dentons US LLP, 1999 Harrison Street, Suite 1300, Oakland, CA 94612 (415) 882 0393
Commercial Policy; First Party; Water Damage Claim. The major dispute was the nature and extent of damage to rugs: 365 claimed; 25 actually confirmed. (2023)

SOUTHERN CALIFORNIA EDISON COMPANY vs. GREENWICH INSURANCE COMPANY. VENUE: UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA. I testified on behalf of the defendant, GREENWICH INSURANCE COMPANY. Attorney Representing Greenwich: Yvonne Schulte, Esq., Clyde & Co., 355 S. Grand Avenue, Suite 1400, Los Angeles, CA 90071. (213) 358-7600 Commercial General Liability Coverage Form; Greenwich's Named Insured was Utility Tree Service; Southern California Edison made a tender of defense to Greenwich under an additional insured endorsement in connection with multiple pieces of litigation arising from the Bobcat fire. Alleged unreasonable rejection of SCE's tender by Greenwich. (2023)

PAUL AND LOUISE LEUSCHNER v. NATIONSIDE MUTUAL INSURANCE COMPANY & LAURA BUSKIRK. VENUE: SONOMA COUNTY SUPERIOR COURT
I testified on behalf of the defendants, Nationwide Mutual and Ms. Buskirk
Attorney Representing Nationwide: Jon Braunstein, Esq., Dentons, 1999 Harrison Street, Suite1300, Oakland, CA 94612. (415 882 2425)
Homeowners Policy; First Party; Damage to Dwelling and Other Structures from impact by a tree fall. The issue was mainly the reasonableness of the conduct of both Nationwide and Ms. Buskirk in the processing of the underlying claim, with elderly Insureds. (2023)

STEVEN WILLIAMS v. ALLSTATE INSURANCE COMPANY; PAGLIA & ASSOCIATES CONSTRUCTION, INC. d.b.a. PROTECH CONSTRUCTION RESTORATION
VENUE: ORANGE COUNTY SUPERIOR COURT
I testified on behalf of defendant Allstate Insurance Company
Attorney Representing Allstate: Jeffrey V. Commisso, Esq., Sheppard, Mullin, Richter & Hampton, LLP, 501 West Broadway, San Diego, CA 92101-3598 (619) 338-6500
Homeowners Policy; First Party; Water Damage Claim; Preferred Vendor; Negligent Workmanship by a vendor, resulting in asbestos cross contamination. (2023)

STANLEY ELLIS v. GOVERNMENT EMPLOYEE INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT – EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION
I testified on behalf of defendant GEICO.
Attorney Representing GEICO: Suzanne Y. Badawi, Esq., Sheppard, Mullin, Richter & Hampton, LLP, 333 South Hope Street, Los Angeles CA 90071 (213) 620-1780.
Automobile; First Party Bodily Injury; Uninsured Motorist Claim; Questions regarding whether an insurance company is required to pay undisputed amounts on a first party BI claim; whether a claim professional can reasonably question the opinions of a medical professional; the timing of an IME. (2023)

RMB REAL ESTATE INVESTMENTS 2, LLC v. CALIFORNIA CAPITAL INSURANCE COMPANY: VENUE: SUPERIOR COURT OF THE COUNTY OF MARIN
I testified on behalf of the defendant, California Capital.
Attorney Representing California Capital: Gene A. Weisberg, Esq., Gladstone & Weisberg, 300 Corporate Point, Suite 400, Culver City, CA 90230. (310 821 9000)
Businessowners Policy; First Party; Tubbs Fire; Destruction of a 72 unit apartment complex that was replaced with significant upgrades. A dispute over the language contained in the Increased Period of Restoration endorsement; and a dispute over the reasonable time required to rebuild property of similar quality to the minimum law and ordinance governing that construction. (2023)

LEVON LEO HAIRAPETIAN v. CERTAIN UNDERWRITERS AT LLOYD'S LONDON
VENUE: SUPERIOR COURT FOR THE STATEMENT OF CALIFORNIA, COUNTY OF ORANGE
I testified on behalf of the defendant, Certain Underwriters at Lloyd's.
Attorney Representing Underwriters: Tammy Louie Thai, Esq., Valiant Law, 800 Ferrari Lane, Suite 100, Ontario, California 91764 (909 677 2270)
Homeowners Policy; First Party Claim; Alleged Water Damage; A major discrepancy between the initial water remediation work and dry down logs and the actual nature and extent of the actual demolition performed by the insured. Major demolition was conducted prior to Lloyd's inspection of the loss, and seems to have been conducted in areas removed from the actual path of the water. (2024)

DAVID ROSENBERG and INGRID JKELLIN v. CALIFORNIA AUTOMOBILE INSURANCE COMPANY
VENUE: SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OR ORANGE
I testified on behalf of the defendant, California Automobile Insurance Company.
Attorney Representing CAIC: Mary Kim, Esq., Wesierski & Zurek LLP, 29 Orchard Road, Lake Forest, CA 92630 (949 975-1000)
Homeowners Policy; First Party Claim; Residential Water Damage: This involved two separate water damage claims: one in 2017; and a subsequent water damage claim in 2019. In my opinion, the allegations in connection with the 2017 claim was contractually time-barred. The 2019 claim involved substantially the same damages the Insured claimed in 2017. The 2019 claim involved the effect of an insurance company's inadvertently paying for the same damage twice. Serious questions as to whether the Insured took reasonable steps to protect the property from further damage. The 2019 claim involved two separate points of origin; the Insured only decided to report one of them. I rendered the opinion that the Insured's 2019 claim had been substantially overpaid by CAIC. (2024)

MARYAM HEDAYATI v. INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB
VENUE: SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE – CENTRAL JUSTICE CENTER
I testified on behalf of Defendant, Interinsurance Exchange of the Automobile Club
Attorney Representing the Exchange: John Brooks, Esq., Thomas R. Proctor, Esq., Sheppard Mullin, Richter & Hampton, LLP, 501 West Broadway, San Diego, CA 92101 (619) 338 6500.
Automobile Policy; 25/50 Limits; Catastrophic Injury: Within 30 days or less, the Auto Club offered its policy limits. On a Wednesday, the day before the Thanksgiving holiday, the Auto Club received a 7-day time-limited demand. With the timing during the holiday, and with the conditions placed upon the response, the Auto Club was effectively given 2-working days to respond to the conditions of the demand. Due to a clerical issue, the demand did not reach the desk of a claims manager until the day after the demand had expired. No extensions were granted. (2024)

MIDTOWN HOTEL GROUP, LLC v. SELECTIVE INSURANCE COMPANY OF AMERICA
VENUE: UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA
I testified on behalf of Defendant, Selective Insurance Company of America
Attorney Representing Selective: Amanda Hough, Esq., Clyde & Co US LLP, 400E. Van Buren Street, Suite 440, Phoenix, AZ 85004 (480) 746-4580
Commercial Property Policy; Ramada Inn brand converting from Holiday Inn. Water damage claim; Predominant cause was mechanical breakdown; ensuing water damage to the interior of the hotel. At the time of the loss, the hotel's chiller tower was deteriorated and had reached the end of its useful life; the roof deck had extensive pre-existing deterioration. Selective paid for all undisputed direct physical loss due to the ensuing escape of water. A dispute arose as to whether Selective had any duty to replace the entire chiller tower and the entire deteriorated roof deck. There also arose a question as to whether, because of the water damage to certain rooms, Selective had a duty to match the remaining, undamaged rooms in the hotel. (2024)

PAMELA SCHWENT & JULIE WESTCOTT v. TRAVELERS PERSONAL INSURANCE COMPANY: VENUE: UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO: I testified on behalf of Defendant, Travelers Personal Insurance Company. Attorney Representing Travelers: Jeri Wettestad, Esq.; Daniel Mowrey, Esq., Clyde Co. US, LLP: 999 19th Street, Suite 1765N, Denver, CO 80202 (303) 301-8950 Homeowners Insurance Policy; Alleged Sewer Back-up; The Insured was represented by a public adjuster whose conduct may have fallen below the standard of care; I testified regarding the reasonableness of the conduct of the Travelers Claims Professionals during the processing of this claim. (2024)

ALAN RITTENBERG vs. NATIONWIDE MUTUAL INSURANCE COMPANY
VENUE: United States District Court, Central District of California
I testified on behalf of Defendant: Nationwide Mutual Insurance Company
Attorney Defending Nationwide: Hines, Hampton, Pelinda, LLP; by Brian Pelanda, Esq.
23 Corporate Plaza Drive, Suite 150, Newport Beach, CA 92660 (714) 513-1122
First Party; Homeowners Policy; Residential Fire Damage. This was an interesting case. There was a dispute between Mr. Rittenberg and Nationwide as to the amount necessary to repair his fire damage. The claim went to appraisal. Nationwide paid the actual cash value of the loss based on the appraisal award. While attempting to determine whether to pay replacement cost benefits, Nationwide learned, through discovery, that it was very questionable whether Mr. Rittenberg had actually incurred amounts to repair the damage with like kind and quality. The actual hard costs of Mr. Rittenberg's contractor were considerably less than the Appraisal Award. It was learned that the contractor had agreed to pay the 10% public adjuster's fee. There was also a dispute regarding the period of restoration. (2024)

CLARE/MATRIX vs. NATIONWIDE HARLEYSVILLE INSURANCE COMPANY
VENUE: SUPERIOR COURT – COUNTY OF LOS ANGELES
Testified on Behalf of Defendant: Nationwide/Harleysville
Attorney for Harleysville: Michelle Bernard, Esq., Gordon Rees Scully Mansukhani, LLP, 101 W. Broadway, Suite 2000, San Diego, CA 92101 (619) 230 7769
First Party; Commercial Policy; Fire Damage; Dispute over the calculation of alleged loss of business income for a non-profit corporation. (2025)

K. HOVNANIAN ARIZONA OPERATIONS, LLC V. E.W.D., INC. d/b/a ROOF RITE; ERIC W. DONNELLY ENDURANCE AMERICAN SPECIALTY INSURANCE
VENUE: Superior Court of the State of Arizona
Testified on Behalf of Defendant: Endurance American Specialty Insurance
Attorney representing Endurance: William Reeves, Esq., Morales, Fierro & Reeves, 1440 Maria Lane, Suite 200, Walnut Creek, CA 94596 (925) 288 1776
Construction Defect; Third-Party; Duty to Defend; Duty to Indemnify: K. Hovnanian was the general contractor, and was an additional insured under Roof Rite's general liability policy. Both defective workmanship and consequential damages were repaired dated back to 2017/2018. Endurance was not notified of the claim until 2020. One of the main questions was the status of K. Hovnanian: KHOV was directly tendering demands for reimbursement to Endurance (as a claimant). And at one point, a PDA notice was tendered to Endurance by KHOV (as an additional insured). (2025)

NALINI KUMAR & ALLEN SINGH v. NATIONWIDE MUTUAL INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA
Testified on Behalf of Defendant: Nationwide Mutual Insurance Company
Attorney Representing Nationwide: Jeffry Butler, Esq.; Dentons, San Francisco/Oakland, (415) 882-0393 First Party; Homeowners Policy; Fire Claim. The claim was ultimately denied due to the Insured's failure to complete an examination under oath, due to the argued interference with the EUO proceeding by counsel representing the Insured. (2025)

SFBVC, LLC, dba THE BUENA VISTA CAFÉ v. SCOTTSDALE INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
Testified on Behalf of the Defendant: Scottsdale Insurance Company
Attorney Representing Scottsdale: Jon Braunstein, Esq., Dentons US, 1999 Harrison Street, Suite 1300, Oakland, CA (415) 882 5000.
Commercial Policy; First Party; Property Damage; Alleged damage to the building occupied by BVC caused by construction work next door. Scottsdale paid all undisputed amounts. The remaining dispute deals with the extent to which the BVC building was damaged (if any) by vibrations related to the construction activity next door. This claim involves contractual limitations issues; statute of limitations issues; Scottsdale's reasonable reliance on experts; and Scottsdale's compliance with the Fair Claims Settlement Practices Regulations. (2025)

KEVIN AMINI & MOHSEN VAGHEFI v. NATIONWIDE INSURANCE COMPANY
VENUE: UNITED STATES DISTRICT COURT, Eastern District of California, Sacramento
Testified on Behalf of the Defendant: Nationwide insurance Company
Attorney Representing Nationwide: Emily S. Nozick, Esq., Dentons US, 1999 Harrison Street, Suite 1210, Oakland, CA 94612 (415) 882 – 0170
Commercial Policy; First Party; Property Damage; Failure of 65 year old wooden bowstring trusses from an unknown cause; Nationwide reasonably relied upon the opinion of an independent third-party engineering expert when analyzing the cause of the failure and coverage under its policy. (2025)

DAL WOONG PARK & SEUNG RAN PARK v. MERCURY GENERAL CORPORATION, MERCURY INSURANCE COMPANY, CALIFORNIA AUTOMOBILE INSURANCE COMPANY
VENUE: SUPERIOR COURT OF THE STATE OF CALIFORNIA, LOS ANGELES COUNTY
Testified on Behalf of the Defendant: California Automobile Insurance Company
Attorney Representing CAIC: Tod Castronovo, Esq., Shaver & Castronovo, LLC., 16255 Ventura Boulevard, Suite 850, Encino, CA 91436 (818) 905-6001
Homeowners Policy; First Party; Property Damage; Water Damage Claim; There was a slab leak; there is a dispute as to the reasonable and necessary repairs; re-route vs. re-pipe. Following the loss, the named insureds relocated with their son and did not incur any additional expenses. There is a dispute as to whether CAIC reasonably advised them of the availability of ALE coverage. (2025)

JDF HOLDINGS, LLC; JAMES FINEGOLD and DANA FINEGOLD vs. QBE INSURANCE CORPORATION; MARSH & MCLENNAN AGENCY LLC; KEVIN MIRSKY
VENUE: SUPERIOR COURT FOR THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN FRANCISCO. Testified on Behalf of the Defendant: QBE Insurance Corporation
Attorney Representing QBE: Jonathan Gross, Esq., Eileen Gaisford, Esq., Mound Cotton Wollan & Greengrass, LLP, 2200 Powell Street, Suite 1050, Emeryville, CA 94608
(510) 900-9371. Commercial Policy; Fire Claim; The fire damage to the insured structure was thoroughly investigated and resolved without dispute prior to litigation. The dispute involved whether JDF Holdings was entitled to loss of rents coverage. The structure was not rented at the time of the fire, and had not been rented for quite some time. JDF Holdings was using the building for personal storage. JDF argued that at the time of the fire it was in the process of negotiating a lease; that the lease was ready to be signed the day before the fire; and was not signed because of the fire. QBE questioned whether the fire actually resulted in any loss of rental income; and what portion of the potential lease represented land or the value of land, both of which were property not covered under QBE's policy. (2025)

RAKESH BANSAL & HEMA T. BANSAL vs NATIONWIDE MUTUAL INSURANCE COMPANY
UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA. I testified on behalf of the Defendant, Nationwide Mutual. The attorney representing Nationwide was Mark L. Hanover, Esq., and Matthew Chipman, Esq., Dentons US LLP, 1999 Harrison Street, Suite 1210, Oakland, CA 94612. This was a residential water damage claim under a homeowner's policy. The dispute involved Nationwide's initial and subsequent evaluation of the extent of the water damage. The issue of valuation went to appraisal and Bansal argued that the appraisal award was indicative of an unreasonably low evaluation by Nationwide. There is also a dispute over Bansal's entitlement to ALE benefits. Following the water loss, Bansal relocated to a second home, bringing into question whether Bansal ever actually incurred any increase in normal living expenses. (2025)

LAIRD HAMILTON; GABRIELLE REECE vs. ALLSTATE INSURANCE COMPANY
Superior Court of the State of California, County of Los Angeles. I testified on behalf of Defendant, Allstate Insurance Company. The attorneys representing Allstate were Ronald D. Kent, Esq., Justin A. Martin, Esq., and Sabrina Chow, Esq., Dentons, US, 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017 (213) 623-9300. This is a residential smoke damage claim arising from the Woolsey fire in 2018. There was no fire damage to the dwelling, just smoke. In just over 60 days, Allstate had inspected the property on several occasions, issued payments for undisputed amounts, the interior of the property had been remediated, and the insured had returned home. At the time they returned home, the Insured had incurred about $41,892.64 to remediate the property. A public adjuster was retained who prepared estimates for dwelling and contents totaling about $1.2 million. The remainder of the claim was essentially a damage/valuation dispute regarding the nature and extent of covered damages. (2025)

LIANNA DANIEL v. TRAVELERS PERSONAL INSURANCE COMPANY
In the United States District Court for The District of Colorado
I testified on behalf of the defendant, Travelers. The attorney representing Travelers is Jeri J. Wettestad, Esq, Clyde & Co, 999 18th Street, Suite 1765N, Denver, CO 80202 (303) 301 8950. This was a first party property damage claim under a Landlord Dwelling Policy. The property was last rented to a legal tenant in late 2020. Sometime during the winter of 2021, squatters illegally moved into the property. In May, 2022, the property was set afire while the squatters were removing belongings. Travelers denied the claim as the property had been vacant more than 60 consecutive days prior to the date of loss and the caused of the fire was vandalism and malicious mischief. (2025)

J. CELLARS INVESTMENT LLC, dba JOSEPH CELLARS WINERY, JOSEPH BARTHOLOMEW v. HDI GLOBAL INSURANCE COMPANY; Superior Court of California, County of Los Angeles; I testified on behalf of the defendant, HDI Global. The attorney defending HDI Global is Bridget Moorhead, Esq.; Selman Leichenger Edson Hsu Newman & Moore, LLP, 11766 Wilshire Blvd., Los Angeles, CA 90025-6546. This was a smoke taint claim to Cabernet Sauvignon grapes growing on the vine during the 2020 Glass Fire. The insured had no crop policy; grapes growing on the vine is not property covered under the HDI policy. This claim involves the nature and extent of any loss of business income actually sustained during the 10-day evacuation period under a Civil Authorities endorsement. (2025)

PARSA ROHANI v. MERCURY INSURANCE COMPANY: SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ORANGE. I testified on behalf of Mercury. Mercury was defended by Kathryn Harvey/Mary Kim of Wesierski & Zurek, LLP, 29 Orchard Drive, Lake Forest, California 92630 (949) 975-1000. This was a water damage claim under a rental dwelling policy. Mercury's vendor inspected the loss and determined the kitchen cabinets were salvageable; following Mercury's inspection, the cabinets were disposed of. To complicate the adjustment, Mr. Rohani undertook a major remodel. There is a dispute over whether the cabinets were repairable; whether a granite counter top could be reused; and whether there is water damage to a tile floor. (2025)

VINNER BROOKS, JR., DANNY BROOKS and TODD LOPEZ As Wrongful Death Personal Representative of the Estate of Hamza Brooks vs. United Services Automobile Association. Venue: State of New Mexico, County of Bernalillo, Second Judicial District Court. I testified on behalf of USAA. USAA was defended by Joshua Kastan, Esq./Emmaline Young, Esq. of DKM Law Group, 50 California Street, San Francisco, CA 94111 (415) 421-1100. This is an Underinsured Motorist claim. Young Hamza as a pedestrian was fatally injured – no covered auto was involved. This claim involves a question of whether Hamza, a non-resident relative was entitled to UIM benefits under his grandfather's policy. (2026)

LYLE ALEX WIXCOM vs. USAA GENERAL INDEMNITY COMPANY
UNITED STATES DISTRICT COURT – EASTERN DISTRICT OF WASHINGTON
I testified on behalf of USAA GIC. USAA GIC was defended by Joshua K. Kastan, Esq./Emmaline Young, Esq. of DKM Law Group, 1700 7th Avenue, suite 2100, Seattle, WA 98101. This claim involves an alleged theft of a vehicle occurring in Chicago, Illinois. The disputed questions include whether there was actually a loss as defined within the USAA GIC policy (prior to reporting the claim to USAA GIC, the vehicle was recovered and towed, with no indication of any direct physical loss); and if there arguably was a loss, did Mr. Wixom make material misrepresentations during the presentation of his claim. (2026)

JASHAWN WILEY v. INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB
SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES
I testified on behalf of the defendant, Interinsurance Exchange of the Automobile Club. The Exchange was defended by Tod M. Castronovo, Esq., Shaver Castronovo, LLP, 16255 Ventura Blvd., Suite 850, Encino, CA 91436. This claim involved alleged collision damage to a parked unoccupied vehicle. The insured, while out of state, loaned her vehicle to her brother. On the alleged date of loss the brother awoke to find the vehicle severely damaged and in the process of being loaded onto a tow truck. During the course of the Exchange's investigation there were inconsistent statements made between the insured and her brother; and the insured and her son. The claim involved providers known to SIU for alleged staged accidents. Ultimately the claim was denied, in part, because The Exchange concluded the loss simply could not have occurred the way it was reported. (2026)

KATHERINE SLETTERINK and TIM SLETTERINK v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY – UNITED STATE DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA. I testified on behalf of the defendant, American Family Mutual. American Family was defended by Joshua N. Kaston, Esq., and Emmaline L. Young, Esq., of DKM Law Group, LLP, 1700 7th Avenue, Seattle, WA 98101. This claim involved a first party water damage claim under a homeowner's policy. While the insured was away their sink overflowed. The main dispute involved coverage under Loss of Use – Additional Living Expense. The loss occurred in December, 2024. The only substantial damage was to the kitchen. The insured was reimbursed for increased costs of food. The Insured continued to reside in the property until July, 2025, at which point they relocated due to the start of construction. In hindsight the Insured is claiming an entitlement to the value of a temporary home from day one, but did not incur any expense. (2026)

