**Luna D'Sol**
Plaintiff, In Pro Per
Email Address: jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LUNA D'SOL**

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, FARMERS INSURANCE EXCHANGE and DOES 2-50, inclusive,

Defendant(s).

Case No: *2:25-cv-10938-SVW-ASx*

**PLAINTIFF'S OPPOSITION TO DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Judge: Hon. Stephen V. Wilson
Date: September 28, 2026
Time: 1:30 p.m. Courtroom: 10A
Trial Date: October 13, 2026; 9:00 a.m.
FSC: October 5, 2026; 3:00 p.m.

Concurrently filed with DECLARATION OF LUNA D'SOL ISO PLAINTIFF OPPOSITION TO DEFENDANTS SUMMARY JUDGMENT, PLAINTIFF'S STATEMENT OF GENUINE DISPUTE IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT, OBJECTIONS, PLAINTIFF'S RESPONSE TO DEFENDANT'S NOTICE OF LODGMENT, PROPOSED ORDER

## TABLE OF CONTENTS


I. INTRODUCTION ........ 2

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. Defendant's Purported "Deemed Admissions" Do Not Warrant Summary Judgment, and the Record Reflects Independent, Disputed Problems With Service and the Reliability of Defendant's Discovery ........ 3

1. Plaintiff Never Gave the Express Consent to Electronic Service That Rule 36 Admissions Require ........ 3

2. Defendant Did Not Meet and Confer With Plaintiff ........ 4

B. Genuine Disputes of Material Fact Preclude Summary Judgment on the Breach of Contract Claim ........ 5

1. The Document Defendant Calls "The Policy" Is Itself the Subject of a Pending, Unresolved Dispute ........ 5

2. Genuine Disputes Exist as to Whether Farmers Direct Paid the Reasonable Cost to Restore the Dwelling and Replace Plaintiff's Personal Property ........ 6

B. Genuine Disputes of Material Fact Preclude Summary Judgment on the Bad Faith Claim ........ 8

C. Genuine Disputes of Material Fact Preclude Summary Judgment on the Unruh Civil Rights Act Claim ........ 8

D. Punitive Damages Cannot Be Resolved on Summary Judgment While Genuine Disputes Remain on the Underlying Claims ........ 10

IV. ADDITIONAL PROCEDURAL AND ENTITY ISSUES ........ 10

A. Defendant Did Not Request a Meet and Confer Regarding the Matters Raised in Its Motion ........ 10

B. Farmers Insurance Exchange Is Named as a Defendant in the First

Amended Complaint and in Each Cause of Action ........................................ 11

C. Defendant's Characterization of Plaintiff as Unresponsive Is Contradicted by Its Own Correspondence and Conduct ........................................ 12

D. The Court Must Address Any Defect in Subject-Matter Jurisdiction Before Entering Summary Judgment ........................................ 12

V. INTERNAL INCONSISTENT REPRESENTATIONS ........................................ 13

VI. CONCLUSION ........................................ 14

# TABLE OF AUTHORITIES

## CASES


Adams v. Allstate Ins. Co., 187 F.Supp.2d 1219 (C.D. Cal. 2002) .......... 8, 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).......... 2, 3, 4, 8, 13

Bax v. Doctors Medical Center of Modesto, Inc., 393 F.Supp.3d 1000 (E.D. Cal. 2019).......... 9

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......... 2

Chateau Chamberay Homeowners' Assn. v. Assoc. Intern. Ins. Co., 90 Cal.App.4th 335 (2001)3, 8

Chodos v. Ins. Co. of N. America, 126 Cal.App.3d 86 (1989) .......... 10

Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809 (1979).......... 3, 8

Feldman v. Allstate Ins. Co., 322 F.3d 660 (9th Cir. 2003).......... 8

Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992).......... 12

Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566 (1973) .......... 3, 8

Keshish v. Allstate Ins. Co., 959 F.Supp.2d 1226 (C.D. Cal. 2013).......... 8

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) .......... 6

Opsal v. United Services Automobile Assn., 2 Cal.App.4th 1197 (1991) .......... 3, 8

Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir. 2002).......... 14

People v. Zarazua, 85 Cal.App.5th 639 (2022) .......... 8

Selane Products, Inc. v. Continental Casualty Co., 706 F.Supp.3d 997 (C.D. Cal. 2020) .......... 6

Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001) .......... 2, 5, 13

United States v. Safavian, 435 F.Supp.2d 36 (D.D.C. 2006) .......... 14


## STATUTES


28 U.S.C. § 1447(c) .......... 12

Cal. Civ. Code § 3294(b).......... 10

**RULES**

Fed. R. Civ. P. 5(b)(2)(E) .......... 3, 4
Fed. R. Civ. P. 5(b)(2)(E), Advisory Comm. Notes to 2001 Amendment .......... 3
Fed. R. Civ. P. 36(a)(3) .......... 3
Fed. R. Civ. P. 56(a) .......... 2
Fed. R. Civ. P. 56(c)(1) .......... 13
Fed. R. Civ. P. 56(c)(2) .......... 14
Fed. R. Civ. P. 56(c)(4) .......... 2, 7, 13
Fed. R. Evid. 201(b) .......... 6
Fed. R. Evid. 602 .......... 7
Fed. R. Evid. 701 .......... 7
Fed. R. Evid. 901(a) .......... 14
Fed. R. Evid. 901(b)(4) .......... 14
C.D. Cal. L.R. 5-4.1.1 .......... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Farmers Direct Property and Casualty Insurance Company's Motion rests on four premises, each of which is genuinely disputed on this record: (1) that the document it calls "the Policy" — filed as Exhibit A to Defendant's own Request for Judicial Notice — is complete, authentic, and correctly describes the Policy's own terms; (2) that Plaintiff's failure to respond to Requests for Admission resulted in valid deemed admissions under Fed. R. Civ. P. 36(a)(3); (3) that Defendant's investigation and claims-handling narrative are accurately and completely described by its own declarations; and (4) that Defendant's repeated use of Plaintiff's prior name and pronouns, after acknowledging in writing that it knew better, was mere inadvertence.

As shown below, each premise is contradicted by Defendant's own exhibits and declarations, or is the subject of a motion already pending before this Court. Under Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), that is sufficient to deny summary judgment as to every cause of action Defendant seeks to dispose of.

## II. LEGAL STANDARD

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and the Court must view the evidence in the light most favorable to, and draw all justifiable inferences in favor of, the nonmoving party. Anderson, 477 U.S. at 248, 255. The Court does not weigh evidence or make credibility determinations at summary judgment; those are jury functions. Id. at 255. Affidavits and declarations offered in support of summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence," and show the affiant is competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4). A court "need not... accept as true" allegations that are contradicted by the movant's own exhibits, Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) — a principle that applies equally where, as here, the movant's own declarations are contradicted by the movant's own attached exhibits.

In the insurance context, an insurer is not liable for bad faith merely because its coverage position later proves incorrect, so long as that position was reasonable — the "genuine dispute doctrine." Chateau Chamberay Homeowners' Assn. v. Assoc. Intern. Ins. Co., 90 Cal.App.4th 335, 346–347 (2001); Opsal v. United Services Automobile Assn., 2 Cal.App.4th 1197, 1205 (1991). But that doctrine presupposes a reasonable investigation in the first place: an insurer owes its insured a duty to conduct a "full, fair and thorough" investigation of a claim before denying or limiting benefits. Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 819 (1979); Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 576 (1973). Where, as here, the reasonableness of that investigation itself turns on disputed facts — including whether the evidence the insurer relied upon was accurately characterized — the genuine dispute doctrine cannot resolve the case on summary judgment; it presents a jury question. See Anderson, 477 U.S. at 255.

## III. ARGUMENT

### A. Defendant's Purported "Deemed Admissions" Do Not Warrant Summary Judgment, and the Record Reflects Independent, Disputed Problems With Service and the Reliability of Defendant's Discovery

#### 1. Plaintiff Never Gave the Express Consent to Electronic Service That Rule 36 Admissions Require

A substantial portion of Defendant's Separate Statement of Uncontroverted Facts (SUF Nos. 2–3, 33, 36, 90–92, 99, 101–102, 105, 107–108, 116–120) rests entirely on Requests for Admission supposedly "deemed admitted" under Fed. R. Civ. P. 36(a)(3). That consequence attaches only where the request was properly served and the responding party failed to timely answer or object. Fed. R. Civ. P. 36(a)(3). Service by electronic means outside the Court's CM/ECF system requires the recipient's express written consent, which "must be express, and cannot be implied from conduct." Fed. R. Civ. P. 5(b)(2)(E); Advisory Comm. Notes to 2001 Amendment (rejecting, as an example of impermissible implied consent, a ruling that an e-mail address on a firm's letterhead sufficed).

