**Luna D'Sol**
Plaintiff, In Pro Per
Email Address: jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LUNA D'SOL**<br>Plaintiff,<br>vs.<br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, FARMERS INSURANCE EXCHANGE and DOES 2-50, inclusive,<br>Defendant(s). | Case No: *2:25-cv-10938-SVW-ASx*<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTE IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT**<br><br>Judge: Hon. Stephen V. Wilson<br>Date: September 28, 2026<br>Time: 1:30 p.m. Courtroom: 10A<br>Trial Date: October 13, 2026; 9:00 a.m.<br>FSC: October 5, 2026; 3:00 p.m. |

Plaintiff Luna D'SOL ("Plaintiff"), in pro per, hereby submits the following Statement of Genuine Disputes of Material Fact in Opposition to Defendant Farmers Direct Property and Casualty Insurance Company's ("Defendant" or "Farmers Direct") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-2.

Plaintiff disputes the material facts identified below to the extent indicated in each response and provides citations to the record supporting each genuine dispute. Plaintiff further disputes Defendant's characterization of disputed evidence as undisputed fact and expressly preserves the following evidentiary and factual disputes, which are incorporated into the responses below where applicable.

**A. Dispute Concerning the Policy and Defendant's Policy Exhibits**

Plaintiff disputes Defendant's characterization of the purported insurance "Policy" as a complete, authentic, and undisputed statement of the contractual documents governing the claim. Plaintiff has specifically disputed the completeness and authenticity of the policy materials relied upon by Defendant, including the omission of an Assumption Certificate that expressly provides that it forms part of the policy and became effective before the loss at issue. See D'SOL Decl., ECF No. 88-2, ¶¶ 3–5, 12–18, Page ID 2693–2700; Plaintiff's Motion to Strike Request for Judicial Notice No. 11, Exhibit L, ECF No. 88-4, Page ID 3035–3038.

Accordingly, wherever Defendant's Statement of Uncontroverted Facts characterizes "the Policy," its terms, coverage, exclusions, conditions, or applicable policy period as undisputed based upon the incomplete or disputed policy materials, Plaintiff disputes those assertions to the extent stated in the corresponding response below.

Plaintiff does not concede the authenticity, completeness, admissibility, or legal effect of any policy document merely because Defendant has attached or cited it as an exhibit.

**B. Dispute Concerning Defendant's Requests for Judicial Notice**

Plaintiff further disputes Defendant's Requests for Judicial Notice to the extent Defendant seeks to have disputed factual assertions contained within documents treated as established facts merely because the documents themselves are judicially noticeable.

Plaintiff does not dispute, where appropriate, the existence of a public filing or court document. Plaintiff does dispute the truth, accuracy, completeness, authenticity, interpretation, and evidentiary significance of disputed factual assertions contained therein. The fact that a document was filed, recorded, submitted, or otherwise exists does not establish the truth of every factual assertion contained in that document.

Accordingly, Plaintiff preserves all objections and disputes raised in Plaintiff's Motion to Strike Defendant's Request for Judicial Notice, including the disputes concerning the policy materials and other documents identified therein.

**C. Dispute Concerning Purported Deemed Admissions**

Plaintiff expressly disputes Defendant's reliance upon purported "deemed admissions" under Federal Rule of Civil Procedure 36.

Plaintiff did not provide the written consent required by Federal Rule of Civil Procedure 5(b)(2)(E) for service of Requests for Admission by email outside the Court's electronic-filing system. Defendant's counsel's prior correspondence concerning email service stated that counsel was amenable to email service of "courtesy copies" of substantive pleadings, discovery pleadings, and correspondence. Plaintiff disputes that this correspondence constituted written consent to formal electronic service of Requests for Admission for purposes of triggering the automatic-admission consequences of Rule 36(a)(3).

Because Rule 36(a)(3) applies only after a request has been properly served, Plaintiff disputes every asserted "deemed admission" to the extent Defendant relies upon the disputed electronic service as the basis for treating the request as admitted.

Plaintiff therefore does not concede any fact merely because Defendant has characterized it as admitted pursuant to Rule 36. The underlying factual assertions remain disputed to the extent identified in Plaintiff's responses below.

**D. Dispute Concerning Defendant's Characterization of Opinions and Legal Conclusions as Undisputed Facts**

Plaintiff further disputes Defendant's characterization of opinions, conclusions, characterizations, and ultimate issues as undisputed historical facts. This includes, without limitation, assertions that

Defendant's investigation was "thorough," "fair," "reasonable," or consistent with "industry standards"; that particular estimates represented the "reasonable" or "full" cost of repair; that particular damage was or was not covered; that particular conduct constituted an "honest mistake"; that Plaintiff had "no evidence" supporting a claim; or that conduct did or did not satisfy the legal requirements for bad faith, discrimination, punitive damages, or other claims.

Such assertions do not become undisputed facts merely because they appear in a declaration or expert report. Plaintiff disputes the underlying factual premises, methodology, completeness, causation, scope, valuation, entity attribution, and legal conclusions to the extent identified in the individual responses.

**E. Dispute Concerning Entity Attribution**

Plaintiff also disputes Defendant's attribution of acts, communications, payments, investigations, coverage determinations, and other conduct exclusively to Farmers Direct where the cited record identifies "Farmers" generally or identifies Farmers Insurance Exchange rather than Farmers Direct.

The operative pleading names Farmers Insurance Exchange as a defendant and identifies it in the causes of action. Plaintiff therefore disputes any Statement of Uncontroverted Fact that assumes, without supporting evidence, that every act attributed generally to "Farmers" was necessarily performed by, authorized by, or attributable solely to Farmers Direct.

For example, Defendant's own evidence identifies Albert Pimentel as "Property Field Claims Supervisor, Farmers Insurance Exchange" in the June 16, 2025 correspondence. Plaintiff disputes any contrary characterization that automatically attributes that communication or conduct to Farmers Direct without evidence establishing the entity responsible.

**F. Global Reservation Does Not Replace Fact-Specific Responses**

Plaintiff incorporates these disputes into the individual responses below. Each numbered response identifies the particular factual assertion being disputed and, where applicable, the specific evidence supporting the dispute.

Plaintiff respectfully submits that these disputes are material because Federal Rule of Civil Procedure 56 requires summary judgment only where there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). (Legal Information Institute)

Plaintiff therefore requests that the Court consider each disputed fact in accordance with Rule 56, Local Rule 56-2, and the evidence specifically identified in this Statement of Genuine Disputes.

