MICHELLE R. BERNARD (SBN: 144582)
mbernard@grsm.com
KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>v.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-10938-SVW-ASx<br><br>**DEFENDANT FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A<br>Trial Date: October 13, 2026; 9:00 a.m.<br>FSC: October 5, 2026; 3:00 p.m.<br><br>Filed Concurrently With (As Separate CM/ECF Documents): Defendant's Exhibit List; Defendant's Witness List<br><br>Complaint Filed: August 21, 2025 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 10

II. CLAIMS AND DEFENSES OF THE PARTIES/L.R. 16-4.1: ..... 12

A. Summary Of Plaintiff's Claims/L.R. 16-4.1(a): ..... 12

B. Elements Required To Establish Plaintiff's Claims/L.R. 16-4.1(b): ..... 13

1. Elements Required To Establish Plaintiff's Claim For Breach of Contract ..... 13

2. Elements Required To Establish Plaintiff's Claim for Breach Of The Implied Covenant Of Good Faith and Fair Dealing: ..... 15

a. Unreasonable Delay Or Failure To Pay Benefits ..... 16

b. Unreasonable Investigation ..... 16

3. The Required Elements To Establish Plaintiff's Claim For Intentional Discrimination In Violation Of The Unruh Act ..... 17

C. Key Evidence In Opposition To Plaintiff's Claims/L.R. 16-4.1(c): ..... 18

1. Evidence Opposing Plaintiff's Breach Of Contract Claim: ..... 18

2. Evidence Opposing Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing: ..... 19

3. Evidence Opposing Plaintiff's Unruh Act Claim: ..... 20

D. Summary Of Defendant's Affirmative Defenses/L.R. 16-4.1(d):: ..... 20

E. Elements To Establish Affirmative Defenses/L.R. 16-4.1(e): ..... 21

1. Plaintiff's Breach Of Policy Conditions Or Duties ..... 21

2. Failure To Mitigate ..... 22

3. Misrepresentation / Fraudulent Documentation ..... 22


Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

4. Genuine Dispute Doctrine ........ 23

5. Lack of Discriminatory Intent ........ 24

F. Key Evidence In Support Of Affirmative Defenses/L.R. 16-4.1(f): ........ 24

1. Plaintiff's Breach of Policy Conditions Or Duties ........ 24

2. Failure To Mitigate ........ 24

3. Misrepresentation / Fraudulent Documentation ........ 25

4. Genuine Dispute Doctrine ........ 25

5. Lack of Discriminatory Intent ........ 26

G. Similar Statements For All Third Parties/L.R. 16-4.1(g): ........ 26

H. Identification Of Anticipated Evidentiary Issues/L.R. 16-4.1(h): ........ 26

1. MIL No. 1 [ECF Doc. 122]: Exclusion Of Evidence To Rebut Deemed Admissions: ........ 26

2. MIL No. 2 [ECF Doc. 123]: Exclusion Of Evidence Presentation To Jury: ........ 27

3. MIL No. 3 [ECF Doc. 124]: Exclusion Of Testimony From Undisclosed Experts, Undisclosed Witnesses / Exclusion Of Lay Opinion Testimony: ........ 27

4. MIL No. 4 [ECF Doc. 125]: Exclusion Punitive Damage Evidence / Bifurcation: ........ 28

III. ISSUES OF LAW / L.R. 16-4.1(i): ........ 28

A. Breach of Contract and Bad Faith ........ 28

B. Bad Faith Standard ........ 29

C. Genuine Dispute Doctrine ........ 31

D. Attorney's Fees ........ 32

E. Unruh Civil Rights Act Claim ........ 32


Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

IV. BIFURCATION OF ISSUES -- L.R. 16-4.3: ........................................ 33

V. JURY TRIAL – L.R. 16-4.4: ........................................ 33

VI. ATTORNEYS' FEES – L.R. 16-4.5: ........................................ 34

VII. ABANDONMENT OF ISSUES – L.R. 16-4.5: ........................................ 34

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF AUTHORITIES

Page(s)

## Cases

*999 v. C.I.T. Corp.*, 776 F.2d 866 (9th Cir. 1985) ... 27

*Arutyun Darakchyan v. State Farm General Ins. Co.*, Case No. 2:25-cv-03880-CAS-AJRx, 2026 WL 2336385 (C.D. Cal. August 11, 2026) ... 31

*Bax v. Doctors Medical Center of Modesto, Inc.*, 393 F.Supp.3d 1000 (E.D. Cal. 2019) ... 17

*Behnke v. State Farm General Ins. Co.*, 196 Cal.App.4th 1443 (2011) ... 13

*Bosetti v. United States Life Ins. Co. in N.Y.*, 175 Cal.App.4th 1208 (2009) ... 29

*Brandt v. Superior Court*, 37 Cal.3d 813 (1985) ... 32

*Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal.App.4th 335 (2001) ... 29, 31

*Chu v. State Farm General Ins. Co.*, Case No. 2:25-cv-05942-SVW-MAA, 2026 WL 1045636 (C.D. Cal. March 18, 2026) ... 13, 28

*Crenshaw v. Mony Life Ins. Co.*, No. 02cv2108-LAB (RBB), 2004 WL 7094011 (S.D. Cal. Apr. 30, 2004) ... 30

*Cummings v. Fire Ins. Exchange*, 202 Cal.App.3d 1407 (1988) ... 23

*Duronslet v. County of Los Angeles*, 266 F.Supp.3d 1213 (C.D. Cal. 2017) ... 32

*Feldman v. Allstate Ins. Co.*, 822 F.3d 660 (9th Cir. 2003) ... 31

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Felman v. Allstate Ins. Co.*,
322 F.3d 660 (9th Cir. 2003) .......... 16, 23, 30, 31

*Globe Indem. Co. v. Superior Court*,
6 Cal.App.4th 725 (1992) .......... 30

*Guebara v. Allstate Ins. Co.*,
237 F.3d 987 (9th Cir. 2001) .......... 16

*Harner v. USAA General Indem. Co*.,
590 F.Supp.3d 1217 (S.D. Cal. 2022) .......... 33, 34

*In People v. Zarazua*,
85 Cal.App.5th 639 (2022) .......... 17, 24, 32

*Interiano v. Colonial Life and Accident Ins. Co*.,
445 (C.D. Cal. 2020) .......... 33

*Kerrigan v. Allstate Ins. Co.*,
543 F.Supp.3d 843 (C.D. Cal. June 10, 2021) .......... 29

*Keshish v. Allstate Ins. Co.*,
959 F.Supp.2d 1226 (C.D. Cal. 2013) .......... 32

*Love v. Fire Ins. Exchange*,
221 Cal.App.3d 1136 (1990) .......... 16

*Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of America*,
Case No. CV 12-09510 MMM (PLAx), 2013 WL 12139353 (C.D. Cal. November 29, 2013) .......... 30

*Madrigal v. Allstate Indem. Co.*,
No. CV 14-4242 SS, 2015 WL 12747906 (C.D. Cal. September 30, 2015) .......... 13

*Merchant v. Corizon Health, Inc.*,
993 F.3d 733 (9th Cir. 2021) .......... 34

*Mohn v. Catlin Ins. Co.*,
Case No. 5:21-cv-01014-FWS-KK, 2023 WL 4680794 (C.D. Cal. May 3, 2023) .......... 32

*Mudpie, Inc. v. Travelers Casualty Ins. Co. of America*,
15 F.4th 885 (9th Cir. 2021) .......... 13

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Oasis West Realty, LLC v. Goldman*,
51 Cal.4th 811 (2011) .......... 13

*Paulfrey v. Blue Chip Stamps*,
150 Cal.App.3d 187 (1983) .......... 29

*Quintrall v. Ocwen Loan Service, LLC*,
Case No. 3:18-cv-02765-BTM-AHG, 2019 WL 11771251 (S.D. Cal. September 30, 2019) .......... 32

*R&R Sails, Inc. v. Ins. Co. of Pennsylvania*,
673 F.3d 1240 (9th Cir. 2012) .......... 34

