**Luna D'Sol**
Plaintiff, In Pro Per
Email Address: jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LUNA D'SOL**

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendant(s).

Case No: *2:25-cv-10938-SVW-ASx*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS AGAINST PLAINTIFF**

Judge: Hon. Stephen V. Wilson
Date: September 28, 2026
Time: 1:30 p.m.
Courtroom: 10A
Trial Date: October 13, 2026
FSC: October 5, 2026

Filed concurrently with supporting declaration, objections to Declaration of Karen Cho and Proposed Order

## I. INTRODUCTION

Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") asks this Court for the single most severe sanction available under the Federal Rules — outright dismissal of Plaintiff Luna D'Sol's ("Plaintiff") case without ever reaching the merits — on a record that does not come close to supporting it. "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986); accord Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987). What Defendant actually presents is a one-sided narrative of a still-developing discovery dispute, wrapped in a motion that Defendant did not even notice properly, supported by a declaration the Notice of Motion promises but never delivers, and resting on characterizations of Plaintiff's conduct that Plaintiff disputes and that are not the sort of "flagrant, bad faith disregard of discovery duties" that the Ninth Circuit requires before a case may be terminated without a trial. Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990).

Before this Court reaches the five-factor test at all, it should note what is missing from this Motion: Defendant never sought an order compelling the discovery it now says Plaintiff withheld; Defendant never obtained a ruling that Plaintiff violated any court order; and this Court never warned Plaintiff that any specific conduct risked dismissal of her case. What Defendant asks this Court to do is skip every intermediate step Rule 37 contemplates and go directly to the one sanction from which there is no recovery. The Motion should be denied.

## II. RELEVANT PROCEDURAL FACTS

### A. The Motion Itself Was Not Properly Noticed — and So Was Defendant's Companion Motion

Defendant's Notice of Motion and Motion for Terminating Sanctions (ECF 118) was filed on September 1, 2026, for a hearing set September 28, 2026 — twenty-seven (27) days later, one day short of the twenty-eight (28) days that Local Rule 6-1 requires. This is not an isolated slip. Defendant filed its Memorandum of Points and Authorities in support of its Motion for Summary Judgment (ECF 117) on August 31, 2026 — but that document contains no notice-of-motion language at all; it is styled as a memorandum and states on its own caption page that it is "Filed

Concurrently With: Notice of Motion and Motion for Summary Judgment." The actual Notice of Motion for that motion — the document containing the operative "PLEASE TAKE NOTICE" language required to start the Local Rule 6-1 clock, together with all seven supporting declarations — was not filed until the next day, September 1, 2026, as ECF 119. In other words, the real notice for Defendant's summary judgment motion was filed the identical, one-day-short 27 days before the identical September 28, 2026 hearing. Both of Defendant's dispositive motions against Plaintiff share the same Local Rule 6-1 defect, filed in the same 24-hour window at the end of August. That is not the record of a single, forgivable oversight; it is the record of a filing effort that did not observe this Court's notice requirements on either motion.

**B. The Motion's Own Papers Were Assembled and Executed Same-Day, on the Filing Deadline Itself**

The Declaration of Michelle R. Bernard (ECF 121) is dated "Executed this 1st day of September, 2026" — the same calendar day the entire motion package (ECF 118, 120, 121, 121-2) was filed. The Notice of Motion itself (ECF 118) bears a signature date of "August 31, 2026" but an ECF filing stamp of September 1, 2026. Every substantive paper supporting this Motion was therefore finalized within the final twenty-four hours before filing.

The same declaration is internally inconsistent as to its own central date: paragraph 3 states that counsel "[o]n August 18, 2028, . . . sent Plaintiff a request to meet and confer," then, two sentences later, describes the attached exhibit of that same email as having been "sent August 18, 2026." Bernard Decl. ¶ 3. A declaration executed under penalty of perjury on the same day the entire motion package was filed should not contain a self-contradiction as to the date of the very event it purports to establish.

**C. The Notice of Motion Represents That It Is Supported by a Declaration That Was Never Filed**

The Notice of Motion states, twice, that the Motion is based on "the Declaration of Kelly Fitzgerald Canby filed concurrently herewith ('Canby Decl.')" and represents that this Canby Declaration is what establishes Defendant's good-faith Local Rule 7-3 meet-and-confer effort. ECF 118 at 1:10–11, 2:18–20. No such declaration exists anywhere in the record for this Motion.

