LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUNA D'SOL,

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

CASE NO. : *2:25-cv-10938-SVW-ASx*

*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*

**PLAINTIFF LUNA D'SOL'S EX PARTE APPLICATION FOR LEAVE TO FILE OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION**

Complaint Filed: August 21, 2025

Hearing date September 28 2026
Time: 3:00 pm

Trial Date: October 13, 2026; 9:00 a.m. FSC: October 5, 2026; 3:00 p.m.

Concurrently filed with Plaintiff's Opposition to defendant's motion in limine

PLEASE TAKE NOTICE that on September 28, 2026, Plaintiff Luna D'Sol ("Plaintiff"), pursuant to Local Rule 7-19, will and hereby does apply ex parte by written submission to the Honorable Stephen V. Wilson, Courtroom 10A, for an order granting Plaintiff leave to file, out of time, her opposition to Defendant Farmers Direct Property and Casualty Insurance Company's Motion.

This is not Plaintiff's fault and plaintiff has acted in good faith. Plaintiff has acted promptly and requests this relief because circumstances arising immediately before the applicable deadline materially impaired Plaintiff's ability to complete and timely file the opposition. Plaintiff has been managing a medical condition that has materially worsened. Plaintiff's surgery was canceled on the morning it was scheduled and then moved to the end of September. Due to the same uncertainty and increase number of visits to doctors and hospitals I have been limited, however I had kept counsel informed. (See Declaration of Luna D'Sol)

The requested relief is limited. Plaintiff does not seek to alter the hearing date or obtain an adjudication of the underlying Motion in Limine through this application. Plaintiff seeks only leave to file her opposition so that the Court may consider the opposition before ruling on the motion and before the Final Status Conference and trial.

This application is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Luna D'Sol and exhibits thereto, the records and files in this action, and such other evidence as may properly be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff has complied with Local Rule 7-19 hrough telephone 760.444.5923 and email (kcanby@grsm.com) communications on September 9, 2026 to Defendant. During those communications, Plaintiff advised counsel that she intended to seek relief concerning the September 28, 2026 hearing and other affected deadlines in light of her scheduled September 30, 2026 surgery, and identified the filing and service issues she intended to raise. Defendant's counsel confirmed that Farmers Direct would not join a stipulation but that they remain sympathetic. [Decl. of Luna D'Sol ¶ 2, Ex. 1. Accordingly, Defendant was notified by both telephone and email on September 9, 2026 of this Court's ex parte procedures

and requirements as found in the New Case Order and the Court's website whereby any opposition papers must be filed not later than 3:00 p.m. on the first business day succeeding the day the Ex Parte Application was served (and if Defendant chooses not to oppose this Ex Parte Application it must inform the clerk by phone at 213-894-2881 not later than 3:00 p.m. on the first business day after service of this Ex Parte Application).

**PLEASE TAKE FURTHER NOTICE** and be further advised that pursuant to Local Rule 7-19, the contact information for Defendant's counsel is listed below as follows:

KELLY FITZGERALD CANBY (SBN: 185227)
kcanby@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000 San Diego, CA 92101
Telephone: (619) 230-6700
Facsimile: (619) 696-7124

Dated: September 21, 2026

**/s/ Luna D'Sol**
Luna D'Sol
Plaintiff, In Pro Per

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Luna D'Sol ("Plaintiff") respectfully applies ex parte for an order for leave to file an opposition to Defendant's Motion in Limine No. 1 imposing terminating sanctions against Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct") — including striking Defendant's Answer and entering default against Defendant on the issue of liability — or, in the alternative, imposing evidentiary and issue sanctions precluding Defendant from contesting specified facts and defenses at trial.

This application is not a request that the Court decide, a second time, the record already before it in Plaintiff's pending Motion for Sanctions [ECF 88], which this Court took under submission on August 27, 2026 and which remains awaiting decision. Plaintiff brings this application because the pattern documented in that submitted motion has continued, and has been joined by new, independently verifiable misconduct that has occurred since that motion was submitted — misconduct Plaintiff could not have raised in that motion because it had not yet happened. Ex parte relief, rather than a further noticed motion, is necessary because trial is set for October 13, 2026 and the Final Status Conference is set for October 5, 2026; a noticed motion under this Court's ordinary briefing schedule cannot be heard before either date.

