**Luna D'Sol**
Plaintiff, In Pro Per
Email Address: jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LUNA D'SOL**

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendant(s).

Case No: *2:25-cv-10938-SVW-ASx*

**PLAINTIFF'S STATUS REPORT PER COURT ORDER ECF 179**

Judge: Hon. Stephen V. Wilson Courtroom: 10A

Trial Date: VACATED FSC: October 26, 2026;

3:00 p.m. Complaint Filed: August 21, 2025

**TO THE COURT AND TO PLAINTIFF: PLEASE TAKE NOTICE** that pursuant to the Court's Order of October 16, 2026 [ECF Doc. 179], Plaintiff Luna D'Sol , hereby submits this status report. Plaintiff acknowledges that this report is being submitted one day after the Court-ordered deadline. Plaintiff has devoted her available time and efforts to preparing this submission under difficult circumstances, which are addressed more fully below. Nevertheless, Plaintiff recognizes her obligation to comply with the Court's deadlines and accepts responsibility for the untimely filing.

1. Despite the substantial time and resources expended in this litigation addressing Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") as the Defendant and the entity allegedly responsible for the disputed insurance obligations—a position Plaintiff has been compelled to address throughout these proceedings—Defendant's counsel, Michelle R. Bernard, has continued to take positions that create uncertainty concerning the respective identities, responsibilities, and legal obligations of Farmers Direct and Farmers Insurance Exchange ("FIE"). Specifically, in Plaintiff's separate pending state-court action against FIE, Plaintiff has repeatedly directed communications and meet-and-confer requests to FIE through its counsel. Nevertheless, Ms. Bernard has repeatedly responded by attributing the positions communicated to Farmers Direct, including statements such as "Farmers Direct thinks," rather than clearly identifying whether she is responding on behalf of FIE, the named Defendant in that action.

2. On **September 30**, **2026**, at **8:30 a.m.**, Defendant FIE, represented by Ms. Kelly Canby on behalf of counsel Michelle Bernard, pursued a demurrer to Plaintiff's Complaint despite the previously filed Notice of Settlement in Principle. Plaintiff received an email from Ms. Bernard at **9:00 a.m.** on **September 30**, **2026** – just thirty minutes after the demurrer hearing - where Ms. Michelle Bernard, first acknowledged in writing the three 'Notices of Settlement in Principle' filed by Plaintiff, one filed on September 27, 2026, in Federal Court; and two filed, one day before the demurrer hearing, on September 29, 2026, for the two State Court cases. In this same email, Ms. Bernard also stated in writing that, pending resolution of a proposed settlement agreement between the parties, "**Farmers/Farmers Direct** does not consent to withdrawing any pending motions or deferring rulings on the same as unilaterally requested in

your Notices of Settlement." (emphasis added). Here, Ms. Bernard's email contained information that was hard to reconcile as it appeared inconsistent with email communications that Ms. Bernard wrote and had sent to Plaintiff. **FIRST EMAIL** to Plaintiff dated **September 25**, **2026**, where Ms. Bernard wrote "I am pleased to inform you that **Farmers Direct / Farmers Insurance Exchange** .....In light of the settlement in principle reached between the parties today, we think it is appropriate to file a Joint Notice of Settlement in the federal court and state court actions on Monday given the pending motions before each court." (emphasis added). **SECOND EMAIL**[1] to Plaintiff dated **September 28**, **2026**, where Ms. Bernard wrote to Plaintiff that "Farmers Direct will not agree to withdraw its pending motions but will agree to have the court continue issuing any ruling for 14 days."

3. Plaintiff was led to believe, and genuinely and firmly believed, that the parties had mutually agreed to suspend or defer adversarial proceedings and pending court hearings across the related federal and state court actions following Ms. Bernard's first email dated September 25, 2026. Ms. Bernard's failure to object to Plaintiff's September 27, 2026 Notice of Settlement in Principle, filed in federal court, further reinforced Plaintiff's understanding that the parties were proceeding in accordance with their agreement in principle. That understanding was subsequently reinforced by Ms. Bernard's second email, dated September 28, 2026, expressing agreement that the courts should defer issuing rulings for an additional fourteen days. Relying on these representations and the apparent mutual understanding between the parties, Plaintiff filed corresponding Notices of Settlement in Principle in both state court actions on September 29, 20206. Plaintiff reasonably expected that opposing counsel, as an officer of the court subject to professional duties of candor and truthfulness, would not simultaneously pursue adversarial relief inconsistent with ther representations made concerning the settlement and requested continuances.

