LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. : *2:25-cv-10938-SVW-ASx*<br><br>*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*<br><br>**DECLARATION OF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION**<br><br>Complaint Filed: August 21, 2025<br><br>Trial Date: TBD<br>FSC: November 9, 2026 3:00 p.m.<br>Concurrently Filed with: Plaintiff's Ex Parte application, memorandum of points and authorities, propose SAC, statements of uncontroverted fact |

**DECLAEATON OF LUNA D'SOL**

**I, LUNA D'SOL, declare as follows:**

**1.** I am the Plaintiff in the above-entitled action. I have personal knowledge of the matters stated in this declaration and, if called to testify, could and would testify competently to them. I submit this declaration in support of Plaintiff's Motion for Summary Judgment, and for Declaratory Relief.

**CERTIFICATE OF MEET AND CONFER**

**2.** On October 26, 2026, I requested a meet-and-confer meeting to Defendant's counsel. A true and correct copy of this request is attached here as Exhibit 100. My request was specific to Plaintiff's Motion for Summary Judgement and any corresponding relief that may be necessary to accommodate that motion. (See PL100-001). I also called counsel and received no response.

**3.** On October 19, 2026, while reviewing emails in my laptop's Mail application, I was searching for correspondence with contractors concerning Hurricane Hilary. At the time, I was preparing an application for California mortgage assistance, for which documentation relating to the disaster was recommended. During my search, I discovered an email from Michael Cantor in my spam folder. The email was still marked as unread. When I opened it, I discovered that it contained four PDF attachments that I had not previously reviewed. A true and correct copy of the first mold inspection report, documenting conditions at my residence before the drying and remediation services, is attached hereto as **Exhibit 101**. A true and correct copy of the second mold inspection report, dated November 19, 2024, documenting conditions following the drying and remediation services, is attached hereto as **Exhibit 102**. This report identifies elevated mold levels outside the remediated bathroom containment area and expressly states that additional mold remediation was necessary.

**4.** Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") and I entered into a valid homeowners insurance contract, Policy No. 3872340940, covering my primary residence at 2275 Belding Dr., Palm Springs, California 92262. Defendant, Farmers Direct Property and Casualty Insurance Company is the

specific entity that issued my homeowner's Policy No. 3872340940, effective September 28, 2023, to September 28, 2024 (hereinafter the "Policy"). The Policy is attached as Exhibit A to the First Amended Complaint ("FAC"). The version in Attachment A is dated August 14, 2023. Defendant's RJN No. 11 ECF Doc. 23-1, Exhibit L at Page ID 681. (*See* Infra ¶¶6-7 for additional Policy documentation and amendment). I am the same person as the named insured on the Policy. (Defendant's Amended Answer **ECF Doc. 43** ¶ 4, p. 4, Page Id 16111) SUF No. 1-4. I noticed that my primary home's mortgage lender is listed as mortgagee. Defendant's RJN No. 11 ECF Doc. 23-1, p. 359, Exhibit L at Page ID 850.

**5.** On September 27, 2024, I participated in an Examination Under Oath ("EUO") conducted by Defendant's counsel, John Na of Gordon Rees Scully Mansukhani, LLP, concerning Policy No. 3872340940 and Claim No. 7007678692-1 arising from the June 3, 2024 loss at 2275 E. Belding Dr., Palm Springs, California 92262. A true and correct copy of the complete EUO transcript is attached hereto as **Exhibit 103**. The transcript records my testimony under oath. During the EUO, Mr. Na explained that my sworn testimony carried the same weight as testimony given in a courtroom before a judge and jury. See Exhibit 103 at PL103-010. Defendant has submitted only selected portions of this EUO transcript—approximately 43 pages—as Exhibit 20 to the Declaration of Kelly Fitzgerald Canby. See Canby Decl., ECF No. 119-6, Exhibit 20, FD004304–FD004474. I submit the complete transcript, consisting of PL103-001 through PL103-171, so that the Court has the full record of my sworn testimony rather than only the portions selected by Defendant. I am also including the evidence that was provided to Mr. Na at his request and discussed during Plaintiff's EUO: (1) the Palm Springs Police Report [PL103-172 to PL103-179]; (2) captured security-camera images depicting two individuals wearing face masks, with timestamps corresponding to the date of the burglary, as the individuals approached the Property's electrical panel from Plaintiff's backyard [PL103-180 to PL103-183]; (3) Plaintiff's electrical-utility usage records showing hourly usage on the date of the burglary, including a period of no recorded power usage from approximately

3:00 p.m. through 11:00 p.m. [PL103-184]; and (4) Plaintiff's telephone records showing that, on the day Plaintiff discovered the burglary, calls were made first to her former employer's corporate security, followed by calls to the police and then to Farmers [PL103-185].

