# PROPOSED SECOND AMENDED COMPLAINT

LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1 thorough 50, inclusive,<br><br>Defendants | CASE NO. : *2:25-cv-10938-SVW-ASx*<br><br>*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*<br><br>**[PROPOSED] SECOND AMENDED COMPLAINT**<br><br>Complaint Filed: August 21, 2025<br><br>Demand for Jury Tril<br><br>Trial Date: November 9, 2026; 9:00 a.m.<br>FSC: TBD. |

1. **PARTIES:** Plaintiff is Luna D'Sol, appearing in propria persona, and she is the 'name insured' in the homeowner insurance Policy No. 3872340940 (herein after "Policy") at issue in this action. Plaintiff is, at all times, a citizen of the State of California, domiciled in and a resident of Palm Springs California, County of Riverside.

2. Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") is an insurance company and the named insurer in this action. Direct was formed in Rhode Island, with its Principal Office of Corporation address at 6301 Owensmouth Ave, Woodland Hills California 91367.[1]

3. On April 8, 2021, Farmers Insurance Exchange and other entities, including Farmers Direct, entered into a Service Agreement pursuant to which Farmers Insurance Exchange provides various services, including but not limited to claims adjustment services, which was approved by Rhode Island Division of Insurance on April 9, 2021. While claims tendered under Farmers Direct insurance policies may be adjusted by employees of Farmers Insurance Exchange pursuant to the terms of the Service Agreement, Farmers Direct retains responsibility for oversight of all business activities of Farmers Direct and Farmers Direct is legally responsible to its policyholder customers for any adjustment activities of Farmers Insurance Exchange related to coverage benefits under insurance policies underwritten by Farmers Direct. [2]

4. **NON-PARTY:** Select Portfolio Servicing Inc, the subject property's mortgage servicer, appears as the 1st Mortgagee and additional insure in Policy No. 3872340940. Any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest. Farmer's cancellation of the policy also applies to agreements under this condition.[3]

5. **JURISDICTION:** This Court has original subject-matter jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution. To the extent Plaintiff asserts a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq.,

[1] *See California Secretary of State File No BA20260063735 Filed on 1/9/2026*
[2] Declaration of Farmer's Direct Corporate Secretary Jessica Brostek ECF Doc. 23-3 ¶5
[3] **Defendant's RJN No. 11** ECF Doc. 23-1, p. 359, Exhibit L at Page ID 850. SUF. No. 10. The Policy was canceled effective September 28, 2024. (Exhibit 104 at [PL104-001]), SUF No. 10.

this Court has jurisdiction to adjudicate that claim, subject to the applicable statutory requirements

6. **VENUE:** Venue is proper in Los Angeles County pursuant to California Code of Civil Procedure § 395 because Defendants maintain business operations in Woodland Hills, California, and substantial portions of the alleged claims-handling activities, communications, and decisions giving rise to this action occurred in Los Angeles County.

7. **THE PROPERTY** Plaintiff and Defendant Farmers Direct entered into a valid homeowners insurance contract, Policy No. 3872340940, covering Plaintiff's primary residence premises at 2275 Belding Dr., Palm Springs, California 92262 ("subject property") for the time period of September 28, 2023, to September 28, 2024.[4]

8. **THE INCIDENTS** were both assigned to Field Inspector Donald Means:

**A.** On or about June 4, 2024, Plaintiff notified Farmers Direct of a burglary and vandalism incident that occurred at Plaintiff's home on June 3, 2024 ("burglary incident") and sought coverage under the Policy No. 3872340940 which was then assigned Claim No. 7007678692-1 ("burglary claim").[5]

**B.** On or about September 27, 2024, Plaintiff notified Farmers Direct of possibility of water intrusion into the master bedroom's standing shower ("shower incident") and sought coverage under the Policy No. 3872340940 which was then assigned Claim No 7000817713-1 ("shower Claim").[6]

9. **THE POLICY:** the Policy No. 3872340940 created on August 14, 2023, for the time period of September 28, 2023, to September 28, 2024, is not interpreted through isolated provisions but construed as a whole, giving effect to all applicable forms, endorsements, and provisions. The Policy is:

**A.** Exhibit A of the First Amended Complaint provided by Defendant on October 16, 2025,[7]

**B.** Exhibit 105 attached in this complaint and that was issued by Defendant on September 10, 2023, from Service Request # 087425449

---

[4] **ECF Doc. 43, ¶ 32, p. 13 Page Id 1620; Declaration of Luna D'Sol ["D'Sol Decl."] ¶4; SUF No.1. Defendant Farmers Direct's Amended Answer to the Complaint**

[5] **Defendant Farmers Direct's Amended Answer to FAC. ECF Doc. 43** ¶ 9, p. 6, Page Id 1613. D'Sol Decl. ¶10. SUF No. 4

[6] **Defendant Farmers Direct's Amended Answer to FAC. ECF Doc. 43** ¶ 9, p. 6, Page Id 1613. D'Sol Decl. ¶10. SUF No. 4

[7] See ECF Doc. 1-2

**C.** Exhibit 104 attached in this complaint and that was issued by Defendant on October 18, 2024, from Service Request # 106810156

**10. TERMS:**

**POLICY COVERAGES:**[8]

**Causes of Property Loss**

Special Perils

**Building Property Loss Settlement**

Extended Loss Settlement

**Personal Property Loss Settlement**

Replacement Cost on Contents

**Deductible**

$2500 applies to each loss

**Special Perils**[9]

When Special Perils is shown for Causes of property Loss, protection applies to real property (Dwelling and Private Structures) for all direct physical loss except for loss excluded under the policy. Protection also applies to Personal Property when direct physical loss is caused by one or more of the specifically listed or named perils as found in the policy. Special Perils is a combination of Broad Names Perils (for contents) and Comprehensive Perils (for buildings). This is BETTER coverage. For Landlord's, theft is not covered, but we do cover loss from burglary.

**EXTENDED REPLACEMENT COST COVERAGE**[10]

is intended to provide for the cost to repair or replace the damaged or destroyed dwelling **without a deduction for physical depreciation.** Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

**Extended Limits**[11]

For the dwelling under Coverage A, this coverage extends the loss settlement to pay for damage, up to 125% of the Coverage A limit shown in the Declarations. For private structures under Coverage

---

[8] *(Exhibit 105 at [PL105-002])*

[9] (Exhibit 105 at [PL105-004])

[10] (Exhibit 105 at [PL104-009])

[11] Exhibit 105 at [PL105-002] and [PL105-005]

B, ww pay up to the Coverage B limit shown in the Declarations. This is the BETTER coverage.

**PROPERTY LOSS SETTLEMENT** Endorsement
(Form HP4520 0113),
**Coverage C** (Personal Property) is settled as follows:

A. Actual Cash Value Settlement which pays subject to the applicable depreciation it pays for the actual cash value of the item at the time of the loss.

B. Replacement Cost on Contents if the property is replaced or repaired then it pays full cost if claimed within 180 days after the date of actual cash value payment for any additional payment on a

**WHAT YOU MUST DO AFTER A LOSS**:

SECTION 1 – CONDITIONS
A. Immediately notify us
B. Protect the property
C. Cooperate with us in the investigation of a claim.
D. Prepare an inventory
E. At any reasonable time and place we designate: 1. show us the damaged property; 2. submit to questions 3. allow us to examine.
F. Submit a Proof of Loss

**WHAT ARE THE SPECIFICALLY LISTED OR NAMED PERILS FOUND IN THE POLICY?**[12]
**We provide coverage if the cause of the loss is:**

Fire Or Lightning
…
Vandalism Or Malicious Mischief
Theft (For Landlord's, theft is not covered, but we do cover loss from burglary)
Falling Objects
Weight Of Ice, Snow Or Sleet
Discharge Or Overflow Of Water Or Steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance
Rupturing, Cracking, Burning Or Bulging of a steam or hot water heating system or of a domestic appliance

[12] Exhibit 105 at [PL105-004]

Freezing of a plumbing, heating air conditioning or automatic fire protective sprinkler system or of a domestic appliance
Sudden And Accidental Damage From Electrical Currents Artificially Generated
Breakage Of Glass Or Safety Glazing Material

11. **AMENDING ENDORSEMENTS:** The Policy No. 3872340940 adds a **California Amendatory Endorsement HA01CA 0108** stating that "Under SECTION I - HOW WE SETTLE A PROPERTY LOSS, the provisions relating to your right to make further claim for any additional payments for Replacement Cost Settlement or Replacement Cost on Contents is amended to provide a 12 month time period for you to notify us of your decision to repair, restore or replace the damaged, destroyed or stolen property. Additional extensions of six months shall be provided to you for good cause. Furthermore, in the event of a loss related to a "state of emergency", as defined under California law, the time period for you to notify us shall not exceed 24 months after the date of actual cash value payment. [13]

## STATEMENT OF FACTS

12. Pursuant to California Insurance Code § 10103.5, Plaintiff is entitled to select a licensed contractor or vendor of her choice to repair, replace, or rebuild damaged property covered under the Policy. This right extends to Plaintiff's selection of qualified professionals to perform covered repairs and restoration of her residence, including work involving structural damage, plumbing, electrical systems, and mold remediation, where covered. Defendant may not improperly restrict Plaintiff's selection of a contractor or condition the payment of covered benefits upon Plaintiff's use of a particular contractor or vendor, subject to the Policy's lawful terms and conditions.

13. Pursuant to California Insurance Code § 10103.5, Plaintiff, as an insured homeowner, is entitled to receive information concerning her homeowners insurance coverage

[13] See Defendant's RJN No. 11 ECF Doc 23-1, p. 375, Exhibit L, Page ID. 86

and claim, including a complete copy of the applicable Policy and its endorsements; information concerning coverage limits, conditions, and exclusions; an itemized written scope-of-loss report within a reasonable time; information regarding claim disputes and applicable appraisal procedures; and access, upon request, to California's Fair Claims Settlement Practices Regulations. These rights are particularly relevant to Plaintiff's claims concerning the disputed replacement-cost deadlines, California Amendatory Endorsement HA01CA 0108, the completeness of the Policy documents provided, and Defendant's handling and adjustment of Plaintiff's reported losses.[14]

14. Plaintiff and mortgagee SPS are entitled to recover payments from insurer under the Policy No. 3872340940 for Coverage A and B.

15. Plaintiff and Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") entered into a valid homeowners insurance contract, Policy No. 3872340940, covering the residence premises at 2275 Belding Dr., Palm Springs, California 92262. Defendant, Farmers Direct Property and Casualty Insurance Company is the specific entity that issued Plaintiff's homeowner's Policy No. 3872340940, effective September 28, 2023 to September 28, 2024. Plaintiff, Luna D'Sol, is the same person as the "Named Insured" on the Policy, where the name [redacted] appears as the "Named Insured" on the Policy documents.[15]

**16.** Policy includes an implied covenant of good faith and fair dealing which requires it to act honestly, fairly, promptly, to reasonably investigate the Claim, to accurately represent rights and duties owed under the Policy and to pay valid claims under the Policy.[16]

**17. Plaintiff's Duties[17]:**

A. On June 4, 2024, Plaintiff reported to Farmers Direct that a burglary and vandalism incident ("Incident") occurred at her on June 3rd, 2024, at her residence located at 2275 E. Belding Drive, Palm Springs, CA 92262 ("Property") on or about June 3, 2024, and sought coverage under the Policy ("Claim").

B. The June 4, 2024, Palm Springs Police Department's report identified the bathroom window as the window that was ajar when Plaintiff discovered the burglary and recorded that the "window used for entry was damaged." The report further

[14] Exhibit 104 at [PL104-016]
[15] Plaintiff's SOF 1-3
[16] Plaintiff's SOF 31
[17] Plaintiff's SOF 11-17

documented "Window — Repair" for "damage done to window." After discovering that the bathroom window had been compromised during the burglary, Plaintiff took steps to prevent further damages and unauthorized entry by placing a stick in the window so that, even if the window were unlocked, it could not be opened. After discovering damage to the dishwasher and a cut water line, Plaintiff pulled out the dishwasher drawer to inspect the condition, placed the drawer back in position, and did not use the dishwasher thereafter to prevent further damages

C. Between June 4, 2024, and August 2, 2024, Plaintiff answered to Defendant's Special Investigating Unit. On September 27, 2024

D. Plaintiff testified in the Examination Under Oath, that after discovering the burglary and before the police arrived, she prepared an

E. Plaintiff allowed adjuster Donnie Means' inspections to the Property on June 6, 2024, and on May 23, 2025; and photographs were taken.

F. On June 10, 2024, Plaintiff received a letter from Farmers Insurance stating "Policy requires that you send us this document within 60 days" referring to an attached Proof of Loss form. Plaintiff's Proof of Loss was notarized on August 2, 2024. And Defendants received it on August 5, 2024, which is within 60 days deadline. Defendants Counsel Mr. Na during the Examination Under Oath asked Plaintiff if Plaintiff was the person who completed the written entries, Plaintiff confirmed that she completed the written entries, and Mr. Na attached the Proof of Loss as Exhibit 2 to the Examination Under Oath which Mr. Means attached as his Exhibit 9.

**18.** On October 29, 2024, Farmers issued the first payment on the claim number 7007678692-1, i.e., $3,905.01 for Coverage A – Dwelling and $12,488.20 for Coverage C– Personal Property.[18]

**19.** On November 5th, 2024, Plaintiff provided notification to Farmers that she was planning to replace the stolen property.[19]

**20.** On January 15, 2025 Farmers Direct' claim adjuster Mike Saskor acknowledged that Plaintiff was in the middle of the Los Angeles Fire Zone dealing with her properties,[20] and on this same day subject to claim number 7007678692-1 Farmers Direct's claims adjuster Mike Saskor issued a letter to Plaintiff giving her 7 days to produce bank statement and a purchase receipt order from Brilliant which Mr. Saskor's manager Bryce Spradling had already investigated from November 22, 2024, to January 7, 2025, resulting in Mr. Spradling reversing Mike Saskor's November 22, 2024 claim's denial based on the same order receipts with merchant Brilliant.

