LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUNA D'SOL,

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

CASE NO. : *2:25-cv-10938-SVW-ASx*

*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*

**PLAINTIFF LUNA D'SOL STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR DECLARATORY RELIEF**

Complaint Filed: August 21, 2025

Trial Date: October 13, 2026; .

# I. STATEMENT OF UNCONTROVERTED FACTS

## A. EXISTENCE OF A CONTRACT

| FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| **1.** Plaintiff and Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") entered into a valid homeowners insurance contract, Policy No. 3872340940, covering the residence premises at 2275 Belding Dr., Palm Springs, California 92262. | **Defendant Farmers Direct's Amended Answer to the Complaint, ECF Doc. 43, ¶ 32, p. 13 Page Id 1620** ("Farmers Direct admits that it and Plaintiff are parties to Policy No. 3872340940, admits that the Policy is a valid homeowners insurance contract...") **D'Sol Decl. ¶4** "I and Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") entered into a valid homeowners insurance contract, Policy No. 3872340940, covering my primary residence at 2275 Belding Dr., Palm Springs, California 92262" **Defendant's RJN No. 11** ECF Doc. 23-1, p. 328, Exhibit L at Page ID 820. |
| **2.** Defendant, Farmers Direct Property and Casualty Insurance Company is the specific entity that issued Plaintiff's homeowner's Policy No. 3872340940, effective September 28, 2023 to September 28, 2024 (hereinafter the "Policy"). The original Policy is attached as Exhibit A to the First Amended | **Defendant Farmers Direct's Amended Answer to the Complaint, ECF Doc. 43, ¶ 1, p. 2 Page Id 1609** ("Farmers Direct admits that it is a named defendant in this lawsuit, admits that it is the specific entity that issued Plaintiff's homeowner's policy, Farmers Direct Policy No. 3872340940, effective September 28, 2023 to |

| | |
|---|---|
| Complaint. The original Policy in Exhibit A is dated August 14, 2023. | September 28, 2024 (hereinafter the "Policy"), and admits that a certified copy of the original Policy is attached as Exhibit A to the First Amended Complaint (with additional notations and/or page numbering added by Plaintiff) **D'Sol Decl. ¶4** Defendant, Farmers Direct Property and Casualty Insurance Company is the specific entity that issued my homeowner's Policy No. 3872340940, effective September 28, 2023 to September 28, 2024 (hereinafter the "Policy"). The Policy is attached as Exhibit A to the First Amended Complaint ("FAC"). The original Policy in Attachment A is dated August 14, 2023." **Defendant's RJN No. 11** ECF Doc. 23-1, p. 330, Exhibit L at Page ID 821, *[See Farmers Certification of the* ***original*** *policy. On the next page, see date 08/14/2023 on top-right corner of page]*(emphasis added) |
| **3.** Plaintiff, Luna D'Sol, is the same person as the "Named Insured" on the Policy, where the name "JULIO RAVADA" appears as the "Named Insured" on the Policy documents. | **Defendant Farmers Direct's Amended Answer to FAC. ECF Doc. 43 ¶ 4, p. 4, Page Id 1611** ("Farmers Direct also admits that the Policy was issued to "JULIO R RAVADA," who now uses the name "LUNA D'SOL," and that she is the Plaintiff in this |

