LUNA D'SOL
Plaintiff, In Pro Per
**jravada@icloud.com**
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUNA D'SOL,

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants

CASE NO. : *2:25-cv-10938-SVW-ASx*

*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*

**PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO FILE MOTION TO SUPPLEMENT PLAINTIFF'S OPPOSITION TO DEFENDANT'S MSJ BASED ON NEW EVIDENCE, REOPENING OF DISCOVERY, AND SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES**

Complaint Filed: August 21, 2025

Trial Date: January 2027
FSC: TBD

Filed Concurrently with: **SUPPORTING DECLARATION; PROPOSED ORDER; EXHIBITS**

# TABLE OF CONTENTS

NOTICE OF EX PARTE APPLICATION .......................................................... 2

STATEMENT OF ISSUES .......................................................................... 6

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 6

I. INTRODUCTION ........................................................................ 7

II. FACTUAL BACKGROUND ...................................................... 14

A. The Established Jurisdiction .................................................. 14

B. Plaintiff Is Likely to Succeed on the Merits ……………....... 14

C. The Policy ................................................................................ 14

D. Policy Covered Losses ............................................................ 15

III. LEGAL STANDARD ................................................................. 16

A. Motion for Summary Judgment ............................................... 16

B. Rule 16(f) .................................................................................. 16

C. Sanctions .................................................................................. 17

D. Reopening of Discovery .......................................................... 17

IV. DISCUSSION ............................................................................ 17

A. Supplement New Evidence ...................................................... 17

B. Defendant's Violation of Discovery Court Order ...................... 19

C. Knowingly False Statement of Fact to a Tribunal ...................... 22

D. Knowingly False Statement of Law to a Tribunal ..................... 23

E. Meet and Confer ....................................................................... 24

F. Breach of Duty .......................................................................... 24

G. Breach of Settlement in Principle ........................................... 26

H. Good Cause Exists to Reopen Discovery Based on Newly Discovered Evidence ....................................... 26

I. Diligence ........................................................................... 27

V. CONCLUSION ..................................................................... 29

CERTIFICATE OF COMPLIANCE ............................................................ 30

# TABLE OF AUTHORITIES

CASES PAGE(S)

Ahanchian v. Xenon Pictures, Inc.,
624 F.3d 1253 (9th Cir. 2010) ..................................................................... 4

Celotex Corp. v. Catrett
477 U.S. 317 (1986) ........................................................................................ 16

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991) .......................................................................................... 17

City of Pomona v. SQM North America Corp.,
866 F.3d 1060 (9th Cir. 2017) ...................................................................... 17

Dreith v. Nu Image, Inc.,…
648 F.3d 779 (9th Cir. 2011) .......................................................................... 21

Egan v. Mutual of Omaha Insurance Co.,
24 Cal. 3d 809 (1979) .................................................................................... 12

Foman v. Davis,
371 U.S. 178 (1962) ...................................................................................... 6

Frommoethelydo v. Fire Insurance Exchange,
42 Cal. 3d 208 (1986) .................................................................................... 12

In re Oracle Corp. Securities Litigation,
627 F.3d 376 (9th Cir. 2010) ........................................................... 16

Johnson v. Serenity Transportation, Inc.,
2015 WL 4913266 (N.D. Cal. Aug. 17, 2015) ......................................... 17

Masimo Corp. v. Apple Inc.,
2022 WL 2168883 (C.D. Cal. June 2, 2022) ............................................. 6

*Malone v. United States Postal Service*,
833 F.2d 128 (9th Cir. 1987)……………………………………………..21

Miller v. Rykoff-Sexton, Inc.,
845 F.2d 209 (9th Cir. 1988) .......................................................... 19

Mission Power Engineering Co. v.
Continental Casualty Co.,
883 F. Supp. 488 (C.D. Cal. 1995) ......................................................... 4

Netbula, LLC v. Distinct Corp.,
212 F.R.D. 534 (N.D. Cal. 2003) ........................................................... 19

Oasis West Realty, LLC v. Goldman,
51 Cal. 4th 811 (2011) ........................................................................ 14

Robertson v. Bruckert,
568 F. Supp. 3d 1044 (N.D. Cal. 2021) .................................................. 18

*Radical Investments Ltd. v. Good Vibrations Entertainment LLC*,
No. 2:22-cv-02752-SVW-AFM, 2023 WL 2372387
(C.D. Cal. Feb. 10, 2023)………………………………………………14

*RFS Investments Co., LLC v. Travelers ProCa Co. of America*, No. LA CV17-09212 JAK (ASx), 2019 WL 1976470 (C.D. Cal. Mar. 8, 2019)……………………………..………………14

*Salvador v. Live At Home Care Connection, Inc.*, No. 5:18-cv-07159-EJD, 2021 WL 9217145 (N.D. Cal. Feb. 16, 2021)……………………………..………………17

Scheller v. Nutanix, Inc.,
2021 WL 3616771 (N.D. Cal. Aug. 16, 2021) …………………….............. 6

Wizards of the Coast LLC v. Cryptozoic Entertainment LLC,
309 F.R.D. 645 (W.D. Wash. 2015) ........................................................... 18

Yates v. Auto City 76,
299 F.R.D. 611 (N.D. Cal. 2013) ................................................................ 18

FEDERAL STATUTES

28 U.S.C. § 1332(a) ..................................................................... 14
28 U.S.C. § 1390(c) ..................................................................... 14
28 U.S.C. § 1441(a) ..................................................................... 14

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6) ............................................................... 19
Fed. R. Civ. P. 15(a) ..................................................................... 6
Fed. R. Civ. P. 15(d) ................................................................. 2, 6
Fed. R. Civ. P. 16(b)(4) ......................................................... 17, 29

Fed. R. Civ. P. 16(f) .......... 16–17

Fed. R. Civ. P. 37(b)(2)(A) .......... 16–17

Fed. R. Civ. P. 56(a) .......... 16

LOCAL RULES

C.D. Cal. L.R. 7-19 .......... 2–5

C.D. Cal. L.R. 7-19.1 .......... 3–5

C.D. Cal. L.R. 16-2 .......... 19–20

CALIFORNIA RULES OF PROFESSIONAL CONDUCT

Rule 1.0.1(f) .......... 17

Rule 3.3(a)(1) .......... 17

MUNICIPAL ORDINANCES

Palm Springs Municipal Code, Chapter 11.72 (Public Nuisances) .......... 28

Palm Springs Municipal Code § 11.72.170 (Property Maintenance) .......... 28

TO THE COURT, DEFENDANT AND ALL PARTIES AND COUNSEL: PLEASE TAKE NOTICE that on November 12, 2026, and pursuant to Local Rule 7-19, Plaintiff Luna D'Sol ("Plaintiff") will and hereby does apply ex parte to Courtroom 10A of the above-entitled court located at 350 W. First Street, 10th Floor, Los Angeles, California 90012, by electronically filing this written Ex Parte Application which requests this Court to grant Plaintiff a leave to supplement plaintiff's opposition to Defendant's Motion for Summary Judgment based on new evidence, reopening discovery, and sanctions.

1. Granting leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d);
2. Granting leave to supplement Plaintiff's opposition to Defendants' pending Motion for Summary Judgment with newly discovered material evidence;
3. Deny Defendants' pending Motion for Summary Judgment or in the alternative strike some of its sections or in the alternative defer its decisionuntil the Court has considered Plaintiff's supplemental submissions.
4. Reopening discovery for the limited purpose of addressing newly discovered material evidence and related factual disputes;
5. **Advancing the December 1, 2026 deadline for submission of the Joint Status Report to an earlier date designated by the Court, and directing the parties to meet and confer in good faith regarding its preparation and filing.**
6. Imposing appropriate sanctions for ongoing discovery and regulatory violations including the Court's pretrial orders, and for knowingly author false statement of fact and of law to a tribunal; and
7. Granting such other and further relief as the Court deems just and proper.

