LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. : *2:25-cv-10938-SVW-ASx*<br><br>*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*<br><br>**DECLARATION OF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO FILE MOTION TO SUPPLEMENT PLAINTIFF'S OPPOSITION TO DEFENDANT'S MSJ BASED ON NEW EVIDENCE, REOPENING OF DISCOVERY, AND SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL**<br><br>Complaint Filed: August 21, 2025<br><br>Trial Date: January 2027<br>FSC: TBD<br><br>Filed Concurrently with: **EX PARTE APPLICATION FOR LEAVE TO FILE MOTION TO SUPPLEMENT PLAINTIFF'S OPPOSITION TO DEFENDANT'S MSJ BASED ON NEW EVIDENCE, REOPENING OF DISCOVERY, AND SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL; PROPOSED ORDER; EXHIBITS** |

## DECLARATION OF LUNA D'SOL

I, Luna D'Sol, declare as follows:

1. I am the Plaintiff in the above-captioned action, proceeding in propria persona. I am over eighteen years of age and competent to testify to the matters stated herein. I submit this Declaration in support of my accompanying Ex Parte Application for Leave to File a Motion seeking enforcement of procedural obligations, partial default judgment, reopening of discovery, and sanctions against Defendants and their counsel based on alleged discovery misconduct, material misrepresentations, and noncompliance with applicable court orders and procedural requirements. The facts stated herein are based on my personal knowledge, including communications I sent or received, documents I reviewed, and events I personally witnessed. If called as a witness, I could and would testify competently to these matters under oath.

**DISCOVERY VIOLATION**

2. True and correct copies of two out of office replies that I received from Ms. Canby's email on July 14, 2026, and July 15, 2026, emails are attached hereto as Exhibit **DiscoveryViolation001**.

3. A true and correct copy of the six-page email correspondence received from Ms. Canby on July 14, 2026, at approximately 11:55 p.m., including the preceding email communications, is attached hereto as Exhibit **DiscoveryViolation002**. Specifically:

   *A.* *Pages 6:* a July 14, 2026, email that I had sent at approximately 1:16 p.m., to both counsel Michelle Bernard and Kelly Canby, after calling them and leaving a voicemail to each, requesting a meet-and-confer pursuant to Local Rule 7-3 concerning the identification of "Farmers" as highlighted in yellow by Ms. Canby.

B. *On Page 5,* my second email at 4:09 p.m., after receiving an automatic reply indicating that Ms. Canby was out of the office, I sent a follow-up email to both attorneys confirming that I had also called Ms. Bernard and left a voicemail requesting a return call. In both communications, I sought to arrange a telephone or videoconference.

C. *Pages 1-5*: Notwithstanding the automatic out-of-office replies indicating her unavailability, Ms. Canby sent me an approximately 5-page email response on July 14, 2026, at 11:55 p.m., stating: "As you are apparently aware, I am currently out of town and will be returning to the office next week. I can be available on the afternoons of Monday 7/20 or Tuesday 7/21 to hold your requested Local Rule 7-3 Conference." Ms. Bernard did not return my calls.

4. On July 15, 2026, at approximately 11:07 a.m., I expressly questioned Ms. Canby regarding the inconsistent operation of her automatic out-of-office replies. I explained that when I emailed her on July 14, 2026, I received an automatic out-of-office response, yet she subsequently responded to my email. When I replied, her automatic out-of-office message was triggered again. However, following my subsequent response to her most recent email, I no longer received an automatic out-of-office reply, leading me to question whether the automatic response had been deactivated. At approximately 11:19 a.m., Ms. Canby responded, "I'm not very tech savvy, but I assure you that I am out of town with my family and I will make time to speak with you upon my return to the office next week." A true and correct copy of Ms. Canby's July 15, 2026, email is attached hereto as Exhibit **DiscoveryViolation003.**

5. On July 15, 2026, at approximately 12:39 p.m., Ms. Bernard emailed me stating that she was in the hospital and unavailable to speak with me. Nevertheless, her correspondence substantively addressed several litigation matters, including the parties' respective positions, procedural compliance, deadlines,

relevance, alternative dispute resolution, and court filings. Ms. Bernard concluded her email by stating: "I will send you a separate email regarding your new state court lawsuit as that matter has been referred to me for further handling." The lawsuit referenced was *Luna D'Sol v. Farmers Insurance Exchange*, Case No. 26VECV03273, commenced on June 4, 2026, concerning a separate homeowners insurance claim arising under a different insurance policy from the policy at issue in this federal action. A true and correct copy of Ms. Bernard's July 15, 2026, email is attached hereto as Exhibit **DiscoveryViolation004**.

