LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUNA D'SOL,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. : *2:25-cv-10938-SVW-ASx*<br><br>*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS, TO STRIKE DEFENDANT'S ANSWER, AND FOR ENTRY OF DEFAULT JUDGMENT AS TO LIABILITY PURSUANT TO FED. R. CIV. P. 16(f)(1)(C) AND 37(b)(2)(A)(iii), (vi)**<br><br>Complaint Filed: August 21, 2025<br><br>Hearing Date: December 21, 2026<br>Time 1:30 p.m.<br><br>Trial Date: TBD<br>FSC: January 2027<br><br>FILED CONCURRENTLY WITH:<br>*Certificate of Compliance L.R. 7-3,*<br>*Certificate of Compliance L.R. 11-6.2,*<br>*Notice to Waive Oral Argument,*<br>Supporting Declarations, Exhibits and Proposed Order, Notice of Motion |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... **2**

**I. PRELIMINARY STATEMENT** .......... **6**

**II. STATEMENT OF RELEVANT FACTS** .......... **6**

A. Defendant Refused to Meet and Confer on Joint Jury Instructions .......... 6

B. Prior Sanctions Warning Applies Equally to Defendant .......... 7

C. Meet and Confer Pursuant to Local Rule 7-3 .......... 8

**III. LEGAL STANDARD** .......... **8**

A. Federal Rule of Civil Procedure 16(f)(1)(C) and 37(b)(2) .......... 8

B. The Ninth Circuit Five-Factor Test .......... 9

C. Inherent Power .......... 10

**IV. ARGUMENT** .......... **10**

A. Defendant's Conduct Was Willful .......... 10

B. Material Misrepresentation of Controlling Policy Provision and Perpetuation of Such Misrepresentations Before the Court .......... 10

C. Defendant Engaged in Vexatious Paper-Flooding and Misrepresentation of the Docket .......... 15

1. Repeated Filing and Internal Duplication of Identical Records .......... 15

2. Irrelevant Extraneous Dockets and Recycled Templates .......... 16

3. Misattribution to Manufacture a Vexatious-Litigant Request .......... 16

D. Defendant's Indemnity Demand and Its "Deletion" Were a Fraudulent Misrepresentation and Concealment .......... 16

E. The Ninth Circuit Factors .......... 21

1. Factor 1: The Public's Interest in Expeditious Resolution of Litigation .......... 21

2. Factor 2: The Court's Need to Manage Its Docket .......... 21

3. Factor 3: Prejudice to Defendants .......... 22

4. Factor 4: Public Policy Favoring Disposition of Cases on Their Merits ....................23

5. Factor 5: Availability of Less Drastic Sanctions ....................24

**V. CONCLUSION ....................28**

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2) ....................29**

**NOTICE TO WAIVE ORAL ARGUMENT ....................30**

## Cases

Anderson v. Air West, Inc.,

542 F.2d 522, 525 (9th Cir. 1976 ........ 23

Anheuser-Busch, Inc. v. Nat. Beverage Distribs.,

69 F.3d 337, 348 (9th Cir. 1995). ........ 26

Capital Serv., Inc. v. NLRB,

204 F.2d 848, 853 (9th Cir. 1953). ........ 6

CarMax Auto Superstores Cal. LLC v. Hernandez,

94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015). ........ 7

Chambers v. NASCO, Inc.,

501 U.S. 32, 43–46 (1991) ........ 24

De Long v. Hennessey,

912 F.2d 1144, 1147–48 (9th Cir. 1990 ........ 15

Elliano v. Assurance Co. of America,

3 Cal. App. 3d 446, 451 (1970) ........ 12

Fink v. Gomez,

239 F.3d 989, 992 (9th Cir. 2001) ........ 9

Gleason v. Cal. Dep't of Corr. & Rehab.,

No. 2:2020-cv-00775 Document 67 (E.D. Cal. 2022) ........ 24

Haines v. Kerner,

404 U.S. 519, 520 (1972) ........ 6

Heffernan v. City of Paterson,

578 U.S. 266, 272 (2016) ........ 6

Kay v. Ehrler,

499 U.S. 432, 435–38 (1991) ........................................................................ 25

King v. Atiyeh,

814 F.2d 565, 567 (9th Cir. 1987) .................................................................... 6

Lazar v. Superior Court, 1

2 Cal. 4th 631, 638 (1996) .............................................................................. 16

Leon v. IDX Sys. Corp.,

464 F.3d 951, 958 n.4 (9th Cir. 2006). ............................................................ 8

LiMandri v. Judkins,

52 Cal. App. 4th 326, 336 (1997) .................................................................. 16

Lnu v. Blanche,

177 F.4th 1014 (9th Cir. 2026) ...................................................................... 24

Malone v. U.S. Postal Service,

833 F.2d 128, 130 (9th Cir. 1987) .................................................................... 8

Malone v. United States Postal Service,

833 F.2d 128, 130 (9th Cir. 1987). ................................................................... 5

*Molski v. Evergreen Dynasty Corp*.,

500 F.3d 1047, 1057 (9th Cir. 2007 ............................................................... 15

Moradi-Shalal v. Fireman's Fund Ins. Cos.,

46 Cal. 3d 287 (1988). .................................................................................... 20

Pagtalunan v. Galaza,

291 F.3d 639, 642 (9th Cir. 2002 ................................................................... 20

Phenylpropanolamine (PPA) Prods. Liab. Litig.,

460 F.3d 1217, 1228 (9th Cir. 2006 .......................................................... 22

Pickholtz v. Rainbow Techs., Inc.,

284 F.3d 1365, 1375–76 (Fed. Cir. 2002) .................................................. 25

Sanchez v. Rodriguez,

298 F.R.D. 460, 472 (C.D. Cal. 2014). ...................................................... 22

Spray, Gould & Bowers v. Associated Int'l Ins. Co.,

71 Cal.App.4th 1260, 1268–69 (1999). ..................................................... 12

Tri-Valley CAREs v. U.S. Dep't of Energy,

671 F.3d 1113, 1131 (9th Cir. 2012) ........................................................... 7

U.S. ex rel. Wiltec Guam, Inc., v. Kahaluu Const. Co.,

857 F.2d 600, 603 (9th Cir. 1988) ............................................................... 7

United States v. Sumitomo Marine & Fire Ins. Co.,

617 F.2d 1365, 1369 (9th Cir. 1980). ........................................................... 8

Valley Eng'rs Inc. v. Elec. Eng'g Co.,

159 F.3d 1051, 1057 (9th Cir. 1998) ............................................................ 8

Yourish v. Cal. Amplifier,

191 F.3d 983, 990 (9th Cir. 1999) .............................................................. 20

## STATUTES

Cal. Bus. & Prof. Code § 6068(d) ................................................................. 11

