LUNA D'SOL
Plaintiff, In Pro Per
jravada@icloud.com
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUNA D'SOL,

Plaintiff,

vs.

FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY, and DOES 1-50, inclusive,

Defendants.

CASE NO. : *2:25-cv-10938-SVW-ASx*

*[Assigned for All Purposed to the Honorable Stephen V. Wilson, Department 10A]*

**DECLARATION OF PLAINTIFF LUNA D'SOL'S ISO MOTION AND MOTION FOR TERMINATING SANCTIONS, TO STRIKE DEFENDANT'S ANSWER, AND FOR ENTRY OF DEFAULT JUDGMENT AS TO LIABILITY PURSUANT TO FED. R. CIV. P. 16(f)(1)(C) AND 37(b)(2)(A)(iii), (vi)**

Complaint Filed: August 21, 2025
FSC: January 2027

Trial Date: October 13, 2026; 9:00 a.m.
FSC: October 5, 2026; 3:00 p.m.

FILED CONCURRENTLY WITH:
Memorandum of Points and Authorities
*Certificate of Compliance L.R. 7-3,*
*Certificate of Compliance L.R. 11-6.2,*
*Notice to Waive Oral Argument*,
Exhibits and Proposed Order

## DECLARATION OF LUNA D'SOL

I, Luna D'Sol, declare as follows:

**1.** I am the Plaintiff in the above-captioned action and am proceeding in propria persona. I submit this Declaration in support of my Motion for Terminating Sanctions against Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant" or "Farmers Direct"). I am over the age of eighteen and competent to make this Declaration. I have personal knowledge of the facts stated herein, except where expressly identified as based on my review of documents, and if called upon to testify, I could and would testify competently thereto. The facts set forth in this Declaration are based on my personal knowledge, my direct participation in the events described, my communications with Defendant and its counsel, and my review of documents and records maintained or received in connection with this litigation. I submit this Declaration to establish the relevant factual circumstances surrounding Defendant's conduct, the procedural history of this litigation, my efforts to comply with applicable discovery obligations and court orders, and the prejudice I contend resulted from Defendant's actions.

**2.** On October 1, 2026, Defendant filed its own Jury Instruction Index and Proposed Jury Instructions, rather than joint instructions, signed by Ms. Bernard and Ms. Canby (ECF No. 175). The filing states that it is submitted "[p]ursuant to the Court's Civil Trial Preparation Order dated June 11, 2026 [ECF Doc. 86]." In footnote 1, it states: "Plaintiff failed to timely engage in the Local Rule 16 meet and confer process." (ECF No. 175 at 2 n.1, PageID #:7320.) That is the same Local Rule 16 process that Defendant's lead counsel, Ms. Bernard, refused in writing more than a month earlier. On August 28, 2026, in response to my request to meet and confer, Ms. Bernard wrote: "As far as meeting and conferring on the L-R. 16-2 topics . . . there is no basis for meeting and conferring on jury instructions as there is not going to be a jury trial as of right now." Ms. Canby was copied on that email. (Ex. 003; ECF No. 122, PageID #:5463.) Defendant then

misrepresented to this Court that I was the one who failed to engage in the Local Rule 16 process. A true and correct copy of pages 1, 2, and 7 of ECF No. 175 is attached hereto as Exhibit 009. See ¶4, infra.

**3.** A true and correct copy of Ms. Bernard's July 31, 2026, email that I received is attached hereto as **Exhibit002** where Ms. Bernard wrote:

> "As I'm sure your research has shown, I am a senior partner at one of the largest law firms in the United States and oversee the day-to-day management of numerous attorneys and litigation matters. Rest assured, I have not "gone missing" as erroneously suggested in your email but likewise I do not have time to contemporaneously respond to your self-serving and unhinged communications directed to me or Ms. Canby in this matter. This holds true whether I am in the office/out of the office/on vacation/personal time off/medical leave. In this respect, your expectation of an immediate response by me or Ms. Canby to your emails and/or voice mail messages – regardless of our respective work and/or personal schedules – does not dictate the timeline for our response to the same."