SUSANNA MURADYAN, et al vs. MID-CENTURY INSURANCE COMPANY – SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES. I testified on behalf of the defendant, Mid-Century Insurance Company. Mid-Century was defended by Tharpe & Howell, LLP, 15250 Ventura Blvd., Sherman Oaks, CA 91403. This claim involved a first-party water damage claim under a residential policy. There was a significant delay in reporting the claim. The litigation involved a dispute as to the policy terms “sudden and accidental” and “over a period of time.” (2026)

DIDIET FIALLO AND FABIOLA NAVARRO FIALLOW, et al. vs. UNITED SERVICES AUTOMOBILE ASSOCIATION – UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA. I testified on behalf of the defendant, United Services Automobile Association. USAA was defended by DKM Law Group, LLP, Joshua N. Kastan, Esq., Keri L. Salet, Esq., and Jessica N. Marshall, Esq. 50 California Street, Suite 1500, San Francisco, CA 94111. This claim involved a residential water damage claim under a residential policy. There was an initial water damage claim in January, 2022. In June of 2024, a second water event occurred, and mold was discovered. There is a disputed as to whether the mold discovered in 2024 was related to the 2022 claim. The insured argues an alleged failure on the part of USAA to promptly assigned a mitigation vendor. (2026)

# ATTACHMENT 3

**Paul Hamilton**
**Property & Casualty Claim Consultant**
**122 Calistoga Road, #314**
**Santa Rosa, CA 95409**
**(707) 545-4109**
**phamil64@icloud.com**

**PRIOR EXPERT WITNESS TRIAL TESTIMONY**

**The Pacific Group v. First State Insurance Company**
San Francisco County Superior Court
Testified on behalf of Defendant First State Insurance Company
Attorney for Defendant: John Frye, Esq.
Third Party; Duty to Defend; Excess Liability; Advertising Injury

**Gentile v. CSAA**
Sonoma County Superior Court
Testified on behalf of Plaintiff, Gentile
Attorney for Plaintiff: James Kemp, Esq.
First Party; Property Damage; Vandalism

**Ricucci v. Fire Insurance Exchange**
Marin County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Francis X. Doherty, Esq.
First Party Property Damage; Personal Lines; Windstorm

**Grewal v. CSAA**
Santa Clara County Superior Court
Testified on behalf of Defendant, CSAA
Attorney for Defendant: Stephan A. Barber, Esq.
First Party Property Damage; Personal Lines; Fire; Suspected Arson

**Ziegler v. Associated Indemnity Insurance**
San Mateo County Superior Court
Testified on behalf of Defendant, Associated Indemnity Insurance
Attorney for Defendant: Gary Selvin, Esq.
First Party; Property Damage; Personal Lines; Earthquake

**Larkspur Isle Condominium Association v. Farmers Insurance Group, et al.**
Marin County Superior Court
Testified on behalf of Defendant, Farmers Insurance
Attorney for Defendant: Jon H. York, Esq.
First Party; Property Damage; Construction Defect; Water Damage

**Grant v. Allstate Insurance Company**
Contra Costa County Superior Court
Testified on behalf of Defendant, Allstate Insurance Company
Attorney for Defendant: Howard Janssen, Esq.
First Party; Property Damage; Rental Dwelling; Vandalism/ Fire

**Sung v. CSAA**
Alameda County Superior Court
Testified on behalf of Defendant, CSAA
Attorney for Defendant: Greg Tolson, Esq.
First Party; Property Damage; Personal Lines; Earthquake

**Oznowicz v. Fire insurance Exchange**
Alameda County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Jon H. York, Esq.
First Party; Property Damage; Course of Construction; Fire

**Scottsdale Insurance Company v. Chateau Glean HOA**
Los Angeles County Superior Court
Testified on behalf of Plaintiff/Cross-Defendant Scottsdale Insurance Co.
Attorney for Defendant: Tricia A. McCarthy, Esq.
Third Party; Duty to Defend

**Wolf v. Royal Insurance Company**
United States District Court
Northern District of California
Testified on behalf of Defendant, Royal Insurance Company
Attorney for Defendant: Roger Vosberg, Esq.
First Party; Property Damage; Marine Insurance; Lost at Sea; Suspected Fraud

**Baghoumian v. Farmers Insurance Group, et al.**
Merced County Superior Court
Testified on behalf of Plaintiff, Baghoumian
Attorney for Plaintiff: Daniel Street, Esq.
First Party; Commercial Property; Mobile Equipment Floater; Theft

**<u>Metropolitan Life Insurance Company v. CalFarm Insurance Company</u>**
Fresno County Superior Court
Testified on behalf of Defendant, CalFarm Insurance Company
Attorney for Defendant: G. Edward Rudloff, Jr.
First Party; Property Damage; Commercial Property Cover; Contamination

**<u>Mullin v. CSAA</u>**
San Mateo County Superior Court
Testified on behalf of Defendant, CSAA
Attorney for Defendant: Lee J. Danforth, Esq.
First Party; Personal Lines; Property Damage; Earthquake

**<u>Qadeer v. Fire Insurance Exchange</u>**
Alameda County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Kevin M. Smith, Esq.
First Party; Personal Lines; Property; Theft Claim

**<u>O'Neil v. Farmers Insurance Group, et al.</u>**
Alameda County Superior Court
Testified on behalf of Defendant, Farmers Insurance Group
Attorney for Defendant: Fred M. Feller, Esq.
First Party; Personal Lines; Property Damage; Theft Claim

**<u>Shade Foods, Inc. v. Innovative Products Sales & Marketing</u>**
**(Innovative Products Sales & Marketing v. Northbrook Insurance Company**
San Francisco County Superior Court
Testified on behalf of the Plaintiff Insured.
Attorney for Plaintiff: David A. Fike, Esq.
Third Party; Commercial General Liability; Property Damage; Duty to Defend

**<u>Vollmer v. Farmers Insurance Group, Inc., et al.</u>**
San Diego County Superior Court
Testified on behalf of Plaintiff Vollmer
Attorney for Plaintiff: Wesley Thompson, Esq./ Bruce Sulzner, Esq.
First Party; Personal Lines; Homeowners Policy; Burglary; Alleged Material Misrepresentation.

**<u>Bandali v. Allstate Insurance Company</u>**
Alameda County Superior Court
Testified on behalf of Defendant, Allstate Insurance Company
Attorney for Defendant: Howard Janssen, Esq.
Automobile Policy; Uninsured Motorist Coverage

**<u>Smith v. Fire Insurance Exchange</u>**
San Mateo County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant, Lee J. Danforth, Esq.
Third Party; Duty to Defend

**<u>Hutson v. Farmers Insurance Exchange</u>**
Contra Costa County Superior Court
Testified on behalf of Defendant, Farmers Insurance Exchange
Attorney for Defendant: Jon H. York, Esq.
First Party; Property Damage; Fire; Suspected Arson

**<u>Machado/Meltzer v. Farmers Insurance Exchange</u>**
Sacramento County Superior Court
Testified on behalf of Defendant, Farmers Insurance Exchange
Attorney for Defendant: James A. Sarrail, Esq.
First Party; Personal Lines; Fire Claim; Suspected Arson

**<u>O'Shea v. Allstate Insurance Company</u>**
San Francisco County Superior Court
Testified on behalf of Defendant, Allstate Insurance Company
Attorney for Defendant: Thomas M. Freeman, Esq.
First Party; Personal Lines; Homeowners Policy; Earthquake claim

**<u>Wes Winters, Wes Winters Resort Park v. The Charter Oak Fire Insurance</u>**
U. S. District Court
District of New Mexico
Testified on behalf of Defendant, The Charter Oak Fire Insurance Company
Attorney for Defendant: Lisa P. Ford, Esq.
First Party; Commercial Property; Settling; Construction Defect; Material Misrepresentation

**<u>Kelly-Moore Paint Company v. American Manufacturer's Mutual Insurance Co.</u>**
San Mateo County Superior Court
Testified on behalf of Plaintiff, Kelly-Moore Paint Company
Attorney for Plaintiff: Philip L. Pillsbury, Jr., Esq.
First Party; Commercial Property; Boiler & Machinery; Cause of Loss; Claim Adjustment

**<u>Lugo v. Allstate Insurance Company</u>**
Sacramento County Superior Court
Testified on behalf of Defendant, Allstate Insurance Company
Attorney for Defendant: Richard J. Edson, Esq.
First Party; Personal Lines; Fire Claim; Suspected Arson; Claims handling practices

**<u>Bunnell v. California Capitol Insurance Company</u>**
Santa Clara County Superior Court
Testified on behalf of Plaintiff/Policyholder, David Bunnell
Attorney for Plaintiff: Allen J. Ruby, Esq.
Third Party; Duty to Defend; Personal Injury Claim; Business Pursuits Exclusion

**<u>Phillips v. Fire Insurance Exchange</u>**
Contra Costa County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Linda J. Lynch, Esq.
First Party; Personal Lines; Homeowners Policy; Fire Claim; Suspected Arson

**<u>Borg v. Transamerica Insurance Company</u>**
San Mateo County Superior Court
Testified on behalf of Defendant, Transamerica Insurance Company
Attorney for Defendant: James A. Sarrail, Esq.
Third Party; Personal Lines; Homeowners Policy; Duty to Defend; Encroachment

**<u>Findley v. Farmers Insurance Exchange</u>**
Fresno County Superior Court
Testified on behalf of Plaintiff/Policyholder, H. Wayne Findley, Jr.
Attorney for Plaintiff: Philip Pillsbury, Esq.
First Party; Rental Policy; Fire Claim; Suspected Arson; SIU Handling

**<u>Enron Oil v. Certain Underwriters At Lloyds</u>**
U.S. District Court
Great Falls Division, Great Falls, Montana
Testified on behalf of Plaintiff/Policyholder E0TT Energy Operating Limited Partnership
Attorney for Plaintiff: Glenn E. Tremper, Esq.
Third Party; Commercial; Excess Indemnity; Duty to Indemnify

**<u>Beverly Graham v. Allstate Insurance Company</u>**
Humboldt County Superior Court
Testified on behalf of Defendant, Allstate Insurance Company
Attorney for Defendant: Howard A. Janssen, Esq.
First Party; Commercial Policy; Fire Claim; Suspected Arson/Misrepresentation

**<u>David S. Snowden & Carolyn C. Snowden v. Fire Insurance Exchange</u>**
Sonoma County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Kevin M. Smith/ Genese Dopson Smith
First Party; Personal Lines; Fire Claim; Suspected Arson/Misrepresentation

**<u>Jonathan A. Allen, et al. v. National Casualty Company</u>**
U.S. District Court
Clark County Nevada
Testified on behalf of Defendant, National Casualty Company
Attorney for Defendant: Don F. Shreve, Jr., Esq.
Third Party; Commercial General Liability; Duty to Defend; Assault & Battery

**<u>Lee Racicot v. CalFarm Insurance Company</u>**
Nevada County Superior Court
Testified on behalf of Plaintiff, Lee Racicot
Attorney for Plaintiff: Arthur Leinwohl, Esq.
First Party; Personal Lines; Homeowners Policy; Fire Loss; Application of Replacement Cost Coverage; Alleged Material Misrepresentation, Concealment and Fraud

**<u>Samuelson, Hornaday & Schafer v. Atlantic Mutual Insurance Company</u>**
Marin County Superior Court
Testified on behalf of Defendant, Atlantic Mutual Insurance Company
Attorney for Defendant: Gary R. Selvin, Esq.
Third Party; Commercial General Liability; Duty to Defend; Duty to Indemnify; Alienated Premises Exclusion

**<u>Chrysler Capital Corporation v. Zurich Insurance Company</u>**
Los Angeles County Superior Court
Testified on behalf of Defendant, Zurich Insurance Company
Attorney for Defendant: Jonathan Gross, Esq./ Mark Wuerfel, Esq.
First Party; Commercial Policy; Northridge Earthquake Claim

**<u>Phillip Decker v. Fire Insurance Exchange</u>**
Santa Clara County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Lee J. Danforth, Esq.
First Party; Personal Lines; Homeowners Policy; Fire Claim; Wildfire; Adequacy of Limits of Liability

**David Copperfield & DCDI v. Fireman's Fund Insurance Company**
United States District Court
District Court of Nevada – Las Vegas
Testified on behalf of Defendant, Fireman's Fund Insurance Company
Attorney for Defendant: Bruce Laxalt, Esq.
Theatrical Production Policy; Inland Marine Floater; Due Diligence Clause
(Testified in Deposition Only)

**Travelers Casualty & Surety Company v. Employers Insurance of Wausau**
Contra Costa County Superior Court
Testified on behalf of Plaintiff: Travelers Casualty & Surety Company
Attorney for Plaintiff: Michael Prough, Esq.
Third Party; Construction Defect; Commercial Liability Policy; Equitable Indemnity

**Santa Anita Church v. GuideOne Mutual Insurance Company**
Los Angeles County Superior Court
Testified on behalf of Defendant, GuideOne Mutual Insurance Company
Attorney for Defendant: David Jones, Esq.
First Party; Church Policy; Claims Handling Practices; Imminent Collapse

**Burton v. Mercury Casualty Insurance Company**
Orange County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Company
Attorney for Defendant: John Hager, Esq.
First Party; Personal Lines; Homeowners Policy; Mold; Claims Handling Issues; Material Misrepresentations

**Buhrman v. Old United Insurance Company**
Riverside County Superior Court
Testified on behalf of Plaintiff, Donald Buhrman
Attorney for Plaintiff: Donald B. Cripe, Esq.
First Party; Marine Policy; Rescission

**Sarup, dba Hi-Tech Auto v. Farmers Insurance Company, et al.**
Solano County Superior Court
Testified on behalf of Defendant, Truck Insurance Exchange
Attorney for Defendant: Ann K. Johnston, Esq.
First Party; Commercial Property Policy; Auto Body Shop; Fire Claim; Suspected Arson; Lack of Cooperation

**Davis (Simons) v. Safeco Insurance Company of America**
Alameda County Superior Court
Testified on behalf of Defendant, Safeco Insurance Company of America
Attorney for Defendant: Ralph Lombardi, Esq./ Lori Sebransky, Esq.
First Party; Personal Lines; Homeowners Policy; Windstorm Claim

**Lana Loza v. Farmers Home Mutual Insurance Company**
Los Angeles County Superior Court
Testified on behalf of Defendant, Farmers Home Mutual Insurance Company
Attorney for Defendant: Kenneth N. Greenfield, Esq.
First Party; Personal Lines; Homeowners Policy; Earthquake Claim

**Kathleen Chaides, et al., v. Commercial Union (One Beacon)**
Alameda County Superior Court
Testified on behalf of Defendant, Commercial Union Insurance Company
Attorney for Defendant: Sara M. Thorpe, Esq.
Third Party; Commercial Liability Policy; Duty to Defend; Environmental Pollution; Standard Pollution Exclusion

**Fidelity and Guaranty Insurance Company; Sedgwick Claims Management Services v. Gretchen Reddy**
United Stated District Court
Eastern District of California (Sacramento)
Testified on behalf of Defendant, Gretchen Reddy
Attorney for Defendant: Ronald J. Cook, Esq.
Third Party; Automobile Liability; Failure to Accept Reasonable Settlement Demand

**Steve Hergenroeder, Julie Hergenroeder, et al., v. Travelers Property Casualty Insurance Company**
United States District Court
Eastern District of California (Fresno)
Testified on behalf of Defendant, Travelers Property Casualty Insurance Company
Attorney for Defendant: Marjie D. Barrows, Esq.
First Party; Homeowners Policy; Water Damage; Alleged Black Water Contamination

**Maria Elena Duran & Irene Lisa Martinez, et al., v. Pacific Specialty Insurance Company; The McGraw Group; Western Service Contract Corporation**
San Joaquin County Superior Court
Testified on behalf of Defendant, Pacific Specialty Insurance Company
Attorney for Defendant: Daniel P. Costa, Esq.
First Party; Homeowners Policy; Fire Claim; Material Misrepresentations on the Application; Fair Claims Settlement Practices Regulations

**Shinazy Enterprises, Inc.; Botta's Auto Body v. Truck Insurance Exchange; Farmers Group, Inc.; Farmers Insurance Exchange**
San Francisco County Superior Court
Testified on behalf of Defendant, Truck Insurance Exchange
Attorney for Defendant: Lee J. Danforth, Esq.
First Party; Commercial Policy; Fire Claim; Auto Body Shop; Dispute regarding the loss of Business Income

**Masha Levinson & Leon Taylor v. Fire Insurance Exchange**
San Francisco County Superior Court
Testified on behalf of Defendant, Fire Insurance Exchange
Attorney for Defendant: Lee J. Danforth, Esq.
First Party; Personal Lines Policy; Fire Claim; Claims Handling; Fair Claims Settlement Practices Regulations

**Zurich American Insurance Company v. AIU Insurance Company/ Lexington Insurance Company**
Alameda County Superior Court
Testified on behalf of Plaintiff, Zurich American Insurance Company
Attorney for Plaintiff: Joshua S. Leach, Esq.
Third Party; Commercial Liability Policy; Construction Defect; Duty to Defend; Duty to Indemnify; Equitable Contribution; Claims Handling; Continuous and Progressive Injury or Damage Exclusion

**Sean E. Ulbert; Estephanie K. Ulbert v. Mercury Casualty Company**
San Diego County Superior Court
Testified on behalf of Defendant, Mercury Casualty Company
Attorney for Defendant: John Hager, Esq.
First Party; Personal Lines; Homeowners Policy; San Diego Wildfire; Reformation; Delay in Payment of Benefits; Duties of an Insured

**Stephens & Stephens, XII, LLC v. The American Insurance Company**
San Francisco County Superior Court
Testified on behalf of the Defendant, The American Insurance Company
Attorney for Defense: Ashley B. Vinson, Esq./ Reginald Steer, Esq.
First Party; Commercial Property; Vandalism; Theft; Copper Theft; Policy Period; Claims Handling; Fair Claims Settlement Practices Regulations

**<u>Aspell, et al., v. Mercury Casualty Insurance Company</u>**
Los Angeles County Superior Court
Testified on behalf of Defendant, Mercury Casualty Insurance Company
Attorney for Defendant: John Hager, Esq.
First Party; Personal Lines Policies; The Station Wildfire; Duty to Investigate; Fair Claims Settlement Practices Regulations; Duties of a Public Adjuster
(NOTE: There were 49 separate insureds/ claims involved in this litigation)

**<u>Anthony Borreson; Michelle Borreson v. USAA Casualty Insurance Company</u>**
Madera County Superior Court
Testified on behalf of Defendant, USAA Casualty Insurance Company
Attorney for Defendant: Robert S. McLay, Esq.
First Party; Personal Lines; Homeowners Policy; Property Damage; Windstorm Claim; Duty to Investigate; Fair Claims Settlement Practices; Duties of a Public Adjuster; Mold Coverage Limits; Use of E/S Preferred Vendor

**<u>Fresno Rock Taco, LLC, and Zone Sports Center, LLC v. National Surety Corp.</u>**
United States District Court for the Eastern District of California, Fresno Division
Testified on behalf of Defendant, National Surety Corporation
Attorney for Defendant: John Hager, Esq.
First Party; Commercial Policy; Alleged Burglary; Material Misrepresentations During the Presentation of the claim.

**<u>Ron Siegel & Mindy Siegel v. Mercury Casualty Company</u>**
Orange County Superior Court
Testified on behalf of Defendant, Mercury Casualty Company
Attorney for Defendant: John Hager, Esq.
First party; Homeowners Policy; Two separate water damage claims;
Duty to Investigate; Fair Claims Settlement Practices; Application of Depreciation; Fair Rental Value; Duties of a Public Adjuster

**<u>Scottsdale Insurance Company v. American Investor Company, et al.</u>**
**JAMS Arbitration**
Testified on Behalf of Plaintiff, Scottsdale Insurance Company
Third Party; Duty to Defend; Duty to Indemnify
Financial Services Professional Liability Insurance Policy

**<u>Ibrahim Mohammed & Mi Pueblito Market, LLC v.</u>**
**<u>Leading Insurance Services, Inc.</u>**
San Francisco County Superior Court
Testified on Behalf of Defendant, Leading Insurance Services
Attorney for Defendant: Julian J. Pardini, Esq.
First Party; Commercial Policy (BO); Fire Loss;
Duty to Investigation; Fair Claims Settlement Practices; Denial of Benefits; Potential Concealment; Fraud & Misrepresentation

**<u>Fresno Rock Taco, LLC, and Zone Sports Center, LLC v. National Surety Corp.</u>**
(THIS IS THE SECOND TRIAL IN CONNECTION WITH THE FRESNO ROCK TACO)
United States District Court for the Eastern District of California, Fresno Division
Testified on behalf of Defendant, National Surety Corporation
Attorney for Defendant: John Hager, Esq.
First Party; Commercial Policy; Alleged Burglary; Material Misrepresentations During the Presentation of the claim.

**<u>Laura Beth Barickman & Shannon Jo McInteer v. Mercury Casualty Ins. Co.</u>**
Los Angeles County Superior Court
This case was tried before an ADR, Services Judge.
Testified on behalf of Defendant, Mercury Casualty Company
Attorney for Defendant: Thomas J. Dowling, Esq.
Auto Accident; Unreasonable Refusal To Settle Within Policy Limits; Altered Release.