Defendant's counsel relies on a September 8, 2026 email in which Plaintiff asked whether Defendant would "consent to service by email for all future filings and correspondence." Michelle R. Bernard responded that "substantive pleadings... will need to be filed/served via the District Court's ECF

system," but that Defendant was merely "amenable to service via email of courtesy copies." (D'Sol Decl. ¶10, Ex. 2.) A "courtesy copy" is by definition supplemental to service, not a substitute for it — precisely the sort of passive, inferential basis for consent the 2001 Advisory Committee Note was written to foreclose. Plaintiff never gave, and has repeatedly disclaimed, any broader consent. (Id.) Nor does her unrelated CM/ECF e-filing registration under Local Rule 5-4.1.1 — which governs notices generated by the Court's own system — establish consent to a private party's informal email service of discovery outside it. See Fed. R. Civ. P. 5(b)(2)(E) (service through court facilities and party-arranged electronic service are distinct, each requiring its own consent).

Whether Plaintiff gave the consent Rule 5(b)(2)(E) requires, and therefore whether Rule 36(a)(3)'s automatic-admission consequence ever attached, is a disputed question of fact that cannot be resolved against the nonmoving party on this Motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Because Defendant's Unruh Act, bad-faith, and punitive-damages arguments substantially depend on these same purported admissions (see, e.g., SUF 109–120), this defect undermines those portions of the Motion as well.

**2. Defendant DID NOT MEET AND CONFER with Plaintiff**

Defendant did not meet and confer with Plaintiff regarding the substantive factual and legal issues raised in its Motion for Summary Judgment before presenting those matters to the Court. This is particularly significant because Defendant relies on disputed discovery, disputed service, disputed factual characterizations, and disputed issues concerning the identity and role of the Farmers entities involved in the Claim. Plaintiff therefore was not given an opportunity to meaningfully address or narrow the disputes Defendant now presents to the Court as grounds for summary judgment.

Defendant nevertheless relies on the parties' communications to characterize Plaintiff as unresponsive or uncooperative. The contemporaneous correspondence does not support that characterization. On July 31, 2026, defense counsel Michelle Bernard acknowledged Plaintiff's communications while stating that she did not have time to "contemporaneously respond" to Plaintiff's communications. [D'Sol Decl., Ex. 3.] Defendant should not rely on an alleged lack of cooperation while simultaneously declining to engage with Plaintiff concerning the matters she was attempting to raise.

## B. Genuine Disputes of Material Fact Preclude Summary Judgment on the Breach of Contract Claim

### 1. The Document Defendant Calls "The Policy" Is Itself the Subject of a Pending, Unresolved Dispute

The purported Policy relied upon by Defendant cannot properly be treated as an undisputed factual foundation for summary judgment while material questions concerning its authenticity, completeness, provenance, and presentation remain pending before this Court. Those issues are not merely collateral to Defendant's Motion. They concern the very document Defendant invokes to establish the terms of the insurance contract and to support its substantive arguments for judgment. (ECF Doc. 88-2, ¶¶ 3, 5, 7-15, Exhibit 2-4). [1]

Defendant's SUF Fact No. 1 asserts the Policy period ran "September 23, 2023 to September 28, 2024," citing Defendant's own certified policy exhibit. [Spradling Decl. ¶ 2, Exhibit 1; Defendant's RJN, Exhibit A, ECF Doc. 23-1 at pp. 137, 146, 185, 189–245.] But that same certified Declarations page — filed by Defendant itself — states in its own "Messages" section:

> "Policy Number: 3872340940 — Policy Term: From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time..."

ECF Doc. 23-1 at p. 192, Page ID #:683–684. A movant cannot rely on a "fact" that its own primary exhibit contradicts. Sprewell, 266 F.3d at 988.