## I. PLAINTIFFS' OPPOSITION TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **1.** Farmers Direct issued Policy Number 3872340940 for the policy period effective September 23, 2023 to September 28, 2024 insuring the residence premises located at 2275 E. Belding Dr., Palm Springs, CA 92262. | *Declaration of Bryce Spradling ("Spradling Decl."), ¶ 2, Exhibit 1; see also Defendant's Request for Judicial Notice filed on January 5, 2026 ("Defendant's RJN") (Exhibit F and Exhibit H), at First Amended Complaint ("FAC"), ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 137, 146, 185, 189-245].* | **DISPUTE:** Defendant's cited policy exhibit does not establish the asserted September 23, 2023 effective date. Defendant's own policy documentation identifies the policy term as September 28, 2023. Moreover, Defendant's purported "Original Copy" omits the Assumption Certificate, which expressly states that it "forms a part of" Policy No. 3872340940. Plaintiff previously disputed the completeness of this same policy exhibit. See ECF No. 88-2, ¶¶ 5, 13-15; ECF No. 88-4 at 3035-38.<br>Looking at the evidence presented, its first page clearly states that it is a copy of the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | 'original policy,' not a coy of the 'policy.' Farmers' own **Assumption Certificate** expressly states that it "forms a part of the above insurance Policy" and should be attached to the Policy. The Assumption Certificate is not included in Defendant's exhibit. Accordingly, Defendant has not submitted the complete policy upon which it relies to establish the asserted policy period |
| **2.** "Julio R. Ravada" is listed as the "Named Insured" on the Policy. | *RFA No. 1., deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Declaration of Elisa Martinez ("Martinez Decl."), ¶¶ 2-9; Exhibits 1-4; Spradling Decl."), ¶¶ 2, 5, Exhibit 1.* | **Disputed in part.** To the extent that Plaintiff was never served with Defendant's RFA No. 1 and therefore could not have failed to timely respond to it. Defendant's assertion that RFA No. 1 was "deemed admitted" under Fed. R. Civ. P. 36(a)(3) is unsupported absent proof of service. See Fed. R. Civ. P. 5(b), 36(a)(3). Plaintiff did not consent for electronic service and reminded defendants that she did not. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| **3.** Plaintiff did not ask Farmers Direct in writing (or otherwise) to remove "Julio R. Ravada" as the name of the "Named Insured" on the Policy and/or or to change the name of the listed "Named Insured" on the Policy from "Julio R. Ravada" to "Luna D'Sol." | *RFA Nos. 2-4, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; Spradling Decl"), ¶¶ 5-7.* | **Disputed.** Plaintiff disputes Defendant's assertion that she did not request in writing or otherwise that Farmers change the Named Insured designation from "Julio R. Ravada" to "Luna D'Sol." Plaintiff did submit a written request concerning the change of her name, and Farmers received and processed that request. Plaintiff therefore disputes the factual premise of Defendant's assertion. Plaintiff further disputes Defendant's reliance on RFA Nos. 2–4 as "deemed admitted" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). |
| **4.** Subject to its terms and conditions, the Policy's "COVERAGE A – DWELLING" provision provides coverage for | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| "sudden and accidental direct physical loss or damage" to the Dwelling on the Property, unless "excluded in SECTION 1 LOSSES WE DO NOT COVER." | *COVERAGE A - DWELLING; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208].* | characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **5.** With regard to the Coverage C personal Property coverage those "SECTION 1 – BROAD NAMED PERILS" include "the following causes of loss will apply for sudden and accidental direct loss . . . 8. Vandalism or Malicious Mischief . . . 9. Theft, or attempted theft, including loss of property from a known place when it is likely | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at SECTION 1 – BROAD NAMED PERILS, Section 8-9; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| that a theft has occurred.” | | |
| **6.** 8. Vandalism or Malicious Mischief: "We do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A residence premises being constructed is not considered vacant." | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at SECTION 1 – BROAD NAMED PERILS, Section 8; see also Defendant’s RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **7.** 9. Theft - “We do not pay for loss caused by theft: A. if committed by you or by any person regularly residing on the residence premises; B. in or from a dwelling under | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS, SECTION 1 – LOSSES WE COVER (SPECIAL PERILS), at SECTION 1 – BROAD NAMED PERILS, Section 9; see also* | **Undisputed** as to the quoted language. Plaintiff does not concede that the quoted portion constitutes the entirety of the applicable theft exclusion or that it establishes the applicability of the exclusion to Plaintiff’s loss. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or C. from any part of the residence premises rented by you to others.” | *Defendant’s RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 208]; see also RFA No. 83 deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); ¶¶ 10- 13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | |
| **8.** Per the Policy’s “GENERAL DEFINITIONS” the term “Property damage” means physical damage to or destruction of tangible property, including loss of use of this property. | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at GENERAL DEFINITIONS; see also Defendant’s RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 197].* | **Disputed in part** to the extent that the cited provision does not appear at ECF 23-1, p. 197 |
| **9.** Subject to it terms and conditions, the Policy provides SECTION 1 – ADDITIONAL COVERAGE for: 1. Loss of Use. The limit of liability for Loss of Use is the total limit for the coverages in A. and B. | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CONTENTS AND ADDITIONAL COVERAGES HP2000 0205; see also Defendant’s RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 202].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| below. A. Additional Living Expense / Fair Rental Value. This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from fungus and mold. When a covered property loss makes that part of the residence premises where you reside not fit to live in, we will pay, at your choice, either of the following. However, if the residence premises is not your principal place of residence, we will not provide the option under paragraph 2. below. 1. Additional Living Expense. We will pay the reasonable increase in living | | D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| expenses necessary to maintain your normal standard of living. Our liability will not exceed the smallest of: a. payment for the shortest time to either repair or replace the residence premises. This period of time is not limited by the expiration of this policy; b. payment for the shortest time for your household to settle elsewhere, if you permanently relocate. This period of time is not limited by the expiration of this policy; or c. the limit of liability for Loss of Use as specified in the policy Declarations. | | |
| **10.** In addition to other exclusions the Policy's "SECTION I - LOSSES WE DO NOT COVER" for: A | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| “Intentional Loss” (as amended per below); D. “Water damage” (per below); F. “Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy”; H. “Neglect” (per below). | *WE DO NOT COVER; see also Defendant’s RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 209-213].* | document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **11.** Subject to the Policy’s terms and conditions and per the revisions found in the Policy’s CALIFORNIA AMENDATORY ENDORSEMENT [HA01CA0108] the "Intentional Loss" exclusion found in the Policy now means: "Intentional Loss" | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CALIFORNIA AMENDATORY ENDORSEMENT [ENDORSEMENT HA01CA0108]; see also Defendant’s RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 234].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| means "any loss arising out of any intentional or criminal act committed: (1) by you or at your direction; and (2) with the intent to cause a loss." "This exclusion applies regardless of whether you are actually charged with or convicted of a crime." | | SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **12.** With regard to the Policy's "SECTION I - LOSSES WE DO NOT COVER" the term "water damage" includes, among other things: D. "Water damage, meaning any loss caused by resulting from, contributed to or aggravated by: *** 2. water or water-borne material which backs up through sewers or drains, or which | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 210-211].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or *** | | |
| **13.** With regard to the Policy's "SECTION I - LOSSES WE DO NOT COVER" the Policy excludes, among other things: F. "Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy"; | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 211].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **14.** The Policy "does not include Building Code Upgrade Coverage." | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at Declarations, see also Defendant's RJN* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| | *(Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, pp. 192]; Corona Decl., ¶ 6.b.* | operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **15.** With regard to the Policy's "SECTION I - LOSSES WE DO NOT COVER" the Policy excludes, among other things: H. "Neglect by you to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against." | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at CAUSES OF PROPERTY LOSS HP3300 0904, AT SECTION I - LOSSES WE DO NOT COVER; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 211].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | undecided since August 7, 2026 [ECF Doc. 111]. |
| **16.** In addition to other Conditions, the Policy contains the following PROPERTY CONDITIONS: SECTION 1 – CONDITIONS *** B. Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures. C. Cooperate with us in the investigation of a claim. D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, actual cash value and amount of loss claimed for each item. | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at PROPERTY CONDITIONS; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at p. 211].* | 18 **Disputed.** The cited page does not contain the provisions quoted by Defendant. ECF No. 23-1, p. 211 contains the end of "SECTION I – LOSSES WE DO NOT COVER," including exclusions H through K, not "PROPERTY CONDITIONS / SECTION 1 – CONDITIONS" items B, C, and D. The citation therefore does not support the factual assertion made. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Attach to the inventory all bills and other documents that substantiate the figures in the inventory | | |
| **17.** Subject to the Policy's terms and conditions, the Policy includes a "PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113) including "SECTION 1 – HOW WE SETTLE A PROPERTY LOSS" which sets forth applicable terms regarding the handling of property loss under the Policy. | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113); see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 214- 216].* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3–5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |
| **18.** The Policy includes a "PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113) including "SECTION 1 – HOW WE | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at PROPERTY LOSS SETTLEMENT Endorsement (HP4520 0113); see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9* | **Disputed.** The cited statement is not a quotation from the Policy. It is a characterization by Spradling of an April 4, 2025 conversation and does not accurately establish what the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| SETTLE A PROPERTY LOSS" and on or about April 4, 2025 the Plaintiff was specifically directed to the portion found "on the bottom of page 2 and top of page 3" pertaining to "Coverage C – Personal Property" which "outlines that replacement costs on contents had depreciation applied at the time of settlement unless the items have already been replaced." | *and Exhibit A thereto [ECF Doc. 23-1, at pp. 214-216]; see also Saskor Decl., ¶¶ 1, 10, Exhibit 1, Policy at Property Loss Settlement Endorsement (HP4520 0113), at pp. 33-34 thereto and Exhibit 4, at pp. 82-83 [FD003068] thereto; see also Requests for Admissions, Exhibit B.* | Policy "sets forth." Plaintiff disputes Defendant's characterization of Spradling's paraphrase as the Policy's terms. |
| **19.** There is a 180-day deadline to submit a claim for recoverable depreciation for the replacement of personal property items that were paid on an Actual Cash Value ("ACV") basis (i.e., with depreciation deducted) which is | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113); see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 and Exhibit A thereto [ECF Doc. 23-1, at pp. 214- 216]; see also Saskor Decl., ¶¶ 1 10, Exhibit 4, at pp. 82-83* | Undisputed as to the quoted text; Disputed as to the completeness, authenticity, and operative effect of the underlying document, and as to any characterization of Farmers Direct as sole insurer under the Policy, per Plaintiff's Motion to Strike RJN No. 11 [ECF Doc. 88-4]; D'Sol Decl. [ECF Doc. 88-2, ¶¶ 3– |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| found in the Policy's "PROPERTY LOSS SETTLEMENT" Endorsement (HP4520 0113) under "SECTION 1 – HOW WE SETTLE A PROPERTY LOSS" in Section 2 "Coverage C – Personal Property" at Section B, paragraph 3 thereunder which states the following: " If you decide not to repair, restore or replace the damaged or stolen property, settlement will be on an actual cash value basis. You may make further claim within 180 days after the date of actual cash value payment for any additional payment on a replacement cost basis if you repair, restore or | *[FD003068] thereto; see also Requests for Admissions, Exhibit B.* | 5, 12–18]; and Plaintiff's Renewed Motion for Leave to File SAC [ECF Doc. 96], submitted and undecided since August 7, 2026 [ECF Doc. 111]. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| replace the damaged or stolen property.” | | |
| **20.** Additionally, Bryce Spradling also further advised Plaintiff that as “outlined in your policy you have 180 days from the actual cash value payment to recover any withheld depreciation,“ and that “[o]nce this time has expired no consideration will be made for the information that remains outstanding. | *Spradling Decl., ¶ 10, Exhibit 4 [FD003068]* | **Disputed.** The cited communication reflects Spradling’s statement to Plaintiff concerning the Policy; it does not itself establish that the Policy contains the stated 180-day limitation or that expiration of that period operates as Defendant asserts. Plaintiff disputes Defendant’s characterization of the communication as establishing the Policy’s terms. |
| **21.** On or about June 4, 2024, Plaintiff reported to Farmers Direct that a burglary and vandalism incident (“Incident”) occurred at her residence located at 2275 E. Belding Drive, Palm Springs, CA 92262 (“Property”) on or about | *Means Decl., ¶ 3.* | **Disputed.** Plaintiff disputes Defendant’s characterization of Spradling’s statement as establishing an absolute 180-day limitation under the Policy. Moreover, the claim was not continuously active during the 180-day period identified by Defendant. Based on the claim history, the claim was active for |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| June 3, 2024 and sought coverage under the Policy ("Claim"). | | approximately **37 days** during that period: 23 days from October 29, 2025 through November 21, 2025, and 14 days from January 7, 2026 through January 21, 2026. The claim was subsequently reopened on May 12, 2026, after the 180-day period measured from the October 29, 2025 ACV payment had elapsed. Plaintiff therefore disputes any implication that Plaintiff had a continuously open 180-day opportunity to submit the claimed information. |
| **22.** Prior theft losses at Plaintiff's Property were acknowledged in July of 2023, January of 2024, and a water damage claim in August 2023 | *Means Decl., ¶4; see also Hamilton Decl., ¶ 18; Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, pp. 5:20-7:4 [FD004308-FD004310] and 54:16-55:19 [FD004357-FD004358]* | Undisputed |
| **23.** Senior Fields Claims Representative Donnie Means ("Means") was | *Means Decl., ¶ 4.* | **Disputed.** The claim was subsequently handled by General Adjuster Richard Bryan |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| assigned to handle Plaintiff's insurance recovery claim arising from the June 2024 vandalism/theft incident which was assigned Claim No. 7007678692-1 (i.e. the Claim). | | Decl. ¶2 [ECF Doc. 119-2, Page ID #:4369]. Spradling did not handle the Claim; he became Saskor's supervisor in November 2024. Spradling Decl. ¶¶1, 4 [ECF Doc. 119-1, Page ID #:4270–4271]. Albert Pimentel's documented involvement was limited to the June 2025 water-intrusion correspondence [Saskor Decl. ¶¶15–16, Exhibits 6–8, ECF Doc. 119-2, Page ID #:4379–4380], not the Claim's conclusion, and Pimentel identifies himself as an employee of Farmers Insurance Exchange, not Farmers Direct. Exhibit T to Defendant's Request for Judicial Notice [ECF Doc. 23-1, Page ID #:778] ('Albert Pimentel, Property Field Claims Supervisor... Farmers Insurance Exchange'). This bears directly on the Farmers Direct/Farmers Insurance Exchange identity issue raised in Plaintiff's Renewed Motion for Leave to File |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | Second Amended Complaint [ECF Doc. 96], currently pending and undecided." |
| **24.** Means contacted Plaintiff and was initially unable to reach Plaintiff but when Plaintiff later called back an inspection of the Property was arranged for June 6, 2024. | *Means Decl., ¶¶ 5-6_, Exhibits 1-2.* | Undisputed |
| **25.** At the time of the June 6, 2024 inspection, Plaintiff stated that he resided at the Property which is a one story single family home built in 1955. | *Spradling Decl., ¶ 2, Exhibit 1, Policy, at Declarations; see also Means Decl., ¶ 2* | **Disputed** in part. Plaintiff disputes Defendant's use of the male pronoun "he" to refer to Plaintiff. Plaintiff further disputes any characterization of the Property's construction date unless supported by admissible evidence. |