*Radical Investments Ltd. v. Good Vibrations Entertainment LLC*,
Case No. 2:22-cv-02752-SVW-AFM, 2023 WL 2372387 (C.D. Cal. February 10, 2023) .......... 13

*RFS Investments Co., LLC v. Travelers Property Casualty Company of America*,
Case No. LA CV17-09212 JAK (ASx), 2019 WL 1976470 (C.D. Cal. March 8, 2019) .......... 13

*Rice v. Allstate Ins. Co.*,
Case No. CV 10–122–M–DWM, 2012 WL 1831114 (D. Mont. May 18, 2012) .......... 29

*Thompson Pacific Construction, Inc. v. City of Sunnyvale*,
155 Cal.App.4th 525 (2007) .......... 13

*Waller v. Truck Ins. Exchange, Inc.*,
11 Cal.4th 1 (1995) .......... 15, 29

*Wilson v. 21st Century Ins. Co.*,
42 Cal.4th 713 (2007) .......... 23, 31

*Witt v. Property & Casualty Ins. Co. of Hartford*,
Case No. C16-5202-RBL, 2017 WL 237554 (W.D. Wash. January 19, 2017) .......... 29

**Statutes**

Cal. Civ. Code § 51 .......... 12, 17

Cal. Civ. Code § 51(f) .......... 17

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Cal. Civ. Code § 52 .......... 20
Cal. Civ. Code § 3294 .......... 10

**Court Rules**

C.D. Cal. Local Rule 16-2 .......... 33
C.D. Cal. Local Rule 16-4 .......... 10
C.D. Cal. Local Rule 16-4.1 .......... 12
C.D. Cal. Local Rule 16-4.1(a) .......... 12
C.D. Cal. Local Rule 16-4.1(b) .......... 13
C.D. Cal. Local Rule 16-4.1(c) .......... 18
C.D. Cal. Local Rule 16-4.1(d) .......... 20
C.D. Cal. Local Rule 16-4.1(e) .......... 21
C.D. Cal. Local Rule 16-4.1(f) .......... 24
C.D. Cal. Local Rule 16-4.1(g) .......... 26
C.D. Cal. Local Rule 16-4.1(h) .......... 26
C.D. Cal. Local Rule 16-4.1(I) .......... 28
C.D. Cal. Local Rule 16-4.3 .......... 33
C.D. Cal. Local Rule 16-4.4 .......... 33
C.D. Cal. Local Rule 16-4.5 .......... 34
C.D. Cal. Local Rule 38-1 .......... 33
C.D. Cal. Local Rule 38-2 .......... 27, 33
Fed. R. Civ. P. 26(a)(2)(d)(1) .......... 27
Fed. R. Civ. P. 36 .......... 27
Fed. R. Civ. P. 36(a)(3) .......... 27
Fed. R. Civ. P. 36(b) .......... 27

Fed. R. Civ. P. 36(b)(1) .......... 11

Fed. R. Civ. P. 37(a)(1) .......... 34

Fed. R. Civ. P. 38(b)(1) .......... 27

Fed. R. Civ. P. 38(d) .......... 27

Fed. R. Civ. P. 39(b) .......... 27

Fed. R. Civ. P. 42(b) .......... 33

Fed. R. Civ. P. 81(c) .......... 27

**Regulations**

Cal. Code Regs., tit. 10, § 2698.30 .......... 19, 31

**Other Authorities**

CACI No. 321 .......... 22

CACI No. 358 .......... 22

CACI No. 2300 .......... 15

CACI No. 2309 .......... 23

CACI No. 2331 .......... 16, 23

CACI No. 2332 .......... 17

CACI No. 3060 .......... 18

Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group) ¶ 6:255 (July 2026 Update) .......... 15

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# I. INTRODUCTION

Pursuant to the Court's Civil Trial Preparation Order dated June 11, 2026 [ECF Doc. 86] and Central District Local Rule 16-4, Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") hereby submits this Memorandum of Contentions of Fact and Law pertaining to the claims and defenses at issue in this first-party insurance coverage dispute with Pro Per Plaintiff Luna D'Sol ("Plaintiff"). Specifically, this dispute arises from an alleged burglary and vandalism incident on June 3, 2024 ("Incident" or "Loss") that allegedly occurred at the Plaintiff's residence 2275 E. Belding Drive, Palm Springs, CA 92262 ("Property") and Plaintiff's resulting insurance claim (Claim No. 7007678692-1) ("Claim") under Farmers Direct Homeowner's Policy No. 3872340940 ("Policy"). Farmers Direct issued the Policy to named insured "Julio R. Ravada" (*i.e.*, the Plaintiff who is now known as "Luna D'Sol"/she/her and not "Julio R. Ravada"/he/him which is the name that still appears on the Policy).

Notwithstanding the suspicious nature of the Claim, Farmers Direct paid Plaintiff a total of $26,986 for Loss-related damage pursuant to the terms and conditions of the Policy – *i.e.*, more than $9,000 to repair the Dwelling (Coverage A) due to alleged "vandalism" and more than $17,000 to replace her Personal Property (Coverage C) as result of the alleged "theft" – however, Plaintiff is seeking "not less than $113,000" in additional damages as result of the Claim, among other damages.[1] *See e.g.,* First Amended Complaint ("FAC"), ¶ 37 attached to Farmers Direct's Request for Judicial Notice filed on January 5, 2026 in support of its Opposition to

[1] Specifically, Plaintiff seeks additional damages and/or alleged benefits purportedly due under the Policy, including for "Ordinance or Law increased costs," Additional Living Expense ("ALE"), an "Order" for "restoration and payment for items previously acknowledged and later reduced to $0.00—including Painting (Bercier) $8,200 and "No Face" memorabilia $331.55—for a total shortfall of $8,531.55," an order requiring "payment of the licensed contractor's scope reasonably flowing from covered replacements and tear-out-presently estimated at $87,400-$93,400," consequential damages, "Bad-Faith Tort Damages," Unruh Act penalties, "Punitive and Exemplary Damages," under Civil Code § 3294, "Brandt Attorney' Fees," Declaratory Relief, "Pre- and Post-Judgment Interest," "Cost of Suit," among other things. FAC, Prayer [ECF Doc. 23-1, at pp. 176-178]

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Plaintiff's Initial Motion to Remand ("Defendant's RJN") at Exhibit F thereto [ECF Doc. 23-1, at p. 169].

As established by Farmers Direct's Motion for Summary Judgment Or In The Alternative, Partial Summary Judgment [ECF Docs. 117, 119, 120] ("MSJ") currently pending before the Court, Plaintiff has no competent evidence to support her contention that Farmers Direct owes any further contractual obligation to her under the Policy as result of the Incident.[2] Plaintiff has not – because she cannot – produce any credible evidentiary support for her bald assertions that additional coverage benefits are owed to her for the Claim. Farmers Direct has already compensated Plaintiff for the reasonable and necessary expenses associated with restoring the Property to its pre-Incident condition and Farmers Direct also paid Plaintiff for the reasonable cost to replace all allegedly stolen Personal Property that is the subject of the Claim. Additionally, there is no dispute that Plaintiff did not make a claim for any Additional Living Expenses ("ALE") and her Policy "does not include Building Code Upgrade Coverage." [ECF Doc. 23-1, at p. 192].

Based on the record evidence, Plaintiff cannot establish that Farmers Direct acted unreasonably or in bad faith in its handling of the Claim. Plaintiff has no credible evidence of unreasonable conduct by Farmers Direct and she failed to designate any expert witnesses to refute or rebut Farmers Direct's expert testimony that Farmers Direct's claims handling conduct was reasonable and compliant with California insurance regulations and industry standards. Moreover, even if there was evidence to support Plaintiff's position regarding alleged delays and/or related to the scope of reasonable and necessary repairs at the Property (which Farmers Direct

---

[2] Specifically, Plaintiff failed to respond to Farmers Direct's Requests for Admissions served on July 2, 2026 and her responses are now deemed admitted pursuant to Federal Rule of Civil Procedure 36(b)(1) and Plaintiff also failed to serve her Expert Witness Disclosures on July 15, 2026 and failed to designate any rebuttal experts thereby leaving the opinions of Farmers Direct's retained and non-retained experts undisputed and unrebutted. *See* Declaration of Kelly Fitzgerald Canby ("Canby Decl."), ¶¶ 13-19, Exhibits 10-12, 14, 24 [ECF Doc. 19-6] and Declaration of Elisa Martinez ("Martinez Decl."), ¶¶ 2-9, Exhibits 1-4 [ECF Doc. 19-7]; *see also* Farmers Direct's Motion In Limine Nos. 1 and 3 [ECF Docs. 122, 124].

denies), the genuine dispute doctrine bars Plaintiff's claim for bad faith against Farmers Direct.