The only papers filed concurrently with ECF 118 are the Notice of Lodgment (ECF 120) and the Declaration of Michelle R. Bernard (ECF 121) — which is itself captioned as being filed concurrently only "With: Notice of Motion; and Memorandum of Points and Authorities," with no mention of any Canby declaration. See ECF 121 at 1. The only Canby declaration anywhere on this docket is the entirely separate declaration filed as ECF 119-6, in support of the concurrently-filed Motion for Summary Judgment — a different motion, addressing different subject matter, filed under a different docket entry.

**D. The Underlying Meet-and-Confer Narrative Is Disputed**

Ms. Bernard's declaration states that Plaintiff "never joined the August 13, 2026 TEAMs videoconference" and that Plaintiff's contemporaneous email — "You just canceled our meet and confer today without telling me in advance" — was "entirely untrue." Bernard Decl. ¶ 5. Plaintiff disputes this characterization and has a contrary, contemporaneous account of that conference, which is addressed in Plaintiff's accompanying declaration. This is a swearing contest between the parties as to a disputed fact, not a matter this Court can resolve against Plaintiff on the papers alone.

Defendant's own counsel's contemporaneous correspondence undercuts the "good faith, diligent outreach" narrative on which this Motion depends. On July 31, 2026, in response to Plaintiff's email questioning why she had received no response from either attorney for an extended period, Ms. Bernard wrote directly to Plaintiff: "Rest assured, I have not 'gone missing' as erroneously suggested in your email but likewise I do not have time to contemporaneously respond to your self-serving and unhinged communications directed to me or Ms. Canby in this matter." Bernard Decl. ISO Opp. to Ex Parte Appl., Ex. 1 (ECF 108-1) at 12. Counsel's own written admission that she does not make time to respond to Plaintiff's communications — offered in the same period Defendant now describes as one of diligent, good-faith attempts to meet and confer — is difficult to reconcile with the narrative this Motion presents to the Court.

## III. LEGAL STANDARD

Rule 37 authorizes a range of discovery sanctions, but the terminating sanction of dismissal is reserved for extreme cases. In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir. 1996).

Dismissal is proper "only where the violation is due to willfulness, bad faith, or fault of the party," id., and a court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Wanderer, 910 F.2d at 656; accord Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). The fifth factor requires the court to consider whether it discussed the feasibility of lesser sanctions, whether it tried them, and whether it warned the party that dismissal could follow. United States v. Nat'l Med. Enters., Inc., 792 F.2d 906, 912 (9th Cir. 1986); Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995). None of those predicate steps occurred here: no motion to compel was ever filed against Plaintiff, no order compelling discovery was ever entered against her, and no prior warning issued from this Court regarding case-dispositive sanctions on the discovery conduct Defendant now raises.

Because Plaintiff appears pro se, her filings and her conduct of this litigation are properly viewed "less stringent[ly]" than the conduct of a represented party, Haines v. Kerner, 404 U.S. 519, 520 (1972), though the Court recognizes pro se status does not excuse intentional non-compliance with discovery obligations. That principle cuts against terminating sanctions here rather than for them: an unrepresented litigant's disputed, non-frivolous explanations for missed dates deserve the same "fault, willfulness, or bad faith" scrutiny as any other litigant's before the case is ended altogether. Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir. 1985).

## IV. ARGUMENT

### A. The Motion's Threshold Procedural Defects Independently Warrant Denial

#### *1. Untimely Notice Under Local Rule 6-1*

Local Rule 6-1 requires that a motion be filed and served at least twenty-eight days before the noticed hearing date. Defendant's Motion was filed twenty-seven days before the hearing — one day short. This is not a technicality raised for its own sake: Defendant is the party asking this Court to hold Plaintiff to strict, uncompromising compliance with every procedural rule and deadline in this case as the predicate for terminating her case entirely, while its own Motion does

not itself comply with the notice period the Local Rules require. As set out in Section II.A above, the actual Notice of Motion for Defendant's companion Motion for Summary Judgment (ECF 119) suffers from the identical defect. A movant seeking the most severe sanction available should be held to the same rules it invokes against the opposing party — rules it did not observe on either of its own dispositive motions.