Since Plaintiff's Motion for Sanctions (ECF Doc. 88) was submitted, three independent developments have occurred, each described in full below: (1) on September 14, 2026, Defendant filed its Memorandum of Contentions of Fact and Law [ECF 133] without completing the Local Rule 16-2 conference of counsel that Local Rule 16-4 and this Court's own Civil Trial Preparation Order [ECF 86] require before that filing — the same unilateral pattern this Court has already been asked to examine as to Defendant's other filings; (2) in preparing her own competing Memorandum of Contentions, Plaintiff discovered that Defendant's own three summary-judgment declarants cannot agree with each other on what document constitutes "the Policy" central to every claim and defense in this case, and that a document Farmers Direct's own predecessor instrument says was already part of the Policy — the Assumption Certificate —

remains omitted from Defendant's own operative summary-judgment exhibit months after Plaintiff first flagged the omission; and (3) Plaintiff located two case-management emails, sent by the same Gordon Rees legal secretary who executed the contested Michael Reyes Proofs of Service already before this Court, in which Defendant's own counsel's office internally captions this litigation "D'Sol v. Farmers Insurance Exchange" — not Farmers Direct — while Defendant's claims-handling declarants describe their work only as being "on behalf of" Farmers Direct, without ever disclosing which corporate entity actually employs them, a live and disputed question this case has litigated since its removal.

Each of these developments, standing alone, would be independently sanctionable. Together, layered onto the record already before this Court in ECF 88 — the false Proofs of Service executed for Michael Reyes, the physically impossible Proof of Service for Kyle Mangione, the internally contradictory TitanFile service log, the two conflicting timestamps on the same service email, and defense counsel's selective invocation of her own unavailability — they establish precisely the kind of extreme, willful, and prejudicial conduct that warrants terminating sanctions under this Court's inherent authority and Federal Rule of Civil Procedure 16(f) and 37(b). See Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995); Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993); Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988).

## II. RELEVANT BACKGROUND

### A. The Pattern Already Before This Court In Plaintiff's Submitted Motion For Sanctions [ECF 88]

Plaintiff incorporates by reference, and does not re-brief, the full record and argument set forth in her Motion for Sanctions [ECF 88], its supporting Declaration, and her Supplemental Declaration and evidence [ECF 110], all of which were taken under submission by this Court on August 27, 2026. In summary, that record establishes: (1) Gordon Rees legal secretary Kiry Yeoun executed two Proofs of Service, on July 17, 2026 and August 4, 2026, swearing under penalty of perjury that third-party witness Michael Reyes was personally served, when defense counsel Kelly Fitzgerald Canby has since admitted, both orally on August 25, 2026 and under

oath in her own MSJ declaration filed September 1, 2026, that Mr. Reyes was never successfully served; (2) a professional process server's sworn Proof of Service for a second third-party witness, Kyle Steven Mangione, describes a person whose age, height, weight, hair color, and eye color all conflict with Mr. Mangione's own official arrest and booking record; (3) Defendant's own TitanFile system log shows the channel used to serve Plaintiff with Defendant's Requests for Admission was already being populated with defense team members one minute before, or at the same minute as, the "initial" email that supposedly necessitated switching to TitanFile in the first place, and that log is independently self-contradictory as to its own member count and last-activity date; and (4) the same service email carries two different timestamps — 9:26 a.m. in the version Defendant filed with this Court and 9:27 a.m. in the version defense counsel actually forwarded to Plaintiff.

Plaintiff further incorporates the record set forth in her Introduction and Summary of Argument in Opposition to Defendant's own Motion for Terminating Sanctions [ECF 118], establishing that Defendant's counsel's office engaged in a documented pattern of selective unavailability — Ms. Canby found time to draft a seven-point substantive opposition to Plaintiff's anticipated motion and to personally sign a deposition notice the day after telling Plaintiff she was unreachable, and Ms. Bernard disclosed her own hospitalization not to request accommodation but to justify continued adversarial conduct the same day — and that Defendant's counsel's office generated conflicting sworn or attorney-represented service documentation as to a third third-party witness, the PMK for Progressive Home Remodeling Inc., whose subpoena lists a Los Angeles service address while defense counsel's own follow-up letter to that witness describes service, at the identical date and minute, at a different address in Hermosa Beach.