4. In Defendant's Status Report, Ms. Canby refers to Farmer's Direct acts as good faith. This is hard to reconcile when what has been asked to Plaintiff to agree to work jointly with defendant

and knowingly violate the policy mortgage and its rights. Plaintiff requests urgent intervention from the court because Plaintiff has also been led to believe that Defendants intend to keep Plaintiff's home

**RIGHTS AND DUTIES UNDER THE POLICY**

Under the Policy is **"Rights and Duties of Mortgagee," Section I—Conditions, paragraph 8**, on page 30 of your uploaded policy (PDF page 30 of 57; policy page H-2).

> If we pay the mortgagee for any loss and deny payment to you, we will be subrogated to the extent of our payment to all the rights that the mortgagee has under the mortgage on the property. At our option, we may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, we may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt.

***************************IRREPERABLE HARM**************************

On October 6, 2025, Plaintiff commenced a separate civil action in the Superior Court of California, County of Riverside, at the Palm Springs Courthouse, Case No. CVPS2507350, against her mortgage\\ servicer and other parties: Select Portfolio Servicing, Inc.; Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely as Owner Trustee for CSMC 2022-NQME; Clear Recon Corp., as substituted trustee; and Does 1–50, inclusive. That action concerns claims arising wrongful foreclosure, post-rescission damages and other related causes of action. **A Trial Conference is scheduled for October 22, 2026.**

On October 2, 2026, Ms. Bernard, while representing both Defendants, **refused Plaintiff's request that Defendants agree not to exercise any rights under the disputed agreement that would interfere with Plaintiff's ability to obtain relief concerning the property.** Plaintiff's request specifically concerned preventing Defendants Farmers from acquiring the interest in Plaintiff's property

On October 2, 2026, Ms. Bernard, while representing both Defendants, agreed to include language protecting Plaintiff's separate pending litigation ('Plaintiff' v. 'Former Employer,' et al.] from

being affected by the agreement and Ms. Bernard personally drafted the provision addressing that protection. However, when Plaintiff requested equivalent language protecting her separate pending litigation involving SPS, Ms. Bernard refused to provide that protection.

On September 28, 2026, FIE and Farmers Direct asked Plaintiff to execute an agreement that would facilitate the concealment of material facts concerning the disposition of insurance proceeds and the mortgagee's contractual rights under the Smart Policy. Specifically, the proposed agreement would allow Defendant to offer and issue payment to Plaintiff, AND, would allow Plaintiff to accept and to deposit it in Plaintiff's account while the Farmers Defendants and Plaintiff were knowingly violating SPS' entitlement.

Defendant asked that Plaintiff agree to a restriction set on both Farmers defendants and Plaintiff from notifying SPS, and in the event SPS found out then, following the same agreement instructions, Plaintiff would assume all responsibilities and costs on behalf of Defendants under both Policies and the 3 current pending matters.

.Defendants refused Plaintiff's request that Defendants agree that nothing in their agreements could affect the pending suit against SPS.

By expressly rejecting Plaintiff's proposed provision clarifying that the settlement would not authorize Defendants to acquire the subject property or the mortgagee's interests, Defendants have left unresolved a material concern regarding the allocation of contractual rights and financial risks under the proposed settlement. As structured, the proposed agreement would permit Defendants to make a settlement payment directly to Plaintiff, without including SPS as a payee, while requiring Plaintiff to assume responsibility for any resulting claims asserted by SPS. If SPS subsequently asserted that the payment violated its contractual rights under the Policy, Plaintiff could be left bearing the resulting liability, while Defendants would retain the ability to invoke the Policy's mortgagee provisions to the extent those provisions permit further payment to SPS. Plaintiff's primary home is at risk causing irreparable damages.

**A Trial Setting Conference is scheduled for October 22, 2026**, in Plaintiff's separate action against SPS, in which Plaintiff is represented by counsel. Plaintiff faces a time-sensitive risk that the state-court proceedings will advance toward trial before the disputes affecting the Subject Property and

the availability of funds necessary for its restoration are resolved. Without the opportunity to establish the necessary repairs and resolve the outstanding property-related disputes, Plaintiff's ability to protect her ownership interest may be materially impaired. The Subject Property remains uninhabitable, and the mortgage loan is approximately ten months delinquent. The unresolved property damage, lack of funds for repairs, and continuing mortgage delinquency place her home at risk of foreclosure. Although the property damage and resulting loss in value may be capable of monetary valuation, foreclosure could permanently deprive Plaintiff of her home and ownership interest. Plaintiff therefore faces the risk of a permanent loss that cannot be adequately remedied by a later award of damages.