**6.** On October 18, 2024, I received an email from operations@farmersinsurance.com from Alex D. of the Farmers Customer Care Team. My Policy No. 3872340940 appears in the first line of the body of the email. The email included two PDF attachments. A true and correct copy of the October 18, 2024 email and both PDF attachments is attached hereto as **Exhibit 104**. The first attachment, titled "ARS-387234094-0_HOME RENEWAL," was provided to me by Alex D. as my original policy documents. See Exhibit 104 at PL104-002 through PL104-032. The document bears an August 14, 2023 version date. It corresponds to the August 14, 2023 policy version appearing in Defendant's Request for Judicial Notice No. 11, ECF No. 23-1, Exhibit L, but contains ten additional pages at the beginning that are not included in Defendant's Exhibit L (ECF Doc. 23-1, Exhibit L, pp.189-192, Page ID 822-825). Specifically, PL104-002 through PL104-011 are absent from the policy materials Defendant submitted in its RJN. *Id*. Among those ten pages is a document titled "**NOTICE TO CONSUMERS – CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE**." The disclosure states, in a rectangular box, "You have purchased the coverage(s) checked below," and contains an "X" next to "**EXTENDED REPLACEMENT COST COVERAGE**." See Exhibit 104 at PL104-009. The same page explains that Extended Replacement Cost Coverage is intended to provide for the cost to repair or replace the damaged or destroyed dwelling "without a deduction for physical depreciation" and provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. *Id*.

The second attachment, titled "ARS-387234094-0_HOME CHANGE," reflects an update to my mailing address to the address of the insured property. See Exhibit 104 at PL104-033. This attachment contains a **September 12, 2023 version** of the Homeowners Declarations consisting of three pages, rather than the four-page August 14, 2023

version.(Exhibit 104 at [PL104-011] to [PL104-015] for 8/14/2023 version, compared to [PL104-034] to [PL104-036] for 9/12/2023 version). The September 12, 2023 version does not contain the following language that appears in the August 14, 2023 version: "*We offer policies with Extended Replacement Cost Plus to qualified applicants. If you are interested in this additional coverage, or to see if you qualify, please contact us. You also may access the California Department of Insurance Homeowners Coverage Comparison Tool for more information at the following web address: HomeownersCoverageComparison.insurance.ca.gov*." See Exhibit 104 at [PL104-013] and [PL104-035].

**7.** On September 20, 2023 I received an email from operations@farmersinsurance.com with my Policy # 3872340940 in the first line of the body of email from AlaizaMaee P of Farmers Customer Care Team and it included an attachment, a PDF titled "JULIO RAVADA.pdf." A true and correct copy of this email and PDF attachment are attached here to as **Exhibit 105**. The first page of the attached PDF has a main title: '**EVIDENCE INSURANCE**' [*See* PL105-002]. I noticed that the document states a purpose "The purpose of this evidence of insurance is to provide dwelling

**8.** On September 20, 2023, I received an email from operations@farmersinsurance.com from AlaizaMaee P. of the Farmers Customer Care Team. My Policy No. 3872340940 appears in the first line of the body of the email. The email included one PDF attachment titled "JULIO RAVADA.pdf." A true and correct copy of the email and the attached PDF are attached hereto as Exhibit 105. The first page of the attached PDF bears the title "**EVIDENCE INSURANCE**." See Exhibit 105 at PL105-002. The document states that "[t]he purpose of this evidence of insurance is to provide dwelling insurance protection for your home at the time of closing with the mortgagee listed below." Id. The second page identifies the mortgage lender for the subject property as "Select Portfolio Servicing Inc, ISAOA, PO BOX 7277, SPRINGFIELD OH 45501, 2108069981" in the section designated "1st Mortgagee Information." See Exhibit 105 at PL105-003. The same page also contains designated fields for "First Additional Insured"

and “Second Additional Insured.” No person, business, or organization is identified in either of those fields. Immediately below those fields, however, the document contains the following disclosure: “The definition of the insured is amended to include the person or organization shown above with respect to coverages but only with respect to the premises designated above.” See Exhibit 105 at PL105-003 (emphasis added). The following two pages are titled “**FARMERS IMPORTANT PROPERTY INSURANCE INFORMATION**” and contain information concerning “Causes of Property Loss,” “Building Property Loss Settlement,” and “Personal Property Loss Settlement.” See Exhibit 105 at PL105-005 through PL105-006. **I received this document from Farmers approximately eight months before the June 3, 2024 loss, and I retained it as part of the policy documents Farmers provided to me concerning Policy No. 3872340940.**