---

[18] Plaintiff's SUF 19
[19] Plaintiff's SUF 21
[20] Plaintiff's SUF 26

**21.** On January 22, 2025, Famers Direct's Mike Saskor issued a denial letter Plaintiff's claim number 7007678692-1 for not delivering the documents in 7 days [21]

**22.** In the Examination Under Oath for claim number 7007678692-1 conducted on September 2024 by Defendant's counsel Mr. John Na, based on the transcript, Mr. Na verbally told Plaintiff "Okay. So again, the bank statements is just as an example; right? We're not saying that you have to send us bank statements. So it's any documents that would evidence your purchase."[22]

**23.** On July 8, 2025 Farmers issued a letter with a copy of the estimate on which payments are based[23], this estimate included $1299.99 for smart wall-hung toilet (Page Id 4491 – item # 27) and $1749.00 + $161.78 tax = $1,910.78 Fisher & Paykel Dishwasher (Page ID 4490– item #20)

**24.** On July 8, 2025, Farmers issued a letter stating that Plaintiff's time to recover depreciation had expired on April 27, 2025, which is 180 days from Farmer's' first payment made on October 29, 2024. [24]

**25.** On June 16, 2025 Farmers Direct issues its final coverage determination (Page Id 4455 mid page). Mr. Albert Pimentel stated "You also mention the toilette was never resolved despite the cleaning estimate costs that were provided to you and mention that it still overflows and does not work properly. We once again question why this was not brought to the Adjuster's attention before and just now being mentioned Your policy does mention the

**26.** On September 27, 2024, in the Examination Under Oath, Defendant's Counsel Mr. Na stated "Okay. Number 20, damage to the premises. And you described four items, a window, electric panel, dishwasher and the toilet."[25]

## NEW DISCOVERED EVIDENCE

---

[21] Plaintiff's SUF 28
[22] Plaintiff's SUF 29
[23] Page ID 4481
[24] Plaintiff's SUF 33
[25] D'Sol Decl., ¶5, EUO, Exhibit 103 at [PL103-057], lines 19-21

**27.** Plaintiff applied for the CalHFA Hardship Assistance program on October 5, 2026, by submitting an application through its website. This program provides up to 12 months of mortgage missed payments for primary residences affected by a California natural disaster between 2023 to 2025 that never has to be repaid.[26]

**28.** Plaintiff's home was affected by Hurricane Hillary that resulted in Palm Springs being declared natural disaster zone by FEMA and California on August 20, 2023. At the time of application, Plaintiff had been 10 months late from her payments.

**29.** The program required Plaintiff to submit homeowner's insurance documents and contractor-related documentation. On **October 19, 2026**, while searching for these records, Plaintiff opened the Mail application on her laptop and entered the term "contractor" in the search bar. As Plaintiff scrolled through the search results, she noticed an email dated November 19, 2024, in her Spam folder from an individual identified as Michael Cantor, whose name she did not recognize or associate with any prior communication.

**30.** Plaintiff opened the email and discovered that it contained four attachments, and in the body of the email a message that Mr. Cantor wrote: "Hello all, Please see the attached Invoice, report and contract. I will invoice the Insurance company. Please reply that you received these documents." Plaintiff never replied or acknowledge this email because Plaintiff had not seen it and no one had communicated to Plaintiff of such expectation.

**31.** The four attachments found in Mr. Cantor's email are related to the Mold Inspections conducted at the subject address:

- **A.** An Invoice addressed to "adjuster Donas" of Farmers Insurance as the name Insurance Company for claim number 70008177137-1 dated November 6, 2024 for $1,795 authored by Michale Cantor – Owner, Senior Inspector off Advanced Property & Mold Inspections
- **B.** A summary list of locations inspected by Mr. Cantor: **i.** SE bathroom containment, **ii.** room outside of bathroom containment, **iii.** outside rear (baseline), **iv.** outside front (baseline).
- **C.** A Mold report Date of Sampling: November 06, 2024. Date of Receipt: November 07, 2024. Date of Report November 08, 2024.
- **D.** A PDF file titled Post-Remediation Mold Inspection Report, File Number 241106-2275 E Belding with a Mold Inspection date November 19, 2024.

[26] https://www.calassistmortgagefund.org/term-sheet

**32.** Michael Cantor, an inspector associated with 2020 Advanced Property & Mold Inspections, performed mold inspection and testing services at Plaintiff's residence in connection with Claim No 7000817713-1. Mr. Cantor's involvement is directly connected to Donnie Means, as evidenced by the inspection documentation, including a cover sheet addressed to Farmers Direct and Means. Furthermore, Mr. Means subsequently confirmed to Plaintiff through text-message communications that he had received the mold inspection report. Mr. Means also arranged for and facilitated payment for the inspection services.

**33.** The November 19, 2024, Post-Remediation Mold Inspection was conducted after a Water Mitigation and Structural Drying had been performed under Mr. Means' direction. Mr. Cantor's recommendation in the report is "Mold remediation is deemed necessary" The embedded Eurofins EMLab P&K laboratory came back with a **MoldSCORE of 300 (HIGH)** in Plaintiff's bedroom**.**

34. The lab analysis explicitly shows an airborne concentration of **3,700 Stachybotrys spores/m³** and **430 Chaetomium spores/m³** right in plaintiff's bedroom. Both of these are toxic, water-damage "marker" spores that only grow on heavily saturated building materials like drywall and framing paper.




**35.** The illustration to the left depicts the layout of the subject property 's ST1 and ST2 areas identified in the mold report. ST1 covers the area where Mr. Means ordered water and mold mitigation. ST2 is the entire subject property's master bedroom where Plaintiff has been sleeping every night. Mr. Cantor's report identified high mold in ST2 area.

36. Mr. Means knew or should have kwon what this report represented and how to act. Mr. Means has sworn under penalty of perjury that he possessed more than five years of professional experience in water mitigation, including inspections, estimating, and project management.[27] Further, Mr. Means indicated over 10 years of experience in:

A. Water mitigation inspections.
B. Preparing restoration estimates.
C. Managing mitigation projects.
D. Supervising mitigation operations as a senior project manager.

37. On November 4, 2024, Mr. Means sent a text message to Plaintiff where Mr. Means wrote that he had seen Plaintiff's video and concerns about the moisture readings that Plaintiff's moisture reader indicated in ST1. Mr. Means wrote that Plaintiff's device was giving her 'false readings' because, as Mr. Means further explained, metal throws the meters off. Plaintiff wrote back "there is no metal here." Mr. Means proceeded to send Mr. Cantor who collected samples from the subject property on November 6, 2024. This test confirmed mold.

38. The discovery of this mold report was reported on the same day, October 19, 2026, to Defendant's counsel, Michelle Bernard. And Ms. Bernard's responded the same day stating that "we are litigation counsel for the company – we are not involved in the claims adjustments process." Ms. Bernard is also aware Plaintiff's cell phone service was disconnected due to Plaintiff's inability to pay.

39. On October 23, 2026, Plaintiff sent an email to Mr. Means' manager, Albert Pimentel, of Farmers Insurance Exchange, to report the mold report findings. Mr. Pimentel has not responded.

**MEDICAL RECORD:**

40. Plaintiff's Primary Physician, Dr. Jason Halpering, from Stonewall Medical Center in Cathedral documented the following medical notes

A. **September 19, 2025**, Plaintiff reported to her medical provider that she had experienced recurring headaches for approximately four months, accompanied by nasal swelling, difficulty breathing, and a persistent sensation of obstruction. Plaintiff reported being unable to expel air through one side of her nose, impaired

[27] ECF Doc. 119-3 ¶ 1

hearing, and intermittent ear popping. Plaintiff further reported an episode approximately two days earlier during which she experienced a sensation of suffocation. Although Plaintiff was able to calm herself through meditation, the sensation of nasal obstruction persisted. These symptoms were documented while Plaintiff continued residing in the property following the previously reported water intrusion and mold-related conditions.

B. **On December 30, 2025**, Plaintiff was evaluated by Jason Halperin, M.D., at DAP Health. The medical record documented Plaintiff's continued difficulty breathing through one nostril, consistent with the nasal obstruction previously reported on September 19, 2025. Dr. Halperin assessed Plaintiff with nasal congestion and referred her to an otolaryngologist (ENT specialist) for further evaluation and management. Plaintiff's medication list also included fluticasone nasal spray.

C. **June 15, 2026 — Emergency Department Visit for Chest Discomfort** at approximately 9:08 p.m., Plaintiff presented to the Emergency Department at Desert Regional Medical Center, located at 1150 North Indian Canyon Drive, Palm Springs, California, complaining of chest pain. The hospital documented a discharge diagnosis of "Chest Discomfort." Plaintiff underwent laboratory testing, including cardiac troponin testing, a chest X-ray, and an electrocardiogram (EKG). Plaintiff was discharged on June 16, 2026, with instructions to follow up with her primary care physician within three to five days.

D. **August 18, 2026 — Emergency Department List** at approximately 12:08 p.m., Plaintiff again presented to the Emergency Department at Desert Regional Medical Center, reporting headaches and swelling of both feet for two days. The hospital documented a discharge diagnosis of "Swelling of Both Feet." Laboratory testing was completed, a chest X-ray was ordered, and an EKG was listed as in progress.

E. Plaintiff was referred to the ENT Group of Los Angeles – Palm Springs Office by her primary doctor. And a surgery has been re-scheduled several times because Plaintiff cannot afford to visit her primary doctor for lab tests

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

## (Against Defendant Farmers Direct Property and Casualty Insurance Company)

**41.** Plaintiff incorporates by reference each and every precedinof this Second Amended Complaint as though fully set forth herein.

**42.** Defendant breached several provisions and obligations under the Policy, including, but not limited to, those governing loss settlement, replacement cost coverage, payment of covered benefits, and the adjustment of insured losses, by unreasonably delaying and withholding payments, failing to account for necessary repair and installation costs, and improperly applying contractual limitations to deny benefits otherwise owed to Plaintiff.

**Existence of a Valid Contract:**

**43.** Plaintiff and Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") entered into a valid and enforceable homeowner's insurance contract under Policy No. 3872340940 ("Policy"), covering Plaintiff's residence at 2275 E Belding Dr Palm Springs CA 92262. The existence of the insurance contract is undisputed, as both Plaintiff and Defendant Farmers Direct have acknowledged the contractual relationship through the Policy, the adjustment of Claim No. 7007678692-1, and payments issued pursuant to that claim.

**Plaintiff's Performance or Excuse for Nonperformance:**

**44.** Plaintiff performed and substantially complied with her contractual obligations under the Policy, including those enumerated in SECTION I – CONDITIONS, "WHAT YOU MUST DO AFTER A LOSS," subsections A through F (ECF No. 23-1, Exhibit L, p. 217). Specifically, Plaintiff (1) promptly notified Defendant of the burglary and vandalism on or about June 4, 2024, resulting in Claim No. 7007678692-1 (ECF No. 119-3, Means Decl. ¶ 3, Page ID 4662); (2) protected the damaged property against further loss by securing the compromised bathroom window and discontinuing use of the damaged dishwasher (ECF No. 119-3, Means Decl. ¶ 9, Page ID 4664; D'Sol Decl. ¶ 10); (3) cooperated with Defendant's Special Investigation Unit between June 4 and August 2, 2024, and submitted to an Examination Under Oath on September 27, 2024 (ECF No. 119-3, Means Decl. ¶¶ 4, 25–26; ECF No. 119-4, Hamilton Decl. ¶ 16(b)); (4) prepared an inventory of stolen property before police arrived (D'Sol Decl. ¶¶ 5, 10; Exhibit 103, PL103-101); (5) permitted Defendant's adjuster, Donnie Means, to inspect and photograph the property on June 6, 2024, and May 23, 2025 (ECF No. 119-3, Means Decl. ¶¶ 11–18, 28–31); and (6) completed and notarized a sworn Proof of Loss on August 2, 2024, which Plaintiff maintains Defendant received on August 5, 2024 (ECF No. 119-3, Means Decl., Exhibit 9; D'Sol Decl. ¶ 12). Accordingly, Plaintiff contends that she substantially performed the contractual duties required to present and substantiate her claim and afforded Defendant extensive opportunities to investigate the reported loss.

**45.** As explained in this complaint, section "Plaintiff's Duties," Defendant Farmers Direct was notified of the loss on June 4, 2024, as required by the insurance policy.

**Defendant's Breach of Contract:**

**46.** Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") breached its contractual obligations under Policy No. 3872340940 by failing to properly investigate, adjust, and pay all benefits owed for Plaintiff's covered loss. Specifically, Defendant

**A.** acknowledged coverage for the June 2024 burglary and vandalism but failed to fully compensate Plaintiff for covered dwelling and personal-property damages,[28]

**B.** imposed a seven-day deadline on January 15, 2025, to produce additional documentation and denied further benefits on January 22, 2025, based on Plaintiff's alleged failure to comply[29]

**C.** continued demanding documentation concerning previously investigated and adjusted items despite Plaintiff's participation in multiple investigations, including the Special Investigation Unit investigation and Examination Under Oath,[30]

**D.** asserted that Plaintiff's right to recover withheld depreciation expired on April 27, 2025, without adequately addressing California Amendatory Endorsement HA01CA 0108, which modifies the Policy's replacement-cost provisions and provides a twelve-month period to notify Defendant of the decision to repair, restore, or replace damaged property;[31]

**E.** recognized replacement values for Plaintiff's damaged wall-hung toilet and Fisher & Paykel dishwasher but allegedly failed to include necessary installation and restoration expenses;[32] and

**F.** failed to adequately evaluate Plaintiff's reported loss-of-use conditions and issued no payments for Additional Living Expenses despite receiving notice of unresolved conditions affecting the residence.[33] Plaintiff alleges that these acts and omissions violated Defendant's obligations under the Policy's applicable loss-settlement,

[28] (ECF No. 119-3, Means Decl. ¶ 26; ECF No. 119-2, Saskor Decl. ¶ 3);
[29] (D'Sol Decl. ¶¶ 13, 16, Exhibits 107–108
[30] (ECF No. 119-3, Means Decl. ¶¶ 4, 25–26; ECF No. 119-4, Hamilton Decl. ¶ 16(b));
[31] (ECF No. 23-1, Exhibit L, Page ID 866; ECF No. 119-2, Exhibit 9, Page ID 4481);
[32] (ECF No. 119-2, Exhibit 9, Page IDs 4490–4491);
[33] (ECF No. 119-1, Exhibit 1, Form HP2000 0205; Plaintiff's April 22, 2025 correspondence)

replacement-cost, and additional-coverage provisions, deprived Plaintiff of contractual benefits, and substantially contributed to her resulting damages.

**47.** Defendant Farmers Direct breached its contractual obligations by failing to administer, adjust, and pay Plaintiff's covered losses in accordance with the Policy No. 3872340940 applicable provisions, endorsements, and conditions. The breaches include, but are not limited to, the following:

A. **Improper Withholding of Depreciation.** Defendant Farmers Direct withheld depreciation from payments for covered dwelling damage without properly applying the Policy's Replacement Cost Settlement provisions and the applicable California Amendatory Endorsement, thereby failing to pay amounts due under the Policy.
B. **Failure to Apply California Amendatory Endorsement HA01CA 0108.** Defendant Farmers Direct failed to apply the California Amendatory Endorsement (Form HA01CA 0108), which modifies the time permitted for an insured to notify the insurer of the decision to repair, restore, or replace damaged property. Instead, Defendant relied upon the more restrictive timing provisions of the base Property Loss Settlement Endorsement to limit Plaintiff's entitlement to replacement-cost benefits.
C. **Improper Payment Conditions Concerning the Mortgagee.** Defendant Farmers Direct sought to condition payment of dwelling-related insurance proceeds upon Plaintiff's agreement to receive such payments without disclosure to her mortgage servicer and to assume responsibility if the mortgage servicer subsequently asserted an interest in those proceeds. These proposed conditions were inconsistent with the Policy's mortgagee provisions and improperly conditioned payment of benefits otherwise due under the insurance contract.
D. **Failure to Pay Benefits Under the Policy as a Whole.** Defendant Farmers Direct failed to apply the Policy's provisions and endorsements together, including the Property Loss Settlement Endorsement, California Amendatory Endorsement, and applicable mortgagee provisions, resulting in the withholding, limitation, or nonpayment of covered benefits to which Plaintiff was contractually entitled.