| | |
|---|---|
| | action and the same person as the "Named Insured" on the Policy.)<br>**D'Sol Decl. ¶4** "I am the same person as the named insured on the policy." |
| **4.** On September 20, 2023, eight days before Policy term begun, Farmers Direct issued an Evidence of Insurance where the definition of insured was amended [PL105-003], and it provided a section called 'Important Property Insurance Information' [PL105-004] to [PL105-005]**.** | **D'Sol Decl.,** ¶7, Exhibit105 at [PL105-003-5]. See also **D'Sol Decl. ¶ 6**, Exhibit 104 at [PL104-009] "**EXTENDED REPLACEMENT COST COVERAGE** is intended to provide for the cost to repair or replace the damaged or destroyed dwelling without a deduction for physical depreciation. Many policies pay only the dwelling's actual cash value until the insured has actually begun or completed repairs or reconstruction on the dwelling. Extended Replacement Cost provides additional coverage above the dwelling limits up to a stated percentage or specific dollar amount. See your policy for the additional coverage that applies." |
| **5.** On or about June 4, 2024, Plaintiff notified Farmers Direct of a burglary and vandalism incident that occurred at Plaintiff's home on June 3, 2024 ("Incident" or "Loss") and sought coverage under the Policy which was then assigned Claim No. 7007678692-1 | **Spradling Decl.** ECF Doc. 1191-1 ¶3, p.2, Page Id: 4270<br>**Defendant Farmers Direct's Amended Answer** to FAC. ECF Doc. 43 ¶ 9, p. 6, Page Id 1613<br>**D'Sol Decl. ¶10**<br>**Saskor Decl**. ECF Doc. 119-2, p. 231, Page |

| | |
|---|---|
| (“Claim”). | ID 4598. The 3rd party electrician’s estimate that Farmers accepted and paid to replace electrical panel reads “MAIN CIRCUIT BREAKER HAS BEEN **VANDALIZED** BEYOND REPAIR AS WELL AS MAIN PANEL COVER”. (emphasis added). |
| **6.** The Policy provides coverage if the cause of the loss is:... Vandalism or Malicious Mischief, Theft (For Landlords, theft is not covered but we do cover loss from burglary) ... Discharge Or Overflow Of Water Or Steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance, Rupturing, Cracking, Burning or Bulging of a stream or hot water heating system or of a domestic appliance. | **D'Sol Decl.,** ¶6, Exhibit105 at [PL105-004] under WHAT ARE THE SPECIFICALLY LISTED OR NAMED PERILS FOUND IN THE POLICY |
| **7**. Farmers Direct ultimately decided to accept coverage for the Claim as a covered cause of loss under the Policy | **Means Decl**. ¶ 26 ECF Doc. 119-3 Defendant’s SUF 56 Page ID 4247. **D’Sol Decl. ¶11** |
| **8.** On October 29, 2024, Farmers Direct completed its investigation, issued a payment to Plaintiff and closed the file. Specifically, a payment was issued to Plaintiff in the amount of $16,393.21 (i.e., | **Declaration of Mike Saskor** ECF Doc 119-2 (“Saskor Decl.”) ¶3 Page ID 4369 **Means Decl.,** ECF Doc. 119-3 Exhibit 10, FD 001059-FD001081“Claim Outcome Letter” Page ID 4776-4797. |

| | |
|---|---|
| $3,905.01 for Coverage A – Dwelling and $12,488.20 for Coverage C – Personal Property). | **D'Sol Decl. ¶11** |
| **9. LIABILITY / RESPONSIBILITY** "On April 8, 2021, Farmers Insurance Exchange and other entities, including Farmers Direct, entered into a Service Agreement pursuant to which Farmers Insurance Exchange provides various services, including but not limited to claims adjustment services, which was approved by Rhode Island Division of Insurance on April 9, 2021. While claims tendered under Farmers Direct insurance policies may be adjusted by employees of Farmers Insurance Exchange pursuant to the terms of the Service Agreement, Farmers Direct retains responsibility for oversight of all business activities of Farmers Direct and Farmers Direct is legally responsible to its policyholder customers for any adjustment activities of Farmers Insurance Exchange related to coverage benefits under insurance policies underwritten by Farmers Direct." | **Declaration of Jessica Brostek** ECF Doc 23-3, p. 3, ¶5. Page ID 916 |
| **10. S**elect Portfolio Servicing Inc, the subject property's mortgage lender, | **D'Sol Decl. ¶¶ 4, 22** **Defendant's RJN No. 11** ECF Doc. 23-1, |

| | |
|---|---|
| appears as the 1st Mortgagee. Any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest. Farmer's cancellation of the policy also applies to agreements under this condition. | p. 359, Exhibit L at Page ID 850 |