As explained more fully in the concurrently filed Declaration of Luna D'Sol ("D'Sol Decl.") and Memorandum of Points and Authorities, Plaintiff submits that good cause exists for the requested ex parte relief based on newly discovered material evidence, subsequent events affecting the insured property, alleged violations of the Court's pretrial orders, and Plaintiff's

documented financial hardship and inability to access essential water services. Plaintiff requests expedited consideration to prevent further prejudice, preserve her opportunity to present material evidence before the Court rules on Defendants' pending Motion for Summary Judgment, and ensure meaningful compliance with the Court's pretrial procedures. Expedited relief is warranted to address newly discovered material evidence, alleged violations of the Court's pretrial orders, and the need for meaningful compliance with the Court's scheduling requirements. Plaintiff further requests that the Court advance the December 1, 2026 deadline for the Joint Status Report and direct Defendants' lead trial counsel, Michelle R. Bernard, to participate in its preparation in accordance with the Court's New Case Order [ECF No. 13] and applicable Local Rules.

Plaintiff has attempted to resolve the matters underlying this Application directly with Defendants' counsel without success. Specifically, on November 2 and November 9, 2026, Plaintiff notified counsel of anticipated emergency relief, newly discovered material evidence, and related discovery issues. Defendants opposed the anticipated relief and warned of potential sanctions. D'Sol Decl., ¶¶ 19–20, Exs. 9–10. Accordingly, Plaintiff submits that expedited consideration is warranted because Defendants' Motion for Summary Judgment remains under submission, newly discovered evidence has not been considered by the Court, and Plaintiff continues to experience circumstances requiring immediate attention, including the disconnection of essential water services on November 10, 2026. D'Sol Decl., ¶¶ 11–12, 40. Plaintiff requests relief before further prejudice occurs and submits that the circumstances supporting this Application were not manufactured for purposes of obtaining ex parte consideration. Plaintiff respectfully acknowledges and appreciates the Court's management of its docket and scheduling decisions. Plaintiff remains willing to accommodate any dates and deadlines the Court deems appropriate and will make every reasonable effort to comply with its orders.

Pursuant to Local Rules 7-19 and 7-19.1, Plaintiff submits this Application upon prior notice to Defendants' counsel, as documented in the accompanying Declaration and exhibits. Ex parte

relief may be warranted where the moving party establishes that it is without fault in creating the circumstances requiring expedited consideration and will suffer prejudice if relief is delayed. *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Good cause and excusable neglect exist. Plaintiff is proceeding prose, Plaintiff is not an attorney, under severe financial hardship and mental health issues, and is seeking for Defendant to comply with a contractual agreement between Parties. Plaintiff also sought a stipulation before burdening the Court, but Defendant declined. A brief extension of this kind is the sort of reasonable scheduling relief that should be granted where there is no bad faith, no effect on trial, and no meaningful prejudice. See, e.g., Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253 (9th Cir. 2010).

**PLEASE TAKE FURTHER NOTICE** that Plaintiff previously notified Defendants' counsel, Michelle R. Bernard and Kelly F. Canby, of her anticipated ex parte application by email on November 2 and November 9, 2026, identifying the proposed emergency relief and requesting Defendants' position. Defendants' counsel expressly opposed the contemplated application. D'Sol Decl., ¶¶ 19–20, Exs. 9–10.

Plaintiff also made repeated attempts to contact Ms. Bernard by telephone, as documented by the call-history screenshot attached as Exhibit 9, page 6. To Plaintiff's knowledge, Ms. Bernard has never returned her telephone calls. In her July 31, 2026 correspondence, Ms. Bernard acknowledged Plaintiff's telephone messages but expressly stated that she did not have time to respond contemporaneously to Plaintiff's communications. D'Sol Decl., ¶ 9, Ex. DiscoveryViolation006. Plaintiff submits these communications as evidence of Plaintiff's good faith efforts to provide advance notice, ascertain Defendants' position, and resolve the disputed matters without judicial intervention.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 7-19.1(b), Defendants' counsel, Michelle R. Bernard, expressly opposed Plaintiff's anticipated ex parte relief in her November 9, 2026 correspondence, characterizing the contemplated application as

lacking merit and warning of potential sanctions. Accordingly, Plaintiff understands that Defendants oppose the relief sought. D'Sol Decl., ¶ 19, Ex. 9.

Michelle R. Bernard (mbernard@grsm.com)

Kelly Fitzgerald Canby (kcanby@grsm.com)

GORDON REES SCULLY MANSUKHANI, LLP

101 W. Broadway, Suite 2000, San Diego, CA 92101

Telephone: (619) 230-6700

This Ex Parte Application is made pursuant to Local Rules 7-19 and 7-19.1, consistent with this Court's New Case Order and applicable Chambers Rules governing ex parte proceedings, and is based upon this Notice of Ex Parte Application, the accompanying Memorandum of Points and Authorities, the Declaration of Plaintiff Luna D'Sol and exhibits thereto, all filed concurrently herewith; the pleadings, motions, orders, records, and files in this action; and such additional evidence or argument as the Court may permit

Respectfully Requested

Dated November 12, 2026

/s/ Luna D'Sol

Luna D'Sol, Plaintiff in Pro Per

## STATEMENT OF ISSUES

Whether to permit Plaintiff leave, pursuant to Federal Rule of Civil Procedure 15(d), to file a supplemental complaint setting forth material transactions, occurrences, and events arising after the filing of the operative Complaint, including Defendants' alleged continuing claims-handling misconduct, subsequent failures to investigate or resolve disputed insurance claims, and additional damages arising from those subsequent events.

Whether to permit Plaintiff leave to supplement her previously filed Opposition to Defendants' Motion for Summary Judgment with newly discovered material evidence that was unavailable despite reasonable diligence when the original opposition was filed, where such evidence may establish genuine disputes of material fact concerning Defendants' investigation, knowledge of reported property conditions, coverage determinations, and alleged breaches of contractual obligations.

Whether, in light of the proposed supplemental pleading and newly discovered evidence, the Court should defer ruling on Defendants' pending Motion for Summary Judgment until Plaintiff's request for leave has been adjudicated and, if leave is granted, the parties have received an appropriate opportunity to address the supplemental materials.

## MEMORANDUM OF POINTS AND AUTHORITIES

Rule 15(d) authorizes the Court, on just terms, to permit a supplemental pleading addressing transactions, occurrences, or events arising after the filing of the operative complaint. The Rule is intended to facilitate the resolution of related claims in a single proceeding rather than require separate litigation concerning subsequent events. *Masimo Corp. v. Apple Inc.*, 2022 WL 2168883, at *1 (C.D. Cal. June 2, 2022). Leave to supplement is generally evaluated under the liberal amendment principles of Rule 15(a), including consideration of undue delay, bad faith, repeated failure to cure deficiencies, prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Scheller v. Nutanix, Inc.*, 2021 WL 3616771, at *1 (N.D. Cal. Aug. 16, 2021).

Plaintiff does not seek to add or substitute any party, nor does Plaintiff seek remand to state court. The proposed supplemental pleading concerns subsequent events involving the existing parties

and does not seek to alter the Court's subject-matter jurisdiction. The jurisdictional basis for the proposed supplementation is addressed further below.

## I. INTRODUCTION

On October 19, 2026, Plaintiff Luna D'Sol ("Plaintiff") was searching for documents relating to Hurricane Hilary in response to an email from the California Mortgage Assistance Program that Plaintiff received with subject 'Application Status' and requesting among other things Insurance Carrier acceptance letter, a certified assessment report prepared by a licensed professional, etc. See Declaration of Luna D'Sol ["D'Sol Decl."], ¶11, **Exhibit 1**.