6. Ms. Bernard did not send me the separate email she represented she would send concerning the state court action. Instead, Ms. Bernard subsequently filed a document entitled "Declaration of Michelle Bernard in Support of 30-Day Extension to Respond to Plaintiff's Complaint Pursuant to Code of Civil Procedure Section 430.41(a)(2)." In that declaration, Ms. Bernard acknowledged that Farmers Insurance Exchange's deadline to respond to Plaintiff's Complaint was July 20, 2026. Ms. Bernard further declared that she had been retained on July 17, 2026, and that she first contacted me concerning that matter on July 17, 2026**.** A true and correct copy of Ms. Bernard's declaration is attached hereto as Exhibit **SanctionbleFiling001. Ms. Bernard's own statement from her Declaration is demonstrably false.** Ms. Bernard first contact with me about the State Court case was on July 15, 2026.

7. My meet and confer requests continued being ignored, and after 12 days of silence from Ms. Canby, I received an email from July 27, 2026, at 6:10pm from Ms. Canby where Ms. Canby write that this email was to confirm my deposition for "Friday 7/31 at 9:00 am" at Ms. Canby's Los Angeles office. Ms. Canby stated that my deposition was attached to her email and wanted to confirm my intention to appear. A true and correct copy of Ms. Bernard's declaration is filed hereto as Exhibit **DiscoveryViolation005**.

8. I opened her attached document, and it was a "Notice of videotaped Deposition of Plaintiff Luna D'Sol" executed by Ms. Canby on July 16, 2026." A true and correct copy of Ms. Canby's Notice of Deposition of Plaintiff Luna D'Sol is attached hereto as Exhibit **SanctionbleFiling002.**

9. A true and correct copy of Ms. Bernard's July 31, 2026, email that I received is attached hereto as Exhibit **DiscoveryViolation006** where Ms. Bernard wrote:

> "As I'm sure your research has shown, I am a senior partner at one of the largest law firms in the United States and oversee the day-to-day management of numerous attorneys and litigation matters. Rest assured, I have not "gone missing" as erroneously suggested in your email but likewise I do not have time to contemporaneously respond to your self-serving and unhinged communications directed to me or Ms. Canby in this matter. This holds true whether I am in the office/out of the office/on vacation/personal time off/medical leave. In this respect, your expectation of an immediate response by me or Ms. Canby to your emails and/or voice mail messages – regardless of our respective work and/or personal schedules – does not dictate the timeline for our response to the same."

10. A true and correct copy of Ms. Bernard's August 28, 2026 email is attached hereto as **DiscoveryViolation007.** On August 28, 2026, I received an email from Defendant Farmers Direct Property and Casualty Insurance Company's counsel, Michelle Bernard, concerning my request to meet and confer and deliver the court order's parties' meet-and-confer obligations under Central District of California Local Rule 16-2. In that email, Ms. Bernard stated:

> "As far as meeting and conferring on the L-R. 16-2 topics (the last due date to complete same was August 26), you blew your deadline to request a jury trial in this matter after removal and Farmers Direct has a pending motion under submission with the court seeking to strike your untimely jury demand. Accordingly, unless and until the court grants you relief regarding this major procedural problem, there is no basis for meeting and conferring on jury instructions as there is not going to be a jury trial as of right now."