Cal. Civ. Code §§ 1709, 1710 .......... 16

Cal. Code Regs., tit. 10, § 2695.4(a) .......... 11, 13

California Insurance Code § 2051.5(b)(1)(A) .......... 11

## RULES

, L.R. 83-7 .......... 6

C.D. Cal. L.R. 83-3.1.2 .......... 11

Fed. R. Civ. P. 11(b) .......... 11

Federal Rule of Civil Procedure 16(f)(1)(C) .......... 5

Federal Rule of Evidence 408(b) .......... 16

L.R. 37-4 .......... 6

Local Rule 16 .......... 7

Local Rule 7-3 .......... 7

Rule 16(f)(1)(C) .......... 6

Rule 37 .......... 25

Rule 37(b)(2)(A)(ii)–(vii) .......... 5

Rule 41(b) .......... 8

## PALM SPRINGS MUNICIPAL CODE

Palm Springs Municipal Code § 11.72.170. .......... 20

## I. PRELIMINARY STATEMENT

Throughout this litigation—which now spans 195 docket entries, 92 of which were filed within the past three months—Defendant Farmers Direct Property and Casualty Insurance Company ("Farmers Direct" or "Defendant") and its counsel have engaged in a sustained pattern of egregious litigation misconduct that demonstrates willfulness, bad faith, and fault, and is calculated to obstruct a fair adjudication on the merits and deprive Plaintiff of her right to a jury trial. This misconduct includes:

A. **Willful Disobedience of the Court's Civil Trial Preparation Order;**

B. **Breach of Affirmative Disclosure Obligations and Perpetuation of Material Policy Misrepresentations Before the Court;**

C. **Vexatious Litigation Conduct and Material Misrepresentations in Sworn Declarations;**

D. **Shifting Corporate Identities and Inducement of Detrimental Reliance; and**

E. **Obstruction of Meet-and-Confer Efforts and Derogatory Remarks Concerning Plaintiff's Mental Health and Gender Identity.**

The cumulative nature and severity of this misconduct, its prejudice to Plaintiff, and the inadequacy of lesser sanctions warrant terminating sanctions under Federal Rule of Civil Procedure 16(f)(1)(C), incorporating the sanctions authorized under Rule 37(b)(2)(A)(ii)–(vii), and the Court's inherent authority, upon consideration of the five factors articulated in Malone v. United States Postal Service, 833 F.2d 128, 130 (9th Cir. 1987).

## II. STATEMENT OF RELEVANT FACTS

### A. Defendant Refused to Meet and Confer on Joint Jury Instructions

Defendant, through counsel Michelle R. Bernard, expressly refused to meet and confer about preparing joint jury instructions and a verdict form. (D'Sol Decl. ¶ 4, Ex. 003 [Aug. 28, 2026 email].) Ms. Bernard asserted that "there is no basis for meeting and

conferring" because Defendant anticipated that no jury trial would proceed, even though its motion to strike Plaintiff's jury demand remained undecided. (Id.) That unilateral condition directly contravened the Civil Trial Preparation Order, which directs that the parties "SHALL MEET AND CONFER" regarding the proposed instructions and verdict form. (ECF No. 86 at 2:10–12.) Plaintiff also served her Proposed Jury Instructions on Defendant as the Order directs, but Defendant never responded. (D'Sol Decl. ¶ 21, Ex. 006.)

**B. Prior Sanctions Warning Applies Equally to Defendant**

This Court has already issued a sanctions warning for failure to file a joint statement related to discovery. (ECF No. 71, PageID 2170.) That warning rested on Local Rule 37-4: "[t]he failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions." L.R. 37-4 (emphasis added). Violation of the Local Rules "may subject the offending party or counsel" to sanctions, L.R. 83-7, and Rule 16(f)(1)(C) authorizes sanctions when "a party or its attorney" fails to obey a pretrial order. Pro se litigants "must follow the same rules of procedure that govern other litigants. "King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Represented parties are held to a higher standard, not a lower one. Cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se pleadings held to "less stringent standards than formal pleadings drafted by lawyers"). **What is sauce for the goose is sauce for the gander**: the warning in ECF No. 71 applies with at least equal force to Defendant. Heffernan v. City of Paterson, 578 U.S. 266, 272 (2016); Capital Serv., Inc. v. NLRB, 204 F.2d 848, 853 (9th Cir. 1953).

Despite demanding and obtaining that warning, after Ms. Bernard refused to meet and confer, co-counsel Ms. Canby unilaterally filed Defendant's proposed jury instructions and verdict and accused Plaintiff of violating Local Rule 16—blaming Plaintiff for the joint process Defendant had sabotaged. (ECF No. 175, PageID 7320

n.1.) Having secured an explicit sanctions warning, Defendant had actual notice of the standard and cannot claim ignorance or harmless error. (ECF No. 71, PageID 2170.)

### C. Meet and Confer Pursuant to Local Rule 7-3

Plaintiff complied with Local Rule 7-3. (Certificate of Compliance with L.R. 7-3; D'Sol Decl. ¶¶ 25–35.) More than seven days before filing, Plaintiff requested to meet and confer by telephone and gave Defendant written notice of the substance of this motion and the relief sought. Defendant stated its position in writing on November 2, 2026: it opposes "all aspects" of the relief. (ECF No. 195-1, PageID #:8205–8207.) Because this motion seeks enforcement of a pretrial order (ECF No. 86) under Rule 16(f)(1)(C), not discovery relief, Local Rule 7-3 governs, not Local Rules 37-1 and 37-2. In any event, under L.R. 7-4 the Court "may decline" to consider a noncompliant motion. Denial is discretionary, particularly where the non-moving party suffers no prejudice. Tri-Valley CAREs v. U.S. Dep't of Energy, 671 F.3d 1113, 1131 (9th Cir. 2012); CarMax Auto Superstores Cal. LLC v. Hernandez, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015).