## <u>COURT ORDER VIOLATION</u>

**4.** On August 28, 2026,I received an email from Defendant Farmers Direct Property and Casualty Insurance Company's counsel, Michelle Bernard, concerning my request to meet and confer and deliver the court order's parties' meet-and-confer obligations under Central District of California Local Rule 16-2. In that email, Ms. Bernard stated:

> "As far as meeting and conferring on the L-R. 16-2 topics (the last due date to complete same was August 26), you blew your deadline to request a jury trial in this matter after removal and Farmers Direct has a pending motion under submission with the court seeking to strike your untimely jury demand. Accordingly, unless and until the court grants you relief regarding this major procedural problem, there is no basis for meeting and conferring on jury instructions as there is not going to be a jury trial as of right now."

Defendant itself filed this email as Exhibit A to the Declaration of Kelly F. Canby (ECF No. 122, PageID #:5463). A true and correct copy is attached hereto as **Exhibit 003.**

**5.** On October 21, 2026, I sent a meet-and-confer email to Defendant's counsel, Michelle R. Bernard, copying Kelly Canby, regarding my medical condition and a request for an accommodation/stay. On October 22, 2026, Ms. Bernard sent a reply email directly to my email address, copying Ms. Canby, which has been the standard method of communication among the parties. In that October 22, 2026 email, Ms. Bernard wrote:

> "Instead, below is the latest crazy update from D'Sol received yesterday afternoon – she wants to stay all of her cases because she is having psychotic episodes that may require hospitalization per the note from the doctor's office. Again . . . you cannot make this stuff up."

A true and correct copy of the October 21–22, 2026 email exchange is attached hereto as **Exhibit004**.

**6.** On November 1, 2026, Ms. Canby sent me a separate email correspondence. At no point in her November 1, 2026, communication—or at any time thereafter—did Ms. Canby, correct, or state that Ms. Bernard's October 22, 2026, email was sent in error.

## <u>LACK OF CONSENT TO ELECTRONIC SERVICES</u>

**7.** At no point in this litigation have I ever consented in writing to electronic service of discovery requests pursuant to Federal Rule of Civil Procedure 5(b)(2)(E). I did not receive valid service of Defendant's Requests for Admission ("RFAs"), nor did I receive copies of the underlying documents designated as "Exhibits A through H" to those RFAs.

**8.** Upon reviewing Defendant's Motion for Summary Judgment, I observed that defense counsel attached the text of the RFAs to the Declaration of Kelly Canby (**ECF No. 119-6, Ex. 11, PageID 5017**), while the referenced Exhibits A through H were omitted from the electronic docket and addressed through a Notice of Lodgment (**ECF No. 120**). I have never been served with or provided copies of those lodged RFA exhibits.

**9.** In reviewing ECF No. 119-6, Exhibit 11 against Defendant's Statement of Uncontroverted Facts ("SUF"), I also observed internal mislabeling and citation discrepancies—including that RFA No. 65 asks me to admit receipt of a July 10, 2025 letter "attached as Exhibit G," whereas Exhibit G is a July 8, 2025 notice and the July 10, 2025 letter is designated as Exhibit H; and that Defendant's SUF relies directly on those omitted exhibits (including in SUF Nos. 18, 19, 57, 66, 95, 111, and 114) as well as mismatched RFA citations (including SUF Nos. 67, 68, 69, 105, and 120).

## UNRUH VIOLATIONS

**10.** Despite having full knowledge of my female gender identity and using my correct pronouns ("she" and "her") in written correspondence—including in Michelle R. Bernard's October 22, 2026 email—defense counsel drafted Recital A of the proposed Settlement Agreement to state that I *"subsequently changed **his** legal name to Luna D'Sol."*

**11.** Throughout this litigation, Defendant and its counsel have repeatedly misgendered me while dismissing those occurrences as "human error" or an "honest mistake" (including in Defendant's Requests for Admission, ECF No. 119-6, Ex. 11, RFA No. 26). Based on my review of the pleadings, discovery, and correspondence filed and exchanged in this action, not a single other individual involved in this case has ever been erroneously misgendered by Defendant or its counsel—only me. Being repeatedly misgendered in formal legal documents—especially after expressly notifying Defendant of my gender identity and while trying to resolve this dispute in good faith—causes me significant emotional distress, humiliation, and psychological harm, and directly impairs my ability to participate in settlement and meet-and-confer discussions without being demeaned.