**<u>ARE-EAST RIVER SCIENCE PARK, LLC vs. LEXINGTON INSURANCE COMPANY</u>**
United States District Court – Central District of California
Testified on behalf of Defendant Lexington Insurance Company
Attorney for Defendant: Jon Neumann, Esq. (Steptoe & Johnson)
First Party; Commercial Property; Manuscript Policy Form; Application of Deductible; Hurricane Sandy; Application of California Fair Claims Settlement Practices Regulations, etc.

**<u>MIKE HABIB v. FARMERS GROUP, INC.; MID-CENTURY INSURANCE COMPANY</u>**
Los Angeles County Superior Court – Central District
Testified on behalf of Defendant Mid-Century Insurance Company
Attorney for Defendant: Gregory B. Scher, Esq. (Woolls & Peer)
First Party; Commercial Property; Freeze Claim; Failure to use reasonable means to maintain heat.

**<u>BRENDA D. WOODS; CARLOS RODRIQUEZ v. MID-CENTURY INSURANCE CO.</u>**
Napa County Superior Court
Testified on behalf of Defendant Mid-Century Insurance Company
Attorney for Defendant: John Bryden, Esq. (Demler, Armstrong & Rowland)
Uninsured Motorist: Alleged unreasonable failure to pay undisputed amounts.

**<u>JACOB LIBMAN; BETTY LIBMAN v. MERCURY CASUALTY INSURANCE COMPANY</u>**
Los Angeles County Superior Court
Testified on behalf of Defendant: Mercury Casualty Insurance Company
Attorney for Defendant: Shaver, Korff & Castronovo, LLP, Encino, CA
First party; Condominium Policy; Direct Physical Force of Wind Causing Damage to the Exterior

**ALEXANNDRA CARINGTON v. MERCURY CASUALTY COMPANY, ET AL.**
Los Angeles County Superior Court
Testified on behalf of Defendant: Mercury Casualty Insurance Company and the Claim Representative, Kim Kintzle
Attorney for Defendants: Hager & Dowling, Santa Barbara, CA
First Party; Homeowners; Water Damage; Compliance with Claim Regulations; Reasonableness of Investigation; Long-Term Water Damage; Mold; Asbestos; Cross-Contamination; Additional Living Expense; Public Adjuster Involvement

**GILLEN WASHINGTON v. PAUL PETTY; AUTOMOTIVE SOLUTIONS; CALIFORNIA AUTOMOBILE INSURANCE COMPANY**
Orange County Superior Court
Testified on behalf of Defendant: California Automobile Insurance Company
Attorney for Defendant: O'Connor, Schmeltzer & O'Connor
Lee O'Connor
300 Spectrum Center Drive, Suite 1550
Irvine, CA 92618
First Party; Automobile Policy; Collision Loss; Dispute over Accident Related Damages

**CHURCH MUTUAL INSURANCE COMPANY v. GUIDEONE INSURANCE COMPANY**
Superior Court of California – County of Shasta
Testified on behalf of Defendant: GUIDEONE INSURANCE COMPANY
Attorneys for GuideOne: Matthew Foy, Esq./Michael A. Pursell, Esq. – Gordon & Rees – San Francisco, CA
Church Policy; First Party; Fire Loss; Contributing Insurance; Insurable Interest; Good Faith Claims Handling

**LAUREN YANTHIS vs. MERCURY INSURANCE COMPANY**
Superior Court of The State of California – Los Angeles (Long Beach)
Testified on behalf of Defendant: MERCURY INSURANCE COMPANY
Attorney for Mercury Insurance Company: Lee P. O'Connor, Esq.
Law Offices of O'Connor, Schmeltzer & O'Connor, Irvine, CA
Automobile Policy; Underinsured Motorist Claim; Settled prior to Arbitration; Alleged Delay in the Payment of Benefits; Alleged Failure to Investigate

**ALEXANDER PINTO vs. FARMERS INSURANCE EXCHANGE, ET AL.**
Superior Court of The State of California – County of Los Angeles
Testified on behalf of Defendant: FARMERS INSURANCE EXCHANGE
Attorney for Farmers Insurance Exchange: Richard E. Morton, Esq.
Haight, Brown & Bonesteel, LLP, Los Angeles, CA
Automobile Policy; Alleged Unreasonable Failure to Accept a Policy Limits Demand Within Policy Limits; Permissive User Refused to Provide a Declaration.

**JOSH MAIER vs. MID-CENTURY INSURANCE COMPANY, ET AL.**
Superior Court of California – County of Sacramento
Testified on behalf of Defendant: MID-CENTURY INSURANCE COMPANY
Attorney for Mid-Century: Valerie Moore, Esq.
Haight, Brown & Bonesteel, LLP, Los Angeles, CA
Homeowners Policy; Third Party; Alleged Unreasonable Refusal to Defend/Indemnify; Bar Room Altercation; Application of Intentional Acts Exclusion and Criminal Acts Exclusion.

**ROSEMARY PEREZ vs. MERCURY CASUALTY COMPANY**
SUPERIOR COURT, COUNTY OF MADERA
Testified on Behalf of Defendant: Mercury Casualty Company
Attorney for Mercury: Ian Fraser-Thomas, Esq.; Cesari, Werner & Moriarty, Daly City, CA.
First Party; Homeowners Policy; Interior Water Damage; Alleged Exterior Vandalism to Roof; An insurance companies statutory obligation to provide a reasonably uniform appearance in the damaged area.

**MICHAEL THOMAS & JENNIFER THOMAS vs. CALIFORNIA FAIR PLAN**
SUPERIOR COURT, COUNTY OF VENTURY
Testified on Behalf of Defendant: California Fair Plan
Attorney for California Fair Plan: Elise D. Klein, Esq.; Lewis, Brisbois, Bisgaard & Smith, LLP; Los Angeles, CA.
First Party; Rental Dwelling; ACV Policy; Windstorm Damage; Insurance Code 2051 (total loss vs. partial loss – measure of indemnity)

**LORNA MOORE & DONALD A. MCGILVRAY vs. AMGUARD INSURANCE COMPANY**
SUPERIOR COURT, COUNTY OF SANTA BARBARA
Testified on Behalf of Defendant: AmGUARD Insurance Company
Attorney for AmGUARD: Randall A. Miller, Esq.; Miller Law Associates, Los Angeles, CA.
First Party; Rental Dwelling; Business Owner's Policy; Dispute regarding the application of the water back-up and sump overflow endorsement; dispute regarding the application of the California Fair Claims Settlement Practices Regulations (argued duty to make advanced/undisputed claim payments before the claim had been accepted).

**WILLIAM & CAMIELLE CHOU VS. USAA CASUALTY INSURANCE COMPANY**
ORANGE COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: USAA Casualty Insurance Company
Attorney for USAA-CIC: DKM Law Group; Robert McLay, Esq; Joshua Kastan, Esq. (San Francisco, CA)
Third Party; Duty to Defend; Retender of Defense; Tenant/Landlord Dispute; Lack of Occurrence; Lack of Bodily Injury as Defined; Property Damage to Property Rented To the Insured.

**JOSE VALLEJO VS. FARMERS INSURANCE GROUP, ET AL**
SAN JOAQUIN COUNTY SUPERIOR COURT
Testified on Behalf of Defendant: Farmers Insurance Exchange
Attorney for Farmers: Valerie Moore, Esq., Haight Brown & Bonesteel LLP, 555 South Flower Street, Los Angeles, CA 90071
Third Party; Landlord's Protector Policy (liability only); Substantial Prejudice Due to Delayed Reporting; Argued Unreasonable Refusal to Pay Judgment Creditor.

**SEANY RENFROW VS. LARRY BUTLER, ET AL.**
LOS ANGELES COUNTY SUPERIOR COURT (SOUTH JUDICIAL DISTRICT)
Testified on Behalf of Defendant: Interinsurance Exchange of the Automobile Club
Attorney for The Exchange: Stephen E. Smith, Esq., Smith, Smith & Feeley, LLP, 1401 Dove Street, Newport Beach, CA.
First Party; Condominium Unit Owners' Policy; Water Damage; Continuous Leakage or Seepage of Water Exclusion.

**JACKIE KREITZMAN and BRIAN SENIT VS. MERCURY CASUALTY COMPANY**
LOS ANGELES COUNTY SUPERIOR COURT (CENTRAL DISTRICT)
Testified on Behalf of Defendant: Mercury Casualty Company
Attorney Defending Mercury: Christopher Wesierski/Mary Kim, Wesierski & Zurek, LLP, 29 Orchard Road, Lake Forest, CA 92630 (949) 975-1000
First Party; Homeowner's Policy; Water Damage; Leakage from Skylights; Insured's Delay in Reporting; Insured's Failure to mitigate/dry down the structure; Insured's delay/failure to select a building contractor to do the repairs; Multiple areas of water intrusion throughout the home; No duty on the part of Mercury to perform destructive testing. Ultimately the entire interior of the Insured's home was gutted with no explanation. (2022)

**CASEY LEE CLARK vs. GEICO INSURANCE COMPANY**
KERN COUNTY SUPERIOR COURT
TESTIFIED ON BEHALF OF DEFENDANT GEICO INSURANCE COMPANY
Attorney Defending GEICO: Benjamin Brooks, Esq. & Jared K. Lebeau, Esq., Sheppard Mullin Richter & Hampton, 501 West Broadway, San Diego, CA 92101 (619) 338 6500
Automobile Policy; Auto Liability; Alleged Unreasonable Refusal To Settle; No Settlement Demand (2022)

**MATTHEW A. HURSHMAN vs. TRIPLE C. TRANSIT, LLC**
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
TESTIFIED ON BEHALF OF TRIPLE C. TRANSIT'S CARRIER: Great West Casualty Co.
Testified in Binding Mediation
Attorney Defending Great West: Charlotte S. Kormendy, Esq.; Lewis Brisbois; 550 West Adams Street, Suite 300, Chicago, IL 60661 (312) 463 3482.
Motor Carrier policy; Tractor/Trailer accident; Third-Party Liability; Alleged unreasonable refusal to settle within policy limits; multiple claimants. (2022)

**KARA FLICK v. UNITED SERVICES AUTOMOBILE ASSOCIATION (USAA)**
SUPERIOR COURT OF THE COUNTY OF SANTA BARBARA
TESTIFIED ON BEHALF OF USAA
Attorney Defending USAA: DKM Law Group (Robert S. McLay, Esq.; Brian R. Davis, Esq.), 50 California Street, Suite 1500, San Francisco, CA 94111 (415-421-1100)
Automobile Liability Policy; Multi-car collision; Aggravated Liability; Alleged Unreasonable Refusal to Accept a Time-Limited, Policy Limits Demand. (2023)

**RMB REAL ESTATE INVESTMENTS 2, LLC v. CALIFORNIA CAPITAL INSURANCE COMPANY: VENUE: SUPERIOR COURT OF THE COUNTY OF MARIN**
I testified on behalf of the defendant, California Capital.
Attorney Representing California Capital: Gene A. Weisberg, Esq., Gladstone & Weisberg, 300 Corporate Point, Suite 400, Culver City, CA 90230. (310 821 9000)
Businessowners Policy; First Party; Tubbs Fire; Destruction of a 72 unit apartment complex that was replaced with significant upgrades. A dispute over the language contained in the Increased Period of Restoration endorsement; and a dispute over the reasonable time required to rebuild property of similar quality to the minimum law and ordinance governing that construction. (2023)

**DAVID ROSENBERG and INGRID KJELLIN vs. CALIFORNIA AUTOMOBILE INSURANCE COMPANY: VENUE: SUPERIOR COURT – COUNTY OF ORANGE**
I testified on behalf of the defendant, California Automobile Insurance Company
Attorney Representing CAIC: Christopher Wesierski, Esq./Mary H. Kim, Esq.; Wesierski & Zurek, LLP, 29 Orchard Road, Lake Forest, CA 92630 (949) 975 1000
Homeowners Policy; First Party Claim; Water Damage; The Insured had a water loss in 2017 that was paid by CAIC; the Insured did no repair work; the Insured had a second water loss in 2019 that affected the same area of damage. The dispute was regarding the actual cash value evaluation of a previously damaged hardwood floor; and whether the insured was entitled to be paid twice for the pack out of contents. (2024).

**DAL WOONG PARK; SEUNG RAN PARK v. CALIFORNIA AUTOMOBILE INSURANCE COMPANY: VENUE: SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES:** I testified on behalf of defendant, California Automobile Insurance Company. Attorney Representing CAIC: Shaver Castronovo, LLP; Tod Castronovo, Esq., 16255 Ventura Boulevard, Suite 850, Encino, CA 91436 (818) 905-6001. Homeowners Policy; First Party; Water Damage; The day following discovery of the water damage, Mr. and Mrs. Park moved in with their son; they remained living with their son. Mr. and Mrs. Park incurred no additional living expenses. Mr. and Mrs. Park's claim against CAIC was largely an alleged failure to communicate to them that they could incur the cost of temporary living accommodations, and the amount CAIC would pay; and had they known, they would have incurred additional living expenses. (2025)

# EXHIBIT 2

**David A. Corona**
**Executive Manager**
**MKA International, Inc.**
**18301 Von Karman Avenue**
**Suite 750**
**Irvine, California 92612**
**(949) 752-5946**
**dcorona@mkainc.com**

# RULE 26 EXPERT REPORT

| | |
|---|---|
| DATE: | July 13, 2026 |
| CASE NAME:: | *Luna D'Sol v. Farmers Direct Property and Casualty Insurance Company* |
| VENUE: | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA |
| CASE NO.: | Case No. 2:25-cv-10938-SVW-ASx |
| JUDGE: | The Honorable Stephen V. Wilson |
| CLIENT: | Farmers Direct Property and Casualty Insurance Company |
| CLIENT'S ATTORNEYS: | Michelle R. Berard, Esq.<br>Kelly F. Canby<br>GORDON REES SCULLY MANSUKHANI LLP |
| FILE NO.: | MKA No.: 2026.1959 / GRSM No.: FSAE-1416221 |
| CLAIMANT: | Luna D'Sol ("Plaintiff") |
| LOSS ADDRESS: | 2275 E. Belding Dr., Palm Springs, California 92262 |
| EXHIBITS: | Exhibit A: Curriculum Vitae<br>Exhibit B: Expert Witness Deposition and Trial Testimony |

**SUBJECT: Construction and Restoration Expert Report**

**QUALIFICATIONS:** I have 35-plus years of Construction experience related to Loss Reconstruction and Restoration. I am the Executive Manager at ***MKA International, Inc***. (***MKA***) (formerly Madsen, Kneppers & Associates, Inc.) and

specialize in cost assessment, remediation cost and insurance property loss. I am highly experienced in all aspects of Property Loss Damage Assessments. I oversee MKA's clerk of the work services, consult on appropriate methods of fire and smoke damage restoration, structural drying, and mold remediation on insurance Property Loss and Liability claims. I am also an experienced Appraiser in appraisal proceedings.

Prior to joining ***MKA***, I acted as liaison for lending institutions following the Northridge Earthquake, overseeing the reconstruction of numerous earthquake-damaged properties, ensuring compliance with all applicable codes and regulations, engineering drawings, and customer specification. Additional construction experience came from commercial and residential projects and I have extensive experience working with homeowners, building officials (including State and Federal officials), architects, engineers, and construction crews. A copy of my Curriculum Vitae is attached hereto as **Exhibit A**.

**COMPENSATION:** I am being compensated at my usual rate of $375 per hour for my consulting time and at the rate of $525 per hour for any testimony time.

**PUBLICATIONS:** None in the past 10 years.

**TRIAL AND DEPOSITION TESTIMONY:** I have prior experience testifying as a construction and restoration expert in depositions and trial and schedule listing those prior cases from 2018 to the present is attached hereto as **Exhibit B**.

**DOCUMENTS RECEIVED TO DATE:**

1. Plaintiff's First Amended Complaint [ECF 23-1, pp. 139-180].

2. The Exhibits to Plaintiff's First Amended Complaint, which includes Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") Policy No. 3872340940 as Exhibit A thereto [ECF Doc. 23-1, pp. 185-317].

3. Farmers Direct's "Export Notes" for Claim No. 7007678692-1 (with redactions) [FD000001-FD000081].

4. Exhibits A-H to Farmers Direct's Requests For Admissions propounded to Plaintiff.

5. Kings Power Electric Inc. Estimate dated July 16, 2024 ("Prepared for Julio

Ravada / 2275 E Belding Dr Palm Springs CA 92262") [FD001787-FD001795].

6. Progressive Home Remodeling "Partial Home Remodel" Estimate dated May 19, 2025 ("Homeowner: Julio "Luna" / "Homeowner Address: 2275 East Belding Drive, Palm Spring CA 92262") [FD003250-FD003256].

7. Inspection Photos dated June 6, 2024 [FD004939-FD004987].

8. Inspection Photos 2 dated June 6, 2024 [FD004988-FD005036].

9. Inspection Photos 3 dated June 6, 2024 [FD005037-FD005056].

10. Collins Electric Invoice #791782, dated January 7, 2025, re Electrical Inspection [FD001643].

11. Reinspection Photos dated May 23, 2025 [FD005079-FD005197].

12. Proof of Loss signed August 2, 2024 [FD005554-FD005561].

13. Letter dated June 17, 2025 regarding "Important Claim Information" with attached "Claim Outcome Letter" dated June 16, 2025 [FD001160-FD-FD001168].

14. "Claim Outcome Letter" dated June 23, 2025 with attached June 18, 2025 letter regarding "Important Claim Information" [FD001189-FD001205].

15. "Settlement Notice" Letter dated July 10, 2025 [FD001259-FD001348].

Based upon my review and analysis of the documents provided to date, I am prepared to render the following opinions regarding the property located at 2275 E. Belding Drive in Palm Springs, California, 92262 ("Property") and the valuation of damages the Property sustained in an alleged incident of vandalism/burglary on June 3, 2024 allegedly causing property and/or water damage at the Property ("Incident") and/or related to the scope and reasonable cost of repairs or restoration work needed to return the Property to its pre-loss condition and/or pertaining to amounts paid by Farmers Direct Property Insurance Company ("Farmers Direct" or "Defendant") for doing so.

To the extent that new or additional information becomes available, I reserve the right to either amend and/or supplement the following opinions. The following opinions are being rendered to a reasonable degree of professional certainty based upon my years of experience in the construction and restoration industry.

**OPINIONS:**

**1.** Relevant to the Incident, based on the available information, the observed "vandalism" damage to the Property was relatively minor and primarily cosmetic or superficial in nature and did not affect the structural integrity of the Property nor the overall habitability of the Property.

**2.** Based on the available information, it does not appear that additional repairs are needed beyond those already compensated by Farmers Direct to restore the Property to its pre-loss condition as a result of the Incident.

**3.** The reasonable cost to repair the observed Incident-related damage was approximately $8,054.44 at replacement cost value which is within (or less than) the amount already paid by Farmers Direct. The difference in cost is due to the fact that Farmers Direct allowed for an upgraded breaker panel, 300 amp versus a 200 amp which was in place at the time of the loss and already code compliant.

**4.** The amount of time reasonably necessary to repair the observed Incident-related damage and clean the Property following the Incident would not exceed 4 days and the Property would not be rendered uninhabitable as a result of the Incident.

**5.** Plaintiff's scope of work found in the Progressive Home Remodeling "Partial Home Remodel" Estimate dated May 19, 2025 ("Homeowner: Julio "Luna" / "Homeowner Address: 2275 East Belding Drive, Palm Spring CA 92262") [FD003250-FD003256] is excessive and not reasonably necessary to restore the Property to its pre-loss condition. Additionally, the "Partial Home Remodel" Estimate includes items/proposed work that are entirely unrelated to repairing any documented damage resulting from the Incident.

6. In addition to the foregoing opinions, I will also be prepared to rebut the opinions provided by or on behalf of Plaintiff regarding the alleged scope of loss-related damage from the Incident, the impact (if any) that the Incident-related damages had on the overall habitability of the Property, the reasonable

and necessary scope of repairs and the reasonable and necessary amount of time to complete said repairs to return the Property to its pre-loss condition.

**FINAL COMMENTS:**

The above opinions are expressed to a reasonable degree of professional certainty based upon my 35-plus years of Construction experience related to Loss Reconstruction, Restoration and Valuation. To the extent that new or additional information is provided, I reserve the right to supplement and/or amend the above opinions.

Respectfully submitted,

David A. Corona
Executive Manager
MKA International, Inc.

# EXHIBIT A

**EXPERIENCE**

David A. Corona is a Construction and Restoration Consultant with over 35 years of experience in the construction industry. As a consultant with *MKA International, Inc.* (*MKA*), formerly *Madsen, Kneppers & Associates, Inc.,* Mr. Corona focuses on the insurance property loss aspects of our services. He assesses damage, develops repair scope, prepares cost estimates, provides clerk of the work services, as well as evaluates and consults on appropriate methods of fire and smoke damage restoration, structural drying, and mold remediation.