The date discrepancy is only the surface of a deeper, already-pending dispute. Plaintiff has separately moved to strike Defendant's reliance on this same policy exhibit — identified in

---

[1] Defendant relies on the certified policy materials attached as Exhibit A to the First Amended Complaint as authoritative, both adopting them as judicially noticeable, *see* Def.'s RJN, Request No. 11 [ECF Doc. 23-1, at p. 10, Page ID #:501] (seeking notice of the policy under the incorporation-by-reference doctrine because it is "referenced in Plaintiff's Amended Complaint"); Def.'s Obj. to Evid. [ECF Doc. 80-4, at p. 6, Page ID #:2467 & p. 24, Page ID #:2485] ("the Policy issued to Plaintiff by Farmers Direct… speaks for itself," citing Canby Decl. ¶ 17 and Prior RJN, Ex. L [ECF Doc. 23-1, at pp. 8-11, 329-386]), and treating Plaintiff's accompanying pleading language as a controlling admission, *see* Notice of Removal ¶ 2 [ECF Doc. 1, at p. 2:18-22] and Def.'s Obj. to Evid. [ECF Doc. 23-4, at pp. 6-7, Page ID #:924-925] (both invoking the FAC's statement that "Farmers Direct is the specific entity that issued Plaintiff's homeowners policy identified in Exhibit A (Certified Policy Declarations)"). At the same time, Defendant objects under the best evidence rule to Plaintiff's own descriptions of those identical materials. *See* Def.'s Obj. to Evid. [ECF Doc. 80-4, at p. 6, Page ID #:2467 (Obj. No. 6, FRE 1002/1004); p. 5, Page ID #923 (Obj. No. 8)]. The document on which these positions rest — the FAC's Exhibit A — is the file transmitted to Plaintiff by defense counsel on October 14, 2025, with instructions that it be attached to the amended pleading. *See* D'Sol Decl. ¶¶ 5-11 [ECF Doc. 77-2]; Pl.'s Obj. to Evid. [ECF Doc. 46-1, at p. 10, Page ID #:1867].

Defendant's own Request for Judicial Notice as "Exhibit L" — as incomplete and of disputed authenticity, because it omits an Assumption Certificate that "expressly states it forms part of the policy and became effective before the loss at issue." [Plaintiff's Motion to Strike Defendant's Request for Judicial Notice No. 11, Exhibit L, ECF Doc. 88-4, Page ID #:3035–3038; Declaration of Luna D'Sol, ECF Doc. 88-2, ¶¶ 3–5, 12–18, Page ID #:2693–2700.] That motion remains pending and undecided. Every SUF fact quoting "the Policy" through Defendant's Exhibit A or its Request for Judicial Notice (SUF 1, 4–19, and others) necessarily inherits this same unresolved dispute over completeness and authenticity — a dispute Federal Rule of Evidence 201(b) does not permit this Court to resolve by judicial notice, let alone on summary judgment. See Lee v. City of Los Angeles, 250 F.3d 668, 689–90 (9th Cir. 2001); Selane Products, Inc. v. Continental Casualty Co., 706 F.Supp.3d 997 (C.D. Cal. 2020).

Whether "Farmers Direct" is even the sole entity bound by, and responsible for, "the Policy" as Defendant's Motion assumes throughout is likewise the express subject of Plaintiff's Renewed Motion for Leave to File Second Amended Complaint, filed July 17, 2026 [ECF Doc. 96], which remains undecided — the Court having vacated the hearing and taken the matter under submission on August 7, 2026 [ECF Doc. 111], with no ruling issued as of Plaintiff's Request for Ruling filed August 25, 2026 [ECF Doc. 115, Declaration of Luna D'Sol ¶ 6]. Defendant's own claims personnel confirm this is not a theoretical concern: Albert Pimentel, who corresponded directly with Plaintiff regarding her Claim, identifies himself in his own June 16, 2025 email signature as "Property Field Claims Supervisor... Farmers Insurance Exchange" — not Farmers Direct. [Exhibit T to Defendant's own Request for Judicial Notice, ECF Doc. 23-1, Page ID #:778.] A jury, not this Court on summary judgment, must decide what legal and factual consequence follows from a Farmers Insurance Exchange supervisor's direct participation in handling the very Claim at issue.

**2. Genuine Disputes Exist as to Whether Farmers Direct Paid the Reasonable Cost to Restore the Dwelling and Replace Plaintiff's Personal Property**

Defendant's narrative that Plaintiff's Claim was "suspicious" and already fully and reasonably compensated (SUF 26–40, 42, 85) rests in material part on evidence that does not say what Defendant's Separate Statement says it says.

First, SUF Fact 53 asserts that Plaintiff "testified... that sales contract was set to expire that same day." The actual EUO transcript shows the opposite: it was defense counsel, not Plaintiff, who stated "I know the contract expired today" as a premise embedded in her own question — Plaintiff never testifies to any contract or its expiration. [Canby Decl., Exhibit 20, EUO Tr. 71:12–17, ECF Doc. 119-6, Page ID #:5228.] The same excerpt further shows Plaintiff testified the Property was listed for sale before the Incident as well as after — "Q. ...it was listed for sale after the loss; correct? A. And before the loss" — directly undercutting the Motion's implication that the listing was an opportunistic response to the Claim. Id. at 71:15–17.