| **26.** When Means arrived at the Property on the day of the inspection at the scheduled time, he was initially not permitted to enter the | *Means Decl., ¶ 10.* | **Disputed.** Plaintiff does not recall the alleged delay, and Defendant has not provided competent evidence establishing that Plaintiff prevented or |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| residence and had to wait outside for over 15 minutes before he was allowed to enter and inspect the interior of the Property. | | delayed Means from entering the Property for the period alleged. |
| **27.** Means inspected the Property on June 6, 2024 and photographs were taken. | *Means Decl., ¶¶ 11-18, Exhibits 3-4.* | Undisputed |
| **28.** There were a number of observations/issues that resulted in reasonable suspicion by Means related to the cause of the claimed damage, including a suspicious puddle of water on the floor near the dishwasher in an area with no surrounding leaks as confirmed by his close inspection of the area, including multiple | *Means Decl., ¶¶ 1, 11-19, Exhibits 3-4; see also Exhibit 3, [FD004968-FD004981]; see e.g., Exhibit 3 at [FD004991-FD004993, FD004999-FD005001]* | **Disputed.** The cited evidence does not establish Defendant's characterization that there were "no surrounding leaks." Defendant's own photographs show Means taking moisture readings in the kitchen and bathroom, including readings of 172 and 131, respectively. Defendant has not established through the cited evidence what those readings mean or that they establish the absence of moisture or a leak.<br>The assertion that the inspection created "reasonable suspicion" is |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| moisture readings, and by the toilet. | | a characterization and conclusion, not an undisputed fact. |
| **29.** The observed "vandalism" damage to the Property was relatively minor and primarily cosmetic or superficial in nature and did not affect the structural integrity of the Property nor the overall habitability of the Property. | *Corona Decl., ¶ 8; Means Decl., ¶¶ 1, 11- 19, 27, Exhibits 3-4.* | **Disputed.** The damage was not merely cosmetic or superficial. The vandalism included substantial damage to the electrical panel, bathroom, kitchen, and a broken window. Means's own conduct further contradicts Defendant's characterization: because the broken window remained unrepaired, Means instructed Plaintiff to obtain a hotel. Plaintiff disputes Defendant's characterization of the damage as not affecting the Property's habitability or condition. |
| **30.** Something was allegedly placed in the toilet causing it to overflow. | *Means Decl., ¶¶ 1, 17- 19, Exhibit 4 [FD005053, FD004980] see also generally Exhibit 3 at [FD005034-FD005035, FD005040, FD0050041]; Hamilton Decl., ¶ 18.* | **Disputed in part.** Plaintiff does not dispute that an object was reportedly found in the toilet. Plaintiff disputes Defendant's characterization that this establishes the cause of the toilet overflow or establishes that the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | toilet damage was unrelated to the claimed vandalism. The toilet remains inoperable |
| **31.** A dishwasher was allegedly pulled out and damaged. | *Means Decl., ¶ 17, Exhibit 3 [FD004968- FD004981]; Exhibit 4 at [FD004971]; Hamilton Decl., ¶ 18.* | Undisputed |
| **32.** Plaintiff initially reported that the bathroom window was shattered, but the glass was not broken at all and only a small spot on the exterior window frame was bent. | *Means Decl., ¶¶ 8, 13, Exhibit 3 [FD005005- FD005008]).* | **Disputed** to the extent that Plaintiff did not make the statement Defendant attributes to Plaintiff. |
| **33.** Plaintiff does not have any competent evidence to establish that the alleged loss arising from the Incident on June 3, 2024 arose from a covered cause of loss under the Policy in the first instance. | *RFA Nos. 37-41, 85, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes that RFA Nos. 37–41 and 85 were properly served on Plaintiff and therefore disputes Defendant's assertion that they were deemed admitted. Plaintiff further disputes the assertion that there is no competent evidence of a covered loss. Defendant investigated the Incident, including through an EUO, police |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| | | report, and video evidence provided by Plaintiff, and thereafter made payment on the claim. |
| **34.** The claimed points of entry into the Property by the "vandals" were fairly questionable. | *Means Decl., ¶¶ 11-18, Exhibits 3 [FD004994-FD004995; FD005034-FD005035, FD005040, FD0050041; FD005036, FD005038; FD005034-FD005035, FD005040, FD0050041]; Hamilton Decl., ¶ 18; Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, p. 166:1-18 [FD004469].* | **Disputed.** Defendant's characterization of the points of entry as "fairly questionable" is disputed. The police report documents the reported points and circumstances of entry and contradicts Defendant's characterization. Plaintiff provided picture of 2 suspects entering with masks |
| **35.** Plaintiff was using narcotics during the inspection based on Means observations, among other unusual behaviors and unexpected items. | *Means Decl., ¶ 18; Exhibit 4 [FD004971]; [FD005053, FD004980]* | **Disputed** The cited evidence does not establish that Plaintiff was using narcotics. Means Decl. ¶18 [ECF Doc. 119-3, Page ID #:4666–4667] states only that Plaintiff "appeared to be actively using drugs" — a hedged, non-expert lay impression, not a finding of narcotics use, and the word "narcotics" appears nowhere in Means' declaration. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | Means alleges no medical, toxicological, or drug-recognition training, and Defendant cites no drug test, medical record, or admission. Characterizing an unidentified substance in a photograph as "narcotics" exceeds the scope of permissible lay opinion under Fed. R. Evid. 701, lacks foundation under Fed. R. Evid. 602, and is unfairly prejudicial under Fed. R. Evid. 403 given the complete absence of supporting evidence beyond a single ambiguous photograph [Exhibit 4, FD004971, FD005053, FD004980]." |
| **36.** Plaintiff refused to provide Farmers Direct with the full names and/or contact information of the persons who were at her Palm Springs residence on or around the day of the Incident. | *RFA Nos. 77-82, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; Hamilton Decl., ¶ 18.* | **Disputed** to the extent that Plaintiff cooperated with defendants internal investigation and Examination Under Oath, if plaintiff had refused to provide information then Defendants would have used that to decline her claim which they did not |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **37.** The puddles observed on the floor of Plaintiff's home during the Inspection on June 6, 2024 were suspicious because Means, an experienced water mitigation technician, did not find any active leak source and the puddles found on the floor near the dishwasher based on the amount of time that passed from the reported date of loss and the inspection, along with a lack of a trail of water, the observable conditions (and specifically related to the toilet where water was still present on the floor while the toilet itself was not backing up due to the elapsed time from | *Means Decl., ¶ 17, Exhibit 3 [FD004968- FD004981; FD004991- FD004993, FD004999- FD005001].* | **Disputed.** The assertion is an unsupported opinion, not an established fact. Means's own photographs show water on the floor and moisture readings taken during the inspection, including readings of 172 in the kitchen and 131 in the bathroom. Plaintiff disputes Means's conclusion regarding the source and cause of the water. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| the date of loss to the inspection date) and reached the reasonable opinion based on more than 5 years of experience working in the water mitigation industry, that the water was not emanating from the nearby dishwasher, toilet and/or surrounding plumbing and was not caused by the Incident at all | | |
| **38.** Between June 4, 2024 and August 2, 2024, Plaintiff's claim was under active investigation by a claims professional with assistance from Farmers Direct's Special Investigating Unit, which was consistent with standard industry practices, Farmers | *Means Decl., ¶¶ 4, 26; Hamilton Decl., ¶ 16.a.* | **Undisputed** in part as to the claim being investigated by a claims professional with assistance from Farmers Direct's Special Investigating Unit during the stated period. Disputed as to Defendant's characterization of the investigation as "consistent with standard industry practices" and as consisting of "parallel investigations" as described. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Direct's claim professionals were conducting parallel investigations – one dealing with quantifying the nature and extent of the claimed damage; and the other more focused on coverage. | | |
| **39.** Plaintiff delayed providing her completed and verified signed Proof of Loss form. | *Means Decl., ¶¶ 20-24; Exhibits 5-8.* | **Disputed.** The Proof of Loss was issued June 10, 2024, with a 60-day return period [ECF Page ID #:4735]. Plaintiff's sworn statement was notarized August 2, 2024, within that 60-day period, and bears a received date of August 10, 2024 [ECF Page ID #:4773]. Defendant's characterization of Plaintiff as having "delayed" providing the completed and verified Proof of Loss is disputed. |
| **40.** Plaintiff initially submitted her Proof of Loss without any signature. | *Means Decl., ¶¶ 22-23, Exhibit 7.* | **Undisputed** as to the initial submission being unsigned. Disputed as to any implication that this constituted a delay, |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | deficiency, or failure to comply with Farmers Direct's requirements, because the completed and verified Proof of Loss was subsequently provided within the stated 60-day period. See ECF Page ID Nos. 4735, 4773. |
| **41.** On or about August 5, 2024, Plaintiff submitted a Proof of Loss with Farmers Direct, indicating a total claim (dwelling and contents) in the amount of $39,152.61 which was dated as signed on August 2, 2024. | *Means Decl., ¶¶ 24-25, Exhibit 9; Hamilton Decl., ¶ 16.b.* | **Disputed in part.** The Proof of Loss provides an estimated calculation of $39,152.61 for dwelling and contents; it does not establish that $39,152.61 was Plaintiff's "total claim." |
| **42.** Plaintiff's claim began with her initial evaluation provided to the Palm Springs PD of about $18,000.00 | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, p. 112:15-19 [FD004415]; Hamilton Decl., ¶ 20.* | **Disputed.** Plaintiff does not recall providing the Palm Springs Police Department with an $18,000 repair estimate and, as a homeowner and not a contractor, was not qualified to provide a professional repair-cost estimate. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **43.** Plaintiff's EUO was initially scheduled for September 16, 2024 but was rescheduled to a later date because "To date, we have not received any communication from you in response to our Initial Letter. We also have not received any of the requested information or documents to date. Accordingly, we will be unable to proceed with your EUO on September 16, and the EUO has been rescheduled . . ." | *Canby Decl., ¶¶ 26-27, Exhibits 18-19.* | **Disputed in part.** Undisputed that the EUO was initially scheduled for September 16, 2024 and subsequently rescheduled. Plaintiff disputes the characterization that Plaintiff failed to communicate or failed to provide requested information or documents as asserted in the quoted correspondence. |
| **44.** On or around August 9, 2024, the claim file was referred to coverage counsel to obtain an Examination Under Oath. From August 9, 2024, through | *Means Decl., ¶ 25; Hamilton Decl., ¶ 16.c.; Canby Decl., ¶¶ 26-28, Exhibits 18-20.* | Undisputed |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| September 27, 2024, the claim file was pending Plaintiff's Examination Under Oath ("EUO"). | | |
| **45.** Plaintiff's EUO was completed on September 27, 2024. | *Means Decl., ¶ 25; Hamilton Decl., ¶ 16.b.; Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript.* | Undisputed |
| **46.** An Examination Under Oath is a contractual right available to any insurance company. | *Hamilton Decl., ¶ 18.* | **Disputed.** This is a legal conclusion, not an undisputed fact. Hamilton's assertion concerning an insurer's contractual right to an Examination Under Oath is an unsupported legal opinion, and Defendant has not established the proposition through the Policy itself or other competent evidence. |
| **47.** Based on the available information and inconsistencies in Plaintiff's characterization of the facts and circumstances of the loss, Farmers | *Hamilton Decl., ¶ 18.* | **Disputed.** This is an unsupported opinion and conclusion, not an undisputed fact. Plaintiff disputes Hamilton's characterization that the EUO was "reasonable" or "consistent with standard industry |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Direct's decision to move forward with an Examination Under Oath was both reasonable and consistent with standard industry practices. | | practices," and Defendant has not established those propositions through competent evidence. |
| **48.** At the EUO on September 27, 2024, Plaintiff testified that [her] name is Julio Rodolfo Ravada and that [she] previously used the last name "Ravadachavarria," that at the time [she] had no other names, and when asked what to be called during the EUO, [she] responded "Julio." | *Canby Decl., ¶ 22, Exhibit 20, at EUO Transcript, pp. 5:20-7:4 [FD004308-FD004310]* | Undisputed |
| **49.** At the EUO on September 27, 2024, Plaintiff that [her] claim for $12,422 in damages to [her] window, electrical panel , dishwasher and toilet | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, pp. 74:22-76:17 [FD004377- FD004379]* | **Disputed.** The asserted fact is grammatically incomplete. Unable to provide feedback |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| found in her Proof of Loss form was based upon an estimate she obtained from Kings Power and her claimed damages were still current and accurate as of the date of the EUO on September 27, 2024. | | |
| **50.** The Kings Power Electrical estimate was marked as Exhibit 5 to the EUO of Plaintiff | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, p. 126:5-14 [FD004429]* | Undisputed |
| **51.** The Contractor's License number on the Kings Power Electrical estimate-- "State Contractor License # 1053183" – does not belong to Kings Power Electrical but instead is for another company who has not worked on Plaintiff's Palm Springs Home. | *Canby Decl., ¶¶ 29-31, Exhibit 21, 15,* | **Disputed.** The Contractor's License number was 1058138, not 1053183 as Defendant asserts. The contractor performed work at Plaintiff's Property. Defendant's own subpoena to the contractor further demonstrates that Defendant identified and located the contractor. https://www.buildzoom.com/contractor/kings-power-electric-inc |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **52.** Plaintiff later admitted that his bathroom window was not shattered as initially reported and that the window could still open and close and locks and unlocks after the Incident. | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, pp. 70:17-71:11 [FD004373, FD004374]* | **Disputed.** Plaintiff disputes Defendant's use of the male pronoun "his" to refer to Plaintiff. Plaintiff does not recall of having this conversation. |
| **53.** At the EUO on September 27, 2024, Plaintiff testified that the Property had been listed for sale after the Incident for $1.6 million without first conducting any repairs (i.e., "I have not fixed anything") and the Property was still for sale on the date of the EUO but that sales contract was set to expire that same day. | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, pp. 71:12-72:21 [FD004374-FD004375]* | **Disputed** The cited transcript does not support the characterization that Plaintiff 'testified that... sales contract was set to expire that same day.' The statement that '[the] contract expired today' was made by defense counsel as a premise within her own question, not testified to by Plaintiff. EUO Transcript, pp. 71:12–17 [ECF Doc. 119-6, Page ID #:5228]. Fact 53 further omits Plaintiff's testimony that the Property was listed for sale before the Incident as well as after: 'Q. ...it was listed for sale |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | after the loss; correct? A. And before the loss.' Id. at 71:15–17." |
| **54.** Plaintiff could not verify the amount he actually paid for the Ivey and Luke painting subject of the Claim. | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, pp. 61:6-25, 66:6-18 [FD004361, FD004366]* | **Partially Disputed.** To the extent Plaintiff disputes Defendant's characterization that the amount could not be verified. Plaintiff provided Farmers with the painter's telephone number and supporting documentation, including an estimate concerning the Ivey and Luke painting. Plaintiff's inability to personally verify the amount does not establish that the amount could not be independently verified by Defendant using the information and documentation Plaintiff provided. |
| **55.** Plaintiff could not verify the amount he actually paid for the "No Face" figurine subject of the Claim. | *Canby Decl., ¶ 28, Exhibit 20, at EUO Transcript, pp. 72:22-74:6 [FD004375- FD004377]* | Undisputed |
| **56.** Farmers Direct ultimately decided to | *Means Decl., ¶ 26.* | **Disputed in part.** Plaintiff does not dispute that payment was |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| accept coverage for the Claim as a covered cause of loss under the Policy | | ultimately made on the Claim. Plaintiff disputes Defendant's assertion that **Farmers Direct** was the entity that accepted coverage for the Claim. The payment was made by **Farmers Insurance Exchange**, and Defendant's characterization of Farmers Direct as the entity that accepted coverage is disputed. |
| **57.** On or about October 29, 2024, Farmers Direct issued a payment to Plaintiff on the Claim in an amount totaling $16,393.21 (which included $12,488.20 as the estimated actual cash value to replace Plaintiff's personal property subject of the Claim, less the Policy's deductible and recoverable depreciation and $3,905.01 as the estimated cost to repair | *Means Decl., ¶ 27; Exhibit 10; RFA Nos. 43-46 and Exhibit C thereto, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; Hamilton Decl., ¶ 16.d; Saskor, ¶ 3.* | **Disputed in part.** Plaintiff does not dispute that a payment totaling $16,393.21 was issued on or about October 29, 2024, if established by the payment record. Plaintiff disputes Defendant's identification of **Farmers Direct** as the entity that issued the payment. The payment was made by **Farmers Insurance Exchange**. Plaintiff further disputes any characterization of the payment as establishing that Farmers Direct was the insurer or the sole insurer under the Policy. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| or replace property damages to her residence as result of the Incident. | | |