Accordingly, given the absence of evidence of any unpaid contractual benefits allegedly owed for the Loss or unreasonable claims handling conduct, Plaintiff cannot establish critical essential elements of her two causes of action against Farmers Direct. As such, based on the admissible evidentiary record, Plaintiff will not be able to meet her burden of proof at trial on her two causes of action against Farmers Direct: First Cause of Action (Breach of Contract) and the Second Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealing).

Although not pled as a separate standalone cause of action, Plaintiff also cannot meet her burden of proof at trial for any claim for "unlawful discrimination" for alleged violations of the Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.) ("Unruh Act"), including for alleged "[i]dentity-based coercion (Unruh)" based on "misgendering." *See* FAC, ¶¶ 17, 30 and Prayer for Relief ¶¶ 7, 13 [ECF Doc. 23-1, at pp. 157-158, 164-165, 178-179]. Plaintiff has failed to produce any competent evidence that Farmers Direct engaged in any willful, affirmative misconduct with the specific intent to discriminate against Plaintiff based on her gender, gender identity and/or transgender status.

## II. <u>CLAIMS AND DEFENSES OF THE PARTIES/L.R. 16-4.1:</u>

### A. <u>Summary Of Plaintiff's Claims/L.R. 16-4.1(a):</u>

- **<u>CLAIM 1</u>**: Farmers Directed its contract with Plaintiff
- **<u>CLAIM 2</u>**: Farmers Direct breached the implied covenant of good faith and fair dealing.
- **<u>CLAIM 3</u>**: Farmers Direct intentionally discriminated against Plaintiff in violation of the Unruh Act.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**B. Elements Required To Establish Plaintiff's Claims/L.R. 16-4.1(b):**

**1. Elements Required To Establish Plaintiff's Claim For Breach of Contract**

Under California law the "elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011); *see also Radical Investments Ltd. v. Good Vibrations Entertainment LLC*, Case No. 2:22-cv-02752-SVW-AFM, 2023 WL 2372387 *10 (C.D. Cal. February 10, 2023); *RFS Investments Co., LLC v. Travelers Property Casualty Company of America*, Case No. LA CV17-09212 JAK (ASx), 2019 WL 1976470 *5 (C.D. Cal. March 8, 2019).

Plaintiff bears the affirmative burden of proof to establish that the Claim falls with within the basic scope of coverage of the Policy and must also establish there was a "breach" meaning she "must demonstrate an entitlement to a benefit that an insurer refused to pay." *Chu v. State Farm General Ins. Co.*, Case No. 2:25-cv-05942-SVW-MAA, 2026 WL 1045636 *2 (C.D. Cal. March 18, 2026), citing *Behnke v. State Farm General Ins. Co.*, 196 Cal.App.4th 1443, 1468 (2011) and *Mudpie, Inc. v. Travelers Casualty Ins. Co. of America*, 15 F.4th 885, 890 (9th Cir. 2021), quoting *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188-1194 (1988). Accordingly, to prevail on a claim for breach of contract, it is Plaintiff's burden to establish that she has suffered unreimbursed contract damages from a covered cause of loss in the first instance. *Madrigal v. Allstate Indem. Co.,* No. CV 14-4242 SS, 2015 WL 12747906 *15 (C.D. Cal. September 30, 2015); *Thompson Pacific Construction, Inc. v. City of Sunnyvale*, 155 Cal.App.4th 525, 541 (2007).

Assuming that Plaintiff can establish that the Incident was a covered loss under the Policy (which is questionable given the suspicious nature of the Claim) and subject to the all other terms, conditions and limitations of the Policy, Plaintiff is entitled to recover the following under the Policy:

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

- **For the Dwelling (Coverage A) portion of the Claim**: Plaintiff is entitled to recover the "actual cash value at the time of the loss for the damaged property," meaning "the amount required to repair or replace the damaged property with property of like kind and quality," plus additional amounts if the property is actually repaired or replaced subject to certain conditions.[3]
- **For the Contents/Personal Property (Coverage C) portion of the Claim**: Subject to the additional requirement that Plaintiff also establish that the Loss was caused by a broad named peril such as "Vandalism" or "Theft," Plaintiff is entitled to recover, subject to the deductible, the "actual cash value at the time of the loss for the damaged property" (i.e., the lost Contents) meaning "the amount required to repair or replace the damaged property with property of like kind and quality." *See* Policy, PROPERTY LOSS SETTLEMENT Endorsement (Form HP4520 0113) at Section 1.2.A [ECF Doc. 23-1, at pp. 215-216]. Plaintiff would be entitled to "the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation" only if, among other requirements, the Plaintiff made a "further claim within 180 days after the date of actual cash value payment for any additional payment on a replacement costs basis" if Plaintiff actually repaired, restored or replaced "the damaged or stolen property." *Id.*
- **For "Additional Living Expenses" ("ALE") (Loss of Use)** (i.e., benefits that are now sought by Plaintiff, but were not part of her Claim initially): The Policy provides coverage for "Additional Living Expenses" when "a covered property loss makes that part of the residence premises where you reside **not fit to live in**,"

[3] If Plaintiff actually repaired or replaced the damaged or destroyed property, Plaintiff "may make further claim for any additional payments for Replacement Cost Settlement provided" that, among other things, Plaintiff notifies Farmers Direct "within 180 days after the date of the actual cash value payment" of the "decision to repair or replace the damaged or destroyed dwelling," notifies Farmers Direct "within 30 days after the repair or replacement has been completed," and "the date of completion is within one year from the date of actual cash value payment. *See* Policy, PROPERTY LOSS SETTLEMENT Endorsement (Form HP4520 0113) at Section 1.1.A [ECF Doc. 23-1, at p. 214].

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

and applies only when the Property is so rendered uninhabitable.[4] *See* Policy, CONTENTS AND ADDITIONAL COVERAGES (Form HP2000 0205) at Section 1.1.A, [ECF Doc. 23-1, at p. 202 (emphasis added)].

Specifically, to prevail on her cause of action for breach of contract, Plaintiff must prove all of the following as to each of the various components of her Claim:

1. That Plaintiff suffered a loss which was covered under the insurance policy issued by Farmers Direct;
2. That Farmers Direct was notified of the loss as required by the insurance policy; and
3. The amount of the covered loss that Farmers Direct failed to pay.

*See* California Civil Jury Instructions ("CACI") 2300, "Breach of Contractual Duty to Pay a Covered Claim–Essential Factual Elements," (2026 Ed.) (as modified).