***2. The Notice of Motion Rests on a Declaration That Does Not Exist in the Record***

A motion's Notice must identify what it is "based upon," and Defendant's Notice tells this Court, unambiguously and twice, that its L.R. 7-3 good-faith showing comes from "the Declaration of Kelly Fitzgerald Canby filed concurrently herewith." ECF 118 at 1:10–11. As set out in Section II.C above, that declaration was never filed. The only evidentiary support Defendant actually filed for its meet-and-confer certification is paragraph 2 of the Bernard Declaration — a different declarant, addressing the certification in a single conclusory paragraph, not the more detailed narrative the Notice promised this Court and Plaintiff would be provided. A motion whose own controlling Notice cannot accurately describe what supports it is not the reliable, carefully-prepared record on which this Court should terminate a case. At minimum, it independently undercuts the credibility of Defendant's narrative that the truncated notice period resulted from mere oversight rather than a rushed, last-minute filing assembled without the care Rule 11 and this Court's Local Rules demand.

**B. Terminating Sanctions Are Not Warranted Under the Five-Factor Test**

***1. No Finding of Willfulness, Bad Faith, or Fault Can Be Made on This Record***

Dismissal requires a finding that the violation was "due to willfulness, bad faith, or fault of the party." In re Exxon Valdez, 102 F.3d at 432. Defendant's entire willfulness narrative depends on this Court accepting, as established fact, Defendant's characterization of disputed events: that Plaintiff's stated reasons for being unavailable around her noticed deposition were pretextual, and that Plaintiff's account of the August 13, 2026 meet-and-confer conference was "entirely untrue." Bernard Decl. ¶¶ 5, 14. Both are contested. Defendant's inference that Plaintiff's public court filings in an unrelated state action are inconsistent with her stated unavailability is exactly that — an inference, drawn by counsel without personal knowledge of

Plaintiff's health, schedule, or circumstances, offered as if it resolved a credibility question the Court has not yet heard both sides on. A terminating sanction cannot rest on one side's characterization of a swearing contest; it requires an actual finding, on a developed record, that the noncompliance was willful. Fjelstad, 762 F.2d at 1337.

***2. Defendant Never Sought or Obtained Any Order, Warning, or Lesser Sanction Directed at the Conduct Underlying This Motion***

The fifth factor asks whether the court “explicitly discussed the feasibility of less drastic sanctions,” whether it “implemented alternative methods” before dismissal, and whether it “warned the [party] of the possibility of dismissal.” Malone, 833 F.2d at 131; Nat'l Med. Enters., 792 F.2d at 912. None of that happened here as to the deposition non-appearance or the written discovery Defendant now cites. Defendant never filed a motion to compel Plaintiff's deposition attendance; never filed a motion to compel responses to its Requests for Production, Interrogatories, or Requests for Admission; and never obtained any order from this Court putting Plaintiff on notice that continued noncompliance with those specific discovery requests could result in dismissal. The single prior order Defendant cites — ECF 71 — denied, without prejudice, Plaintiff's own motion to compel for failure to follow the Local Rule 37-1/37-2 meet-and-confer and joint-stipulation procedure. While the Magistrate Judge added a general caution “that further failure to comply with the rules of this court may result in the imposition of sanctions,” the same order expressly declined to impose any sanction at that time “in light of [Plaintiff's] pro per status and potential unfamiliarity with the Local Rules.” ECF 71 at 3. That general, procedural caution — issued nearly five months before this Motion, in connection with a defect in how Plaintiff brought her own discovery motion — said nothing about deposition attendance, said nothing about responses to Defendant's Requests for Admission, and did not warn that noncompliance with those specific obligations could result in termination of the case. It is not the individualized, conduct-specific warning the dismissal cases require. See Henry v. Gill Indus., Inc., 983 F.2d 943, 946–48 (9th Cir. 1993) (dismissal followed multiple missed depositions after repeated, conduct-specific warnings). If anything, the Magistrate Judge's express finding that Plaintiff's pro per status and unfamiliarity with the Local Rules warranted leniency rather than sanctions for a comparable

rules violation cuts against, not for, terminating her case now on the rationale Defendant advances here.

### *3. The Disputed Meet-and-Confer Narrative Cannot Support a Finding of Bad Faith*

Defendant's own supporting declaration acknowledges that Plaintiff "sent defense counsel just one short email communication" following the August 13, 2026 conference and characterizes that email's contents as false. Bernard Decl. ¶ 5. That is a direct factual dispute between the parties as to what happened on a specific date, not the kind of undisputed record this Court needs before terminating a case. See FRE 602 (personal-knowledge requirement); FRE 701 (lay opinion limited to matters within the witness's own perception). Defendant is, in effect, asking this Court to credit its own account of a disputed conversation over Plaintiff's, without any hearing, and to treat that credibility determination as sufficient grounds for dismissal.