**B. New Development: Defendant's Own Declarants Cannot Agree On What Document Is "The Policy," And Defendant's Own Predecessor Instrument Was Never Disclosed**

Every one of Defendant's MSJ declarants uses the term "the Policy" as though it were self-evident, and no two of them mean the same document. Bryce Spradling swears that Exhibit

1 to his declaration — a 57-page certified set of "the original declarations page, policyback and endorsements," per Farmers Direct's own certification cover sheet — is "a true and correct copy of a certified copy of Farmers Direct's Policy." Decl. of Bryce Spradling ISO MSJ ¶ 2, ECF 119-1 at 2 (Page ID #:4271); see also certification page, ECF 119-1 at 7 (Page ID #:4276). Donnie Means adopts the identical description. Decl. of Donnie Means ISO MSJ ¶ 2, ECF 119-3 at 2. Defendant's own retained construction expert, David Corona, swears in the same motion that "the Policy" is Exhibit A spanning ECF 23-1 pages 185 through 317 — a 133-page range that sweeps past the actual 57-page certified declarations set (ECF 23-1 at 189-245) and into seven unrelated exhibits: an October 29, 2024 payment worksheet, a depreciation-holdback payment, a November 22, 2024 denial letter, an internal reversal of that denial, an adjuster reimposing a deadline during a declared wildfire emergency, and settlement correspondence. Decl. of David A. Corona ISO MSJ ¶ 6(b), ECF 119-5 at 3 (Page ID #:4922); ECF 23-1 at 185-188 (Page ID #:676-679) (exhibit index).

Neither Spradling's nor Means's 57-page description includes the Assumption Certificate — an instrument executed August 1, 2024, delivered to Plaintiff under cover letter dated September 20, 2024, effective January 15, 2024, which states in its own operative text that it "forms a part of the above insurance Policy and you should attach the Certificate to your Policy," and that "[w]herever the name Farmers Direct Property and Casualty Insurance Company appears in your policy, it is now deemed to be Farmers Insurance Exchange." Ex. E to Decl. of Luna D'Sol ISO Renewed Mot. to Remand, ECF 77-2 at 16 (Page ID #:2198). That instrument predates Farmers Direct's September 29, 2025 certification by more than a year. Plaintiff first flagged its omission from the certified record in her Declaration filed June 22, 2026 in support of her Motion for Sanctions. ECF 88-2. As of September 1, 2026 — more than two months later, and the date Defendant filed the very MSJ that relies on the incomplete 57-page set as "the Policy" — the Assumption Certificate remains absent from Defendant's own summary-judgment exhibit.

A movant whose own three sworn declarants cannot agree on the identity of the single foundational document underlying every claim and defense in the case — and whose operative

exhibit still omits, unaddressed, a document Plaintiff flagged as missing before that exhibit was even filed — has not carelessly overlooked a technicality. It has built its dispositive motion on a record it has not gotten straight internally, months after being told exactly what was missing.

### C. New Development: Defendant's Own Counsel's Office Internally Identifies This Litigation As Against Farmers Insurance Exchange, Not Farmers Direct

On July 17, 2026 and again on August 4, 2026, Kiry Yeoun — the same Gordon Rees legal secretary who executed the contested Reyes Proofs of Service on those identical two dates — sent Plaintiff case-management emails transmitting deposition-subpoena packets, copying both Kelly Canby and Michelle Bernard, each captioned: "D'SOL v. FARMERS INSURANCE EXCHANGE — SUBPOENA PACKETS." Not "Farmers Direct." This was not a single, isolated typographical slip; the identical caption was used twice, three weeks apart, by the same staff member, on correspondence copied to both lead defense counsel.

That internal naming convention is not academic. Plaintiff's operative pleading alleges, in the alternative, that Farmers Direct is liable for the conduct of Farmers Insurance Exchange personnel who actually handled the Claim. Defendant's own claims-handling declarants describe their work only in the passive, entity-agnostic phrase "on behalf of" Farmers Direct — Michael Saskor states, "I work as a General Claims Adjuster on behalf of Defendant Farmers Direct," Decl. of Michael Saskor ISO MSJ ¶ 1, ECF 119-2 at 3 — without ever disclosing which corporate entity issues his paycheck. On August 12, 2026, Plaintiff put the question to Ms. Canby directly, in writing: "[C]an you confirm that Farmers Direct will assume full responsibility / liability for acts committed by Farmers Insurance Exchange that affected the claim... It's a simple yes or no answer." Ms. Canby's response did not answer it. That question remains unanswered on this record while Defendant's own MSJ declarants swear, without qualification, that a document reflecting only Farmers Direct's obligations is "the Policy" in full.