**PRESERVATION OF THE STATUS QUO**: It is imminent at the point that when Plaintiff's ability to address her mortgage delinquency and prepare for the upcoming trial is materially affected by the continued delay in receiving insurance benefits necessary to repair the dwelling. Evidence that Defendants have fulfilled their contractual obligations and that payment toward the covered repairs is proceeding would materially improve Plaintiff's ability to address her outstanding mortgage obligations before the litigation advances toward trial. Plaintiff would be in a materially stronger position entering that litigation if she were current on her mortgage payments rather than remaining delinquent while the covered repairs and related insurance-payment dispute remain unresolved. The combined damages claimed in this action is for the second master bathroom that remains non-operational. The dwelling damage resulting from the June 3, 2024, currently in federal court that affected the subject property's kitchen, electrical panel destroyed beyond repair, broken window that anyone can jump in from outside rendering the property unsafe, a bathroom and the flooring of the house loss remain unrepaired. This prevents Plaintiff from accessing the equity needed to address there resulting financial hardship because an appraiser would value the home at the same price of its current mortgage balance value to indicate zero equity.

Plaintiff's property was listed for sale in February 2024 for $2,000,000. And today at the current stage is likely value at the same amount of her mortgage balance approximately $850,000 representing no value in equity. In this acti0on, Plaintiff is not seeking duplicative recovery or simultaneous relief from the same injury. This action seeks relief for Defendants' breach of the insurance contract, including payment of covered benefits that Plaintiff and her lender, SPS, are entitled and that are necessary to

restore the dwelling to its pre-loss condition, subject to the Policy's terms and applicable law. Plaintiff does not oppose payment of the applicable insurance proceeds jointly to Plaintiff and Select Portfolio Servicing, Inc. ("SPS"), as required by the Policy. Plaintiff requests that Defendants comply with their contractual obligations and that any payment be structured consistently with the Policy's mortgagee provisions. On May 21, 2025, Plaintiff was terminated from her 19-year career. Plaintiff is currently receiving care from mental health specialists who closely monitor her condition. In March 2025, Plaintiff was diagnosed with a serious medical condition. Since her termination, Plaintiff has attempted to obtain part-time employment but has encountered difficulties securing work. As a transgender woman, Plaintiff has also faced additional challenges in her efforts to obtain employment. These circumstances have compounded Plaintiff's financial hardship and limited her ability to address the outstanding mortgage payments and repair the covered damage to her home.

************************** PUBLIC INTEREST ********************************
******************* SUSTAINED HARM ************************

Plaintiff has received multiple 22 different correspondences from the Palm Springs:

i. Notices of Violations from City of Palm Springs Municipal Code Compliance Department 425 N Civic Dr PO BOX 2743 Palm Springs CA 92263, Case Number MV-0426-0029 ["Please have broken window in front of property repaired or replaced."], addressed to Luna D'Sol 2275 E Belding Dr Palm Springs CA 92262 dated: 6/1/2026; 6/1/2026; 6/21/2026

ii. Notices of Violations from City of Palm Springs Municipal Code Compliance Department 425 N Civic Dr PO BOX 2743 Palm Springs CA 92263, Case Number MV-0226-0013 ["Please have broken window in front of property repaired or replaced."], addressed to CSMC 2022-NQM3 Trust 2275 E Belding Dr Palm Springs CA 92262 dated: 2/11/2026

iii. Cease and Desist Code Violation Notices from Best Best & Krieger Attorneys at Law as City Attorney for the City of Palm Springs, Public Nuisances violations

of PSMC 11.72.170(b)(2) [building maintenance] ; three Notices dated August 10, 20226

Violation Notice from City of Palm Springs' Attorney's Office Best Best & Kriecer, Citations from the City of Palm Springs notices concerning municipal-code violations at the Subject Property from in connection with enforcement by the City of Palm Springs due to the window mentioned in this action.

. CAUSATION: All the notices concern the damaged window and require corrective action. The dates, deadlines, and precise requirements are stated in the individual notices. Plaintiff also received municipal fines totaling approximately $780 in connection with the code-enforcement

PLAINTIFF'S HOSPITALIZATION is scheduled tomorrow for October 23, 2026. Plaintiff share all her medical document to Defendant's on October 20, 2026, however they did not mention it in their status report.

Respectfully Submitted

October 22, 2026

/s/ Luuna D'Sol

Luna D'Sol, Plaintiff in Pro Per