**9.** I speak Spanish as my primary language. I requested that Farmers provide me with a Spanish-language version of the Policy. Farmers confirmed that it does not have a Spanish-language version of the Policy. A true and correct copy of Farmers’ written correspondence confirming that it does not have a Spanish-language version of the Policy is attached hereto as **Exhibit 106**.

**10.** On June 4, 2024, I notified Farmers Direct of a burglary and vandalism incident that occurred at my home on June 3, 2024 (“Incident” or “Loss”) and sought coverage under the Policy which was then assigned Claim No. 7007678692-1 (“Claim”). I protected the property by adding a stick that would stop anyone from wanting to open the window from outside. Before the police arrived I prepared an inventory of stolen property

**11.** On October 9th, 2024, I received $16,393.21 (i.e., $3,905.01 for Coverage A – Dwelling and $12,488.20 for Coverage C – Personal Property) after Farmers Direct investigated the claim and accepted coverage as a covered cause of loss under my Policy (Declaration of Mike Saskor ECF Doc 119-2 (“Saskor Decl.”) ¶3 Page ID 4369. Means Decl., ECF Doc. 119-3 Exhibit 10, FD 001059-FD001081“Claim Outcome Letter” Page ID 4776-4797.

**12.** I received a letter from Farmers dated June 10, 2024 stating "Policy requires that you send us this document within 60 days" referring to an attached Proof of Loss form. I completed the Proof of Loss and had it notarized on August 2nd 2024. And Mr. Means told me that he received it on August 5, 2025 which is within 60 days deadline. Mr. Na during the EUO never mentioned any issues with my Proof of Loss.

**13.** My claim was repeatedly denied and subsequently reopened or reversed. True and correct copies of the relevant denial and reopening letters are attached hereto as **Exhibit 107**. On November 22, 2024, I received a letter from Michael Saskor denying my claim based on alleged misrepresentation concerning receipts I submitted to recover depreciation. *Id* at [PL107-001] – [PL107-004]. Fifty-four days later, on January 15, 2025, I received a letter from Mr. Saskor stating that my claim had been reopened and requesting that I provide a copy of the Brilliant order and bank statements within seven days. *Id* at PL107-005–PL107-007. Seven days later, I received another letter from Mr. Saskor denying my claim on the ground that the requested information had not been received. *Id.* at [PL107-008] – [PL107-011]. On July 8, 2025, I received an email from Mr. Saskor responding to my July 7, 2025 letter. *Id* at [PL107-011] – [PL107-022]. In that correspondence, Mr. Saskor stated that the deadline to recover depreciation had expired on April 27, 2025, and that he was closing my claim. *Id*. Also, the payment contents list showed a payment issued for my Dishwasher for $1,910.78 and deducted $314.08 in item #20; a payment issued for my wall-hung Toilet for $1,420.24 no depreciation withheld in iten #27; the painting reduced to zero ($0) in item #23; window reduced to zero ($0) item # 24; no face memorabilia reduced to zero ($0). *Id* at [PL107-021] – [PL107-022]. Between the initial payment on October 29, 2024, and April 27, 2025, **180 days elapsed**. During that period, my claim was effectively denied for approximately 149 days and actively under consideration for only approximately 31 days. Both denials were subsequently reversed. See Saskor Decl. ECF Doc 119-2, p. 114-124, Exhibit 9, Page Id 4481-4491.