**Replacement Cost Settlement and California Amendatory Endorsement**

**48.** The Policy No. 3872340940 provides that, where the insured repairs or replaces damaged or destroyed property, the insured "may make further claim for any additional payments for Replacement Cost Settlement," subject to the Policy's applicable terms and conditions.

**49.** The base Property Loss Settlement Endorsement (Form HP4520 0113), § I.1.A.2, provides, among other conditions, that the insured must notify Defendant of the decision to repair or replace within 180 days after the actual cash value payment, provide notice within 30

days following completion, and complete repairs or replacement within one year after the actual cash value payment[34].

**50.** However, the California Amendatory Endorsement (Form HA01CA 0108) expressly modifies the applicable Replacement Cost Settlement timing provision by providing a 12-month period for the insured to notify Defendant of the decision to repair, restore, or replace damaged property, together with additional extensions under the circumstances specified in that endorsement.[35]

**51.** Notwithstanding the California Amendatory Endorsement, Defendant maintained that Plaintiff was entitled only to actual cash value payments and relied upon a 180-day limitation without giving effect to the applicable 12-month notice provision

**52.** The Policy No. 3872340940must be interpreted as a whole, giving effect to its applicable provisions and endorsements. Defendant cannot enforce a provision of the base Policy without accounting for an endorsement that expressly modifies that provision. [36] When the policy language is reasonably susceptible to more than one interpretation, unresolved ambiguities are construed against the insurer and in favor of coverage, consistent with the insured's objectively reasonable expectation.[37] Accordingly, Defendant's application of the 180-day limitation, without giving effect to the California Amendatory Endorsement, constituted a failure to perform its contractual obligations under the Policy.

**53.** Plaintiff suffered a loss covered under the homeowners insurance policy issued by Defendant Farmers Direct. Defendant issued payments under Coverage A — Dwelling and Coverage C — Personal Property. Defendant issued an initial payment of $16,393.21 on October 29, 2024, including $3,905.01 under Coverage A. Defendant subsequently issued additional Coverage A payments of $3,910.20 on May 14, 2025, and $1,381.43 on May 28, 2025, bringing

---

[34] See ECF Doc. 23-1, p. 214
[35] .See ECF Doc. 23-1, p. 234
[36] *AIU Insurance Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822.
[37] *MacKinnon v. Truck Insurance Exchange* (2003) 31 Cal.4th 635, 648; Cal. Civ. Code § 1654.

the total dwelling payments to $9,196.64.[38] Accordingly, Plaintiff sustained property damage for which Defendant recognized and paid benefits under the Policy.

**54.** But for Defendant Farmers Direct's failure to timely and fully pay benefits owed under the Policy, Plaintiff would have had access to additional insurance proceeds necessary to undertake covered repairs and restore the damaged portions of her residence. Defendant's breaches materially contributed to delays in completing those repairs, prolonged the loss of essential household facilities, and resulted in additional restoration expenses and financial losses. These damages were a foreseeable consequence of Defendant Farmers Direct's failure to perform its contractual obligations and seeks recovery to the extent established by the evidence and permitted under California law.

**55.** As a direct and proximate result of Defendant's breaches, Plaintiff sustained damages, including unpaid covered insurance benefits, improperly withheld depreciation to the extent contractually recoverable, unreimbursed covered repair and replacement expenses, and other amounts due under the Policy No. 3872340940.

**56.** Defendant's failure to pay covered benefits contributed to delays in repairing and restoring her residence, resulting in additional repair expenses and financial losses. Plaintiff also incurred mortgage-related charges and experienced financial difficulties affecting her ability to access the equity in her residence. Plaintiff seeks recovery of such consequential losses to the extent they were caused by Defendant's contractual breaches, were reasonably foreseeable, and are recoverable under applicable California law.

**57.** Plaintiff has sustained damages in an amount to be established according to proof at trial, including unpaid contractual benefits, recoverable consequential damages, and applicable prejudgment interest.

**58.** Plaintiff has sustained and continues to suffer damages resulting from the unresolved water-related conditions at the insured Property. Because the kitchen water supply has had to remain shut off to prevent further damage, and Defendant Direct has not issued the

[38] (Saskor Decl., ECF No. 119-2, ¶¶ 3, 10, 12, 20

payment to repair the kitchen, Plaintiff has been deprived of the normal use and functionality of her kitchen, including access to running water for cooking, cleaning, and other essential household activities. Plaintiff contends that the reasonable costs associated with repairing the covered damage, restoring the kitchen's functionality, and any resulting covered loss-of-use expenses are benefits payable under the Policy. Defendant's failure to provide the benefits owed has prolonged these conditions and caused Plaintiff continuing financial hardship and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant Farmers Direct Property and Casualty Insurance Company for:

**A.** Compensatory damages for unpaid benefits due under the Policy No. 3872340940;

**B.** Recoverable consequential damages resulting from Defendant's breach;

**C.** Prejudgment interest as permitted by California Civil Code § 3287;

**D.** Costs of suit as permitted by law; and

**E.** Such other and further relief as the Court deems just and proper.]

Inflation Protection: Your limits for Coverages A, B, C, and Loss of Use reflect the construction price index increase of 8.5%.

**ALE Expenses** From **June 3, 2024, through October 26, 2026**:

- **875 days elapsed**
- **Daily rate:** $35
- **Total:** 875 × $35 = **$30,625**

**SECOND CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing (Insurance Bad Faith) Against Farmers Direct**

**59.** Plaintiff incorporates by reference each and every preceding allegation of this Second Amended Complaint as though fully set forth herein.

**60.** California law implies in every contract, including insurance contracts, a covenant of good faith and fair dealing, requiring that neither party engage in conduct that unfairly interferes with the other party's right to receive the benefits of the agreement. The covenant protects the parties' reasonable contractual expectations and requires insurers to act reasonably and in good faith when investigating, adjusting, and settling covered claims. Accordingly, Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") was obligated to conduct a fair, prompt, and thorough investigation, reasonably evaluate all available evidence, and refrain from unreasonably withholding or delaying payment of benefits owed under the Policy. Defendant breached these obligations by repeatedly demanding documentation concerning previously investigated and paid items, failing to adequately evaluate material evidence, improperly asserting forfeiture of additional policy benefits, and unreasonably delaying or withholding payments necessary to restore Plaintiff's insured property.

**Unreasonable Delay Or Failure To Pay Benefits:**

**61.** From January 22, 2025, through May 9, 2025, Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct"), acting through Property Theft Supervisor Bryce Spradling, subjected Plaintiff to repeated demands for documentation concerning an insured item for which Defendant had previously issued payment, including payment of recoverable depreciation. Despite Plaintiff's repeated communications concerning the prior adjustment and payment, Defendant continued to demand a receipt for the same item and characterized Plaintiff's supporting documentation as inconsistent. On April 28, 2025, Spradling expressly acknowledged that Defendant had thoroughly reviewed Plaintiff's claim and supporting materials, yet asserted that Plaintiff's failure to produce the requested documentation by April 27, 2025, had "voided your ability to recover any funds associated with your claim." Rather than identifying the specific contractual provision authorizing forfeiture of all remaining benefits under these circumstances, Defendant relied on a purported 180-day deadline while failing to address the applicable California Amendatory Endorsement HA01CA 0108 and its

provisions concerning notice of intent to repair, restore, or replace damaged property. Defendant Farmers Direct's continued demands concerning an already adjusted and paid item, together with its blanket assertion that Plaintiff had forfeited the right to recover additional benefits, constituted unreasonable claims-handling conduct and an improper basis for withholding benefits otherwise payable under the Policy. Defendant's conduct substantially contributed to Plaintiff's financial losses, prolonged inability to restore her insured property, and resulting damages.

**62.** Defendant Farmers Direct subjected Plaintiff's claim to multiple investigations and reviews, including an investigation by its Special Investigation Unit ("SIU"), an Examination Under Oath ("EUO"), repeated reviews by Property Theft Supervisor Bryce Spradling, and further review by Supervisor Albert Pimentel. Despite these extensive investigative opportunities, Defendant Farmers Direct continued demanding documentation concerning previously adjusted and paid items, while repeatedly raising the same alleged inconsistencies concerning Plaintiff's claim. Defendant has subsequently continued advancing substantially similar allegations against Plaintiff in this litigation. Plaintiff contends that Defendant's repeated reliance on previously investigated matters, without adequately identifying or resolving the specific factual deficiencies allegedly remaining, demonstrates unreasonable claims handling rather than a full, fair, prompt, and thorough investigation. Defendant's conduct prolonged the resolution of Plaintiff's claim, delayed payment of disputed policy benefits, and substantially contributed to Plaintiff's resulting financial and property-related damages.

**Unreasonable Investigation:**

**63.** Plaintiff suffered a covered loss under the homeowners insurance policy issued by Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") and properly presented a claim seeking compensation for the resulting damages. Despite receiving timely notice and supporting documentation, Farmers Direct failed to conduct a full, fair, prompt, and thorough investigation of all material aspects and bases of Plaintiff's claim. Rather than reasonably evaluating the available evidence and determining the full extent of covered losses, Defendant engaged in repeated and prolonged demands for documentation concerning items it had previously investigated, adjusted, and paid, including recoverable depreciation.

Specifically, between January 22 and May 9, 2025, Defendant, through Property Theft Supervisor Bryce Spradling, continued demanding documentation concerning an already adjusted item while failing to adequately address Plaintiff's outstanding claims for additional policy benefits. On April 28, 2025, Spradling acknowledged that Defendant Farmers Direct had thoroughly reviewed Plaintiff's claim and supporting documentation but nevertheless asserted that Plaintiff had forfeited the right to recover any additional funds because she had not complied with Defendant's demands by April 27, 2025. Plaintiff alleges that Defendant's conduct constituted an unreasonable and inadequate investigation, resulting in the improper withholding and delay of policy benefits, prolonged property damage, financial losses, and loss of use and enjoyment of her insured residence. Farmers Direct's failure to conduct a full, fair, prompt, and thorough investigation was a substantial factor in causing Plaintiff's resulting harm.

**64.** As a further example of Defendant's unreasonable adjustment and undervaluation of Plaintiff's covered personal property, Plaintiff submitted a claim for eight collectible snow globes that Plaintiff had purchased in 8 different countries, including large and special-edition pieces, with an estimated replacement value of $300 each, totaling $2,400. Rather than conducting a reasonable investigation into the individual characteristics, origin, collectible nature, and replacement value of these items, Defendant assigned a combined value of only $300 to all eight snow globes and subsequently deducted $250 in depreciation, resulting in a net payment of merely $50. Plaintiff alleges that Defendant failed to reasonably substantiate its valuation and depreciation determinations and disregarded material characteristics affecting the items' replacement value. This adjustment substantially deprived Plaintiff of the benefits reasonably expected under the Policy and further demonstrates Defendant's alleged failure to conduct a full, fair, and thorough investigation of Plaintiff's covered losses.

**65.** Had Defendant fulfilled its contractual duty of good faith and fair dealing, it would have reasonably evaluated the evidence already in its possession, applied the Policy's applicable loss-settlement provisions, and timely paid all benefits determined to be owed. Instead, Defendant's repeated reliance on previously investigated matters, continued

documentation demands, and asserted forfeiture of benefits allegedly frustrated Plaintiff's right to receive the protection and compensation promised under the Policy.

**66.** As a direct and proximate result of Defendant's alleged breach of the implied covenant of good faith and fair dealing, Plaintiff suffered substantial financial losses, prolonged property damage, loss of use and enjoyment of her primary residence, and other consequential damages in amounts to be established by competent evidence. Defendant's unreasonable investigation, delay, and withholding of policy benefits were substantial factors in causing Plaintiff's resulting harm.

**PRAYER FOR RELIEF**

A. Snow globes

| Description | Amount |
|---|---|
| Eight collectible snow globes | 8 |
| Claimed replacement value per globe | $300 |
| Total claimed replacement value | $2,400 |
| Farmers' assessed value for all eight | $300 |
| Depreciation deducted | $250 |
| **Net payment** | **$50** |
| **Difference from claimed value** | **$2,350** |

B. Farmers paid $327.18 for a window with a total of $1,832.90 as shown in their May 14, 2025, letter issued by Saskor
On March 27, 2026, Farmers paid $11,227.19 to replace one window from the living room and this compared to $1,832.90 there is a gap of $9,394.29

C. Plaintiff's contractor bid is for
Exterior stucco around the window and electrical panel
Toilet and its tank removal. Tanks are compatible with the same brand and the existing toilette maker is no longer in business. This tanks is bolted onto the floor, when removing it damage to the floor is expected
Entire home floor is continued epoxy, in order to leave it the way it was pre-loss condition the flooring has to be redone
Total $93,400 - **$12,165.79 received = $81,234.21**

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation of Good Faith and Fair Dealing (Insurance Bad Faith) Against Farmers Direct**

**67.** Plaintiff incorporates by reference each and every preceding allegation of this Second Amended Complaint as though fully set forth herein

**68.** This breach of contract can be organized in these elements:

A. **WHO — The responsible parties**[39]

**Defendant:** Farmers Direct Property and Casualty Insurance Company.
**Individuals involved:**

- Donnie Means — Property inspector and adjuster.
- Michael Saskor — Claims adjuster.
- Bryce Spradling — Property Theft Supervisor.
- Albert Pimentel — Supervisor involved in claim determinations.