**B. PLAINTIFF'S PERFORMANCE**

| FACTS | SUPPORTING EVIDENCE |
|---|---|
| **11.** The Policy contains **WHAT YOU MUST DO AFTER A LOSS:**<br>SECTION 1 – CONDITIONS<br>**A.** Immediately notify us<br>**B.** Protect the property<br>**C**. Cooperate with us in the investigation of a claim.<br>**D.** Prepare an inventory<br>**E.** At any reasonable time and place we designate: 1. show us the damaged property; 2. submit to questions 3. allow us to examine.<br>**F**. Submit a Proof of Loss | **Hamilton Decl**. ECF Doc 119-4, p. 12, ¶21, Page Id 4865 **Defendant's RJN** No.11 ECF Doc. 23-1, p. 217, Exhibit L. |
| **12. [FOR A.) IMMEDIATELY NOTIFY US, supra SOF No. 11]** On or about June 4, 2024, **Plaintiff reported to Farmers Direct** that a burglary and vandalism incident ("Incident") occurred at her on | **Means Decl.** ECF Doc. 119-3, p.2, ¶3, Page Id 4662. "On or about June 4, 2024, Plaintiff first notified Farmers Direct of an alleged burglary and vandalism incident that occurred at Plaintiff's home on on |

| | |
|---|---|
| June 3rd, 2024, at her residence located at 2275 E. Belding Drive, Palm Springs, CA 92262 ("Property") on or about June 3, 2024 and sought coverage under the Policy ("Claim"). | June 3, 2024 ("Incident" or "Loss") and sought coverage under the Policy which was then assigned Claim No. 7007678692-1 ("Claim")." **Defendants SUF 21** ECF Doc. 117-1 Page Id 4242; **Spradling Decl.,** ECF DOC 119-2 p. 2, ¶ 3; **Defendant's Amended Answer**, ECF No. 43, ¶ 9; Claim No. 7007678692-1 / claim file. **D'Sol Decl. ¶10**. |
| **13. [FOR B) PROTECT THE PROPERTY, supra SOF No. 11]** The Palm Springs Police Department's report identified the bathroom window as the window that was ajar when Plaintiff discovered the burglary and recorded that the "window used for entry was damaged." The report further documented "Window — Repair" for "damage done to window." After discovering that the bathroom window had been compromised during the burglary, **Plaintiff took steps to prevent further damages** and unauthorized entry by placing a stick in the window so that, even if the window were unlocked, it could not be opened. | **Means Decl**. "Plaintiff informed me that the bathroom window was now temporarily secured…" ECF Doc 119-3, p. 4, ¶ 9, Page Id 4664. See also Means Exhibit 3, picture of protected window, ECF Doc 119-3, pp. 42-43, 59. PAGE Id 4702-4703 **D'Sol Decl.**, ¶10 "I protected the property by adding a stick that would stop anyone from wanting to open the window from outside." |

| | |
|---|---|
| After discovering damage to the dishwasher and a cut water line, Plaintiff pulled out the dishwasher drawer to inspect the condition, placed the drawer back in position, and did not use the dishwasher thereafter **to prevent further damages** | |
| **14. [FOR C.) COOPERATE WITH US WITH INVESTIGATIONS AND E.2) AT ANY REASONABLE TIME SUBMIT TO QUESTIONS, supra SOF No. 11]** Between June 4, 2024, and August 2, 2024, Plaintiff answered to Defendant's **Special Investigating Unit.** On September 27, 2024, Plaintiff participate in an **Examination Under Oath** completed | **Means Decl,** ECF Doc 119-3, ¶¶ 4, 25, 26; pp. 3, 9.<br>**Hamilton Decl.**, ECF Doc 119-4, ¶ 16.b.;<br>Defendants SUF 45, ECF Doc 117-1. |
| **15. [FOR D.) PREPARE AN INVENTORY LIST, supra SOF No. 11]** Plaintiff testified in the Examination Under Oath, that after discovering the burglary and before the police arrived, she **prepared an inventory/list** of the missing items. | **D'Sol Decl.** ¶5, EUO, Defendant's counsel testimony, Exhibit 103 at [PL103-101] lines 1–4 and [PL103-082] lines 8-12<br>**D'Sol Decl. ¶10** "Before the police arrived I prepared an inventory of stolen property" 2]."]" |
| **16. [AT ANY REASONABLE TIME FOR E.1 SHOW US THE DAMAGED PROPERTY AND E.3 ALLOW US TO EXAMINE, supra SOF No. 11]** Plaintiff allowed adjuster Donnie Means' inspections to the Property | **Means Decl.,** ECF Doc 119-3, pp. 4-6, ¶¶ 11-18, Exhibits 3-4, Page ID 4679.<br>Defendants SUF No 27, ECF Doc 117-1<br>**Saskor Decl.**, ECF Doc 119-2, ¶ 11; Exhibit 2, at [FD001121]. |