Plaintiff conducted searches within the email application on her laptop using the keywords "contractor" and "insurance," together with date parameters corresponding to 2023 and 2024. During this search, Plaintiff located a previously unopened email dated November 19, 2024, in her spam folder from Michael Cantor of 20/20 Advanced Property & Mold Inspections, visibly intended to Donnie Means referencing 2275 E Belding Dr. Palm Springs CA 92262 ("subject property") and containing four attachments relating to Claim No. 7008177137-1-1 (September 27, 2024, incident "water claim." reported within policy term of September 28, 2023 to September 28, 2024 "policy term"), from same Policy No. 3872340940 ("Policy") subject in this action. See D'Sol Decl., ¶12, Exhibit 2, see page 2, visibly intended to Donnie Means. See also. ECF Doc 118-3 and 188-4 are the attachments in Mr. Cantor's November 19, 2024, email.

***Donnie Means***.[1]

On October 28, 2024, OC Restoration Services performed water-damage mitigation at the subject property. See D'Sol Decl., ¶22, **Exhibit. 12**. According to the contractor's report,

---

[1] At all relevant times, Claims Supervisor Dana Haynes, General Special Investigator Andrew Hernan, Claims Customer Relations Senior Consultant Amy Spawr-Bardley, Senior Field Claims Representative Donald ("Donnie") Means, Claims Adjuster Richard Bryant, Property Theft Supervisor Brye Spradling, and General Claims Adjuster Michael Saskor were acting as agents for Defendant Farmers Direct , or authorized claims representatives of Defendant Farmers Direct Property and Casualty Insurance Company ("**Farmers Direct**"), acting within the course and scope of their employment or assigned claims-handling responsibilities. In investigating, adjusting, communicating coverage determinations, authorizing or coordinating payments, and administering Plaintiff's insurance claims, each acted on behalf of Defendant Farmers Direct. Thus, Defendant Farmers Direct is responsible for their acts and omissions undertaken within the scope of those responsibilities.

OC Restoration discovered that there had been a pipe burst in the wall at the shower, and that the work was performed following approval from Farmers Insurance's adjuster. *Id., p.2.* Mr. Donnie Means was the assigned insurance adjuster responsible for handling claim 7008177137-1. and who personally inspected the subject property, communicated with Plaintiff regarding the claim, coordinated contractors, and reviewed, approved, or rejected claim-related work and requests. See D'Sol Decl. ¶23, **Exhibit 13**, pp. 2–44 reflecting Mr. Means involvement in text messages exchanged between Mr. Means and Plaintiff from October 7, 2024, through December 20, 2024, all related to the water claim.

Significantly, on October 25, 2024, Mr. Means expressly acknowledged that the exposed framing might require **mold treatment and drying**, stating that "the framing should be able to be treated for mold if necessary and dried out" and Mr. Means further explained that removal of affected materials and structural drying would be invoiced separately, reviewed by Defendant's third-party reviewer, and considered for additional payment. See *Ip.,* **Exhibit 13**, p. 13.

Moreover, on November 4, 2024, Mr. Means dismissed Plaintiff's photographic evidence of elevated moisture readings as "false readings" based on unverified metal interference, despite Plaintiff's subsequent objection and additional photographs. (*See* D'Sol Decl., ¶¶ 23, 25, Ex. 13, pp. 22, 45–47). That same day, OC Restoration shut off and removed its drying equipment (id., Ex. 12, p. 3, item list number 3 [Equipment turn off date: 11/4/2024]), and subsequent mold testing conducted by Michael Cantor on November 6, 2024, revealed elevated mold concentrations outside the containment area within Plaintiff's master bedroom (ECF No. 188-3, PageID 7566, 7610; ECF No. 188-4, PageID 7613), raising a genuine dispute concerning the reasonableness and completeness of Defendant's investigation.

**Photograph 1** below shows the master bedroom facing the north sliding glass doors, while **Photograph 2** identifies the corresponding sampling locations: ST1 (red), inside the plastic containment area visibly in Photograph 1, and ST2 (blue), outside containment but within

the same open master bedroom. Cantor's inspection photographs further document the sampling locations. (ECF No. 188-4, PageID 7613.)



**Photograph 1.**




**Photograph 2.**

Below are the results that Mr. Cantor's report represented, ST2: additional remediation is deemed necessary. See ECF Doc. 188-4 PageID 7613.

| MEASUREMENT | ST1 — Inside Containment | ST2 — Outside Containment, Inside Master Bedroom |
|---|---|---|
| **Sampling Location** | Southeast bathroom containment | Uncontained portion of master bedroom |
| **MoldSCORE** | **108 — LOW** | **300 — HIGH** |
| **Total Airborne Spores** | 53 spores/m³ | 4,300 spores/m³ |
| **Relative Concentration** | Baseline comparison | **Approximately 81 times ST1** |
| **Post-Remediation Findings** | Containment area passed | Elevated mold concentrations remained |
| **Recommendation** | No additional remediation identified for ST1 | **Additional remediation recommended outside containment** |

Mr. Michael Cantor, who conducted the mold inspection, subsequently confirmed to Plaintiff that Mr. Cantor emailed Farmers' claims adjuster, Donald Means, on November 19, 2024, and that Mr. Means received the communication because Mr. Cantor was paid. *See* D'Sol Decl., ¶ 24, **Exhibits 14**. Mr. Cantor also forwarded the email to Plaintiff that Mr. Cantor had sent to Mr. Means on November 19, 2024. *Id*, **Exhibit 15**. Plaintiff further relies on text messages in which Means confirmed that documents had been forwarded to Farmers' third-party reviewer and that he would contact Plaintiff upon completing his review, supporting an inference that Farmers received and reviewed claim-related documentation. *See* D'Sol Decl., ¶ 23, **Exhibits 13 p. 28**. Means subsequently continued communicating with Plaintiff regarding approval of additional work and funding without disclosing Cantor's findings of elevated mold concentrations within the master bedroom. *Ip.*, pp. 32-44.

**HOW THE MOLD REPORT RELATES TO DEFENDANT'S CURRENT MSJ:**




The photograph on the left, taken from Mr. Means' inspection records submitted with his declaration in support of Defendant's Motion for Summary Judgment (ECF Doc 119-3), shows a moisture-meter reading of the surface directly beneath the bottom of the device. **Figure 1.** Moisture-meter reading indicating active moisture in the kitchen island wall. **Figure 2.** No moisture on the wall adjacent to the toilet. **Figures 1 and 2** were taken on June 6, 2024. Mr. Means did not produce any

moisture-meter readings of the floor in either the bathroom or the kitchen. On May 23, 2025, Mr. Means returned to inspect the same bathroom and kitchen areas previously examined. ECF Doc. 119-3, ¶29, Exhibit 11, PageID 4669, 4800. **Photograph 2**, appearing on the proceding page, highlights in green the bathroom containing the toilet depicted in Mr. Means' inspection photographs. *Id.* The floor plan establishes that this bathroom is immediately adjacent to the master bedroom, where Mr. Cantor's November 6, 2024 testing documented elevated airborne mold concentrations at sampling location ST2, where in contrast, Mr. Means' May 23, 2025, inspection photographs contain no corresponding moisture-meter readings from the same bathroom that Mr. Means had shown in his previous inspection. *See* ECF Doc. 119-3, PageId 4707.

Moreover, Defendant's Motion for Summary Judgment is predicated on Claim No. 7007678692-1, arising from the June 3, 2024, burglary and vandalism loss, without independently addressing Claim No. 7008177137-1, arising from the separate September 27, 2024 water-damage loss.[2] In his declaration supporting Defendant's Motion for Summary Judgment, Mr. Means attributes his May 23, 2025 reinspection to Plaintiff's dissatisfaction with "a different claim." (Means Decl., ECF No. 119-3, PageID 4670, lines 1–2.) The two claims relevant to the subject property were Claim No. 7007678692-1, arising from the June 3, 2024 burglary and vandalism loss, and Claim No. 7008177137-1, arising from the September 27, 2024 water-damage loss. Because Defendant's motion concerns the former, Mr. Means' reference to "a different claim" reasonably identifies the latter. His own declaration therefore provides evidence connecting the May 23, 2025 reinspection to the separate water-damage claim, notwithstanding Defendant's presentation of that inspection in support of its motion

[2] See Defendant's Notice of Motion and Motion for Summary Judgment, ECF No. 119, at 2, PageID 4265, lines 14–25; Declaration of Bryce Spradling, ECF No. 119-1, ¶ 3; Declaration of Michael Saskor, ECF No. 119-2, ¶ 2; Declaration of Paul Hamilton, ECF No. 119-4, ¶ 14; Declaration of David A. Corona, ECF No. 119-5, ¶ 6(c); Declaration of Kelly Fitzgerald Canby, ECF No. 119-6, PageID 4942 n.4.

concerning the burglary loss. While an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim "without fully investigating the grounds for its denial." (*Frommoethelydo v. Fire Ins. Exchange*, *supra*, 42 Cal.3d at p. 215.) To protect its insured's contractual interest in security and peace of mind, "it is essential that an insurer fully inquire into possible bases that might support the insured's claim" before denying it. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819.)