**PLAINTIFF'S PROMPT ACTION TAKEN: MOLD REPORT FINDING**

11. On October 19, 2026, I searched for documents relating to Hurricane Hilary in response to an October 6, 2026 email from the California Mortgage Assistance Program, titled "Application Status," requesting, among other things, an insurance carrier acceptance letter and a certified assessment report prepared by a licensed professional. I conducted searches within my laptop's email application using the keywords "contractor" and "insurance," with date parameters corresponding to 2023 and 2024. **Attached hereto as Exhibit 1 is a true and correct copy of the October 6, 2026 email.**

12. During this search, I discovered a previously unopened email dated November 19, 2024, in my spam folder from Michael Cantor of 20/20 Advanced Property & Mold Inspections, visibly identifying Donnie Means, Farmers' claims adjuster, and containing four attachments concerning the September 27, 2024 water-damage claim, Claim No. 7008177137-1, under Policy No. 3872340940, effective September 28, 2023 through September 28, 2024. **Attached hereto as Exhibit 2 is a true and correct copy of the November 19, 2024 email and its four attachments, including the reference to Donnie Means appearing on page 2.**

13. On Attached as Exhibit **Exhibit 3** is a true and correct copy of my October 19, 2026, correspondence and Ms. Bernard's response. On October 19, 2026, at approximately 2:04 p.m., I transmitted an email to Defendant Farmers Direct Property and Casualty Insurance Company, through its attorneys Michelle R. Bernard and Kelly Canby, concerning the original 2024 water-leak claim, the mold remediation performed at my insured residence, and the unresolved environmental conditions documented in the post-remediation inspection report. At approximately 4:15 p.m., Ms. Bernard responded to my correspondence. She stated: "We are litigation counsel for the company – we are not involved in the claims adjustment process." Ms. Bernard further advised: "If you have additional information you would like the company to consider regarding this 2024 claim, we recommend that you contact Donnie Means regarding the issues addressed below."

14. On October 21, 2026, I dialed 1-800-435-7764 to call Farmers Claims Center, and the representative told me to contact the person who handled the claim.

**15.** I sent an email to Mr. Means' manager Albert Pimentel on October 23, 2026, at 8:12 a.m. to let him know about my findings. A true and correct copy of my email to Mr. Pimentel is attached hereto as **Exhibit 4.** On the same day, five minutes after I sent Mr. Pimentel an email, Mr. Pimentel wrote back to me the following message "Please be advised that the employee you've contacted is no longer with Farmers Insurance." Attached hereto as **Exhibit 5** is a true and correct copy of Mr. Pimentel's response.

**16.** On October 26, 2026, I contacted Licensed Insurance Supervisor Mr. Bryce Spradling[1] still seeking for assistance on the Mold report new evidence. Attached hereto as **Exhibit 6** is a true and correct copy of my email to Mr. Spradling.

**17.** On October 27, 2026, Mr. Spradling sent an email to Mike Saskor and Timothy Byrne where I was copied. Mr. Spradling wrote "Mike & Tim, Can you review and follow-up as needed." Attached hereto as **Exhibit 7** is a true and correct copy of my email to Mr. Spradling.

**18.** Attached hereto as **Exhibit 8** is a true and correct copy of Mike Saskor email from Saskor to me that Mr. Saskor sent on November 4, 2026, after I requested to place me in a hotel. Mr. Saskor mentioned that he has not received any reports

**MEET AND CONFER**

**19.** On November 9, 2026, at 11:39 a.m., I emailed Defendant's counsel, Michelle R. Bernard, copying Kelly Fitzgerald Canby, providing formal notice of newly identified documentation concerning Defendant's insurance claims handling and communications involving my mortgage servicer, Select Portfolio Servicing ("SPS"). I referenced California Code of Regulations, title 10, section 2695.4, requested preservation of relevant claims records and communications involving SPS, and advised counsel of my anticipated application for ex parte relief. In response, Ms. Bernard stated that her firm represented Farmers and Farmers Direct solely

---

[1] https://sbs.naic.org/solar-external According to the insurance licensing record, Bryce Spradling holds Adjuster License No. 12948777 (Legacy License ID No. 525603), first activated June 11, 2020, with Texas designated as his home state. His license is listed as active, with an expiration date of August 31, 2027. His approved lines of authority include Property, Casualty, and Auto Physical Damage, with Property and Casualty qualifications obtained through reciprocity effective June 11, 2020. The record identifies July 8, 2025, as the status date and September 1, 2025, as the license effective date.