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 16(f)(1)(C) and 37(b)(2)

Federal Rule of Civil Procedure 16(f)(1)(C) authorizes the Court, on motion or on its own, to issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Federal Rule of Civil Procedure 37(b)(2) authorizes terminating sanctions "against a party who 'fails to obey an order to provide or permit discovery.'" U.S. ex rel. Wiltec Guam, Inc., v. Kahaluu Const. Co., 857 F.2d 600, 603 (9th Cir. 1988) (quoting Fed. R. Civ. P. 37(b)(2)).[1] Any sanction must be 'just.' Ins. Corp. of Ireland v.

[1] Rule 41(b) similarly authorizes terminating sanctions against a party for failure to comply with a court order. See Fed. R. Civ. P. 41(b).

Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982). Severe sanctions like dismissal and default judgement are authorized only in "extreme circumstances." Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985). Only 'willfulness, bad faith, and fault' justify terminating sanctions." Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). Willfulness means disobedient conduct "within the litigant's control." Fjelstad, 762 F.2d at 1341; accord United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir. 1980).

**B. The Ninth Circuit Five-Factor Test**

In addition to a finding of willfulness, bad faith or fault, the Ninth Circuit has identified five factors that a court must weigh in determining whether dismissal is warranted under Rule 37(b)(2): "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" Kahaluu Const. Co., 857 F.2d at 603 (quoting Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir. 1987)).[2] These factors are "not serious conditions precedent before the judge can do anything," but a "way for a district judge to think about what to do." Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus, the key factors are prejudice and availability of lesser sanctions." Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990).

[2] The same five-factors used to determine whether dismissal is warranted under Rule 37(b)(2) are used to determine whether dismissal is warranted under Rule 41(b). See Leon v. IDX Sys. Corp., 464 F.3d 951, 958 n.4 (9th Cir. 2006).

**C. Inherent Power**

Federal courts possess inherent authority to impose terminating sanctions for bad-faith abuses of the judicial process, independently of sanctions authorized by the Federal Rules of Civil Procedure. Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991). That authority reaches a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," and "bad faith" includes "a broad range of willful improper conduct," including conduct "motivated by vindictiveness, obduracy, or mala fides." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001). Reckless misstatements of law and fact, combined with an improper purpose, are sanctionable. Id. at 994.

## IV. ARGUMENT

### A. Defendant's Conduct Was Willful

Despite refusing to meet and confer and ignoring Plaintiff's proposed instructions, Defendant Farmers Direct through its counsel went on to prepare and file its own separate Proposed Jury Instructions and Proposed Jury Verdict on October 1, 2026, and untimely on October 2, 2026. (ECF Nos. 175–177.). Defendant Farmers Direct therefore had the time, the resources, and the ability to engage with Plaintiff's proposed instructions and take part in a joint submission. It chose not to. (D'Sol Decl., ¶4, Exhibit003; ECF No. 86; *see* §II.B, supra). Because that disobedience was "within the litigant's control," it was **willful.** Fjelstad, 762 F.2d at 1341.

### B. Material Misrepresentation of Controlling Policy Provision and Perpetuation of Such Misrepresentations Before the Court:

On April 28, 2025, while maintaining Defendant's denial of additional benefits, Defendant's licensed Property Theft Supervisor, Bryce Spradling, represented to Plaintiff:

> "As noted on several occasions **you have 180 days from the first payment on your claim** to provide us with this information. As explained, this was timeframe expired on April 27th. As you failed to provide us with this information you have

voided your ability to recover any funds associated with your claim." (emphasis added) (FAC, ECF No. 1-2, Exhibit Y, PageID 189)

Mr. Spradling later reversed the denial without obtaining the very information he had represented as indispensable. (FAC Ex. P, ECF No. 1-2, PageID 148; D'Sol Decl. ¶ 18, Ex. 009.) More importantly, the 180-day limitation was superseded by the California Amendatory Endorsement, Form HA01CA 0108:

> **AMENDING ENDORSEMENTS: California Amendatory Endorsement HA01CA 0108** SECTION I - HOW WE SETTLE A PROPERTY LOSS, the provisions relating to your right to make further claim for any additional payments for Replacement Cost Settlement or Replacement Cost on Contents is **amended to provide a 12 month time period** for you to notify us of your decision to repair, restore or replace the damaged, destroyed or stolen property. Additional extensions of six months shall be provided to you for good cause… (emphasis added) (ECF No. 1-2, PageID 106)

Defendant had actual notice of good cause before the deadline Licensed Insurer Supervisor Mr. Spradling invoked. On March 27, 2025, Plaintiff informed Mr. Spradling in writing of "a significant health diagnosis." (ECF No. 119-1, PageID 4355-56). On April 22, 2025, five days before the April 27 deadline, Plaintiff sent to Mr. Spradling medical documentation confirming the diagnosis, dated March 26, 2025. Mr. Spradling's April 28 response quotes that email, confirming receipt, yet disclosed neither the twelve-month period nor the good-cause extension. (ECF No. 1-2, PageID 189.)

Defendant Farmers Direct through its agent Mike Saskor applied the same superseded limitation again on July 8, 2025, when its agent Michael Saskor denied as untimely Plaintiff's request for recoverable depreciation on her replacement MacBook Air, purchased June 25, 2025—within twelve months of the October 29, 2024 actual-cash-value payment. (ECF No. 119-2, PageID 4470; ECF No. 117-1, SUF 64, PageID 4249; Saskor Decl., ECF No. 119-2, ¶ 16.e.)

Defendant Farmers, through its counsel Ms. Bernard, recently repeated the same position in its Memorandum of Contentions of Fact and Law. There it asserts that "[m]ore than 10 months after the Incident, Plaintiff submitted a $90,000 inflated repair estimate" (ECF No. 133 at PageID #:5925 n.12), and it relies on Plaintiff's "belated

presentation" of that estimate to claim a genuine dispute (id. at #:5926). What Defendant leaves out is why it took that long. Defendant kept Plaintiff's claim in denial status, and that denial was overturned twice. Neither time did Defendant obtain the information it claimed was missing, and neither time did it substantiate what it was accusing Plaintiff of doing. Defendant then amended its denial. It told Plaintiff she had waited too long and had to submit a new claim, and it denied that claim as neglect (see ECF No. 117-1 at #:4252, SUF 80; ECF No. 119-4 at #:4865, ¶ 22). The delay Defendant now blames on Plaintiff is the delay Defendant created.