## MUNICIPAL PENALTIES

**12.** I have received multiple visits from Arwel Bermudo, Code Compliance Officer with the City of Palm Springs Department of Special Programs Compliance, located at 200

South Civic Drive, Palm Springs, California 92262. During these visits, Officer Bermudo informed me that several neighbors have filed complaints against my property due to the broken a window that is expressly identified in my operative complaint against Defendant Farmers Direct Property and Casualty Insurance Company ("Defendant"). The window sustained damage arising from the insured loss underlying this action, for which on June 4th, 2024, I submitted a claim to Defendant seeking payment for the necessary repairs that I am entitled to receive. Despite having been notified of the damage, Defendant failed to provide the insurance benefits necessary to complete the repairs, leaving the window in its damaged condition. As a direct consequence of the continued deterioration of this same window, the City of Palm Springs issued administrative citations B9963 and B9964 on June 2 and June 12, 2026; with assigned Case MV-0426-0029.

**13.** Mr. Bermudo has already issued five fines, dated from July 7, 2026 to September 18, 2026, that total $950. These notices impose special assessments, property liens, additional legal action, and interception of funds through the California Franchise Tax Board. Attached as **Exhibit 005** are true and correct copies of these municipal notices. The citations and resulting financial penalties concern the very property damage for which I sought insurance benefits from Defendant and demonstrate the continuing financial consequences of Defendant's failure to provide payment for the necessary repairs.

## MISREPRESENTATION OF SETTLEMENT IN PRINCIPLE

**14.** On September 25, 2026, at 6:20 p.m., I received an email from Defendant's counsel, Michelle R. Bernard, stating that "**Farmers Direct/Farmers Insurance Exchange**" (emphasis added) would agree to a global settlement resolving all three pending lawsuits in exchange for dismissal with prejudice and a long-form agreement containing "the standard terms (i.e. payment within 30-days, full claim release, no admission of liability, Civil Code 1542 waiver, confidentiality provision, etc.)." In that same email, Ms. Bernard proposed that the parties immediately file Notices of Settlement in both federal and state court before any

formal settlement agreement had been drafted or signed, stating: *"In light of the settlement in principle reached between the parties today, we think it is appropriate to file a Joint Notice of Settlement in the federal court and state court actions on Monday given the pending motions before each court."*. A true and correct copy of Ms. Bernard's September 25, 2026, email, partially redacted, is attached hereto as **Exhibit A**.

**15.** Attached hereto as **Exhibit B** are true and correct copies of two email communications I received from Defendant's counsel, Michelle R. Bernard, on September 28, 2026, at 9:58 a.m. and 7:08 p.m., respectively. In the first communication, Ms. Bernard represented that a portion of the proposed settlement payment would compensate me for dwelling repairs under **Coverage A** and that the mortgagee would therefore need to be included as a co-payee pursuant to the Policy. Later that same day, Ms. Bernard proposed an alternative arrangement to "circumvent the $15K+ threshold for listing the mortgagee as a co-payee for any **PD**-related payments," conditioned upon my agreement to defend and indemnify the insurer against potential future claims by the mortgagee. In proposing this alternative, counsel shifted from expressly identifying Coverage A—Dwelling to using the broader designation "PD-related payments," (PD for property damage) without identifying the specific policy provision establishing the asserted $15,000 threshold. I personally received both communications, true and correct copies of the September 28, 2026, emails are attached here to as **Exhibit B** accurately reproduces them, except for the redactions appearing therein.