Mr. Corona has consulted on a wide variety of projects throughout the United States and Canada ranging from high-rise buildings, shopping complexes, hotels, resorts, theme parks, airports, hospitals, medical, industrial, military, food processing and chemical processing facility and battery energy facilities, automated distribution and fulfillment centers, port automation systems and container yards, semiconduction fabrication plants, pharmaceutical manufacturing clean rooms, data centers, cell and radio towers, fiber optic network hubs, solar and wind farms, electric vehicle charging stations, and single- and multi-family residences. He has overseen catastrophe response teams involved with the evaluation of damage caused by numerous hurricanes, wildfires, and subsequent mudslides performing damage assessments and developing the scope of restoration repairs for commercial, industrial, and residential type construction. He has provided testimony as an expert witness and has been appointed as an appraiser for insurance property loss claims.

Prior to joining MKA International, Inc., Mr. Corona acted as liaison for lending institutions following the Northridge Earthquake, overseeing the reconstruction of numerous earthquake-damaged properties, ensuring compliance with all applicable codes and regulations, engineering drawings, and customer specifications. Additionally, he managed project budgets, maintained inspection log records, and prepared reports for use by senior management. Mr. Corona also conducted daily site visits and reviewed project schedules to ensure all work required by third-party contractors would be completed. He interacted extensively with homeowners, building officials (including State and Federal officials), architects, engineers, and construction crews.

**WORK HISTORY**

| | |
|---|---|
| 2023 – Present | **Executive Manager** - *MKA International, Inc.,* Los Angeles, California |
| 2022 – 2023 | National Project Manager - *MKA International, Inc.,* Los Angeles, California |
| 2015 – 2022 | Regional Manager - *MKA International, Inc.,* Los Angeles, California |
| 2006 – 2015 | Restoration Group Manager / Senior Project Consultant - *Madsen, Kneppers & Associates, Inc.,* Los Angeles, California |
| 2005 – 2005 | Project Manager/Owner's Representative - Metropolitan Condos, Irvine,California 2004 |
| 2004 – 2005 | Project Manager - Advanced Restoration, El Monte, California |
| 2003 – 2004 | Project Manager - Nicolas Nightclub, Commerce, California |
| 1999 – 2003 | Superintendent - American Building & Construction, Huntington Beach, California |
| 1989 – 1999 | Chief Appraiser/Property Inspector - David Corona & Associates, Whittier, California |
| 1987 – 1989 | Construction Foreman - GDC Construction, Whittier, California |

**EDUCATION**

Undergraduate Studies in Architectural Design/Drafting, Mt. San Antonio College, Pomona, California, 1985

**CONTINUING EDUCATION**

Various Property Inspection and Project Management Seminars Institute of Inspection Cleaning and Restoration Certifications (IICRC)
Property Inspection Training for Rehabilitation Projects, U.S. Department of Housing & Urban Development, 1987

**PROFESSIONAL CERTIFICATIONS & AFFILIATIONS**

Institute of Inspection Cleaning and Restoration (IICRC):
- Fire and Smoke Restoration Certification
- Journeyman Fire & Smoke Restoration Certification
- Odor Control Certification
- Upholstery & Fabric Cleaning Certification
- Water Damage Restoration Certification

# EXHIBIT B

MKA International, Inc.
Construction Consultants & Engineers
100% Employee Owned Company

# David A. Corona

## Testimony Schedule 2018 - Present

| Project # | Project Name | Work Date | Location | Mediation | Deposition | Trial |
|---|---|---|---|---|---|---|
| 2022.0127D | Princeton Excess & Surplus Lines vs Broan-Nutone, LLC | 8/8/2024 | California | | X | |
| 2022.0127D | Princeton Excess & Surplus Lines vs Broan-Nutone, LLC | 5/1/2024 | California | | X | |
| 2019.3048D | Channel Development, Inc. vs. QBE Specialty Insurance Company | 7/27/2022 | California | | X | |
| 2018.1243D | Carson Cogeneration Company vs. Scottsdale Ins. Comp. | 8/25/2020 | California | | X | |
| 2017.0280L | Liberty Surplus Ins. Corp. vs LTD Construction et al | 12/7/2018 | California | | | X |
| 2017.0280D | Liberty Surplus Ins. Corp. vs LTD Construction et al | 11/29/2018 | California | | X | |
| 2017.0280D | Liberty Surplus Ins. Corp. vs LTD Construction et al | 11/13/2018 | California | | X | |
| 2015.2404D | Nanea Reeves vs. Automobile Club of Southern California | 8/22/2018 | California | | X | |
| 2014.1540L | ACR Services vs. AIG | 10/16/2018 | California | X | | |

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY F. CANBY (SBN: 185227
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>v.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 2:25-cv-10938-SVW-ASx<br><br>Hon. Stephen V. Wilson<br>Magistrate Judge: Alka Sagar<br><br>**PROOF OF SERVICE**<br><br>Complaint Filed: August 21, 2025 |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP, 101 West Broadway, Ste. 2000, San Diego, California 92101. On July 15, 2026 below, I served the within documents:

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S EXPERT WITNESS DISCLOSURES**

☐ **BY PERSONAL SERVICE:** by having the document(s) listed above personally delivered to the person(s) at the address(es) set forth below.

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

☒ **BY E-SERVICE:** I caused the document(s) listed above to be sent to the person at the e-mail address on the service list below. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

**Plaintiff in Pro Per**

Luna D'Sol
2275 E. Belding Dr
Palm Springs, CA 92262
Tel: (213) 925-40690
Email: jravada@icloud.com

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on July 15, 2026.

Kiry Yeoun
Kiry Yeoun

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# EXHIBIT 15

CONTRACTORS STATE LICENSE BOARD

# Contractor's License Detail for License # 1053183

**DISCLAIMER: A license status check provides information taken from the CSLB license database. Before relying on this information, you should be aware of the following limitations.**

- CSLB complaint disclosure is restricted by law ( B&P 7124.6 ) If this entity is subject to public complaint disclosure click on link that will appear below for more information. Click here for a definition of disclosable actions.
- Only construction related civil judgments reported to CSLB are disclosed ( B&P 7071.17 ).
- Arbitrations are not listed unless the contractor fails to comply with the terms.
- Due to workload, there may be relevant information that has not yet been entered into the board's license database.

Data current as of 8/23/2026 6:21:29 AM

## Business Information

NEW BEGINNING CONSTRUCTION
PO BOX 1903
WHITTIER, CA 90609
Business Phone Number:(866) 242-7773

| | |
|---|---|
| **Entity** | Sole Ownership |
| **Issue Date** | 05/06/2019 |
| **Expire Date** | **05/31/2027** |

## License Status

**This license is current and active.**

**All information below should be reviewed.**

## Classifications

B - GENERAL BUILDING

## Bonding Information

Contractor's Bond

This license filed a Contractor's Bond with ATLANTIC SPECIALTY INSURANCE COMPANY .
**Bond Number:** 800246724
**Bond Amount:** $25,000
**Effective Date:** 04/25/2026
Contractor's Bond History

# EXHIBIT 16

**Kelly Canby**

| | |
|---|---|
| **From:** | Michelle Bernard |
| **Sent:** | Monday, August 24, 2026 6:33 PM |
| **To:** | Luna D'Sol |
| **Cc:** | Kelly Canby |
| **Subject:** | D'Sol v. Farmers Direct Property & Casualty Insurance Company (SAE No. 25-1418) / GRSM No. FSAE 1416221 |

Ms. D'Sol: I am confirming receipt of your email sent at 4:41 pm PST today. That said, throughout the tortured history of this lawsuit, there is no legitimate dispute that emails sent to and/or from your "jravada@icloud.com" email account have been posted and/or received according to our IT Department. As such, any belated (aka feigned) argument on your part that you purportedly have not been receiving our case-related emails in this matter to date is without merit.

Notably, you have not responded to our recent meet and confer emails regarding our demand for your Rule 26 documents and Farmers Direct's Motion for Summary Judgment/Partial Summary Judgment and related Motion for Terminating Sanctions so we are moving forward with anticipated law and motion filings in this matter based on the current scheduling order deadlines notwithstanding your pending motion for reconsideration.

On a related note, August 26, 2026 is the last day to hold the meeting of counsel before Final Pretrial Conference (*i.e.* Per Local Rule 16-2, the last day for the parties to hold the "meeting of counsel before final pretrial conference" is 40 days before the Final Pretrial Conference). Given your documented refusal to comply with any scheduling order deadlines in this matter to date, we assume that the referenced meet and confer conference will be an exercise in futility but note that your refusal to comply is grounds for sanctions per Judge Wilson's Civil Trial Preparation Order (ECF Doc. 86).

Please review Local Rule 16-2 and provide us with your availability to meet and confer before COB on Wednesday and/or timely provide us with your written responses to the meet and confer topics addressed in Local Rule 16-2 *et seq*. Non-compliance will be subject to sanctions.

MRB

**MICHELLE R. BERNARD**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 619.230.7769
**E:** mbernard@grsm.com | grsm.com
633 W. 5th Street, 52nd Floor, Los Angeles, CA 90071
101 W. Broadway, Suite 2000, San Diego, CA 92101

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Monday, August 24, 2026 4:41 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Farmers

Hi

Please confirm you are getting my email

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 17

**Kelly Canby**

| | |
|---|---|
| **From:** | Kelly Canby |
| **Sent:** | Tuesday, August 25, 2026 6:27 PM |
| **To:** | 'Luna D'Sol'; Michelle Bernard |
| **Subject:** | No Details Provided By D'Sol / RE: Request to Meet and Confer Regarding Discovery Irregularities |

Ms. D'Sol –

Following up on our call, I still do not understand your claimed grounds for your anticipated motion to seek a terminating sanction of default against Farmers Direct as it pertains to third party discovery or otherwise and I am aware of none.

As stated during our call, Farmers Direct proceeded in good faith with its discovery efforts within the schedule set by the Court and pursuant to the Federal Rules of Civil Procedure. I did not cancel our prior meet and confer TEAMs call on August 13, 2026 (that had been rescheduled to that date at 11:00 a.m. at your request). In fact, I waited in the TEAMs room for an entire hour after calling you (leaving a message) and emailing you to inquire about your absence and asking you to join the videoconference or to call my office, but you did not. Michelle Bernard's later request to meet and confer regarding Farmers Direct's anticipated motion for terminating sanctions as result of your refusal to participate in discovery also went unanswered.

As both Michelle and I have mentioned, Farmers Direct is proceeding with these motions per the schedule set by the Court.

I don't even understand what you are accusing me of exactly, but you claimed to have "evidence" of something, and yet you refused to send me copies or provide any details, so I presume this is all just another ruse by you to waste time.

Kelly Canby

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Tuesday, August 25, 2026 5:05 PM
**To:** Kelly Canby <kcanby@grsm.com>; Michelle Bernard <mbernard@grsm.com>
**Subject:** Request to Meet and Confer Regarding Discovery Irregularities

Dear Kelly and Michelle,

I am writing to memorialize that I left each of you a voicemail today requesting a meet-and-confer pursuant to C.D. Cal. Local Rules 7-3 and 37-1, and in accordance with L.R. 37-2 through 37-4.

My review has identified multiple material irregularities and inconsistencies concerning Defendants' discovery documents and representations, including matters relating to third-party communications, service and/or receipt, deposition-related representations, and the underlying records offered in support of those representations. I would like to address these matters individually and provide Defendants an opportunity to explain, correct, or otherwise resolve them before I seek relief from the Court.

I understand that, in our most recent communications, Bernard's formal announcement that Defendants don't have time for my request, however I still must comply given the nature and scope of the issues I have now identified, I am making another good-faith effort to confer and narrow or resolve these matters before presenting them to the Court.

Please return my call, or send a Team's invite and refrain from canceling it right after, or provide your availability for a substantive meet-and-confer as soon as reasonably possible. I am available by telephone.

**Nothing in this communication or my participation in the requested meet-and-confer constitutes a waiver of any jurisdictional objection, challenge, claim, defense, argument, or right. All are expressly reserved.**

**Luna D'Sol**
📱 (213) 925-4069
✉️ jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

**Kelly Canby**

**From:** Kelly Canby
**Sent:** Friday, August 14, 2026 4:51 PM
**To:** Luna D'Sol
**Cc:** Michelle Bernard
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

Mr. Mangione did not appear at his deposition today. I entered his nonappearance into the record.

---

**From:** Kelly Canby
**Sent:** Wednesday, 12 August 2026 17:15:17
**To:** Luna D'Sol <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

Hello Ms. D'Sol – I just sent an updated TEAMs invite for tomorrow at 11:00 a.m. per your request.

Given that I need allow time to coordinate any potential changes to appearance details with court reporters, videographers and third party witnesses, can you please respond tonight related to the following two issues (alternatively we will just plan to proceed per the current notices):

1. Can you please let me know tonight whether or not you will agree that the August 14, 9:00 a.m. PMK Deposition of Progressive Remodeling Inc. may proceed on a remote basis via video conference (which the witness David Aragon has requested)? Alternatively, we will plan to proceed with an in-person deposition at our LA Office on Friday Morning per the Amended Notice.

2. Additionally, please let me know if you have a working phone number for Kyle Mangione? I'm willing to discuss the possibility of a remote deposition with him as well, but I need to speak with him to confirm he is amendable and to make sure has the proper technical capabilities/computer setup (assuming you have no objection to switching to remote). Alternatively, we will plan to proceed with the Deposition at our office in Ontario at 3:15 p.m. on August 14, 2026 as noticed.

Thanks,
Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 12, 2026 4:49 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Luna D'Sol v. Farmers Direct - Meet and Confer Re Farmers Direct's MSJ (Local Rule 7-3) and Pending Discovery Issues (Local Rule 37-1)

Ms. Canby,

Please change the conference for tomorrow. I am unable to reconcile all the information you have provided lately, it is extremely inconsistent and I need time to prepare or understand your references to events I have no records Tomorrow at 11 am works me

On Aug 12, 2026, at 14:36, Kelly Canby <kcanby@grsm.com> wrote:

________________________________________________

## Microsoft Teams meeting

**Join:**https://teams.microsoft.com/meet/243317248760179?p=d8U2sONz1QGlbsfbqW

Meeting ID: 243 317 248 760 179

Passcode: vg9gf7Sr

---

Need help? | System reference

### Dial in by phone

+1 415-856-9224,,628141081# United States, San Francisco

(888) 994-5245,,628141081# United States (Toll-free)

Find a local number

Phone conference ID: 628 141 081#

### Join on a video conferencing device

Tenant key: grsmsip@m.webex.com

Video ID: 118 318 282 5

More info

For organizers: Meeting options | Reset dial-in PIN

GRSM50
GORDON REES SCULLY MANSUKHANI
YOUR 50 STATE LAW FIRM™

GRSM Participants: Online Meetings should be conducted from your LOCAL computer or mobile app. Please don't start your meeting within Citrix or a remote session technology. Use your local computer's Teams app or web browser for all online meetings. Thank you.

Privacy and security

________________________________________________

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<Mail Attachment.ics>

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

LUNA D'SOL
*Plaintiff*
v.
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
*Defendant*

Civil Action No. 2:25-cv-10938-SVW-ASx

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Kyle Steven Mangione - 3915 El Dorado Blvd., #4, Palm Springs, CA 92262-1420 / (760) 223-9266
*(Name of person to whom this subpoena is directed)*

☒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Date and Time: |
|---|---|
| 3200 Guasti Road, Suite 100, Onterio, CA 91761 (909)563-1270 | August 14, 2026 at 3:15 p.m. |

The deposition will be recorded by this method: Stenographically and Video Recorded

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: August 4, 2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

Kelly F. Canby

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* DEFENDANT Farmers Direct Property and Casualty Insurance Company, who issues or requests this subpoena, are:

Kelly F. Canby, 101 W. Broadway, Suite 2000, San Diego, CA 92101 T: (619) 696-6700 Direct Dial: (760) 444-5923

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:25-cv-10938-SVW-ASx

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* Kyle Steven Mangione
on *(date)* 8/4/2026 .

[X] I served the subpoena by delivering a copy to the named individual as follows: Kyle Steven Mangione- Personally (Caucasian, Male, 36 years old, 5'9, 170 lbs, Brown Hair, Brown Eyes)
on *(date)* 8/8/26 at 1:29 pm ; or

[ ] I returned the subpoena unexecuted because: ______________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ 135.61 .

My fees are $ ________ for travel and $ ________ for services, for a total of $ ________ .

I declare under penalty of perjury that this information is true.

Date: 8/11/2026

[signature]
*Server's signature*

Alexander Martin, #2457, Riverside County
*Printed name and title*

BFRM Legal Support Services
633 W 5th St, 28th Fl
Los Angeles, CA 90071
*Server's address*

Additional information regarding attempted service, etc.:

Documents: Letter; Defendant Farmers Direct Property and Casualty Insurance Company's Notice of Videotaped Deposition of Kyle Steven Mangione and Requests for Production of Documents Per Subpoena; Subpoena to Testify at a Deposition in a Civil Action; Proof of Service

**Kelly Canby**

| | |
|---|---|
| **From:** | Kelly Canby |
| **Sent:** | Tuesday, August 18, 2026 7:12 PM |
| **To:** | 'Kyle Mangione' |
| **Cc:** | Michelle Bernard; Luna D'Sol |
| **Subject:** | D'Sol v. Farmers Direct (USDC CD Cal. Case No. 10938-SVW-ASx) : FAILURE TO APPEAR/RE: Check for Kyle mangione |

Hello Mr. Mangione –

You failed to appear at your deposition on Friday afternoon . You failed to contact me ahead of time to discuss any potential rescheduling. You have confirmed your receipt of the tendered payment that was provided with service of the subpoena. You were required to appear on 8/14 at 3:15 p.m. at 3200 Guasti Road, Suite 100, Ontario CA, but you did not. I am not aware of any issues regarding the manner in which the witness/mileage fees were provided to you, and I understand from our attorney service that this method of payment is regularly used by the process servicer without any problems.

The deposition was scheduled in Ontario given your Palm Springs residence, but you did not show up. I had the court reporter enter your failure to appear into the record. No additional fees will be provided.

Farmers Direct reserves the right to seek an order for your appearance coupled with a request for monetary sanctions against you.

Farmers Direct also reserves the right to object if Ms. D'Sol seeks to offer your testimony in this case and all sanction rights against Ms. D'Sol are reserved.

Kelly Canby

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Kyle Mangione <mangionekyle594@gmail.com>
**Sent:** Saturday, August 15, 2026 1:56 AM
**To:** Kelly Canby <kcanby@grsm.com>
**Subject:** Check for Kyle mangione

You don't often get email from mangionekyle594@gmail.com. Learn why this is important

Hi Kelly,

I wanted to let you know that the check you gave me for the miles and days at the hearing didn't process at the bank or a check cashing place. The reader couldn't read it, so it wasn't cashable. I ended up wasting a bunch of gas driving around trying to get it handled. I'm not sure what the next step is—whether you'll send a replacement or deposit it directly into my account. Could you let me know how you'd like to proceed?

Thanks.

**Kelly Canby**

**From:** Kyle Mangione <mangionekyle594@gmail.com>
**Sent:** Wednesday, August 26, 2026 7:23 PM
**To:** Luna D'Sol
**Cc:** Kelly Canby; Michelle Bernard
**Subject:** Re: Objection to August 18 Communication Concerning Kyle Mangione

You don't often get email from mangionekyle594@gmail.com. Learn why this is important

Ms. Canby, I write in response to your August 18, 2026 correspondence regarding my alleged failure to appear for a deposition on August 14, 2026. I respectfully dispute the assertions contained in your letter and do not concede that I was under any legally enforceable obligation to appear. Nothing in this response should be construed as an admission that the subpoena was validly issued, properly served, or otherwise enforceable. I specifically do not concede that the requirements of Federal Rule of Civil Procedure 45 were satisfied. Rule 45(b)(1) requires that witness fees and mileage be tendered simultaneously with service. I expressly preserve all objections concerning the validity of service, the timing, amount, form, method, and sufficiency of any purported tender, as well as all other procedural or jurisdictional defects. Two days before the scheduled deposition, I contacted attorney Julio Ravata to advise that I was experiencing problems with the payment provided. The check I received could not be negotiated at five locations. I did not receive a response until after the deposition date had passed. If Farmers contends that mere receipt of a check constitutes an admission of compliance with Rule 45, I expressly reject

On Wed, Aug 26, 2026, 7:59 AM Luna D'Sol <jravada@icloud.com> wrote:

> **Ms. Canby,**
>
> **I object to and expressly reject the statement in your August 18, 2026 communication to Kyle Mangione that:**
>
> **"Farmers Direct also reserves the right to object if Ms. D'Sol seeks to offer your testimony in this case and all sanction rights against Ms. D'Sol are reserved."**
>
> **Nothing concerning Mr. Mangione's alleged failure to appear establishes misconduct by me. I did not instruct, encourage, request, cause, or participate in any decision by Mr. Mangione not to appear for a deposition. I therefore expressly dispute any suggestion that his alleged nonappearance provides a factual basis either for sanctions against me or for precluding testimony I may otherwise be entitled to present.**
>
> **I likewise do not concede the predicates asserted in your communication, including that Mr. Mangione was properly served with a Rule 45 subpoena, that legally sufficient witness and mileage fees were tendered as required by Rule 45(b)(1), or that his alleged nonappearance resulted from any act or omission attributable to me.**
>
> **The Ninth Circuit requires the witness fee and reasonably calculated mileage allowance to be tendered simultaneously with service of a subpoena. *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 495–96 (9th Cir. 1983). I therefore expressly preserve my objection to Farmers'**

**characterization of the subpoena as properly served, including the sufficiency of the purported tender.**

**Your August 18 communication is particularly concerning because Farmers expressly reserved potential sanctions against me in a communication addressed to a third-party witness concerning that witness's alleged nonappearance. Please identify the specific act or omission by me that Farmers contends provides a factual basis for reserving "all sanction rights against Ms. D'Sol." If Farmers contends that I caused, encouraged, facilitated, or interfered with Mr. Mangione's appearance, please identify the factual basis for that contention. If Farmers makes no such contention, please confirm that expressly.**

**For avoidance of doubt, I preserve all objections concerning the subpoena, purported service, witness and mileage fees, communications attributed to Mr. Mangione, the circumstances surrounding the purported deposition and nonappearance, and any attempt to attribute Mr. Mangione's conduct to me. Nothing in this correspondence constitutes a waiver of any jurisdictional, procedural, evidentiary, discovery, or other objection or right.**

**Luna D'Sol**

On Aug 18, 2026, at 19:11, Kelly Canby <kcanby@grsm.com> wrote:

Hello Mr. Mangione –

You failed to appear at your deposition on Friday afternoon . You failed to contact me ahead of time to discuss any potential rescheduling. You have confirmed your receipt of the tendered payment that was provided with service of the subpoena. You were required to appear on 8/14 at 3:15 p.m. at 3200 Guasti Road, Suite 100, Ontario CA, but you did not. I am not aware of any issues regarding the manner in which the witness/mileage fees were provided to you, and I understand from our attorney service that this method of payment is regularly used by the process servicer without any problems.