Second, SUF Fact 35 asserts as an undisputed fact that "Plaintiff was using narcotics during the inspection." The declaration cited for that assertion says only that Plaintiff "appeared to be actively using drugs" — a hedged lay impression, based on a single photograph, from a water-mitigation and field-claims inspector who alleges no medical, toxicological, or drug-recognition training anywhere in his declaration, and the word "narcotics" does not appear in that declaration at all. [Means Decl. ¶ 18, ECF Doc. 119-3, Page ID #:4666–4667.] Characterizing an unidentified substance in a photograph as "narcotics" exceeds the scope of permissible lay opinion under Fed. R. Evid. 701, lacks foundation under Fed. R. Evid. 602, and cannot be presented to this Court as an undisputed fact through Fed. R. Civ. P. 56(c)(4), which requires that summary-judgment affidavits "set out facts that would be admissible in evidence."

Third, the claims-handling chronology Defendant offers to establish the reasonableness of its investigation likewise omits that the Claim was originally handled by General Adjuster Richard Bryan — not Spradling or Saskor — through October 2024, [Saskor Decl. ¶ 2, ECF Doc. 119-2, Page ID #:4369], and that Spradling never personally handled the Claim; he became Saskor's supervisor only in November 2024. [Spradling Decl. ¶¶ 1, 4, ECF Doc. 119-1, Page ID #:4270–4271.] These are not immaterial details — Defendant's entire "reasonable investigation" narrative is built around the conduct and credibility of specific named individuals, and a jury is entitled to weigh that narrative against the complete, accurate personnel history rather than the version presented in Defendant's papers.

**C. Genuine Disputes of Material Fact Preclude Summary Judgment on the Bad Faith Claim**

Defendant's bad-faith argument depends entirely on the "genuine dispute doctrine" described above — that its coverage and claims-handling decisions, even if wrong, were reasonable. Chateau Chamberay, 90 Cal.App.4th at 346–347; Opsal, 2 Cal.App.4th at 1205. But that doctrine cannot immunize an insurer whose asserted reasonableness rests on mischaracterized evidence: an unqualified narcotics accusation with no toxicological foundation, a misattributed EUO statement, and reliance on a policy exhibit that is itself the subject of a pending motion to strike for incompleteness. See Section III.B, supra. Whether Farmers Direct's investigation was in fact "full, fair and thorough" as Egan and Gruenberg require, or whether it instead reflects the kind of results-oriented investigation that supports a bad faith claim, is a question a reasonable jury could answer either way on this record — which is precisely why it belongs to the jury and not to summary judgment. Anderson, 477 U.S. at 255.

Defendant's own authority confirms the point: the genuine dispute doctrine applies only where the insurer's position was reasonable based on the facts actually before it. Adams v. Allstate Ins. Co., 187 F.Supp.2d 1219, 1226 (C.D. Cal. 2002). Where, as here, the facts Defendant says it relied upon are themselves disputed or mischaracterized, Defendant cannot establish reasonableness as a matter of law, and the cases Defendant cites granting summary judgment on undisputed investigative records — e.g., Feldman v. Allstate Ins. Co., 822 F.3d 660 (9th Cir. 2003); Keshish v. Allstate Ins. Co., 959 F.Supp.2d 1226 (C.D. Cal. 2013) — are inapposite where the record is disputed rather than undisputed.

**D. Genuine Disputes of Material Fact Preclude Summary Judgment on the Unruh Civil Rights Act Claim**

Defendant analogizes this case to People v. Zarazua, 85 Cal.App.5th 639 (2022), where a prosecutor misgendered a recently-transitioned defendant several times during trial, was corrected by the court each time, apologized, and the misconduct was found inadvertent. The record here presents the opposite pattern — not an isolated, promptly-corrected mistake, but a documented,

months-long sequence in which Defendant's own supervisory employee admitted actual knowledge in writing and the conduct continued anyway.