| **58.** Farmers Direct used Xactimate software tool to aid in the fair pricing and replacement cost calculations for the personal property component of her claim. | *Saskor Decl., ¶¶ 22-24, Exhibit 18.* | **Disputed in part.** Plaintiff does not dispute that Xactimate was used in connection with the personal property valuation. Plaintiff disputes any characterization that use of Xactimate establishes that the resulting pricing or replacement-cost calculations were fair, accurate, complete, or otherwise correct. |
| **59.** Accordingly, with regard to the Coverage C – Personal Property component of Plaintiff's Claim, Farmers Direct has paid Plaintiff $17,789.36 to replace her claimed lost items arising from the Incident which is at least the | *Saskor Decl., ¶¶ 20-29; Exhibits 17-18.* | **Disputed in part.** Plaintiff does not dispute that a total of $17,789.36 was paid on the personal-property component of the Claim, if established by the payment records. Plaintiff disputes Defendant's characterization of Farmers Direct as the entity that made the payment and disputes that |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| reasonable cost to replace any personal property allegedly stolen during the Incident and Farmers Direct more than satisfied its obligations under the Coverage C insuring agreements found in the Policy. | | $17,789.36 constituted the reasonable or full cost to replace all personal property allegedly stolen during the Incident. Plaintiff further disputes Defendant's conclusion that this payment satisfied all obligations under the Coverage C insuring agreement. These are disputed factual and legal conclusions, not established undisputed facts. |
| **60.** As Plaintiff could not provide any documentation to support the claimed $1500 value of a "No Face Man" Figurine she allegedly purchased in Japan which was an unusual item that was not encompassed within the software tools, Farmers Direct based its $330 estimated replacement cost for this item on examples for | *Saskor Decl., ¶ 25.* | **Disputed in part.** Plaintiff disputes Defendant's assertion that Plaintiff failed to provide documentation supporting the claimed value. Farmers instructed Plaintiff to use eBay listings to establish the value of the item, and Plaintiff provided the requested information. Plaintiff further disputes Defendant's characterization of the figurine as "unusual" and disputes that the $330 valuation accurately represented the reasonable replacement cost of |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| sale on eBay plus estimated taxes). | | Plaintiff's item. Plaintiff does not dispute that Farmers states it relied on eBay examples and estimated taxes in calculating the $330 amount. Plaintiff disputes any implication that Farmers Direct, rather than Farmers Insurance Exchange, was the entity responsible for making those payments. |
| **61.** Plaintiff also claimed that an "Ivey and Luke" Painting was allegedly stolen and Farmers Direct initially paid Plaintiff $5,000 for this item based on the amount of her claimed purchase price and a supplemental payment was issued later after Plaintiff provided additional documentation from an alleged art appraiser | *Saskor Decl., ¶¶ 10.b, Exhibit 15, Exhibit 2, at [FD001139]. Exhibit 15, [FD001650-FD001656]* | **Disputed in part.** Plaintiff does not dispute that Farmers initially paid $5,000 for the Ivey and Luke painting or that a supplemental payment was subsequently issued after Plaintiff provided additional documentation from an art appraiser, bringing the total payments for the item to more than $8,200. Plaintiff disputes any implication that the amount ultimately paid necessarily represented the full or correct replacement value of the painting or that Farmers |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| bringing the total paid to Plaintiff for this item to more than $8200. | | Direct, rather than Farmers Insurance Exchange, was the entity responsible for making those payments. |
| **62.** Despite already receiving full payment, Plaintiff repeatedly claimed that she was actually paid $0 for this painting by Farmers Direct after an outdated worksheet was inadvertently included in a communication to Plaintiff. In response to Plaintiff's questions and complaints, Farmers Direct repeatedly provided payment verification and explanations regarding the inadvertent inclusion of an outdated worksheet, but Plaintiff persisted in her | *Spradling Decl., ¶ 13, Exhibit 6; Saskor Decl., ¶¶ 10.b, Exhibit 15, Exhibit 2, at [FD001139]; Exhibit 15, [FD001650-FD001656].* | **Dispute** Defendant's characterization of her communications and the basis for her questions concerning payment for the Ivey and Luke painting. Plaintiff's understanding was based, in part, on an outdated worksheet that reflected $0 paid for the painting and was provided to Plaintiff in Defendant's communications. Plaintiff disputes that her questions or requests for clarification were made without a reasonable basis. Plaintiff further disputes Defendant's speculation regarding Plaintiff's motives, including the assertion that Plaintiff was attempting to "capitalize" on a paperwork |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| contention that $0 was paid and that $8200 is allegedly still owed without a reasonable basis for doing so (which resulted in suspicion as to whether Plaintiff had any sincere confusion regarding the issue at all or was instead attempting to capitalize on a minor paperwork discrepancy after already receiving payment). | | discrepancy or lacked a sincere basis for her concerns. Plaintiff also disputes Defendant's characterization of **Farmers Direct** as the entity that made the payments, as the payment records identify **Farmers Insurance Exchange**. These argumentative characterizations and conclusions are disputed and do not constitute undisputed facts |
| **63.** Although Plaintiff alleges in her First Amended Complaint that Defendant "unilaterally reduced to $0 two previously acknowledged items—Painting (Bercier) $8,200 and "No Face" memorabilia $331.55—creating $8,531.55 in | *Spradling Decl., ¶ 13, Exhibit 6; Saskor Decl., ¶¶ 10.b, Exhibit 15, Exhibit 2, at [FD001139]; see also Defendant's RJN (Exhibit F and Exhibit H), at FAC, ¶¶ 27, 35(c), Prayer and Exhibit A thereto [ECF Doc. 23-1, at pp. 162, 163, 176].* | **Disputed.** Plaintiff disputes Defendant's characterization that her allegations are "not true." The amounts Defendant identifies as having been paid do not, by themselves, establish that the previously acknowledged amounts were not subsequently reduced to $0 or that no resulting shortfall existed. Plaintiff further disputes |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| additional shortfall," her allegations is not true as she was paid $8,958.50 and over $360.00 for the "No Face" figurine. | | Defendant's characterization of the payments and accounting for the Bercier painting and "No Face" memorabilia, including the amounts, dates, and entity responsible for the payments. Plaintiff also disputes Defendant's characterization of **Farmers Direct** as the entity responsible for the payments where the payment records identify **Farmers Insurance Exchange**. The cited evidence does not establish Defendant's broader conclusion as an undisputed fact. |
| **64.** On or about November 5, 2024, Plaintiff submitted certain documentation to Farmers Direct seeking reimbursement for recoverable depreciation for the alleged replacement of allegedly stolen items. | *Saskor Decl., ¶ 4, Exhibit 1; see also Hamilton, ¶ 16.e.* | **Disputed in part.** Plaintiff does not dispute that documentation was submitted concerning the claimed replacement of personal property, but Defendant's assertion is vague as to what specific documentation it contends was submitted on November 5, 2024. Defendant should identify the documents |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | on which it relies rather than referring generally to "certain documentation." Plaintiff disputes any characterization of the nature, content, or purpose of the documents not specifically identified in the asserted fact. Disputing it was Direct rather than Exchange |
| **65.** From November 5, 2024 through July 10, 2025, Farmers Direct and Plaintiff exchanged many communications dealing with her claim for recoverable depreciation in connection with the personal property claim. Farmers Direct's evaluation of this portion of the claim was somewhat hampered as documentation submitted by Ms. D'Sol in support of her | *Saskor Decl., ¶¶ 3-6, 18-19, Exhibits 11-12, Exhibits 9-10; Spradling Decl., ¶¶ 11- 13; Exhibits 5-6; Hamilton, ¶ 16.e.* | **Disputed in part.** Plaintiff does not dispute that communications occurred concerning her claim for recoverable depreciation during the stated period. Plaintiff disputes Defendant's characterization that Farmers Direct's evaluation was "somewhat hampered" or that documentation provided by Plaintiff "could not be verified." Plaintiff provided documentation in support of her claim, and Defendant's characterization of the adequacy or verifiability of that documentation is disputed. Plaintiff further disputes |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| recovery of withheld depreciation could not be verified. | | Defendant's identification of **Farmers Direct** as the entity responsible for evaluating or handling the claim where the claim records identify **Farmers Insurance Exchange**. |
| **66.** On or about November 12, 2024, Farmers Direct issued a payment to Plaintiff in the amount $1,546.91 for recoverable depreciation related to the replacement of certain personal property subject of the Claim. | *RFA Nos. 48-50 and Exhibit D thereto, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; Hamilton, ¶ 16.e.; Saskor Decl., ¶ 4, Exhibit 1.* | **Disputed in part.** Plaintiff does not dispute that a payment in the amount of $1,546.91 was issued on or about November 12, 2024, if established by the payment records. Plaintiff disputes Defendant's identification of **Farmers Direct** as the entity that issued the payment; the payment was made by **Farmers Insurance Exchange**. Plaintiff further disputes Defendant's reliance on RFA Nos. 48–50 as deemed admitted, as Plaintiff disputes that those RFAs were properly served. Plaintiff does not concede any characterization of the payment as establishing that Farmers Direct was the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | insurer or the entity responsible for the payment. |
| **67.** There were apparent discrepancies in the claimed location of this item based on photographs provided by Plaintiff during the claims process which resulted in reasonable suspicions as well as unusual inquiries about a desired reward for the return of this item. | *Saskor Decl., ¶ 5.a-5.c; Exhibit 11; RFA No. 86-90, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes Defendant's characterization of the photographs as establishing "apparent discrepancies" or "reasonable suspicions." Plaintiff further disputes Defendant's characterization of her inquiry concerning a desired reward for the return of the item as "unusual." These are argumentative characterizations and conclusions, not undisputed facts. Plaintiff also disputes Defendant's reliance on RFA Nos. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | 86–90 as deemed admitted because Plaintiff disputes that those RFAs were properly served. |
| **68.** Plaintiff cancelled her order for an alleged replacement "Dyson" vacuum cleaner after she submitted the receipt to Farmers Direct seeking payment for recoverable depreciation on the Claim. | *Saskor Decl., ¶ 5.a-5.c; Exhibit 11; RFA No. 86, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed in part.** Plaintiff does not dispute that an order for a replacement Dyson vacuum cleaner was cancelled. Plaintiff disputes Defendant's characterization of the cancellation as establishing any impropriety or lack of validity in Plaintiff's claim for recoverable depreciation. Plaintiff further disputes Defendant's reliance on RFA No. 86 as deemed admitted because Plaintiff disputes that the RFA was properly served. |
| **69.** Plaintiff order for an alleged replacement "Brilliant" "Switch Panel" was cancelled after she submitted the receipt to Farmers Direct seeking payment for recoverable depreciation on the Claim. | *Saskor Decl., ¶ 5.b-5.c; Exhibit 12; RFA No. 86, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed in part.** Plaintiff does not dispute that an order for a replacement Brilliant Switch Panel was cancelled. Plaintiff disputes Defendant's characterization of the cancellation as establishing any impropriety or lack of validity in Plaintiff's claim for recoverable |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | depreciation. Plaintiff further disputes Defendant's reliance on RFA No. 86 as deemed admitted because Plaintiff disputes that the RFA was properly served. |
| **70.** Although Farmers Direct initially denied Plaintiff's request for additional recoverable depreciation on the grounds of material misrepresentation, Farmer Direct later made a business decision to change that denial and allow Plaintiff another opportunity to provide appropriate and verifiable documentation within the time limits permitted by the Policy. | *Saskor Decl., ¶ 6; Spradling ¶ 11.* | **Disputed in part.** Plaintiff does not dispute that Farmers initially denied her request for additional recoverable depreciation or that Farmers later reconsidered the denial and allowed Plaintiff an additional opportunity to submit documentation. Plaintiff disputes Defendant's characterization that this was merely a "business decision" and disputes any implication that Plaintiff's documentation was improper, unverifiable, or that the additional opportunity was limited in the manner Defendant asserts. Plaintiff further disputes Defendant's identification of **Farmers Direct** as the entity responsible for the claim handling where the claim records |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| | | identify **Farmers Insurance Exchange**. |
| **71.** Farmers Direct issued additional payments to Plaintiff for recoverable depreciation on July 8, 2025 for $232.93 and on July 10, 2025 for $26.25. | *Saskor Decl., ¶¶ 18-19, Exhibits 9-10* | **Disputed in part.** Plaintiff does not dispute that payments of $232.93 and $26.25 were issued on July 8 and July 10, 2025, respectively, if established by the cited payment records. Plaintiff disputes Defendant's identification of **Farmers Direct** as the entity that issued those payments where the payment records identify **Farmers Insurance Exchange**. |
| **72.** Farmers Direct paid Plaintiff all recoverable depreciation owed to her under the Policy as result of the Claim. | *Spradling Decl., ¶¶ 11-13; Exhibit 6; Saskor Decl., ¶¶ 18-19, Exhibits 9-10.* | **Disputed.** Plaintiff disputes Defendant's assertion that Farmers Direct paid "all recoverable depreciation owed" under the Policy. That assertion is a conclusion concerning the amount allegedly owed and whether Defendant fully satisfied its contractual obligations, which Plaintiff disputes. Plaintiff further disputes Defendant's identification of **Farmers Direct** |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | as the entity responsible for the payments and claim obligations where the records identify **Farmers Insurance Exchange**. |
| **73.** Farmers Direct's handling of Plaintiff's claim for recoverable depreciation was reasonable and consistent with standard industry practices. | *Spradling Decl., ¶¶ 11-13; Exhibit 6; Saskor Decl., ¶¶ 18-19, Exhibits 9-10; Hamilton Decl., ¶ 19.* | **Disputed.** This is an unsupported opinion and conclusion, not an undisputed fact. Plaintiff disputes Defendant's characterization of its handling of the recoverable-depreciation claim as "reasonable" or "consistent with standard industry practices." Defendant has not established those propositions as undisputed facts merely by offering declarations stating that conclusion. |
| **74.** On or about May 9, 2025, Plaintiff sought substantial additional repairs to: (1) a "Wall-Hung Toilet," which according to Plaintiff "flushes" at a rate "exceeding California's | *Saskor Decl., ¶ 9; Exhibit 3, at [FD003226-FD003233].* | **Disputed in part.** Plaintiff does not dispute that she submitted a request on or about May 9, 2025 concerning the items identified in Defendant's statement. Plaintiff disputes Defendant's characterization of the requested repairs and the reasons for those |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| 1.28 GPF let limit under CalGreen and CEC codes" and because Plaintiff's toilet flushed too hard somehow Farmers Direct was allegedly also required to recoat "approx. 2,600 sq. ft" of "continuous epoxy flooring throughout" her home; (2) Kitchen Island, "Structural Damage, and Appliance Loss," as result of "long-term water damage" since "the dishwasher was damaged, and plumbing must be replaced or rerouted to bring it back to code and functionality"; (3) full replacement of the "Main Electrical Panel" (4) "Code Upgrade Coverage" allegedly | | requests. In particular, Plaintiff disputes Defendant's characterization of the requests as being based merely on a toilet allegedly flushing too hard or on unsupported "long-term water damage." Plaintiff's request concerned damage and repairs Plaintiff attributed to the Incident, including the wall-hung toilet, kitchen island and related plumbing, electrical panel, code-related repairs, the Bercier painting valuation, and the bathroom window and associated wall and stucco damage. Plaintiff further disputes any characterization of her requests or supporting evidence beyond the documents themselves. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| required repair of the items above as result of the Incident on June 3, 2024; (5) an "Art Appraisal Adjustment" for an "Undervalued Loss" as "I was compensated $5,000 for a painting by Bercier, the amount I originally paid," but per her "certified appraisal" that "piece’s market value is $8,200" she requested "review for additional reimbursement of $3,200"; (6) "Bathroom Window – Forced Entry and Structural Repair," including "Stucco repair on the exterior wall," "drywall replacement on the interior bathroom wall," among other things. | | |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **75.** Donnie Means (on behalf of Farmers Direct) reinspected the Property on May 23, 2025 after Plaintiff submitted a supplemental claim where Plaintiff claimed additional damages to her bathroom, countertop and stucco, as well as the code upgrade requests as result of the Incident. | *Saskor Decl., ¶ 11; Exhibit 2, at [FD001121]; Means, ¶¶ 28-31, Exhibit 11.* | **Disputed in part.** Plaintiff does not dispute that Donnie Means reinspected the Property on May 23, 2025. Plaintiff disputes Defendant's characterization that Means acted "on behalf of Farmers Direct," and disputes any characterization of the supplemental claim or the requested repairs beyond the contents of Plaintiff's submission |
| **76.** Donnie Means took photographs at the Reinspection on May 23, 2025. | *Means Decl., ¶¶ 28-31, Exhibit 11.* | Undisputed |