**2. <u>Elements Required To Establish Plaintiff's Claim for Breach Of The Implied Covenant Of Good Faith and Fair Dealing:</u>**

The gravamen of Plaintiff's bad faith claim is that Farmers Direct acted unreasonably in connection with the investigation and handling of the Claim resulting in unnecessary delays and/or unreasonable failure to pay additional benefits due under the Policy in connection with the Incident. Under California law, a claim for breach of the implied covenant of good faith and fair dealing (*i.e.* "bad faith") can only be maintained where there has been a breach of a contractual obligation owed by the insurer. *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36 (1995). "[T]o

[4] In such the case where the Property is rendered uninhabitable, a claim may be made for "the reasonable increase in living expenses necessary to maintain your standard of living" but payment under the Policy "will not exceed the smallest" of (a) "the shortest time to either repair or replace the residence premises"; (b) "the shortest time for your household to settle elsewhere, if you permanently relocate"; (c) "the limit of liability for Loss of Use as specified in the Policy's Declarations." *See* Policy, CONTENTS AND ADDITIONAL COVERAGES (Form HP2000 0205) at Section 1.1.A, [ECF Doc. 23-1, at p. 202]. "Residential property insurance policies commonly provide coverage for the insureds' additional living expenses (e.g., food, lodging) **while the dwelling is uninhabitable as the result of a covered peril**." Rutter Group, California Practice Guide: Insurance Litigation, § 6:255 (July 2026 Update) (emphasis added).

establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001), *citing Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1151 (1990); *see also Felman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003). Specifically, the elements to each permutation of Plaintiff's bad faith claim are as follows:

***a. Unreasonable Delay Or Failure To Pay Benefits***

To prevail on her bad faith claim related to unreasonable delay and/or failure to pay benefits, Plaintiff must prove all of the following:

1. That Plaintiff suffered a loss covered under the insurance policy Issued by Farmers Direct;
2. That Farmers Direct was notified of the loss;
3. That Farmers unreasonably delayed and/or failed to pay all insurance policy benefits owed for the Loss;
4. That Plaintiff was harmed; and
5. That Farmers Direct's delay and/or failure to pay policy benefits was a substantial factor in causing Plaintiff's harm.

To act or fail to act "unreasonably" means that the insurer had no proper cause for its conduct. In determining whether Farmers Direct acted unreasonably, the only information to be considered is the information that Farmers Direct knew or reasonably should have known at the time when it allegedly delayed or failed to pay policy benefits. *See* CACI 2331, "Breach of the Implied Obligation of Good Faith and Fair Dealing—Failure or Delay in Payment (First Party)—Essential Factual Elements," (2026 Ed.) (as modified).

***b. Unreasonable Investigation***

Plaintiff also contends that Defendant acted unreasonably by failing to conduct a proper investigation of the Claim, which requires her to prove all of the following:



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1. That Plaintiff suffered a loss covered under the insurance policy issued by Farmers Direct;
2. That Plaintiff properly presented a claim to Farmers Direct to be compensated for the loss under the insurance policy;
3. That Farmers Direct failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Plaintiff's claim;
4. That Plaintiff was harmed; and
5. That Farmers Direct's failure to properly investigate the claim was a substantial factor in causing Plaintiff's harm.

*See* CACI 2332, "Bad Faith (First Party)—Failure to Properly Investigate Claim—Essential Factual Elements," (2026 Ed.) (as modified).

**3. <u>The Required Elements To Establish Plaintiff's Claim For Intentional Discrimination In Violation Of The Unruh Act</u>**

"To prove intentional discrimination, a plaintiff must put forth evidence of "willful, affirmative misconduct on the part of those who violate the [Unruh] Act." *Bax v. Doctors Medical Center of Modesto, Inc.,* 393 F.Supp.3d 1000, 1011 (E.D. Cal. 2019). Plaintiff alleges "unlawful discrimination under the Unruh Civil Rights Act (Civil Code §§ 51, 51(f))" and also seeks damages for alleged "misgendering" (as Plaintiff is now known as "Luna D'Sol"/she/her and not "Julio R. Ravada"/he/him which is the name that appears on the Policy). FAC, ¶¶ 17, 30, Prayer [ECF Doc. 23-1, at pp. 157-158, 164-165 178]. "Misgendering is 'the assignment of a gender with which a party does not identify, through the misuse of gendered pronouns, titles, names, and honorifics.'" *In People v. Zarazua,* 85 Cal. App. 5th 639, 642, n.1 (2022) (citations omitted). To establish this claim, Plaintiff must prove all of the following:

1. That Farmers Direct denied, discriminated or made a distinction that denied Plaintiff full and equal accommodations, advantages, privileges or services to Plaintiff;
2. That a substantial motivating reason for Farmers Direct's conduct

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

was Plaintiff's gender, change of change, transgender status, participation in gender confirmation treatment or some other protected characteristic or combination of characteristics;

3. That Plaintiff was harmed; and

4. That Farmers Direct's conduct was a substantial factor in causing Plaintiff's harm.

*See* CACI 3060, "Unruh Civil Rights Act—Essential Factual Elements (Civil Code §§ 51, 52)," (2026 Ed.) (as modified).

**C. <u>Key Evidence In Opposition To Plaintiff's Claims/L.R. 16-4.1(c):</u>**

**1. <u>Evidence Opposing Plaintiff's Breach Of Contract Claim:</u>**

Farmers Direct will present evidence at trial that the company has already paid Plaintiff almost $27,000 on the Claim and no further amounts are due under the Policy, including: (1) payments to Plaintiff totaling more than $9,000 to repair any Incident-related damage to the Dwelling (Coverage A) which is beyond the reasonable cost to restore the Dwelling to its pre-Incident condition; (2) payments to Plaintiff totaling more than $17,000 to replace her Personal Property (Coverage C) which exceeds the reasonable cost to replace the Contents allegedly stolen during the Incident; (3) these payments included more than $1,800 in recovered depreciation on Personal Property (Coverage C) lost Contents that Plaintiff allegedly replaced; (4) Plaintiff's judicial admission that she is "not attempting to recover any additional depreciation under the Policy, as I have already successfully recovered that amount" (*see* FAC, at Exhibit P thereto [ECF Doc. 23-1, at p. 277]); (5) the Dwelling was not rendered uninhabitable as result of the Incident; (6) Plaintiff admittedly did not make any repairs to any of the alleged damage to her Property before she decided to list her residence for sale at the price of $1.6 million after the Incident occurred and that listing agreement expired on or about September 27, 2024 which is the date of her Examination Under Oath; (7) Plaintiff also decided to remain in her residence and not go to a hotel after the Incident; and (8) Plaintiff did not submit any documentation

to support a claim for Additional Living Expenses ("ALE") under the Policy. Plaintiff also failed to timely serve any expert witness disclosures (nor designate any rebuttal experts) which necessarily leaves the opinions of Farmers Direct's retained and non-retained experts undisputed and unrebutted.

**2. Evidence Opposing Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing:**

Even if Plaintiff were to establish some type of breach of the Policy (which she cannot due to her lack of any competent evidence), Plaintiff also cannot establish that Farmers Direct acted unreasonably in connection with Farmers Direct's investigation and handling of the Loss. For example, there were numerous "red flags" on this Claim which make it fall squarely within the statutory definition of "suspected insurance fraud" as will be supported by expert testimony from Farmers Direct's claims handling standard of care expert Paul Hamilton and numerous other supporting facts which are largely undisputed and/or already admitted by Plaintiff.[5] *See* Cal. Code Regs. Tit. 10, section 2698.30 – Definition (q). Accordingly, Farmers Direct certainly had reasonable grounds to investigate this suspicious and inflated

[5] For example, Plaintiff admitted during her Examination Under Oath ("EUO') that she had made other recent insurance claims on this same Property (including prior theft claims in July of 2023 and January 2024, and another recent water loss claim as well). Plaintiff's initial account of the circumstances of the alleged burglary and vandalism incident were inconsistent with the facts as observed during the initial inspection of the Property (e.g., Plaintiff reported her window was shattered but there was no broken glass at all, only a small bent area on the external window frame and Plaintiff testified during her EUO that the window still could be opened and closed and could lock and unlock) which also raised reasonable questions whether this was in fact a point of entry by any alleged "intruders" at all. The water observed on the floor of Plaintiff's home at various locations including near the dislodged dishwasher and around the toilet were very suspicious as there were no apparent leaking water source that could have resulted in these odd puddles based on the inspection and moisture readings performed by Senior Fields Claims Representative Donnie Means on June 6, 2024 who has an expertise in water damage mitigation and is also designated as a non-retained expert. Plaintiff also later testified during her EUO that she was the one that dislodged her own dishwasher rather than any "intruder." The claimed value of Plaintiff's Claim continued to substantially escalate over time (*e.g.*, from $18,000 than doubling to almost $40,000 once she finally provided a signed and completed proof of loss form in August of 2024 and again later in May of 2025 she submitted a supplemental claim for a for approximately $90,000 for a "Partial Home Remodel" despite the minimal observed damage following the Incident).