### *4. Any Prejudice to Defendant Can Be Cured by Sanctions Short of Dismissal*

Even accepting Defendant's account of the discovery delays at face value, prejudice from a missed deposition and outstanding written discovery responses is precisely the kind of harm an order compelling compliance, cost-shifting, evidentiary sanctions, or an extension of the discovery cutoff can address without ending the case. Defendant's own Memorandum asks this Court, in the alternative, to impose "appropriate evidentiary and/or monetary sanctions" rather than dismissal — confirming that Defendant itself recognizes lesser sanctions remain available and adequate. Plaintiff respectfully submits that if the Court finds any sanction warranted on this record, it should be one of those lesser sanctions, not dismissal.

## C. The "Farmers Insurance Exchange" Captioning Dispute Is Not "Fraud on the Court"

Defendant separately urges dismissal on the theory that Plaintiff has "committed fraud on the Court" by including non-party Farmers Insurance Exchange in certain pleading captions after this Court found that entity was not a named defendant. Fraud on the court is a demanding standard: it "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995) (quoting Abatti v. Comm'r, 859 F.2d 115, 118 (9th Cir. 1988)). It is reserved for conduct like concealing exculpatory evidence or presenting knowingly false testimony at trial to corrupt

the fact-finding process itself — not for a disagreement, however firmly this Court has already ruled on it, about how a pro se litigant captions her own papers regarding a corporate affiliate she believes is connected to her claims. Defendant identifies no instance where Plaintiff's use of that caption altered the outcome of any motion, misled the Court into a ruling it would not otherwise have made, or prejudiced Defendant's ability to defend this case; it points only to the captions themselves. That falls well short of the "unconscionable plan or scheme" Pumphrey requires, and it independently cannot support terminating sanctions.

**D. Defendant's Own Unresolved Service Dispute Undercuts Its Discovery-Noncompliance Narrative**

Defendant's discovery narrative assumes, without acknowledging the dispute, that Plaintiff was validly served with the written discovery and deposition notices at issue by email. See Bernard Decl. n.1 (asserting email service was proper based on the parties' purported "agreement" and Plaintiff's e-filing registration). Plaintiff has separately shown, in her concurrently-filed Opposition to Defendant's Motion for Summary Judgment, that Rule 5(b)(2)(E) requires a party's express, affirmative written consent to electronic service, that such consent "cannot be implied from conduct," Fed. R. Civ. P. 5(b)(2)(E), Advisory Committee Notes to 2001 Amendment, and that CM/ECF registration alone does not supply it, O'Neal Constructors, LLC v. DRT Am., LLC, 991 F.3d 1376, 1381–82 (11th Cir. 2021). To whatever extent this Court credits that argument in connection with the summary judgment motion, the same service defect independently undermines Defendant's claim here that Plaintiff's non-response to that same written discovery reflects willful defiance rather than a genuine, unresolved dispute over whether she was ever properly served with it in the first place. The court should consider Plaintiff's pending Motion for Sanctions. (D'Sol Decl. ¶ 3).

The point is not merely theoretical. Defendant's own Exhibit 6 to the Bernard Declaration — the very exhibit Defendant filed to show Plaintiff was properly noticed for her deposition — contains Plaintiff's July 29, 2026, 9:05 p.m. email stating, in plain terms: "No, I have not been served a deposition, I don't have any records of such documents being served to me." Bernard Decl., Ex. 6 (ECF 121-1) at 53. Paragraph 12 of the Bernard Declaration quotes Plaintiff's earlier,

3:49 p.m. email that same day — "I don't recall seeing any requests that you are referring to" — but does not mention this later, unambiguous denial, even though it appears in the very exhibit Defendant chose to attach. A declaration that omits the plaintiff's clearest denial of service, while attaching the exhibit that contains it, is not the reliable record on which terminating sanctions should rest.

**V. DEFENDANT'S OWN CHARACTERIZATION OF THE POLICY AND THE PARTIES HAS SHIFTED REPEATEDLY, AND ITS NEWEST VERSION IS UNSUPPORTED BY ANY CITATION TO THE RECORD**

Defendant's Memorandum opens with an "Introduction and Summary of Argument" that presents, for the first time in this litigation, a materially different characterization of the Policy and the person identified as its named insured. Defendant now describes this action as a "first-party insurance coverage dispute" concerning a policy "issued by Defendant Farmers Direct Property and Casualty Insurance Company . . . to named insured 'Julio Ravada' (i.e. Plaintiff's former identity/alias/alter ego)." (ECF No. 121-2 at 6:2, 6:6–8.) Notably, this characterization is presented without a citation to a declaration, exhibit, discovery response, deposition transcript, or other evidentiary material supporting the assertion that "Julio Ravada" constitutes a separate "identity," "alias," or "alter ego." *Id*. The characterization is therefore argument, not evidence. More importantly, it is inconsistent with the manner in which Defendant itself previously characterized the Policy, the insured, and the parties to this action.