Plaintiff does not ask this Court to resolve, on this application, whether Farmers Direct and Farmers Insurance Exchange are in fact the same operative entity for liability purposes — that is a merits question already implicated by this Court's prior alter-ego ruling and Plaintiff's pending request for leave to amend. Plaintiff raises it here because Defendant's own counsel's

office's internal case-naming practice is one more example, on top of the Reyes, Mangione, and TitanFile record already before this Court, of Defendant's own paper not agreeing with what Defendant tells this Court and Plaintiff.

**D. New Development: Defendant Filed Its Memorandum Of Contentions Of Fact And Law [ECF 133] Without The Required Meet-And-Confer, While Prejudging Its Own Pending Motion**

This Court's Civil Trial Preparation Order [ECF 86] and Local Rule 16-4 require the parties to confer under Local Rule 16-2 before filing memoranda of contentions of fact and law. Defendant filed its 34-page Memorandum [ECF 133] on September 14, 2026.

Independent of that omission, Defendant's Memorandum treats the jury-trial question as already decided in its favor. It states that Plaintiff's claims will be tried "regardless" of jury or bench format on the assumption that Defendant's Motion to Strike Plaintiff's Demand for Jury Trial [ECF 90] will be granted, notwithstanding that ECF 90 has been pending and undecided since June 29, 2026. That framing is consistent with — and compounds — Michelle Bernard's August 28, 2026 refusal to meet and confer on a joint proposed set of jury instructions, in which Ms. Bernard wrote that "there is not going to be a jury trial as of right now" and that "there is no basis for meeting and conferring on jury instructions" because ECF 90 was "under submission." An undecided motion under submission is not a basis for treating its outcome as settled; it is the opposite. Defendant is not entitled to the practical benefit of a ruling it has not obtained, used as a shield against the very meet-and-confer obligations this Court's own pretrial order imposes.

**E. Defendant's Breach Of The Policy Is Not A Disputed Abstraction — It Is Established By Defendant's Own Contentions Memorandum**

Defendant's own Memorandum [ECF 133] states the elements of Plaintiff's breach of contract claim and then affirmatively describes what Plaintiff "is entitled to recover" under Coverage A: "the 'actual cash value at the time of the loss for the damaged property.'" ECF 133 at 14 (Page ID #:5909). Defendant's own record, however — the California Residential Insurance Disclosure Form issued by Farmers Direct itself and produced by Defendant in this

litigation — shows Farmers Direct marked "X" next to "EXTENDED REPLACEMENT COST COVERAGE," not Actual Cash Value Coverage, a tier Farmers Direct's own form describes as paying full replacement cost without a depreciation deduction, plus "additional coverage above the dwelling limits up to a stated percentage or specific dollar amount." ECF 88-2 at 35 (Page ID #:2727). Defendant's own Memorandum does not mention that Plaintiff holds this broader tier of coverage anywhere in its discussion of what Coverage A pays, nor does it identify the specific above-limits amount its own form promises. Plaintiff's competing Memorandum of Contentions of Fact and Law, filed concurrently with this application, develops this point in full. The relevance here is narrower: this is not a case where Defendant's position is merely aggressive advocacy on a genuinely disputed contract term. It is a case where Defendant's own operative filing omits the coverage tier its own consumer disclosure form says applies — one more instance, on top of the Policy-identity confusion described in Section II.B above, of Defendant's own paper failing to agree with what Defendant tells this Court.