**14.** I received a letter from Mike Saskor denying my claim on November 22, 2024 where he alleged misrepresentation regarding receipts submitted to recover depreciation. Id at [PL107-001] to [PL107-004]. Then 54 days later, on January 15n I received a letter from Mike Saskor stating that my claim had been reopened and requested that I provide a copy of Brilliant Order and bank statements in 7 days. Id. at [PL107-005] to [PL107-007]. Then 7 days later I obtained a letter from Mike Saskor stating that my claim had been denied because information had not been received. Id at [PL107-008] to [PL107-011]. Then on July 8th I received an email from Mike Saskor stating that he was responding to my July 7, 2025 letter. Id at [PL107-011] to [PL107-004]. In this letter Mr. Saskor stated that my timeline to recover depreciation ended on April 27, 2025, and that he was closing my claim. **My claim was effectively denied for 149 of the 180 days following the initial payment on October 29, 2024, and through April 27, 2025. During that 180-day period, the claim was actively under consideration for only approximately 31 days. Both denials were subsequently reversed.**

**15.** My Policy includes a California Amendatory Endorsement HA01CA 0108 which states that for Replacement Cost Settlement or Replacement Cost on Contents is amended to provide a 12 month time period for you to notify us of your decision to repair, restore or replace the damaged, destroyed or stolen property. Additional extensions of six months shall be provided to you for good cause. Furthermore, in the event of a loss related to a "state of emergency", as defined under California law, the time period for you to notify us shall not exceed 24 months after the date of actual cash value payment. **See Defendant's RJN No. 11** ECF Doc 23-1, p. 375, Exhibit L, Page ID. 866. I noticed that although Farmers expressly acknowledges Endorsement HA01CA0108 in their own SUF No. 11, Farmers discusses only the amendment concerning "Intentional Loss" and does not disclose or address paragraph 2 of that same endorsement, which modifies the replacement-cost provisions to provide a 12-month period to notify Farmers of the decision to repair, restore, or replace, with additional extensions and, for a qualifying state of emergency, a period not exceeding 24 months. *See* ECF DOC. 117-1, pp. 5-6, SUF No

11 Page ID 4238 – 4239. On November 5, 2024, I notified Farmers that I was planning to replace the stolen property

**16.** On January 14, 2025 I sent an email to Mike Saskor and told him I was dealing with my properties in the middle of the LA Fire Zone. A true and correct copy of this email is attached hereto as **Exhibit 108.** On January 15, 2025 Mike Saskor responded to my email and said "I hope your properties remain safe from the fire." Id. at [PL108-001]. This same day, January 15, 2025, Mr. Saskor issued a letter stating that the status of claim had been changed to 'reopened' since he had placed the claim on denial status on November 22, 2025. Supra ¶13, Exhibit 107 at [PL107-001]. Mr. Saskor's letter stated that I had 7 days to deliver a bank statement and purchase order receipt. *Id.* at [PL107-005]. Then I went back to Mr. Saskor's Supervisor Bryce Spradling who was the one who reversed Mr. Saskor's first denial. On March 25,

**17.** On September 24, 2026, I wrote to Ms. Bernard regarding settlement and explained the severe financial, personal, and medical hardships I have been experiencing. On May 21, 2025, I lost my job after more than 19 years of employment. My unemployment and subsequent financial difficulties have caused significant hardship and adversely affected my health. My California disability benefits ended in May 2026, and since then, I have had no income. At the time of these communications, I had surgery scheduled and needed to complete the required preoperative blood tests. However, I lack the financial resources and transportation necessary to attend the required medical appointments. I live alone and have no family members or friends in the area available to assist me. I had attempted to sell my home, but I was unable to complete the sale because of the property's condition and issues involving my lender. The equity in my home is the only remaining financial resource available to me, but I was unable to access that equity under the circumstances. I explained these circumstances to Ms. Bernard as part of my settlement proposal. Ms. Bernard responded that she could engage in the settlement process only if I signed a confidentiality agreement. I proposed a revised confidentiality agreement that would allow either party to revoke the agreement at any time without requiring the other party's permission. Both parties agreed to that revision.

**18.** On September 25, 2026, I received an email from Ms. Bernard where she stated that "in light of the settlement in principle reached between the parties today, we think it is appropriate to file a Joint Notice of Settlement in the federal court and state court actions on Monday given the pending motions before each court. We will prepare the proposed Joint Notices of Settlement for your review/approval. I will get started on the draft settlement agreement/claim release with the goal of circulating it to you early next week for review/approval. A true and correct redacted copy is attached hereto as **Exhibit 110**.

**19.** On September 27, 2026, I filed a Notice of Settlement in Principle in the federal action. On September 29, 2026, I filed corresponding notices in both related state-court proceedings. Each notice informed the respective court that the parties had reached a settlement agreement and requested that the court refrain from issuing further orders in light of the settlement.