B. **WHAT — The alleged contractual breaches**[40]

| Alleged breach | Supporting evidence |
|---|---|
| Failure to pay all covered losses | Initial payment of $16,393.21, divided between dwelling and personal property |
| Improper documentation deadline | Seven-day demand issued January 15, 2025 |
| Improper denial | January 22, 2025 denial based on missing documentation |
| Improper depreciation deadline | July 8, 2025 letter asserting expiration on April 27, 2025 |
| Incomplete appliance replacement payments | Toilet and dishwasher replacement amounts identified in Farmers' estimate |
| Failure to pay Additional Living Expenses | Farmers acknowledged issuing no ALE payments |

[39] ECF No. 43, ¶¶ 1, 32, Page IDs 1609, 1620; ECF No. 23-3, Brostek Declaration ¶ 5, Page ID 916.
[40] ECF No. 119-2, Exhibit 9, Page IDs 4481, 4490–4491; ECF No. 23-1, Exhibit L, Page ID 866

### C. WHEN — Chronology of the alleged breaches

| Date | Event |
|---|---|
| June 4, 2024 | Plaintiff notified Farmers of the burglary and vandalism. |
| September 27, 2024 | Plaintiff participated in an Examination Under Oath. |
| October 29, 2024 | Farmers issued its initial payment of $16,393.21. |
| November 5, 2024 | Plaintiff notified Farmers of her intention to replace stolen property. |
| January 15, 2025 | Farmers demanded additional documentation within seven days. |
| January 22, 2025 | Farmers denied further benefits based on the alleged failure to provide documentation. |
| April 28, 2025 | Spradling asserted that Plaintiff had forfeited the right to recover additional funds. |
| June 16, 2025 | Pimentel issued a coverage determination questioning previously reported toilet damage. |
| July 8, 2025 | Farmers issued a letter asserting expiration of the depreciation-recovery deadline. |

### D. WHERE — The contractual obligations and affected property[41]

**Location of loss:** Plaintiff's insured residence in Palm Springs, California.

**Contractual provisions implicated:**

I. Section I — Conditions: Duties After Loss.

II. Form HP4520 0113 — Property Loss Settlement.

III. California Amendatory Endorsement HA01CA 0108.

[41] ECF No. 23-1, Exhibit L; ECF No. 119-1, Exhibit 1.

IV. Form HP2000 0205 — Additional Coverages, including Loss of Use.

E. **WHY — Why the conduct allegedly constitutes a breach**

I. Applied the correct replacement-cost deadlines under the policy and its California endorsement.

II. Required documentation beyond what the policy reasonably permitted.

III. Failed to pay necessary costs of restoring covered damaged property.

IV. Withheld benefits despite receiving sufficient evidence establishing entitlement.

V. Failed to pay covered loss-of-use benefits despite notice of conditions affecting the residence.

F. **HOW — The mechanism of breach and resulting harm**

I. **How Farmers breached:** By allegedly withholding covered benefits, applying disputed contractual deadlines, and failing to pay necessary restoration expenses.

II. **How the property remained damaged:** By allegedly paying for replacement items without sufficient installation and restoration costs, leaving covered repairs incomplete.

III. **How the financial harm occurred:** By allegedly withholding funds necessary to restore the residence, resulting in additional expenses, delayed repairs, and financial consequences.

IV. **How the respiratory injuries occurred:** By allegedly failing to disclose known mold contamination, resulting in continued exposure. This theory requires separate proof of duty, causation, and medical injury.

V. **How the conduct constitutes bad faith:** By allegedly continuing to withhold benefits despite possessing evidence supporting coverage, without a reasonable basis for doing so.

**1. False Representation of Material Fact**

**69.** On October 9, 2024, Mr. Means went to the subject property with a contractor to inspect the damage and scope of repair. Mr. Means communicated to Plaintiff that his contractor and Mr. Means himself had not found any issues and that there was no need to open a claim. This contractor was sent to the subject property 3 weeks later

**70.** On November 3, 2024, Plaintiff transmitted to Defendant's representative, Donnie Means, a photograph of her moisture meter displaying an elevated moisture reading in her bedroom, outside the designated containment area established for mold remediation. On November 4, 2024, Mr. Means responded by dismissing Plaintiff's concerns and asserting that her moisture meter was producing a false reading, without identifying any independent testing or objective measurements supporting his conclusion.

**71.** Donnie Means ("Means"), acting in his capacity as Senior Field Claims Representative for Farmers Direct, issued a written claim determination and repair estimate dated October 1, 2024, for claim number 7000817713-1 representing that the covered physical damage to Plaintiff's residence required only $1,803.30 in repairs, including $91.11 for general demolition, with no separate allowance for water extraction, structural drying, or mitigation services. This resulted in no coverage since it was under the $2,500.00 deductible

**72.** In truth, this representation was completely false. As subsequent inspections and the authorized contractor (OC Restoration) proved, the actual necessary scope of emergency demolition and water extraction alone totaled **$5,381.70**—over 298% higher than Mr. Means's entire estimate, and notably *excluding* the actual cost to rebuild the shower.

**Lack of Reasonable Grounds for Believing the Representation Was True**

**73.** Donnie Means ("Means") lacked reasonable grounds for representing that the covered damage to Plaintiff's residence could be adequately addressed through his initial $1,803.30 repair estimate. As the field adjuster responsible for inspecting and evaluating the loss, Means was required to exercise reasonable care in determining the factual basis for his representations concerning the nature and extent of the damage.

A. **Gross Underestimation of Necessary Demolition.** Means initially allocated only $91.11 for general demolition. However, Orange County Restoration Services subsequently documented extensive damage requiring the removal of saturated shower drywall, ceramic tile, the shower curb, and mortar bed, with general demolition costs estimated at $1,316.95. The substantial discrepancy between Means's initial assessment and the

subsequently documented demolition requirements supports Plaintiff's allegation that Means failed to establish a reasonable factual basis for his representation concerning the extent of the damage.

B. **Omission of Necessary Water Mitigation.** Means's initial estimate contained no separate allowance for water extraction, structural drying, or remediation services. Nevertheless, Orange County Restoration Services subsequently documented moisture within the framing and drywall on both sides of the shower wall and identified necessary water-extraction and remediation work totaling $3,653.51. The contractor further confirmed that demolition and mitigation proceeded following approval from a Farmers Insurance adjuster. Plaintiff alleges that these findings demonstrate material deficiencies in Means's initial assessment and support the inference that his representations concerning the extent of the damage were made without reasonable grounds for believing them accurate.

C. **Material Discrepancy Between Initial Assessment and Authorized Work.** Means's initial estimate totaled $1,803.30, whereas Orange County Restoration Services subsequently estimated $5,381.70 for mitigation and demolition alone, excluding reconstruction of the demolished shower. Plaintiff alleges that this discrepancy, considered together with the documented moisture intrusion and extent of the necessary demolition, supports the conclusion that Means failed to exercise reasonable care in ascertaining the facts underlying his representations.

**74.** As a Senior Field Claims Representative entrusted with inspecting and evaluating property damage, Means possessed specialized training, knowledge, and experience in assessing covered losses.[42] Plaintiff alleges that Means failed to exercise reasonable care in evaluating the extent of the water intrusion, necessary demolition, and mitigation requirements. The substantial discrepancies between his initial estimate and the subsequently documented damage support

[42] ECF Doc 119-3, ¶1

Plaintiff's allegation that Means knew, or lacked reasonable grounds for believing otherwise, that his assessment materially understated the scope of the loss.

**Intent to Induce Reliance**

**75.** Means issued his October 1, 2024 written claim determination and repair estimate in his official capacity as Farmers Direct's Senior Field Claims Representative, intending and expecting that Plaintiff would rely upon his representations concerning the nature, extent, and estimated cost of the covered property damage. Means knew that his assessment would be used to determine the scope of authorized repairs, the allocation of insurance benefits, and the handling of Plaintiff's property restoration

**Justifiable Reliance**

**76.** Plaintiff reasonably relied upon Means's representations concerning the extent of the covered damage, including his professional qualifications and claimed experience exceeding five years in senior project management. As Farmers Direct's designated Senior Field Representative, Means occupied a position of specialized knowledge concerning property damage assessments and insurance restoration procedures. Plaintiff alleges that Means's materially understated assessment influenced the initial handling of the loss, restricted the scope of authorized restoration work, and delayed the identification and remediation of additional damage subsequently documented by Orange County Restoration Services.

**Resulting Pecuniary Damages**

**77.** Mr. Means told Plaintiff that she needed to use another contractor rejecting the one she had brought even though she was entitled. Plaintiff obtained another contractor who charged $250 for a report. When Plaintiff asked Mr. Means to refund the expenses that she had incurred because of Mr. Means' request, Mr. Means declined Plaintiff's request. Also, Mr. Means did not approve of this second contractor.

**78.** Plaintiff has faced several medical expenses like co-pays and transportation that today totals $255.00

**79.** As a direct and proximate result of Means's negligent misrepresentations and Plaintiff's reliance thereon, Plaintiff suffered economic losses arising from delayed mitigation,

inadequate initial restoration planning, and additional expenses necessary to address damage omitted from the original assessment.

**80.** Means initially estimated the covered repairs at $1,803.30. However, Orange County Restoration Services subsequently estimated $5,381.70 for necessary mitigation and demolition alone, representing an additional $3,578.40 beyond Means's initial estimate, without accounting for the cost of reconstructing the demolished shower.

**81.** Donnie Means, acting within the course and scope of his duties in connection with the inspection and adjustment of Plaintiff's insured property, knew or reasonably should have known of the presence of mold contamination and the potential health risks associated with continued exposure. Despite receiving information concerning elevated mold conditions, including inspection reports documenting contamination following remediation activities, Means failed to adequately communicate the material findings to Plaintiff or take reasonable steps within the scope of his responsibilities to address the identified conditions. Plaintiff alleges that, as a result of these omissions, she continued occupying areas of the property without knowledge of the documented contamination and suffered respiratory symptoms, physical discomfort, and related damages. Means's alleged failure to exercise reasonable care was a substantial factor in causing or aggravating Plaintiff's injuries.

**82.** But for Donnie Means' failure to disclose the November 2024 mold inspection findings, Plaintiff would have been informed that the post-remediation inspection continued to identify conditions requiring further remediation. Plaintiff alleges that, had these findings been timely disclosed, she would have sought additional remediation, taken reasonable precautions to avoid continued occupancy of the affected bedroom, and pursued appropriate corrective measures. Means' nondisclosure deprived Plaintiff of the opportunity to make informed decisions concerning the safety and restoration of her residence, thereby contributing to prolonged exposure to the reported conditions, delayed remediation, and additional resulting damages, according to proof.

**83.** Plaintiff alleges that the initial understatement of the loss contributed to delays in addressing moisture intrusion, prolonged disruption of the property's use, and additional

restoration expenses. Plaintiff seeks recovery of the actual economic losses proximately caused by her reliance on Means's representations, in an amount according to proof

**84.** Farmers Direct is vicariously liable for the negligent misrepresentation made by its agent, Means.

**85.** As a direct and proximate result of Mr. Means and Farmers Direct's breach of the implied covenant of good faith and fair dealing, Plaintiff suffered substantial financial losses, prolonged property damage, loss of use and enjoyment of her primary residence, and other consequential damages in amounts to be established by competent evidence. Defendant's unreasonable investigation, delay, and withholding of policy benefits were substantial factors in causing Plaintiff's resulting harm.

**PRAYER FOR RELIEF**

**NEGLIGENT MISREPRESENTATION**

WHEREFORE, Plaintiff respectfully requests judgment against Donnie Means as follows:

- **A.** For general and special compensatory damages according to proof, arising from Defendant's negligent misrepresentations and Plaintiff's reasonable reliance thereon;
- **B.** For reasonable expenses incurred as a result of Plaintiff's reliance, including additional property remediation costs, repair expenses, and other consequential economic losses, to the extent legally recoverable;
- **C.** For damages resulting from the loss of use and enjoyment of Plaintiff's residence, to the extent proximately caused by Defendant's negligent misrepresentations and recoverable under California law;
- **D.** For damages arising from physical injury and associated emotional distress, if established by competent evidence and legally recoverable;
- **E.** For prejudgment interest pursuant to California Civil Code § 3287 or § 3288, where applicable;]
- **F.** For costs of suit as permitted by law; and
- **G.** For such other and further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**DECLARATORY RELIEF**
**(28 U.S.C. § 2201; Federal Rule of Civil Procedure 57)**
**(Against Defendant Farmers Direct Property and Casualty Insurance Company)**

86. Plaintiff incorporates by reference all preceding paragraphs of this Second Amended Complaint as though fully set forth herein.

87. This cause of action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and Federal Rule of Civil Procedure 57. Section 2201(a) authorizes a federal court, in a case of actual controversy within its jurisdiction, to declare the rights and other legal relations of interested parties, whether or not further relief is or could be sought. Rule 57 governs the procedure for obtaining declaratory relief. An actual and substantial controversy exists between Plaintiff and Defendant concerning the interpretation, application, and enforcement of the homeowners insurance Policy, including the parties' respective contractual rights and obligations under its replacement-cost provisions and California amendatory endorsements. Plaintiff therefore seeks a judicial declaration resolving these disputed contractual rights and obligations.

88. Plaintiff and Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") entered into a valid homeowners insurance contract, Policy No. 3872340940 ("Policy"), covering Plaintiff's insured residence. Defendant expressly admitted the existence and validity of the Policy in its Amended Answer, ECF No. 43, ¶ 32.

89. The Policy includes California Amendatory Endorsement HA01CA 0108, which modifies the provisions governing replacement-cost settlement. Defendant expressly admitted the inclusion of this endorsement in its Amended Answer, ECF No. 43, ¶ 12.

90. Specifically, under Section I, "How We Settle a Property Loss," Endorsement HA01CA 0108 provides a twelve-month period for the insured to notify Defendant of the decision to repair, restore, or replace damaged, destroyed, or stolen property. The endorsement further provides for additional six-month extensions upon a showing of good cause, subject to its applicable terms and limitations.

91. On October 29, 2024, Defendant issued its initial actual-cash-value payment concerning Plaintiff's June 2024 covered loss.

92. On November 5, 2024, Plaintiff communicated to Defendant her intention to replace stolen property and pursue the applicable replacement-cost benefits. Plaintiff contends that this communication satisfied the notice requirement established by Endorsement HA01CA 0108.

93. Notwithstanding the foregoing, Defendant subsequently asserted that Plaintiff's right to recover withheld depreciation expired on April 27, 2025, based on a 180-day limitation measured from its October 29, 2024 payment.

94. An actual and present controversy exists between Plaintiff and Defendant concerning the interpretation and application of the Policy's replacement-cost provisions, including the relationship between Endorsement HA01CA 0108 and Property Loss Settlement Endorsement HP4520 0113.

95. Defendant's contrary interpretation has resulted in an ongoing dispute concerning Plaintiff's contractual right to seek additional replacement-cost benefits and recover withheld depreciation.

96. A judicial declaration is necessary and appropriate to determine the parties' respective rights and obligations under the Policy and resolve the existing controversy concerning the applicable notice requirements.