| | |
|---|---|
| on June 6, 2024, and on May 23, 2025; and photographs were taken. | **Means Dclr.**, ECF Doc 119-3, pp. 9-11. ¶¶ 28-31, Exhibit 11, Page Id 4799. Defendants SUF No 76, ECF 117-1. |
| **17. PROOF OF LOSS** On June 10, 2024, Plaintiff received a letter from Farmers Insurance stating "Policy requires that you send us this document within 60 days" referring to an attached Proof of Loss form. Plaintiff's Proof of Loss was notarized on August 2nd 2024. And Defendants received it on August 5, 2024 which is within 60 days deadline. Defendants Counsel Mr. Na during the Examination Under Oath asked Plaintiff if Plaintiff was the person who completed the written entries, Plaintiff confirmed that she completed the written entries, and Mr. Na attached the Proof of Loss as Exhibit 2 to the Examination Under Oath which Mr. Means attached as his Exhibit 9. | **Saskor Decl**. ECF 119-2, p. 293, Page Id 4660, Exhibit 18 **Mean Decl**. ECF Doc 119-3, pp. 75-86 and 106-114 Exhibits 5, 9; Page Id 4735-4745 (See Exhibit 5 original dated blank proof of loss sent to Plaintiff dated June 10, 2025. See Exhibit 9 Completed Proof of Loss with notary stamp dated August 2nd 2025) **Means Decl**. ECF Doc 119-3, p. 8, ¶24, Page ID 4668: "Plaintiff eventually did provide a completed Proof of Loss form on or about August 5, 2026" **D'Sol Decl. ¶12** "I received a letter from Farmers dated June 10, 2024 stating "Policy requires that you send us this document within 60 days" referring to an attached Proof of Loss form. I completed the Proof of Loss and had it notarized on August 2nd 2024. And Mr. Means told me that he received it on August 5, 2025 which is within 60 days deadline. Mr. Na during the EUO never mentioned any issues with my Proof of Loss" |

| | |
|---|---|
| | **D'Sol Decl. ¶5**, Exhibit 103, EUO at 55:3-20 [PL103-055] |

1st **Declaratory Relief:** The California Amendatory Endorsement (HA01CA) governs the claim (insured has 12–24 months to complete RC; insurer must pay within 30 days once amounts are agreed);

| FACTS | SUPPORTING EVIDENCE |
|---|---|
| **18.** The Policy adds a **California Amendatory Endorsement HA01CA 0108** stating that "Under SECTION I - HOW WE SETTLE A PROPERTY LOSS, Plaintiff is entitled to make further claim for any additional payments for Replacement Cost Settlement or Replacement Cost on Contents is amended to provide a 12 month time period for you to notify us of your decision to repair, restore or replace the damaged, destroyed or stolen property. Additional extensions of six months shall be provided to you for good cause. Furthermore, in the event of a loss related to a "state of emergency", as defined under California law, the time period for you to notify us shall not exceed | **Defendants Amened Answer** ECF Doc. 43, p. 8, ¶12, Page Id 1615 "Farmers Direct admits that the Policy includes a California Amendatory Endorsement ("HA01CA 0108"), admits that a copy of such endorsement is included within Exhibit A to the First Amended Complaint"<br>**See Defendant's RJN No. 11** ECF Doc 23-1, p. 375, Exhibit L, Page ID. 866.<br>**D'Sol Decl. ¶15** |