Accordingly, Plaintiff respectfully requests that the Court strike or disregard paragraphs of the Declaration of Donald Means (ECF Doc. 119-3) to the extent they opine on the absence of floor moisture or the adequacy of Defendant's water-intrusion investigation including the concealment of contradictory mold findings:

**¶ 17 (PageID 4666):** Concludes that the water near the dishwasher and toilet did not originate from the plumbing or result from the incident.

**¶ 19 (PageID 4667):** States that he found no elevated moisture reading near the toilet supporting an ongoing leak.

**¶ 27 (PageID 4669):** Relies on his inspection to conclude that the estimated repairs were sufficient and states that the water-damage claim was denied.

**¶ 30 (PageID 4670):** States that his reinspection revealed no water damage reasonably attributable to the incident.

**¶ 32 (PageID 4671):** Concludes that Defendant paid more than reasonably necessary to restore the property.

The additional relevant paragraphs in **Paul Hamilton's Declaration (ECF No. 119-4)** are:

**¶ 14 (PageID 4861):** Concludes that Farmers Direct complied with California claims-handling standards.

**¶ 16 (PageID 4861–4863):** Concludes that Defendant conducted a thorough, fair, and objective investigation.

**¶ 22 (PageID 4865):** Expressly relies on Mr. Means' inspection, moisture-meter testing, and investigation for the conclusion that no resulting water damage required mitigation.

**¶ 25(c) (PageID 4866):** Reiterates that Defendant conducted a prompt, thorough, and fair investigation.

**¶ 27 (PageID 4867):** Concludes that Defendant reasonably complied with California claims-handling standards.

The Declaration of **David A. Corona (ECF No. 119-5)** contains additional opinions relying on Mr. Means' inspections, photographs, and repair estimates.

**¶ 10 (PageID 4925):** Characterizes Defendant's repair estimates as thorough and comprehensive.

**¶ 11(a)–(c) (PageID 4925–4926):** Expressly relies on estimates prepared by Mr. Means.

**¶ 12 (PageID 4926–4927):** Expressly relies on Means' estimates to conclude that the payments adequately addressed all incident-related damage.

**¶¶ 13–16 (PageID 4927):** Addresses repair costs, sufficiency of payments, habitability, and Plaintiff's proposed repairs.

**¶ 17 (PageID 4927–4928):** Addresses whether subsequent water damage could be attributed to the June 2024 incident.

The Declaration of **Michael Saskor (ECF No. 119-2)** contains three additional paragraphs relevant to Mr. Means' inspection findings:

**¶ 11 (PageID 4377):** Confirms that Saskor arranged for Means to reinspect the bathroom, countertop, and stucco on May 23, 2025.

**¶ 12 (PageID 4377–4378):** Expressly relies on Means' inspections to justify denying additional repairs or replacement of the toilet and dishwasher.

**¶ 15 (PageID 4379):** Relies on the June 6, 2024 and May 23, 2025 inspections to support the conclusion that plumbing failures resulted from excluded wear and tear and that Defendant had paid sufficient benefits.

**The Declaration of Bryce Spradling**, paragraphs 14–15 defend the reasonableness of its investigation and deny discrimination.

## II. FACTUAL BACKGROUND[3]

### A. The Established Jurisdiction

This Court exercises subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based upon complete diversity of citizenship between Plaintiff and Defendant and an amount in controversy exceeding $75,000, exclusive of interest and costs, as expressly admitted by Defendant in its Answer. The United States District Court, Central District of California is the proper venue for this action *per 28 U.S.C § 1441(a)* and *28 U.S.C. § 1390(c)*

### B. Plaintiff Is Likely to Succeed on the Merits

Likelihood of success on the merits "is the most important" Winter factor; Garcia, 786 F.3d at 740. Under California law the "elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011); see also Radical Investments Ltd. v. Good Vibrations Entertainment LLC, Case No. 2:22-cv02752-SVW-AFM, 2023 WL 2372387 *10 (C.D. Cal. February 10, 2023); RFS Investments Co., LLC v. Travelers Property Casualty Company of America, Case No. LA CV17-09212 JAK (ASx), 2019 WL 1976470 *5 (C.D. Cal. March 8, 2019.)*

### C. THE POLICY[4]

Plaintiff and Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct") entered into a valid and enforceable homeowner's insurance contract under

---

[3] This Memorandum relies upon pleadings, motions, memoranda, declarations, exhibits, discovery materials, and judicial orders previously filed in this action and already appearing in the Court's record. Except where expressly identified otherwise, Plaintiff does not seek to introduce new evidence but instead directs the Court to existing materials through specific citations to docket entries, ECF document numbers, and PageID references.

[4] The Policy is: **Exhibit A** of the First Amended Complaint provided by Defendant on October 16, 2025, See ECF Doc. 1-2 Exhibit A. Or in PageID 61- PageID 117; **Exhibit 104**, attached in this complaint, are Policy records issued by Defendant on October 18, 2024, Service Request # 106810156 (Exhibit 104 at [PL104-001]) Or in PageID 7522; **Exhibit 105**, attached in this complaint, are Policy records issued by Defendant on September 10, 2023, Service Request # 087425449 (Exhibit 105 at [PL105-001]) Or in PageID 7559; **Assumption Certificate** effective January 15, 2024, and executed on August 1, 2024. ECF Doc. 88-2 Page ID 2751

Policy No. 3872340940 ("Policy") for the term period September 28, 2023, to September 28, 2024, (herein after "policy term"), covering Plaintiff's residence at 2275 E Belding Dr Palm Springs CA 92262 (herein after "the subject property"). Farmers Direct admits that it and Plaintiff are parties to Policy No. 3872340940, **admits that the Policy is a valid homeowners insurance contract**, and admits that 2275 E. Belding Drive, Palm Springs, California 92262 is the residence premises covered by the Policy. *Defendant's Answer, ECF No. 43, p. 13, ¶ 32, Page ID 1620.*

**D. POLICY COVERED LOSSES. –[5]**

**The Incidents** were covered losses under the Policy No. 3872340940 within its period was September 28, 2023, through September 28, 2024.

| | | |
|---|---|---|
| **Coverage A — Dwelling[6]** "We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in SECTION I - LOSSES WE DO NOT COVER | **Coverage C — Personal Property[7]** "We will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C when loss or damage is caused by SECTION I - BROAD NAMED PERILS except as excluded in SECTION I - LOSSES WE DO NOT COVER." | **Replacement Cost — Coverage C[8]** This applies when Replacement Cost on Contents is shown in the Declarations. If you repair or replace the damaged or destroyed property, we will pay the full cost of repair or replacement, less the a applicable deductible, without deduction for depreciation. |

The above mentioned named perils and Plaintiff's entitlement for coverage set these as covered losses during the policy's period time

**1. June 3, 2024 — Burglary and Vandalism Loss.** Plaintiff sustained direct physical loss of personal property and damaged to insured subject property resulting from burglary and

[5] **WHAT ARE THE SPECIFICALLY LISTED OR NAMED PERILS FOUND IN THE POLICY?[5] We provide coverage if the cause of the loss is:**…Vandalism Or Malicious Mischief Theft (For Landlord's, theft is not covered, but we do cover loss from burglary); Discharge Or Overflow Of Water Or Steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance; Rupturing, Cracking, Burning Or Bulging of a steam or hot water heating system or of a domestic appliance…

[6] ECF No. 1-2, page 67 of 176, Form HP3300 0904, Section I — Losses We Cover (Special Perils).