as litigation counsel, denied any involvement in handling my insurance claims, and instructed me to direct claim-related communications to my assigned claims adjuster. Ms. Bernard further represented that her firm had not communicated with SPS, characterized my contemplated ex parte application as lacking evidentiary support, and warned that filing it could expose me to sanctions under Local Rule 83-8 et seq. Ms. Bernard did not identify any claims records reviewed or provide a substantive response concerning the documentation referenced in my notice. **Attached hereto as Exhibit 9 is a true and correct copy of my November 9, 2026 email and Ms. Bernard's response.**

**20.** On November 2, 2026, I emailed Defendant's counsel, Michelle R. Bernard and Kelly Fitzgerald Canby, providing notice of my anticipated motions and request for emergency relief, including a temporary restraining order concerning unresolved mold contamination and additional living expenses, limited reopening of discovery, leave to amend my complaint, and sanctions. In response, Ms. Bernard characterized my anticipated motions as "frivolous," threatened to seek monetary sanctions against me, and described my meet-and-confer requests as "mindless." Ms. Bernard further questioned the good faith of my request for a medical stay, referring to my need for surgery and mental health treatment and suggesting that my request was a "ruse/litigation tactic." She also characterized my litigation conduct as "vexatious" and asserted that I was responsible for violations of court orders and discovery obligations. I understood these statements as challenging both the legitimacy of my medical circumstances and my efforts to pursue procedural relief. Ms. Bernard expressly opposed my anticipated motions but did not agree to the requested relief. Attached hereto as **Exhibit 10** is a true and correct copy of my November 2, 2026, email and Ms. Bernard's response.

**21.** On October 19, 2026, I emailed Defendant's counsel, Michelle R. Bernard and Kelly Fitzgerald Canby, notifying them of newly discovered findings in the November 19, 2024 post-remediation mold inspection report concerning elevated mold levels outside the bathroom containment area, within my master bedroom. I requested immediate investigation, identification of any written coverage determination addressing those

findings, and a meet-and-confer conference concerning a temporary stay of the three pending lawsuits while the matter was addressed. In response, Ms. Bernard refused to agree to a litigation stay, citing the parties' September 25, 2026 settlement in principle. Rather than addressing my specific requests concerning the unresolved mold findings, Ms. Bernard demanded execution of the proposed global settlement agreement, stated that settlement funds were available upon receipt of my signature, and warned that failure to execute the agreement would be treated as a breach of the September 25, 2026 settlement agreement. Ms. Bernard further stated that Defendant would notify the District Court to proceed with ruling on its dispositive motions without further delay. I understood this response as conditioning the proposed settlement on my execution of the agreement while declining my request to pause litigation to address the newly discovered mold findings. **Attached hereto as Exhibit 11 is a true and correct copy of my October 19, 2026 email correspondence with Ms. Bernard, including her response.**

**<u>RESTORATION SERVICES</u>**

22. On November 11, 2024, I received an email from Elena Carrillo of Orange County Restoration Services containing the contractor's invoices and reports. The mitigation report states that, following the October 28, 2024 inspection, the contractor performed demolition and water-damage mitigation "after approval from Farmers Insurance adjuster." At that time, Donnie Means was the assigned Farmers claims adjuster. Attached hereto as **Exhibit 12** Dry is a true and correct copy of the email and accompanying report.

**<u>TEXT MESSAGE COMMUNICATIONS – Donnie Means</u>**

23. Attached hereto as **Exhibit 13** is a true and correct copy of the text message communications exchanged between me and Donnie Means, Farmers Direct's assigned claims adjuster, from October 7, 2024, through December 20, 2024. I personally participated in these communications and recognize them as messages sent and received through my mobile phone concerning the handling of my insurance claim. The final three pages of Exhibit 13 contain additional screenshots taken directly from my mobile phone of

messages previously included in the exhibit, dated November 3, November 4, and November 9, 2024. These screenshots are provided because certain photographs transmitted with those messages do not appear in the text-message copies reproduced on the preceding pages. The additional screenshots accurately depict the original messages together with their accompanying photographs as displayed on my mobile phone.