Defendant then carried the same incomplete presentation into this Court. In its Separate Statement of Uncontroverted Facts, Defendant, through counsel Kelly Fitzgerald Canby, cited Section 1.A of Form HA01CA 0108 ("Intentional Loss") while omitting Section 2, "HOW WE SETTLE A PROPERTY LOSS." (ECF No. 117-1, UMF No. 11, PageID 4238; ECF No. 1-2, PageID 106.) And in ECF No. 133, Defendant, through counsel Michelle R. Bernard, represented that Coverage C required notice within 180 days, attributing that requirement to Endorsement HP4520 0113 without acknowledging that HA01CA 0108 extends the period to twelve months. (ECF No. 133, PageID 5909:16 & n.3.) Counsel's duty of candor prohibits knowingly advancing materially false or misleading representations of fact or law. Cal. R. Prof. Conduct 3.3(a)(1) (applicable via C.D. Cal. L.R. 83-3.1.2); Cal. Bus. & Prof. Code § 6068(d); Fed. R. Civ. P. 11(b).

The twelve-month protection is consistent with California Insurance Code § 2051.5(b)(1)(A). And Defendant failed its affirmative duty under Cal. Code Regs., tit. 10, § 2695.4(a) to "disclose to a first party claimant . . . all benefits, coverage, time limits or other provisions of any insurance policy . . . that may apply to the claim." Both the twelve-month period and the good-cause extension were such "time limits," and Defendant disclosed neither. "An estoppel may arise from silence where there is a duty to speak," and § 2695.4(a) "imposes on insurers an unmistakable duty to advise its

claimant insureds of applicable claim time limits." Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal.App.4th 1260, 1268–69 (1999).

The duty to speak need not "arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party." Spray, Gould & Bowers, 71 Cal. App. 4th at 1268–69 (quoting Elliano v. Assurance Co. of America, 3 Cal. App. 3d 446, 451 (1970)). Here, the duty was not merely equitable; it was imposed by regulation, and Defendant's own October 29, 2024 letter shows it knew the twelve-month period applied. (ECF No. 119-3, Ex. 10, PageID #:4778.) "[I]t is simply unacceptable for an insurer to take advantage of its own misconduct and thereby succeed in defeating an otherwise legitimate claim because the insured did not comply with a policy time limit of which it was not actually aware due to the insurer's failure to provide the required notice." Id. at 1271.

Defendant's possession and selective citation of the endorsement, its duty to disclose it, its notice of good cause, its July 8, 2025 denial of a timely request, and its repeated reliance on the 180-day limitation in separate filings support an inference of deliberate omission rather than inadvertence, and a finding of bad faith. Chambers, 501 U.S. at 44–46.[3]

This misrepresentation is not peripheral. It is the foundation of Defendant's Motion for Summary Judgment. Defendant's untimeliness defense depends on the superseded 180-day limitation (ECF No. 117-1, SUF 64, PageID #:4249; SUF 80,

---

[3] **Original misrepresentation:** Spradling represented that Plaintiff had forfeited her entitlement to additional benefits. (ECF No. 1-2, PageID 189). **Contradictory conduct:** Defendant subsequently reversed that determination without receiving the information previously characterized as indispensable. **Litigation misconduct:** Defense counsel advanced the same contractual interpretation before the Court despite evidence establishing that the California Amendatory Endorsement controlled. (ECF No. 117-1, PageID 4238).

PageID #:4252). So do the sworn declarations offered in support of it (ECF No. 119-2, ¶ 16.e, PageID #:4470; ECF No. 119-4, ¶ 22, PageID #:4865) and Defendant's Memorandum of Contentions of Fact and Law (ECF No. 133, PageID #:5909:16 & n.3). Each declarant had access to the Policy, including California Amendatory Endorsement HA01CA 0108, which provides a twelve-month period and a six-month good-cause extension (ECF No. 1-2, PageID #:106). Each nonetheless relied on the 180-day limitation, and none disclosed the governing period. This is not a disputed interpretation. It is a plain conflict between Defendant's representations and the express terms of its own Policy, and it is a violation of Defendant's duty under Cal. Code Regs., tit. 10, § 2695.4(a) to disclose "all . . . time limits . . . that may apply to the claim." Because Defendant's own Policy defeats the central premise of its defense, the merits favor Plaintiff. Terminating sanctions here would therefore not frustrate disposition on the merits; they would align with it. See In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006).

Defendant's own records contradict the limitation it enforced. Defendant's October 29, 2024 Claim Outcome Letter, filed by Defendant as Exhibit 10 to the Declaration of Donnie Means, states on its first page that Plaintiff had 180 days, but on its "Additional Information" page states that Plaintiff "may request a six-month extension to submit your claim to recover withheld depreciation if you provide an explanation that shows good cause as to why repairs or replacement can't be completed **within 365 days** of our first actual cash value payment." (ECF No. 119-3, ¶ 27, PageID #:4669; id., Ex. 10, PageID #:4776, 4778 [FD001059, FD001061].) Defense counsel was copied on that letter. (Id., PageID #:4777.) Nonetheless, Mr. Spradling declared Plaintiff's claim "voided" after 180 days on April 28, 2025 (ECF No. 1-2, PageID 189), and on July 21, 2025, Mr. Saskor wrote that "[t]he timeline of 180 days to submit for recoverable depreciation is correct as outlined in your policy language." (ECF No. 119-2, Ex. 13, PageID #:4632.) Defendant then submitted both its own 365-day letter and its 180-day position to this Court in support of summary judgment. The conflict appears within

Defendant's own document. Defendant cannot claim it was unaware of the governing period.

### C. Defendant Engaged in Vexatious Paper-Flooding and Misrepresentation of the Docket

Defendant and its counsel have engaged in a sustained campaign of paper-flooding designed to overwhelm a pro se litigant, bloat the record, and manufacture a pretext for a Local Rule 83-8 pre-filing order. Across seven filings between September 1 and November 16, 2026 (ECF Nos. 119-6, 149, 150, 151, 160-1, 162-1, and 195-1), defense counsel filed 858 pages—about 750 (87%) of them exhibits—including 388 pages across five documents between September 21 and 25, 2026.