**16.** On September 30, 2026, at 9:01 a.m., Ms. Bernard emailed me acknowledging receipt of the Notices of Settlement I had filed in the three pending lawsuits. She stated that "**Farmers/Farmers direct**" (emphasis added) did not consent to withdrawing pending motions or deferring rulings while settlement-payment details remained unresolved. Ms. Bernard further

represented that she had communicated Farmers' "final and non-negotiable position" concerning the settlement checks and demanded confirmation by 4:00 p.m. that day whether the parties had reached agreement regarding the mortgagee-payment issue or whether no "**settlement in principle**" existed. At this point, Ms. Canby on behalf of Michelle Bernard on behalf of FIE, had already attended a demurrer hearing ay 8:30 am in State Court, yet Ms. Bernard did not disclose this information to Plaintiff and continued negotiations while acting on behalf of both Farmers Direct and FIE. This correspondence documents that the parties had not resolved the settlement-check arrangements as of September 30, 2026. A true and correct copy of this correspondence is attached as **Exhibit C**.

**17.** On October 13, 2026, at 3:47 p.m., Defendant Farmers Direct's lead counsel, Michelle R. Bernard, emailed me a revised proposed settlement agreement in response to my objections concerning the previously demanded mortgagee indemnification and hold-harmless provision. Ms. Bernard expressly represented that the revised agreement had been "approved by Farmers Direct/Farmers" and "deletes the indemnification/hold harmless provision." She further characterized the modification as an effort to finalize the settlement agreement "without further delay and the need for judicial intervention." Rather than describing the indemnification requirement as modified, limited, or clarified, Ms. Bernard expressly represented that it had been deleted. In the same communication, she requested that I return an executed signature page if the revised agreement met with my approval. A true and correct copy of Ms. Bernard's October 13, 2026 email, together with the preceding correspondence concerning my objections and anticipated request for judicial intervention, is attached hereto as **Exhibit D**.

**18.** On October 13, 2026, I requested that Farmers Insurance Exchange ("FIE") stipulate to a temporary stay of the pending state-court proceedings in Case No. 26VECV03273, including the deadline to respond to my motion for

leave to amend. That same day, Ms. Bernard acknowledged receipt and represented that she would forward my request to the client representative for review and response. After receiving no express position from FIE, I followed up on October 14, 2026, and again on October 15, 2026, expressly identifying my October 15 communication as my third request and asking, “What is the position of Farmers Insurance Exchange.” At 2:01 p.m. on October 15, Ms. Bernard responded only, “See attached email correspondence sent earlier today,” without expressly stating whether FIE consented to or opposed the requested stay. At 4:27 p.m., I reiterated that FIE had not answered my specific inquiry concerning the state-court proceedings. The correspondence reflects my repeated efforts to obtain FIE’s position while settlement negotiations involving both Farmers Direct and FIE remained pending. A true and correct copy of this correspondence is attached hereto as **Exhibit E**.

**19.** On October 15, 2026, at 11:21 a.m., Ms. Bernard responded to my repeated requests concerning a temporary stay of the two pending state-court actions against Farmers Insurance Exchange (“FIE”). Rather than identifying FIE’s position, Ms. Bernard expressly attributed her response to Farmers Direct, stating that “Farmers Direct does not see the utility in requesting that the court ‘stay’ the two state court actions.” She further represented that Farmers Direct had been attempting since September 25, 2026, to finalize a “global” settlement agreement resolving all three lawsuits, questioned why I would request a stay when the parties had purportedly reached a settlement in principle, and again requested that I execute the proposed settlement agreement so that dismissals could follow in both state and federal court. Although her response specifically addressed proceedings in which FIE was the named defendant, Ms. Bernard did not expressly state whether FIE itself consented to or opposed the requested stay. A true and correct copy of Ms. Bernard’s October 15, 2026 correspondence is attached hereto as **Exhibit F**.