The deposition was scheduled in Ontario given your Palm Springs residence, but you did not show up. I had the court reporter enter your failure to appear into the record. No additional fees will be provided.

Farmers Direct reserves the right to seek an order for your appearance coupled with a request for monetary sanctions against you.

Farmers Direct also reserves the right to object if Ms. D'Sol seeks to offer your testimony in this case and all sanction rights against Ms. D'Sol are reserved.

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Kyle Mangione <mangionekyle594@gmail.com>
**Sent:** Saturday, August 15, 2026 1:56 AM
**To:** Kelly Canby <kcanby@grsm.com>
**Subject:** Check for Kyle mangione

You don't often get email from mangionekyle594@gmail.com. Learn why this is important

Hi Kelly,
I wanted to let you know that the check you gave me for the miles and days at the hearing didn't process at the bank or a check cashing place. The reader couldn't read it, so it wasn't cashable. I ended up wasting a bunch of gas driving around trying to get it handled. I'm not sure what the next step is—whether you'll send a replacement or deposit it directly into my account. Could you let me know how you'd like to proceed?
Thanks.

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 18

STEVEN B. BITTER
SBITTER@GRSM.COM

JOHN S. NA
DIRECT (213) 576-5030
JNA@GRSM.COM

GORDON&REES
SCULLY MANSUKHANI

ATTORNEYS AT LAW
633 WEST FIFTH STREET, 52ND FLOOR
LOS ANGELES, CA 90071
PHONE: (213) 576-5000
FAX: (213) 680-4470
WWW.GORDONREES.COM

August 20, 2024

**VIA CERTIFIED MAIL / RETURN RECEIPT AND EMAIL**
Julio Ravada
2275 E Belding Drive
Palm Springs, CA 92262
Email: jravada@icloud.com

**Re: Insurance Claim with Farmers Direct Property And Casualty Ins. Co.**

| | |
|---|---|
| Named Insured: | Julio Ravada |
| Claim No.: | 7007678692-1 |
| Policy No.: | 3872340940 |
| Loss Date: | June 3, 2024 |
| Loss Location: | 2275 E Belding Drive, Palm Springs, CA |

Dear Julio Ravada:

We write to advise that our law firm has been retained by Farmers Direct Property And Casualty Ins. Co. ("Insurer") to assist it with regard to the above referenced insurance claim for theft of personal contents on or about June 3, 2024, from the residence located at 2275 E Belding Drive, Palm Springs, CA, and assigned claim number 7007678692-1 by the Insurer.

Pursuant to the terms and conditions of your insurance policy, we write to inform you the Insurer has determined it will exercise its right to obtain your testimony at an Examination Under Oath ("EUO"), and has retained our office to assist it in this regard. As required by California law, please find enclosed a copy of Section 2071.1 of the California Insurance Code for your review.

Your insurance policy with Insurer provides at Section I – Conditions, 2. What You Must Do After a Loss as follows:

> **We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.

C. Cooperate with **us** in the investigation of a claim.

E. At any reasonable time and place **we** designate, and as often as **we** reasonably require:

1. show **us** the damaged property;
2. submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and
3. allow **us** to examine and copy or abstract any record and document **we** request.

## EXAMINATION UNDER OATH

Pursuant to the terms of the above policy provisions, as well as Insurance Code Section 2071.1, the Insurer has determined it will proceed with obtaining your testimony at your EUO.

The EUO will be conducted in the presence of a court reporter, who will place you under oath and transcribe the proceeding. At the conclusion of the proceedings, transcripts of the testimonies will be prepared by the court reporter. You will be provided with the opportunity to review the transcript for accuracy, after which you will be required to sign the transcript under penalty of perjury.

You have the right to have an attorney of your choosing represent you at the EUO. However, any fees and costs charged by the attorney are your own responsibility. Please refer to the attached copy of Section 2071.1 of the California Insurance Code for additional rights afforded to you with respect to an EUO.

At this time, we have scheduled your EUO as follows:

**Insured:** **Julio Ravada**
**Date:** **Monday, September 16, 2024**
**Time:** **10:00 AM**
**Location:** **Remote via Zoom**

Please contact my office to confirm your availability for the above date and time; if another date is more convenient for you, please advise and we will make all attempts to accommodate your schedule.

We will provide you with the Zoom link for the EUO once we have confirmed the date and time with you. Further, please note that the EUO is likely to take a few hours to complete. Accordingly, we ask that you keep your schedule open on the date of your EUO.

**REQUEST FOR DOCUMENTS AND INFORMATION**

In addition to obtaining your testimony, the Insurer is requesting that you provide certain documents and information. In order to most efficiently conduct the EUOs, it is necessary for you to produce the documents and information requested below sufficiently in advance of the proposed date of the EUO. In order to proceed with the EUO on the above scheduled date, we require that the requested documents and information be provided **no later than Monday, September 9, 2024**.

We also request that you produce all of the documents and information in a single production at once to allow for an efficient and orderly process. Please provide the requested documents to my attention, by either email (jna@grsm.com) or mail:

John Na
Gordon, Rees, Scully, Mansukhani
633 W. Fifth Street, 52nd Floor
Los Angeles, CA 90071

In the event some of the requested documents were previously provided to the Insurer, you ***do not*** have to duplicate your efforts and provide those document again. The requests are as follows:

1. Any and all documents, such as receipts, invoices, purchase orders, emails with vendors, bank statements showing withdrawal of cash if the items were purchased in cash, etc., which evidence the purchase of the items making up the Claim;

2. Any and all documents, such as receipts, invoices, shipping forms, shipping tracking numbers, shipping labels, etc., which evidence the shipping and delivery of the items making up the Claim;

3. Any and all documents, such as appraisals, valuations, reports, estimates, etc., which evidence the value of the items making up the Claim;

4. Any and all documents which evidence maintenance, service, or repair performed on the items making up the Claim;

5. Any and all documents which evidence your ownership of the items making up the Claim, such as manuals, warranty, registration forms, etc.;

6. Any photographs of the items making up the Claim;

7. Any and all police reports filed by you in connection with the Claim;

8. Surveillance footage(s) of the date of loss from your security cameras;

9. Any additional documents not specifically requested above, but which you would like the Insurer to review.

Please also note that we may require additional information or documentation as the Insurer's investigation of the Claim continues.

**CONCLUSION**

Please confirm your availability for the scheduled EUO on September 16, 2024, as well as the document production date of September 9, 2024.

In closing, please note that by issuing this letter or taking any other action in the investigation of this claim, Farmers Direct Property And Casualty Ins. Co. is not conceding, nor has it conceded, that coverage exists or is available for this claim, nor has it waived any of its rights or defenses to coverage available under the policies or law, all of which are specifically reserved and retained.

If you have any questions about the foregoing, please do not hesitate to call or email my office directly. I look forward to hearing from you soon and receiving the above requested information and documents.

Sincerely,

John S. Na

JSN:mcs
Encls.
cc: Mr. Richard Bryan (via email only)
Mr. Steven Bitter, Esq. (via interoffice email)

1315242/78528182v.1

West's Annotated California Codes
Insurance Code (Refs & Annos)
Division 2. Classes of Insurance (Refs & Annos)
Part 1. Fire and Marine Insurance (Refs & Annos)
Chapter 2. The Fire Insurance Contract (Refs & Annos)
Article 3. California Standard Form Fire Insurance Policy (Refs & Annos)

West's Ann.Cal.Ins.Code § 2071.1

§ 2071.1. Examination of insured; rights of insured; study; survey; report

Effective: January 1, 2010
Currentness

(a) This section applies to an examination of an insured under oath pursuant to Section 2071 labeled "Requirements in case loss occurs" and other relevant provisions of that section, and to any policy that insures property and contains a provision for examining an insured under oath, when the policy is originated or renewed on and after January 1, 2002.

The following are among the rights of each insured who is requested to submit to an examination under oath:

(1) An insurer that determines that it will conduct an examination under oath of an insured shall notify the insured of that determination and shall include a copy of this section in the notification.

(2) An insurer may conduct an examination under oath only to obtain information that is relevant and reasonably necessary to process or investigate the claim.

(3) An examination under oath may only be conducted upon reasonable notice, at a reasonably convenient place and for a reasonable length of time.

(4) The insured may be represented by counsel and may record the examination proceedings in their entirety.

(5) The insurer shall notify the insured that, upon request and free of charge, it will provide the insured with a copy of the transcript of the proceedings and an audio or video recording of the proceedings, if one exists. Where an insured requests a copy of the transcript, the recording, or both, of the examination under oath, the insurer shall provide it within 10 business days of receipt by the insurer or its counsel of the transcript, the recording, or both. An insured may make sworn corrections to the transcript so it accurately reflects the testimony under oath.

(6) In an examination under oath, an insured may assert any objection that can be made in a deposition under state or federal law. However, if as a result of asserting an objection, an insured fails to provide an answer to a material question, and that failure prevents the insurer from being able to determine the extent of loss and validity of the claim, the rights of the insured under the contract may be affected.

(7) An insured who submits a fraudulent claim may be subject to all criminal and civil penalties applicable under law.

(b) The department shall conduct a study quantifying the number of examinations under oath performed by carriers regulated by the department and the number of contacts made by consumers regarding alleged concerns with the utilization of the examination under oath process for the resolution of pending claims. The department shall report both the number of examinations under oath performed by each carrier and the number of justified and unjustified claims alleged by insureds as defined in this code. To the best extent practicable, the department shall also determine if any of these complaints also resulted in suspected fraudulent claims with the department's fraud division.

(c) The department shall also survey licensed carriers as to the number of suspected fraudulent claims under residential property insurance policies that are submitted to the department's fraud division as required by law, and that resulted, or eventually resulted, in the utilization of the examination under oath process. Policies of residential property insurance shall be as defined in Section 10087.

(d) The department shall submit the findings of this report to the chairpersons of the Assembly and Senate Committees on Insurance no later than March 1, 2003.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

**Credits**

(Added by Stats.2001, c. 583 (S.B.658), § 5. Amended by Stats.2009, c. 88 (A.B.176), § 70.)

West's Ann. Cal. Ins. Code § 2071.1, CA INS § 2071.1

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 2 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 19

EXHIBIT
EX 0001
Julio Ravada
09272024

STEVEN B. BITTER
SBITTER@GRSM.COM

JOHN S. NA
DIRECT (213) 576-5030
JNA@GRSM.COM

GORDON&REES
SCULLY MANSUKHANI

ATTORNEYS AT LAW
633 WEST FIFTH STREET, 52ND FLOOR
LOS ANGELES, CA 90071
PHONE: (213) 576-5000
FAX: (213) 680-4470
WWW.GORDONREES.COM

September 12, 2024

**VIA CERTIFIED MAIL / RETURN RECEIPT AND EMAIL**
Julio Ravada
2275 E Belding Drive
Palm Springs, CA 92262
Email: jravada@icloud.com

**Re: Insurance Claim with Farmers Direct Property And Casualty Ins. Co.**

| | |
|---|---|
| Named Insured: | Julio Ravada |
| Claim No.: | 7007678692-1 |
| Policy No.: | 3872340940 |
| Loss Date: | June 3, 2024 |
| Loss Location: | 2275 E Belding Drive, Palm Springs, CA |

Dear Julio Ravada:

As you are aware, our law firm has been retained by Farmers Direct Property And Casualty Ins. Co. ("Insurer") to assist it with regard to the above referenced insurance claim for theft of personal contents on or about June 3, 2024, from the residence located at 2275 E Belding Drive, Palm Springs, CA, and assigned claim number 7007678692-1 by the Insurer ("Claim").

Previously, by letter dated August 20, 2024 ("Initial Letter"), we advised that pursuant to the terms and conditions of your insurance policy, the Insurer determined that it will exercise its right to conduct an Examination Under Oath ("EUO") of the insured, and scheduled your EUO for September 16, 2024. Further, in preparation for the EUO, we requested that you provide certain documents and information by September 9, 2024.

To date, we have not received any communication from you in response to our Initial Letter. We also have not received any of the requested information or documents to date. Accordingly, we will be unable to proceed with your EUO on September 16, and the EUO has been rescheduled, as discussed below.

Your insurance policy with Insurer provides at Section I – Conditions, 2. What You Must Do After a Loss as follows:

> **We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.
>
> C. Cooperate with **us** in the investigation of a claim.
>
> E. At any reasonable time and place **we** designate, and as often as **we** reasonably require:
>
> 1. show **us** the damaged property;
> 2. submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and
> 3. allow **us** to examine and copy or abstract any record and document **we** request.

The Insurer once again requests that you comply with the terms of your insurance policy and provide the requested documents and submit to an EUO. Please note that your continuing failure and refusal to comply with the terms of the policy could very well result in the denial of the Claim.

**EXAMINATION UNDER OATH**

Pursuant to the terms of the above policy provisions, as well as Insurance Code Section 2071.1, the Insurer has determined it will proceed with obtaining your testimony at your EUO.

The EUO will be conducted in the presence of a court reporter, who will place you under oath and transcribe the proceeding. At the conclusion of the proceedings, transcripts of the testimonies will be prepared by the court reporter. You will be provided with the opportunity to review the transcript for accuracy, after which you will be required to sign the transcript under penalty of perjury.

You have the right to have an attorney of your choosing represent you at the EUO. However, any fees and costs charged by the attorney are your own responsibility. Please refer to the previously provided copy of Section 2071.1 of the California Insurance Code for additional rights afforded to you with respect to an EUO.

At this time, we have scheduled your EUO as follows:

| | |
|---|---|
| **Insured:** | **Julio Ravada** |
| **Date:** | **Tuesday, October 8, 2024** |
| **Time:** | **10:00 AM** |
| **Location:** | **Remote via Zoom** |

Please contact my office to confirm your availability for the above date and time; if another date is more convenient for you, please advise and we will make all attempts to accommodate your schedule.

We will provide you with the Zoom link for the EUO once we have confirmed the date and time with you. Further, please note that the EUO is likely to take a few hours to complete. Accordingly, we ask that you keep your schedule open on the date of your EUO.

**REQUEST FOR DOCUMENTS AND INFORMATION**

In addition to obtaining your testimony, the Insurer is requesting that you provide certain documents and information. In order to most efficiently conduct the EUOs, it is necessary for you to produce the documents and information requested below sufficiently in advance of the proposed date of the EUO. In order to proceed with the EUO on the above scheduled date, we require that the requested documents and information be provided **no later than Tuesday, October 1, 2024**.

We also request that you produce all of the documents and information in a single production at once to allow for an efficient and orderly process. Please provide the requested documents to my attention, by either email (jna@grsm.com) or mail:

John Na
Gordon, Rees, Scully, Mansukhani
633 W. Fifth Street, 52nd Floor
Los Angeles, CA 90071

In the event some of the requested documents were previously provided to the Insurer, you ***do not*** have to duplicate your efforts and provide those document again. The requests are as follows:

1. Any and all documents, such as receipts, invoices, purchase orders, emails with vendors, bank statements showing withdrawal of cash if the items were purchased in cash, etc., which evidence the purchase of the items making up the Claim;

2. Any and all documents, such as receipts, invoices, shipping forms, shipping tracking numbers, shipping labels, etc., which evidence the shipping and delivery of the items making up the Claim;

3. Any and all documents, such as appraisals, valuations, reports, estimates, etc., which evidence the value of the items making up the Claim;

4. Any and all documents which evidence maintenance, service, or repair performed on the items making up the Claim;

5. Any and all documents which evidence your ownership of the items making up the Claim, such as manuals, warranty, registration forms, etc.;

6. Any photographs of the items making up the Claim;

7. Any and all police reports filed by you in connection with the Claim;

8. Surveillance footage(s) of the date of loss from your security cameras;

9. Any additional documents not specifically requested above, but which you would like the Insurer to review.

Please also note that we may require additional information or documentation as the Insurer's investigation of the Claim continues.

**CONCLUSION**

Please confirm your availability for the scheduled EUO on October 8, 2024, as well as the document production date of October 1, 2024.

In closing, please note that by issuing this letter or taking any other action in the investigation of this claim, Farmers Direct Property And Casualty Ins. Co. is not conceding, nor has it conceded, that coverage exists or is available for this claim, nor has it waived any of its rights or defenses to coverage available under the policies or law, all of which are specifically reserved and retained.

If you have any questions about the foregoing, please do not hesitate to call or email my office directly. I look forward to hearing from you soon and receiving the above requested information and documents.

Sincerely,

John S. Na

JSN:mcs
cc: Mr. Richard Bryan (via email only)
Mr. Steven Bitter, Esq. (via interoffice email)

1315242/78528182v.1

# EXHIBIT 20

EXAMINATION UNDER OATH

EXAMINATION UNDER OATH OF JULIO RAVADA

Claim No. 7007678692-1

EXAMINATION UNDER OATH OF JULIO RAVADA

APPEARING REMOTELY FROM RIVERSIDE COUNTY, CALIFORNIA

TAKEN ON BEHALF OF

FARMERS DIRECT PROPERTY AND CASUALTY INS. CO.

SEPTEMBER 27, 2024

9:59 A.M.

REPORTED BY: RENÉE C. FRITZ, CSR NO. 6910

APPEARING REMOTELY FROM SAN DIEGO COUNTY, CALIFORNIA

REMOTE APPEARANCES:

For Farmers Direct Property and Casualty Ins. Co.:

GORDON & REES SCULLY MANSUKHANI, LLP
JOHN S. NA
633 West Fifth Street, 52nd Floor
Los Angeles, California 90071
213.576.5000
jna@grsm.com

INDEX TO EXAMINATION


| EXAMINATION | PAGE |
|---|---|
| By Mr. Na | 5 |

INDEX TO EXHIBITS

EUO OF JULIO RAVADA

Friday, September 27, 2024

Renée C. Fritz, CSR No. 6910

(All exhibits provided electronically to the reporter)


| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Letter to Julio Ravada from John S. Na dated September 12, 2024 | 49 |
| Exhibit 2 | Proof of Loss dated 6/10/24 | 54 |
| Exhibit 3 | Palm Springs PD Police Report | 110 |
| Exhibit 4 | Receipts | 120 |
| Exhibit 5 | Kings Power Electric Inc. Estimate dated July 16, 2024 | 126 |
| Exhibit 6 | Photograph of table, corner hutch and painting | 130 |
| Exhibit 7 | Group of Emails between Julio Ravada and Mark Bercier | 143 |
| Exhibit 8 | Zillow listing for 2275 E. Belding Drive, Palm Springs, CA 92262 | 150 |

REPORTED REMOTELY FROM SAN DIEGO, CALIFORNIA;
FRIDAY, SEPTEMBER 27, 2024; 9:59 A.M.

JULIO RAVADA,
having been first remotely duly sworn,
was examined and testified as follows:

EXAMINATION

BY MR. NA:
Q. Good morning, Mr. Ravada.
A. Good morning.
Q. Nice meeting you by video. I know we've exchanged emails a couple of times, but I don't think we've ever spoken on the phone before, but it's nice meeting you and thank you for meeting with me here today for your examination under oath.
A. Thank you.
Q. For the record, can you state and spell your full name?
A. Julio, J-u-l-i-o, Ravada, R-a-v-a-d-a.
Q. And do you have a middle name?
A. Yes. Rodolfo, R-o-d-o-l-f-o.
Q. I'm sorry one more time. R-o-d --
A. -- o-l-f-o.
Q. Okay. And other than the name you've just given

us, have you used any other names in the past?
A. Yes.
Q. Okay. And what name have you used?
A. So it's Julio Rodolfo and then the last name is long. It's Ravadachavarria. So it's R-a-v-a-d-a-c-h-a-v-a-r-r-i-a.
Q. Is that all one word or is that two separate words?
A. When I moved to this country, that's what my legal name would be. One word, yeah. But it's supposed to be two different last names, but the U.S. Immigration put it as one word.
Q. One word? Okay.
A. Yeah.
Q. And any other names besides the one you've just given us?
A. No.
Q. And when was the last time you used the name Julio Rodolfo Ravadachavarria?
A. Well, I became a U.S. citizen, I want to say, approximately 12 years ago, so that's when I was able to legally change my name. And that's when I basically submitted a change for my name to what it is current right now.
Q. Okay.