Plaintiff's first written request to be addressed as Luna was made February 7, 2025, in a fax to Farmers stating: “Please address me as Luna (she / her / hers).” [Spradling Decl., Exhibit 3, ECF Doc. 119-1, Page ID #:4338.] Plaintiff renewed that request in writing on April 15, 2025 (“it appears you: 1) Ignored my request to address me as Luna”) [id., Exhibit 4, Page ID #:4348], again on April 22, 2025 (“you confirmed receipt of my fax dated February 7... in which I formally requested to be addressed as Luna”) [ECF Doc. 23-1, Page ID #:766], and again on May 7, 2025 [ECF Doc. 23-1, Page ID #:806]. Critically, on April 21, 2025, Defendant's declarant Bryce Spradling did not claim ignorance or mistake — he expressly acknowledged the request in writing: “I acknowledge your request to be addressed as Luna, however you have continued to utilize an email address which addresses you a[s] Julio...” [ECF Doc. 23-1, Page ID #:765.] That is a written admission of actual knowledge, followed by continued use of Plaintiff's prior name for nearly two more months, until a different employee, Albert Pimentel of Farmers Insurance Exchange, apologized on June 16, 2025: “My apologies for not addressing you correctly.” [Id., Page ID #:778–779.] Where a defendant's own employee admits actual knowledge in writing and the conduct continues regardless, a reasonable jury — applying the very standard Defendant cites — could find “willful, affirmative misconduct.” Bax v. Doctors Medical Center of Modesto, Inc., 393 F.Supp.3d 1000, 1011 (E.D. Cal. 2019).

Defendant's assertion that “Plaintiff never changed her name on the Policy” (SUF 2–3) conflates two distinct issues: whether Plaintiff sought to change the contractual “Named Insured” designation on the Policy, and whether Plaintiff was entitled to be personally addressed correctly in Defendant's correspondence and phone calls. SUF Fact 3 speaks only to the former. It does not resolve, and is not evidence regarding, the latter — which is the actual basis of Plaintiff's Unruh Act claim. Whether repeated, acknowledged misuse of a customer's affirmed name over several months, by an insurer's own claims supervisor, constitutes “willful, affirmative misconduct” is a question for the jury, not for resolution on a deemed-admissions record whose service is independently disputed. See Section III.A, supra.

### E. Punitive Damages Cannot Be Resolved on Summary Judgment While Genuine Disputes Remain on the Underlying Claims

Defendant's request to dismiss punitive damages is expressly derivative of its argument that the bad faith claim fails as a matter of law. See Adams, 187 F.Supp.2d at 1231 (cited by Defendant) (punitive damages claim rises or falls with the underlying bad faith claim). Because genuine disputes of material fact preclude summary judgment on the bad faith claim for the reasons set forth in Section III.C, supra, Defendant's derivative argument for dismissing punitive damages fails for the same reason.

To the extent Defendant separately argues that no managing agent of Farmers Direct authorized or ratified the conduct at issue, Cal. Civ. Code § 3294(b); Chodos v. Ins. Co. of N. America, 126 Cal.App.3d 86, 102 (1989) (cited by Defendant), Bryce Spradling's own declaration establishes that he holds a supervisory role over the adjuster who handled Plaintiff's Claim — “I am Michael Saskor's Supervisor” [Spradling Decl. ¶ 4, ECF Doc. 119-1, Page ID #:4271] — and his own written acknowledgment of, and continued indifference to, Plaintiff's repeated requests over the following months is itself evidence from which a jury could find ratification by a managing agent within the meaning of Section 3294(b).

## IV. ADDITIONAL PROCEDURAL AND ENTITY ISSUES

### A. Defendant Did Not Request a Meet and Confer Regarding the Matters Raised in Its Motion

Defendant should not be permitted to suggest that Plaintiff failed to adequately address or resolve the issues presented in its Motion where Defendant did not request a meet and confer concerning the matters now raised. Plaintiff was not given an opportunity to meaningfully address Defendant’s asserted factual and legal disputes before Defendant presented them to the Court as grounds for summary judgment. This is particularly significant where Defendant relies on disputed discovery, disputed service, disputed factual characterizations, and issues concerning the identity and role of the Farmers entities involved in the Claim.

///

///

**B. Farmers Insurance Exchange Is Named as a Defendant in the First Amended Complaint and in Each Cause of Action**

Defendant's repeated characterization of the claims as though they concern only Farmers Direct Property and Casualty Insurance Company ignores the pleading actually before the Court. **Farmers Insurance Exchange is expressly named as a Defendant in the First Amended Complaint and is identified as a defendant in each cause of action asserted therein.** The FAC therefore does not present a pleading in which Farmers Direct is the only Farmers entity alleged to be responsible for the conduct at issue.