| **77.** In or around May of 2025, Plaintiff sought approximately $90,000 in additional repairs related to the Incident and based upon the Reinspection conducted by Means Plaintiff's sought repairs were not | *Means Decl., ¶¶ 28-30, Exhibit 11; Hamilton Decl., ¶ 16.f.* | **Disputed.** Plaintiff disputes Defendant's characterization that the additional repairs were unrelated to the Incident or were "inflated." Those assertions are conclusions and opinions concerning the cause, necessity, and reasonableness of the claimed repairs, not established |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| related to the Incident and inflated. | | undisputed facts. Plaintiff disputes Means's conclusions regarding causation and the scope and reasonableness of the requested repairs. |
| **78.** On or about May 28, 2025 and following the reinspection of the Property, Farmers Direct issued Plaintiff another payment for additional repair work to the stucco and drywall surrounding the bathroom window where the intruder allegedly had entered the Property on June 3, 2024 -- which is one of the items that Plaintiff requested as part of her supplemental claim and based on the inspection and assessment of Senior Field Claims Representative Donnie Means, Farmers Direct | *Saskor Decl., ¶ 12; Exhibit 3-4, at [FD001142-FD001157]; Means Decl., ¶¶ 30; Corona Decl., ¶ 16; Hamilton Decl., ¶¶ 20-22.* | **Disputed in part.** Plaintiff does not dispute that a payment of $1,381.43 was issued on or about May 28, 2025 concerning drywall and stucco repairs surrounding the bathroom window, if established by the payment records. Plaintiff disputes Defendant's characterization of $1,381.43 as the "reasonable cost" of the repairs and disputes Defendant's identification of **Farmers Direct** as the entity that issued the payment where the payment records identify **Farmers Insurance Exchange**. Plaintiff further disputes any characterization of the scope or cause of the damage beyond what is established by the underlying evidence. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| paid Plaintiff another $1,381.43 payment on the Claim (Coverage A – Dwelling) as the reasonable cost to make further drywall repairs and to repaint the stucco around her bathroom window at the Property. | | |
| **79.** Plaintiff reported a new water intrusion incident at the Property on or about June 5, 2025. | *Saskor Decl., ¶ 13; Exhibit 5.* | **Disputed.** Plaintiff disputes Defendant's characterization of the water intrusion reported on or about June 5, 2025 as a "new" incident. Although Albert Pimentel of Farmers Insurance Exchange characterized the reported water damage as a "new event" in his June 16, 2025 email, Plaintiff disputes that characterization and maintains that the water damage was related to the conditions and damage arising from the original Incident. (ECF 1-2Page Id 159) |
| **80.** Farmers Direct reasonably advised | *Saskor Decl., ¶ 17; Exhibit 7-8; Means Decl., ¶¶ 28-32;* | **Disputed.** The advice identified in this statement was provided |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Plaintiff to file a new claim for a water incident occurring a year after the Incident. | *Hamilton ¶¶ 20-22; Corona, ¶ 17.* | by **Albert Pimentel, Property Field Claims Supervisor of Farmers Insurance Exchange**, not Farmers Direct. Plaintiff therefore disputes Defendant's attribution of the advice to Farmers Direct. Plaintiff further disputes Defendant's characterization that the advice was "reasonable" and disputes the characterization of the reported water damage as a separate claim unrelated to the original Incident. Pimentel's June 16, 2025 email states that Plaintiff had reported new water damage and directs Plaintiff to file a new claim; it does not establish as an undisputed fact that the water damage was unrelated to the original Incident. (ECF 1-2Page Id 159) |
| **81.** Under the terms and conditions of the applicable Farmers Direct's' insurance | *Hamilton Decl., ¶ 21.* | **Disputed.** Plaintiff disputes Defendant's identification of the applicable policy as a **Farmers Direct** policy and disputes the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| policy, it is the duty of Plaintiff to "Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures." Plaintiff's supplemental claim for damages included amounts for water damage from both a dishwasher and a toilet that had been leaking intermittently since the original date of loss – meaning those leaks had been occurring over a period of about eleven and a half months Plaintiff having taken no remedial measures. It was reasonable for Farmers Direct to | | factual characterization that the dishwasher and toilet had been leaking intermittently for approximately eleven and a half months without any remedial measures. Plaintiff further disputes Defendant's characterization of the circumstances and cause of the water damage and its conclusion that Plaintiff failed to comply with any duty to protect the Property from further damage. The assertion that it was "reasonable" for Farmers Direct to question Plaintiff's compliance is an argumentative conclusion, not an undisputed fact. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| question whether Plaintiff had complied with her duty to protect the property from further damage. | | |
| **82.** On or about June 5, 2025 Plaintiff submitted a copy of her "Partial Home Remodel" estimate dated May 19, 2025 from Progressive Home Remodeling which seeks repairs totaling "$87,400.00-$93,400.00." | *Saskor Decl., ¶ 13; Exhibit 6* | **Disputed in part.** Plaintiff does not dispute that she submitted the Progressive Home Remodeling estimate dated May 19, 2025 on or about June 5, 2025, or that the estimate stated $87,400.00–$93,400.00. Plaintiff disputes Defendant's characterization of the estimate as a "Partial Home Remodel." The estimate concerned **repairs to address damage and conditions at the Property**, including repairs Plaintiff attributed to the Incident, and was not submitted as a voluntary remodeling project. The word REMODEL is part of the business name. |
| **83.** Farmers Direct reasonably denied | *Saskor Decl., ¶ 16; Exhibit 7; Means Decl., ¶¶ 28-32.* | **Disputed.** Plaintiff disputes Defendant's characterization of |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Plaintiff’s supplemental claim seeking repairs found in her "Partial Home Remodel" estimate dated May 19, 2025 from Progressive Home Remodeling. | | the Progressive Home Remodeling estimate as a “Partial Home Remodel.” The estimate concerned repairs to address damage and conditions at the Property, including repairs Plaintiff attributed to the Incident. Plaintiff further disputes Defendant’s attribution of the denial to **Farmers Direct**. The June 16, 2025 correspondence concerning the supplemental estimate was from **Albert Pimentel, Property Field Claims Supervisor, Farmers Insurance Exchange**, who stated that the Field Property department would not review the estimate as part of the existing claim and directed Plaintiff to file a new claim. Plaintiff also disputes Defendant’s characterization that the denial was “reasonable.” |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| **84.** Farmers Direct paid Plaintiff a total of more than $26,986.00 on Plaintiff's Claim arising from the alleged burglary and vandalism incident on June 3, 2024 on the Claim under the Policy as follows • $16,393.21 on October 29, 2025 ($3,905.01 for Coverage A – Dwelling and $12,488.20 for Coverage C - Personal Property). • $1,546.91 on November 12, 2024 for recovered depreciation of personal property. • $7,406.20 on May 14, 2024 ($3,496.00 for Coverage C – Personal Property and $3,910.20 for Coverage A – Dwelling). • $1,381.43 on May 28, 2025 (Coverage A – Dwelling). • $232.93 | *Saskor Decl., ¶ 20; Exhibit 17* | **Disputed.** Plaintiff disputes Defendant's identification of **Farmers Direct** as the entity that made the payments because the cited evidence refers generally to "Farmers" and does not, on its face, establish that Farmers Direct was the entity that issued each payment. Plaintiff further disputes the dates and amount stated in this Fact. The supporting record identifies the $16,393.21 payment as issued on **October 29, 2024**, not October 29, 2025, and identifies the November 12, 2024 payment as **$1,546.20**, not $1,546.91. The record further identifies the $7,406.20 supplemental payment as issued on **May 14, 2025**, not May 14, 2024. See Saskor Decl., ¶ 20, Ex. 17. Accordingly, the asserted fact is not accurately stated and cannot properly be deemed undisputed. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| on July 8, 2025 for recovered depreciation of personal property. • $26.25 on July 10, 2025 for recovered depreciation of personal property. | | |
| **85.** Plaintiff's Claim met the definition of "suspected insurance fraud" as defined by the State of California which incorporates certain circumstances which will reasonably support an inference of suspected insurance fraud: "As used in the article, the following definitions shall apply: (q) "Suspected insured fraud' includes any misrepresentation of fact or omission of fact pertaining to a transaction of insurance | *Hamilton Decl., ¶¶ 14* | **Disputed.** Defendant's assertion that Plaintiff's Claim "met the definition of suspected insurance fraud" is a legal and factual conclusion, not an undisputed fact. The cited regulation, Cal. Code Regs., tit. 10, § 2698.30(q), defines "suspected insurance fraud" and identifies circumstances that **may** constitute evidence of suspected insurance fraud; it does not establish that Plaintiff's particular Claim satisfied that definition. Plaintiff disputes Defendant's characterization of the underlying circumstances, including its characterization of alleged discrepancies, |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| including claims, premium, and application fraud. These facts may include evidence of doctoring, altering or destroying forms; prior history of the claimant, policyholder, applicant or provider; receipts; estimates . . . relevant discrepancies in written or oral statements and examinations under oath (EUO); unusual policy activity; and falsified or untruthful application for insurance. An identifiable pattern in a claim history may also suggest the possibility of suspected fraudulent claims activity. A claim may contain evidence of suspected insurance fraud regardless of the | | statements, documents, and the Examination Under Oath as evidence establishing suspected insurance fraud. Plaintiff further disputes any implication that the regulation itself establishes that Plaintiff engaged in fraud or that the Claim was fraudulent. Whether the underlying facts occurred, what they establish, and whether they reasonably support an inference of suspected insurance fraud are disputed. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| payment status.” See Cal. Code Regs. Tit. 10, section 2698.30 – Definition (q).Cal. Code Regs, Tit. 10, section 2698.30 – Definitions (q) “Suspected Insurance Fraud.” | | |
| **86.** Farmers Direct has paid a collective total of $9,196.64 to Plaintiff in Coverage A Policy benefits following the Incident to repair property damage to her residence (Dwelling) at the Property which is at least the reasonable value to restore the Property to its pre-Incident condition, and likely more. | *Saskor Decl., ¶ 16; Exhibit 7; Means Decl., ¶ 32; Corona Decl., ¶¶ 16-17.* | **Disputed.** Plaintiff disputes Defendant’s identification of **Farmers Direct** as the entity that paid the asserted Coverage A benefits unless the cited payment records independently establish that Farmers Direct, rather than Farmers Insurance Exchange, issued those payments. Plaintiff further disputes the characterization that the $9,196.64 paid was “at least the reasonable value” necessary to restore the Property to its pre-Incident condition, or “likely more.” Those assertions are conclusions concerning the reasonable cost and adequacy of |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | the payments, not undisputed historical facts. The cited declarations do not establish the reasonable cost of all necessary repairs or conclusively establish that the amounts paid were sufficient to restore the Property to its pre-Incident condition. See Saskor Decl., ¶ 16; Ex. 7; Means Decl., ¶ 32; Corona Decl., ¶¶ 16–17. |
| **87.** The damages to Plaintiff's electrical panel were unusual and/or not covered by the Policy. | *Saskor Decl., ¶¶ 7-8, Exhibits 2, 13-14; Corona, ¶ 11.b* | **Disputed.** Plaintiff disputes Defendant's assertion that the electrical-panel damage was "unusual and/or not covered by the Policy." Defendant's own subsequent Fact No. 88 asserts that Farmers paid Plaintiff the reasonable cost to replace the **entire electrical panel**. The payment of benefits for replacement of the electrical panel is inconsistent with Defendant's characterization that the electrical-panel damage was not covered. Plaintiff further |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | disputes any characterization of the damage as "unusual" to the extent Defendant relies on that characterization to dispute coverage or causation. See Saskor Decl., ¶¶ 7–8, Exs. 2, 13–14; Corona Decl., ¶ 11.b. Disputing. Farmers Direct rather than Exchange |
| **88.** Farmers Direct paid Plaintiff the reasonable costs to replace her entire electrical panel. | *Saskor Decl., ¶ 10.a; Exhibit 7; Means Decl., ¶ 32; Corona, ¶¶ 16-17* | **Disputed in part.** Plaintiff does not dispute that approximately $5,000 was paid toward replacement of the electrical panel, if established by Exhibit 7. Plaintiff disputes Defendant's characterization that **Farmers Direct** paid the "reasonable costs" to replace the entire electrical panel, because the cited evidence must establish both the identity of the entity that issued the payment and that the amount paid constituted the reasonable and sufficient cost of the complete replacement. Defendant's assertion that the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | payment was the "reasonable cost" of replacement is a conclusion concerning the adequacy of the payment, not an undisputed historical fact. Plaintiff further disputes any implication that payment of this amount establishes that all damage to the electrical system arising from the Incident was fully and reasonably compensated. Disputing. Farmers Direct rather than Exchange |
| **89.** Plaintiff's First Amended Complaint attaches a copy of a "Partial Home Remodel" estimate dated May 19, 2025 apparently prepared by "Progressive Home Remodeling" and Plaintiff has apparently interlineated the following message on | *FAC, ¶ 19 (emphasis in original); see also Defendant's RJN [ECF Doc. 23-1, at p. 305]; see and compare Saskor Decl., ¶ 14, Exhibits 16.* | **Disputed in part.** Plaintiff does not dispute that the estimate was prepared by Progressive Home Remodeling and is dated May 19, 2025. Plaintiff disputes Defendant's characterization of the estimate as a "Partial Home Remodel." "Progressive Home Remodeling" is the name of the contractor/company that prepared the estimate; the scope of work identified in the estimate |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| the top of the first page of that estimate attached to her FAC as follows: "Everything in this letter referenced as ‘remodel’ is meant to only imply replacement and repair work. Their company’s name has the word Remodeling, however nothing here is targeting any kind of remodel job[.]" | | concerns **repair and replacement work** for property damage and conditions at the Property. remodeling project. Defendants RJN is disputed as it includes an incomplete policy that Bernard requested Plaintiff to attach |
| **90.** Plaintiff does not have any evidence to support her contention that a “whole-home epoxy” of the flooring was necessary to restore the Property to its pre-Incident condition. | *RFA No. 33, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **90. Disputed.** Plaintiff disputes Defendant’s assertion that she lacks evidence supporting the necessity of a whole-home epoxy flooring treatment. The Progressive Home Remodeling estimate identifies the scope of repair and replacement work for the Property, including the flooring, and provides evidence supporting the proposed whole-home treatment. The flooring is a continuous surface throughout |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | the affected areas, and the bathroom and kitchen repairs necessarily disturb and break the continuity of that flooring. Plaintiff therefore disputes Defendant's characterization that whole-home epoxy was unsupported or unnecessary to restore the Property to its pre-Incident condition. Plaintiff further disputes Defendant's reliance on RFA No. 33 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). See Canby Decl., ¶¶ 10–13, Exs. 10–12; Martinez Decl., ¶¶ 2–9, Exs. 1–4. |
| **91.** Plaintiff does not have any evidence to support her contention that a "kitchen-island demo/rebuild" was | *RFA No. 35, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ __, Exhibits __; see also Means Decl., ¶¶ __; see* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence supporting the necessity of a "kitchen-island demo/rebuild" to restore the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| necessary to restore the Property to its pre-Incident condition. | *also generally Corona Decl., ¶ __.* | Property to its pre-Incident condition. The repair estimate and supporting documentation identify repair and replacement work concerning the kitchen, including the kitchen island. Plaintiff's evidence supports the necessity and scope of the proposed repairs, and Defendant's disagreement with that evidence does not establish that Plaintiff has no supporting evidence. Plaintiff further disputes Defendant's reliance on RFA No. 35 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). See Saskor Decl., Ex. 16; see also Plaintiff's supporting repair documentation. |
| **92.** Plaintiff does not have any evidence to | *RFA No. 36, deemed admitted pursuant to Fed. R.* | **Disputed.** Plaintiff disputes Defendant's assertion that she |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| support her contention that a "toilet wall/anchoring & bath restoration" was necessary to restore the Property to its pre-Incident condition. | *Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | has no evidence supporting the necessity of "toilet wall/anchoring & bath restoration" to restore the Property to its pre-Incident condition. The repair estimate and supporting documentation identify bathroom repairs, including work involving the wall-hung toilet, anchoring, and restoration of the surrounding bathroom area. Plaintiff's evidence therefore provides support for the necessity and scope of the claimed repairs. Plaintiff further disputes Defendant's reliance on RFA No. 36 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). See Canby Decl., ¶¶ 10–13, Exs. 10–12; Martinez Decl., ¶¶ 2–9, Exs. 1–4 |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **93.** Farmers Direct's decision that a water event occurring 12-months after the initial date of loss would require a new claim was reasonable and consistent with standard industry practices. | *Hamilton Decl., ¶ 22.* | **Disputed.** Defendant's assertion that "Farmers Direct's" decision to treat the June 5, 2025 water intrusion as a new claim was "reasonable and consistent with standard industry practices" is disputed. The June 16, 2025 communication concerning that determination was issued by **Albert Pimentel, Property Field Claims Supervisor, Farmers Insurance Exchange**, who stated that the event "constitutes a new Property claim" and directed Plaintiff to file a new claim. Plaintiff disputes Defendant's attribution of that determination to Farmers Direct and disputes the characterization of the determination as reasonable or consistent with standard industry practices. The reasonableness of the determination presents a disputed issue concerning the nature, cause, and relationship |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | of the water damage to the original Incident. Plaintiff disputes the characterization of it being a new water damage |