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Claim as will be confirmed by Paul Hamilton's testimony that Farmers Direct's investigation complied with the industry standard of care and was handled reasonably as result of these areas of fair suspicion. Plaintiff cannot refute this anticipated expert testimony or the admitted underlying facts.

**3. Evidence Opposing Plaintiff's Unruh Act Claim:**

Although Plaintiff's deemed admissions to RFA Nos. 7-14, 18-26 effectively bar this claim, Plaintiff still has no evidence that she was intentionally discriminated against by anyone handling the Claim on behalf of Farmers Direct. The first time that Plaintiff disclosed her "gender confirmation treatment" to Farmers Direct was on January 28, 2025 and the first time Plaintiff ever mentioned the name "Luna" to Farmers Direct was February 7, 2025. Farmers Direct made substantial additional payments to Plaintiff AFTER those alleged disclosures were made. The bulk of Plaintiff's Unruh Act claim is based on alleged "misgendering," but Plaintiff never sought to change or remove the name "Julio R. Ravada" as the listed named insured on the Policy and Plaintiff also continued to repeatedly use the names "Julio," "Julio R," or "Julio R. Ravada" to refer to herself and/or sign correspondence directed to Farmers Direct even well after she disclosed any change of gender identity. Nor is there any credible evidence that Plaintiff's gender identification and/or sexual orientation had any impact on Farmers Direct's decision to acknowledge coverage for the Claim.

**D. Summary Of Defendant's Affirmative Defenses/L.R. 16-4.1(d)::**

In addition to Farmers Direct's defenses relevant to Plaintiff's failures of proof, Farmers Direct will present evidence on the following affirmative defenses:[6]

[6] Farmers Direct expressly does not waive or abandon its affirmative defenses relevant to Plaintiff's burden of proof on her causes of action against Farmers Direct. As set forth in its Amended Answer to Plaintiff's First Amended Complaint [ECF Doc. 43], Farmers Direct intends to assert the following additional defenses to Plaintiff's contract, tort and/or statutory discrimination claims: First Affirmative Defense – Failure To State A Cause of Action; Second Affirmative Defense – Proximate Cause; Third Affirmative Defense – Superseding/Intervening Cause; Fifth Affirmative Defense – Contributory/Comparative Fault; Seventh Affirmative Defense – Acts or Omissions of Others; Eight Affirmative Defense – Unclean Hands;



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

- **Fourth Affirmative Defense - Breach Of Policy Conditions Or Other Duties:** Plaintiff cannot seek damages in connection with any alleged breach of contract to the extent she failed to perform her obligations and comply with all conditions set forth in the Policy.
- **Sixth Affirmative Defense - Failure To Mitigate:** Plaintiff failed to exercise reasonable care to mitigate, minimize, or avoid alleged damages.
- **Fourteenth Affirmative Defense - Material Misrepresentation / Fraudulent Documentation:** Plaintiff's causes of action are barred, in whole or in part, to the extent that she made any material misrepresentations and/or submitted any fraudulent documentation to Farmers Direct with regard to the Claim and/or pertaining to her application for the Policy.
- **Sixteenth Affirmative Defense - Genuine Dispute Doctrine:** Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and claim for bad faith denial of insurance coverage is barred, in whole or in part, by the genuine dispute doctrine.
- **Twenty-Second Affirmative Defense - Lack of Discriminatory Intent:** Any claims or damages sought under the Unruh Civil Rights Act are barred, in whole or in part, to the extent that those claims and/or sought damages are based on alleged actions or conduct that lacked any discriminatory intent as to Plaintiff.

**E. <u>Elements To Establish Affirmative Defenses/L.R. 16-4.1(e):</u>**

**1. <u>Plaintiff's Breach Of Policy Conditions Or Duties</u>**

Farmers Direct has "no obligation to provide coverage" under the Policy if Plaintiff fails to comply with her duty to "[p]rotect the property from further damage,

---

Ninth Affirmative Defense – Laches; Tenth Affirmative Defense – Waiver and Estoppel; Twelfth Affirmative Defense – Standing/Insurable Interest; Thirteenth Affirmative Defense – Terms of the Policy Preclude Coverage; Fifteenth Affirmative Defense – Reasonable Conduct; Seventeenth Affirmative Defense – Punitive Damages; Eighteenth Affirmative Defense – Punitive Damages; Nineteenth Affirmative Defense – Punitive Damages; Twentieth Affirmative Defense – Punitive Damages; Twenty-First Affirmative Defense – Mistake; Twenty-Second Affirmative Defense – Civil Code Section 52 Remedies Unavailable; Twenty-Third Affirmative Defenses – Fortuitous Loss Doctrine. [ECF Doc. 43].

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures." Policy, PROPERTY CONDITIONS, Section 1.2.B [ECF Doc. 23-1, at p. 211]. Farmers Direct contends that Plaintiff's failure to comply with this Policy condition bars coverage for any alleged water damages reported by Plaintiff in May and June of 2025. Accordingly, Farmers Direct must prove that the parties agreed to this condition. If Farmers Direct proves this, then the Plaintiff must prove that she complied Property Condition 2.B. If Plaintiff does not prove that she complied with condition 2.B, then Farmers Direct is not required to cover any such resulting damage under the Policy. *See* CACI 321, "Existence of Condition Precedent Disputed," (2026 Ed.) (as modified).

**2. Failure To Mitigate**

Plaintiff is not entitled to recover damages for harm she could have avoided with reasonable efforts or expenditures. The reasonableness of Plaintiff's efforts should be considered in light of the circumstances facing Plaintiff at the time, including her ability to make the efforts or expenditures without undue risk or hardship. *See* CACI 358, "Mitigation of Damages," (2026 Ed.) (as modified).

**3. Misrepresentation / Fraudulent Documentation**

To establish that Plaintiff is not entitled to recover benefits under the Policy because she made a false claim, Farmers Direct must prove all of the following: (1) that Plaintiff made a claim for insurance benefits under the Policy; (2) that Plaintiff made false representations to Farmers Direct regarding her claim; (3) that Plaintiff's representation was not true; (4) that Plaintiff knew her representation was not true; (5) that Plaintiff intended that Farmers Direct rely on this representation in payment Plaintiff's claim for insurance benefits; and (6) that the representation that Plaintiff made that she had actually incurred replacement costs if true, would affect a reasonable insurance company's investigation and/or decision to pay a claim for

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

insurance benefits.[7] *See* CACI 2309, "Termination of Insurance Policy for Fraudulent Claim," (2026 Ed.); *see also generally Cummings v. Fire Ins. Exchange*, 202 Cal.App.3d 1407, 1417-1418 (1988) (the insured "plaintiff's intent to deceive was established as a matter of law" in case where insured presented false information in support of claim for vandalism under homeowner's policy).

**4. <u>Genuine Dispute Doctrine</u>**

If there was a genuine issue as to Farmers Direct's liability under the Policy for the claim asserted by Plaintiff, there can be no bad-faith liability imposed on Farmers Direct for advancing its side of that dispute. This is known as the "genuine dispute" doctrine. The genuine dispute doctrine is subsumed within the test of reasonableness or proper cause of element 3 to the claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. *See* CACI 2331; *see also Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (an insurer does not breach the implied covenant of good faith and fair dealing if there is a "genuine dispute" concerning the liability insurer's legal obligations); *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 724, fn. 7 (2007). Farmers Direct will present evidence at trial that establishes that, even if Plaintiff's claim was delayed there was at minimum a "genuine dispute" given suspicious aspects of her burglary and vandalism Claim. Moreover, even if Plaintiff were able to establish that Farmers Direct undervalued the Claim such that additional amounts are allegedly due for covered Loss-related damage to the Property (which Farmers Direct disputes), the dispute was genuine and cannot give rise to a bad faith claim.