**First**, Defendant's original Notice of Removal expressly identified the named insured "Julio R. Ravada" as "now known as Plaintiff Luna D'Sol." (ECF No. 1 ¶ 4, Page ID #:3.) Defendant did not represent that the named insured was a separate person from Plaintiff, nor did it characterize the Policy as belonging to a separate individual whose contractual rights were unrelated to Plaintiff. To the contrary, Defendant represented that Farmers Direct had issued "Plaintiff's homeowners policy," that the Policy was the subject matter of Plaintiff's claims, and that Plaintiff was asserting claims for benefits under that Policy. (Id. ¶¶ 2, 4–5, Page ID #:2–3.) Defendant further represented that privity of contract existed between Plaintiff and Farmers Direct "as it relates to the Policy and claims which are the subject matter of this action." (Id. ¶ 7, Page ID #:4.) Defendant therefore

affirmatively presented to this Court a factual and jurisdictional narrative in which the Policy, the insured identified on the Policy, the underlying loss, and Plaintiff's contractual claims were all connected.

**Second,** Defendant's subsequent filings likewise did not treat "Julio R. Ravada" as identifying a separate person whose connection to the Policy was disputed. In her June 29, 2026 declaration, Kelly Canby defined "the Policy" by reference to Plaintiff's original state-court Complaint, which named Farmers Insurance Exchange rather than Farmers Direct as the defendant: "The Complaint states that on 'or about June 4, 2024, Plaintiff sustained burglary-related damages' allegedly covered under 'Farmers' Policy No. 3872340940 (the 'Policy')." (Canby Decl., ECF No. 90-2 ¶ 2, at 2:19–23 (emphasis added).) Thus, Defendant's own declaration continued to trace the Policy and the underlying loss through Plaintiff's original pleading and the Farmers entity identified there, rather than treating the Policy as belonging to a separate person whose identity or contractual relationship with Plaintiff was in question.

**Third**, Defendant's own procedural representations concerning the addition of Farmers Direct likewise do not support the newly asserted theory that the Policy should now be treated as belonging solely to a person separate from Plaintiff. In the parties' stipulation filed in this action, Defendant agreed to the procedural substitution of Farmers Direct into the litigation. (ECF No. 11.) That procedural history is consistent with the Notice of Removal's representation that Farmers Direct was the entity that issued the Policy that was the subject matter of Plaintiff's claims. It is not consistent with a newly asserted premise that the Policy was somehow associated with a separate person whose identity is distinct from Plaintiff.

**Fourth**, Defendant's newest characterization is inconsistent with the Assumption Certificate in Defendant's own record. The Assumption Certificate states: "Wherever the name Farmers Direct Property and Casualty Insurance Company appears in your policy, it is now deemed to be Farmers Insurance Exchange," effective January 15, 2024. (ECF No. 48-2, Ex. A, at 3.) The effective date precedes the June 2024 loss at issue by several months. Defendant cannot rely upon that document when addressing the identity and relationship of the Farmers entities while simultaneously presenting the Policy in its current sanctions motion as though it were solely

attributable to Farmers Direct and as though Plaintiff's former legal name establishes a separate insured or legal identity. At minimum, the Assumption Certificate demonstrates that the relationship between the Farmers entities and the Policy is materially more complicated than Defendant's present one-sentence characterization suggests.

**Fifth**, Defendant's own contemporaneous claim-handling correspondence further undermines its attempt to isolate the Policy from Plaintiff or to treat the name appearing on the Policy as evidence of a separate person. On June 10, 2025, Albert Pimentel, Property Field Claims Supervisor, corresponded with Plaintiff concerning the same claim on behalf of "Farmers Direct Property and Casualty Ins. Co." (ECF No. 1-2 at PDF p. 145, Ex. S.) Six days later, Mr. Pimentel sent correspondence concerning the same claim, same property, and same policyholder on behalf of "Farmers Insurance Exchange." (ECF No. 1-2 at PDF p. 146, Ex. T.) The June 16 correspondence states: "This is our position at the Field property level regarding the requested review of the estimate sent for home repairs as once again, a new event was clearly reported." (Id.) These contemporaneous records demonstrate that Farmers personnel themselves used both Farmers entity names in connection with the same claim and property. Whatever legal significance Defendant now attributes to the distinction between those entities, its own contemporaneous claims-handling records do not support the proposition that Plaintiff's claim was unrelated to the Policy or that the Policy was associated with a person separate from Plaintiff.