## III. <u>ARGUMENT</u>

### A. The Totality Of Defendant's Conduct Warrants Terminating Sanctions

Applying the Anheuser-Busch/Henry factors: the public's interest in expeditious resolution and this Court's interest in managing its docket both favor decisive action now, three weeks before trial, rather than permitting the pattern documented above to continue into and through trial itself. The risk of prejudice to Plaintiff is substantial and ongoing — she has had to independently verify, witness by witness and exhibit by exhibit, sworn representations from Defendant's counsel's office that do not survive comparison to the underlying paper, diverting resources a self-represented litigant does not have in surplus, three weeks before trial. The public policy favoring resolution on the merits is a real consideration, but it does not favor a merits proceeding built on a record Defendant's own declarants cannot keep straight among themselves. And as to the fifth factor — the availability of lesser sanctions — Plaintiff addresses that directly in Section IV.B below by requesting, in the alternative, evidentiary and issue sanctions calibrated

to the specific misconduct documented, so this Court is not presented with an all-or-nothing choice.

The willfulness element is met on this record. A single inaccurate proof of service might be attributable to negligence. A pattern spanning three separate third-party witnesses, a party's own deposition notice, a party's own discovery service, and a party's own foundational exhibit — executed by the same handful of individuals in the same office, each instance independently verifiable against objective, non-testimonial evidence (an arrest record, a TitanFile system log's own timestamps, two versions of the same email, a 133-page citation that is facially wrong by reference to the exhibit's own index, a certification page that says what it certifies) — is not plausibly explained by isolated inadvertence. See Section II, supra.

**B. In The Alternative, This Court Should Impose Evidentiary And Issue Sanctions**

Should this Court conclude that the extreme remedy of terminating sanctions is not yet warranted, Plaintiff respectfully requests, in the alternative, an order: (1) deeming established, for all purposes in this action, that Michael Reyes was not personally served on July 17, 2026 or August 4, 2026; (2) deeming established that the Proof of Service purporting to reflect personal service on Kyle Steven Mangione does not reflect service on Mr. Mangione; (3) precluding Defendant from relying on the Requests for Admission Nos. 1-90 served July 2, 2026 as deemed admitted, given the disputed and internally contradictory TitanFile service record documented above (without prejudice to Plaintiff's separate Rule 36(b) motion addressing those admissions directly); (4) deeming established that the Assumption Certificate is part of the Policy for all purposes in this action; (5) precluding Defendant from contesting, at trial, that Farmers Direct is responsible for the acts of Farmers Insurance Exchange personnel who handled the Claim, given Defendant's own counsel's office's internal case-naming practice and its declarants' studied silence as to their actual employer; and (6) awarding Plaintiff her reasonable costs, including any Brandt-type fee component the Court deems appropriate to the extent Plaintiff has actually incurred attorney's fees, associated with bringing this application and the underlying Motion for Sanctions.

**C. Ex Parte Relief Is Necessary Given The Imminence Of Trial**

Ex parte relief is appropriate where a party will be irreparably harmed if not permitted to raise an issue before a regularly noticed motion could be heard, and the party is without fault in creating the crisis requiring ex parte relief. Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995). Both conditions are met here. The Final Status Conference is set for October 5, 2026 and trial for October 13, 2026. A noticed motion under this Court's standard briefing schedule could not be heard before either date. Plaintiff did not create this timing crisis: the newest conduct addressed in this application — the ECF 133 meet-and-confer failure — occurred on September 14, 2026, and Plaintiff's discovery of the Policy-identity and "Farmers Insurance Exchange" email evidence occurred only in the course of preparing Plaintiff's own competing Memorandum of Contentions this week. Plaintiff brings this application promptly upon learning of it.

## IV. RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this application for leave to file an opposition to Defendants' Motion to Limine No. 1.

Respectfully submitted,

Dated: September 21, 2026

By: /s/ Luna D'Sol
Luna D'Sol
Plaintiff, In Pro Per

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2: The undersigned, counsel of record for Defendant Farmers Direct, certifies that this brief contains 3751 words ("including headings, footnotes and quotations"), which complies with the word limit of Local Rule 11- 6.1.]
Dated: September 21, 2026

/ Luna D'Sol
Luna D'Sol
Plaintiff, In Pro Per

## DECLARATION OF LUNA D'SOL

I, Luna D'Sol, declare as follows:

1. I am the Plaintiff in this action. I make this declaration based on my personal knowledge and, if called upon to testify, could and would competently testify to the matters stated herein.