**20.** On September 30, 2026, at 8:30 a.m., Kelly Canby proceeded with the demurrer hearing on behalf of Michelle Bernard in the California state-court action despite the previously filed Notice of Settlement in Principle. Defense counsel asked the court to proceed with the hearing notwithstanding that notice, and the court sustained the demurrer with leave to amend. I did not appear because I understood, based on the parties' settlement communications, that the matter had reached a settlement in principle and relied on the expectation that the hearing would not proceed. Ms. Bernard did not advise me beforehand that she intended to proceed with the hearing. At approximately 9:00 a.m., after the hearing, Ms. Bernard emailed sent me an email characterizing my filed notices as unilateral. This characterization was inconsistent with the earlier settlement communications, including Ms. Bernard's own statements concerning a settlement in principle.

**21.** On September 30, 2026, after the state court sustained Defendants' demurrer with leave to amend, Ms. Bernard contacted me at approximately 3:18 p.m. and transmitted the proposed settlement agreement. She then demanded confirmation by 4:00 p.m. as to whether the parties had reached an agreement concerning the issuance of

settlement checks and resolution of the mortgagee issue, stating that, otherwise, Defendants would notify Judge Wilson that the Court should not defer ruling on the pending dispositive motions and that the parties intended to appear at the October 5, 2026 Final Status Conference. Ms. Bernard further demanded my executed signature page by 4:30 or 5:00 p.m., explaining that doing so would help ensure delivery of the settlement funds before my surgery scheduled for October 14, 2026.

**22.** My insurance policy expressly provides that payments under Coverage A must also be made payable to the mortgagee identified in the policy. **Defendant's RJN No. 11** ECF Doc. 23-1, p. 359, Exhibit L at Page ID 850However, Ms. Bernard's proposed settlement agreement did not specify how settlement payments would be allocated among the different categories of claimed benefits or identify which payments would be subject to the mortgagee-payee provision. Instead, Ms. Bernard proposed issuing the settlement funds in smaller installments and required me to assume responsibility for claims that my mortgage lender might assert against Farmers Direct and Farmers Insurance Exchange. I understood this proposal to be an attempt to structure the payments around the policy's mortgagee-payee requirements while shifting the resulting legal and financial risk to me. I refused to accept that additional obligation because I had not agreed to indemnify Defendants against potential claims by my mortgage lender, and I was unwilling to assume liability for a payment arrangement that I believed could conflict with the policy's contractual requirements. Accordingly, the proposed indemnification provision introduced a material and previously unagreed term into the written settlement agreement, leaving the mortgagee-payment issue unresolved.

**23.** a material term that was not part of the settlement terms previously agreed upon by the parties. Specifically, the proposed agreement sought to circumvent the Policy requirements to not adhere address the interests of the mortgage lender holding a security interest in my primary residence by requiring me to indemnify Defendants Farmers Direct and Farmers Insurance Exchange against claims asserted by the lender. I had not agreed to assume this additional indemnification obligation as part of our prior settlement discussions. This provision would impose a new contractual liability upon me in connection with my mortgage lender's interests

and potential claims against Defendants. The provision was presented in the written settlement agreement circulated on September 30, 2026, after Ms. Bernard had represented on September 25, 2026, that the parties had reached a "settlement in principle." I contend that this newly introduced provision materially altered the previously discussed settlement terms and created an unresolved issue that had not been part of the agreement I understood the parties had reached.

**24.** On October 22, 2026, I received an email from Ms. Bernard that Ms. Bernard wrote directly to me as my name was the only name that appeared in the TO field. In this email, Ms. Bernard mocks my mental health and procedure request. A true and correct copy of this email is attached hero to as **Exhibit 111**

**25.** I recognize that I am not an attorney, and I have the utmost respect for this Court, its procedures, and opposing counsel. If I had the financial means, I would retain legal representation. However, I am experiencing extreme financial hardship and cannot afford an attorney. My residence is my most significant asset, yet its damaged and uninhabitable condition has prevented me from accessing its equity to obtain the financial resources I urgently need. I am not seeking preferential treatment or relief beyond what I believe I am entitled to under the insurance contract. I am simply asking that Defendant Farmers Direct fulfill its contractual obligations and pay the benefits owed under the Policy so that I may restore my home to its pre-loss condition. I respectfully ask the Court to consider my circumstances and the evidence presented, and to afford me a fair opportunity to have my claims determined on their merits.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct based on my personal knowledge.

Executed on October 26, 2026, at Palm Springs, California.

Respectfully submitted,

/s/ Luna D'Sol
**LUNA D'SOL**
Plaintiff, In Pro Per