## PRAYER FOR DECLARATORY RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment declaring:

**A.** That California Amendatory Endorsement HA01CA 0108 forms an enforceable part of Policy No. 3872340940;

**B.** That the Policy's replacement-cost provisions, including Endorsements HA01CA 0108 and HP4520 0113, must be interpreted together and given effect according to their applicable terms;

**C.** That Plaintiff's November 5, 2024 communication satisfied the applicable contractual notice requirement concerning her intent to replace damaged, destroyed, or stolen property, if established by the evidence;

**D.** The extent to which Defendant may enforce the asserted April 27, 2025 depreciation-recovery deadline in light of the applicable amendatory endorsement; and

**Respectfully submitted,**

Dated: October 26, 2026

/s/ Luna D'Sol
**Luna D'Sol**
Plaintiff, In Pro

# VERIFICATION

I, **Luna D'Sol**, declare:

1. I am the Plaintiff in the above-entitled action and am appearing in propria persona.
2. I have read the foregoing **Second Amended Complaint** and know its contents.
3. The matters stated therein are true of my own personal knowledge, except those matters stated on information and belief, and as to those matters, I believe them to be true.
4. I make this verification in support of the Second Amended Complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 26, , 2026, at Palm Springs, California.

/s/ Luna D'Sol

**Luna D'Sol**
Plaintiff, In Prop

# EXHIBIT 104

**From:** **Operations** operations@farmersinsurance.com
**Subject:** Your Farmers Insurance® Inquiry - Service Request SR# 106810156
**Date:** October 18, 2024 at 10:09
**To:** jravada@icloud.com

O

Policy number: 3872340940

Dear Julio Ravada,

Thank you for contacting Farmers® Insurance. This policy is cancelled effective 09/28/2024. Attached are the requested documents. Best regards.

Alex D

Farmers Insurance®

Personal Information (Confidential)

| | |
|---|---|
| ARS-387234094-0_HOME CHANGE... | ARS-387234094-0_HOME RENEWAL... |

PLAINTIFF'S EXHIBIT
PL104-001

FARMERS
9797 SPRINGBORO PIKE, SUITE 300
DAYTON OH 45448-0002

JULIO R RAVADA
19525 SCHOOL CRAFT ST
RESEDA CA 91335

PLAINTIFF'S
EXHIBIT
PL104-002

**FARMERS**
**9797 SPRINGBORO PIKE, SUITE 300,**
**DAYTON OH 45448-0002**

Your mortgage company was billed for this policy at the name and address listed below. Please call your agent or Farmers representative (as listed on the reverse side) immediately if this information has changed.

SELECT PORTFOLIO SERVICING INC
PO BOX 7277
SPRINGFIELD OH 45501

**JULIO R RAVADA**
**19525 SCHOOL CRAFT ST**
**RESEDA CA 91335**

California
Homeowners Insurance Renewal

**Thank you for renewing your policy with us.**

**What's inside your policy . . .**

It's not just what's inside this policy package that matters (although it's very important). It's what's behind your policy that counts, too.

And that's outstanding people and service. Our goal is to completely satisfy you, our customer, with knowledgeable, caring associates and all day, every day claim service.

In this package, you'll find the following:

– **Important telephone numbers and addresses** for your agent and our Customer Service and Claim offices (located on the reverse side of this page).
– Your **Declarations Page***
  A listing of the coverages and limits you requested and the premium amount for each. Please contact us if this information is different from what you asked for or currently need.
  (*For Massachusetts auto, called Coverage Selections Page.)
– **Endorsements**
  Forms that modify your original contract or coverages you personally selected.
– **Important Notices** that explain your coverages and any changes.

**ADVANTAGE:** Your policy automatically includes Identity Theft Resolution and Credit Protection Service at no additional cost. Visit www.farmers.com/identitytheft for more information.
*Not available in all states - see your policy for details.

**At Your Service-eSERVICE, that is.**
Now you can view your Farmers policy, billing and claim information at online.farmers.com. Employees and members of participating groups: Access eSERVICE through MyBenefits at www.farmers.com/mybenefits.

**PLAINTIFF'S EXHIBIT PL104-003**

# Farmers

## Outstanding People and Service - the Farmers Advantage

Your Policy Number: 3872340940

As a group customer of Farmers, you have a staff of insurance specialists to serve you.

### How To Reach Us

**CUSTOMER SERVICE AND CLAIM DIRECTORY**

| YOU CHOOSE | ONLINE | TELEPHONE | FAX | MAIL |
|---|---|---|---|---|
| **CUSTOMER SERVICE** | **online.farmers.com** or **www.farmers.com/autohome login**<br>– pay your bill<br>– replace your automobile insurance ID card<br>– view your policy or claim information | **800-438-6381**<br>**(800) 438-6381**<br>8:00 am - 11:00 pm, ET Monday - Friday<br>9:00 am - 5:00 pm, ET Saturday | **(866) 743-4890**<br>(include your policy number) | Attention: Services<br>Farmers<br>P.O. Box 6060<br>Scranton, PA 18505-6060<br>(to mail payments, see address below) |
| **CLAIM SERVICE** | **online.farmers.com** or **www.farmers.com/autohome login**<br>check your claim information | **(800) 854-6011**<br>anytime, day or night, to report a claim | ——— | ——— |
| **PAYMENT OPTIONS** | **online.farmers.com** or **www.farmers.com/autohome login**<br>to make a payment online or print an application for our **ExpressIT®** automatic, monthly payment plan | **800-438-6381**<br>**(800) 438-6381**<br>to make a payment | ——— | Farmers<br>P.O. Box 41753<br>Philadelphia, PA 19101-1753 |
| **Email** | **Policyupdate@farmers insurance.com**<br>Please include your name and policy number. | ——— | ——— | ——— |

– Please report claims promptly. If you suspect someone has intentionally filed a false claim, call our fraud hotline at 800-922-FRAUD (800-922-3728). If you think your identity has been stolen or compromised, please call 866-305-7216 or visit www.cyberscout-idtheft.com.

– If your auto is damaged in an accident and is still safe to drive, visit one of our drive-in claim centers. Call us at 800-854-6011 for an appointment.

– **Tired of writing checks?** To pay your bill directly from your checking account, go to online.farmers.com for an ExpressIT application.



PLAINTIFF'S EXHIBIT PL104-004

FARMERS INSURANCE

# Go Green and Simplify Your Life with FarmersOnline

## Save time and the environment

Take full advantage of being a valued customer of Farmers by registering for **FarmersOnline** and **eDelivery.**



Enrolling and going green not only means you'd have more convenient access to your insurance information and easier bill payments, but you'd also help to save the environment.

Going green means doing your part to cut down on pollution and saving more trees. Did you know, **approximately 68 million trees are cut down every year in the U.S. to make paper** and paper products?

## Sign up for ease and convenience with FarmersOnline and eDelivery



**View policies**



**Pay Bills**



**Print auto ID cards**



**Access policy documents**



**Change delivery preferences**



**Receive electronic notifications**

## It’s easy to sign up:

1. Visit **https://www.farmers.com/css/policy-lookup**
2. Enter your policy number and click continue
3. Select “Create Account”
4. Follow the steps to create your profile, select delivery and contact preferences

PLAINTIFF'S EXHIBIT PL104-005

# EARTHQUAKE OFFER OF COVERAGE

______________________________ 3872340940

Name (please print) Policy Number

## HOMEOWNER OFFER OF EARTHQUAKE COVERAGE AND ELECTION FORM

**Your residential property insurance policy does not cover earthquake damage to your home or its contents.**

**To cover earthquake damage to your home and its contents, you need to purchase a separate earthquake insurance policy. The coverage provided by an earthquake insurance policy is different from, and typically more limited than, the coverage provided by your residential property insurance policy.**

**California law requires insurance companies to offer earthquake insurance in conjunction with a residential property insurance policy. If you do not accept the offer of earthquake insurance below within 30 days of the mailing of this notice, your insurance company shall presume that you have not accepted this offer of earthquake insurance.**

**You may purchase earthquake insurance coverage on the following terms:**

**LIMITED EARTHQUAKE COVERAGE**

**(A) Amount of Dwelling/Building Coverage Limit: $** 511,600

**(B) Applicable Deductible: 15%**

**(C) Amount of Contents Coverage Limit: $5,000**

**(D) Amount of Additional Living Expenses Coverage Limit: $1,500**

**(E) Estimated Annual Premium: $** 808.00 **with 15% deductible.**

**The deductible represents the amount of damage your covered property must incur before the earthquake insurance coverage begins. If your covered loss is less than the applicable deductible, you may not receive any payment.**

**EARTHQUAKE ENGINEERING AND DEMOLITION COSTS COVERAGE (E1) $** 121.00

**You may purchase coverage in the amount of 10% of the coverage now afforded your residence for:**

1. **payment of private structural engineering costs to determine the habitability of your residence after an earthquake, and**

2. **the actual demolition costs due to condemnation of your residence as a result of any earthquake.**

**EARTHQUAKE ORDINANCE OR LAW COVERAGE (E2) $** 121.00

**If you have taken verified steps to fit or retrofit your insured residence to reduce earthquake damage hazard, you may purchase coverage to pay reconstruction costs to bring your residence up to local residential building code standards as required by your local government as part of the reconstruction permit process after an earthquake. State law imposes a minimum of $15,000 for this coverage.**



PLAINTIFF'S EXHIBIT PL104-006

**Contact your insurance agent or your insurance company to obtain details regarding this offer of earthquake insurance and other coverage options.**

**If you want the coverages described above, make your selection in the appropriate box and complete the following information.**

- ☐ **Yes, I ask that Limited Earthquake Coverage in the amount quoted above be added to my policy.**
- ☐ **Yes, I ask that Earthquake Engineering and Demolition Costs Coverage (E1) be added to my policy.**
- ☐ **Yes, I ask that Earthquake Ordinance or Law coverage (E2) be added to my policy.**

**IMPORTANT: IN ORDER TO PROCESS YOUR REQUEST TO ADD EARTHQUAKE COVERAGE TO YOUR POLICY, YOU MUST RESPOND TO EACH OF THE FOLLOWING QUESTIONS.**

| | | |
|---|---|---|
| **1.** | **How many chimneys are located on the property?** | ______________ |
| **2.** | **Is there any existing unrepaired structural earthquake damage?** | ☐ **Yes** ☐ **No** |
| **3.** | **Is the property built on a landfill, cliff, ridge, bluff, pier, pillings, stilts or open foundation?** | ☐ **Yes** ☐ **No** |
| **4.** | **Is the property built over known earthquake faults, or within the inundation area of any man made dam?** | ☐ **Yes** ☐ **No** |
| **5.** | **Was the property originally built for other purposes and then later converted to a residential property?** | ☐ **Yes** ☐ **No** |
| **6.** | **Is the dwelling secured to the foundation?** | ☐ **Yes** ☐ **No** |
| **7.** | **Does the dwelling to be insured have cripple walls?** | ☐ **Yes** ☐ **No** |
| | **If answer to above was Yes, are cripple walls braced with plywood or equivalent?** | ☐ **Yes** ☐ **No** |
| **8.** | **Is the water heater secured to building frame?** | ☐ **Yes** ☐ **No** |

**This coverage shall be effective on the day your acceptance of this offer is received by us.**

_______________________________ _______________________________
**Signature** **Date**



PLAINTIFF'S EXHIBIT PL104-007

PLAINTIFF'S
EXHIBIT
PL104-008

# NOTICE TO CONSUMERS —
# CALIFORNIA RESIDENTIAL INSURANCE DISCLOSURE

This disclosure is required by Section 10102 of the California Insurance Code. This form provides general information related to residential property insurance and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and the amount payable. The information provided does not preempt existing California law.

## PRIMARY FORMS OF RESIDENTIAL DWELLING COVERAGE

**You have purchased the coverage(s) checked below. NOTE: Actual Cash Value Coverage is the most limited level of coverage listed. Guaranteed Replacement Cost is the broadest level of coverage.**

____ **ACTUAL CASH VALUE COVERAGE** pays the costs to repair the damaged dwelling minus a deduction for physical depreciation. If the dwelling is completely destroyed, this coverage pays the fair market value of the dwelling at time of loss. In either case, coverage only pays for costs up to the limits specified in your policy.

____ **REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling, without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Coverage only pays for replacement costs up to the limits specified in your policy.

_X_ **EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies.

____ **GUARANTEED REPLACEMENT COST COVERAGE** covers the full cost to repair or replace the damaged or destroyed dwelling for a covered peril regardless of the dwelling limits shown on the policy Declarations Page.

____ **BUILDING CODE UPGRADE COVERAGE** also called Ordinance and Law coverage, is an important option that covers additional costs to repair or replace a dwelling to comply with the building codes and zoning laws in effect at the time of loss or rebuilding. These costs may otherwise be excluded by your policy. Meeting current building code requirements can add significant costs to rebuilding your home. Refer to your policy or endorsement for the specific



PLAINTIFF'S EXHIBIT PL104-009

coverage provided and coverage limits that apply.

**READ YOUR POLICY AND POLICY DECLARATIONS PAGE CAREFULLY:** The policy Declarations Page shows the specific coverage limits you have purchased for your dwelling, personal property, separate structures such as detached garages, and additional living expenses. The actual policy and endorsements provide the details on extensions of coverage, limitations of coverage, and coverage conditions and exclusions. The amount of any claim payment made to you will be reduced by any applicable deductibles shown on your policy Declarations Page. It is important to take the time to consider whether the limits and limitations of your policy meet your needs. Contact your agent, broker, or insurance company if you have questions about what is covered or if you want to discuss your coverage options.

**INFORMATION YOU SHOULD KNOW ABOUT RESIDENTIAL DWELLING INSURANCE**

**AVOID BEING UNDERINSURED:** Insuring your home for less than its replacement cost may result in your having to pay thousands of dollars out of your own pocket to rebuild your home if it is completely destroyed. Contact your agent, broker, or insurance company immediately if you believe your policy limits may be inadequate.

**THE RESIDENTIAL DWELLING COVERAGE LIMIT:** The coverage limit on the dwelling structure should be high enough so you can rebuild your home if it is completely destroyed. Please note:

- The cost to rebuild your home is almost always different from the market value.
- Dwelling coverage limits do not cover the value of your land.
- The estimate to rebuild your home should be based on construction costs in your area and should be adjusted to account for the features of your home. These features include but are not limited to the square footage, type of foundation, number of stories, and the quality of the materials used for items such as flooring, countertops, windows, cabinetry, lighting and plumbing.
- The cost to rebuild your home should be adjusted each year to account for inflation.
- Coverage limits for contents, separate structures, additional living expenses and debris removal are usually based on a percentage of the limit for the dwelling. If your dwelling limit is too low, these coverage limits may also be too low.

You are encouraged to obtain a current estimate of the cost to rebuild your home from your insurance agent, broker, or insurance company or an independent appraisal from a local contractor, architect, or real estate appraiser. If you do obtain an estimate of replacement value, and wish to change your policy limits, contact your insurance company. While not a guarantee, a current estimate can help protect you against being underinsured.

**DEMAND SURGE:** After a widespread disaster, the cost of construction can increase dramatically as a result of the unusually high demand for contractors, building supplies



PLAINTIFF'S EXHIBIT PL104-010

and construction labor. This effect is known as demand surge. Demand surge can increase the cost of rebuilding your home. Consider increasing your coverage limits or purchasing Extended Replacement Cost coverage to prepare for this possibility.