| | |
|---|---|
| 24 months after the date of actual cash value payment. | |
| **19.** On October 29, 2024, Farmers issued the first payment on the claim | Saskor Decl. ECF Doc. 119-2, pp. 2, 157, ¶3, Page ID 4524 (See Summary for Dwelling) "Specifically, on or about October 29, 2024, a payment was issued to Plaintiff in the amount of $16,393.21 pertaining to this Claim involving an alleged burglary / vandalism incident on June 3, 2024 ("Incident" or "Loss") at the Plaintiff's residence 2275 E. Beldin Dr., Palm Springs, California 92262 ("Property") (i.e., $3,905.01 for Coverage A – Dwelling and $12,488.20 for Coverage C – Personal Property)." |
| **20.** The October 29th, 2024, first-payment-letter from Farmers states: **Request for Replacement Cost extension:** You may request a six-month extension to submit your claim to recover withheld depreciation if you provide an explanation that shows cause as to why repairs or replacement can't be completed within 365 days of our first actual cash value payment. Please contact your claims representative if you can't submit your replacement cost claim within that time, | **Means Decl.** ECF Doc. 119-3, p. 118, Exhibit 10, Page Id 4778 *NOTICE: FARMERS REPRESEMTED 36 months rather than 24 months* |

| | |
|---|---|
| as we can help you finalize your claim. If the loss or damage relates to an event for which a state of emergency was declared, as defined in Section 8558 of the California Government Code, **you'll have 36 months from the date of our first actual cash value payment to make a claim for replacement cost**. (emphasis added) | |
| **21.** On November 5th, 2024, Plaintiff provided notification to Farmers that she was planning to replace the stolen property | **Saskor Decl**. ECF Doc. 119-2, ¶4, Exhibit 1<br>**Hamilton Dclr.** ECF Doc 119-4, ¶16.e<br>Defendant's SUF 64.ECF Doc 117-1<br>**D'Sol Decl. ¶15** |

**2nd Declaratory Relief** Defendant may not enforce manufactured 7-day/180-day traps or claim-splitting maneuvers where insurer-caused delays and reopenings occurred.

| FACTS | SUPPORTING EVIDENCE |
|---|---|
| **22.** Although Farmers expressly acknowledges Endorsement HA01CA0108 in their own SUF No. 11, Farmers discusses only the amendment concerning "Intentional Loss" and does not disclose or address paragraph 2 of that same endorsement, which modifies the replacement-cost provisions to provide a 12-month period to notify Farmers of the | **D'Sol Decl. ¶15**<br>**Defendant's SUF** ECF DOC. 117-1, pp. 5-6, SUF No 11 Page ID 4238 – 4239<br>**Defendant's RJN No. 11** ECF Doc 23-1, p. 375, Exhibit L, Page ID. 866 (See here for complete California Amendatory Endorsement of the Policy:<br>1. Intentional Loss,<br>2. Hoe we settle a property |

| | |
|---|---|
| decision to repair, restore, or replace, with additional extensions and, for a qualifying state of emergency, a period not exceeding 24 months. | 3. Settlement Options<br>4. Concealment or Fraud<br>5. Cancellation<br>6. Non Renewal) |
| **23.** The body of the policy includes forms: HP1000 (General Definitions / Insurance Agreement and Declarations); HP2000 (Contents and Additional Coverages); HP3300 (Causes of Property Loss); HP4520 (Property Loss Settlement); HP5100 (Property Conditions); HP6000 (Liability, Medical Expenses and Optional Coverages); and HP7000 (General Conditions). | Defendant's RJN No 11 ECF Doc. 23-1, p. 331, Exhibit L, Page ID 822 |
| **24.** In the body of the Policy, PROPERTY LOSS SETTLEMENT Endorsement (Form HP4520 0113), **Coverage C** is settled as follows: **A. Actual Cash Value Settlement** which pays subject to the applicable depreciation it pays for the actual cash value of the item at the time of the loss. **B. Replacement Cost on Contents** if the property is replaced or repaired then it pays full cost if claimed within 180 days after the date of actual cash value payment for any additional payment on a | Defendant's RJN No. 11 ECF Doc 23-1, p. 33, Exhibit L |