[7] ECF No. 1-2, page 67 of 176, Form HP3300 0904, Section I — Losses We Cover (Special Perils).

[8] ECF No. 1-2, page 74 of 176, Form HP4520 0113, Section 2.B.

vandalism. Police Report. 3872340940 identifies theft and vandalism or malicious mischief among its specifically enumerated covered causes of loss. The Policy further provides Special Perils coverage for the dwelling, insuring against direct physical loss except as otherwise excluded. Accordingly, June 3, 2024 incident caused physical loss and damage falling within the Policy's applicable insuring provisions, subject to its terms and limitations.

**2. September 27, 2024 — Separate Water-Damage Claim.** On September 27, 2024, during the effective policy period, Plaintiff discovered water-related damage and visible mold affecting the master bathroom and adjoining areas of the insured dwelling. Plaintiff reported the condition under a separate insurance claim. The Policy's Special Perils coverage applies to direct physical loss of the dwelling except where expressly excluded or limited. The Policy also identifies discharge or overflow of water from specified plumbing systems and domestic appliances among its enumerated perils. Plaintiff alleges that the reported water intrusion caused physical damage to insured building materials and that Defendant was obligated to investigate the source, extent, applicable coverage, and resulting damage in accordance with the Policy.

***Plaintiff's Duties. D'Sol Decl. ¶43***

> **WHAT YOU MUST DO AFTER A LOSS**: ECF Doc. 1-2 PageID89
>
> **SECTION 1 – CONDITIONS** A. Immediately notify us; B. Protect the property; C. Cooperate with us in the investigation of a claim; D. Prepare an inventory; E. At any reasonable time and place we designate: 1. show us the damaged property; 2. submit to questions 3. Allow us to examine. F. Submit a Proof of Loss

## III. <u>LEGAL STANDARD</u>

### A. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B)

### B. RULE 16(F)

Rule 16(f) authorizes the issuance of "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(viii)," against a party who "fails to obey a scheduling or other pretrial order."

Fed. R. Civ. P. 16(f)(1)(C). Among the "just orders" specified in Rule 37(b)(2)(A)(ii)–(viii) is an order striking pleadings in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(iii); see Salvador v. Live At Home Care Connection, Inc., No. 5:18-CV-07159-EJD, 2021 WL 9217145, at *2 (N.D. Cal. Feb. 16, 2021.

**C. SANCTIONS**

This Court possesses inherent authority to regulate the conduct of attorneys appearing before it and to impose appropriate sanctions for litigation misconduct undertaken in bad faith. *Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991*). That authority exists independently of the sanctions expressly authorized by the Federal Rules of Civil Procedure. The Central District of California's attorney-discipline rules provide an additional framework governing professional conduct before this Court. Under the California Rules of Professional Conduct, "[a] lawyer shall not . . . knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Cal. R. Pro. Conduct 3.3(a)(1). Knowledge "means actual knowledge of the fact in question." Cal. R. Pro. Conduct 1.0.1(f). "A person's knowledge may be inferred from circumstances." Cal. R. Pro. Conduct 1.0.1(f); see also In re Domestic P'ship, 118 Cal. App. 5th at 1128.

**D. REOPENING OF DISCOVERY**

Federal Rule of Civil Procedure 16(b)(4) permits modification of a scheduling order upon a showing of good cause. The Ninth Circuit considers **trial proximity, opposition, prejudice, diligence, foreseeability, and relevance** when determining whether discovery should be reopened. *City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017)

## IV. <u>DISCUSSION</u>

### A. SUPPLEMENT NEW EVIDENCE

**THERE HAS BEEN NO UNDUE DELAY:** The mere "passage of time is not, in and of itself, undue delay." *Johnson v. Serenity Transp., Inc.*, 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015). Rather, the relevant inquiry is whether Plaintiff knew of the factual or legal basis for

the proposed supplementation when the operative pleading was filed and nevertheless failed to act promptly. *Id.*

Here, Plaintiff seeks leave under Federal Rule of Civil Procedure 15(d) to address material events occurring after the filing of the operative Complaint. Such events could not have been pleaded before they occurred. Plaintiff separately seeks leave to submit newly discovered evidence bearing on disputed material facts raised by Defendants' pending Motion for Summary Judgment. Although Defendants' Motion for Summary Judgment is presently under submission, the procedural posture of the action does not, standing alone, establish undue delay. The relevant inquiry includes when the subsequent events occurred, when Plaintiff learned of the newly discovered evidence, whether Plaintiff acted with reasonable diligence, and whether the requested supplementation would unfairly prejudice Defendants.

**THERE HAS BEEN NO BAD FAITH OR DILATORY MOTIVE:** Plaintiff seeks supplementation in good faith to address post-Complaint events and newly discovered evidence material to Defendants' pending Motion for Summary Judgment. Bad faith requires an improper purpose, such as an intent to deceive, harass, mislead, delay, or disrupt proceedings. *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015). Plaintiff does not seek to evade an adverse ruling, add parties, alter jurisdiction, or obtain remand. Rather, Plaintiff seeks adjudication on a complete factual record. Accordingly, this factor favors granting leave.

**THERE HAVE BEEN NO REPEATED FAILURES:** This is Plaintiff's first request to supplement the operative Complaint under Rule 15(d). Plaintiff has not repeatedly failed to cure pleading deficiencies through prior amendments or supplementation. Accordingly, this factor favors granting leave.

**THERE IS NO UNDUE PREJUDICE TO DEFENDANTS:** Prejudice under Rule 15 is evaluated by considering the procedural posture, discovery deadlines, and proximity to trial. *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013). Such prejudice must be substantial to overcome Rule 15's liberal policy favoring leave. *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1047 (N.D. Cal. 2021). Although Defendants' Motion for Summary Judgment is under submission, Plaintiff seeks supplementation concerning subsequent events involving existing parties and claims arising from the

same underlying insurance dispute. Plaintiff does not seek to alter jurisdiction or introduce unrelated claims. Any potential prejudice may be addressed through a limited opportunity for Defendants to respond. Accordingly, Plaintiff submits that this factor favors granting leave.

**THE PROPOSED SUPPLEMENT IS NOT FUTILE:** Futility is generally assessed under the pleading standard of Federal Rule of Civil Procedure 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Courts ordinarily defer challenges to the merits of proposed supplemental allegations until after leave is granted. *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003). Here, Plaintiff seeks to allege subsequent events directly related to Defendants' handling of the insured losses, continuing alleged contractual violations, and resulting damages. These allegations arise from the same underlying insurance dispute and are not facially unrelated to the existing claims. Accordingly, Plaintiff submits that the proposed supplementation is not futile and that this factor favors granting leave.

**B. DEFENDANT'S VIOLATION OF DISCOVERY COURT ORDER**

On June 11, 2026, this Honorable Court issued its Civil Trial Preparation Order, establishing the procedures governing trial preparation. *See ECF No. 86*. The Order provides that, in cases proceeding to jury trial, the parties **MUST** submit **JOINT** jury instructions and a verdict form no later than two court days before the pretrial conference, or one week before trial if the pretrial conference is waived. *Id., Page ID 2667 §A.1.* To prepare these submissions, the parties **SHALL MEET AND CONFER** are directed to meet and confer regarding the proposed instructions and verdict form. *Id*. Plaintiff did that.