**24.** Attached hereto as **Exhibit 14** is a true and correct copy of email correspondence exchanged between Michael Cantor of 20/20 Advanced Property & Mold Inspections and me on October 29–30, 2026. In his October 30, 2026 email, Mr. Cantor confirmed that he emailed Farmers' adjuster Donnie Means, stating, and further explained that Mr. Means received the communication because Mr. Cantor was subsequently paid. (Exhibit 14, p. 1.). Mr. Cantor also provided a copy of the email that Mr. Cantor sent to Mr. Means on November 19, 2024. Attached hereto as **Exhibit 15** is a true and correct copy of the email correspondence Mr. Michael Cantor forwarded to me, including his email addressed to Farmers' claims adjuster, Donald Means.

**25.** On November 3, 2024, at approximately 5:15 p.m., I transmitted to Defendant's assigned adjuster, Donnie Means, a photograph of a moisture-meter reading taken near the wooden framing of the patio glass door adjacent to the master shower. In the accompanying text message, I expressly reported elevated moisture at that location. **Exhibit 13, page 47**. On November 4, 2024, at approximately 11:24 a.m., I transmitted another moisture-meter photograph and explained my concern that the presence of multiple layers of building materials could affect the accuracy of the reading. **Exhibit 13, page 45**. Orange County Restoration Services' mitigation estimate identifies November 4, 2024, as the date its drying equipment was shut off and removed. On November 9, 2024, at approximately 6:07 p.m., I expressly informed Mr. Means by text message that the drying and mold testing had been completed and transmitted additional photographs showing openings made in the affected master-bedroom and shower areas. **Exhibit 13, page 46**. These communications establish that I personally informed Defendant's assigned adjuster of the reported moisture conditions, the remediation activities, and the completion of mold testing before Mr. Cantor's November 19, 2024 correspondence concerning the post-remediation findings.

**ELECTRONIC SERVICE – lack of consent**

**26.** On November 17, 2025, I emailed Ms. Michelle Bernard requesting her express consent to electronic service for all future filings and correspondence. I specifically requested that she confirm her consent in writing and identify the email address at which she agreed to accept service. Later that day, Ms. Bernard responded, expressly consenting to receive electronic service of substantive pleadings, discovery pleadings, and correspondence. She identified her email address, mbernard@grsm.com.

**27.** I have never received a request from Defendant Farmers Direct Property and Casualty Insurance Company or its counsel seeking my consent to electronic service. Nor have I voluntarily provided, expressly granted, or otherwise agreed in writing to accept electronic service of pleadings, discovery documents, deposition notices, or other litigation-related documents from Defendant or its counsel. My request for, and receipt of, Ms. Bernard's consent to accept electronic service from me did not constitute reciprocal consent on my part to receive electronic service from Defendant.

**28.** On October 22, 2026, I received an email from Defendants' counsel, Michelle R. Bernard, in which she expressly acknowledged her knowledge of the requirements governing electronic service. Specifically, Ms. Bernard referenced my July 20, 2026, objection to service by email in the related state court action and stated that the parties had no agreement authorizing electronic service. She further insisted that pleadings be "properly served in accordance with the California Code of Civil Procedure" and requested a proposed stipulation concerning consent to electronic service. A true and correct copy of this correspondence is attached as **Exhibit 17**. Based on these communications, I understand that Ms. Bernard was fully aware of the distinction between merely transmitting documents electronically and accomplishing legally effective service, including the importance of obtaining the requisite consent.

**Defendant Knowingly Misleading**

29. A further example appears in the correspondence identified as ***DiscoveryViolation007***, concerning the Local Rule 16 meet-and-confer process. In response to my written communication, Ms. Bernard asserted that I had failed to engage in the required process and that I had repeatedly refused to meet and confer. Her response also referenced eight filings made on October 1, 2026, alleged failures to attend conferences under Local Rules 7-3 and 37-1, and alleged deficiencies concerning the exchange of initial disclosures. I dispute the characterization that I repeatedly refused to participate in the meet-and-confer process. The correspondence establishes that I initiated communication concerning the Local Rule 16 issues and that Ms. Bernard responded. Although the exchange does not, standing alone, establish that a conference satisfying Local Rule 16 occurred, it is evidence relevant to whether I attempted to communicate and whether Defendants' characterization of my conduct was complete and accurate. I request that the Court consider the actual correspondence, including my requests, the responses received, and the circumstances disclosed to counsel, rather than treating the absence of a completed conference as conclusive evidence that I refused to participate.