1. **Repeated Filing and Internal Duplication of Identical Records:** Defendant Farmers Direct though its counsel Ms. Canby repeatedly submitted identical documents across multiple filings, including Judge Sagar's Informal Discovery Conference form at least six times,[4] Plaintiff's July 31, 2026 deposition notice five times,[5] and Plaintiff's Rule 26(a)(1) Initial Disclosures four times.[6] ECF No. 149 further contains extensive internal duplication, including repeated subpoenas, discovery requests, deposition notices, and correspondence.[7] Defendant also refiled previously docketed materials bearing their original CM/ECF stamps, including ECF Nos. 23-1, 69, 71, 84, 109, 119-2, and 126.

---

[4] **Informal Discovery Conference Forms:** ECF No. 119-6, PageID 4974; ECF No. 149, PageID 6272–73, 6281–82, 6299–6300; ECF No. 162-1, PageID 7164; ECF No. 195-1, PageID 8198–99.

[5] **Deposition Notices:** ECF No. 149, PageID 6212–15, 6268–71, 6277–80; ECF No. 150, PageID 6369–70; ECF No. 119-6, PageID 5047–48.

[6] **Initial Disclosures:** ECF No. 124, PageID 5516–21; ECF No. 119-6, PageID 5007–13; ECF No. 150, PageID 6360–66; ECF No. 195-1, PageID 8247–53.

[7] **Internal Duplication Within ECF No. 149:** The filing repeats the Progressive Home Remodeling subpoena and attachments (pp. 27–40, 61–74); discovery requests (pp. 30–34, 38–40, 49–53, 55–59); Attachment 1B introductory pages (pp. 30–31, 36–37); deposition notices and proofs of service (pp. 23–26, 79–82, 88–91); August 2026 correspondence (pp. 76–78, 85–87); Informal Discovery Conference requests (pp. 83–84, 92–93, 110–111); and correspondence to Progressive Home Remodeling (pp. 94–97, 98–101).

2. **Irrelevant Extraneous Dockets and Recycled Templates:** Defendant Farmers Direct thought its counsel padded the record with 54 pages of dockets and filings from unrelated state and federal cases solely to attack Plaintiff's health and litigation activity,[8] embedded uncaptioned declarations inside six separate briefs,[9] and reused exhibit slip-sheets containing hidden metadata from an unrelated family-law proceeding.[10]

3. **Misattribution to Manufacture a Vexatious-Litigant Request:** Ms. Ms. Canby's sworn declaration lists 49 docket entries as Plaintiff's "aggressive campaign of frivolous sanctions motions." (ECF No. 195-1, ¶ 19, PageID 8169.) At least ten were not filed by Plaintiff: Defendant's own ex parte application and oppositions (ECF Nos. 50, 108, 112), the Court's order granting Defendant's ex parte request (ECF No. 52), and Clerk deficiency notices and responses (ECF Nos. 55–58, 60–61). Several others were simple notices or withdrawals (ECF Nos. 39, 63, 72, 104–105).

A pre-filing order requires an accurate, adequate record establishing that the targeted litigant's filings were genuinely frivolous or harassing. *See* De Long v. Hennessey, 912 F.2d 1144, 1147–48 (9th Cir. 1990); Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007). Falsely attributing Defense counsel's own filings and Clerk notices to Plaintiff in a sworn declaration—while simultaneously flooding the Court with hundreds of pages of duplicative exhibits and applying a glaring double standard to technical CM/ECF glitches (compare ECF No. 151, PageID #:6414–46 with ECF No. 150, PageID #:6311)—epitomizes bad-faith, vexatious litigation misconduct.

### D. Defendant's Indemnity Demand and Its "Deletion" Were a Fraudulent Misrepresentation and Concealment

[8] (ECF No. 162-1, Exs. 10–11, PageID #:7191–7229; ECF No. 195-1, Exs. 3, 13, PageID #:8201–03, 8263–77)
[9] (ECF Nos. 122–124, 149–151)
[10] (ECF No. 119-6, Exs. 12–16; ECF No. 150; ECF No. 195-1, PageID 8254, 8262, 8278).

Under California law, fraud requires (1) a misrepresentation, whether a false representation, concealment, or nondisclosure; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996); Cal. Civ. Code §§ 1709, 1710. A half-truth is actionable: a party who speaks must disclose the facts that make the statement not misleading. Cal. Civ. Code § 1710(3); LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997). Plaintiff offers this evidence under Federal Rule of Evidence 408(b) to show bad faith, not to prove the validity or amount of any claim.

1. The Additional Insured / Insured. On August 14, 2023, Farmers Direct issued Policy No. 3872340940 (the "Policy"), effective September 28, 2023, through September 28, 2024, insuring Plaintiff's primary residence at 2275 E. Belding Drive, Palm Springs, California 92262 (the "Subject Property"). The Declarations identify Select Portfolio Servicing, Inc. ("SPS") as both Mortgagee and Additional Insured. (ECF No. 1-2, PageID 64.) However, two September 20, 2023 Evidence of Insurance documents conflict: one states that "the definition of the insured is amended to include the person or organization shown above with respect to coverages but only with respect to the premises designated above," while the updated version created the same day identifies SPS solely as Mortgagee. (ECF No. 189, PageID 7630.) Moreover, Plaintiff recently reported to Defendant that the loan number that appears to be assigned to SPS in the Policy is not accurate. According to public records, it belongs not to SPS but to Sprout Mortgage LLC.

2. The scheme. Defendant Farmers Direct and state-court defendant Farmers Insurance Exchange, through shared counsel Ms. Bernard, told Plaintiff that the parties had reached a settlement in principle on September 25, 2026. On September 28, 2026, Ms. Bernard proposed

that "Farmers/Farmers Direct can issue separate checks made payable to you to circumvent the $15K+ threshold for listing the mortgagee as a co-payee . . . but you would need to agree to defend/indemnify the company if the mortgagee asserted any future claims in connection with those payments." (D'Sol Decl. ¶ 15, Ex. B.) The next day she called the issue "non-negotiable from Farmers' perspective." She demanded that Plaintiff "hold harmless, defend and indemnify the Farmers Defendants against any potential future claims by any mortgagee listed in the Farmers Direct Policy and/or the FIE Renewal Policy as it relates to the settlement payments." If Plaintiff refused, "Farmers will need to include the mortgagee on each settlement check consistent with the terms of the policy and company protocol." (D'Sol Decl. ¶ 24, Ex. H [Sept. 29, 2026 Email].) In counsel's own words, the purpose was to "circumvent" the mortgagee's rights under the Policy's mortgage clause, with Plaintiff alone carrying the liability.