**20.** On October 15, 2026, Ms. Bernard again requested that I execute the proposed global settlement agreement, while expressly attributing the decision not to seek a stay of the two state-court proceedings to Farmers Direct rather than Farmers Insurance Exchange ("FIE"). However, the settlement agreement attached to that same correspondence expressly identified both Farmers Direct and FIE as contracting parties, collectively defined them as the "Farmers Defendants," and specifically identified the two pending state-court lawsuits against FIE as proceedings to be resolved through the agreement. Paragraph 2 further required me to dismiss those lawsuits with prejudice following receipt of the settlement checks. Thus, although counsel sought my execution of an agreement expressly conferring settlement and release benefits upon FIE, her accompanying correspondence did not expressly identify FIE's position concerning my repeated requests for a temporary stay of its own pending proceedings. A true and correct copy of the proposed settlement agreement attached to Ms. Bernard's October 15, 2026 correspondence is attached hereto as **Exhibit G.**

**21.** On October 1, 2026, I caused Plaintiff's proposed jury instructions to be served electronically upon Defendant's counsel, Michelle R. Bernard and Kelly Canby. Attached hereto as **Exhibit 006** is a true and correct copy of the October 1, 2026, email and accompanying proof of service.

**DAMAGES**

**22.** On or about August 10, 2026, I received a Cease-and-Desist letter dated August 10, 2026, from Best Best & Krieger LLP, which serves as City Attorney for the City of Palm Springs, concerning a broken window and landscaping at my residence. A true and correct copy of the City Attorney is attached as **Exhibit007**

**23.** On September 23, 2026, I notified defense counsel, Ms. Bernard, in writing of material inaccuracies in her representations concerning the procedural status of this action. Specifically, I challenged her assertion that I had pursued a

sanctions motion against Farmers Direct "which she lost" (ECF No. 121-2, p. 19, lines 10–13), and her representation that there was "not going to be a jury trial as of right now." I expressly requested that she identify the Court orders supporting those statements or correct the record if the statements were inaccurate. I further directed her attention to *Lnu v. Blanche*, No. 24-4790 (9th Cir. June 3, 2026), concerning counsel's duties of candor and correction of known inaccuracies. Despite being placed on written notice and afforded an opportunity to substantiate or correct these representations, I am not aware of any subsequent correction or identification of the requested orders. A true and correct copy of my September 23, 2026 correspondence is attached hereto as **Exhibit008**

**24.** On September 29, 2026, Ms. Bernard represented to me in writing that including the mortgagee on settlement checks was required by "the terms of the policy and company protocol" unless I agreed to defend and indemnify the Farmers Defendants against future mortgagee claims. She characterized this condition as "non-negotiable" and threatened to abandon the proposed global settlement if I refused. I subsequently requested that Ms. Bernard identify the specific Policy provision establishing the purported $15,000 threshold for requiring mortgagee inclusion. She did not identify any such provision. Upon reviewing the Policy, I could not locate any contractual language establishing that threshold. I understood Ms. Bernard's representation to attribute an internal company payment requirement to the Policy itself, while conditioning payment upon my acceptance of additional indemnification obligations. A true and correct copy of Ms. Bernard's September 29, 2026 correspondence is attached hereto as **Exhibit H.**

## MEET AND CONFER CERTIFICATE

**25.** I submit this CERTIFICATE under Local Rule 7-3 to state the dates and manner of each conference and attempted conference with counsel for Defendant Farmers Direct Property and Casualty Insurance Company

("Defendant"), Michelle R. Bernard and Kelly F. Canby of Gordon Rees Scully Mansukhani, LLP, and each party's position on each disputed issue.

**26.** This motion is not a discovery motion. It seeks sanctions under Federal Rules of Civil Procedure 16(f) and 37(b)(2) and the Court's inherent power for violation of the Court's Order (ECF No. 86). Discovery conduct is offered only as evidence of willfulness. Local Rule 7-3 therefore governs this conference.

**27.** On October 30, 2026, I called Ms. Bernard to request a meet-and-confer conference. Ms. Bernard subsequently emailed me stating that she was unavailable, consistent with her earlier communication indicating that she did not have time to respond to me. (Supra ¶ 3, Exhibit002.) A true and correct copy of Ms. Bernard's October 30, 2026 email is attached hereto as Exhibit 001, at 1.