A. So that would be the last time.
Q. Okay. Do you mind if I call you Julio or Mr. Ravada during the entirety of the --
A. Julio.
Q. Julio. Okay. Perfect.
So Julio, have you ever had an examination under oath before?
A. Yes, I have.
Q. Okay. And when was that?
A. One through my job and another one through another claim from Farmers.
Q. Farmers?
A. Yeah.
Q. Okay. When you say through your job, was that a deposition or an examination under oath?
A. I think -- well, I mean, I know my company's lawyer and me, we went and then met the other party's attorney and the plaintiff and we sat down, and so his attorney got to question me and then my attorney questioned him.
Q. Okay. Was that related to a lawsuit?
A. Yes.
Q. Okay. So that's probably more of a deposition than an examination under oath.
A. Okay.

Q. All right. So other than your job as a tester for Bank of America and the rental income, any other source of income for you?
A. No.
Q. No?
A. No. No other source of income.
Q. Okay. We've been going about an hour does anyone need a break or can we go forward?
A. We can go forward if it's up to me.
Q. Okay. So I want to move on and quickly go over a letter that I had sent to you.
MR. NA: This will be entered as Exhibit A or Exhibit 1, I should say, to your transcript.
(Exhibit 1, remotely introduced and provided electronically to the reporter)
BY MR. NA:
Q. And if I did that right, you should see on your screen a copy of my September 12th, 2024 letter.
Can you see that, Julio?
A. Yes.
Q. Okay. Do you need me to enlarge it?
A. Only if you want me to read a specific part.
Q. Okay. So again, this is going to be Exhibit 1 to your transcript. And I just want to actually focus on the last, I guess, two pages with respect to the Request

shipping and delivery of the items making up the claim. To the extent that you have any documents that are responsive to that request, have you submitted all of those documents?

A. Yes. But keep in mind that there's a lot of items; right? You know, for every single item that was claimed, I submitted receipts. And then if there wasn't any receipts approved for explanation, or like an email, a reference of something about it.

Q. Okay. Perfect.

A. Yes.

Q. Request Number 3, documents such as appraisals valuations, reports, et cetera, which evidence the value of the items making up the claim. To the extent you had any appraisals done on any of these items and you have such documents in your possession, have you provided those to Farmers?

A. Yes. I don't mean this -- appraisals? I attempted, yeah. But I provided to Farmers the response that I received them. Yes.

Q. Number 4, documents which evidence the maintenance, service or repair of any of the items making up the claim to the extent, you know, any such repairs were done on any of the items and, you know, you've got documentation of such repairs.

A. Yes.
Q. And then Number 9 is for any additional documents that are not specifically requested above but which you would like Farmers to review. Do you have any additional documents that you would like to submit for Farmers' review and consideration at this time?
A. Not at this time. I believe I have provided all. Unless you guys have further questions, I can provide more, but I don't have anything pending that I don't believe I have not provided.
Q. Okay. Perfect.
Moving on to the next document. If I have done this right, you should see a copy of the Proof of Loss that was submitted.
A. Yes.
MR. NA: And this will be entered as Exhibit 2 to your transcript.
(Exhibit 2, remotely introduced and provided electronically to the reporter)
BY MR. NA:
Q. Let me zoom out. I just want to quickly go over this document with you. So you do recognize this as your Proof of Loss; correct?
A. Yes.
Q. And all of these written entries or typed

entries, I should say, were done by you?

A. Yes.

Q. Okay. Did anyone assist you in preparing this Proof of Loss?

A. No. However, I requested assistance to Brian and the other agent. I had a bunch of questions, and they keep throwing the ball at each other, so I just told them that I would just do the best I can.

Q. Are you talking about the claims adjuster or --

A. Yeah. First, a guy named Donald Means was assigned. And then in the middle of like three weeks after, it got reassigned to somebody else. I think it's Brian Mejia. And right when the transition happened between them, I asked them both to like help me, and one didn't respond and the other one like also didn't acknowledge it.

Q. Okay. Other than that, in terms of actually completing this, this was done by you?

A. Yes.

Q. Okay. That's what I was getting at.

So on Page 1, no questions there.

In response to Number 6 on the Proof of Loss regarding your occupation, that is a correct statement of your occupation; correct?

A. Yes.

Q. Okay. And then Number 7, cause of loss, theft and vandalism. That's correct; yes?
A. Yes.
Q. Okay. Number 8 regarding your description of the loss, if you would just quickly take a moment to read what you have written here. I just want to make sure that this is your accurate recollection of the loss.
A. Yeah. I actually read it right before joining the call, and it's accurate. Yeah.
Q. Okay. I just kind of want to go over this really quickly with you. So on June 3rd, you were running an errand to L.A. A guy name Robin stopped by. You told him you were going out to L.A. And so you left the property and got home around midnight, and that's when you discovered the loss; correct?
A. Yeah.
Q. Okay. Number 9, date and time loss was discovered. June 4th around 12:30 a.m.; is that correct?
A. Yes.
Q. Okay. The next page, moving on to Number 15, was anyone working on the premises prior to the loss. And then in response, you've got your name painting ceiling.
A. Yeah.
Q. You don't identify any of the contractors or the

people that you had hired. Is there a reason?

A. Well, because they -- I mean, work has not been done by any contractor here in a very long time. And so then this is asking if there was a contractor here when this happened.

Q. So at the time of the loss, you were only painting the ceiling?

A. Yeah.

Q. Okay. Number 17 is asking for prior losses. You've identified two here. The first one, January 2024, also with Farmers. Was that also at the current property in Palm Springs?

A. Yes.

Q. Yes?

A. Yes.

Q. Okay. And then the July 2023, that's the one that we had discussed earlier; correct?

A. Yes.

Q. Okay. Number 20, damage to the premises. And you described four items, a window, electric panel, dishwasher and the toilet.

A. Yeah.

Q. And then the estimate for that is $12,422.

A. Yes.

Q. That's based on an estimate you obtained from

Kings Power?
A. Yes.
Q. In response to 23, building damages, 12,422; personal property, $26,730.61; for a total claimed amount of $39,152.61; is that still current and accurate?
A. Yes.
Q. Then the next page, that's your signature?
A. Yes.
Q. And the date of August 2nd, 2024, that's correct?
A. Yes.
Q. It's notarized.
And then the last page has your itemized list. Let me rotate this real quick. I mean, I don't want to go through all of these items. That's going to take a little bit more time than is necessary. I just want to go over a couple of these items.
So just generally, let me ask you this. With respect to those items for which you have invoices and receipts, obviously, you were referring to those when you filled this out; correct?
A. Yes.
Q. Okay. For any of the items that you do not have receipts, what was your process?
A. So my process was, for example, the gold chains,

like so I went and I provided a document. So for every single one of these items, I have provided a document reference and a value if I did not have them. And so the chains, I Googled 22 karat gold chain and it gave me a list of prices, and I selected the one in the middle and circled it, and then I explained I chose the one in the center for each one of them. So that's one that I can remember that I can think of.

Q. Okay. All right. So it was by the process of, for example, Googling and seeing what the values are of similar items?

A. Yes.

Q. Okay. The laptop here, it's already been replaced by Bank of America. Did they charge you to replace it?

A. No.

Q. And then a couple of Apple items here. You've got an Apple MacBook. Is that AirPod earpieces?

A. Yeah. I provided receipts for all of them.

Q. Okay. So are these earpieces different than the earbuds?

A. No. They're different, yes.

Q. Okay. They are different?

A. Yes.

Q. Okay. And then you've got the Apple watch. So

typically with Apple, you know how you can set it so you can track and find your items? Were you able to do that with these Apple products?

A. So not on the earpieces. The laptop, I was not, because it appeared offline. And also like the same thing with the watch, the watch I didn't have it as part of my iCloud --

Q. Uh-huh.

A. -- because I hadn't worn it in a long time. It was just here sitting on the desk for months. But no, I wasn't able to locate. The laptop would be the only one.

Q. Okay. And does that say "wall controller"?

A. Yes.

Q. So there's two of them?

A. Yes.

Q. Is that like a light switch?

A. It's more like you connect it and you replace the light switch and you put it, but it has a screen and then it's all digital and like you can sync it.

Q. Okay. Gotcha.

Okay. And then going further down, "security camera"; is that what that says?

A. That one is the one that -- where it was captured, and then it got basically hammered or like tampered. I don't know. But it got destroyed. It's

still here, but I mean --

Q. So that was the one that was outside; correct?

A. Yes.

Q. Okay. And then dishwasher, light fixture. And then I think this is a painting; correct?

A. The painting of the thing. Yeah.

Q. Okay.

A. I do not have the receipt. I had contacted the artist, and then he responded saying like, "Yeah. Sure. Send me the" -- I was asking what the value is. And then he said, "Send me the pictures." And I sent it to him. And he didn't respond. And then I had basically three emails like two days, three days after like, you know, and he never responded like four attempts. So I provided a copy of those emails to you.

Q. Right. I saw those.

I also was going to ask you did he ever get back to you and tell you, you know, what the value of the painting is now?

A. No.

I remember -- I think I remember paying like 5,000 for it. This is a long time ago. But like I don't remember what card I used.

Q. Okay.

A. But it was a long time ago.

Q. All right. So how did you get this value of $750? Is that something that you Googled or what was that basis?

A. When I walk into -- I was in New Orleans at the Mardi Gras, and I walk into this art gallery and then they had this painting. And I remember the person said that it will be 5,000. So I asked to negotiate the price down and then to give me a call later. And then she called me and said they couldn't bring it down. And I really liked it, and back then, I wanted to have an expensive painting -- right? -- and then I went and then I said -- she was about to roll it. And I told her, "No, no, no. I want it exactly the way it looks." Like, you know, like with the framing and everything. "So can you just ship it to me?" Because if you roll it, then I have to go home and then buy a frame, and at that point, I'm not going to do it.

And then she said, "Well, that's going to be expensive."

And I'm like, "I don't care. Just send it."

And they did, and that's why they charged me like 700-something for shipping of the painting.

Q. Okay. Is this price, the 5,750 --

A. It's for the shipping and the painting.

Q. So that's 5,000 for the painting and then 700 or

so for the shipping?
A. Yeah. That's what I paid. Like, you know, I'm not saying that's the value of it like, you know. I don't know. That's one of the questions that I have for them. But so I just --
Q. And you purchased it back in 2018?
A. Yeah.
Q. So do you remember how they shipped it to you?
A. You know, it came in a huge -- it looked like a mummy was being shipped to me. Like it was a big box. I mean, I will say UPS because that's commonly used for big shipments, but I don't recall.
Q. So they shipped it in the frame, is that --
A. Yeah.
Q. Okay. And you don't have any documentation of that purchase and the shipping?
A. I can -- I used to use different -- I do not have it.
Q. Okay.
A. I can try to locate it. That's why I contacted him to see if they have it since it was a unique painting. But, I mean, I don't know why he stopped respond.
Q. And when this was shipped, where was it shipped to?

house, I locked everything. What it seems is that they probably jump up one of the two side patio gate. And when I came back to the house the next day when the police was here, I was outside again, but it was daytime. And what I noticed is that they had brought something from the shelf to right outside that window, and then it was just there -- like sort of like it worked as a step. And then also the framing outside of the exterior wall around the window, the bottom part of the frame, it had been chipped out. Like the metal part, it had been -- it had a rectangular hole, like 2 inches by 1 inch. And that's what I figured. And then the hammer and another thing was down there too still, so that's what I figured, oh, this is how they entered the house. But yeah, the framing of the window is still like that right now. It was chipped out.

Q. Okay. Was the window broken? Was it smashed?

A. That portion, like I don't know, there is -- it looks like some mechanics happened inside of the window. I don't know. But it was open, the framing part -- the metal part of the window was open at the bottom. And then you can see some sort of like -- like metal sticks. Like I don't know what happens when you close the window. And that's how it gets locked or whatnot, but it looks like they knew something what to do, and that's how they

got it open.
Q. Again, was the window broken? Was the glass shattered, smashed?
A. Oh, no. It was opened.
Q. Was it no longer opening and closing?
A. It is opening and closing, but now, I have -- like when you -- when you close the window -- I'm sorry. When you open the window, it goes through the other half in the rail. So right now, I have like a stick right there, so even if it's unlocked or something, you cannot open it. But it still locks and unlock.
Q. Okay. And you said the house is currently listed, right, for sale?
A. Yes.
Q. I know the contract expired today, but it was listed for sale after the loss; correct?
A. And before the loss.
Q. Oh. Even before?
So the question that I had was so, you know, with respect to all of the property damage that's part of this claim, did you make those repairs before listing it?
A. What repairs?
Q. Well, so if you go to the Proof of Loss here, earlier remember we went over --
A. Yes.

Q. -- Number 20, the window, the electric panel, dishwasher, the toilet? So were these items, were they replaced before you listed the property again after the loss?
A. But like when my ex was here --
Q. No, no, no. I'm asking about right now. All right?
A. Oh.
Q. So this loss occurred in June of 2024. So after this loss occurred with all of the damage that you're claiming, when you listed the house for sale, did you replace those items or did you list the house without replacing them?
A. I have listed the house, and I'm thinking like if -- to me, it's like I just want to sell one property. Like if this house, if somebody's interested, I will get those fixed like with the rent money. So I have not taken care of any -- I have not fixed anything.
Q. Okay. So you haven't fixed anything, but you listed the house for 1.6?
A. Yeah. No, I have not fixed anything.
Q. Okay. Going back to this list. This third item from the bottom, I'm sorry, I can't read your handwriting. What does that say?
A. Oh. It's "No-Face anime memorabilia." It's a

memorabilia. No-Face is an animation character from Japan, and I got it in Tokyo at this store.

Q. Okay. What is that? Is it -- can you describe this item?

A. Yeah. So No-Face is an anime character. So Japan has this little kid -- stories about this little kid who goes around with the goats. And then like what this item was -- but it's very popular, and I didn't know about it, but I liked it. And when I went to Tokyo, because there was a store for it. And then it was the kid sitting down in this like glass capsule and sort of like reading a book and this like park bench. And the ghost was like next to him, look ugly, but he was sort of like watching down and take care of him.

And when I was looking at it, somebody there told me about the story, and then I decided to purchase it. And I had it here, and then it turns out that everybody knew about it except me, but I really liked that piece. But apparently, later, I learned that it's called No-Face, but --

Q. Okay. But, again, this particular item is a painting?

A. It's a figurine like in a capsule made of glass, and then it's like -- it's a figurine, but yeah. I don't know how to describe it.

Q. Okay. So it's a figurine that you purchased from Japan. And the $1,500, is that the value you paid for it or what's it worth now?
A. I don't remember. Because, I mean, it was a lot of money in yen. I don't remember how much because I bought a lot of things. I kind of -- I searched the price, and I believe that's what I provided to you guys in reference to it.
Q. Okay. So you provided documentation for this item?
A. Yes.
Q. Okay. And then the next item, what does that say?
A. "Snow globes."
Q. Snow globes?
A. Yeah. Those are the -- prior to moving in here, I traveled to 49 countries, and every time I traveled, I will bring something from there. You know, something like artsy, I guess. And I had these like -- I had snow globes, but also other figurines. That was all part of on that glass shelf, and he took everything out.
Q. Okay. And then the last item is a toilet. And that's the toilet in one of your bathrooms. I think I saw a picture of it. But can you describe what the damage to the toilet is or was?

A. So on the window that he entered through, it's the guest bathroom of the house. I am assuming that if he climbed it -- well, on the other date when I flushed the toilet, it started like pouring out just water like, you know? And then -- that was the day after. And then I opened it, and then I saw this like black substance like. And it's still there, you know. It wasn't anything dirty, you know. It was like something, you know, sitting there. And I figured that's what clogged it. And I assume that since he climbed it, they climbed through it, like they had to step to the toilet, something happened. I don't know what happened, but it was to the extent that the toilet does not work.

Q. Is the toilet -- is it cracked? Is it broken?

A. No. It's like it doesn't -- there's something stuck inside.

Q. It's still stuck? You can't unclog it?

A. Well, like somebody has to like come and unflush it or do something. I don't know. I haven't done anything to it either.

Q. Well, so again, I'm just wondering why does it have to be replaced if it's just clogged?

A. Oh, well, that's just my assessment. Like, you know, when the guy from Kings Power was here, he also didn't -- I mean, that's what contractors do. You know,

they rather work on like replacing something new instead like fixing something existent. And that was sort of like -- but I know, I will admit, like he didn't, "Definitely, you have to buy a new one and this is how much we'll charge you." And that's why I wrote this down. But if somebody can replace it, by all means, I will take that.

Q. But I mean, the question that I have is is it damaged to the point where, you know, it's got a crack on it? It's broken or --

A. I don't know. It's not cracked. It's not broken. But I don't know if whatever substance it had, it damaged anything inside. I'm not that expert or I don't know.

Q. Okay. So I want to go over just very quickly, if you could mentally go back to the date of the loss and kind of describe for me, you know, what happened that day and how the loss was discovered. I think it would be faster if you just kind of provided me with a summary as opposed to me asking you questions right now. So if you don't mind just providing a summary of what happened that day.

A. Okay. So this is when I was selling Reseda, and then it was listed for sale already, but we were having issues with the tenants also not keeping the place up to

because it had been tampered, it just like popped out.
Q. What popped out?
A. The switch. Like, you know, I can send you a picture if you wanted. Like, you know, one day, I was like trying to turn it back on again and like off and on, and it just -- like it popped out, like broken, because it was cracked.
Q. Okay. So that's after -- well, that's a couple of days after you were saying?
A. When I went to turn it back off and then back on, yes.
Q. Okay. But that night when you turned the power back on, the power inside the house came back on; right?
A. Yes. Except in few rooms. Like so the main panel, when turned off, like for some reason, it still powers the A/C in this room, which is a separate A/C unit. So no longer -- the main panel is supposed to turn off everything, but it no longer turns off everything, so that's what I didn't understand. So the next day, I was like looking into it -- a couple of days later. And then that's when it just basically popped out. And then right now --
Q. Okay. Did you ever have an electrician do a diagnostic on the panel and say exactly what's wrong with it?

A. The Kings Power, that estimate that I sent, he's mainly an electrician.

Q. Right. But other than an estimate where he just says it has to be replaced, did you ever get a diagnostic explaining --

A. No.

Q. -- what was specifically wrong with the panel?

A. No.

Q. Okay. So I'm going to make a request here, and I don't know if you'll be able to get it. Sometimes I have insureds get it. Sometimes they were not able to. But I'm going to request that if you could contact your power company. And I don't know -- is it Edison, Southern California Edison?

A. Yes. I contacted them but --

Q. Could you contact them and ask them if they can provide you with your daily electrical usage log for the date of the loss of June --

A. Yeah. It's in the bill; right?

Q. June 3rd. Right.

A. For one day only?

Q. Yeah. Just a daily log for June 3rd.

A. Okay. I can do that.

Q. Okay. So then you turned the power back on, came back inside the house. The first thing you noticed,

Q. More lights. Okay.
And then I think this is your order confirmation from Sonos for the sound bar?
A. Yeah.
MR. NA: Okay. The next document, this will be Exhibit 5. And this is the estimate that we received from you from Kings Power Electric.
(Exhibit 5, remotely introduced and provided electronically to the reporter)
BY MR. NA:
Q. So just a couple of questions on this one.
So again, obviously, you've seen this document before?
A. Yes.
Q. Okay. So starting here on Page 2, Project Outline, asbestos and mold testing, why is that necessary?
A. It would have -- so I remember telling him that the water came out through the toilet; right? And then because it's wall hung, the toilet is not piped through the floor, but through the wall. He figured that like testing for mold should be done.
Q. Okay. But I mean, you've been doing work at the house for over a year. Did you have any asbestos issues?
A. I have had asbestos tested before. I don't know

what you mean by asbestos issues. But every time a wall has been opened, because the house was initially built in 1950-something, my understanding and the way that it's been explained to me is that asbestos should have been done every time I've had it done.

Q. Okay. So again, though, I mean, you've been doing work at the house, and you've just said you've done asbestos testing before, so why do you need to do it again?

A. Okay. So I don't know if asbestos -- for example, on the claim that happened here in January, when the hurricane happened, Hurricane Hilary, and then like water came out through the ceiling, you guys paid for asbestos and that was tested.

Like I don't understand asbestos well. Like, you know, I guess if this area is opened, and there's no asbestos, does that mean the entire house doesn't have asbestos? Or could it be asbestos can be found in only tiny places. I have no idea.

Q. Okay. So you already had asbestos testing done in January, you said, '24?

A. Off the ceiling in the living room, yes.

Q. And that was for a water damage claim?

A. For the Hurricane Hilary storm.

Q. With respect to the mold testing, do you have

mold at the house?
A. Not that I can see.
Q. Okay. And then the main electric panel replacement, we discussed that earlier.
The guest bathroom window replacement, so I think we kind of discussed that earlier. But, again, the window you're saying has to be replaced because the frame is --
A. It's --
Q. There's a hole in the frame?
A. Yeah.
Q. Okay. And then the toilet, again, I think we discussed that earlier as well.
The dishwasher, why does the dishwasher have to be replaced?
A. Because like when I came, like it had -- I think it had been tried to be pulled out, but it was -- like on the side of the dishwasher, it looked like it had been chipped. And basically also because it's a two-drawer dishwasher, the bottom one, the main line of water that goes into the water areas, it had been cut up.
Q. Okay. But does that mean that the entire dishwasher has to be replaced? Don't you have to reattach the line?
A. Again, I don't know. Like you can send your own

estimator. And then like, you know, because I was expecting that you guys would send somebody since that has happened before, but you guys told me to find my own auditor, and so I don't know. If it can be repaired, by all means, have it repaired.