This distinction is material because Defendant's Motion repeatedly attributes the conduct alleged in the FAC exclusively to Farmers Direct, including the investigation, claim handling, communications, coverage determinations, and alleged discriminatory conduct. Plaintiff disputes that characterization. Plaintiff pleaded an alternative theory addressing the relationship and liability of the Farmers entities, and the FAC expressly identifies Farmers Insurance Exchange as a defendant throughout the causes of action.

Accordingly, Defendant cannot obtain summary judgment simply by repeatedly replacing the entity identified in the FAC and the underlying claim record with the narrower label "Farmers Direct." The identity of the entity that performed particular acts, the capacity in which those acts were performed, and the legal significance of Farmers Insurance Exchange's participation in the Claim remain matters that must be evaluated from the actual pleadings and evidence rather than assumed from Defendant's terminology.

Defendant's counsel Michelle Bernard prepared a Stipulation identifying Farmers Direct as a Doe Defendant. (ECF Doc. 11.) and both Defendant's counsel have taken contrary positions when explaining the policy.  The state-court record confirms the same and reflects two subsequent filings by counsel's office that Plaintiff contends were unauthorized. The FAC expressly identifies Farmers Insurance Exchange as a named Defendant in its first paragraph. (Page ID 16.). The FAC did not rely solely on an alter-ego theory. It expressly identified Farmers Insurance Exchange and the other Related Farmers Entities as named defendants based on their alleged direct or indirect participation in the conduct at issue. (FAC ¶ 6, PageID 20.) The FAC

separately pleaded alter-ego/single-enterprise allegations in ¶ 6A, and expressly pleaded **"Agency / Ostensible Agency (pled in the alternative)"** in ¶ 6B. (Page ID 21–22.).

**C. Defendant's characterization of Plaintiff as unresponsive is contradicted by its own correspondence and conduct**

On July 31, 2026, defense counsel Michelle Bernard expressly acknowledged receiving Plaintiff's communications but stated: **"I do not have time to contemporaneously respond to your self-serving and unhinged communications directed to me or Ms. Canby in this matter."** [D'Sol Decl., Ex. 3.] Then Plaintiff's telephone communications with Ms. Bernard were blocked, further limiting Plaintiff's ability to communicate with defense counsel by telephone. Yet Defendant now relies upon its characterization of the parties' communications to suggest that Plaintiff was unresponsive or failed to cooperate. The contemporaneous record instead shows that Plaintiff was communicating with counsel, counsel acknowledged those communications, counsel expressly declined to respond contemporaneously, and Plaintiff's telephone access to counsel was thereafter unavailable. Defendant should not be permitted to convert circumstances created by its own counsel's refusal to communicate and subsequent blocking of telephone contact into evidence of Plaintiff's alleged unresponsiveness.

**D. THE COURT MUST ADDRESS ANY DEFECT IN SUBJECT-MATTER JURISDICTION BEFORE ENTERING SUMMARY JUDGMENT**

Because this action was removed from state court, the Court must first ensure that it possesses subject-matter jurisdiction before adjudicating Defendant's Motion for Summary Judgment. Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (emphasis added). Thus, the statute expressly permits—and requires—remand for lack of subject-matter jurisdiction at any point before final judgment.

The Ninth Circuit likewise strictly construes removal jurisdiction against the removing party. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the burden of establishing federal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any

doubt as to the right of removal in the first instance." *Id.* Accordingly, the Court should resolve the jurisdictional questions concerning the citizenship and identity of the entities upon which removal jurisdiction was predicated before reaching Defendant's request for judgment on the merits.

This is particularly important here because Defendant's Motion repeatedly attributes the conduct at issue exclusively to Farmers Direct Property and Casualty Insurance Company, while the operative pleading names Farmers Insurance Exchange as a defendant and identifies it in the causes of action. Plaintiff therefore preserves and renews the jurisdictional and entity-attribution issues reflected in the record and respectfully submits that the Court should not enter summary judgment until it has confirmed that federal subject-matter jurisdiction exists.