| **94.** Farmers Direct's handling of Plaintiff's claim for recoverable depreciation was reasonable and consistent with standard industry practices | *Hamilton Decl., ¶ 20.* | **Disputed.** Defendant's assertion that "Farmers Direct's" handling of Plaintiff's claim for recoverable depreciation was "reasonable and consistent with standard industry practices" is disputed. The assertion is an opinion and conclusion concerning the reasonableness of Defendant's claim handling and industry practices, rather than an undisputed historical fact. Plaintiff disputes both the characterization of the claim handling as reasonable and the assertion that it was consistent with standard industry practices. Plaintiff further disputes Defendant's attribution of the handling to Farmers Direct to the extent the underlying claim records identify or involve |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | **Farmers Insurance Exchange**. See Hamilton Decl., ¶ 20. |
| **95.** Farmers Direct collectively paid Plaintiff more than $9,000.00 (i.e., 9,1966.64) in Coverage A Policy benefits to repair property damage to the Plaintiff's residence (Dwelling) related to the Incident which exceeds the reasonable value to restore the Property to its pre-Incident condition. | *Corona Decl., ¶¶ 11.a- 11.c, 12-14; see also RFA Nos. 43-46, 52-55 56-59 and Exhibit C, Exhibit E and Exhibit F thereto, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff does not dispute that approximately $9,196.64 in Coverage A payments were made, if the payment records establish that amount. Plaintiff disputes, however, Defendant's identification of **Farmers Direct** as the entity that made those payments unless the underlying payment records establish that attribution. Plaintiff further disputes Defendant's conclusion that the payments "exceed the reasonable value" necessary to restore the Property to its pre-Incident condition. That conclusion depends upon disputed issues concerning the scope, cause, necessity, and reasonable cost of the repairs required to restore the Property, including the electrical-panel work. Defendant's cited evidence |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | does not establish as an undisputed fact that Plaintiff was paid more than the reasonable restoration cost. Plaintiff also disputes Defendant's reliance on the cited RFAs as deemed admissions because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). Plaintiff disputes Direct rather than Exchange |
| **96.** The reasonable cost to repair the observed Incident-related damage was approximately $8,054.44 at replacement cost value which is less than the amount already paid by Farmers Direct (i.e., the $9,196.64 in Coverage A payments to Plaintiff). The difference in cost is due to the fact that | *Corona Decl., ¶ 14.* | **Disputed.** Plaintiff disputes Defendant's assertion that the reasonable cost to repair the Incident-related damage was only $8,054.44 and that the difference between that amount and the $9,196.64 paid was attributable solely to an "upgraded" 300-amp electrical panel. Plaintiff disputes the characterization of the 300-amp panel as an unnecessary upgrade and disputes Defendant's |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Farmers Direct allowed for an upgraded breaker panel, 300 amp versus a 200 amp which was in place at the time of the loss and already code compliant. | | assertion that a 200-amp panel was sufficient to restore the Property to its pre-Incident condition. The necessity, scope, code requirements, and reasonable cost of the electrical-panel replacement are disputed factual matters. Defendant's assertion that the amount paid exceeded the reasonable restoration cost is therefore not an undisputed fact merely because Corona expresses that opinion |
| **97.** No additional repairs are needed beyond those already compensated by Farmers Direct to restore the Property to its pre-loss condition as a result of the Incident. | *Corona Decl., ¶ 9.* | **Disputed.** Plaintiff disputes Defendant's assertion that no additional repairs are needed to restore the Property to its pre-Incident condition. Plaintiff has identified additional Incident-related repairs and supporting repair documentation, including work concerning the kitchen island, wall-hung toilet and bathroom restoration, flooring, electrical system, window, |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| | | stucco, and related areas of the Property. The existence, scope, necessity, causation, and reasonable cost of those repairs are disputed. Corona's conclusion that no additional repairs are necessary does not establish the absence of a genuine dispute concerning the condition of the Property or the repairs required to restore it to its pre-Incident condition. Dispute Direct rather than Exchange |
| **98.** The repairs estimates prepared by Farmers Direct are thorough and comprehensive and address all components of property damage at the Property that could have been caused as result of the Incident and the repair cost valuation methodology used by | *Corona Decl., ¶¶ 10, 12.* | **Disputed.** Defendant's assertions that the estimates were "thorough and comprehensive," addressed "all components," and that its valuation methodology was "reasonable," "more than fair," and met or exceeded industry standards are opinions and conclusions, not undisputed facts. Plaintiff disputes the adequacy, scope, methodology, |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| Farmers Direct is reasonable, more than fair and met or exceeded industry standards. | | and valuation of the estimates and further disputes attribution of the conduct exclusively to Farmers Direct. |
| **99.** Plaintiff has no evidence that Farmers Direct failed to properly investigate the Claim. | *RFA Nos. 71-72, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes the assertion that she has no evidence that Farmers Direct failed to properly investigate the Claim. The adequacy and completeness of the investigation are disputed factual issues. Plaintiff also disputes reliance on RFA Nos. 71–72 as deemed admissions because she disputes proper service and therefore disputes that admissions arose under Rule 36(a)(3). |
| **100.** The amount of time reasonably necessary to repair the observed Incident related damage and clean the Property | *Corona Decl., ¶ 15.* | **Disputed.** Plaintiff disputes the assertion that repairs and cleaning would reasonably require no more than four days or that the Property was not rendered uninhabitable. These |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| following the Incident would not exceed 4 days and the Property would not be rendered uninhabitable as a result of the Incident. | | conclusions depend on disputed facts concerning the extent, nature, and necessary scope of the Incident-related repairs. Corona Decl., ¶ 15 does not establish those disputed matters as undisputed facts. |
| **101.** Plaintiff did not make a claim for any Additional Living Expense ("ALE") benefits under the Policy as result of the Incident and no receipts or other expense documentation were ever provided to Farmers Direct by Plaintiff. | *RFA Nos. 29-30, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; see also Hamilton Decl., ¶ 17; Means Decl., ¶ 9.* | **Disputed.** Plaintiff disputes the assertion that she made no claim or request for ALE benefits. Defendant's own Means Declaration acknowledges that Mr. Means instructed Plaintiff to rent a hotel, which directly bears on whether temporary lodging and related expenses arose from the condition of the Property and were communicated during the Claim. Plaintiff also disputes reliance on RFA Nos. 29–30 as deemed admissions because she disputes proper service and therefore disputes that admissions arose under Rule 36(a)(3) |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| | | |
| **102.** Plaintiff did not submit any receipts, nor any other documentation, to Farmers Direct as part of the Claim to seek reimbursement of any Additional Living Expenses ("ALE") and/or for any "lodging, meal" and/or "transportation costs" as part of the CLAIM, as referenced in paragraph 35(a) of the FIRST AMENDED COMPLAINT | *RFA Nos. 29-30, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ __, Exhibits __; see also Hamilton Decl., ¶ 17.* | **Disputed.** Defendant's own Means Declaration acknowledges that Mr. Means instructed Plaintiff to rent a hotel. That evidence contradicts Defendant's characterization that no lodging-related matter was raised in connection with the Claim. Plaintiff disputes Defendant's further assertion concerning the absence of receipts or documentation and disputes reliance on RFA Nos. 29–30 as deemed admissions for the reasons stated above |
| **103.** It would be reasonable to question whether Plaintiff's home was ever rendered uninhabitable from the Incident in the first instance. | *Hamilton Decl., ¶ 17.* | **Disputed.** Defendant's statement is not an undisputed material fact; it is a characterization and opinion concerning whether the Property was rendered uninhabitable. The phrase "it would be reasonable to question" itself demonstrates |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | that the issue is subject to factual dispute rather than established fact. Whether the Property was rendered uninhabitable depends on the nature, extent, location, and effects of the Incident-related damage, as well as the conditions existing at the Property. Plaintiff disputes Defendant's characterization and relies on the evidence concerning the condition of the Property and the resulting repairs and restoration work. Hamilton Decl., ¶ 17 does not establish the absence of a genuine factual dispute merely by expressing an opinion concerning the issue. |
| **104.** Plaintiff's residence was not rendered uninhabitable as result of the Incident. | *Corona Decl., ¶ 8.* | **Disputed.** Plaintiff disputes Defendant's assertion that the residence was not rendered uninhabitable as a result of the Incident. Whether the residence was habitable depends upon disputed facts concerning the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | extent and condition of the Incident-related damage, including the condition of the dwelling and the repairs and restoration necessary to return the Property to its pre-Incident condition. Corona Decl., ¶ 8, standing alone, does not establish this disputed issue as an undisputed fact. Plaintiff further disputes any implication that Defendant's expert or declarant may conclusively resolve a factual question that remains supported by competing evidence in the record. Because the evidence concerning the condition and habitability of the residence is disputed, this issue cannot properly be treated as undisputed for purposes of summary judgment. |
| **105.** Plaintiff does not have any evidence to support her claim that Farmers Direct breached | *RFA Nos. 29-30, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-* | **Response: Disputed.** Defendant's assertion that Plaintiff "does not have any evidence" supporting her claim is |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
| --- | --- | --- |
| the implied covenant of good faith and fair dealing in connection with the Claim as alleged in the Second Cause of Action in the First Amended Complaint. | *12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | disputed and improperly characterizes the evidentiary record as an undisputed fact. Plaintiff has evidence concerning the handling, investigation, evaluation, coverage determinations, payments, and communications relating to the Claim, including evidence bearing on whether Farmers' conduct was reasonable and whether the Claim was fairly and thoroughly investigated. Plaintiff further disputes Defendant's reliance on RFA Nos. 29–30 as deemed admissions because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). Moreover, the declarations cited by Defendant do not conclusively establish the absence of contrary evidence or resolve disputed factual issues concerning the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | investigation, evaluation, coverage determinations, and claim handling. Plaintiff also disputes Defendant's attribution of all conduct concerning the Claim to Farmers Direct where the underlying record identifies or involves Farmers Insurance Exchange. The identity of the entity responsible for particular claim-handling acts is itself disputed and cannot be converted into an undisputed fact merely by Defendant repeatedly labeling the conduct as that of "Farmers Direct." |
| **106.** Farmers Direct's investigation and evaluation of Plaintiff's claim, reasonably complied with the claims handling standards promulgated by the State of California. | *Hamilton Decl., ¶¶ 25- 27.* | **Disputed.** Plaintiff disputes Defendant's assertion that Farmers Direct's investigation and evaluation of Plaintiff's Claim "reasonably complied" with California claims-handling standards. The assertion is a conclusion concerning the reasonableness and legal |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| | | sufficiency of Defendant's investigation and handling, not an undisputed historical fact. Plaintiff disputes the adequacy, completeness, and reasonableness of the investigation and evaluation, including the handling of evidence concerning the scope and cause of the claimed property damage. Plaintiff further disputes Defendant's attribution of the investigation and evaluation to **Farmers Direct** to the extent the underlying claim records identify or involve **Farmers Insurance Exchange**. |
| **107.** Plaintiff does not have any evidence that an officer, director, or managing agent of Farmers Direct is guilty of oppression, fraud, or malice in connection with the Claim. | *RFA No. 74, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence that an officer, director, or managing agent of Farmers Direct was guilty of oppression, fraud, or malice in connection with the Claim. The assertion improperly |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| | | characterizes the state of Plaintiff's evidence and the ultimate factual and legal issues concerning punitive damages as an undisputed fact. Plaintiff disputes Defendant's reliance on RFA No. 74 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). Plaintiff further disputes Defendant's identification of **Farmers Direct** as the relevant entity to the extent the evidence establishes involvement by **Farmers Insurance Exchange** or other Farmers entities |
| **108.** Plaintiff does not have any evidence to support her request for punitive and/or exemplary damages under Civil Code Section 3294 against Farmers | *RFA No. 75, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence supporting her request for punitive and/or exemplary damages under Civil Code § 3294. Whether the evidence supports punitive |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| Direct as sought in her First Amended Complaint, Prayer For Relief, at Item 8. | | damages depends upon disputed facts concerning the conduct, knowledge, authorization, ratification, and state of mind of the persons involved in the handling of Plaintiff's Claim. Defendant's conclusory assertion that Plaintiff has "no evidence" does not establish the absence of such disputed facts. Plaintiff further disputes reliance on RFA No. 75 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). Plaintiff also disputes Defendant's attribution of the challenged conduct to **Farmers Direct** to the extent the underlying claim records identify or involve **Farmers Insurance Exchange**. |
| **109.** January 28, 2025 was the first time that | *RFA Nos. 6, 9-10, deemed admitted pursuant to Fed. R.* | **Disputed.** Plaintiff disputes Defendant's assertion that |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Plaintiff disclosed her "gender confirmation treatment" to anyone working on behalf of Farmers Direct but she did not disclose whether she or not she identified with any particular gender and did not disclose any preferred gender identifiers. | *Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; Spradling Decl., ¶ 8.* | January 28, 2025 was the first disclosure of her gender identity or that she did not disclose a gender identity or preferred gender identifiers to Farmers. Plaintiff's subsequent written communication dated February 7, 2025 expressly instructed Farmers: **"Please address me as Luna (she / her / hers)."** That written instruction provided clear notice of Plaintiff's name and preferred female pronouns. Plaintiff therefore disputes Defendant's characterization that she did not disclose whether she identified with a particular gender or disclose preferred gender identifiers. Plaintiff further disputes Defendant's attribution of the relevant conduct to **Farmers Direct** to the extent the underlying communications and claim records identify or involve **Farmers Insurance Exchange**. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | Plaintiff also disputes reliance on RFA Nos. 6 and 9–10 as "deemed admitted" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). See Spradling Decl., ¶ 8; Plaintiff's February 7, 2025 written communication. |
| **110.** January 28, 2025 was the first time that Plaintiff disclosed her "gender confirmation treatment" to anyone working on behalf of Farmers Direct and it was a stray reference buried within a larger 18 page "FAX" transmission directed to "farmers insurance" from "julio ravada" but she did not disclose whether she or not she identified with any particular gender | *Saskor Decl., ¶ 8, Exhibit 2.* | **Disputed.** Plaintiff disputes Defendant's characterization of her January 28, 2025 communication as a "stray reference" and disputes the implication that the placement or length of the communication diminished the significance of the disclosure. Plaintiff further disputes Defendant's assertion that the communication established that she did not identify with a particular gender or communicate her gender identity. Plaintiff's February 7, 2025 written communication |