[7] Specifically, the Policy includes the following General Condition pertaining to "Concealment or Fraud": "If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy . . . for loss resulting from any peril other than fire, for any person defined as **you**." Policy, GENERAL CONDITIONS (Form HP7000 0902), as amended by the CALIFORNIA AMENDATORY ENDORSEMENT (Form HA01CA 0108), at ¶ 4.A.2 "Concealment or Fraud," [ECF Doc. 23-1, at p. 234].

**5. Lack of Discriminatory Intent**

Plaintiff's Unruh Act claim is barred, in whole or in part, to the extent that those claims and/or sought damages are based alleged actions or conduct that lacked any discriminatory intent as to Plaintiff, specifically including as to any alleged misgendering of Plaintiff (e.g., alleged use of nonpreferred pronouns or names was unintentional and/or the result of a mistake). *In People v. Zarazua*, 85 Cal. App. 5th 639, 644-646 (2022) (in response to claim of prosecutorial misconduct for repeatedly misgendering a criminal defendant "the prosecutor argued the misgendering was accidental . . . he was 'trying to be mindful' of Zarazua's gender, and noted defendant 'went as Ms. Zarazua' at the time of the incident" and trial court ruled there was no intentional misconduct by the prosecutor).

**F. Key Evidence In Support Of Affirmative Defenses/L.R. 16-4.1(f):**

**1. Plaintiff's Breach of Policy Conditions Or Duties**

Regarding Farmers Direct's Affirmative Defense that Plaintiff breached a condition and/or a legal duty owed under the Policy, the evidence that Farmers Direct will offer into evidence at trial includes, but is not limited to, the following: (1) the Policy; (2) the Claim File; (3) testimony from Farmers Direct's property loss valuation expert David Corona; (4) testimony from Farmers Direct's claims handling expert Paul Hamilton; (5) testimony from its non-retained expert Donnie Means; (6) testimony from non-retained expert Michael Saskor related to the reasonable cost to replace Personal Property and the false and/or materially misleading replacement documentation presented by Plaintiff for sought payments for recoverable depreciation on the Claim; (7) testimony from non-retained expert Bryce Spradling; (8) testimony from Farmers Direct's representatives regarding investigation of the Claim and payment of the Loss to Plaintiff; and (9) testimony from Plaintiff.

**2. Failure To Mitigate**

With regard to the alleged water damages that were first reported in May of 2025 that allegedly had been ongoing since the Incident on June 3, 2024, the evidence

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

to be offered in the same as outlined in Section F.1 above as well as inspection photos.

**3. Misrepresentation / Fraudulent Documentation**

In addition to the evidence listed in Section F.1 above, Michael Saskor and/or Bryce Spradling and others will establish through testimony and documents that Plaintiff knowingly submitted false and/or materially misleading receipts for alleged replacement items (including but not limited to a Dyson Vacuum and a "Brilliant" audio control component) to Farmers Direct to obtain reimbursement for recoverable deprecation under the Policy and that Plaintiff had already cancelled those purchases and obtained refunds before submitting those receipts to Farmers Direct.[8]

**4. Genuine Dispute Doctrine**

Farmers Direct will present the following evidence at trial that establishes that, even if Plaintiff were able to establish that Farmers Direct undervalued the Claim such that additional amounts are due for covered Loss-related damage to the Property (which Farmers Direct disputes), the dispute was genuine and cannot give rise to a bad faith claim; (1) the Policy; (2) the Claim File; (3) testimony from Farmers Direct's property loss valuation expert David Corona; (4) testimony from Farmers Direct's claims handling expert Paul Hamilton; (5) testimony from non-retained expert Donnie Means;  (6) testimony from non-retained expert Michael Saskor; (7) testimony from non-retained expert Bryce Spradling; (8) testimony from Farmers Direct's representatives regarding investigation of the Claim and payment of the Loss to Plaintiff; (9) the Progressive Home Remodeling "Partial Home Remodel" Estimate dated May 19, 2025 [FD003250-FD003255]; (10) testimony from Plaintiff.

---

[8] Additional supporting documents to be introduced as evidence at trial include the Dyson Receipt for Order No. 1651528779 in the amount of $819,26 and Brilliant Receipt for Order 165826 in the amount of $1,056.83 (both submitted by Plaintiff to Farmers Direct on November 14, 2026), verification records from Dyson's Digital Assistant that the Dyson order was cancelled on November 12, 2024 and verification from "shopify.com" that Plaintiff cancelled the order and obtained a refund on November 13, 2026 [FD003680-FD003682, FD003675-FD003676, FD005581-FD005582, FD005583-FD005584].

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**5. Lack of Discriminatory Intent**

Farmers Direct intends to offer the following evidence in support of this affirmative defense: (1) the Policy issued to named insured "Julio R. Ravada"; (2) the Claim File; (3) testimony from Bryce Spradling and/or other representatives of Farmers Direct regarding Plaintiff's continued use of the name "Julio," "Julio R." and/or "Julio Ravada" after January 28, 2025 and that Plaintiff never asked for the listed name of the named insured on the Policy (i.e., "Julio R. Ravada") to be changed on the Policy; (4) testimony from Farmers Direct's claims handling expert Paul Hamilton regarding the continued fair and reasonable handling on the Claim even after Plaintiff's gender transition disclosure; (5) testimony from Donnie Means regarding his lack of awareness of Plaintiff's gender transition at the time of the inspection of the Property and continued fair treatment to Plaintiff thereafter; (6) testimony from Michael Saskor regarding his lack of awareness and/or lack of material concern regarding Plaintiff's gender transition and/or delayed receipt of Plaintiff's January 28, 2026 "FAX" sent to "farmers insurance"; (7) the 18 page "FAX" to "farmers insurance" from "julio ravada" dated January 28, 2025 [FD003889-FD003906]; (8) the 9 page "FAX" to "farmers insurance" from Plaintiff dated February 7, 2025 [FD001669-FD001677].

**G. Similar Statements For All Third Parties/L.R. 16-4.1(g):**

Not Applicable.

**H. Identification Of Anticipated Evidentiary Issues/L.R. 16-4.1(h):**

In addition to Farmers Direct's pending Motion for Terminating Sanctions [ECF Doc. 118, 121] ("MTS") due to Plaintiff's failure to participate in discovery, Farmers Direct has also filed the following Motions In Limine:

**1. MIL No. 1 [ECF Doc. 122]: Exclusion Of Evidence To Rebut Deemed Admissions:**

Plaintiff should be precluded from presenting any evidence or argument at trial to rebut any facts that Plaintiff is now deemed to have admitted as true pursuant to

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

the self-executing sanctions of Rule 36(a)(3) and Rule 36(b) of the Federal Rule of Civil Procedure imposed on Plaintiff as result of her failure to respond to Farmers Direct's Requests For Admissions (Set One) ("RFAs").[9] RFA Request Nos. 1-90 are all now deemed admitted per Rule 36 and "conclusively established." *See* Fed. R. Civ. Proc. 36, Advisory Committee Notes, 1970 Amendment. "Evidence inconsistent with a Rule 36 admission is properly excluded." *999 v. C.I.T. Corp*., 776 F.2d 866, 868-870 (9th Cir. 1985).

**2. <u>MIL No. 2 [ECF Doc. 123]: Exclusion Of Evidence Presentation To Jury:</u>**

Farmers Direct seeks an order excluding Plaintiff from presenting any evidence, testimony or argument to a jury at all -- which is a right she has now waived -- due to the untimely filing of her Demand for Jury Trial and/or her failure to oppose Farmers Direct's Motion To Strike The Untimely Demand for Jury Trial And Defendant's Request For Bench Trial [ECF Doc. 90] ("Motion To Strike And Request For Bench Trial"). *See e.g.,* Fed. R. Civ. Proc. 38(b)(1), 38(d), 81(c) 39(b) and Local Rule 38-2 [ECF Docs. 1, 37, 49, 90, 94]. Farmers Direct seeks a bench trial if any of Plaintiff claims survive the MSJ and/or MTS.