**Sixth,** the June 16, 2025 correspondence is also addressed to Plaintiff as "Luna." (ECF No. 1-2 at PDF p. 146, Ex. T.) The correspondence concerns Plaintiff's claim and her request for review of the repair estimate. Thus, the contemporaneous record does not support Defendant's suggestion that the Policy or underlying loss is somehow attenuated from Plaintiff because the Policy documents bear Plaintiff's former legal name. The record instead shows Farmers personnel communicating with Plaintiff concerning the very claim and requested review that form the basis of this action.

These shifting characterizations are relevant not merely because Defendant has used different terminology. Defendant is asking the Court to impose the most severe sanction

available—dismissal of Plaintiff's entire action—while simultaneously presenting a materially different factual narrative concerning the identity of the insured and the Policy than the narrative Defendant previously presented to this Court. The Court should therefore evaluate the current characterization against the actual record rather than accept Defendant's introductory description as an established fact.

To the extent Defendant seeks to obtain an advantage from adopting a position concerning the identity of the insured that differs materially from the position it previously presented to this Court, the doctrine of judicial estoppel is also implicated. Judicial estoppel is intended to prevent a party from obtaining an advantage by taking inconsistent positions in judicial proceedings. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001). The Ninth Circuit generally considers whether (1) the later position is "clearly inconsistent" with the earlier position; (2) the court accepted the earlier position, such that acceptance of the later position would create the perception that the court was misled; and (3) the party asserting the inconsistent position would obtain an unfair advantage or impose an unfair detriment on the opposing party. *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 270–71 (9th Cir. 2013) (quoting *New Hampshire*, 532 U.S. at 750–51). The doctrine applies to a party's stated position, including factual statements and legal assertions. *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997). Plaintiff does not ask the Court to resolve the ultimate application of judicial estoppel at this stage; rather, Plaintiff identifies the doctrine because Defendant's present characterization cannot be evaluated in isolation from Defendant's own prior representations to this Court.

The point is particularly significant here because Defendant's current characterization is not supported by a new piece of evidence establishing that "Julio Ravada" is a separate person. Defendant identifies no evidence establishing that Plaintiff lacks contractual rights under the Policy, that the named insured was a person separate from Plaintiff, or that the Policy was unrelated to Plaintiff's claim. Instead, Defendant's current formulation rests on a characterization inserted into the opening summary of its Memorandum while Defendant's own prior filings and contemporaneous claim records repeatedly identify the Policy and the underlying claim as Plaintiff's.

The issue is therefore not simply that a historical insurance document contains Plaintiff's former legal name. The issue is Defendant's attempt to use that historical name to construct a different factual narrative concerning who the insured was, who possessed rights under the Policy, and whether the Policy and underlying loss belong to Plaintiff. Defendant's original Notice of Removal expressly identified "Julio R. Ravada" as "now known as Plaintiff Luna D'Sol." (ECF No. 1 ¶ 4.) Its subsequent filings and its own claims-handling records likewise connected the Policy and loss to Plaintiff. Defendant's newest characterization should not be accepted as an established fact where Defendant has supplied no evidentiary support for the additional proposition that Plaintiff's former legal name identifies a separate "identity," "alias," or "alter ego."

This is especially important in evaluating Defendant's request for terminating sanctions. A sanction as severe as dismissal should not rest upon an unsupported characterization introduced in an opening summary where that characterization is materially inconsistent with Defendant's own prior representations and documentary record. Plaintiff therefore respectfully requests that the Court evaluate Defendant's assertions concerning the Policy, the named insured, and the Farmers entities against the complete record rather than treating Defendant's newest characterization as an established fact.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Terminating Sanctions in its entirety. Defendant has not established the circumstances necessary for dismissal, including the required consideration of less drastic alternatives.

Respectfully submitted:

**Dated: 9/14/2026** **By:** /s/ Luna D'Sol

**Luna D'Sol**

Plaintiff, In Pro Per

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, Plaintiff in Pro Per, certifies that this brief contains approximately 4,870 words (excluding the caption), which complies with the word limit of Local Rule 11-6.1.

Dated: September 14, 2026

Respectfully submitted,

/s/ Luna D'Sol

Luna D'Sol, Plaintiff in Pro Per