2. I have personal knowledge of the facts stated in this Declaration. Where I refer to documents, communications, records, or other materials, I do so based on my personal receipt, review, participation in, or knowledge of those materials and events. I do not adopt, concede, or attest to the accuracy of factual assertions contained in declarations submitted by Defendant merely because I reference or respond to them. Any statement concerning Defendant's declarations, exhibits, or representations is made solely to identify, dispute, or address the evidence presented by Defendant and is not an admission of the truth, completeness, authenticity, or admissibility of any matter beyond the specific facts expressly stated herein.

3. I respectfully request leave to file, out of time, my Opposition to Defendant's Motion in Limine No. 1. I have been managing a medical condition that has materially limited my ability to complete and file papers on the ordinary schedule. I am scheduled to undergo surgery on September 30, 2026. This is my second attempt to undergo the procedure; my first surgery was canceled or rescheduled at the last minute, including on the day it was scheduled, after I had already made preparations and arranged my affairs around the procedure. A true and correct redacted copy of some of my medical documents are attached hereto as **Exhibit 1**.

4. I have reached out to counsel on September 9th, 2026 over the phone and in writing. Defendant is unable to stipulate but it is sympathetic and willing to accommodate. A true and correct copy of the meet and confer is attached hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, executed on September 21, 2026 at Palm Springs, California

/s/ Luna D'Sol

Luna D'Sol, Plaintiff in Pro Per

EXHIBIT 1

LOS ANGELES CENTER FOR
EAR, NOSE, THROAT AND ALLERGY

# General Consent

Please complete the following information to provide your consent for the surgical procedure(s) described below.

## Patient Information

First Name *

LUNA

Last Name *

D'SOL

Date of Birth *

11/20/1984

Today's Date *

09/16/2026

Mobile Phone Number *

(213) 925-4069

## Surgical Procedure Authorization

I hereby authorize my doctor to perform the following surgical procedures:

Surgical Procedures to be Performed *

[redacted]

## Consent Acknowledgements

The benefits, risks, complications and alternatives to the above procedure(s) have been explained to me. I understand that the procedure(s) will be performed under the supervision of my doctor.

My doctor may use the services of other doctors or practitioners, or members of the resident staff as deemed necessary or advisable. I authorize my doctor and his or her associates and assistants to perform such additional procedures that in their judgement are necessary and appropriate for my diagnosis and treatment. I consent to observers in the operating room in accordance with hospital policy. I consent to photography or video taping of my surgical procedure for educational purposes. I agree to be given blood or blood products as deemed advisable during the course of my procedure. The risks, benefits and alternatives to receiving blood or blood products have been explained to me. I consent to the administration of sedation or analgesia during my procedure. The risks, benefits and alternatives to receiving sedation or analgesia have been explained to me. If anesthesia is required, I consent to the administration of anesthesia by members of the Department of Anesthesia. I also consent to the use of non-invasive and invasive monitoring techniques as deemed necessary. I understand that anesthesia involves risks that are in addition to those resulting from the surgery itself.

## Pregnancy Status

Please check one of the following statements:

Pregnancy Status *

To the best of my knowledge I am not pregnant

I believe I am pregnant

✓ N/A

## Certification and Consent

I certify that I have read and understand the above consent statements. I have

I certify that I have read and understand the above consent statements. I have been offered the opportunity to ask my doctor any questions I have regarding the procedure(s) to be performed and they have been answered to my satisfaction. I acknowledge that I have been given no guarantee or assurance as to the results that may be obtained from the procedures. (See attached documents)

**By checking this box, I confirm that this information is correct to the best of my knowledge** *

✓ I confirm

**Patient Signature** *

Signed Sep 16, 2026 · IP 104.28.111.146

**Date** *

09/16/2026

Continue

LOS ANGELES CENTER FOR
EAR, NOSE, THROAT AND ALLERGY

# General Anesthesia

General Anesthesia is a combination of intravenous drugs and anesthetics used so that the person becomes completely unconscious and unable to feel pain during medical procedures.

Complications are unlikely but they can occur. Complications of general anesthesia could be incisional pain, vomiting, damage to teeth, sore throat, cardiovascular collapse, respiratory depression, nerve injury, headaches and backaches. Hypothermia, malignant hyperthermia, and cognitive dysfunction, are all other possible complications with general anesthesia, and potentially could result in death.