**CHANGES TO PROPERTY:** Changes to your property may increase its replacement cost. These changes may include the building of additions, customizing your kitchen or bathrooms, or otherwise remodeling your home. Failure to advise your insurance company of any significant changes to your property may result in your home being underinsured.

**EXCLUSIONS:** Not all causes of damage are covered by common homeowners or residential fire policies. You need to read your policy to see what causes of loss or perils are not covered. Coverage for landslide is typically excluded. Some excluded perils such as earthquake or flood can be purchased as an endorsement to your policy or as a separate policy. Contact your agent, broker, or insurance company if you have a concern about any of the exclusions in your policy.

**CONTENTS (PERSONAL PROPERTY) COVERAGE DISCLOSURE:**
This disclosure form does not explain the types of contents coverage provided by your policy for items such as your furniture or clothing. Contents may be covered on either an actual cash value or replacement cost basis depending on the contract. Almost all policies include specific dollar limitations on certain property that is particularly valuable such as jewelry, art, or silverware. Contact your agent, broker or insurance company if you have any questions about your contents coverage. You should create a list of all personal property in and around your home. Pictures and video recordings also help you document your property. The list, photos, and video should be stored away from your home.

**CONSUMER ASSISTANCE**
If you have any concerns or questions, contact your agent, broker, or insurance company. You are also encouraged to contact the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.



PLAINTIFF'S
EXHIBIT
PL104-011

Farmers

**Farmers Direct Property and Casualty Insurance Company**
**Homeowners Declarations**

08/14/2023V
ST 04

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 1 of 4<br>**Renewal Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |
| **Named Insured:**<br>JULIO R RAVADA<br>19525 SCHOOL CRAFT ST<br>RESEDA CA 91335 | **First Mortgagee:** Loan 2108069981<br>SELECT PORTFOLIO SERVICING INC<br>ISAOA<br>PO BOX 7277<br>SPRINGFIELD OH 45501 |

**The residence premises covered by this policy is located at:**
2275 E BELDING DR PALM SPRINGS CA 92262

| **Basic Policy Coverages** | **Limits** | **Premiums** |
|---|---|---|
| A - Dwelling | $ 511,600 | $ 1,893.00 |
| B - Private Structures | $ 102,320 | |
| C - Personal Property | $ 358,120 | |
| F - Personal Liability: Each Occurrence | $ 500,000 | $ 38.00 |
| G - Medical Payments to Others: Each Person | $ 10,000 | $ 14.00 |
| Loss of Use | $ 127,900 | |

**Causes of Property Loss**
Special Perils

| | |
|---|---|
| **Building Property Loss Settlement** | |
| Extended Loss Settlement | Incl |
| **Personal Property Loss Settlement** | |
| Replacement Cost on Contents | Incl |
| **Additional Coverages** | |
| Workers Compensation Coverage | $ Incl |
| **Optional Coverages** | |
| Back Up of Sewer, Drain and Sump Pump Coverage $10,000 Limit, $1,000 Deductible | $ 23.00 |
| Schedule of Personal Property (See Attached) | $ 8.00 |
| **Current Annual Premium:** | **$ 1,976.00** |

**Deductible(s)**
$2500 deductible applies to each loss.

**Forms and Endorsements:** HP1000 0902, HP2000 0205, HP3300 0904, HP4520 0113, HP5100 0105, HP6000 0205, HP7000 0902, C117CA 0108, HA01CA 0108, HA30CA 0108, HF1300 0902, HF5800 0420, HF8000 0506



PLAINTIFF'S EXHIBIT PL104-012

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 2 of 4<br><br>**Renewal Effective Date:** 09/28/2023<br><br>**Bill To:** Mortgagee |

**Discounts** for the following have been included in the current annual premium:

* 30% Home Policy Plus, Including Automobile
* 15% Protective Device Discount
* A Special Group Rate Applies

## Rating Information

| | | |
|---|---|---|
| Territory 6 | Within 03 miles of | 1 Family |
| Protection Class 3 | Fire Department: | Frame Construction |
| Within 1000 ft of hydrant | PALM SPRINGS | Built in 1955 |
| Gravel Roof | Insured DOB 11/20/1984 | Updated in 1955 |
| Roof Age 09 Years | | |

PLAINTIFF'S
EXHIBIT
PL104-013

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 3 of 4<br>**Renewal Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

**Messages**

Your policy has been renewed. Please read all items shown on this renewal Declarations Page to ensure that you have your desired protection.

Inflation Protection: Your limits for Coverages A, B, C, and Loss of Use reflect the construction price index increase of 8.5%.

This policy does not provide coverage against the Peril of Earthquake.

This policy does not include Building Code Upgrade Coverage.

California law requires us to inform you of your right to obtain from us an updated replacement cost estimate. The replacement cost is the estimated cost to reconstruct your house on its original site. It is based upon information you have shared with us and we have received from other independent sources including inspections.

You should carefully review your policy to assure yourself that you have purchased sufficient coverage from us. It is your responsibility to know and understand the amount of insurance you have purchased. If you believe anything on your policy declarations or rating information is incorrect, please contact us.

**IF CONTACT BETWEEN YOU AND FARMERS AUTO & HOME FAILS TO PRODUCE A SATISFACTORY SOLUTION TO YOUR PROBLEM, THE CONSUMER SERVICES DIVISION MAY BE CONTACTED AT: 1-800-927-4357 (CA RESIDENTS), 213-897-8921 (OUTSIDE CALIFORNIA) AND 1-800-482-4833 (TDD); ONLINE AT WWW.INSURANCE.CA.GOV; OR YOU MAY WRITE TO: CALIFORNIA DEPARTMENT OF INSURANCE 300 SPRING STREET, SOUTH TOWER, LOS ANGELES, CA 90013.**

**FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING DISCLOSURE: ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT INFORMATION TO OBTAIN OR AMEND INSURANCE COVERAGE OR TO MAKE A CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.**

We offer policies with Extended Replacement Cost Plus to qualified applicants. If you are interested in this additional coverage, or to see if you qualify, please contact us. You also may access the California Department of Insurance Homeowners Coverage Comparison Tool for more information at the following web address: HomeownersCoverageComparison.insurance.ca.gov.

The cost of any coverage indicated as "Incl" is included in the Basic Policy Coverages premium amount.

---

## Additional Insured/Mortgagee

First Mortgagee: Loan 2108069981
SELECT PORTFOLIO SERVICING INC
ISAOA
PO BOX 7277
SPRINGFIELD OH 45501

---

PLAINTIFF'S
EXHIBIT
PL104-014

| | |
|---|---|
| **Policy Number:** 3872340940 | Page 4 of 4 |
| **Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

**Updated Policy Information**

This Policy Does Not Provide Coverage for Flood Damage.
BLANK

For service or claims, call 800-438-6381
or write to: Farmers Auto & Home
PO Box 6060
Scranton, PA 18505

319-02H-1

## Schedule of Personal Property

| Class | Item | Amount of Insurance | Description | | |
|---|---|---|---|---|---|
| 1B | | $1,500 | Blanket Jewelry Coverage ($2500 LIMIT PER ITEM) | | |
| | | | **Blanket Jewelry Premium** | **$** | **8.00** |
| | | | **Total Annual SPP Premium** | **$** | **8.00** |

PLAINTIFF'S
EXHIBIT
PL104-015

# CALIFORNIA RESIDENTIAL PROPERTY INSURANCE BILL OF RIGHTS

## Why we're contacting you

A consumer is entitled to receive information regarding homeowner's insurance.

## What you need to know

The following is a limited overview of information that your insurance company can provide:

- The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.
- A written explanation for any cancellation or nonrenewal of your policy.
- A copy of the insurance policy.
- An explanation of how your policy limits were established.
- In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.
- In the event of a claim, a copy of the Unfair Practices Act and, if requested, a copy of the Fair Claims Settlement Practices Regulations.
- In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.
- An offer of coverage and premium quote for earthquake coverage, if eligible.

A consumer is also entitled to select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

The information provided herein is not all inclusive and does not negate or preempt existing California law. If you have any concerns or questions, contact your agent, broker, insurance company, or the California Department of Insurance consumer information line at (800) 927-HELP (4357) or at www.insurance.ca.gov for free insurance assistance.

This insurer reports claim information to one or more claims information databases. The claim information is used to furnish loss history reports to insurers. If you are interested in obtaining a report from a claims information database, you may do so by contacting:

LexisNexis Consumer Center
P.O. Box 105108 Atlanta, Georgia 30348 1-800-456-6004 www.consumerdisclosure.com

A-Plus
Consumer Inquiry Center
545 Washington Boulevard
Jersey City, New Jersey 07310-1686
1-800-709-8842



PLAINTIFF'S EXHIBIT PL104-016

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
Policy Number: 3872340940

## What you need to know - continued

ISO ClaimSearch – Customer Support
545 Washington Boulevard
Jersey City, New Jersey 07310-1686
1-800-888-4476 option 2, then 2
NJsupport@iso.com



PLAINTIFF'S
EXHIBIT
PL104-017

FARMERS INSURANCE

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
Policy Number: 3872340940

# IMPORTANT INFORMATION HOMEOWNERS INSURANCE DISCOUNT GUIDE

## Why we're contacting you

With Farmers insuring your home, you purchased more than an insurance policy. You gained an insurance company that cares about protecting you and your valuable assets. We will work with you to provide insurance that keeps you and your family safe and secure over the years.

Your home is likely your most valuable physical asset and worthy of every safeguard you can take. Some of these protective measures may also result in a discount on your Farmers homeowners insurance.

## What you need to know

This is a guide to the discounts that are available with our homeowners insurance. We want to be sure you are receiving all the savings which you are eligible for in your state, as discounts vary by state and other regulations. Please check with your Farmers representative, Independent Agent, or our Customer Service Department to find out if you qualify for these discounts.

**WHICH DISCOUNT ARE YOU RECEIVING NOW?**

If you are already receiving a discount, the name of the discount and the savings amount will be shown on your Declarations Page.

**HOW TO ADD A DISCOUNT TO YOUR POLICY**

If you believe you qualify for a discount, but it is not listed on your Declarations Page, call your representative, see the "How To Reach Us" in the front of your policy package for your choice of contact options.

If no additional information is needed, you will begin receiving the discount savings as of the date you notify us of your qualifications. Depending upon the discount, we may ask you to send us additional information, such as a proof of installation or a sales receipt. Our mailing address is located in the "How To Reach Us" section in the front of your policy package.

As soon as we receive the information, we will apply the discount as of the date shown on the written proof, as long as the date is not before the effective date of your current policy term. Otherwise, we will apply the discount as of the effective date of your current policy.

**DISCOUNTS***

**CLAIMS FREE REWARDS**

Our loyal customers with no claims in the past five years benefit from the savings of our Claims Free Rewards Discount.

**HOME POLICY PLUS**

Place both your automobile and homeowners insurance with us and receive our discount. Plus, you'll enjoy the convenience of dialing just one telephone number for all your insurance needs. It's our way of saying, "Thank you for insuring with us!"

PLAINTIFF'S
EXHIBIT
PL104-018

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
Policy Number: 3872340940

## What you need to know - continued

**PROTECTIVE DEVICES**

Installing safety and security devices protects your home from fire and theft losses and that means lower insurance costs. Secure your savings with these types of Protective Devices:

- **Central Fire Alarm** – a fire alarm system that directly notifies your local fire department or an alarm monitoring company in the event of a fire in your home. The principal exclusions are:

- **Automatic Sprinkler System** – a fire protection system designed to automatically turn on and begin extinguishing any flames present in your home. Two types of savings are available, depending if you install an automatic sprinkler system in all areas of your home, or in areas that do not include bathrooms, attics, closets and attached structures.

- **Central Burglar Alarm** – a security system that directly notifies your local police department or an alarm monitoring company if a burglary is suspected at your home.

- **Local Burglar Alarm** – a home security system that is installed on the outside doors and windows of your home. The system sounds an alarm in your home if tampered with, but does not directly notify your local police department.

- **Combination Smoke Detector, Deadbolt Locks and Fire Extinguisher** – smoke detectors are installed on each level of your home, all outside doors of your home are secured with deadbolt locks, and at least one fire extinguisher is readily accessible in your home.

- **Controlled Access Community or Building** – a property in a residential area with limited access points that are manned by uniformed security guards or locked with gates; or building with entry points monitored 24 hours a day by a security guard.

- **Seismic Gas Shut Off Valve** – earthquake-sensitive gas shut-off valves close in the event of an earthquake to prevent gas flow into a structure where earthquake damage could have occurred. This greatly reduces the potential risk of fire and explosion.

**SUPERIOR HOME**

You may qualify for our Superior Home Discount if your home meets these initial requirements:

- it is a one-family dwelling occupied by you;
- it is insured to 100% of its value and Inflation Protection is in effect;
- dependent on the maximum age of the home permitted in your state; and
- your home policy meets our Coverage A and Loss Deductible requirements for your state.

Because of the various requirements for this discount, we recommend that you call for information specific to your state and to discuss changes you can make to your current homeowners coverage in order to qualify for this discount.

**TO RECEIVE PROTECTIVE DEVICE DISCOUNTS**

- **Automatic Sprinkler System**s
  send either a (1) a photo; (2) receipt of installation; or (3) real estate listing showing the sprinkler system as a home feature.

- **Central Fire/Burglar Alarms**
  send either (1) a copy of the contract with the central station, fire or police department; (2) the registration certificate or your membership number with the reporting company; or (3) sales receipt and brochure describing the system.

- **Local Burglar Alarm**
  send either (1) a copy of the sales receipt; or (2) a copy of the purchase or service contract.

PLAINTIFF'S
EXHIBIT
PL104-019

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
Policy Number: 3872340940

* Not available in every state. Please check with your representative, Independent Agent or our Customer Service Department if you qualify.

This guide does not constitute part of the insurance policy or binder of insurance and should not be construed to replace any provision of the policy itself. In the event of any conflict between the policy and this guide, the provisions of the policy shall prevail. It is therefore important that you read your policy carefully for complete details.

PLAINTIFF'S
EXHIBIT
PL104-020

## CALIFORNIA INSUREDS MAY APPOINT ANOTHER INDIVIDUAL TO RECEIVE IMPORTANT INSURANCE DOCUMENTS

If you are the named insured of your policy, you can choose another person, in addition to yourself, to receive information from us - including notices about conditional renewal, nonrenewal, or cancellation.

If you would like to designate a third party to receive these notices, please complete the form on the reverse side of this page.

**Both you and the person you choose need to sign the form.**

Please return the form to:

FARMERS
ATTENTION: SERVICES
PO BOX 6060
SCRANTON PA 18505-6060

Once we receive the **Third-Party Notification Form,** it will be effective within 10 business days.

Please note: If the person you appoint later decides not to be a third-party designee, he or she must inform you and Farmers in writing.