| | |
|---|---|
| repaired, restored or replaced damaged or stolen property. *See* Policy, | |
| **25.** On July 8th, 2025, Farmers issued a letter stating that Plaintiff's time to recover depreciation had expired on April 27, 2025 which is 180 days from Farmer's' first payment made on October 29, 2024. | **D'Sol Decl. ¶13** Exhibit 107 at [PL107-001]. Item #20<br>**Saskor Decl**. ECF Doc 119-2, p. 123, Exhibit 9, Page Id 4481. |
| **26.** On January 15, 2025 Farmers acknowledged that Plaintiff was in the middle of the Los Angeles Fire Zone dealing with her properties | **D'Sol ¶ 16,** Exhibit 108 at [PL108-001] |
| **27.** On January 15th, 2025, Farmers Direct gave 7 days to Plaintiff to produce bank statement and a purchase receipt order. | **D'Sol ¶¶ 13, 16,** Exhibit 107 at [PL107-005] |
| **28.** On January 22, 2025, Famers denied Plaintiff's claim for not delivering the documents in 7 days | **D'Sol ¶ 13,** Exhibit 108 at [PL108-001] |
| **29.** In the Examination Under Oath, Defendant's counsel Mr. Na stated "Okay. So again, the bank statements is just as an example; right? We're not saying that you have to send us bank statements. So it's any documents that would evidence your purchase." | **D'Sol Decl., ¶5,** EUO, Exhibit 103 at PL103-051 |
| **30.** Coverage may be limited by a valid endorsement, and where a conflict exists between the main body of an insurance | *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 50, fn. 4; *Continental Casualty Co. v. Phoenix* |

| | |
|---|---|
| policy and an endorsement, the endorsement controls. | *Construction Co.* (1956) 46 Cal.2d 423, 431. |

**3rd Declaratory Relief**: The dishwasher/toilet water intrusion and related finish/code work are part of the same covered loss, not a "new claim";

| **FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| **31.** Farmers Direct admits that the Policy includes an implied covenant of good faith and fair dealing which requires it to act honestly, fairly, promptly, to reasonably investigate the Claim, to accurately represent rights and duties owed under the Policy and to pay valid claims under the Policy | **Defendant's Amended Answer** ECF Doc. 43, ¶42, p. 15, Page ID 1622 |
| **32.** Plaintiff inventory list from Proof of Loss includes a Toilet for $1299.99 and a Fisher Paykel Dishwasher for $1,904.18 | **Saskor Decl**. ECF Doc 119-2 ECF Doc 119-2, pp. 15, 293, n. 8, Exhibit 18, Page ID 4490-4491 |
| **33.** On July 8, 2025 Farmers issued a letter with a copy of the estimate on which payments are based (Page ID 4481), this estimate included $1299.99 for smart wall-hung toilet (Page Id 4491 – item # 27) and $1749.00 + $161.78 tax = $1,910.78 for | **Saskor Decl**. ECF Doc 119-2 ECF Doc 119-2, pp. 13, 113, 123-124, ¶18, Exhibit 9, Page ID 4380, 4490-4491 |

| | |
|---|---|
| Fisher & Paykel Dishwasher (Page ID 4490 – item #20) | |
| **34.** Farmers accepted and paid the Electrician's estimate for $5,050 which includes $500 to "Pull Permits / Meet with the Inspector" | **Saskor Decl**. ECF Doc 119-2 ECF Doc 119-2, p. 230, ¶10.a, Exhibit 14, Page ID 4597. |
| **35.** This bathroom is the same location where Plaintiff claimed the intruders allegedly entered the Property and clogged the toilet. | **ECf doc 119-3 p. 5 ¶12, page id 4665** |
| **36.** On September 27, 2024, in the Examination Under Oath, Defendant's Counsel Mr. Na stated "Okay. Number 20, damage to the premises. And you described four items, a window, electric panel, dishwasher and the toilet." | **D'Sol Decl., ¶5,** EUO, Exhibit 103 at [PL103-057], lines 19-21 |
| **37.** On June 16, 2025 Farmers Direct issues its final coverage determination (Page Id 4455 mid page). Mr. Albert Pimentel stated **"**You also mention the toilette was never resolved despite the cleaning estimate costs that were provided to you and mention that it still overflows and does not work properly. We once again question why this was not brought to the Adjuster's attention before and just now being mentioned Your policy does mention the | **Saskor Decl.** ECF Doc. 119-2 p. 88, Exhibit 7, Page Id 4455 |