The Pretrial Conference was originally scheduled for October 5, 2026, with joint jury instructions and a verdict form due October 1, 2026. On August 28, 2026, thirty-four days before the submission deadline, Plaintiff contacted Defendant's counsel regarding outstanding pretrial matters. *See* D'Sol Decl. ¶10, Exhibit **DiscoveryViolation007**. In response, Defendant's counsel, Michelle R. Bernard, refused to meet and confer concerning jury instructions under "**Local Rule 16-2**," stating that "there is no basis for meeting and conferring

on jury instructions as there is not going to be a jury trial as of right now," despite Defendant's motion to strike Plaintiff's jury demand remaining pending before the Court. *Id.*

The Court's Civil Trial Preparation Order required three sets of jury instructions: (1) agreed-upon instructions; (2) Plaintiff's disputed instructions; and (3) Defendants' disputed instructions. ECF No. 86, PageID 2667. The Order expressly provided a procedure for submitting disputed instructions notwithstanding the parties' disagreements. *Id.*

Plaintiff timely filed the three required jury instructions forms and verdict form on October 1, 2026, documenting that Plaintiff had propounded Defendant's counsel with the proposed jury instructions for Defendant's counsel to complete its portion of the joint submission, Defendant's counsel failed to respond or participate in preparing the joint jury instructions and verdict form. *See* ECF Docs 168, 169, 170 and 173.

Defendant's counsel Kelly Canby subsequently submitted untimely filings that failed to comply with the Court's expressly prescribed formatting requirements. See ECF Doc. 175-177, where ECF Doc. 176 and 177 were untimely filed on October 2, 2026, and on its face Defendant's counsel Ms. Canby misrepresented that Plaintiff had failed to comply with LR 16 despite the fact that Ms. Canby was a recipient of Plaintiffs LR16 request sent via email on August 28, 2026, thirty-four days before the filing deadline and that Ms. Bernard responded "As far as meeting and conferring on LR16-2 topics… there is no basis for meeting and conferring." See ECF Doc. 175, PageID7320, n. 1; *See* D'Sol Decl. ¶10, Exhibit DiscoveryViolation007.

Defendant's counsel Ms. Canby expressly acknowledged that their Motion to Strike Plaintiff's jury demand remained undecided while Defendant is holding that Plaintiff's Jury Demand should follow Defendant's filing of Defendant's Answer. ECF No. 175, at 3 n.2; ECF Doc. 37. Nevertheless, defense counsel refused Plaintiff's August 28, 2026 request to meet and confer concerning jury instructions, despite Ms. Canby being copied on that correspondence. Defendants subsequently accused Plaintiff of failing to participate in the Local Rule 16 process. *Id.* at 3 n.1. Defendants then filed ECF Nos. 176–177 on October 2, 2026, after the Court's October 1 deadline, without complying with the prescribed formatting requirements. A pending motion does not suspend compliance with an operative

court order. **Fed. R. Civ. P. 16(f)(1)(C)** authorizes sanctions for violating pretrial orders and incorporates **Rule 37(b)(2)(A)(iii)**, expressly permitting the Court to strike pleadings in whole or in part. See *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788–89 (9th Cir. 2011).

**PRAYER FOR RELIEF**: Federal Rule of Civil Procedure 16(f)(1)(C) authorizes sanctions for failure to obey a scheduling or other pretrial order, including sanctions available under Rule 37(b)(2)(A). Rule 37(b)(2)(A)(iii) permits striking pleadings in whole or in part, such a severe sanction requires consideration of the relevant factors, including prejudice, the public interest in expeditious resolution, the Court's need to manage its docket, the policy favoring disposition on the merits, and the availability of less drastic sanctions. *Malone v. U.S. Postal Service*, 833 F.2d 128, 130–32 (9th Cir. 1987). Accordingly, Plaintiff respectfully requests that the Court find that Defendants failed to comply with the meet-and-confer requirements of its Civil Trial Preparation Order (ECF No. 86).

Plaintiff identifies the following changes from Defendant's Answer, ECF Doc. 37, to Amended Answer, ECF Doc, 43:

> **Eighth Affirmative Defense (Unclean Hands):** In the original Answer, Farmers Direct asserted directly that Plaintiff *is* barred by the doctrine of unclean hands. In the Amended Answer, they softened this to a conditional statement, adding the qualifier *"to the extent that her own acts and conduct implicate application of the equitable doctrine of unclean hands"*.
> **Ninth Affirmative Defense (Laches):** Similar to the Eighth Defense, they changed their flat assertion that Plaintiff is barred by laches to a conditional assertion *"to the extent that her own acts and conduct implicates application of the equitable doctrine of laches"*.
> **Twelfth Affirmative Defense (Standing/Insurable Interest):** They expanded the wording regarding standing. Originally, it stated Plaintiff lacked standing or an insurable interest in damaged property. The Amended Answer specifies that Plaintiff *"lacks standing under the terms of the Policy to recover coverage benefits for the claimed damage and/or otherwise does not have an insurable interest in damaged covered property"*.

Defendants' Amended Answer, expressly invokes Federal Rule of Civil Procedure 15(a)(1)(A) and represents that it "amends and supersedes" Farmers Direct's original Answer filed February 9, 2026. *See* ECF Doc. 43 PageID 1609 lines 1-5. Defendant subsequently, when it was convenient, relied on the original Answer (ECF Doc 37) to argue that Plaintiff's jury demand was untimely, without addressing the procedural effect of its Amended Answer. *See* Defendant's Motion to Strike, ECF Doc. 90-1, PageId 3049. Under Rule 38(b)(1), the deadline generally runs from service of the last

pleading directed to the relevant issue, an amended pleading ordinarily creates a new jury-demand opportunity only for genuinely new issues. Defendant cannot selectively disregard its own Amended Answer when challenging Plaintiff's jury demand while simultaneously refusing to comply with the Court's pretrial procedures.

Because Defendant's failure to meet and confer impairs Plaintiff's ability to prepare for trial and prejudices Plaintiff's ability to narrow the disputed issues, Plaintiff respectfully requests that the Court strike Defendant's Amended Answer (ECF No. 43) in its entirety under Rule 37(b)(2)(A)(iii). Alternatively, as a less drastic sanction under *Malone* that still preserves the policy favoring disposition on the merits, Plaintiff requests that the Court strike the substantive modifications and newly added averments in Defendant's Amended Answer—specifically, the newly asserted factual and jurisdictional allegations in Paragraphs 2, 3(b), 5, 6(b), and 29, as well as the modified Eighth, Ninth, and Twelfth Affirmative Defenses—and hold Defendant to the admissions and defenses set forth in its original Answer (ECF No. 37).

### C. KNOWINGLY FALSE STATEMENT OF FACT TO A TRIBUNAL

On July 15, 2026, at approximately 12:39 p.m., Ms. Bernard expressly informed Plaintiff that the separate state court action, *Luna D'Sol v. Farmers Insurance Exchange*, Case No. 26VECV03273, had already been referred to her for further handling. Ms. Bernard stated: "I will send you a separate email regarding your new state court lawsuit as that matter has been referred to me for further handling." *See* concurrently filed Declaration of Luna D'Sol ["D'Sol Decl."], ¶5 Exhibit DiscoveryViolation004.

Ms. Bernard subsequently filed a declaration pursuant to California Code of Civil Procedure § 430.41(a)(2), representing that she had been retained on July 17, 2026, and that her first contact with Plaintiff concerning the action occurred on July 17, 2026. D'Sol Decl., ¶6, Exhibit SanctionbleFiling001.

**Ms. Bernard's representation concerning the date of her first contact with Plaintiff is demonstrably false**. (D'Sol Decl. ¶¶ 5-6). Contrary to her sworn declaration identifying

July 17, 2026, as the date of first contact, Ms. Bernard had already communicated directly with Plaintiff concerning the same state court action on July 15, 2026, two days earlier. This gross misrepresentation concerned a factual matter within Ms. Bernard's personal knowledge and directly implicated her professional obligations under the California Rules of Professional Conduct, including Rule 1.1 (Competence), Rule 1.3 (Diligence), and Rule 3.3(a)(1) (Candor Toward the Tribunal), as well as California Business and Professions Code § 6068(d), which prohibits attorneys from misleading the court through false statements of fact or law.