**1st MORTGAGEE**

30. On October 29, 2026, I notified Defendant's counsel, Michelle R. Bernard, of ongoing mold exposure in my master bedroom, the lack of response from Farmers' adjuster, and my intention to seek emergency injunctive relief. Rather than addressing my reported safety concerns, Ms. Bernard asserted that my claim appeared time-barred, characterized my contemplated TRO as "documented litigation misconduct," accused me of making false representations to the Court, and stated that "Farmers Direct will respond accordingly." A true and correct copy of this correspondence is attached as Exhibit **MortgageeViolation001**

**31.** On October 29, 2026, at approximately 12:31 p.m., I transmitted an email to Defendant Farmers Direct Property and Casualty Insurance Company, through its counsel Michelle R. Bernard, concerning unresolved conditions at my insured residence and my intention to seek emergency judicial relief.

**32.** In that correspondence, I informed Ms. Bernard that I had contacted Farmers supervisor Bryce Spradling regarding the unresolved mold conditions and that Mr. Spradling had subsequently directed adjuster Michael Saskor to assist me. I further explained that I had not received a substantive response from Mr. Saskor.

**33.** In the same correspondence, I expressly notified Defendant's counsel that I was preparing an application for a temporary restraining order concerning contractual requirements imposed by Farmers that I believed could cause a breach of obligations involving Select Portfolio Servicing ("SPS").

**34.** At approximately 12:57 p.m., Ms. Bernard responded to my email. Ms. Bernard characterized my proposed filings as frivolous

**<u>DEFENDANT'S LACK OF MEET AND CONFER REQUEST MOTION IN LIMINE</u>**

**35.** I did not receive any telephone call, email, written correspondence, or other communication from Defendant Farmers Direct Property and Casualty Insurance Company or its counsel requesting a meet-and-confer conference concerning any of Defendant's four Motions in Limine (Nos. 1–4) before those motions were filed. Nor did I participate in any meet-and-confer conference with Defendant's counsel concerning those motions before their filing.

**36.** Defendant's repetitive and unnecessarily voluminous filings substantially prejudiced my ability to prepare and timely submit responses. On September 1, 2026, Defendant filed its Motion for Terminating Sanctions (ECF No. 118) and Motion for Summary Judgment (ECF No. 119), together with extensive supporting declarations, exhibits, and discovery materials (ECF Nos. 120–121), noticing both motions for September 28, 2026, only 27 calendar days later, rather than the 28 days ordinarily required under Local Rule 6-1. The next available Monday

hearing date, October 5, 2026, coincided with the scheduled pretrial conference. Defendant subsequently continued submitting substantially repetitive arguments, declarations, and exhibits through ECF Nos. 122, 149, and 150, including a 38-paragraph supplemental declaration by attorney Kelly Canby embedded within ECF No. 150, beginning at PageID 6315, followed by extensive exhibits. The cumulative volume and repetition required me to repeatedly review and analyze substantially identical materials, diverted time from preparing other required filings, and interfered with my ability to meet deadlines. Despite these burdens, Defendant subsequently challenged the timeliness of my opposition filings. I believe this pattern imposed disproportionate procedural burdens upon me and materially impaired my ability to respond effectively.

**JOINT STATUS REPORT**

37. On October 26, 2026, at approximately 1:48 p.m., I expressly notified Defendants' counsel, Michelle R. Bernard, in writing that she was not authorized to submit any joint status report, declaration, or other document purporting to represent my position without my prior review and express approval. At approximately 2:08 p.m., Ms. Bernard responded, acknowledging that a joint filing required the parties' review and approval and confirming that, if agreement could not be reached, each party could submit a separate statement. A true and correct copy of this correspondence is attached as **Exhibit 18.**