3. The misrepresentation. Plaintiff objected that she would not assume responsibility for an arrangement designed to defeat the mortgagee's contractual rights. On October 13, 2026, Ms. Bernard represented that she was sending "a modified version of the proposed settlement agreement approved by Farmers Direct/Farmers that deletes the indemnification / hold harmless provision." (D'Sol Decl. ¶¶ 17, 20, Exs. D, G.)

4. What was concealed. The word "indemnify" is gone, but the result is the same. (Id. ¶ 20, Ex. G.) Read together, ¶¶ 5, 7, and 8 of the revised agreement still accomplish what the "deleted" indemnity did:

   i. Paragraph 5 makes "Plaintiff," defined to include "all persons or entities that qualify for insured status under the

Farmers Policies," release the Farmers Defendants. That definition includes the mortgagee.

**ii.** Paragraph 7 "terminate[s] any and all obligations whatsoever on behalf of the Farmers Defendants . . . to any other purported insured, assignee, lienholder, judgment creditor or other claimant."

**iii.** Paragraph 8 preserves only Plaintiff's claims against Bank of America. Defendant rejected the carve-out for SPS that appeared in its own October 1 draft. (D'Sol Decl. Exhibit G)

If SPS later asserts its rights under the mortgage clause, Farmers will point to Plaintiff's signature. That is an indemnity in everything but name. Ms. Bernard told Plaintiff the indemnity had been "delete[d]" while concealing that ¶¶ 5, 7, and 8 produce the same result. That is the misleading half-truth § 1710(3) prohibits.

4. Reliance and resulting harm. Plaintiff relied on the September 25, 2026 settlement in principle. On September 28, 2026, she informed Ms. Bernard that she had "found a contractor who is able to assist me with an important matter, but he is requiring a deposit to begin the work," and asked when payment could be made. Ms. Bernard responded that the "[t]ypical term is within 30 days of receipt of the executed settlement agreement" and, in the same email, added the new mortgagee co-payee condition. On October 6, 2026, Plaintiff informed Ms. Bernard: "I lost the contractor, my health is worse." On October 19, 2026, Ms. Bernard confirmed that "[t]he settlement funds are in our possession and available to be distributed upon receipt of your executed signature page." Defendant withheld the funds on the condition that Plaintiff sign the revised release, while Plaintiff faced disconnection of her electric, telephone, and water service.

5. No final agreement exists. Plaintiff accepted the terms Defendant proposed on September 25, 2026 in principle and relied on them. She never agreed to the mortgagee indemnification or the revised release, and she has not executed any settlement agreement. No final settlement exists.
6. Defendant violated California's Fair Claims Settlement Practices Regulations. California regulations provide that "[n]o insurer shall . . . request that a claimant sign a release that extends beyond the subject matter which gave rise to the claim payment unless, prior to execution of the release, the legal effect of the release is disclosed and fully explained by the insurer to the claimant in writing." Cal. Code Regs. tit. 10, § 2695.4(e)(1). The same written explanation is required before an insurer may include a waiver of Civil Code § 1542. Id. § 2695.4(e)(2). The only exception is for a claimant "represented by an attorney at the time the release is presented for signature." Id. Plaintiff is self-represented, so the exception does not apply.
7. The release Defendant presented extends far beyond "the subject matter which gave rise to the claim payment," which is Plaintiff's personal-property, ALE, and consequential-damage claims (Ex. G, ¶ 3). It also reaches: the rights of every entity that "qualif[ies] for insured status under the Farmers Policies," including Plaintiff's mortgagee (¶ 5); "alleged wrongdoing of any kind" (¶ 6); "any and all obligations whatsoever" to "any other purported insured, assignee, lienholder, judgment creditor or other claimant" (¶ 7); and unknown claims, through a § 1542 waiver (¶ 9).
8. Defendant never disclosed or explained the legal effect of any of these provisions in writing. Instead, Ms. Bernard told Plaintiff the indemnity had been "delete[d]." She then described the document as a "fairly standard long form settlement agreement/claim release that has been vetted and

approved by counsel in numerous other matters" and asked Plaintiff to "return your executed signature page." (D'Sol Decl. ¶ 17, Ex. D.) That is the opposite of the disclosure the regulation requires. It is an affirmative assurance meant to discourage a self-represented claimant from looking closely.

9. The regulation does not create a private right of action. Moradi-Shalal v. Fireman's Fund Ins. Cos., 46 Cal. 3d 287 (1988). Plaintiff cites it as the standard of conduct Defendant knowingly disregarded, which shows the intent and bad faith that support sanctions.

### E. The Ninth Circuit Factors

#### 1. Factors 1: the public's interest in expeditious resolution of litigation

"The public's interest in expeditious resolution of litigation always favors dismissal." <u>Pagtalunan v. Galaza,</u> 291 F.3d 639, 642 (9th Cir. 2002) (quoting <u>Yourish v. Cal. Amplifier,</u> 191 F.3d 983, 990 (9th Cir. 1999)). That interest is heightened here by the City of Palm Springs' enforcement actions: the City has issued fines totaling $950 against Plaintiff, for the same period at issue in this claim, under Palm Springs Municipal Code § 11.72.170. (D'Sol Decl. ¶¶ 12–13, Ex. 005.) These notices threaten special assessments, liens, further legal action, interception of funds through the Franchise Tax Board, and imprisonment for up to six months. (D'Sol Decl. ¶22, Exhibit007).