**28.** November 2, 2026. At 4:36 p.m., I emailed Ms. Bernard a "Notice of Anticipated Motions," which included a "Motion for Default Judgment, and Motion for Sanctions" based on Defendant's "refusing to follow court order on discovery, bad faith, vexatious filing, misleading this court and refusing to fix the record.". Exhibit001 at 3-4.

**1. Temporary Restraining Order and Preliminary Injunction and Order to show cause— Fed. R. Civ. P. 65** Plaintiff intends to seek emergency injunctive relief concerning Defendant's continuing refusal or failure to provide Additional Living Expenses ("ALE") and the unresolved conditions at Plaintiff's insured property, including mold contamination documented by the November 6, 2024 inspection and laboratory reports.

**2. Motion to Reopen Discovery — Fed. R. Civ. P. 16(b)(4)**
Plaintiff intends to request limited discovery concerning Defendant's receipt, evaluation, and handling of the November 2024 mold reports, its subsequent May 2025 inspection, and its claims-handling decisions concerning remediation and temporary housing benefits.

**3. Motion for Leave to File an Amended Complaint — Fed. R. Civ. P. 15(a)(2) and 16(b)(4)**
Plaintiff intends to seek leave to amend her complaint to address additional factual allegations and claims supported by the evidentiary record.

**4. Motion for Partial Default Judgment, and Motion for Sanctions — Fed. R. Civ. 56a** Plaintiff anticipates seeking partial default judgment concerning claims or

issues for refusing to follow court order on discovery, bad faith, **vexatious filing**, misleading this court and refusing to fix the record when giving an opportunity to , Plaintiff further intends to address Defendant's discovery conduct, compliance with applicable court orders, and the prejudice allegedly resulting from unnecessary procedural delays, including Defendant's November 2, 2026 ex parte application seeking a continuance of the December 7, 2026 pretrial conference and hearings on its motions in limine. Plaintiff disputes any suggestion that the requested continuance is necessary to accommodate ordinary motion practice and reserves the right to oppose Defendant's application. Pursuant to Local Rule 7-19.1, Plaintiff requests that Defendant. Plaintiff also requests Defendant's position regarding the remaining proposed motions for purposes of the applicable meet-and-confer requirements. Please provide your response identifying which requests Defendant opposes and the grounds for its opposition.

**29.** On November 2, 2026, at 5:52 p.m., I received an email from Ms. Bernard responding to my request for a meet-and-confer conference. Ms. Bernard acknowledged that she had declined my October 30 request for a telephone conference because she was unavailable. Rather than proposing an alternative conference date, she continued communicating by email, characterized my anticipated motions as frivolous, disputed my allegations, and threatened to seek monetary sanctions if the motions were filed. Although Ms. Bernard addressed several subjects raised in my correspondence, she did not agree to participate in a telephone conference or identify an alternative date for one.

**30.** In the same correspondence, Ms. Bernard questioned the good faith of my medical stay request, suggesting that my continued litigation-related correspondence indicated that the request may have been a litigation tactic. She further characterized my meet-and-confer requests as "mindless," rejected my proposed requests for sanctions and partial default as lacking "credible factual support," and accused me of litigation misconduct. Ms. Bernard also threatened to seek monetary sanctions against me for the time spent opposing my anticipated motions. A true and correct copy of Ms. Bernard's November 2, 2026 email is attached hereto as Exhibit 001, at page 2.

**31.** In response to Ms. Bernard's November 2, 2026 email, I disputed her characterization of my medical circumstances and invited her to pursue formal

procedures if Defendant intended to challenge my health-related representations. I clarified that I was seeking leave to amend my complaint and temporary restraining relief. I also disputed her assertion that the mold inspection contractor was selected entirely at my discretion, explaining that Defendant's adjuster, Mr. Means, had rejected my initial contractor and subsequently rejected another estimate for which I paid $250. I expressly denied having previously received the mold report, explaining that I first discovered it in my spam folder on the date I notified counsel. Finally, I requested clarification concerning Defendant's continued identification of Select Portfolio Servicing, Inc. ("SPS") as mortgagee using Sprout's loan number, Defendant's issuance of claim payments to SPS, and its allegedly inconsistent representations regarding SPS's status. My response raised specific factual disputes and requested clarification of Defendant's position rather than merely repeating my demand for sanctions.