Q. Well, let me ask you this. Again, the house was listed after this loss occurred, so did you replace the dishwasher before listing it?

A. No. Still the same.

Q. Okay. So according to this from Kings Power Electric, it says the panel -- electric panel replacement is required due to the existing panel that's out of market for fire risk. So is that the reason why it needs to be replaced?

A. That's what he said that he couldn't repair the main switch because like, per code, that's not allowed. They're not allowed to do it.

Q. So it's not that it's damaged. It's just that it's out of market for fire risk?

A. It is damaged. It has to be repaired.

Q. Okay.

A. But I guess it has to be replaced instead because it is like out of code or something.

Q. Okay. But as of right now, it has not been replaced?

(Recess)

BY MR. NA:

Q. Do you understand you're still under oath?

A. Yes

Q. Okay. So I just quickly want to go over a couple more photos. I'm not going to attach this as an exhibit because it's rather lengthy. I did want to go over them with you real quick.

So what you should see on the screen, I will represent to you are photographs that were taken by my client during a site inspection on June 6th, 2024 at the Palm Springs property. I believe you were there. You must have been there.

A. Yes.

Q. Okay. So it's 118-page document. Again, I'm not going to go through all of them, but it's got photographs taken by the adjuster at the time of the inspection, and so it shows the condition of the property on that date.

So here, with reference to Page 7 of this document, that shows -- is that the washer and dryer?

A. No. It's the dishwasher.

Q. I'm sorry. The dishwasher. I'm sorry.

So is that the bottom part of the dishwasher that was pulled out?

A. Yes.
Q. Okay. And again, that has not been replaced, but you were able to put it back in. What is the current condition of the dishwasher?
A. So I am the one that pulled out that drawer because I noticed that it had -- the entire dishwasher was chipped on the sides. And then the drawer was open slightly, so when I opened it more, because there was water also coming from there, I noticed that there are three different conducts going inside from that drawer, and one of them was like cut off, which I think is the water one. So that basically, I was able to place the drawer back, but I have not used the dishwasher at all since then or replaced it or nothing.
Q. Okay. But I'm sorry. Did you say you're the one that pulled out the drawer?
A. Yes.
Q. Okay. And the next photograph on Page 8, that shows the interior of where you pulled the drawer out on the dishwasher; is that correct?
A. Yeah.
Q. Okay. Page 15, I think it's a view of your living room and the dining room. And in this photograph, the dining room table, that color is gray?
A. Yeah.

Q. Okay. So this is after you had, I guess, changed it back from being black to gray?

A. Yes.

Q. Okay. So on the date of the loss, you said you were -- while you were waiting for Edward, you said you were redoing something to the table?

A. Sanding it.

Q. You were sanding it? Okay. So was that in preparation from changing it to black from this gray color that's shown here?

A. No. It was already -- it had already been resurfaced. Once it was resurfaced, then I started sanding it.

Q. Okay. So when you were sanding it, what color was it?

A. Gray.

Q. Okay.

A. Yeah, I was sanding it, so it could be like very smooth. Like 220-grid sanding paper.

Q. That's fine. I'm just trying to get some more clarity on the color of it.

So it used to be black --

A. Yes.

Q. -- right?

It was black in May of 2024 --

A. Yes, sir.
Q. -- right?
And then you changed it back to this current color of gray?
A. Yes.
Q. Okay. And on the date of the loss, on June 3rd while you were waiting for Edward, you said you were doing something to this table.
A. After changing it to gray color, like once it was changed, then I started sanding it so it could have this very smooth look.
Q. Okay.
A. And I bought a sealer and then I added the sealer.
Q. Okay. So when did you change it back to gray? What date?
A. June 2nd.
Q. Okay. And then on the date of the loss, you were sanding it?
A. Yes.
Q. Okay.
A. After applying that coat, I was sanding it so it could have a very smooth finish.
Q. Okay. Understood.
And this is the step down that you were talking

about in the living room?

A. That's the sunken. And what you're pointing at is basically the one that stops you from not falling over.

Q. I should point to what area? I got you. All right.

Okay. Here on Page 26, this photograph of this item on the wall, is that one of the controllers?

A. No. That's a light switch that I put.

Q. Light switch. Okay. And that's part of the claim?

A. No.

Q. No?

A. No.

Q. Okay. Starting on Page 49 of 49 appears to be a photo of the bathroom. Is this the bathroom where --

A. They had broken through.

Q. -- you think they broke in? Okay.

A. And that's the window where they came through.

Q. Okay. So continuing on. So this photograph -- just so that the record is clear, there were two sets. Set 1 is the one we just finished reviewing, and then there's a Set 2, Inspection Photos, again taken on June 6, 2024.

This is another photo of the bathroom; is that

correct?

A. Yes, sir.

Q. Okay. And this window in the background, that's the one that you're saying needs to be replaced?

A. Yes.

Q. And this toilet here, that's the one that needs to be replaced?

A. Yes.

Q. Okay. And with respect to the mold testing, it's required on the walls here or exactly where is the mold testing required?

A. Where the toilet is, it's attached to.

Q. Okay. So let me see. Okay. So Page 5 of this second set shows the toilet attached. Do you see any mold here?

A. Not at the bottom. Like the entire toilet tank and everything, connection, plumbing and all of that is behind the wall.

Q. Okay.

A. It's not the floor.

Q. Okay. Let me see. So Page 6 is another photograph of the toilet. Any mold here?

A. Not that I can see.

Q. Okay. And then Page 7, that's a photo of the window. Let me see if there's a closeup of the window.

Another toilet picture. Well, Page 10 shows the interior of the toilet. What is the current condition of the toilet now? Is that the way it looks right now?

A. I mean, so when the -- after that, the agent posted this house for sale, sent a cleaning crew to clean the house, and they cleaned the toilet. But they did not -- so that area, everything that you see right now how dirty it is, it's not Number 1 or Number 2. It's something, and they came and cleaned it and still, the bottom shows like a black something.

Q. Okay. Well, so like this -- I'm assuming this is the bathtub that's in the same bathroom?

A. Yeah.

Q. And this is Page 19 of the photos. Was that something that you put in?

A. So this is what I told you that the tiles were removed. Instead of adding new tiles -- because I didn't have money -- I just had it done like smooth surface. But I mean, that bathtub has never been used. Like, you know, it --

Q. Okay. So if I understand correctly, this bathtub used to have tiles, but you removed the tile and then you resurfaced it with this current -- is it cement? Concrete?

A. Isn't that the same?

Q. I'm sorry?
A. Isn't that the same?
Q. Well, I'm trying to figure out what the substance is.
A. Well, I thought cement or concrete is the same. But it's cement like.
Q. Okay.
A. But it's finished cement and then it's sealed, so water -- like you can take a shower there, but I mean --
Q. Okay. But that's something that you did; correct?
A. That I had done.
Q. Right. Okay. Photos of the backyard.
So Page 35 appears to be where the electrical panel is; is that correct?
A. No. That's not to -- the electrical panel is right outside.
Q. Okay.
A. That's the water heater closet.
Q. Oh. Gotcha.
All right. And Page 38, that's the camera that was damaged?
A. Yeah.
Q. Okay. And then here in the background, is that

the cover for the electrical panel?
A. Yeah. And then at the end, you see the steps that they put in there to go through the window.
Q. You mean this red bucket here (indicating)?
A. Yeah.
Q. Okay. Page 40 is a closeup of the panel cover on the ground; correct?
A. Yes.
Q. Okay. 41, another shot of the panel on the ground. And 44, Page 44, is a closeup of the electrical panel. Let me zoom in on this.
So again, other than the master switch being turned off, was there any other damage that was done to the panel?
A. So the master switch is at the top.
Q. Okay.
A. It's not where you were like circling around. So that one is gone right now. It's all gone.
Like other damages? No. But I don't know why like before when I used to be able to like turn that off, like the entire house doesn't turn off. But after like switching it back on, like long time ago, it just came undone.
Q. Okay. Moving on.
A. That's it.

Q. Yeah. So Page 48 is a photo of the bathroom window from the outside; correct?

A. Yes.

Q. Okay. 49 is a closeup of what appears to be the bottom frame of that same window?

A. That's what -- that, they made. That hole that you see right there, that is how they opened the window. I don't know how.

Q. All right. So you're pointing to this hole that was made on the frame of the window?

A. Yeah.

Q. Okay. And so is the theory that they were somehow able to open the window by somehow using this hole here (indicating)?

A. By somehow making that hole and doing something there to be able to open the window.

Q. Okay.

A. I don't know how.

Q. Okay. And then that's Set 3 of the photographs taken on June 6, 2024. It's a closeup of that same hole in the same window?

A. Yes.

Q. Okay. Page 3, I think, is the other side of the window. And the other side of the window frame was not damaged; correct?

it's accurate. If you need more time, let me know. And certainly, if you can get it done before then, you know, then get it to me before the 30 days.

Keep in mind, you'll be signing the transcript under penalty of perjury. Also keep in mind that any changes made to the transcript, if it's deemed to be material, it could be potentially damaging to your claim.

Other than that, we are done and we are off the record.

THE WITNESS: Thank you.

(The deposition concluded at 2:42 p.m.)

* * *

DECLARATION UNDER PENALTY OF PERJURY

I, Julio Ravada, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on September 27, 2024; that I have made such corrections as appear noted on the Deposition Errata Page, attached hereto, signed by me; that my testimony as contained herein, as corrected, is true and correct.

Dated this _____ day of _________________, 2024 at ___________________________________, California.

___________________________________
Julio Ravada

STATE OF CALIFORNIA )
)
COUNTY OF SAN DIEGO )

I, Renée C. Fritz, a Certified Shorthand Reporter, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken remotely before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

I further certify that I am neither counsel for, nor related to, any party to said proceedings, nor in any way interested in the outcome thereof.

In witness whereof, I have hereunto subscribed my name.

Dated: October 7, 2024

Renée C. Fritz
CSR No. 6910

# EXHIBIT 21

**KINGS POWER ELECTRIC INC**



# Estimate

Prepared for Julio Ravada / 2275 E Belding Dr Palm Springs CA 92262
Prepared by: Michael Reyes, President (661)236-9897 State Contractor License # 1053183
July 16, 2024
Project: Testing and Repairs



EXHIBIT
EX 0005
Julio Ravada
09272024

# EXECUTIVE SUMMARY

## Objective

We propose to furnish all materials (except toilet, windowed dishwasher which are to be provided by homeowner) and perform all labor necessary to complete what is outline next

## Project Outline

- Asbestos + mold testing
  - Wall area around toilet
  - Adjacent wall to dishwasher
- Main Electrical Panel Replacement
- Guest Bathroom Window Replacement
- Guest Bathroom Toilet Replacement
- Dishwasher Replacement

## COST: $12,422

## Payment Schedule

| Schedule | Required |
|---|---|
| Set up and testing | $1,922 |
| Southern California Edison Inspection and Approval to Supply Power to Meter | $6,100 |
| Guest Bathroom Window and Toilet installation / Drywall n Stucco Repair | $2,300 |
| Dishwasher Installation / Drywall and cement Repair | $2,100 |
| **Total** | **$12,422** |

## Solution

### Testing

As follows:

- Guest bathroom: Wall #1 is 11' x 8'
- Kitchen Island Adjacent Wall: Wall #2 is 4' x 8'

Test the above-mentioned walls and ceiling area for Asbestos, Lead and Mold. Testing is performed by a certified Inspector from AirMD.

Fans and Dehumidifier:
Supply two temporary large floor fans to increase air movement and speed up the drying process of water damaged walls and ceiling. Supply one temporary dehumidifier to extract excess humidity in the leak affected areas.

Notes:
This estimate is for testing ONLY. If any signs of Asbestos, Lead or Mold are to be discovered in the affected area a separated estimate for mitigation of the problem found will be supplied for approval.

**Preparations and demolition:**
Furniture and artwork etc. to be removed by homeowner to give contractor full access to work area. Plastic sheet off all AC vents in work area to limit dust spreading throughout the house. Cover flooring in work area. Remove stucco, plywood, wall sheetrock in work areas as referenced in this document. Remove existing baseboards and crown molding where needed and store them for re-installation. Remove wall and attic insulation in work area.
Remove all demolition debris and dispose of them in a safe and proper manner.

**Electrical panel**
Replacement of existing electrical panel and disposal. The replacement manufacturer will be **Siemens** or **Square D** type. Installation of a new panel is required due to the existing panel is out of market for fire risk. Paint and stucco repair around electrical panel. Coordinate with Southern California Edison to disconnect, inspect and restore services at residence

**Window**
Homeowner will provide a new window. We will include all the other materials, disposal, prep, and painting of wall outside and entire bathroom inside smooth finish. Waterproof exterior and interior of window, drywall inside of bathroom to smooth drywall, and match existing stucco to best of ability.

**Toilet**
Guest bathroom toilet disposal and installation of new. No plumbing required. New toilet and mounting material will be provided by owner.

**Dishwasher**
Disposal of existing dishwasher. Mounting and re-stocking or resurfacing the damaged area around the dishwasher. Dishwasher will be provided by owner

**Insulation:**
Install R-13 insulation in wall cavity in work area.

**Sheetrock / Stucco:**

Replace all removed sheetrock in work area. Use MMR sheetrock on walls to guest bathroom and kitchen.. Sheetrock fastened with screws. Tape, mud and finish smooth to match existing. Installed sheathing, tape seams, install house wrap and cover with stucco to match existing

**Baseboards and Crown Moldings:**
Reinstall existing previously removed baseboards and crown moldings. Replace any broken ones.

**Painting:**
Prime all new sheetrock and stucco with a quality PVA primer. Paint all work area walls interior / exterior with a quality paint in a white color and sheen, from a paint code chosen by the homeowner. Paint all re-installed baseboards and crown moldings as needed.

**Disclosures:**

1.) Please note all changes require a signed change order before work can commence.

2.) Furniture, electronics, artwork etc. that need to be removed in project area, will be removed by homeowner.

3.) Homeowner will have water and power available for contractor to use.

4.) Price includes disposal of all demolition and construction debris in a safe and proper manner.

5.) No cost for permit or retaining a permit (if required) is included in price.

**Michael Reyes**
**President**

KINGS POWER ELECTRIC INC

**State Contractor License # 1053183**

# NOTICE TO OWNER

**To: Owner**
Mr. Julio Ravada
2275 E. Belding Drive
Palm Springs, CA 92264
Phone: 213-925-4069

**From: Contractor**
Kings Power Electric
6939 Rhea Ave
Reseda Ca, 91335
Phone: 661-236-9897

**Re:** Asbestos, Lead and Mold Testing
**Address:** Same as above

Notice to Owner regarding Mechanics lien law:

"Under the Mechanics lien law, any contractor, subcontractor, laborer or supplier or other person or entity who helps to improve your property but is not paid for his or her work or supplies, has a right to place a lien on your home, land, or property where the work was performed and to sue you in court to obtain payment."

This means that, after a court hearing, your home, land, and property could be sold by court officer and proceeds of the sale used to satisfy what you owe. This can happen even if you paid your contractor in full if the contractor's subcontractors, laborers or a supplier remains unpaid.

To preserve their rights to file a claim or lien against your property, certain claimants such as subcontractors or material suppliers each required to provide you with a document called a "Preliminary Notice". Contractors and laborers who contract with owners directly do not have to provide such notice, since you are aware of their existence as an owner. A preliminary notice is not a lien against your property. Its purpose is to notify you of persons or entities that may have a right to file a lien against your property if they are not paid. To perfect the lien rights, a contractor, subcontractor, supplier, or laborer must file a mechanic's lien with the county recorder which then becomes a recorded lien against your property. Generally, the maximum time allowed for filing a mechanic's lien against your property is 90 days after substantial completion of your project.
To ensure extra protection for yourself and your property, you may wish to take one, or more of the following steps:

1. Require that your contractor supply you with a payment and performance bond (not a license bond), which provides that the bonding company will either complete the project or pay damages up to the amount of the bond. This payment and performance bond as well as a copy of the construction contract should be filed with the county recorder for your further protection. The payment and performance bond will usually cost from 1 to 5 percent of the contract amount depending on the contract ors bonding ability. If a contractor cannot obtain such bonding, it may indicate his or her financial incapacity.

2. Require that payments be made directly to subcontractors and material suppliers through a joint control. Funding services may be available, for a fee, in your area which will establish

vouchers or other means of payment to your contractor. These services may also provide you with lien waivers and other forms of protection. Any joint control agreement should include the addendum by approved the registrar.

3. Issue joint checks for payment, made out to both your contractor and subcontractors or material suppliers involved in the project. The joint checks should be made payable to the persons or entities which send preliminary notices to you. Those persons or entities have indicated that they may have lien rights on your property, therefore you need to protect yourself. This will help to ensure that all person's due payment is actually paid.

4. Upon making payment on any completed phase of the project, and before making any further payments, require your contractor to provide you with unconditional "Waiver and Release" forms signed by each material supplier, subcontractors, and laborers that you obtain leases from are those persons or entities who have filed preliminary notices with you. If you are not certain of the materials suppliers, subcontractors, and laborers working on your project, you may obtain a list from your contractor. On projects involving improvement to single family residence or a duplex owned by individuals, or persons signing these releases lose the right to file a mechanic lien claim against your property. In other types of construction, these protections may still be important, but may not be as complete.

To protect yourself under this option, you must be certain that all material suppliers, subcontractors, and laborers have signed the "Waiver and Release" form. If a mechanics lien has been filed against your property, it can only be voluntarily released by a recorded "Release of Mechanics" Lien signed by the person or entities that filed the mechanics lien against your property unless the lawsuit to enforce the lien was not timely filed. You should not make any final payments until any and all such liens are removed. You should consult any attorney if a lien is filed against your property.

Contractors are required by law to be licensed and regulated by the Contractors State License Board, which has jurisdiction to investigate complaints against contractors if a complaint is filed within 3 years of the date of the alleged violation. Any questions concerning a contractor may be referred to the Registrar, Contractors State License Board, P.O. Box 26000, Sacramento, CA 95826.

**Date: 7/16/2024** **Contractor or Contractor Agent:** ____________________

**Acknowledgement:** ________________________________ **Date:** ________________
(Owner or Executive Officer sign here)

## "ARBITRATION OF DISPUTES"

**NOTICE:** By initialing in the space below you are agreeing to have a dispute arising out of the matters included in the 'Arbitration of Disputes' provision decided by neutral arbitration as provided by California law and you are giving up any rights you might possess to have the dispute litigated in a court or Jury trial. By initialing in the space below you are giving up your judicial rights to discovery and appeal, unless those rights are specifically included in the "arbitration of disputes" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the business and professions code or other applicable laws. Your agreement to this arbitration provision is voluntary.

"We have read and understand the forgoing and agree to submit disputes arising out of the matters included in the 'arbitration of disputes' provision to neutral arbitration."

I agree to arbitration: ______________________________ Date: ______________
Please sign here

I do not agree to arbitration: ______________________________ Date: ______________
Please sign here

# NOTICE OF RIGHT TO CANCEL

## Notice of Cancellation

______________________________
Please enter date you sign contract

**You may cancel this transaction. Without any penalty or obligation, within three business days from the above date.**

**If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.**

**If you cancel, you must make available to the seller at your residents, in substantially as good condition as when received, any goods delivered to you under this contract or sale, you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.**

**If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of the obligations under this contract.**

**To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to:**

**Kings Power Electric**
**Attn. Michael Reyes**

**At 6939 Rhea Ave**
**Reseda Ca, 91335**

**Or e-mail to**
**kings.power.electric@gmail.com**

**Not later than midnight of** ______________________________
*Please enter date (three days from date of contract signing)*

**I hereby cancel this transaction** ____________________
*Date*

______________________________
(Buyer's signature, please only sign if you intend to cancel this contract within the *three days of signing it.*)

# EXHIBIT 22

**Kelly Canby**

| | |
|---|---|
| **From:** | Luna D'Sol <jravada@icloud.com> |
| **Sent:** | Thursday, April 23, 2026 7:17 AM |
| **To:** | Kelly Canby; Michelle Bernard |
| **Cc:** | Jer Vang-Zamora; Kiry Yeoun |
| **Subject:** | : LR 37-2.2 Joint Stipulation – Plaintiff's Portion Provided / Response Required Within 7 Days |
| **Attachments:** | JOINT STIPULATION RE- PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND SUPPLEMENTAL DISCLOSURES .docx |

Ms. Canby,

Pursuant to Local Rule 37-2.2, Plaintiff provides her portion of the Joint Stipulation regarding the discovery issues addressed in Judge Sagar's ruling.

Please insert Defendant's positions in the designated sections and return the completed Joint Stipulation within seven (7) days of this email.

Plaintiff further notes prior meet-and-confer efforts, including written communications dated April 14 and April 15, 2026, as well as follow-up telephone calls and voicemail messages, none of which have received a substantive response.

If Defendant does not timely provide its portion of the Joint Stipulation, Plaintiff will proceed with filing a unilateral submission in compliance with the Local Rules and will inform the Court of Defendant's failure to participate in the joint stipulation process.