## V. INTERNAL IINCONSISTENT REPRESANTIONS

Defendant's own declaration contains a material chronological inconsistency concerning the email purportedly received from "Kyle Mangione." **Ms. Canby references an email that she states she received more than a year ago, yet describes the email as having been received after Mr. Mangione failed to appear at his purported deposition on August 14, 2026. She then states that she replied to the email on August 18, 2026, at 7:12 p.m.** [Canby Decl. ¶ 8 n. 1, ECF Doc. 119-6, Page ID #:4938] Defendant provides no explanation for the one-year discrepancy. Because Defendant relies on this correspondence in presenting its account of Mr. Mangione's nonappearance and the underlying service record, the discrepancy materially undermines the reliability of Defendant's chronology and precludes treating that account as undisputed on summary judgment. See Fed. R. Civ. P. 56(c)(1), (c)(4); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Ms. Canby's account contains a second erroneous date that renders the chronology unintelligible. Ms. Canby states that her August 12, 2026 email confirming the rescheduled conference was sent last year in 2025. [ECF No. 119-6, p.3, ¶4; Page ID #:4936.] Her account also identifies only Progressive Remodeling Inc. and Kyle Mangione when discussing the approaching third-party depositions, while omitting Kings Power Electric Inc., the third contractor involved that

Plaintiff requested a meet and confer specifically to address documents that Ms. Canby had characterized as reflecting discovery efforts but that Plaintiff contended contained representations of events that never occurred. Plaintiff sought to resolve the discrepancy cooperatively. Instead, Ms. Canby characterized the discussion as an attack (Id., p. 5, n.1) and, the following day, filed a motion in limine to prevent Plaintiff from using the very records Plaintiff had sought to address with her. (ECF Doc. 24).

There is prove that Mangione was arrested throughout the entire time that Ms. Canby claims she was in communications with Mangione, similarly after meet and confer coincidently sent a demand to cease-and-desist.

Federal Rule of Evidence 901(a) requires the proponent of an exhibit to produce evidence sufficient to support a finding that the item is what the proponent claims it is. Email may be authenticated through distinctive characteristics under Rule 901(b)(4), including consistent addressing, formatting, and content. See United States v. Safavian, 435 F. Supp. 2d 36, 41 (D.D.C. 2006). Here, however, Defendant's own 351-page exhibit contains an unexplained formatting anomaly. Nearly every email header in the Declaration of Kelly Fitzgerald Canby follows the same format—"Weekday, Month DD, YYYY H:MM AM/PM"—including the August 14, August 12, and August 15, 2026 headers. [ECF No. 119-6 at 251, 256, 260.] Yet immediately beneath the August 14 header on page 251 appears a materially different entry: "Sent: Wednesday, 12 August 2026 17:15:17," using a different date order, a 24-hour clock, seconds-level precision, and different formatting. Defendant provides no explanation for this discrepancy.

At minimum, the unexplained inconsistency raises an authentication and reliability issue under Rule 901. Because unauthenticated evidence cannot be considered on summary judgment, Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002), Plaintiff objects to reliance on this disputed portion of the exhibit under Rule 56(c)(2).

## VI. CONCLUSION

For the foregoing reasons, Defendant has not established the absence of genuine disputes of material fact concerning the matters material to its Motion. Genuine disputes exist concerning, among other things, the completeness and authenticity of the policy documents relied upon by

Defendant; the validity and effect of the purported deemed admissions; the scope, adequacy, and reasonableness of Defendant's investigation and claim evaluation; the nature, necessity, and reasonable cost of the repairs and replacements at issue; the entity or entities responsible for particular acts reflected in the record; and the circumstances surrounding Defendant's repeated use of Plaintiff's prior name and pronouns after Plaintiff expressly requested otherwise.

These disputes are material to Defendant's requested judgment on Plaintiff's claims and cannot properly be resolved by treating Defendant's disputed characterizations as undisputed facts. Accordingly, Defendant Farmers Direct Property and Casualty Insurance Company's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, should be **DENIED** in its entirety.

Respectfully submitted:

**Dated:** **September 12, 2026** **By:** /s/ Luna D'Sol

**Luna D'Sol**
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069

**CERTIFICATE OF COMPLIANCE**

I, Luna D'Sol, Plaintiff in Pro Per, hereby certify that the foregoing Plaintiff Luna D'Sol's Opposition to Defendant Farmers Direct Property and Casualty Insurance Company's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, contains **4858 words**, excluding the caption page, table of contents, table of authorities, exhibits, and this Certificate of Compliance. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: September 12, 2026

/s/ Luna D'Sol

**Luna D'Sol**
Plaintiff, In Pro Per