| **Defendant's Fact No. & Fact (ECF 117-1)** | **Defendant's Supporting Evidence** | **Plaintiff's Response / Notes** |
|---|---|---|
| and did not disclose any preferred gender identifiers and did not mention the name "Luna" at all (the communication was signed "Julio Ravada.") | | expressly stated: **"Please address me as Luna (she / her / hers),"** thereby providing Farmers with clear written notice of her requested name and female pronouns shortly thereafter. Plaintiff also disputes Defendant's attribution of the communication and its receipt to **Farmers Direct** to the extent the transmission was directed to or received by "Farmers Insurance" and the underlying records identify or involve **Farmers Insurance Exchange**. To the extent Defendant relies on the January 28 communication's signature or email/address information as evidence that Plaintiff consented to being addressed as "Julio," Plaintiff disputes that inference |
| **111.** Plaintiff continued to use the name "Julio Ravada," "Julio R" and/or "Julio" in emails | *RFA Nos. 7-8, 11-12, 14-17 and Exhibit B thereto, all deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3);* | **Disputed.**. Plaintiff's continued use of the email address **jravada@icloud.com** did not constitute an affirmative request |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| and other communications with Farmers Direct after January 28, 2025. | *Canby Decl., ¶¶ 10-13, Exhibits 10- 12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; Declaration of Bryce Spradling, ¶¶ 5-10, Exhibits 2-4.* | or instruction to Farmers to address her by her former name. Plaintiff had separately and expressly requested that Farmers address her as **Luna D'Sol** and use female pronouns, and Farmers acknowledged that request. Plaintiff disputes any inference that the appearance of a former name in an email address or other communication establishes that Plaintiff withdrew, abandoned, or waived that request. Plaintiff further disputes Defendant's attribution of the communications to **Farmers Direct** to the extent the underlying records identify or involve **Farmers Insurance Exchange**. Plaintiff also disputes reliance on RFA Nos. 7–8, 11–12, and 14–17 as "deemed admitted" because Plaintiff disputes that the Requests for Admission were properly served and therefore |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| | | disputes that any admission arose under Rule 36(a)(3) |
| **112.** Plaintiff continued to use the email address "jravada@icloud.com" to communicate with Farmers Direct after January 28, 2025. | *RFA No. 13, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed in part.** Plaintiff does not dispute that communications were sent from the email address **jravada@icloud.com**, if the cited communications establish that fact. Plaintiff disputes Defendant's characterization of continued use of that email address as evidence that Plaintiff continued to identify herself as "Julio" or consented to being addressed by that name. The email address was an existing email address and does not establish Plaintiff's legal name, gender identity, or the manner in which Farmers was requested to address her. Plaintiff further disputes Defendant's attribution of the communications to **Farmers Direct** to the extent the underlying records identify or involve **Farmers Insurance Exchange**. Plaintiff also disputes |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | reliance on RFA No. 13 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). |
| **113.** Later on or about February 7, 2025, as part of a 9 page "FAX" transmission (which included copies of many of those controversial receipts) again buried on the third page Plaintiff accused Michael Saskor of alleged "unlawful gender- based harassment" because he allegedly said "Thank you, sir," to Plaintiff at the end of the call and she also included the following small "P.S." notation: "Please | *Spradling Decl., ¶ 9_, Exhibit 3.* | **Disputed in part.** Plaintiff does not dispute that her February 7, 2025 fax transmission included the statement, "Please address me as Luna (she / her / hers)," if the cited document accurately reflects the transmission. Plaintiff disputes Defendant's characterization of that request as being "buried" on the third page or otherwise insignificant. The request was an express written instruction concerning the name and pronouns by which Plaintiff requested to be addressed. Plaintiff also disputes Defendant's characterization of her communication as merely an accusation of alleged "unlawful |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| address me as Luna (she / her / hers).” | | gender-based harassment,” because the written request separately provided clear notice to Farmers of Plaintiff’s requested name and pronouns. The location of the request within a multi-page fax and the size or placement of the notation do not negate the fact that Farmers received written notice of Plaintiff’s request. |
| **114.** Plaintiff continued to use the name “Julio Ravada,” “Julio R” and/or “Julio” in emails and other communications with Farmers Direct after January 28, 2025, including in numerous email communications sent to Property Theft Supervisor Bryce Spradling in March and April of 2025. | *RFA Nos. 14-17 and Exhibit B thereto, all deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; see also Spradling Decl., ¶ 10, Exhibit 4.* | **Disputed.** Plaintiff disputes Defendant’s characterization of her use of “Julio Ravada,” “Julio R,” and/or “Julio” in communications after January 28, 2025. Plaintiff disputes the implication that any continued appearance of a prior name in an email address or communication establishes that Plaintiff affirmatively identified herself by that name or that she thereby withdrew, abandoned, or waived her written request to be addressed as Luna. Plaintiff |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | further disputes Defendant's attribution of the communications and conduct to **Farmers Direct** to the extent the underlying communications and claim records identify or involve **Farmers Insurance Exchange**. Plaintiff also disputes Defendant's reliance on RFA Nos. 14–17 as "deemed admitted" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3). |
| **115.** Farmers Direct issued additional payments to Plaintiff on the Claim after Plaintiff disclosed her participation in "gender confirmation treatment" to Farmers Direct. | *RFA Nos. 69 deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed in part.** Plaintiff does not dispute that additional payments were made after she disclosed her participation in gender-affirming treatment, to the extent the payment records establish that fact. Plaintiff disputes Defendant's characterization of **Farmers Direct** as the entity responsible for those payments to the extent |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
| --- | --- | --- |
| | | the underlying claim records identify or involve **Farmers Insurance Exchange**. Plaintiff further disputes any implication that the subsequent payments establish the absence of discrimination, because the fact that payments were made after Plaintiff's disclosure does not resolve whether Plaintiff was otherwise subjected to discriminatory treatment in the handling of her Claim. Plaintiff disputes Defendant's reliance on RFA No. 69 as a "deemed admission" because Plaintiff disputes that the Requests for Admission were properly served and therefore disputes that any admission arose under Rule 36(a)(3 |
| **116.** Plaintiff does not have any evidence to support a claim of "unlawful discrimination under the Unruh Civil | *RFA No. 18., deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9;* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence supporting her claim under the Unruh Civil Rights Act. Whether Plaintiff |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Rights Act" against Farmers Direct. | *Exhibits 1-4; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28.* | possesses evidence sufficient to support that claim is a legal and evidentiary issue, not an undisputed historical fact. Plaintiff has identified evidence concerning her written requests to be addressed as Luna and with female pronouns, Farmers' acknowledgment of those requests, subsequent communications in which Plaintiff was nevertheless addressed incorrectly, and the circumstances surrounding the handling of her Claim. Plaintiff further disputes Defendant's attribution of the alleged conduct to **Farmers Direct** to the extent the evidence identifies or involves **Farmers Insurance Exchange**. Plaintiff also disputes reliance on RFA No. 18 as a deemed admission because Plaintiff disputes proper service of the Requests for Admission. |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| **117.** Plaintiff does not have any evidence that her gender, her gender identity, her participation in "gender confirmation treatment," her identification as a female, her identification as male and/or that any protected characteristic was a motivating factor for Farmers Direct's denial of any aspect of the Claim. | *RFA Nos. 19-24, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28.* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence that her gender, gender identity, participation in gender-affirming treatment, or other protected characteristic was a motivating factor in the handling or denial of her Claim. Defendant's assertion improperly converts a disputed evidentiary and causation issue into an asserted undisputed fact. Plaintiff relies, among other evidence, on the chronology of her disclosure and requests concerning her identity, Farmers' acknowledgment of those requests, subsequent misgendering, communications concerning the handling of her Claim, and the timing and circumstances of subsequent claim decisions. Plaintiff further disputes Defendant's attribution of the challenged conduct to **Farmers Direct** to the extent the |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | underlying records identify or involve **Farmers Insurance Exchange**. Plaintiff also disputes reliance on RFA Nos. 19–24 as deemed admissions because Plaintiff disputes that the Requests for Admission were properly served. |
| **118.** Plaintiff does not have any evidence that anyone working on behalf of Farmers Direct intentionally discriminated against her in the handling of the Claim. | *RFA Nos. 25, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28.* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence that anyone acting on behalf of Farmers intentionally discriminated against her in the handling of the Claim. That assertion concerns the ultimate evidentiary and factual issues underlying Plaintiff's Unruh claim and is not properly established as an undisputed fact merely by Defendant's declarations or its characterization of Plaintiff's evidence. Plaintiff has evidence concerning repeated requests regarding how she was to be addressed, Farmers' |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | acknowledgment of those requests, subsequent incorrect addressing, and the circumstances surrounding the handling of the Claim. Plaintiff further disputes Defendant's attribution of all challenged conduct to **Farmers Direct** to the extent the underlying records identify or involve **Farmers Insurance Exchange**. Plaintiff also disputes reliance on RFA No. 25 as a deemed admission because Plaintiff disputes proper service of the Requests for Admission. |
| **119.** Plaintiff does not have any evidence that any alleged "misgendering" of her by anyone working on behalf of Farmers Direct was anything other than an honest mistake. | *RFA Nos. 26, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); see Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes Defendant's assertion that any alleged misgendering was necessarily an "honest mistake." The characterization of the conduct as an honest mistake is a factual inference concerning intent and state of mind, not an undisputed historical fact. Plaintiff's evidence includes her |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| | | repeated written requests to be addressed as Luna and with female pronouns, Farmers' acknowledgment of those requests, and subsequent communications in which Plaintiff was nevertheless addressed incorrectly. Plaintiff disputes Defendant's characterization of the conduct and the inferences Defendant seeks to draw from it. Plaintiff also disputes reliance on RFA No. 26 as a deemed admission because Plaintiff disputes that the Requests for Admission were properly served |
| **120.** Plaintiff does not have any evidence to support her request for an "[a]ward [of] statutory damages under Civil Code § 52(a) and § 52(f)" for alleged "discrimination in a business establishment" | *RFA Nos. 26, deemed admitted pursuant to Fed. R. Civ. Proc. 36(a)(3); Canby Decl., ¶¶ 10-13, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4; see also Spradling Decl., ¶ 15, Means Decl., ¶ 33, Saskor Decl., ¶ 28.* | **Disputed.** Plaintiff disputes Defendant's assertion that she has no evidence supporting her request for statutory damages under Civil Code §§ 52(a) and 52(f). The availability of statutory damages is a legal issue dependent upon the facts and legal elements of Plaintiff's |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| by Farmers Direct (as sought by Plaintiff in her First Amended Complaint, Prayer for Relief, Item 7). | | Unruh claim; it is not established by Defendant's conclusory assertion that Plaintiff has "no evidence." Plaintiff further disputes Defendant's attribution of the alleged discriminatory conduct to **Farmers Direct** to the extent the evidence identifies or involves **Farmers Insurance Exchange**. Plaintiff also disputes reliance on RFA No. 26 as a deemed admission because Plaintiff disputes proper service of the Requests for Admission. |
| **121.** Plaintiff failed to timely respond to Farmers Direct's Request for Admissions Set One that where served June 2, 2026, and no responses have been provided at all and her responses are now deemed admitted pursuant to Federal Rule | *Canby Decl., ¶¶ 10-13, 20-25, Exhibits 10-12; Martinez Decl., ¶¶ 2-9; Exhibits 1-4.* | **Disputed.** Plaintiff disputes Defendant's assertion that its Requests for Admission were properly served on June 2, 2026 and therefore disputes Defendant's assertion that Plaintiff's responses were automatically deemed admitted. Plaintiff did not consent to the electronic service Defendant relies upon, and Plaintiff disputes that Defendant |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| of Civil Procedure 36(b)(1). | | established the predicate service necessary for Rule 36(a)(3) to operate. Plaintiff further disputes Defendant's characterization of the admissions as conclusively established for purposes of summary judgment. Defendant's citation to Rule 36(b)(1) does not itself establish that the matters were deemed admitted; Rule 36(a)(3) governs the effect of a failure to timely respond to properly served requests. |
| **122.** Farmers Direct timely served its Expert Witness Disclosures on July 15, 2026; however, Plaintiff failed to serve any Expert Witness Disclosures, failed to designate any experts by the July 15, 2026 disclosure deadline and has not designated any rebuttal experts such that the opinions of | *Canby Decl., ¶¶ 14-19, Exhibits 14, 24.* | **Disputed in part.** Plaintiff does not dispute that Defendant served its Expert Witness Disclosures on July 15, 2026, if established by the cited record. Plaintiff disputes, however, Defendant's conclusion that the absence of a Plaintiff expert designation renders Defendant's experts' opinions "undisputed and unrebutted." Whether Defendant's experts' opinions are admissible, adequately |