**3. <u>MIL No. 3 [ECF Doc. 124]: Exclusion Of Testimony From Undisclosed Experts, Undisclosed Witnesses / Exclusion Of Lay Opinion Testimony:</u>**

Plaintiff failed to serve her Expert Witness Disclosures by July 15, 2025 as required by Rule 26(a)(2)(d)(1) (*i.e*., 90 days before trial the October 13, 2026 trial date) and she also failed to designate any rebuttal experts. Accordingly, Farmers Direct seeks an order to exclude Plaintiff from presenting any testimony from any

[9] The RFAs were served on July 2, 2026 and her responses were due by August 3, 2026, but Plaintiff has failed to provide any responses to the RFAs at all. Plaintiff made an affirmative decision to boycott all discovery in the case. For example, on May 1, 2026 Plaintiff stated: "**I am not substantively engaging with discovery because jurisdiction is unresolved**." [ECF Doc. 121-1, at p. 35].

undisclosed experts witnesses and/or any other undisclosed witnesses.[10] Farmers Direct also seeks to exclude Plaintiff from presenting any lay opinion testimony regarding the following topics: (1) policy interpretation issues: (2) claims handling conduct pertaining to the industry standard of care; (3) valuation and scope of loss-related damage and reasonable costs of repairs in connection with mitigation and repair work performed at the Property (also including for alleged loss-related water damage and/or purported cause thereof); (4) reasonable replacement costs of certain Personal Property specialty items, such as allegedly stolen Ivey and Luke painting.

**4. <u>MIL No. 4 [ECF Doc. 125]: Exclusion Punitive Damage Evidence / Bifurcation:</u>**

Farmers Direct's Motion In Limine No. 4 seeks and order precluding Plaintiff from presenting any evidence in support of her punitive damage and/or treble damage claims as result of her deemed admissions to RFA No. 18 (lack of evidence of unlawful discrimination under Unruh Civil Rights Act), RFA No. 74 (lack of evidence of oppression, fraud or malice) and/or RFA No. 75 (lack of evidence to support an award of punitive/exemplary damages). If Plaintiff is permitted to proceed with such claims to a jury, Farmers Direct requests the Court to issue an order precluding evidence, argument or reference to Farmers Direct' financial condition. As explained in Section IV below, Farmers Direct also seeks bifurcation.

## III. <u>ISSUES OF LAW / L.R. 16-4.1(I):</u>

### A. <u>Breach of Contract and Bad Faith</u>

Plaintiff must establish the Claim falls with within the basic scope of coverage of the Policy and that there was a "breach" (i.e., meaning she "must demonstrate an entitlement to a benefit that an insurer refused to pay"). *See e.g., Chu, supra,* 2026

---

[10] As explained further in Farmers Direct Motion In Limine No. 3, Plaintiff's contractor Progressive Home Remodeling (PMK) failed to appear at deposition in response to subpoena after being rescheduled at Plaintiff's request. Plaintiff also failed to designate anyone from Progressive Home Remodeling as an expert. Accordingly, testimony from Progressive Home Remodeling, its owner and/or anyone affiliated therewith should be excluded.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

WL 1045636 at *2. A bad faith claim can only be maintained where there has been a breach of a contractual obligation owed by the insurer. *Waller, supra,* 11 Cal.4th at 36. Given Plaintiff's complete lack of any competent evidence, Plaintiff's breach of contract claim must fail as she cannot establish that the Policy was breached in the first instance and her bad faith claim must also necessarily fail as result.[11]

**B. <u>Bad Faith Standard</u>**

"While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.,* 90 Cal.App.4th 335, 346 (2001) *citing Paulfrey v. Blue Chip Stamps*, 150 Cal.App.3d 187, 196 (1983). "It is well established that "[t]here can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insured." *Kerrigan v. Allstate Ins. Co.*, 543 F.Supp.3d 843, 855-856 (C.D. Cal. June 10, 2021) (citations omitted). The evidence will establish that any potential delays resulted directly from Plaintiff's own conduct as supported by the testimony of Defendant's claim handling standard of care expert Paul Hamilton.

"The ultimate test of [bad faith] liability in … first party [insurance] cases is whether the refusal to pay policy benefits was unreasonable." *Bosetti v. United States*

[11] For example, defense expert David Corona will testify that Property was not rendered uninhabitable as result of the Incident. *See e.g., Rice v. Allstate Ins. Co.,* Case No. CV 10–122–M–DWM, 2012 WL 1831114 *2-*3 (D. Mont. May 18, 2012) (although the term "uninhabitable" was not defined by the policy the court applied the dictionary definition "unsuitable for living in" and granted the insurer's motion for summary judgment because the "theft here did not render Plaintiffs' home uninhabitable" and further noted a "distinction between unlivable conditions and inconvenient ones"). Given Plaintiff's failure to designate any experts, David Corona's opinions and testimony will be undisputed and unrebutted. Moreover, Plaintiff informed Donnie Means that she did not want to go to a hotel and preferred to remain in her residence after the Incident and she never submitted any receipts to Farmers Direct for reimbursement of any ALE allegedly incurred. A "policy's ALE coverage applies only where the additional living expense is actually incurred." *Witt v. Property & Casualty Ins. Co. of Hartford*, Case No. C16-5202-RBL, 2017 WL 237554 *2-*3 (W.D. Wash. January 19, 2017) (policyholder's claim for non-incurred additional living expenses "is unsupportable as a matter of law").

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Life Ins. Co. in N.Y.*, 175 Cal. App. 4th 1208, 1236 (2009), quoting *Opsal v. United Services Auto. Assn.*, 2 Cal.App.4th 1197, 1205 (1991) (original italics). "Competent evidence must exist on which a jury finding of 'unreasonableness' can stand. Speculation or conjecture are insufficient to sustain a bad faith claim." *Crenshaw v. Mony Life Ins. Co.*, No. 02cv2108-LAB (RBB), 2004 WL 7094011, at *25-26 (S.D. Cal. Apr. 30, 2004), citing *Feldman*, *supra*, 322 F.3d at 670. Here, the substantial weight of admissible evidence refutes Plaintiff's bald allegations that Farmers Direct acted unreasonably in its handling of the Claim. Rather, Farmers Direct will present evidence that it reasonably investigated a suspicious claim and still paid the Plaintiff almost $27,000 despite questionable support for the inflated and belated amounts sought by Plaintiff based upon the minimal damage initially observed.[12] Plaintiff will be unable to present at trial any competent evidence that Farmers Direct acted unreasonably in its handling or resolution of the Claim. Rather, the record admissible evidence will establish that Farmers Direct's claims handling conduct was reasonable and compliant with industry standards.[13]

---

[12] More than 10 months after the Incident, Plaintiff submitted a $90,000 inflated repair estimate for a "Partial Home Remodel" which largely had no reasonable relationship to any Incident-related damage whatsoever as will be confirmed by testimony from Farmers Direct's retained expert and non-retained experts. Farmers Direct then reinspected the Property on May 23, 2025 and nevertheless issued supplemental payments to Plaintiff on or about May 28, 2025 for additional repairs to drywall and stucco around her bathroom window which further establishes Farmers Direct's reasonable handling of an unreasonably inflated claim. *See e.g., Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of America*, Case No. CV 12-09510 MMM (PLAx), 2013 WL 12139353 *17 (C.D. Cal. November 29, 2013) (the fact that the insurer "reopened the claim and authorized a supplemental inspection after initially denying it demonstrates that it acted reasonably in coming to its determination")

[13] For example, the core component of Plaintiff's bad faith claim is her theory that Farmers Direct conducted an "adversarial EUO to build defense not to pay," including "biased EUO tactics" and "wasting Plaintiff's time and resources and causing significant emotional distress – in violation of the duty to conduct a prompt thorough, and fair investigation." FAC, ¶¶13.a, 43 [ECF Doc. 23-1, p. 51]. However, the "right to require the insured to submit to an examination under oath concerning all proper subjects of inquiry is reasonable as a matter of law." *Globe Indem. Co. v. Superior Court*, 6 Cal.App.4th 725, 731 (1992). Farmers Direct's claims handling expert will testify that an Examination Under Oath is a contractual right available to any insurance company.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

### C. Genuine Dispute Doctrine

An insurer does not breach the implied covenant of good faith and fair dealing if there is a "genuine dispute" concerning the liability insurer's legal obligations. *Feldman*, *supra*, 322 F.3d at 669. This dispute can either be a reasonable factual dispute related to the claim or an unsettled area of insurance law. *Id*. When determining if a dispute is genuine, a court does not decide "which party is 'right' as to the disputed matter, but only that a reasonable and legitimate dispute actually existed." *Chateau Chamberay*, *supra*, 90 Cal.App.4th at 348, fn. 7. A dispute is legitimate, if "it is founded on a basis that is reasonable under all the circumstances." *Wilson, supra,* 42 Cal. 4th at 723-725 fn. 7."[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith…." *Id.* at 723; *Chateau Chamberay*, *supra*, 90 Cal.App.4th at 347.