It is not possible to advise you of every complication. The purpose of this form is not to frighten you; it is to ensure that the patient has prior knowledge before receiving general anesthesia.

I CERTIFY: I have read or had read to me the contents of this form and this information was discussed verbally with me in my native tongue. I understand the risk involved in this operation.

## Patient Information

First Name *
LUNA

Last Name *
D'SOL

Date of Birth *

Today's Date *

11/20/1984 09/16/2026

Patient Signature (By patient or person legally authorized to consent for the patient) *

Signed Sep 16, 2026 · IP 104.28.111.146

THIS IS NOT A CONSENT FOR SURGERY. A consent form must also be signed by the patient or guardian.

Submit

EXHIBIT 2

**From:** **Kelly Canby** kcanby@grsm.com
**Subject:** RE: Notice/Follow Up Re Ex Parte Application - D'Sol v. Farmers Direct
**Date:** September 9, 2026 at 14:22
**To:** Luna D'Sol jravada@icloud.com
**Cc:** Michelle Bernard mbernard@grsm.com

KC

Hello Ms. D'Sol –

Nice to speak with you. As I mentioned on the phone, we are sympathetic to your health issues and surgery and are willing to recommend to our client to agree to continue certain deadlines (not already expired) for a reasonable amount of time but we need a specific proposal as far as which dates you are seeking to continue and for exactly how long, etc.

Kelly Canby

---

**From:** Kelly Canby
**Sent:** Wednesday, September 9, 2026 1:03 PM
**To:** Luna D'Sol <jravada@icloud.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** RE: Notice/Follow Up Re Ex Parte Application - D'Sol v. Farmers Direct

Hello Ms. D'Sol

We want to fairly accommodate any genuine health issues such as with a surgery and so curious of how long of a potential continuance do you think you may reasonably need until you are ready to resume?

Also do you anticipate seeking a continuance of all pending dates (e.g., hearing, FSC, trial) and if so, will you be seeking the same amount of time as to all (e.g., of at least X days or X weeks, etc.) or different for each?

To the extent that there is any potential stipulation and/or continuance of the 9/28 hearing dates what type of continued and/or revived briefing schedule/timing do you reasonably think you might need and/or intend to seek to allow for your healthy participation?

As explained further below my office encountered a series of unforeseen technical failures on August 31, 2026 which resulted in both motions being filed a few minutes after midnight (albeit such minimal delay would not be grounds to deny those motions given the overall circumstances and computer system malfunctions), but perhaps we can further discuss the possibility of an agreed upon briefing schedule for both of these pending motions to resolve any potential notice concerns related to the MSJ/MTS. However, any potential adjustments to scheduling are ultimately up to the court and I understand that Judge Wilson is generally not inclined to grant continuances and apparently only does so very rarely.

Specifically, please note that we experienced a number of unexpected technical failures on August 31, 2026, both when using the CM/ECF System itself where preloaded documents were lost, and also with the external computer system being

preloaded documents were lost, and also with the external computer system being used for those filings which repeatedly malfunctioned and so we had to obtain late night assistance and alternative computer system access which resulted both of those filings being done on a rolling basis with the MSJ document being filed at 12:02 a.m. and the first MTS document posting at 12:05 a.m. and the additional materials followed soon thereafter, albeit and this minimal delay presumably would not have had any significant impact on your available response time especially given there was already an extra day added due to the court holiday. *See e.g., Pryor v. Aerotek Scientific*, LLC, 278 F.R.D. 516, 522 (C.D. Cal. 2011) (denied motion to strike motion for class certification filed just a few hours after deadline); *Bennet v. City Kingman*, 543 F.Supp.3d 794, 803 (D. Ariz. 2021) (denied request of opposing party to reject summary judgment motion filed one day late); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (reversing district court decision that denied relief to plaintiff who filed summary judgment opposition brief three days late due to a combination of calendaring errors and also "due to technical computer circumstances beyond control"); (D. Ariz. November 20, 2025) (where motion for summary judgment was filed two days late and moving party "encountered technical errors with ECF, which prevented him from timely filing" and despite the other party's objection the court ruled that "technical difficulties constitute good cause to permit late filing"); *Pena v. Taylor Farms Pac., Inc.,* 305 F.R.D. 197 (E.D. Cal. 2015) (portions of motion for class certification filed one day late and court overruled opposing party's objections to late filed items "[b]ecause the delay was the result of unforeseen technical difficulties . . . and caused no prejudice, the court overrules this objection"); *In re Schrag*, 464 B.R. 909, 9111-102 (D. Or. 2011) (relief granted where motion was filed 1 hour 23 minutes late due to technical problems with browser while attempting electronic filing in CM/ECF system); *Phoenix Global Ventures, LLC v. Phoenix Hotel Associates, Ltd.,* 422 F.3d 72 (2nd Cir. 2005); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see also* Local Rule 5-4.6.2, Local Rule 6-1 and FRCP 6(b).