For more information about this option, please call your representative, Independent Agent or our Customer Service Department at the number indicated on the Customer Service and Claim Directory.

**Thank you for insuring with us.**

**NOTE:** In the event of any conflict between the policy, including its endorsements, and this notice, the provisions of the policy and endorsements shall prevail.



PLAINTIFF'S EXHIBIT PL104-021

# THIRD-PARTY NOTIFICATION FORM

**ALL SECTIONS MUST BE COMPLETED FOR THIS FORM TO BE PROCESSED**

**TO BE COMPLETED BY THE NAMED INSURED (PLEASE PRINT CLEARLY)**

Name: ____________________

Address: ____________________

City: ____________________ State: __________ Zip Code: __________

Policy Number: ____________________

Please place a checkmark next to the policy(ies) for which you would like to designate a third party:

☐ Automobile ☐ Condominium ☐ Landlord's Rental Condominium

☐ Motorcycle ☐ Renters

☐ Homeowners ☐ Landlord's Rental Dwelling

I hereby confirm that I designate (Name) ____________________

to receive a duplicate of my cancellation, nonrenewal, and conditional renewal notices related to my Farmers insurance policy(ies).

Signature: ____________________

**THIRD-PARTY DESIGNEE (PLEASE PRINT CLEARLY)**

I, ____________________ hereby agree to be a third-party designee for
(Name)

____________________
(Insured's Name)

As a third-party designee, I agree to receive duplicates of ____________________
(Insured's Name)

cancellation, nonrenewal and conditional renewal notices related to his/her Farmers insurance policy(ies).

Signature: ____________________

Address to which notices must be sent (PLEASE PRINT):

____________________

City: ____________________ State: __________ Zip Code: __________



PLAINTIFF'S EXHIBIT PL104-022

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

# Important Information About Flood Insurance

## Why we're contacting you

Please note that your homeowners policy does **NOT** provide coverage for loss caused by water damage or earth movement, including flood or mudslide, as described in your policy.

## What you need to know

**This means you would not be covered for loss caused by flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind. Additionally, you would not be covered for loss caused by, resulting from, contributed to, or aggravated by mudslide, including landslide, mudflow, debris flow, avalanche or sediment. See your policy restrictions.**

If you are required by your mortgage lender to have flood insurance on your property, or, if you believe that your property is susceptible to flood damage, insurance covering damage from flood is available on most buildings and contents in participating communities through the National Flood Insurance Program ("NFIP").

## We're here to help

Information about flood insurance and community participation in the NFIP can be obtained from your insurance agent or broker or by calling our insurance specialist, toll free, at 1-877-638-0022.

Thank you for insuring with us.



PLAINTIFF'S EXHIBIT PL104-023

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

# Farmers Countrywide Compensation Disclosure Notice

## Why we're contacting you

Consistent with industry practice, when you purchase a product from a carrier that is a part of the Farmers Insurance Group of Companies® - including Farmers®, Foremost®, or Bristol West® carriers - the applicable Farmers Insurance Group® entity may pay the insurance professional for their services to you.

## What you need to know

The services provided to you may include gathering relevant information about your insurance needs; discussing the benefits; terms and conditions of insurance contracts; offering applicable insurance products; selling insurance; and obtaining insurance for consumers. Any transaction typically involves one or more of these activities.

If you purchase an applicable insurance product through an independent contractor agent, we may pay your agent a commission, as well as other forms of compensation for the sale and renewal of the insurance product. This compensation may vary from product to product and by the dollar amount of payments made by you. In addition, some agents may be eligible for various forms of incentive compensation, including cash and non-cash awards (such as conferences and sales support services), based on a variety of factors. Those factors may include the agent's overall sales of applicable products, profitability, or other performance measures we may set in connection with the sale and renewal of our products. Your agent may also receive fees for servicing our products.

If you purchased an insurance product through our group or affinity insurance program, we may also pay an agent or broker representing the employer or organization participating in the program for the sale and renewal of applicable products. We may also pay your employer or association or a third party acting on their or our behalf for the administration and service they provide related to the program. Administration and services may include payroll administration.

If you purchased an insurance product from our call center, the call center representative is an employee, with hourly pay and benefits, of a Farmers Insurance Group entity. Call center representatives are authorized to offer and sell products to you that are issued by Farmers Insurance Exchange and/or its affiliated insurance companies. The call center representative is compensated for the sale of applicable products. This compensation includes commissions and other forms of compensation that may vary from product to product and by the amount of the purchase payment made by you. You should be aware that the amount of the call center representative's compensation may increase in part based upon the relative amount of Farmers Insurance Group or certain non-Farmers Insurance Group products the call center representative sells during a set period. The call center representative also is eligible for additional compensation, including non-cash compensation (such as conferences), based on sales of Farmers Insurance Group, certain non-Farmers Insurance Group products, and overall sales and productivity. In some instances, we may also pay for expenses incurred by call center representatives in connection with events for customers and prospects, training and education opportunities, and other miscellaneous expenses.

Agents and call center representatives may also receive compensation for the sale, renewal and/or servicing of authorized non-Farmers Insurance Group products directly from the issuing company. Non-Farmers Insurance Group products may be sold through Farmers General Insurance Agency, Inc. (FGIA) or Kraft Lake Insurance Agency, Inc. (KLIA).



PLAINTIFF'S EXHIBIT PL104-024

## What you need to know - continued

There may be circumstances where an FGIA or KLIA sales agent is involved in the sale or renewal of a Farmers Insurance Group product. These sales agents will receive commission and may receive other forms of compensation for the sale and/or renewal of the insurance product. This compensation may vary from product to product and by the dollar amount of payments made by you. In addition, the sales agent may receive additional incentive compensation based on a variety of factors. Those factors may include the overall sales of products sold through FGIA and/or KLIA, or other performance measures we may set.

Your agent acts on behalf of the applicable Farmers Insurance Group insurer in connection with the offer and sale of Farmers Insurance products. If your agent sells you a non-Farmers Insurance Group product, your agent acts on behalf of that other company in connection with the offer and sale of that non-Farmers Insurance Group product. Any compensation paid from that company to your agent may be different from that paid by Farmers Insurance.

We appreciate the importance of keeping our customers informed. This information is for your information only and does not require any action from you.

Again, thank you for your business. We look forward to offering you our broad array of products in the years to come.

For Arkansas or New York Customers: You may request additional information from your agent or call center representative about the compensation he or she expects to receive because of the sale of a Farmers Insurance Group or non-Farmers Insurance Group product. Farmers Insurance Group insurers and producers conducting business in New York or for New York consumers or risks are licensed to conduct business in New York.

**Additional information**

* For a list of all insurers in the Farmers Insurance Group of Companies®, please refer to www.farmers.com. Not all insurers are authorized in all states. Not all products, coverages or discounts are available in every state and may vary by state. Restrictions, exclusions, limits and conditions apply.



PLAINTIFF'S EXHIBIT PL104-025

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY

# Important Information About Wildfire Loss Mitigation Benefit

## Why we're contacting you

The Wildfire Loss Mitigation Benefit is available to our Homeowners and Landlord Dwelling policyholders who are enrolled to receive this benefit. With this policy renewal, your policy now includes our HF5800 Wildfire Loss Mitigation Benefit endorsement.

Earlier in 2020, you should have received a letter regarding this benefit, a document of frequently asked questions, and an Enrollment Cancellation signature form which was to be completed, signed, and returned only if you didn't want to be enrolled for this benefit.

## What you need to know

**How is this different from the 2019 pilot program?**

In 2020, we chose to automatically enroll our customers so that they receive this new benefit. Previously, each policyholder had to actively enroll with us in order to receive the benefit.

We conducted a California Wildfire Program Trial in 2019. This was a pilot program to help us assess market demand for loss prevention/loss mitigation services with qualified wildfire resources and certified wildland firefighters. That trial required each customer to actively enroll in the program to potentially save their home from a wildfire. Responses from our customers confirmed there was a need for our potentially home-saving services. Therefore, your policy has now been updated to include the HF5800 endorsement because you chose to accept our automatic enrollment to these valuable services as an added benefit at no additional cost.

**Who is eligible?**

Our Wildfire Loss Mitigation Benefit is provided to all California customers insuring their house with Farmers. Customers are automatically enrolled to receive this benefit but may cancel enrollment.

**What is the cost?**

There is no cost to you for this benefit. It is provided because you insured your house with us. If you later choose to cancel our Wildfire Loss Mitigation Benefit, there will be no premium returned to you.

**How are the services delivered?**

Farmers has contracted with Wildfire Defense Insurance Services, Inc. (WDIS) to provide their Wildfire Defense Services to all our enrolled California customers. WDIS monitors wildfires throughout the western U.S. to determine if specific insured properties are, or will be, threatened. If a property is threatened, WDIS makes efforts to send certified wildland firefighters with appropriate training and wildfire experience to provide potentially home-saving services. While on site, WDIS services include sprinklers, fire blocking gel, ground-applied retardant, and tactics which remove wildfire hazards from around the home.



PLAINTIFF'S EXHIBIT PL104-026

## What you need to do

**No action is needed by you to accept this benefit**

You are already enrolled to receive Farmers Wildfire Loss Mitigation Benefit. This authorizes WDIS to enter the grounds of your enrolled property during a wildfire event. WDIS may also provide wildfire pre-suppression, suppression, post-fire suppression, non-destructive mitigation, and assistance.

## We're here to help

If you change your mind, and no longer want to continue your enrollment for our benefit, or have any other questions, please see "How To Reach Us" in the front of your policy package for your choice of contact options.

Thank you for insuring with us.



PLAINTIFF'S EXHIBIT PL104-027

FARMERS INSURANCE

**Farmers**
FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY
Policy Number: 3872340940

# IMPORTANT NOTICE – CALIFORNIA RESIDENTIAL EARTHQUAKE COVERAGE DISCOUNT/SURCHARGE STATEMENT

## What you need to know

There are no additional discounts offered or surcharges assessed for residential earthquake coverage in the State of California.



PLAINTIFF'S
EXHIBIT
PL104-028

# FARMERS U.S. CONSUMER PRIVACY NOTICE - INDIVIDUAL PRODUCTS

| Facts: | What Do the Farmers Companies Do With Your Personal Information? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. The law gives consumers the right to limit some but not all sharing. The law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social security number and employment information<br>• credit information and other consumer report information<br>• medical information and insurance history<br>• information about any business you have with us, our affiliates, or other companies<br>• income and assets<br>• driving record |
| **How Does Farmers Get Your Information?** | We collect personal information from you as well as through third parties. We also use outside sources to help ensure our records are correct and complete. Third parties include consumer reporting agencies, employers, other financial institutions and adult relatives. Information collected may be kept by the consumer reporting agency and later given to others as permitted by law. We don't control the accuracy of information outside sources give us. If you want to make changes to information we receive about you, you must contact those sources. If we have asked for a consumer report about you, and you write or call us, we will give you the name, address and phone number of the consumer reporting agency. The agency will give you a copy of the report, if you ask the agency and provide proper identification. Consumer reports may tell us about a lot of things, including:<br>• reputation<br>• finances<br>• work history<br>• hobbies and dangerous activities<br>• driving record<br><br>In some limited circumstances, we may ask an agency for an investigative report about you. The agency will ask others about you. We will ask them to contact you as well. |
| **How Does Farmers Use Your Information?** | We collect personal information to help decide if you're eligible for our products or services. We may also use it to help deter fraud or money laundering. How we use this information depends on what products and services you have or want from us. We may also use it to:<br>• administer your products and services<br>• confirm or correct your information<br>• help us run our business<br>• perform business research<br>• market new products to you<br>• process claims and other transactions<br>• comply with applicable laws |
| **How Does Farmers Protect Your Information?** | We take important steps to protect your personal information. We treat it as confidential. We tell our employees to take care in handling it. We limit access to those who need it to perform their jobs. Our service providers must also protect it, and use it only to meet our business needs. We take steps to protect our systems from unauthorized access. We comply with all laws that apply to us. |
| **Reasons Farmers Shares Your Information** | All financial companies need to share personal information to run their everyday business. We may share your personal information with others with your consent, by agreement, or as permitted or required by law. We may share your personal information without your consent if permitted or required by law. For example, we may share your information with our sales agents and businesses hired to carry out services for us. We may share your information with our regulators or with law enforcement. If you have Farmers Group Select$^{sm}$ products because of your relationship with an employer, association or other organization, we may share information with it and its agents as permitted by law. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Farmers chooses to share; and whether you can limit this sharing. |



PLAINTIFF'S EXHIBIT PL104-029

| Reasons We Can Share Your Personal Information | Does Farmers share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, learn if you qualify for coverage, maintain your account(S), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – with service providers we use to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | Yes |
| **For our affiliates' everyday business purposes** – Information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – Information about your creditworthiness | No | Not Applicable |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | No | Not Applicable |

## How Can You Opt Out of Certain Information Sharing?

| | |
|---|---|
| **Affiliate Sharing/Joint Marketing Arrangements** | You may tell us not to share your information with our affiliates for their own marketing purposes or unaffiliated business partners as part of a joint marketing arrangement. Even if you don't opt out, we will not share your information with unaffiliated companies for their own marketing purposes without a joint marketing arrangement.<br>We will give you an opt-out form when we first issue your policy. You can also opt out anytime by contacting us at the address below. |
| **What Happens When I Limit Sharing for an Account I Hold Jointly with Someone Else?** | If you hold a policy or account jointly with someone else, we will accept instructions from either of you, and apply them to the entire policy or account. |

## Definitions:

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. Affiliates can be financial or nonfinancial companies. Our affiliates include life, car, and home insurers. In the future, we may have affiliates in other businesses. |
| **Non-affiliates** | Companies not related by common ownership or control. Non-affiliates can be financial or nonfinancial companies. Farmers does not share personal information with non-affiliates for their marketing purposes. |
| **Joint Marketing Arrangements** | A formal agreement between non-affiliated financial companies that together market financial products or services to you. Our joint marketing partners include financial services companies. |

## How Can I Access and Correct Information?

You may ask us for a copy of the personal information we have on you. Generally, we will provide it as long as it is reasonably locatable and retrievable. You must make your request in writing and provide the account or policy number associated with the information you wish to access. For legal reasons, we may not show you privileged information relating to a claim or lawsuit, unless required by law.

If you tell us that what we know about you is incorrect, we will review it. If we agree, we will update our records. Otherwise, you may dispute our findings in writing. We will include your statement whenever we give your disputed information to anyone outside Farmers.