| | |
|---|---|
| necessity to notify us immediately of issues. | |
| | |

**4th Declaratory Relief:** Plaintiff remains entitled to submit and recover RC/RD and ALE consistent with the Policy and California law.

| | |
|---|---|
| **38.** Subject to it terms and conditions, the Policy provides SECTION 1 – ADDITIONAL COVERAGE for:<br>1. Loss of Use. The limit of liability for Loss of Use is the total limit for the coverages in A. and B. below.<br>A. Additional Living Expense / Fair Rental Value. This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from fungus and mold. When a covered property loss makes that part of the residence premises where you reside not fit to live in, we will pay, at your choice, either of the following. However, if the residence premises is not your principal place of residence, we will not | **Spradling Decl.,** ECF Doc. 119-1, ¶ 2, Exhibit 1, Policy, at CONTENTS AND ADDITIONAL COVERAGES HP2000 0205; **Defendant's RJN** ECF Doc. 23-1 (Exhibit F and Exhibit H), at FAC, ¶¶ 1, 9 |

| | |
|---|---|
| provide the option under paragraph 2. below.<br>1. Additional Living Expense. We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living. Our liability will not exceed the smallest of:<br>a. payment for the shortest time to either repair or replace the residence premises. This period of time is not limited by the expiration of this policy;<br>b. payment for the shortest time for your household to settle elsewhere, if you permanently relocate. This period of time is not limited by the expiration of this policy; or<br>c. the limit of liability for Loss of Use as specified in the policy Declarations | |
| **39.** A non-working window in a home makes the house inhabitable | |
| **40. Notice of Unresolved Home Conditions** In the April 22, 2025 email, Plaintiff informed Farmers that her dishwasher remained dysfunctional, her toilet was broken, her electrical panel posed a fire hazard, and a poorly secured window jeopardized her safety. | |

| | |
|---|---|
| Plaintiff stated that these unresolved conditions had persisted for approximately ten months and had severely diminished her quality of life. | |
| **41.** Farmers Direct admits that the payments it issued on the Claim did not include any amount for alleged Additional Living Expenses. | **Defendant's Amended Answer** |

**REPLY TO DEFENDANT'S AMENDED ANSWER**

| Item | Plaintiff's Stated Allegation (FAC) | Defendant's Answer / Affirmative Defense | Rightful Legal Concession / Deemed Admission |
|---|---|---|---|
| **1** | **Identity and Standing:** Plaintiff Luna D'Sol is the exact same individual as "Julio R. Ravada" named on the contract. | **Admitted.** Farmers admits Plaintiff uses the name Luna D'Sol and is the "Named Insured". | **Conceded.** Defendant cannot argue lack of standing or policy holder mismatch. |
| **2** | **Altered Coverage Positions:** Farmers abandoned its initial stance that "cleaning was sufficient" and approved replacement values for the toilet and dishwasher. | **Defective Denial.** Farmers claims it "lacks knowledge or information" regarding its own coverage decisions. | **Deemed Admitted.** Under civil procedure, a corporation cannot claim ignorance of its *own* operational files. The reversal is an admitted fact. |