### D. KNOWINGLY FALSE STATEMENT OF LAW TO A TRIBUNAL: A DISQUALIFICATION TO DEFENDANT'S ENTIRE MSJ.

Under *California Rule of Professional Conduct 3.3(a)(1)*, an attorney shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a previously made false statement of material fact or law. The Rules define knowledge as actual knowledge, which may be inferred from the circumstances. *Cal. R. Prof. Conduct 1.0.1(f)*. An attorney's duty of candor extends to representations concerning the governing contractual provisions upon which the attorney asks a court to adjudicate the parties' rights.

On August 31, 2026, Defendant Farmers Direct Property and Casualty Insurance Company, through its counsel Kelly Fitzgerald Canby, filed its Separate Statement of Uncontroverted Facts in Support of its Motion for Summary Judgment. *(ECF No. 117-1,* In *Undisputed Material Fact No. 11, at PageID 4238*). Defendant selectively identified provisions of the California Amendatory Endorsement, Form HA01CA 0108, specifically referencing Section 1.A, concerning "Intentional Loss," while omitting the endorsement's remaining amendments, including Section 2, entitled "**HOW WE SETTLE A PROPERTY LOSS**." (ECF No. 1-2, FAC's Exhibit A, PageID 106, California Amendatory Endorsement). Section 2 addresses Plaintiff's entitlement for additional "payments under **Replacement Cost Settlement** or **Replacement Cost on Contents."** This endorsement amends the applicable period for notifying Defendant of an election to repair, restore, or replace damaged, destroyed, or stolen

property to twelve (12) months. *Id.* Indeed, Defendant through its counsel Ms. Canby omitted this section from the Policy*:*

> **AMENDING ENDORSEMENTS: California Amendatory Endorsement HA01CA 0108** [9]
> 2 SECTION I - HOW WE SETTLE A PROPERTY LOSS, the provisions relating to your right to make further claim for any additional payments for **Replacement Cost Settlement** or **Replacement Cost on Contents** is amended to provide a 12 month time period for **you** to notify **us** of **your** decision to repair, restore or replace the damaged, destroyed or stolen property. Additional extensions of six months shall be provided to **you** for good cause. Furthermore, in the event of a loss related to a "state of emergency", as defined under California law, the time period for **you** to notify **us** shall not exceed 24 months after the date of **actual cash value** payment.

The omitted replacement-cost provisions implicate mandatory protections under *California Insurance Code § 2051.5(b)(1)(A)* which supports that *Plaintiff is entitled* to no less than 12 months from the first actual-cash-value payment to recover the full replacement cost of a covered loss, subject to applicable policy limits and statutory conditions.

The California Amendatory Endorsement HA01CA 0108 expressly amended the corresponding provision of Property Loss Settlement Endorsement HP4520 0113:

> **Property Loss Settlement HP4520 0113**[10]
> Replacement Cost on Contents. If you decide not to repair, restore or replace the damaged or stolen property, settlement will be on an actual cash value basis. You may make further claim within 180 days after the date of actual cash value payment for any additional payment on a replacement cost basis if you repair, restore or replace the damaged or stolen property.

**E. MEET AND CONFER**

Plaintiff has called Defendant's counsel Michelle Bernard and left her a voicemail on November9, 2026. Plaintiff has also provided notices to Defedant. See D'Sol Decl. ¶¶ 19-21 Exhibit 9-11, see also call history are only outgoing calls. Ms. Bernard has not returned any of Plaintiff's calls. See Id., ¶9.

**F. BREACH OF DUTY**

Adjuster Insurance Licensed Supervisor – Company Employee Adjuster, Bryce Spradling with Adjuster License Number 12948777,[11] has a duty not to misrepresent the policy to

---

[9] See ECF Doc. 1-2 PageID 106

[10] See ECF Doc. 1-2 PageID 87

[11] https://sbs.naic.org/solar-external According to the insurance licensing record, Bryce Spradling holds Adjuster License No. 12948777 (Legacy License ID No. 525603), first activated June 11, 2020, with Texas designated as his home state. Mr. Spradling's license is listed as active, with an expiration date of August 31, 2027. His approved lines of authority include Property, Casualty, and Auto Physical Damage, with Property and Casualty qualifications obtained through reciprocity effective June 11, 2020. The record identifies July 8, 2025, as the status date and September 1, 2025, as the license effective date.

policyholders or to the tribunal. Mr. Spradling misrepresented that Plaintiff had "voided [her] ability to recover any funds" by failing to provide information before April 27, 2025, which Mr. Spradling calculated 180-days from the time that Defendant Farmers Direct through its agent Richard Brynt issued the first payment from for the Burglary Claim on October 29, 2024. *See First Amended Complaint, Exhibit Y, ECF No. 1-2, Page ID 189*.

On July 8, 2025, Defendant Farmers Direct, through its agent Michael Saskor, denied Plaintiff's July 7, 2025, request for reimbursement of recoverable depreciation associated with her replacement MacBook Air. [12] *See ECF Doc 119-2 PageID 4470*. Plaintiff had purchased the replacement laptop on June 25, 2025, within 12 months of Defendant's initial actual-cash-value payment on October 29, 2024. See ECF Doc 119-2 PageID 4470. Saskor denied the request as untimely, invoking the 180-day deadline that Defendant calculated to have expired on April 27, 2025. *Id.* Defendant violated the California Amendatory Endorsement HA01CA 0108 and *California Insurance Code § 2051.5(b)(1)(A)* by denying Plaintiff's claim for the withheld replacement-cost depreciation on her MacBook Air based on an inapplicable 180-day deadline, **Plaintiff is entitled to recover the $160.88 in withheld replacement-cost depreciation**.

Significantly, Defendant's lead counsel, Michelle R. Bernard breached her duty of candor toward the tribunal by filing an incorrect legal representation that repeated the same material omission in a separate filing before this Court. At ECF No. 133, PageID 5909, Ms. Bernard represented that Coverage C required Plaintiff to provide notice within 180 days to recover withheld replacement-cost depreciation. In footnote 3 on that same page, counsel expressly attributed this requirement to Property Loss Settlement Endorsement HP4520 0113, without acknowledging that California Amendatory Endorsement HA01CA 0108, Section 2, expressly modifies the applicable notification period to twelve months. (ECF No. 1-2, PageID 106.)

[12] Plaintiff's insured personal property included a MacBook Air 13.3-inch laptop, Apple M1 chip, 8 GB memory, 256 GB SSD, Silver, Model MGN93LL/A. Defendant valued the laptop at $699.00, plus $64.66 in applicable sales tax, for a total replacement cost of $763.66. Defendant withheld $160.88 in recoverable depreciation and on October 29, 2024, paid Plaintiff only $602.78 in actual cash value. Plaintiff submitted June 25, 2025, Invoice No. MB81288042 from Apple for a Laptop Serial No. JHKQ2V0TT, MBA 13 MDN / PU/16/ 256 GB that had been charged to Plaintiff's card ending in 4641.

**PRAYER FOR RELIEF:** Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment because Defendant's presentation of the insurance policy fails to account for the California Amendatory Endorsement HA01CA 0108, Section 2, which expressly modifies the replacement-cost provisions of Property Loss Settlement Endorsement HP4520 0113. (ECF No. 1-2, PageID 106.) Defendant's reliance on the 180-day replacement-cost provision without addressing the applicable 12-month amendment presents an incomplete contractual framework for adjudicating Plaintiff's entitlement to additional replacement-cost benefits.