**CMC**

38. On October 20, 2026, Defendants' counsel, Kelly F. Canby, executed a Case Management Statement (CM-110) in Los Angeles Superior Court Case No. 26VECV03273, identifying Farmers Insurance Exchange as the sole submitting party. In Section 11(c), Defendants identified Policy No. 77816-54-76 and characterized the disputed loss as theft or vandalism occurring around June 2025. Defendants' counsel, Kelly F. Canby, disclosed in Section 6(c), page 2, that defense counsel would be unavailable due to **prepaid vacation from November 25 through November 30, 2026, and from December 23, 2026, through January 4, 2027**. These periods were expressly identified as dates of unavailability for trial. A true and correct copy of the Case Management Statement is attached as **Exhibit 19.**

**ENT**

**39.** October 21, 2026, I received written notification from Maria Baitan, surgery scheduler at the Los Angeles Center for Ear, Nose, Throat, and Allergy, confirming that my scheduled surgery had been cancelled and that the office would contact me when rescheduling became available. On October 30, 2026, at approximately 9:52 a.m., I informed Ms. Baitan that I had secured the necessary funds and time off to complete my preoperative laboratory testing and requested the earliest available dates for my preoperative, operative, and postoperative appointments. At approximately 11:14 a.m., Ms. Baitan responded that no earlier openings were available and that I would be notified of any cancellations. A true and correct copy of this correspondence is attached as **Exhibit 20**.

**WATER SERVICES**

**40.** .On November 9, 2026, at approximately 4:52 p.m., I received written notification from Desert Water Agency that water service to my residence at 2275 E. Belding Drive, Palm Springs, California, was scheduled for disconnection on November 10, 2026, due to an outstanding balance. The accompanying Final Notice identified a past-due amount of $264.54 and a total balance of $562.06. **Water service was subsequently disconnected, and as of November 12, 2026, I remain without running water at my residence.** Consequently, I have been deprived of access to essential water service for drinking, bathing, sanitation, and ordinary household activities. This condition has materially disrupted my daily living circumstances while I am attempting to prosecute this action without counsel. A true and correct copy of the disconnection notice and accompanying email is attached as **Exhibit 21.**

**CITY PENALTIES**

**41.** I received multiple official notices from the City of Palm Springs concerning administrative citations issued against my residence at 2275 E. Belding Drive, Palm Springs, California, for alleged property maintenance violations, including peeling exterior paint. The notices identify citations B9963 and B9964, issued on June 2 and June 12, 2026, respectively, with outstanding penalties of $100 and $250. Subsequent notices dated July 15, August 7, August 17, September 9, and September 18, 2026, warned of escalating enforcement measures, including

additional penalties, special assessments, potential property liens, legal action, and referral to the California Franchise Tax Board for collection. These notices document ongoing municipal enforcement proceedings and the potential financial and property-related consequences of the unresolved maintenance violations. True and correct copies of the notices are attached as **Exhibit 22.**

**42.** These are all medical notes from my doctors regarding my respiratory issues

*A.* **September 19, 2025**, Plaintiff reported to her medical provider that she had experienced recurring headaches for approximately four months, accompanied by nasal swelling, difficulty breathing, and a persistent sensation of obstruction. Plaintiff reported being unable to expel air through one side of her nose, impaired hearing, and intermittent ear popping. Plaintiff further reported an episode approximately two days earlier during which she experienced a sensation of suffocation. Although Plaintiff was able to calm herself through meditation, the sensation of nasal obstruction persisted. These symptoms were documented while Plaintiff continued residing in the property following the previously reported water intrusion and mold-related conditions.

*B.* **On December 30, 2025**, Plaintiff was evaluated by Jason Halperin, M.D., at DAP Health. The medical record documented Plaintiff's continued difficulty breathing through one nostril, consistent with the nasal obstruction previously reported on September 19, 2025. Dr. Halperin assessed Plaintiff with nasal congestion and referred her to an otolaryngologist (ENT specialist) for further evaluation and management. Plaintiff's medication list also included fluticasone nasal spray.

*C.* **June 15, 2026 — Emergency Department Visit for Chest Discomfort** at approximately 9:08 p.m., Plaintiff presented to the Emergency Department at Desert Regional Medical Center, located at 1150 North Indian Canyon Drive, Palm Springs, California, complaining of chest pain. The hospital documented a discharge diagnosis of "Chest Discomfort." Plaintiff underwent laboratory testing, including cardiac troponin testing, a chest X-ray, and an electrocardiogram (EKG). Plaintiff was discharged on June 16, 2026, with instructions to follow up with her primary care physician within three to five days.