#### 2. Factors 2: The Court's Need to Manage Its Docket

For the second factor, the court's need to manage its docket, "[w]hen a litigant's failure to comply with discovery obligations required the Court to address such non-compliance, this factor weighs in favor of dismissal." <u>Arellano</u>, <u>v. Blahnik</u>, No. 16-cv-2412-CAB-MSB, 2019 WL 2710527, at *8 (S.D. Cal. June 28,

2019) (citing Pagtalunan, 291 F.3d at 642). Defendant's unilateral jury instructions and verdict form (ECF Nos. 176–177) left the parties without the joint materials ECF No. 86 requires and threaten further judicial intervention. And Defendant's 858-page paper-flooding and misattributing sworn declaration (§ IV.C, supra) have forced both Plaintiff and the Court to audit an inaccurate record.

3. **Factor 3: Prejudice to Defendants**

This factor "looks to whether the [defendant's] actions impaired [plaintiff's] ability to go to trial or threatened to interfere with the rightful decision of the case." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990). Defendant's misconduct has done so in three ways:

i. **Deprivation of Joint Pretrial Preparation:** Despite Plaintiff requesting a meet-and-confer over a month before the pretrial deadline and propounding her proposed instructions (D'Sol Decl. ¶21, **Exhibitt006)**, Defendant refused to confer and left Plaintiff without the joint jury instructions and joint verdict form required by ECF No. 86, forcing Plaintiff to respond to unilateral filings (ECF Nos. 175–177) and an unsigned proposed Final Pretrial Conference Order (ECF No. 160-1).

ii. **Tainting the Evidentiary Record:** Defendant moved for summary judgment based on purported "deemed admissions" to RFAs that were never validly served in writing and withheld all eight referenced underlying documents ("Exhibits A through H," ECF No. 120), depriving Plaintiff of a fair opportunity to verify or rebut the exact records Defendant relies upon to defeat her claims.

iii. **Burying a *Pro Se* Litigant in Duplicative Filings:** Auditing 858 pages of largely duplicative exhibits, misattributed docket entries, and shifting corporate designations across state and federal courts drains trial preparation time.

**4. Factor 4: Public Policy disposition of cases on their merits;**

This factor normally weighs against dismissal, Pagtalunan, 291 F.3d at 643, but "lends little support" when the disobedient party's conduct impedes disposition on the merits. In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006). See Sanchez v. Rodriguez, 298 F.R.D. 460, 472 (C.D. Cal. 2014).

Here, Defendant's own conduct has prevented this action from progressing toward a fair resolution on the merits. Specifically, Defendant has withheld referenced discovery exhibits (ECF No. 120), attempted to procure summary judgment through unserved and mischaracterized Requests for Admission ("RFAs") (ECF No. 117-1, 119, 119-1 through 119-6), stonewalled good-faith meet-and-confer efforts (D'Sol Decl. ¶3, Exhibit002), and shifted corporate identities across federal and state courts to induce settlement while simultaneously pressing dispositive motions. *(See Declaration of Luna D'Sol, ¶¶ 14-16, ExhibitA - ExhibitC.)* Under the circumstances, the fourth *Malone* factor carries little weight and is at best neutral. *Accord* Arellano v. Blahnik, No. 16-cv-2412-CAB-MSB, 2019 WL 2710527, at *9 (S.D. Cal. June 28, 2019)

Indeed, RFAs rely on eight documents that were never provided to Plaintiff and contain mislabeling errors:

**Table 1: Requests for Admission (Canby Decl., ECF No. 119-6, Ex. 11, PageID 5017) and Referenced Exhibits Omitted via Notice of Lodgment (ECF No. 120)**

| RFA | Exhibit | What It Is |
|---|---|---|
| 5 | A | Jan. 28, 2025 fax (FD003889-390) |
| 14 | B | Email chain with Spradling (FD003063-077) |
| 42,43 | C | Oct. 29, 2024 Claim Outcome Letter |
| 47, 48 | D | Nov. 12, 2024 Settlement Notice |
| 51, 52 | E | May 14, 2025 Settlement Notice |
| 56,57 | F | May 28, 2025 Claim Outcome Letter |
| 60, 61 | G | July 8, 2025 Settlement Notice |
| 64 | H | July 10, 2025 Settlement Notice |
| 65 | "G" (error) | Asks Plaintiff to admit receiving the July 10 letter attached as Exhibit G," but the letter is Exhibit H |

### 5. Factor 5 Availability of less drastic sanctions.

Courts consider whether lesser sanctions are feasible, were tried, or whether the party was warned. Malone, 833 F.2d at 132. A “reasonable exploration of possible and meaningful alternatives” is required, but not every conceivable alternative. Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir. 1976). “An explicit warning is not always required, at least in a case involving ‘egregious circumstances.’” In re PPA, 460 F.3d at 1229.

Lesser sanctions would be ineffective. Defendant ignored the Court’s sanctions warning (ECF No. 71), violated the Civil Trial Preparation Order (ECF No. 86), and escalated by filing a sworn declaration attributing its own filings to Plaintiff. (§ IV.C.3, supra.)

Defense counsel’s repeated disparagement of Plaintiff’s mental health and gender identity confirms that admonishment will not suffice:

i. **“Unhinged“:** On July 31, 2026, Ms. Bernard dismissed Plaintiff’s discovery correspondence as “self-serving and unhinged” while demanding deference for counsel’s own schedules and medical leave. (D’Sol Decl. ¶ 3, Ex. 002.)

ii. **Mocking Mental Health Crisis:** On October 22, 2026, responding to Plaintiff's request to confer about an acute medical crisis and a judicial accommodation, Ms. Bernard sent Plaintiff an email containing: "below is the latest crazy update from D'Sol received yesterday afternoon – she wants to stay all of her cases because she is having psychotic episodes that may require hospitalization per the note from the doctor's office. Again . . . you cannot make this stuff up." (D'Sol Decl. ¶ 5, Ex. 004.)

iii. **Misgendering Plaintiff in Draft Settlement Terms:** Despite acknowledging Plaintiff's female pronouns ("she"/"her") in her own correspondence, Ms. Bernard drafted Recital A of the proposed Settlement Agreement to read: *"Relevant to the policy period for the Farmers Direct Policy, named insured* [redacted] *subsequently changed **his** legal name to..." (Id., ¶ 20, Exhibit G, Recital A.)*

"**There is simply no excuse for [defendant's] derogatory and insulting comments towards [plaintiff's] mental health, gender, or any other immutable characteristic.**" *Gleason v. Cal. Dep't of Corr. & Rehab.*, No. 2:2020-cv-00775 Document 67 (E.D. Cal. 2022) (findings and recommendations), adopted (E.D. Cal. Oct. 11, 2022). Such conduct reflects the "vindictiveness, obduracy, or mala fides" that constitute bad faith. Fink, 239 F.3d at 992.