**32.** I am concerned that Defendant's allegations characterizing me as a vexatious litigant may have been raised in response to my own previously communicated intention to seek sanctions against Defendant and its counsel including to reporting Defendant for vexatious filing. I noticed that Defendant has already presented its allegations concerning vexatious litigation conduct to the Court without first requesting a meet-and-confer conference with me regarding that relief (ECF No. 195-1).

**33.** On Friday, November 20, 2026, I called defense counsel to confirm that Defendant would be able to timely respond to my anticipated motion, scheduled for hearing on December 21, 2026, in light of Ms. Bernard's vacation. During that conversation, Ms. Canby declined my request for a stipulation, stating that the standard procedural rules governed the deadlines, that she was available, and that Defendant would respond. During the same call, Ms. Canby stated that she wished to meet and confer regarding allegations that I had engaged in vexatious litigation filings, notwithstanding that Defendant had already presented

substantially similar allegations to the Court in its November 16, 2026 filing (ECF No. 195-1). I agreed to participate in the proposed meet-and-confer conference, and Ms. Canby stated that she would send me a request to schedule it with defense counsel on Friday, November 20, 2026, counsel informed me that they wished to schedule a meet-and-confer conference concerning the same subject. Based on this sequence of events, I suspect that Defendant's allegations were raised in anticipation of, or in response to, my proposed sanctions motion. I cannot establish counsel's subjective motivation, but I request that the Court consider the chronology and the apparent inconsistency in Defendant's approach to meeting and conferring.

**34.** The disputed issues and each party's position are as follows:

| Issue | Plaintiff's Position | Defendant's Position |
|---|---|---|
| 1. Violation of ECF No. 86 (jury instructions) | Defendant willfully violated ECF No. 86; terminating sanctions are warranted. | Opposes "all aspects"; relief lacks "credible factual support" (Nov. 2). |
| 2. Misrepresentation and failure to correct the record | Defendant has not corrected the record despite my Sept. 23, 2026 request (Ex. 008). | No correction filed; no motion warranted (Nov. 20). |
| 3. Settlement conduct (indemnity, $15K threshold, release) | Terms were not disclosed and were later changed; offered as evidence of bad faith. | No substantive response to Nov. 19 request. |
| 4. Relief: default judgment, sanctions, referral | Requested under Rule 37(b)(2)(A)(iii), (vi) and inherent power. | Opposes; will seek sanctions and a vexatious-litigant order (Nov. 2, Nov. 20). |
| 5. Timeliness | Defendant was on notice from Sept. 23 and Nov. 2; I raised the violation repeatedly. | Issues are "months old"; should have been raised with jury instructions (Nov. 20 call). |
| 6. Compliance with L.R. 7-3 | Conferences and attempts set out in ¶¶ 3–12, including the Nov. 20 telephone conference. | Contends L.R. 7-3 not satisfied (Nov. 20). |

**35.** The parties were unable to resolve any of these issues.

**36.** Lost contractor. In reliance on the settlement in principle reached on September 25, 2026, I arranged for a contractor to begin repair work at my home and scheduled the work. The contractor required a deposit to begin. On September 28, 2026,

I informed Ms. Bernard: "I have also found a contractor who is able to assist me with an important matter, but he is requiring a deposit to begin the work. Could you please let me know the soonest the payment could be processed and made available to me?" Ms. Bernard responded that the "[t]ypical term is within 30 days of receipt of the executed settlement agreement," and in the same email added a new condition that "Famers [sic] will need to include the mortgagee as a co-payee on the check," a term that was not part of the September 25, 2026 agreement. On October 2, 2026, Ms. Bernard again deferred payment until "Monday." Payment was never made. Because the deposit was not available, the contractor did not hold the scheduled work, and I lost him. On October 6, 2026, I informed Ms. Bernard: "I lost the contractor, my health is worse."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 22, 2026, at Palm Springs, California.

/s/ Luna D'Sol
**LUNA D'SOL**
Plaintiff, In Pro Per