Regards,

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 23

**Kelly Canby**

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, August 5, 2026 3:26 PM
**To:** Kiry Yeoun
**Cc:** Kelly Canby; Michelle Bernard
**Subject:** Automatic Reply: Out of Office

Thank you for your email.

I am currently out of the office and will be unavailable until August 20, 2026. During this time, I will not be reviewing or responding to email.

Nothing in this automatic response should be construed as an acknowledgment, agreement, waiver, consent, acceptance of service, stipulation, or concession regarding any factual assertion, legal position, or procedural matter referenced in your email or any attachment.

Any response, if appropriate, will be provided after my return.

Luna D'Sol

On Jul 17, 2026, at 09:26, Kiry Yeoun <kyeoun@grsm.com> wrote:

Dear Counsel,

Please find attached the electronic service copy of the document:

**DEFENDANT FARMERS DIRECT PROPERY AND CASUALTY INSURANCE COMPANY'S NOTICE OF VIDEOTAPED DEPOSITION OF PLAINTIFF LUNA D'SOL**

Best,

**KIRY YEOUN**
**LEGAL SECRETARY**

GRSM 50

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 840.256.8605
**E:** kyeoun@grsm.com | grsm.com

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<2026-07-16 D'SOL DEF NOTICE OF DEPOSITION TO PLAINTIFF.pdf>

**Kelly Canby**

| | |
|---|---|
| **From:** | Kelly Canby |
| **Sent:** | Thursday, July 30, 2026 9:58 AM |
| **To:** | 'Luna D'Sol' |
| **Cc:** | Michelle Bernard; Kiry Yeoun; Joni Etue |
| **Subject:** | Request for Local Rule 37-1 Conference? / RE: Confirmation of 7/31 Deposition (and Request to Exchange Initial Disclosure Documents on 7/29)? / FW: Case No. 2:25-cv-109838-SVW-ASx - LUNA D'SOL v. FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY |
| **Attachments:** | 2026-07-16 D'SOL DEF NOTICE OF DEPOSITION TO PLAINTIFF.pdf |
| **Importance:** | High |

Good Morning Ms. D'Sol –

The Proof of Service attached to your Deposition Notice is the record of service. See attached. Please note that there is no blanket stay of discovery merely because a motion is pending. *See e.g., Skellerup Industries Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995). As explained further below, the Notice of Deposition was properly served by Farmers Direct and your attendance at deposition in Los Angeles can be compelled, if necessary, although I would prefer to avoid having to do so. *See e.g., Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008).

Although I hope to be accommodating of what sounds like an incredibly extensive dental procedure if you will be unable to comfortably speak for the better part of a week, we still have a trial date that is quickly approaching and need to move forward with your deposition and discovery now. **Please provide <u>at least one date</u> during the next two weeks (<u>on or before 8/13/26</u>) when you can be available for an in person deposition in Los Angeles and I will move my schedule around to work with yours (with Parties to make the agreed upon exchange of Initial Disclosure documents at least 3 court days prior to your deposition)?**

Please note that this Court has advised the parties regarding the handling of discovery disputes in this case as follows:

> Discovery disputes of a significant nature should be brought promptly before the Magistrate Judge. The Court does not look favorably upon delay resulting from unnecessarily unresolved discovery disputes. See Order of December 8, 2025 [ECF Doc. 17].

Accordingly, let's also now schedule a time to conduct a meet and confer conference of counsel per Local Rule 37-1 and FRCP 37 (see below) so we can proceed with raising any unresolved issues with Magistrate Sagar per Local Rule 37-2 if needed. **How soon can you be available for a Local Rule 37-1 Conference call as I hope to speak with you soon (and before your dental treatments begin while your mouth is still operational)?**

**Specifically, Farmers Direct requests the scheduling of a Prefiling Conference of Counsel per Local Rule 37-1 regarding anticipated Motions to Compel your Deposition and/or Motion To Compel the agreed upon exchange of Initial Disclosure documents prior thereto**, among other discovery or

scheduling issues, and Farmers Direct reserves the right to seek all potentially available sanctions against you (including monetary sanctions, issue sanctions, exclusion of evidence sanctions and/or potential terminating sanctions) as result of your refusal to appear at deposition which was properly noticed for Friday July 31, 2026 per the attached and/or any refusal or failure to appear for a rescheduled deposition within the next two weeks (and I will chose the date if you are unwilling to do so). Specifically, in addition to potential monetary sanctions, when a party "fails, after being served with proper notice, to appear for that person's deposition . . . [t]he available sanctions . . . may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)" which are as follows:

> "Rule 37(b)(2)(A) provides that the Court may make an order: (i) directing that the matters embraced in the order or other designated facts be taken as established ...; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) further staying proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order...." *Paige*, 248 F.R.D. at n. 3, *citing* Fed. R. Civ. Proc. 37(b)(2)(A).

A "deposition notice is all that is needed to require the attendance of parties at the depositions" and the "examining party may set the place for the deposition of another party wherever he wishes subject to the power of the court to grant a protective order under Rule 26(c)(2) designating a different place." Your claimed travel complications are not a sufficient reason to refuse to appear at deposition. *See e.g., U.S. v. $160,066.96 from Bank of America*, 202 F.R.D. 624, 627-630 (S.D. Cal. 2001) (denying requests of Pakistani claimants to have "their depositions taken in Pakistan because otherwise they face two lengthy round trips to California in a single year" which did not meet the standard of "undue burden and expense" because this "requires more than some expense or difficulty" especially where the claimant chose to prosecute "their claim in this district" and the court also denied the alternative request to have their depositions be taken "by telephone" which would burden the opposing party through "compromised effectiveness" of the depositions). You filed claims against Farmers Direct in Los Angeles, your deposition has been noticed to proceed in Los Angeles and therefore you will need to find "a way to get to Los Angeles" sometime in the next two weeks or risk all the potential sanctions noted above.

**Additionally, if you are in fact actually disputing the validity of service by email in this case, then we also need to meet and confer per Local Rule 37-1 and/or Local Rule 7-3 regarding additional potential motions and/or requests for sanctions** arising from your apparent violations of the Court's Order of November 25, 2025 [ECF Doc. 12] and/or violations of Local Rules 5-4.1.1 – 5-4.8.2) -- **including Farmers Direct's anticipated request to have your e-filing/ECF System privileges revoked** for breaching the terms, conditions, orders, rules and agreements under which you were granted access to that system, specifically including your express written consent to accept service by email and your prior affirmation, agreement and requirement to maintain "regular access to the technical requirements necessary" for participation in that system for compliance with the applicable Local Rules related thereto (e.g., your responsibility for maintaining an "email account on a daily basis to receive notifications" and/or an "electronic post office box" related to email service).

Please let me know of some available dates/times for a call and your preferred date for your deposition (between now and 8/13/26) before the close of business today?

Kelly Canby

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, July 29, 2026 9:05 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>; Kiry Yeoun <kyeoun@grsm.com>; Joni Etue <jetue@grsm.com>
**Subject:** Re: Confirmation of 7/31 Deposition (and Request to Exchange Initial Disclosure Documents on 7/29)? / FW: Case No. 2:25-cv-109838-SVW-ASx - LUNA D'SOL v. FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Counsel,

No, I have not been served a deposition, I don't have any records of such documents being served to me. I am unable to confirm those 3 days because of a dental procedure which will impair my speech and I don't have a way to get to Los Angeles. Last, my understanding is that the judge is reviewing the continuance of discovery which is why I a under the impression your company and I have not started anything

On Jul 29, 2026, at 20:19, Kelly Canby <kcanby@grsm.com> wrote:

Good Evening Ms. D'Sol -

If you are out of town and not available to appear in Los Angeles at your deposition on Friday, we can reset your deposition for another day next week at GRSM's Office in Los Angeles. I'm available on **Tuesday 8/4, Wednesday 8/5 or Friday 8/7. Please let me know which of these dates you prefer?**

Additionally, we still need copies of your Initial Disclosure documents. We previously agreed that the parties would exchange copies of the documents identified in their Initial Disclosures and Farmers Direct thereafter had its voluminous Claim file prepared for production and has been ready to exchange these Initial Disclosure documents for months. Please note that sanctions under Rule 37 are "self-executing" and "automatic" and evidence "exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-1107 (9th Cir. 2001), citing Fed. R. Civ. Proc. 37 Advisory Committee Note (1993). Per my prior email below, I hoped that we would be exchanging those documents today. We need copies of your Initial Disclosure documents at least a few days prior to your deposition. **Please let me know if you can be ready to exchange Initial Disclosure documents by this Friday 7/31 (and if not when)?**

Please note that your Deposition Notice was properly served by email to your email address: jravada@icloud.com.

As you have previously acknowledged, you consented to electronic service via email in this Federal Court case last November as result of your prior Application for Permission for Electronic Filing [ECF Doc. 10], the Court's Order thereon [ECF Doc. 12] and your subsequent registration and use of the ECF System. See attached. "I understand that once I register for e-filing, I will receive notices and documents in Central District cases only by e-mail and not by U.S. mail." [ECF Doc. 10]. "**By registering to e-file you have agreed to receive electronic service of documents by e-mail.**" *See* www.cacd.uscourts.gov/e-filing/electronic-filing-and-case-access-people-without-lawyers (emphasis added). When a "pro se party is granted court permission to register as an ECF user; such registration constitutes consent to receive electronic service." Rutter Group Practice Guide--Federal Civil Procedure Before Trial (Calif. and 9th Cir. Edition), Section 12:84.12, citing U.S.D.C. C.D. Cal. Local Rules 5-3.2.1, 5-3.2.2; *see also generally* Fed. R. Civ. Proc. 5(b)(2)(E). As you know, both parties have exclusively used electronic service in this case ever since.

Additionally, as result of the Court's Civil Trial Order and applicable Local Rules, **the Parties are required to complete an ADR Proceeding by Friday, August 21, 2026.** We are checking on the availability of some potential mediators during August and should hopefully have more information next week, but please let me know if you have any ADR Preferences and/or other suggestions on this topic?

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, July 29, 2026 3:49 PM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>; Kiry Yeoun <kyeoun@grsm.com>; Joni Etue <jetue@grsm.com>
**Subject:** Re: Confirmation of 7/31 Deposition (and Request to Exchange Initial Disclosure Documents on 7/29)? / FW: Case No. 2:25-cv-109838-SVW-ASx - LUNA D'SOL v. FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Hi Ms Canby

I did not know you were back in town yet.

I am sorry I didn't respond earlier but I am out of town visiting my 95 year old grandma. I will be back home on August 17th 2026. I don't recall seeing any requests that you are referring to, as I mentioned, I was in the hospital. Did you serve it via mail ?

Luna

Sent from my iPhone

On Jul 27, 2026, at 6:10 PM, Kelly Canby <kcanby@grsm.com> wrote:

Good Evening Ms. D'Sol –

This email is to confirm your deposition for Friday 7/31 at 9:00 a.m. at our office in Los Angeles per the attached Notice of Deposition. Can you please confirm your intention to appear?

Additionally, my prior request to exchange Initial Disclosure documents is long overdue, can you have your documents ready for exchange by Wednesday 7/29?

Kelly Canby

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

**From:** Kiry Yeoun <kyeoun@grsm.com>
**Sent:** Friday, July 17, 2026 9:27 AM
**To:** Luna D'Sol <jravada@icloud.com>
**Cc:** Kelly Canby <kcanby@grsm.com>; Michelle Bernard <mbernard@grsm.com>
**Subject:** Case No. 2:25-cv-109838-SVW-ASx - LUNA D'SOL v. FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

Dear Counsel,

Please find attached the electronic service copy of the document:

**DEFENDANT FARMERS DIRECT PROPERY AND CASUALTY INSURANCE COMPANY'S NOTICE OF VIDEOTAPED DEPOSITION OF PLAINTIFF LUNA D'SOL**

Best,

**KIRY YEOUN**
**LEGAL SECRETARY**

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 840.256.8605
**E:** kyeoun@grsm.com | grsm.com

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<2026-07-16 D'SOL DEF NOTICE OF DEPOSITION TO PLAINTIFF.pdf>

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<2025-11-18 D'SOL - DOC 10 PLTF APPLICATION FOR PERMISSION FOR ELECTRONIC FILING(109158610.1).pdf><2025-11-25 - ECF DOC 12 - ORDER GRANTING PLTF D'SOL PERMISSION FOR ELECTRONIC FILING(157662458.1).pdf><2026-07-16 D'SOL DEF NOTICE OF DEPOSITION TO PLAINTIFF.pdf>

**Luna D'Sol**
📱 (213) 925-4069
📧 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 24

**Kelly Canby**

| | |
|---|---|
| **From:** | Kiry Yeoun |
| **Sent:** | Wednesday, July 15, 2026 4:46 PM |
| **To:** | Luna D'Sol |
| **Cc:** | Kelly Canby; Michelle Bernard |
| **Subject:** | LUNA D'SOL v. FARMERS DIRECT PROPERT - Expert Witness Disclosures - Electronic Service and TitanFile ShareLink |
| **Attachments:** | 2026-07-15 - D'SOL - DEFENDANT'S EXPERT WITNESS DISCLOSURES.pdf; TitanFile External User Guide.pdf |

Dear Luna,

Please find attached a copy of the Expert Witness Disclosures for your review.

As a courtesy, I will also send a duplicate copy of the same Expert Witness Disclosures through a TitanFile ShareLink email in case there are any issues with the file size of the attachment or difficulty accessing the attached document.

I have also attached the TitanFile External User Guide Instructions for your reference. Please let us know if you experience any issues accessing the attached document or the duplicate copy provided through the TitanFile ShareLink.

Best regards,

**KIRY YEOUN**
**LEGAL SECRETARY**

GRSM 50

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 840.977.8974
**E:** kyeoun@grsm.com | grsm.com

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY F. CANBY (SBN: 185227
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>v.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 2:25-cv-10938-SVW-ASx<br><br>Hon. Stephen V. Wilson<br>Magistrate Judge: Alka Sagar<br><br>**PROOF OF SERVICE**<br><br>Complaint Filed: August 21, 2025 |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP, 101 West Broadway, Ste. 2000, San Diego, California 92101. On July 15, 2026 below, I served the within documents:

**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S EXPERT WITNESS DISCLOSURES**

☐ **BY PERSONAL SERVICE:** by having the document(s) listed above personally delivered to the person(s) at the address(es) set forth below.

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below.

☒ **BY E-SERVICE:** I caused the document(s) listed above to be sent to the person at the e-mail address on the service list below. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

**Plaintiff in Pro Per**

Luna D'Sol
2275 E. Belding Dr
Palm Springs, CA 92262
Tel: (213) 925-40690
Email: jravada@icloud.com

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on July 15, 2026.

Kiry Yeoun
Kiry Yeoun

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# About TitanFile

TitanFile is a file sharing and collaboration application that is widely used in professional environments. With TitanFile, confidential files of any size can be sent safely and securely.

# Access Shared Files

When someone sends you a file, you will receive an email from the individual via TitanFile <notifications@us.titanfile.com>. The email will include a message (if included) and a list of all attached files. Click **Access Files** in your email to navigate to the files on TitanFile.

# Log In to TitanFile

To access content shared on TitanFile, you will need to log in with your credentials.

## New User

1. Click **Send PIN** to verify your email address.
2. Enter the generated PIN sent to your email address and click **Verify**.
3. Verify your email and name.
4. Create a password and enter it in the **New password** field.
   **Note:** Passwords must be at least 8 characters long and include at least three of the following: a lowercase letter, an uppercase letter, a special character, and a digit.
5. Click **Proceed to Files**.
6. Select a two-factor authentication (2FA) method and click **Continue**.
7. Provide verification.

## Existing User

1. Complete the **Email Address** and **Password** fields.
2. Click **Log in**.
3. Provide verification, if necessary.

# View and Send Messages and Files

After logging in, the TitanFile channel will display along with all messages and attachments included in the channel. On the default Conversation tab, you can:

Read messages in the conversation history.

Click files in the conversation history to download the files.

Send a message to all members in the channel.

Send attached files and/or folders to all members in the channel.

TitanFile

# Conversation Record with Delivery Log

Requested by: Kelly Canby <kcanby@grsm.com>

From: 12.229.121.254

https://us.titanfile.com/channels/as_pdf/wftzBO/1784098800/1784185200/

Produced by: TitanFile Inc.
1050 King St W, Toronto, ON M6K 0C7
+1 855-315-6012
support@titanfile.com

Generated: 01 August, 2026 06:04 EDT

# LUNA D'SOL v. FARMERS DIRECT PROPERT - Expert Witness Disclosures

## Contacts:

| Name | Email | Organization |
|---|---|---|
| Kiry Yeoun | kyeoun@grsm.com | Gordon Rees Scully Mansukhani, LLP |
| Kelly Canby | kcanby@grsm.com | |
| Michelle Bernard | mbernard@grsm.com | GORDON REES SCULLY MANSUKHANI, LLP |
| Luna D'Sol | jravada@icloud.com | |

## Conversation (1 messages):

Kiry Yeoun (kyeoun@grsm.com) 15 July, 2026 19:48 EDT

Dear Luna,

Please find attached a copy of the Expert Witness Disclosures for your review.

Best,

Kiry Y.

TitanFile External User Guide.pdf (108.8 KB SHA2: 1ea8d09b7e0dc34a6fe189f24423ac28ad8173b902b1e402f4841c747076c5f9)

2026-07-15 - D'SOL - DEFENDANT'S EXPERT WITNESS DISCLOSURES.pdf (1.9 MB SHA2: 7729d0d6572d2bc6cb4d9b0dc131489783dfaccbf8567f641138dfae18449738)

### Delivery Log

| Timestamp | Source IP | Destination IP | SMTP response |
|---|---|---|---|
| Luna D'Sol <jravada@icloud.com> | | | |
| 2026-07-15 19:48:12 EDT | 198.2.136.18 | 17.42.251.62 | 250 2.0.0 Ok: queued as 6869FC000BF |
| Michelle Bernard <mbernard@grsm.com> | | | |
| 2026-07-15 19:48:08 EDT | 198.2.136.18 | 52.101.9.12 | 250 2.6.0 <178415928607.3902359.12002335648863980379@ip-10-101-11-73.ec2.internal> [InternalId=8220567443266, Hostname=DS7PR20MB4600.namprd20.prod.outlook.com] 59658 bytes in 0.146, 398.837 KB/sec Queued mail for delivery |
| Kelly Canby <kcanby@grsm.com> | | | |
| 2026-07-15 19:48:07 EDT | 205.201.139.8 | 52.101.9.14 | 250 2.6.0 <178415928607.3902360.7599146110866767888@ip-10-101-11-73.ec2.internal> [InternalId=61074434982303, Hostname=PH0PR20MB4350.namprd20.prod.outlook.com] 59681 bytes in 0.150, 386.929 KB/sec Queued mail for delivery |

GRSM50

71

+ New Channel

in:active

KC Kelly

Channels

Contacts

Files

Reports

Options

**LUNA D'SOL v. FARMERS DIRECT PROPERT - Expert Witness Disclosures**

( 4 members, last activity: July 15, 2026 4

1 Message

2 Files

Add | KY Kiry | KC Kelly | MB Michelle | LD Luna

Conversation | Files | Contacts | History | Options

| | |
|---|---|
| **August 1, 2026 3:04 am** | Email delivered successfully to Kelly Canby at August 1, 2026 6:04 am EDT |
| **August 1, 2026 3:04 am** | Kelly Canby exported conversation as PDF. |
| **August 1, 2026 3:03 am** | Email delivered successfully to Kelly Canby at August 1, 2026 6:03 am EDT |
| **July 15, 2026 4:48 pm** | Email delivered successfully to Luna D'Sol at July 15, 2026 7:48 pm EDT |
| **July 15, 2026 4:48 pm** | Email delivered successfully to Michelle Bernard at July 15, 2026 7:48 pm EDT |
| **July 15, 2026 4:48 pm** | Email delivered successfully to Kelly Canby at July 15, 2026 7:48 pm EDT |

GRSM50

71

KC Kelly

Channels

Contacts

Files

Reports

Options

| | |
|---|---|
| **July 15, 2026 4:48 pm** | Kiry Yeoun uploaded "TitanFile External User Guide.pdf" file. |
| **July 15, 2026 4:48 pm** | Kiry Yeoun uploaded "2026-07-15 - D'SOL - DEFENDANT'S EXPERT WITNESS DISCLOSURES.pdf" file. |
| **July 15, 2026 4:48 pm** | Kiry Yeoun sent a new message with 2 files. |
| **July 15, 2026 4:47 pm** | Kiry Yeoun renamed "LUNA D'SOL v. FARMERS DIRECT PROPERT - Expert Witness Disclosures - Electronic Service and TitanFile ShareLink" to "LUNA D'SOL v. FARMERS DIRECT PROPERT - Expert Witness Disclosures" channel. |
| **July 15, 2026 4:21 pm** | Kiry Yeoun added Luna D'Sol. |
| **July 15, 2026 4:20 pm** | Kiry Yeoun added Michelle Bernard. |
| **July 15, 2026 4:19 pm** | Kiry Yeoun added Kelly Canby. |
| **July 15, 2026 4:19 pm** | Kiry Yeoun created "LUNA D'SOL v. FARMERS DIRECT PROPERT - Expert Witness Disclosures - Electronic Service and TitanFile ShareLink" channel. |