| Defendant's Fact No. & Fact (ECF 117-1) | Defendant's Supporting Evidence | Plaintiff's Response / Notes |
|---|---|---|
| Farmers Direct's experts are undisputed and unrebutted. | | supported, based on competent evidence, or sufficient to establish the absence of a genuine dispute is a separate issue. Plaintiff disputes the factual and methodological conclusions contained in Defendant's expert opinions and does not concede those opinions merely because Defendant designated experts |

## II. CONCLUSIONS OF LAW

### I. General Governing Principles

1. Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
2. The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact as to an essential element of the claim on which it seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
3. Once the moving party satisfies its initial burden, the nonmoving party must identify specific facts demonstrating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
4. In determining whether a genuine dispute exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5. The Court's function at summary judgment is not to weigh conflicting evidence or determine the truth of disputed matters, but to determine whether a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 249.
6. Where the evidence permits a reasonable factfinder to return a verdict for the nonmoving party, summary judgment must be denied. *Id.* at 248.
7. A party opposing summary judgment may demonstrate a genuine dispute through admissible evidence, including declarations, deposition testimony, documents, and other materials permitted by Rule 56(c). Fed. R. Civ. P. 56(c).

**II. Defendant Cannot Establish Summary Judgment Through Disputed "Deemed Admissions"**

8. Federal Rule of Civil Procedure 36(a)(3) provides for automatic admission only when a request for admission has been properly served and no timely answer or objection is served.
9. Where service is made electronically outside the Court's electronic-filing system, Federal Rule of Civil Procedure 5(b)(2)(E) requires the person served to have consented in writing to electronic service.
10. Plaintiff disputes that she provided written consent to formal electronic service of Defendant's Requests for Admission. Plaintiff's prior correspondence concerning email expressly referred to courtesy copies and did not constitute consent to formal service of Requests for Admission by email.
11. Accordingly, the validity of Defendant's purported deemed admissions is itself disputed and cannot be treated as an undisputed factual premise for summary judgment without first resolving whether the Requests for Admission were properly served.

**III. Defendant's Characterization of Opinions and Conclusions Does Not Establish Undisputed Facts**

12. Statements that an investigation was "thorough," "fair," "reasonable," or consistent with industry standards constitute conclusions or opinions concerning the adequacy and reasonableness of Defendant's conduct rather than undisputed historical facts.
13. Likewise, assertions concerning the "reasonable" cost of repairs, whether particular repairs were necessary, whether damage was covered, whether payments were sufficient, and whether

Defendant fully investigated the claim depend upon disputed evidence concerning the nature, scope, causation, necessity, and cost of the claimed damage.

14. Where the record contains competing evidence concerning the scope of damage, the adequacy of the investigation, the reasonableness of the valuation, or the sufficiency of payments, those disputes cannot be resolved by simply labeling Defendant's position "reasonable" or "undisputed."

**IV. Genuine Disputes Preclude Summary Judgment on Breach of Contract**

15. Under California law, an insurance policy is interpreted according to ordinary rules of contract interpretation, and the Court must determine the parties' mutual intention from the policy language and applicable rules of construction.

16. Where the parties dispute the applicable contractual language, completeness of the policy materials, or meaning and application of coverage provisions, summary judgment is inappropriate to the extent resolution depends upon disputed facts or competing interpretations that cannot properly be resolved as a matter of law.

17. Here, Plaintiff disputes Defendant's characterization of the policy materials as complete and undisputed, including the omission of the Assumption Certificate that  forms part of the policy and became effective before the loss.

18. Plaintiff further disputes Defendant's assertions concerning the scope, necessity, and reasonable cost of repairs and replacement, including the kitchen island, wall-hung toilet and bathroom repairs, flooring, electrical panel, window, stucco, and related property damage.

19. These disputes are material because they bear directly on whether Defendant performed its contractual obligations and whether the amounts paid were sufficient to satisfy those obligations.

**V. Genuine Disputes Preclude Summary Judgment on Bad Faith**

20. Under California law, an insurer's implied covenant of good faith and fair dealing includes the obligation to investigate and evaluate a claim fairly and reasonably.

21. An insurer cannot establish entitlement to summary judgment merely by showing that it ultimately paid some benefits or adopted a coverage position. The reasonableness of the

insurer's investigation and conduct must be evaluated in light of the circumstances known to the insurer at the relevant time.

22. California recognizes that the genuine-dispute doctrine does not automatically defeat a bad-faith claim where the factual basis for the insurer's position or the reasonableness of its investigation is itself genuinely disputed. See *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346–47 (2001).

23. Here, Plaintiff disputes the completeness and adequacy of Defendant's investigation, the scope of damage considered, the valuation of repairs, the sufficiency of payments, and the factual basis for Defendant's coverage determinations.

24. Plaintiff's evidence therefore presents factual disputes concerning whether Defendant conducted a full and fair investigation and whether its handling and evaluation of the claim were reasonable under the circumstances.

**VI. Genuine Disputes Preclude Summary Judgment on Plaintiff's Unruh Act Claim**

25. California Civil Code § 51.5 prohibits discrimination in business establishments on specified protected grounds, and California Civil Code § 51 provides the statutory framework for the Unruh Civil Rights Act.

26. Plaintiff's claim does not depend merely upon the existence of a protected characteristic. The relevant factual inquiry includes whether Defendant's conduct constituted intentional discrimination and whether Plaintiff's protected status was a motivating factor in the challenged conduct.

27. Plaintiff disputes Defendant's characterization of the repeated use of Plaintiff's former name and incorrect pronouns as merely an isolated or inadvertent mistake.

28. The record includes Plaintiff's express written request to be addressed as Luna and using she/her/hers pronouns, Defendant's acknowledgment of that request, and subsequent communications in which  the requested name and pronouns were not consistently used.

29. Whether the conduct was accidental, negligent, or intentional, and what inferences should be drawn from the chronology and surrounding circumstances, present factual questions that

cannot be resolved in Defendant's favor merely by characterizing the conduct as an "honest mistake."

**VII. Punitive Damages Cannot Be Resolved on Defendant's Undisputed-Fact Characterization**

30. Punitive damages under California Civil Code § 3294 require proof of oppression, fraud, or malice as defined by the statute and, where applicable, satisfaction of the authorization, advance-knowledge, or ratification requirements of section 3294(b).

31. Defendant's assertions that there is "no evidence" supporting punitive damages improperly characterize the evidentiary record and seek to resolve disputed inferences in Defendant's favor.

32. Plaintiff disputes the factual assertions concerning Defendant's knowledge, conduct, supervisory involvement, authorization, and ratification that bear upon the punitive-damages inquiry.

33. Because material factual disputes remain concerning the underlying conduct and the circumstances surrounding it, Defendant has not established entitlement to summary judgment on punitive damages as a matter of law.

**VIII. Disputed Entity Attribution Remains Material**

34. Plaintiff disputes Defendant's attribution of all relevant conduct exclusively to Farmers Direct Property and Casualty Insurance Company where the underlying documents identify "Farmers" generally or identify Farmers Insurance Exchange.

35. Farmers Insurance Exchange is named as a defendant in Plaintiff's operative pleading and is identified in the causes of action.

36. The identity of the entity that performed, authorized, communicated, investigated, evaluated, or made particular claim decisions is therefore a factual matter that cannot be established merely through Defendant's repeated use of the term "Farmers Direct" in its Motion or Statement of Uncontroverted Facts.

37. Plaintiff specifically disputes entity attribution wherever the cited evidence does not establish that Farmers Direct, rather than Farmers Insurance Exchange or another Farmers entity, performed the conduct asserted.

**IX. Defendant's Motion Cannot Obtain Summary Judgment by Converting Disputed Evidence Into "Uncontroverted" Facts**

38. Defendant cannot obtain summary judgment by characterizing disputed evidence, disputed opinions, disputed entity attribution, disputed policy materials, or contested discovery consequences as undisputed facts.

39. Where Plaintiff has identified evidence from which a reasonable factfinder could resolve a material issue in Plaintiff's favor, the existence of that dispute precludes summary judgment on the affected claim or issue.

40. Accordingly, Defendant's Motion should be denied to the extent it depends upon the factual propositions Plaintiff has specifically disputed in this Statement of Genuine Disputes.

Respectfully submitted:

**Dated: September 8, 2026**

**By:** /s/ Luna D'Sol

**Luna D'Sol**
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069