This Claim fall squarely within the statutory definition of "suspected insurance fraud," thereby making Farmers Direct's decision to investigate a reasonable one and courts have also held that the "genuine dispute" doctrine applies to the assessment and handling of suspicious burglary claims specifically.[14] Cal. Code Regs. Tit. 10, section 2698.30 – Definition (q). Here, given the suspicious aspects to Plaintiff's Claim, Farmers Direct's resulting investigation was entirely reasonable or at a minimum evidenced a genuine dispute as to whether the Loss was covered in the first instance and, if so, the amount of benefits owed under the Policy. Similarly, due to Plaintiff's belated presentation of a $90,000 repair estimate for a "Partial Home Remodel" more than 10 months after the Incident, there was at least a genuine dispute by Farmers Direct when faced with an estimate that seemed "too high" given the

---

[14] *See e.g., Feldman v. Allstate Ins. Co.*, 822 F.3d 660, 679 (9th Cir. 2003); *Arutyun Darakchyan v. State Farm General Ins. Co.*, Case No. 2:25-cv-03880-CAS-AJRx, 2026 WL 2336385 *7-*8 (C.D. Cal. August 11, 2026) (granted insurer's motion for summary judgment on bad faith claim based on genuine dispute doctrine in case where insurer denied coverage for suspicious burglary claim).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

minimal scope of the damages initially. *See e.g., Keshish v. Allstate Ins. Co.*, 959 F.Supp.2d 1226, 1244 n. 58 (C.D. Cal. 2013); *see also Mohn v. Catlin Ins. Co.,* Case No. 5:21-cv-01014-FWS-KK, 2023 WL 4680794 *8-*11 (C.D. Cal. May 3, 2023).

As such, the evidence at trial will conclusively establish that Farmers Direct cannot be found liable for bad faith based on Plaintiff's allegations regarding alleged unreasonable delays in the resolution of the Claim and/or due to the disputed value of the Loss or costs of repair.

**D. Attorney's Fees**

"As a matter of law, a pro se litigant is not entitled to attorney's fees." *Quintrall v. Ocwen Loan Service, LLC*, Case No. 3:18-cv-02765-BTM-AHG, 2019 WL 11771251, *9 (S.D. Cal. September 30, 2019). Accordingly, given that Plaintiff is pro per and acting without counsel, she is not entitled to recover any attorney's fees for time spent litigating her own case the case regardless of the basis of her claim for attorney's fees (*i.e.*, under the *Brandt* case for her "bad faith" claim and/or as sought under the Unruh Act as both are prohibited). *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985).

**E. Unruh Civil Rights Act Claim**

A plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination. *Duronslet v. County of Los Angeles*, 266 F.Supp.3d 1213, 1217 (C.D. Cal. 2017). Although Plaintiff alleges "Identity-based coercion (Unruh)" based on "misgendering," the mere mistaken use of wrong or preferred pronouns even repeatedly is not intentional discrimination, especially where an apology is given or where the changed status/identity is a recent development, but instead viewed as a mere inadvertent error. *Zarazua*, *supra*, 85 Cal. App. 5th at 644-646 (2022) (trial court found the prosecutor's repeated misgendering of a criminal defendant during trial to be unintentional and concluded it did not constitute prosecutorial misconduct where "misgendering was accidental . . . he was 'trying to be mindful' of Zarazua's gender, and noted defendant 'went as Ms. Zarazua' at the

time of the incident"). Plaintiff never sought to remove the name "Julio R. Ravada" from the Policy. Moreover, Plaintiff herself continued to use that name or "Julio" to refer to herself in correspondence repeatedly with Farmers Direct after she first disclosed her participation in "gender confirmation" treatments on January 28, 2025. Accordingly, Plaintiff cannot establish any intentional discrimination.

## IV. BIFURCATION OF ISSUES -- L.R. 16-4.3:

Farmers Direct has requested through Motion In Limine No. 4 [ECF Doc. 125] that Plaintiff be precluded from presenting any evidence at all in support of her punitive damage claim as result of her deemed admitted responses to RFA Nos. 18, 74 and 75 among others. Alternatively, Farmers Direct seeks an order bifurcating the trial such that Plaintiff's request for punitive damages would be determined in a separate proceeding following the trial on the merits. Fed. R. Civ. P. 42 (b); *Harner v. USAA General Indem. Co*., 590 F.Supp.3d 1217, 1223-1224 (S.D. Cal. 2022) (the "Court agrees with Defendant that liability and punitive damages require different standards of proof, and judicial efficiency merits bifurcation"); *Interiano v. Colonial Life and Accident Ins. Co*., 445, 958 (C.D. Cal. 2020).

## V. JURY TRIAL – L.R. 16-4.4:

Farmers Direct's Motion To Strike And Request for Bench Trial [ECF Doc. 90] is still pending and under submission with the Court. [ECF Doc. 100]. As explained further in Farmers Direct's Motion In Limine No. 2 [ECF Doc. 123], Plaintiff failed to oppose the Motion To Strike And Request For Bench Trial and now her right to a jury trial should be deemed waived.[15] [ECF Docs. 94, 123]. Plaintiff also failed to timely engage in any meet and confer communications related to the approaching final pretrial conference in violation of Local Rule 16-2. Accordingly, Farmers Direct seeks a bench trial.

---

[15] Plaintiff's Demand for Jury Trial [ECF Doc. 49] was untimely filed by Plaintiff on March 8, 2026 more than 14 days after Farmers Direct filed its Answer to the First Amended Complaint on February 9, 2026 [ECF Doc. 37] following the removal of this case on November 14, 2025 [ECF Doc. 1]. *See e.g.,* Local Rule 38-1, 38-2.



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**VI. ATTORNEYS' FEES – L.R. 16-4.5:**

As discussed in further detail above in Section III.D, Plaintiff is not entitled to any attorneys' fees even if she were to prevail on her bad faith and/or Unruh Act claims because a pro se litigant is not entitled to attorney's fees as a matter of law. Moreover, Plaintiff has also failed to disclose any documents or information to support a claim for attorneys' fees based on any work done on her behalf by an actual attorney. Any potential belated disclosure by Plaintiff should be excluded. *Harner v. USAA General Indem. Co*., 590 F.Supp.3d 1217, 1223-1224 (S.D. Cal. 2022) (granted defendant's motion in limine to exclude plaintiff's "fee evidence" under Rule 37(a)(1) "due to the Court's finding of willfulness" where plaintiff failed to include information regarding amounts of incurred attorney's fees as a component of sought damages in Initial Disclosures).[16]

**VII. ABANDONMENT OF ISSUES – L.R. 16-4.5:**

Plaintiff has not notified Farmers Direct of her intent to abandon any issues for trial. Farmers Direct no longer intends to pursue the following affirmative defenses which are abandoned: Eleventh Affirmative Defense (Contractual Suit Limitation).

Dated: September 14, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By [signature]
Michelle R. Bernard
Kelly Fitzgerald Canby
Attorneys for Defendant
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

[16] *See also generally R&R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246-1247 (9th Cir. 2012); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 741-742 (9th Cir. 2021).