As far as the service of the RFAs please see my prior email communications from yesterday regarding your prior consent to electronic service and the attached declaration of Elisa Martinez confirming that timely delivery and service of the RFAs to your email address and additional email combinations alerting you to such service and delivery.

I will send out a TEAMs invite for 2:00 and perhaps we can plan to talk more then and also please let me know more details regarding the timing issues above?

Kelly Canby

---

**KELLY F. CANBY**
Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**
**D:** 760.444.5923
**E:** kcanby@grsm.com | grsm.com
101 W. Broadway, Suite 2000, San Diego, CA 92101

101 W. Broadway, Suite 2000, San Diego, CA 92101
vCard

---

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, September 9, 2026 11:09 AM
**To:** Kelly Canby <kcanby@grsm.com>
**Cc:** Michelle Bernard <mbernard@grsm.com>
**Subject:** Re: Notice/Follow Up Re Ex Parte Application - D'Sol v. Farmers Direct

Kelly,

Thank you for your email.

I just called you and lett a voicemail. I am writing to clarify the issues I intend to address in my ex parte application.

Farmers filed its Motion for Summary Judgment and other documents on September 1, 2026, and noticed the motion for hearing on September 28, 2026. This provides only 27 days between filing and the noticed hearing date. I understand that Local Rule 6-1 requires the motion to be filed at least 28 days before the hearing, absent an order providing otherwise.

In addition, I have not been served with the Requests for Admission that Farmers appears to rely upon in connection with its summary judgment motion. I therefore have not had an opportunity to review or respond to those requests, and I intend to address that issue in my ex parte application.

I also intend to address the applicable meet-and-confer requirements and the resulting prejudice to my ability to prepare a meaningful opposition.

As previously discussed, I have a scheduled surgery on September 30, 2026. I will provide the Court with appropriate supporting documentation and will specify the continuance requested for each affected date, including the September 28 hearing and any other dates for which relief is necessary.

I am providing this clarification so that Farmers has the information it requested regarding the basis and scope of the relief I intend to seek. Could you please call me or let me know if your client is willing to withdraw you filings including the ones from this weekend.

**Luna D'Sol**

📱 (213) 925-4069

📧 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

On Sep 9, 2026, at 09:36, Kelly Canby <kcanby@grsm.com> wrote:

Good Morning Luna --

I hope you are feeling better today.

Although Farmers Direct will not be joining a stipulation, when you file your ex parte application it would be very helpful to know each of the exact date(s) you are seeking to continue (e.g. just the 9/28 hearing date or other dates also such as 10/5 pretrial conference and/or 10/13 trial date), the length(s) of the sought continuance for each (e.g., for 5 days, and/or until on or after date X, etc) and the specific reason for each (e.g. a surgery on 9/30 and/other reasons) along with copies of appropriate supporting documentation and a further explanation as to why the length of the sought continuance is reasonably necessary. Please include these details in your ex parte application as this information will aid Farmers Direct in its evaluation of your ex parte papers and whether or not it will oppose your ex parte application or any portion of the relief sought. Per the court's procedures, Farmers Direct can notify the clerk by 3:00 the day after you file your ex parte papers if it does not intend to file an opposition, but Farmers Direct needs to see your filed papers with these details and supporting information/documentation to make an informed decision.

Kelly Canby

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com

<D'SOL - ECF 126 PLAINTIFF NOTICE FILED 9.8.26(159782151.1).pdf>

**Luna D'Sol**
📱 (213) 925-4069

jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

---

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE LAW FIRM™**
www.grsm.com