PLAINTIFF'S EXHIBIT PL104-030

| | |
|---|---|
| **Who is Providing This Notice?** | Farmers Property and Casualty Insurance Company; Farmers Casualty Insurance Company; Farmers Group Property and Casualty Insurance Company; Economy Fire & Casualty Company; Economy Preferred Insurance Company; Farmers Lloyds Insurance Company of Texas; Economy Premier Assurance Company; Farmers Direct Property and Casualty Insurance Company; Farmers General Insurance Agency, Inc. |
| **How Will I Know if This Privacy Notice is Changed?** | We may revise this privacy notice at any time. If we make material changes, we will notify you as required by law. |
| **Questions?** | Send privacy questions to: Farmers Privacy Office, P.O. Box 6060, Scranton, PA 18505-6060 or go to www.farmers.com/privacy-center. |

We can service all of your insurance needs with . . .

Residential Property
(Homeowners, Landlord's and Mobile Home)

Automobile

Boat

Personal Excess Liability

Recreational Vehicle

Snowmobile

Flood*

Some lines of business are not available in all states.

**For more details, please see "How To Reach Us" for your choice of contact options.**

*provided by the National Flood Insurance Program (NFIP) which is managed by the Federal Government

**Farmers**



PLAINTIFF'S
EXHIBIT
PL104-032

**FARMERS**
**9797 SPRINGBORO PIKE, SUITE 300**
**DAYTON OH 45448-0002**

**JULIO R RAVADA**
**2275 E BELDING DR**
**PALM SPRINGS CA 92262**

**PLAINTIFF'S EXHIBIT PL104-033**

# Farmers Direct Property and Casualty Insurance Company
## Homeowners Declarations

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 1 of 3<br>Change 01<br>**Policy Change Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |
| **Named Insured:**<br>JULIO R RAVADA<br>2275 E BELDING DR<br>PALM SPRINGS CA 92262 | **First Mortgagee:** Loan 2108069981<br>SELECT PORTFOLIO SERVICING INC<br>ISAOA<br>PO BOX 7277<br>SPRINGFIELD OH 45501 |

**Residence Premises:** Named Insured's Address Shown Above.

| **Basic Policy Coverages** | **Limits** | **Premiums** |
|---|---|---|
| A - Dwelling | $ 511,600 | $ 1,893.00 |
| B - Private Structures | $ 102,320 | |
| C - Personal Property | $ 358,120 | |
| F - Personal Liability: Each Occurrence | $ 500,000 | $ 38.00 |
| G - Medical Payments to Others: Each Person | $ 10,000 | $ 14.00 |
| Loss of Use | $ 127,900 | |

**Causes of Property Loss**
Special Perils

**Building Property Loss Settlement**
Extended Loss Settlement — Incl

**Personal Property Loss Settlement**
Replacement Cost on Contents — Incl

**Additional Coverages**
Workers Compensation Coverage — $ Incl

**Optional Coverages**
Back Up of Sewer, Drain and Sump Pump Coverage — $ 23.00
$10,000 Limit, $1,000 Deductible
Schedule of Personal Property (See Attached) — $ 8.00

**Prior Annual Premium: $ 1,976.00** **Current Annual Premium: $ 1,976.00**
**Change in premium from 09/28/2023 through 09/28/2024: $ .00**
**This change to your policy is effective back to 09/11/2023.**
**Change in premium from 09/11/2023 through 09/28/2023: $ .00**

**Deductible(s)**
$2500 deductible applies to each loss.

**Forms and Endorsements:** HP1000 0902 HP2000 0205 HP3300 0904 HP4520 0113 HP5100 0105 HP6000 0205 HP7000 0902 C117CA 0108 HA01CA 0108 HA30CA 0108 HF1300 0902 HF5800 0420 HF8000 0506



PLAINTIFF'S EXHIBIT PL104-034

Farmers

**Farmers Direct Property and Casualty Insurance Company**
**Homeowners Declarations**

09/12/2023
ST 04

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 2 of 3<br>Change 01<br>**Policy Change Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

**Discounts** for the following have been included in the current annual premium:

* 30% Home Policy Plus, Including Automobile
* 15% Protective Device Discount
* A Special Group Rate Applies

## Rating Information

| | | |
|---|---|---|
| Territory 6 | Within 03 miles of | 1 Family |
| Protection Class 3 | Fire Department: | Frame Construction |
| Within 1000 ft of hydrant | PALM SPRINGS | Built in 1955 |
| Gravel Roof | Insured DOB 11/20/1984 | Updated in 1955 |
| Roof Age 09 Years | | |

**Messages**

This policy does not provide coverage against the Peril of Earthquake.

This policy does not include Building Code Upgrade Coverage.

California law requires us to inform you of your right to obtain from us an updated replacement cost estimate. The replacement cost is the estimated cost to reconstruct your house on its original site. It is based upon information you have shared with us and we have received from other independent sources including inspections.

You should carefully review your policy to assure yourself that you have purchased sufficient coverage from us. It is your responsibility to know and understand the amount of insurance you have purchased. If you believe anything on your policy declarations or rating information is incorrect, please contact us.

This Declarations Page does not supersede any cancellation notice issued prior to this change.

**IF CONTACT BETWEEN YOU AND FARMERS AUTO & HOME FAILS TO PRODUCE A SATISFACTORY SOLUTION TO YOUR PROBLEM, THE CONSUMER SERVICES DIVISION MAY BE CONTACTED AT: 1-800-927-4357 (CA RESIDENTS), 213-897-8921 (OUTSIDE CALIFORNIA) AND 1-800-482-4833 (TDD); ONLINE AT WWW.INSURANCE.CA.GOV; OR YOU MAY WRITE TO: CALIFORNIA DEPARTMENT OF INSURANCE 300 SPRING STREET, SOUTH TOWER, LOS ANGELES, CA 90013.**

**FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING DISCLOSURE: ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT INFORMATION TO OBTAIN OR AMEND INSURANCE COVERAGE OR TO MAKE A CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.**

The cost of any coverage indicated as "Incl" is included in the Basic Policy Coverages premium amount.

This Policy Does Not Provide Coverage for Flood Damage.

PLAINTIFF'S
EXHIBIT
PL104-035

Farmers **Farmers Direct Property and Casualty Insurance Company** 09/12/2023

**Homeowners Declarations** ST 04

| | |
|---|---|
| **Policy Number:** 3872340940<br>**Policy Term:** From 09/28/2023 to 09/28/2024, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 3 of 3<br>Change 01<br>**Policy Change Effective Date:** 09/28/2023<br>**Bill To:** Mortgagee |

## Additional Insured/Mortgagee

First Mortgagee: Loan 2108069981
SELECT PORTFOLIO SERVICING INC
ISAOA
PO BOX 7277
SPRINGFIELD OH 45501

## Updated Policy Information

Mailing Address Changed Address Of Home Changed

For service or claims, call 800-438-6381
or write to: Farmers Auto & Home
PO Box 6060
Scranton, PA 18505 319-02H-1

## Schedule of Personal Property

| Class | Item | Amount of Insurance | Description | | |
|---|---|---|---|---|---|
| 1B | | $1,500 | Blanket Jewelry Coverage ($2500 LIMIT PER ITEM) | | |
| | | | **Blanket Jewelry Premium** | **$** | **8.00** |
| | | | **Total Annual SPP Premium** | **$** | **8.00** |

PLAINTIFF'S EXHIBIT PL104-036

# EXHIBIT 105

**From:** **Operations** operations@farmersinsurance.com
**Subject:** Your Farmers Insurance® Inquiry - Service Request SR# 087425449
**Date:** September 20, 2023 at 16:13
**To:** jravada@icloud.com

O

Policy number: 3872340940

Dear ,

Thank you for contacting Farmers® Insurance. We are pleased to provide you with the information you requested.

If you have additional questions regarding this request, please reply directly to this email or use the contact information below.

Agency Name: Farmers Customer Care Team. Hours of operation: Monday-Friday: 8a-11p EST, Saturday: 9a-5p EST, and Sunday: 12p-4p EST
Phone Number: 1-800-422-4272
Fax Number: 1-866-743-4890
Email: Click Reply

## SR# 087425449

Thank you for your business.

AlaizaMae P

Farmers® Insurance

Personal Information (Confidential)

**JULIO RAVADA.pdf**
50 KB

PLAINTIFF'S EXHIBIT
**PL105-001**

Farmers
Farmers Direct Property and Casualty Insurance Company
9797 Springboro Pike, Suite 300
Dayton OH 45448-0002

FARMERS INSURANCE

September 20, 2023

JULIO R RAVADA
2275 E BELDING DR
PALM SPRINGS CA 92262

## EVIDENCE OF INSURANCE

| | |
|---|---|
| **Policy Number:** H 387234094 0 | **Policy Form:** Homeowners |
| **Policy Term:** 09/28/2023 to 09/28/2024 | **Transaction Type:** Active |

The purpose of this evidence of insurance is to provide dwelling insurance protection for your home at the time of closing with the mortgagee listed below.

| **Basic Policy Coverages** | **Limits** |
|---|---|
| Dwelling<br>Private Structures | $ 511,600<br>$ 102,320 |
| Coverage 2 (applies to Dwelling) | Extended Limits |
| Personal Property | $ 358,120<br>$ 127,900 |
| Replacement Cost (applies to Personal Property) | Replacement Cost |
| Personal Liability<br>Medical Payments to Others | $ 500,000<br>$ 10,000 each person |

| | |
|---|---|
| **Total Annual Premium:** | $ 1,976 |

| | |
|---|---|
| Please send remittance payments to: | Farmers<br>P.O. Box 41753<br>Philadelphia, PA 19101-1753 |

**The residence premises is located at:**
2275 E BELDING DR
PALM SPRINGS CA 92262

| | |
|---|---|
| **Loss Deductibles:** $ 2,500 | Hurricane Deductible (if applicable): |
| Wind/Hail Deductible (if applicable): | |

PLAINTIFF'S EXHIBIT
PL105-002

Name: JULIO R RAVADA
Policy Number: H 387234094 0

| | |
|---|---|
| **1st Mortgagee Information:**<br>SELECT PORTFOLIO SERVICING INC<br>ISAOA<br>PO BOX 7277<br>SPRINGFIELD OH 45501<br>2108069981 | **2nd Mortgagee Information:** |
| **3rd Mortgagee Information:** | |

**First Additional Insured:**

**Second Additional Insured:**

The definition of the insured is amended to include the person or organization shown above with respect to coverages but only with respect to the premises designated above.

kkd

MEIFORM (0314)

PLAINTIFF'S EXHIBIT
PL105-003

**Farmers**

# IMPORTANT PROPERTY INSURANCE INFORMATION

Please refer to the Declarations Page or Coverage Summary of the Farmers Residential Property Program policy to determine what is a covered cause of loss and which loss settlement method applies for the specific policy.

## CAUSES OF PROPERTY LOSS

### WHAT ARE THE COVERED CAUSES OF LOSS OPTIONS?

Farmers offers insurance protection for the following covered perils:

- Broad Named Perils
- Special Perils
- Comprehensive Perils

**Broad Named Perils**

When Broad Named Perils is shown for Causes of Loss, protection applies when direct physical loss to the Dwelling, Private Structures or Personal Property is caused by one or more of the specifically listed or named perils as found in the policy. This is GOOD coverage. For Landlord's, theft is not covered, but we do cover loss from burglary.

**Special Perils**

When Special Perils is shown for Causes of property Loss, protection applies to real property (Dwelling and Private Structures) for all direct physical loss except for loss excluded under the policy. Protection also applies to Personal Property when direct physical loss is caused by one or more of the specifically listed or named perils as found in the policy. Special Perils is a combination of Broad Names Perils (for contents) and Comprehensive Perils (for buildings). This is BETTER coverage. For Landlord's, theft is not covered, but we do cover loss from burglary.

**Comprehensive Perils**

When Comprehensive Perils is shown for Causes of Property Loss, protection applies for direct physical loss to your property other than a loss excluded under the policy. This is the BEST coverage. For Landlord's, theft is not covered, but we do cover loss from burglary.

### WHAT ARE THE SPECIFICALLY LISTED OR NAMED PERILS FOUND IN THE POLICY?

We provide coverage if the cause of the loss is:

- Fire Or Lightning
- Windstorm Or Hail
- Explosion
- Riot Or Civil Commotion
- Aircraft
- Vehicles
- Smoke
- Vandalism Or Malicious Mischief
- Theft (For Landlord's, theft is not covered, but we do cover loss from burglary)
- Falling Objects
- Weight Of Ice, Snow Or Sleet
- Discharge Or Overflow Of Water Or Steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance
- Rupturing, Cracking, Burning Or Bulging of a steam or hot water heating system or of a domestic appliance



PLAINTIFF'S EXHIBIT PL105-004

- Freezing of a plumbing, heating air conditioning or automatic fire protective sprinkler system or of a domestic appliance
- Sudden And Accidental Damage From Electrical Currents Artificially Generated
- Breakage Of Glass Or Safety Glazing Material

## BUILDING PROPERTY LOSS SETTLEMENT

**WHAT ARE THE LOSS SETTLEMENT OPTIONS FOR DWELLING AND PRIVATE STRUCTURES?**
Farmers offers insurance protection using one of the following types of loss settlements:
- Actual Cash Value
- Replacement Cost
- Functional Replacement Cost
- Extended Limits
- Coverage A Plus

## PERSONAL PROPERTY LOSS SETTLEMENT

**WHAT ARE THE LOSS SETTLEMENT OPTIONS FOR PERSONAL PROPERTY?**
Farmers offers insurance protection using one of the following types of loss settlements:
- Actual Cash Value
- Replacement Cost

**Actual Cash Value**
This means the amount that it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence. It is an estimate of the amount your property is worth at the time of the loss and takes into account the loss of value due to age and normal wear and tear. The actual cash value on a piece of property, whether it is your home stereo or favorite chair may be much less that the cost to replace it new. Payment is capped at the limit of liability shown in the Declarations. This is INDUSTRY STANDARD coverage.

**Replacement Cost**
This pays the full cost to repair or replacement for your house, other buildings, and household contents without any deductions for physical deterioration and depreciation. Payment is capped at the limit of liability shown in the Declarations. This is GOOD coverage.

**Functional Replacement Cost**
This is the cost to repair or replace the damaged part(s) of the building with commonly used construction materials and methods where functionally equivalent to and less costly than antique, custom or obsolete construction materials and methods. Payment is capped at the limit of liability shown in the Declarations. This is GOOD coverage.

**Extended Limits**
For the dwelling under Coverage A, this coverage extends the loss settlement to pay for damage, up to 125% of the Coverage A limit shown in the Declarations. For private structures under Coverage B, we pay up to the Coverage B limit shown in the Declarations. This is the BETTER coverage.

**Coverage A Plus**
For the dwelling under Coverage A, this coverage extends the loss settlement to pay for damage, even if that cost exceeds the limit of liability shown in the Declarations. For private structures under Coverage B, we pay up to the Coverage B limit of liability shown in the Declarations. This is the BEST coverage.

**NOTE:** In the event of any conflict between the policy, including its endorsements, and this notice, the provisions of the policy and endorsements shall prevail.



PLAINTIFF'S
EXHIBIT
PL105-005