| | | | |
|---|---|---|---|
| **3** | **Omission of Necessary Labor:** Farmers authorized the raw cost of physical fixtures but zeroed out the corresponding tear-out, demolition, and installation labor. | **Boilerplate Denial.** Farmers issues a general denial without presenting line-item proof or labor logs. | **Conceded.** Farmers failed to contest the specific accounting discrepancy, effectively admitting they split the claim to underpay labor costs. |
| **4** | **Circular Accounting Scheme:** Farmers re-applied and deducted depreciation amounts that they had already paid to Plaintiff via check on November 12, 2024. | **Admitted in Part / Omitted.** Farmers admits issuing the check but ignores the mathematical shortfalls in subsequent sheets. | **Deemed Admitted.** The unexplained re-inflation of the worksheet deductions stands completely uncontested by Defendant's papers. |
| **5** | **Identity-Based Coercion (Unruh Act):** Supervisor Bryce Spradling deliberately refused to respect and utilize Plaintiff's affirmed name and gender identity. | **Affirmative Defense Waiver.** Farmers argues the misgendering was "unintentional" or an "honest mistake". | **Fact Admitted.** By arguing the *intent* was a mistake, Farmers legally admits that the discriminatory treatment and misgendering actually occurred. |

## II. CONCLUSIONS OF LAW

### 1. The Insurance Policy Must Be Interpreted as a Whole, Including the California Amendatory Endorsement.

The rights and obligations of the parties are governed by the insurance policy, including its applicable endorsements. Farmers Direct admits that the Policy includes the

California Amendatory Endorsement, HA01CA 0108. (Amended Answer, ECF No. 43, ¶ 12.) The Court should interpret the Policy by considering the endorsement together with the other applicable policy provisions. To the extent a conflict exists between the endorsement and the underlying policy form, the controlling language must be determined under California law.

**2. The Applicable Replacement-Cost Deadlines Must Be Determined from the Governing Policy Language.**

The California Amendatory Endorsement contains language modifying the time period for notifying Farmers of the insured's decision to repair, restore, or replace damaged, destroyed, or stolen property. The endorsement provides for a twelve-month notification period, additional extensions for good cause, and a separate provision addressing losses related to a qualifying state of emergency. (Proposed SUF No. 18; Defendant's Request for Judicial Notice, ECF No. 23-1, Exhibit L.) Accordingly, the applicable replacement-cost deadline must be determined by applying the endorsement's actual language to the undisputed facts. Farmers should not be permitted to rely on a deadline from an underlying policy provision without accounting for any modification imposed by the endorsement.

**3. The Parties' Rights Must Be Determined Under the Policy and the Actual Claim History.**

The parties' rights and obligations concerning replacement-cost benefits must be determined by considering the applicable policy language, the payments made, the notices provided, and the relevant claim-handling chronology. The Court should determine which contractual deadlines govern and whether those deadlines were satisfied, extended, or otherwise affected by the applicable policy provisions and established facts.

**4. Additional Living Expense Coverage Is Expressly Included in the Policy.**

Farmers Direct admits that the Policy includes Loss of Use coverage, including Additional Living Expense (ALE), subject to the Policy's terms, conditions, limitations, and

exclusions. (Amended Answer, ECF No. 43, ¶ 11.) Farmers Direct also admits that the amounts paid on the Claim did not include amounts for alleged ALE. (Id., ¶ 35(a).) The existence of ALE coverage is therefore distinct from the question whether the conditions for payment were satisfied. The Court should interpret the applicable Loss of Use provisions and determine the parties' respective rights and obligations under those provisions based on the evidence concerning the condition of the residence and any claimed additional living expenses.

**5. The Court Should Resolve the Parties' Dispute Concerning the Scope of Coverage and Benefits Owed.**

An actual controversy exists concerning the interpretation and application of the Policy, including the California Amendatory Endorsement, replacement-cost benefits, recoverable depreciation, and ALE. Plaintiff seeks a declaration of the parties' respective rights and obligations under the governing policy language.

Plaintiff requests that the Court resolve those issues based on the Policy, the parties' admissions, and the admissible evidence, and declare the parties' rights and obligations to the extent established by the record.

Respectfully Submitted by

Dated October 12, 2026

/s/ Luna D'Sol

Luna D'Sol

Plaintiff in Pro Per