### G. BREACH OF SETTLEMENT IN PRINCIPLE

Plaintiff respectfully requests that the Court advance the deadline for the parties' Joint Status Report. Despite Plaintiff's expressed willingness to participate in preparing a joint submission, defense counsel Michelle R. Bernard has provided instructions for Plaintiff to file a separate statement, raising concerns regarding whether meaningful joint preparation will occur. See D'Sol Decl. ¶37, Exhibit 18. Moreover, although Ms. Bernard requested ex parte relief concerning her anticipated vacation, the corresponding state court filing disclosed the vacation dates without seeking comparable relief. D'Sol Decl. ¶38, Exhibit 19, p 2, ¶6. Plaintiff requests an earlier deadline to ensure timely compliance, meaningful participation by both parties. Plaintiff has already sent an email on October 28, 2026, to Defendant's Counsel with Plaintiff portion completed, fifteen days have passed.

### H. GOOD CAUSE EXISTS TO REOPEN DISCOVERY BASED ON NEWLY DISCOVERED EVIDENCE AND MATERIAL INCONSISTENCIES

Good cause exists under Federal Rule of Civil Procedure 16(b)(4) based on Plaintiff's October 19, 2026 discovery of previously undisclosed mold reports transmitted on November 19, 2024, identifying claims representative Donald Means. D'Sol Decl. ¶¶ 11-12, Exhibits 1-2. The evidence raises substantial questions concerning Defendants' prior knowledge, alleged concealment of material findings, and inconsistent representations regarding receipt of the reports. ECF Doc. 119-3. Further, Means' sworn declaration attributes his second inspection to a separate claim, while other defense declarants relied upon his findings in support of their evaluations of a different claim. *Id.* These discrepancies raise material questions concerning the accuracy, completeness, and attribution of

Defendants' investigative evidence submitted in support of summary judgment. Limited discovery is warranted to establish Defendants' knowledge, the handling of the mold reports, and the proper attribution of Means' inspections. Also, this concerns effects to Plaintiff's respiratory potential injury that must be examined.

I. **DILIGENCE.**

Plaintiff reasonably relied on claims representative Donald Means, who represented that he possessed extensive experience in the water mitigation industry, initiated and directed the drying and mold assessment process, and represented that a third-party reviewer would evaluate the findings. Because Means assumed responsibility for coordinating and reviewing these matters, Plaintiff reasonably understood that the reports were being handled through Defendants' claims investigation and had no reason to anticipate that material findings would remain undisclosed or unaddressed. Plaintiff discovered the November 19, 2024 correspondence on October 19, 2026, and contends that the circumstances surrounding Means' representations and control of the investigation explain why the reports were not identified earlier despite Plaintiff's reasonable reliance on the established claims-handling process. See also D'Sol Decl. ¶¶11-18.

*J.* **IMMEDIATE AND IRREPARABLE HARM - BODILY INJURY -**

The following records are provide to establish Plaintiff's ongoing medical visits which started on September 2025, one year after the report was concealed by Defendant, and Plaintiff continued living under the same conditions until another year after when she first learned about the mold report. Plaintiff's Primary Physician, Dr. Jason Halperin, from Stonewall Medical Center in Cathedral documented the following medical notes See D'Sol Decl. ¶42.

As of November 12, 2026, the city shut off water services to Plaintiff due to lack of payment. Defendant is aware of Plaintiff's current financial hardship and is aware of Plaintiff's mental health. Nevertheless, Defendants' counsel, Michelle R. Bernard, made statements that Plaintiff perceived as mocking and dismissive of those circumstances. Plaintiff submits that Defendants' knowledge of her circumstances is relevant to the Court's assessment of the prejudice

Plaintiff may suffer absent the requested relief. The underlying communications are addressed in Plaintiff's supporting declaration. ECF Doc. 188-6 PageID 7622

### K. Public Interest[13]

The Palm Springs Municipal Code § 11.72.170 governs property maintenance under Chapter 11.72 Public Nuisance. Its purpose is to protects community character, aesthetic appeal, and economic/residential value through required property upkeep. It enforces:

> The economic welfare, residential attractiveness, and community character of Palm Springs are attributable to its unique aesthetic features and setting. To ensure a proper standard of maintenance other nuisances, or constitute a fire hazard or other condition that is dangerous to, or otherwise poses a risk of harm to the public health, safety, or welfare, or constitutes visual blight or reduces the aesthetic appearance of the neighborhood All properties must be maintained free of visible trash, stored materials, excessive weeds, and overgrown vegetation. Buildings and structures must remain safe and free of defects, neglect, and deterioration. Site improvements, including paving, walkways, curbs, fences, lighting, drainage, and trash areas, must be kept in safe, clean, and functional condition. Landscaping must remain healthy, trimmed, and weed-free, and irrigation systems must operate properly and provide adequate watering

Plaintiff has received multiple different correspondences from the Palm Springs: Notices of Violation from the Palm Springs Municipal Code Department, Notice of Cease and Desist Code Violation Notice from City of Palm Springs' Attorney's Office, Citations from the City of Palm Springs notices concerning municipal-code violations at the Subject Property from in connection with enforcement by the City of Palm Springs due to the window mentioned in this action. See D'Sol Decl. ¶41, Exhibit 22.

---

[13] **Active Government Enforcement and Investigations. See Plaintiff's RJN no. 6, Exhibit F, ECF Doc. 182, Page ID 7421:** Defendant's widespread and unfair business practices have directly attracted the intervention of California law enforcement and regulatory bodies. On September 9, 2026, the Affirmative Litigation and Consumer Protection Division of the Los Angeles County Counsel officially launched a formal civil investigation into Farmers Insurance Group for potential violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) stemming from bad-faith claims handling The specific practices currently under formal government investigation mirror the exact misconduct suffered by Plaintiff in this action, including: Engaging in standard practices of switching claims adjusters to intentionally manufacture delays and burden policyholders; Misrepresenting policy language and the true scope of coverage to claimants; and] Failing to disclose repair, remediation, or replacement estimates within the legally mandated 15-day statutory window.

The notices refer to Chapter 11.72 of the Palm Springs Municipal Code and identify an alleged code violation involving a condition characterized in the notice as a public nuisance. These violation-related documents date from April 2026 to present.

These notices concern the damaged window and require corrective action. The dates, deadlines, and precise requirements are stated in the individual notices. Plaintiff also received municipal fines totaling approximately $1,050 in connection with the code-enforcement matter. The notices and assessments identify the violations and amounts associated with the fines. *Id.* The notices and fine assessments document that the condition of the property resulted in actual municipal enforcement consequences. The unresolved insurance dispute impaired her ability to complete the necessary repairs and respond to the City's requirements

## V. CONCLUSION

Plaintiff respectfully requests that the Court:

1. **Reopen discovery** pursuant to Federal Rule of Civil Procedure 16(b)(4) for a limited period of 30 days;
2. **Order Defendants to produce** all mold inspection reports, related correspondence, transmission records, claim notes, and documents concerning Donald Means' receipt, review, acknowledgment, or handling of the November 19, 2024 mold reports;
3. **Order production of** Donald Means' inspection reports, photographs, estimates, and claim records sufficient to establish the dates, purposes, and claim numbers associated with his October 9, 2024 and May 23, 2025 inspections;
4. **Permit a limited deposition of Donald Means** concerning his knowledge of the mold findings, the handling of the reports, and inconsistencies between his sworn declaration and other evidence submitted by Defendants;
5. **Permit limited discovery concerning Defendants' reliance on Means' reports**, including communications and records identifying which inspection findings supported their coverage determinations and summary judgment submissions; and
6. **Grant such other relief** as the Court deems just and appropriate.

Respectfully Requested

Dated November 12, 2026

/s/ Luna D'Sol

Luna D'Sol, Plaintiff in Pro Per

## CERTIFICATE OF COMPLIANCE

Pursuant to the applicable Local Rules of the United States District Court for the Central District of California, Plaintiff Luna D'Sol, proceeding in propria persona, hereby certifies that the accompanying Memorandum of Points and Authorities contains **7246 words**, as determined by the word-count function of the word-processing software used to prepare the document.

Plaintiff further certifies that the memorandum complies with the applicable word-count limitation, excluding any portions exempted from the calculation under the applicable rules.

Dated November 12, 2026

/s/ Luna D'Sol

Luna D'Sol, Plaintiff in Pro Per