*D.* **August 18, 2026 — Emergency Department List** at approximately 12:08 p.m., Plaintiff again presented to the Emergency Department at Desert Regional Medical Center, reporting headaches and swelling of both feet for two days. The hospital documented a discharge diagnosis of "Swelling of Both Feet." Laboratory testing was completed, a chest X-ray was ordered, and an EKG was listed as in progress.

*E.* Plaintiff was referred to the ENT Group of Los Angeles – Palm Springs Office by her primary doctor. And a surgery has been re-scheduled several times because Plaintiff cannot afford to visit her primary doctor for lab test\

**43.** These are all my duties completed in accordance to the Policy

Claim No. 7007678692-1 ("burglary claim")[2]**:**

---

[2] 4662, 4664, 4668, 4679, 4702–4703, 4735–4745, 4799; **Defendant's SUF Nos**. 21, 27, 45, 76, ECF No. 117-1, Page ID 4242; **Spradling Decl**., ECF No. 119-2, ¶ 3; **Defendant's Amended Answer**, ECF No. 43, ¶ 9; **Saskor Decl**., ECF No. 119-2, ¶ 11, Exs. 2, 18, Page ID 4660, FD001121; **D'Sol Decl.,** ¶¶ 5, 10, 12,

*INITIAL NOTICE OF LOSS TO DEFENDANT*: On June 4, 2024, Plaintiff reported to Farmers Direct that a burglary and vandalism incident ("Incident") occurred at her on June 3rd, 2024, at her residence located at 2275 E. Belding Drive, Palm Springs, CA 92262 ("Property") on or about June 3, 2024, and sought coverage under the Policy ("Claim").

*POLICE REPORT AND INVENTORY DOCUMENTED*: The June 4, 2024, Palm Springs Police Department's report identified the bathroom window as the window that was ajar when Plaintiff discovered the burglary and recorded that the "window used for entry was damaged." The report further documented "Window — Repair" for "damage done to window." After discovering that the bathroom window had been compromised during the burglary,

*PLAINTFF PROTECTED THE PROPERT FROM FURTHER DAMAGES* Plaintiff took steps to prevent further damages and unauthorized entry by placing a stick in the window so that, even if the window were unlocked, it could not be opened. After discovering damage to the dishwasher and a cut water line, Plaintiff pulled out the dishwasher drawer to inspect the condition, placed the drawer back in position, and did not use the dishwasher thereafter to prevent further damages

*PLAINTIFF COOPERATED WITH INVESNTIGATIONS*

i. Between June 4, 2024, and August 2, 2024, Plaintiff answered to Defendant's Special Unit Investigator Andrew Hernan.
ii. On September 27, 2024, Plaintiff testified in the Examination Under Oath, that was conducted by Defendant's Counsel John Na

*PLAINTIFF ALLOWED INSPECTIONS* Plaintiff allowed adjuster Donnie Means' inspections to the Property on June 6, 2024, and on May 23, 2025; and photographs were taken.

*PLAINTIFF COMPLETED PROOF OF LOSS* On June 10, 2024, Plaintiff received a letter from Farmers Insurance stating "Policy requires that you send us this document within 60 days" referring to an attached Proof of Loss form. Plaintiff's

---

Ex. 103, EUO at 55:3–20, PL103-055, PL103-082, PL103-101; Claim No. 7007678692-1 and associated claim file.

Proof of Loss was notarized on August 2, 2024. And Defendants received it on August 5, 2024, which is within 60 days deadline. Defendants Counsel Mr. Na during the Examination Under Oath asked Plaintiff if Plaintiff was the person who completed the written entries, Plaintiff confirmed that she completed the written entries, and Mr. Na attached the Proof of Loss as Exhibit 2 to the Examination Under Oath.

Under 28 U.S.C. § 1746 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 12, 2026

/s/ Luna D'Sol
Luna D'Sol
Plaintiff in Pro Per