The Ninth Circuit has made clear that counsel has an affirmative duty to correct known misstatements to the court, and that failing to do so is itself sanctionable. Lnu v. Blanche, 177 F.4th 1014 (9th Cir. 2026), slip op. at 23–28. Under California Rule of Professional Conduct 3.3(a)(1), which this Court applies through Local Rule 83-3.1.2, "[a] lawyer shall not . . . knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Id. at 24 (quoting Cal. R. Pro. Conduct 3.3(a)(1)). Knowledge "may be inferred from circumstances." Id. (quoting Cal. R. Pro. Conduct 1.0.1(f)). The court stressed that "when an attorney learns of any error in a filing . . . he should immediately

alert the court and opposing counsel of the error." Id. at 28. It tied the severity of the sanction directly to counsel's failure to do so: had counsel been candid in their Motion to Correct, "lesser sanctions may have been warranted. But that is not what they did. The gravity of discipline we impose . . . is owed to this repeated failure of candor." Id.

So too here. On September 23, 2026, Plaintiff expressly notified Ms. Bernard of two inaccurate representations: first, that Plaintiff had pursued a sanctions motion "which she lost" (ECF No. 121-2, at 19:10–13), and second, that there was "not going to be a jury trial as of right now." (D'Sol Decl. ¶ 23, Ex. 008.) Plaintiff asked counsel to identify "the specific Court order" supporting each statement, or, "[i]f any of the above statements were inaccurate, please submit a motion to correct the record and confirm the correction in writing." (Id.) Plaintiff cited Lnu v. Blanche directly in that letter, putting counsel on notice of the governing authority on the duty to correct. (Id.) Despite actual notice of both the errors and the controlling Ninth Circuit authority, counsel never identified any supporting order. She also never filed a motion to correct, a notice of errata, or a withdrawal of the statements, and never responded to the request. The statements remain on the docket uncorrected. Lnu holds that a lesser sanction may suffice where counsel promptly and candidly corrects the record. Defendant was given that exact opportunity, in writing and with the case cited, and declined it. Counsel's continued silence after such specific notice shows that further admonitions would be ineffective and that lesser sanctions would not cure the resulting prejudice. See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096–97 (9th Cir. 2007); Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987).

Monetary sanctions would also be ineffective. A pro se litigant generally cannot recover attorneys' fees as a sanction. See Kay v. Ehrler, 499 U.S. 432, 435–38 (1991); Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1375–76 (Fed. Cir. 2002) (applying *Kay* to Rule 37 sanctions and holding that *pro se* litigants cannot recover "attorney fees" under Rule 37); *see also* Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir. 2007). Defendant—a large insurer represented by a

national firm—therefore faces no fee-shifting deterrent, and nominal fines would be absorbed as a cost of doing business.

Nor can evidentiary sanctions cure the prejudice. This case has progressed through extensive motion practice and 195 docket entries and Defendant's misconduct "threaten[s] to interfere with the rightful decision of the case." Conn. Gen. Life, 482 F.3d at 1097 (quoting Valley Eng'rs, 158 F.3d at 1057); see also Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995). Terminating sanctions are the only remedy sufficient to protect the integrity of these proceedings.

At a minimum, if the Court finds default judgment too severe, an order striking Defendant's Answer as to liability and its limitation defense, and setting trial on damages only, is the least drastic sanction that would cure the prejudice.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter an Order:

1. Striking Defendant's Answer and entering default judgment in favor of Plaintiff pursuant to Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(iii) and (vi), Local Rule 83-7, and the Court's inherent authority, and setting a hearing or briefing schedule to determine Plaintiff's damages;

2. In the alternative, pursuant to Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(ii) and (iii) and the Court's inherent authority, striking Defendant's Answer as to liability and its affirmative defenses, including any defense based on the 180-day limitation, prohibiting Defendant from opposing Plaintiff's claims as to liability, and setting the case for trial on damages only;

3. Referring defense counsel Michelle R. Bernard and Kelly F. Canby to the Court's Standing Committee on Discipline and/or the State Bar of California pursuant to Local Rule 83-3.1, for investigation of the misrepresentations to the Court and failure to correct the record described above, in violation of California Rule of Professional Conduct 3.3(a)(1), applicable through Local Rule 83-3.1.2; and

4. Formally admonishing defense counsel for unprofessional and derogatory personal remarks directed at Plaintiff's documented medical condition and gender identity, and ordering counsel to refrain from further personal attacks unrelated to the merits of this action.

Respectfully submitted,

Dated: November 23, 2026

*/s/ Luna D'Sol*
Luna D'Sol
Plaintiff in Pro Per

**Certificate of Compliance (C.D. Cal. Local Rule 11-6.2)**

The undersigned, Plaintiff Luna D'Sol, appearing *in propria persona*, certifies that this brief contains **6,879** words, which complies with the word limit of Central District of California Local Rule 11-6.1.

Respectfully Submitted by:

Dated: November 23, 2026

*/s/ Luna D'Sol*
Luna D'Sol
Plaintiff in Pro Per

## NOTICE TO WAIVE ORAL ARGUMENT

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Luna D'Sol ("Plaintiff"), appearing *in propria persona*, hereby waives oral argument and respectfully requests that the Court dispense with the hearing currently scheduled for **December 21, 2026** at **1:30 p.m.** in Courtroom 10A, and decide **Plaintiff's Motion for Terminating Sanctions Pursuant to Fed. R. Civ. P. 16(f), 37(b), and the Court's Inherent Authority** solely on the written briefs, declarations, and documentary evidence submitted by the parties, pursuant to Federal Rule of Civil Procedure 78(b) and Central District of California Local Rule 7-15.

Plaintiff submits that the factual record, docket citations, and legal authorities set forth in the moving papers thoroughly address all issues before the Court, such that oral argument is unnecessary to assist the Court in resolving the Motion. Should the Court nonetheless determine that oral argument would be beneficial, Plaintiff remains available to appear as directed by the Court.

Respectfully submitted,

Dated: November 20, 2026

/s/ Luna D'Sol

**LUNA D'SOL**

Plaintiff, In Pro Per